IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ORACLE CORPORATION and | ) | |
| ORACLE U.S.A. INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 06-414 (SLR) |
| v. | ) | |
| | ) | |
| EPICREALM LICENSING, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OPPOSITION TO EPICREALM LICENSING, LP'S
MOTION TO CONSOLIDATE AND TRANSFER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

OF COUNSEL:

*Attorneys for Plaintiffs*
*Oracle Corporation and Oracle U.S.A. Inc.*

James G. Gilliland, Jr.
Joseph A. Greco
Chad E. King
Robert J. Artuz
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, CA 94301
650.326.2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA 94065

Dated: September 26, 2006

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                          iii

INTRODUCTION                                                                1

    A.    NATURE AND STAGE OF PROCEEDINGS                       1

    B.    SUMMARY OF ARGUMENT                                   2

    C.    STATEMENT OF FACTS                                    5

ARGUMENT                                                                    9

I.    THE COURT SHOULD NOT TRANSFER THE CASE.                          9

    A.    EpicRealm Cannot "Reserve" A Challenge To Subject Matter Jurisdiction For A Preferred Forum.                9

    B.    The Court Should Decide Whether To Transfer Before Addressing Whether To Consolidate.                12

    C.    EpicRealm Has Not Met Its Heavy Burden Of Showing That The Public And Private Interests Weigh Strongly In Favor Of Transfer.                13

    D.    The Public Interest Factors Do Not Favor Transfer.                14

        1.    The First-Filed Rule Does Not Apply To Oracle's Case.                14

        2.    Transfer Will Not Conserve Judicial Resources.                15

        3.    Delaware Has An Interest In Adjudicating This Lawsuit Between Parties Incorporated In Delaware.                18

        4.    EpicRealm Admits That The Remaining Public Interest Factors Do Not Favor Transfer.                20

    E.    The Private Interest Factors Do Not Favor Transfer.                20

        1.    Oracle's Choice Of Delaware Should Be Given Substantial Deference.                20

TABLE OF CONTENTS (continued)

Page

    2.     EpicRealm's Admittedly Strategic Choice Of The Eastern District Of Texas, Which Is Not Its Place Of Business Or Incorporation, Should Be Given Little Weight.    23

    3.     The Location Of Witnesses Does Not Favor Transfer.    24

    4.     The Convenience Of The Parties Does Not Favor Transfer.    27

    5.     The Location Of Documents Does Not Favor Transfer.    29

    6.     Oracle's Claims Are Not Specific To The Eastern District Of Texas.    29

II.    THE COURT SHOULD NOT CONSOLIDATE THIS CASE WITH THE QUINSTREET CASE.    30

    A.     EpicRealm Has Not Met Its Burden Of Showing That Consolidation Is Warranted.    30

    B.     It Is Premature For The Court To Decide Whether The Cases Should Be Consolidated For Purposes Of Discovery, Claim Construction, Motions Or Trial.    33

CONCLUSION    35

TABLE OF CITATIONS

Page(s)

Cases

*ADE Corp. v. KLA-Tencor Corp.*
   138 F. Supp. 2d 565 (D. Del. 2001)                                    passim

*Air Prods. and Chems., Inc. v. MG Nitrogen Svcs., Inc.*
   133 F. Supp. 2d 354 (D. Del. 2001)                                    14, 15

*AlliedSignal, Inc. v. Cooper Auto., Inc.*
   No. 96-540-SLR, 1997 U.S. Dis. LEXIS 22902 (D. Del.
   1997)                                                                 25, 26

*Argos v. Orthotec LLC*
   No. 03-0757-SLR, 304 F. Supp. 2d 591 (D. Del. 2004)                   28

*Arrow Comm'n Labs. v. John Mezzalingua Assoc., Inc.*
   2005 WL 2786691 (D. Del. 2005)                                        20, 21

*Atl. Ship Rigging Co. v. McLellan*
   288 F.2d 589 (3rd Cir. 1961)                                          9, 10

*Bloom v. Barry*
   755 F.2d 356 (3d Cir. 1985)                                           11

*C.R. Bard, Inc. v. Guidant Corp.*
   997 F. Supp. 556 (D. Del. 1998)                                       21

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*
   821 F. Supp. 962 (D. Del. 1993)                                       22, 25

*Cypress Semiconductor Corp. v. Integrated Circuit Sys.*
   C.A. No. 01-199-SLR, 2001 U.S. Dist. LEXIS 20803 (D.
   Del. 2001 November 28, 2001)                                         passim

*Datex-Ohmeda, Inc. v. Hill-Rom Servs., Inc.*
   185 F. Supp. 2d 407 (D. Del. 2002)                                    13, 16, 18

*EEOC v. Univ. of Penn.*
   850 F.2d 969 (3d Cir. 1988)                                           14, 23

*Filmtec Corp. v. Allied-Signal, Inc.*
   1989 WL 201603 (D. Del. 1989)                                         20

*Foster v. Hallco Mfg. Co, Inc.*
    947 F.2d 469 (Fed. Cir. 1991)                                      32

*In re Consolidated Parlodel Litig.*
    182 F.R.D. 441 (D.N.J. 1988)                                       31

*In re ML-Lee Acquisition Fund II, L.P.*
    816 F. Supp. 973 (D. Del. 1993)                                 13, 21

*In re Repetitive Stress Injury Litig.*
    11 F.3d 368 (2d Cir. 1993)                                      30, 31

*In re TMI Litig.*
    193 F.3d 613 (3d Cir. 1999)                                        33

*Intel Corp. v. Broadcom Corp.*
    167 F. Supp. 2d 692 (D. Del. 2001)                                 22

*James v. Daley & Lewis*
    406 F. Supp. 645 (D. Del. 1976)                                  9, 10

*Joint Stock Soc'y v. Heublein, Inc.*
    936 F. Supp. 177 (D. Del. 1996)                                 21, 22

*J-Squared Tech., Inc. v. Motorola, Inc.*
    No. 04-960-SLR, 2005 U.S. Dist. LEXIS 2258 (D. Del.
    2005)                                                              25

*Jumara v. State Farm Ins. Co.*
    55 F.3d 873 (3d Cir. 1995)                                    3, 13, 24

*Katz v. Realty Equities Corp.*
    521 F.2d 1354 (2d Cir. 1975)                                       30

*Kuck v. Veritas Software Corp.*
    No. 04-831-SLR, 2005 WL 123744 (D. Del. 2005)                   27, 28

*MacAlister v. Guterma*
    263 F.2d 65 (2d Cir. 1958)                                         30

*Malcolm v. Nat. Gypsum Co.*
    995 F.2d 346 (2d Cir. 1993)                                        31

*Matsushita Battery Indus. Co., Ltd. v. Energy Conversion Devices,
    Inc.*
    No. 96-101-SLR, 1996 WL 328594 (D. Del. 1996)                      25

*Moravian Sch. Advisory Bd. v. Rawlins*
    70 F.3d 270 (3rd Cir. 1995) ..... 9, 10

*Motorola Inc. v. PC-Tel, Inc.*
    58 F. Supp. 2d 349 (D. Del. 1999) ..... 18

*Praxair, Inc. v. ATMI, Inc.*
    No. 03-1158-SLR, 2004 WL 883395 (D. Del. 2004) ..... 30

*Raese v. Kelly*
    59 F.R.D. 612 (N.D.W. Va. 1973) ..... 10

*Ricoh Co., Ltd. v. Aeroflex Inc.*
    279 F. Supp. 2d 554 (D. Del. 2003) ..... 13, 15

*Smith v. Nissan N. Am.*
    No. 206 CV 41, 2006 WL 1624514 (E.D. Tex. 2006) ..... 23

*Southwest Marine Inc. v. Triple A. Mach. Shop, Inc.*
    720 F. Supp. 805 (N.D. Cal. 1989) ..... 31

*SRI Int'l, Inc. v. Internet Sec. Sys.*
    No. 04-1199-SLR, 2005 U.S. Dist. LEXIS 6797 (D. Del. 2005) ..... 21

*SRU Biosystems, Inc. v. Douglas S. Hobbs*
    05-201-SLR, 2005 U.S. Dist. LEXIS 19863  (D. Del. 2005) ..... 21

*Sumito Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc*.
    No. 04-852-SLR, 2005 U.S. Dist. LEXIS 5174 (D. Del. 2005) ..... 21

*Truth Hardware Corp. v. Ashland Prods.*
    C.A. No. 02-1541 GMS, 2003 U.S. Dist. LEXIS 409 (D. Del. Jan. 13, 2003) ..... 16

*Tse v. Ventana Med. Sys., Inc.*
    No. 97-37-SLR, 1997 WL 811566 (D. Del. 1997) ..... 25

*Tsoukanelis v. Country Pure Foods, Inc*.
    No. 04-128-SLR, 337 F. Supp. 2d 600 (D. Del. 2004) ..... 28

*U.S. v. Dentsply Int'l, Inc.*
    190 F.R.D.  140 (D. Del. 1999) ..... 30, 31

*Virgin Wireless*, Inc. v. Virgin Enters. Ltd.
    201 F. Supp. 2d 294 (D. Del. 2002) ..... 20

*Wesley-Jessen Corp. v. Pilkington Visioncare*
    157 F.R.D. 215 (D. Del. 1993)    19, 27, 29

Statutes

28 U.S.C. § 1404(a)    10

28 U.S.C. § 1406(a)    9, 10, 11

Rules

Fed. R. Civ. P. 42(a)    32

## INTRODUCTION

A.    <u>NATURE AND STAGE OF PROCEEDINGS</u>

This is an action for a declaratory judgment of patent noninfringement and invalidity filed by one Delaware company against another.  The disputes at issue in this action arise from defendant epicRealm Licensing, LP's ("epicRealm") strategy of suing customers of software manufacturers, rather than the manufacturers themselves, for patent infringement.  Oracle, one of those manufacturers, seeks to protect its customers, which epicRealm is likely to sue in the future, by requesting declaratory relief here in Delaware, the mutual state of incorporation of both Oracle and epicRealm.

On June 30, 2006, plaintiffs Oracle Corporation and Oracle U.S.A. Inc. (collectively, "Oracle") filed a Complaint against epicRealm, seeking declaratory judgment that two epicRealm patents are not invalid, not infringed, or both.  D.I. 1.  On August 8, 2006, QuinStreet, Inc. ("QuinStreet") filed a separate complaint in a separate action also seeking declaratory judgment of noninfringement and invalidity of the epicRealm patents (the "QuinStreet Action").  *See* C.A. No. 06-cv-495-SLR.  EpicRealm, a Delaware limited partnership, seeks to consolidate this action with the QuinStreet Action and to transfer both actions to the Eastern District of Texas.  Oracle opposes both consolidation and transfer.

Oracle and QuinStreet are unrelated companies that sell different software products and services.  QuinStreet is defending one of its customers, Herbalife International of America, Inc. ("Herbalife"), against epicRealm's infringement claims on the patents-in-suit in an action pending in the Eastern District of Texas, which is scheduled to begin trial on March 6, 2007.  Oracle is not a party to that action, and Oracle's products are not currently involved in that action.

After being granted a 30-day extension of time to answer or otherwise respond to Oracle's Complaint, epicRealm refused to do so. Instead, on August 28, 2006, epicRealm filed this motion ("the Transfer and Consolidation Motion"). D.I. 10. On that same day, epicRealm filed a motion for an extension of time to answer or otherwise respond to Oracle's Complaint (the "Extension Motion"). D.I. 9. Oracle has opposed the Extension Motion and epicRealm has filed a reply. *See* D.I. 12 and 14, respectively.

Oracle hereby opposes epicRealm's Transfer and Consolidation Motion because this Court is the proper forum for resolution of the dispute between these two Delaware citizens.

B.    SUMMARY OF ARGUMENT

1.    Oracle's choice of this forum should be given substantial deference because Oracle has a rational basis for bringing suit in this District. Oracle Corporation is a Delaware Corporation and epicRealm is a Delaware Limited Partnership so it is appropriate for Delaware's courts to resolve this dispute between two of its corporate citizens. Oracle conducts substantial business in Delaware and sells the accused products in Delaware. EpicRealm cannot dispute personal jurisdiction in Delaware; epicRealm almost surely would have disputed it in California, and it was rational for Oracle to eliminate this procedural hurdle.

2.    EpicRealm has suggested that the Court lacks subject matter jurisdiction of this action, presumably on the grounds that there is not an actual case or controversy between the parties. If this Court lacks subject matter jurisdiction, it cannot transfer the case. The Court should order epicRealm either to answer Oracle's Complaint and admit subject matter jurisdiction or to file a Rule 12 motion contesting jurisdiction.

3.      Oracle's opposition to transfer of this action must be viewed without regard to transfer of the action filed by QuinStreet, an unrelated company with different products and services and different procedural circumstances.

4.      Oracle is not litigating against the epicRealm patents in Texas, and has never done so.  EpicRealm made the strategic decision not to sue Oracle, or other software manufacturers, in Texas, but rather to target the manufacturers' customers.  One of the defendants epicRealm sued in Texas was Safelite Group Inc. ("Safelite"), an Oracle customer.  Oracle did not defend Safelite in that action.  Rather, Oracle settled Safelite's indemnification claim against it and Safelite settled epicRealm's patent infringement claim against it.  As a result, epicRealm dismissed Safelite from the Texas action and Safelite dismissed Oracle from that action.

5.      EpicRealm has not met its heavy burden of overcoming Oracle's proper choice of this forum.  Neither the public interest factors nor the private interest factors enumerated in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), favor transfer.

6.      The public interest factors do not favor transfer.  Delaware has a substantial interest in resolving this dispute because both parties are Delaware companies and the accused products are sold in Delaware to citizens of Delaware.  The first-filed rule does not warrant transfer because there is no other pending case between these parties; neither Oracle nor Safelite, Oracle's customer, is litigating against epicRealm in Texas.  Transfer will not conserve judicial resources because, as epicRealm admits, Oracle's products are not part of the Texas action, and Oracle cannot be added to that action at this late date (claim construction and discovery are substantially completed; trial is scheduled to begin March 6, 2007).  Thus, no

judicial economy will be served by transfer.  EpicRealm admits that the other public interest factors do not favor transfer.

       7.    The private interest factors do not favor transfer.  Oracle's choice of this forum should be given substantial deference.  By filing in Delaware, Oracle has eliminated any potential battle about personal jurisdiction; as a Delaware business epicRealm obviously is subject to suit in Delaware.  EpicRealm's Motion to Transfer is simply "forum shopping:" seeking, for strategic reasons, transfer to the Eastern District of Texas, which is neither its place of business nor its place of incorporation.  Oracle's declaratory relief claims are not specific to Texas.  Nor has epicRealm shown that the location of witnesses or the location of documents favors transfer:  neither party and no evidence is located in the Eastern District of Texas.  The witnesses epicRealm identifies are not true third-parties.  Moreover, epicRealm has not shown that they are key witnesses or that they refuse to testify in Delaware.  In addition, there are other witnesses who do not reside in Texas.

       8.    EpicRealm has not met its burden of showing that consolidation is warranted.  It is premature for the Court to decide whether the Oracle and QuinStreet cases should be consolidated for purposes of discovery, claim construction, motions or trial.

C.    STATEMENT OF FACTS

EpicRealm is employing a business model of suing customers of software products outside its home District for strategic reasons.  Oracle seeks to resolve whether its products infringe epicRealm's patents, so that its customers will not be subject to epicRealm's lawsuits.  Oracle has chosen Delaware, the parties' mutual state of incorporation, with a Court well-known for its sophistication in handling patent disputes, to resolve this issue.

Oracle Corporation is a Delaware corporation.[1]  Declaration of Robert J. Artuz in Support of Plaintiffs' Opposition to epicRealm's Motion to Consolidate and Transfer ("Artuz Decl."), Ex. I.  Oracle has sold its software products to numerous public and private entities in Delaware, including state, county, and municipal agencies, banks, and other businesses.  Declaration of Linda Hartig in Support of Plaintiffs' Opposition to epicRealm's Motion to Consolidate and Transfer ("Hartig Decl."), ¶ 2.  Oracle software products sold in Delaware include products related to the delivery of dynamic web pages (the subject of epicRealm's patents-in-suit), such as the Oracle Internet Application Server.  *Id.*  Oracle employs sales representatives and related support personnel who are responsible for marketing, sales, consulting, and customer support for current and prospective customers in Delaware and surrounding states.  *Id.*

EpicRealm is a Delaware Limited Partnership with its principal place of business in Dallas, Texas.  EpicRealm does not produce or sell any products; its business is limited to licensing patents.  D.I. 10 at 6.  EpicRealm's business now consists of suing end-users of software products to force those companies to license epicRealm's patents.  It did not sue the

---

[1]    Oracle USA Inc. is Oracle Corporation's wholly owned subsidiary and is incorporated in Colorado.  Artuz Decl., Ex. J.

manufacturers, such as Oracle, of the software products it alleged infringed its patents. Artuz Decl., Ex. A. Rather, epicRealm targeted customers who purchased those products or related services, such as Oracle's customer Safelite. *Id.*

Although epicRealm's principal place of business is in Dallas, which is in the Northern District of Texas, epicRealm filed lawsuits against Safelite and other end-users in Marshall, Texas, which is in the Eastern District of Texas. Marshall is located approximately 150 miles from Dallas. As epicRealm admits in its brief, it filed the lawsuits in Marshall, rather than in Dallas, for strategic reasons. D.I. 10 at 16 n.3.

Oracle is not litigating against the epicRealm patents in Texas, and has never done so. Artuz Decl., ¶ 12. Neither Oracle nor any Oracle customer charged with infringement for using Oracle's products is currently a party in epicRealm's Eastern District of Texas litigation. *Id.* EpicRealm sued Safelite and other defendants in the Eastern District of Texas on May 2, 2005. EpicRealm alleged that the defendants infringed epicRealm's U.S. Patent Nos. 5,894,554 (the "'554 patent") and 6,415,335 (the "'335 patent"). *Id.*, Ex. A.

Safelite did not even inform Oracle of that lawsuit until January 26, 2006, when Safelite requested that Oracle defend and indemnify it against epicRealm's infringement claims. *Id.*, Ex. E. The same day, Safelite filed a Third Party Complaint against Oracle (and against IBM, another of Safelite's suppliers), seeking defense and indemnity. *Id.*, Ex. D. Oracle did not agree to defend and indemnify Safelite. Oracle answered Safelite's Third Party Complaint on March 28, 2006, denying liability. *Id.*, Ex. F. Oracle did not participate in any discovery, claim construction, exchange of infringement or invalidity contentions, or other proceeding against epicRealm or the '554 or '335 patents. *Id.* at ¶ 9.

In June 2006, EpicRealm settled its claims against Safelite and Safelite settled its claims against Oracle and IBM.  *Id.* at ¶ 10.  On June 29, 2006, the Eastern District dismissed with prejudice both epicRealm's Complaint against Safelite and Safelite's Third Party Complaint against Oracle and IBM.  *Id.*, Exs. G and H.  Oracle thereafter filed this lawsuit.  D.I. 1.

As epicRealm states in its brief, the Texas action from which Safelite and Oracle were dismissed was consolidated with other actions on the '554 and '334 patents.  D.I. 10 at 3-4.  In one of those actions, epicRealm sued Herbalife, which is a customer of QuinStreet.  QuinStreet's business is "on line direct marketing."  Declaration of Michael McDonough (D.I. 11 in QuinStreet Action), ¶ 3.  QuinStreet's "clients purchase customer leads that QuinStreet generates by operating thousands of customer lead-generating web sites . . . ."  *Id.*  "QuinStreet also provides web site hosting services to a number of clients."  *Id.*  As epicRealm has stated, "[o]bviously, Oracle and Quinstreet are different entities that each produce their own products."  D.I. 14 at 5 (epicRealm's Reply Brief in support of Extension Motion).

On August 8, 2006, QuinStreet filed in this District a separate complaint in the QuinStreet Action.  *See* C.A. No. 06-cv-495-SLR.  As QuinStreet states, it presently is defending its customer Herbalife in the consolidated action in the Eastern District of Texas.  *See* QuinStreet's Memorandum of Law in Opposition to Defendant EpicRealm Licensing, LP's Motion to Transfer (D.I. 10 in QuinStreet Action, at 15).  EpicRealm seeks to consolidate the QuinStreet Action with the Oracle action and transfer both to Marshall, Texas.

The action pending in the Eastern District of Texas is almost at the end of discovery and claim construction.  All relevant pretrial filing dates and deadlines are established in an Agreed Docket Control Order entered on January 13, 2006.  Artuz Decl., Ex. B.  Trial is scheduled to begin on March 6, 2007.  Claim construction is nearly completed.  The parties must

complete fact discovery by November 22, 2006.  The deadline for filing all dispositive motions and *Daubert* motions is December 22, 2006.  Various pretrial filings are due thereafter and the Final Pretrial Conference is March 5, 2007.

In light of the advanced stage of the Texas action, epicRealm admits that it "does not seek consolidation [of this action and the Texas action] for trial, nor is it likely that the two actions would be tried together since the Texas Action is set for trial on March 7, 2007, less than six months from now."  EpicRealm's reply brief in Quinstreet Action (D.I. 13), at 13.  Prior to Oracle's dismissal from Safelite's third party action, Oracle did not participate in discovery, infringement or invalidity contentions, claim construction, or any other substantive part of epicRealm's patent infringement case in Texas.  Artuz Decl., ¶ 9.

As epicRealm admits, Oracle's principal place of business is in Redwood Shores, California, which is located within the Northern District of California.  D.I. 10 at 14.  EpicRealm does not have any offices in California.  Because epicRealm's business is merely the licensing of its patents from its Dallas headquarters, Oracle did not believe that it could obtain personal jurisdiction over epicRealm in California.  Artuz Decl., ¶ 14.  Accordingly, Oracle decided to file suit in Delaware, because it is the mutual corporate home of both epicRealm and Oracle.

EpicRealm's Rule 26 disclosures in the Texas action, served February 16, 2006, list 10 witnesses.  Artuz Decl., Ex. C.  Five of the listed witnesses reside in Texas; epicRealm identifies all these witnesses in its brief as being "several of the key witnesses in this lawsuit." D.I. 10 at 17-18.  The other five listed witnesses do not reside in Texas and epicRealm does not list any of them as "key witnesses."  Yet two of these non-Texas residents are inventors of the '554 and '334 patents:  Keith Lowery (resident of Bothell, Washington) and Andrew B. Levine (resident of Owings Mills, Maryland).  Only one of the Texas witnesses, Ronald Howell, is an

inventor of the patents.  Another two of the non-Texas witnesses were involved with prosecution of the '554 and '335 patents:  James Salter (resident of Santa Clara, California) and Sharmini Green (resident of Irvine, California).  Only one of the Texas witnesses, Matt Talpis, was involved with prosecution of either of the patents.

## **ARGUMENT**

I.    THE COURT SHOULD NOT TRANSFER THE CASE.

A.    EpicRealm Cannot "Reserve" A Challenge To Subject Matter
        Jurisdiction For A Preferred Forum.

EpicRealm has questioned the Court's subject matter jurisdiction.  D.I. 10 at 2 n.1 ("EpicRealm does not agree that subject matter jurisdiction exists for these declaratory judgment claims, and epicRealm reserves the right to challenge subject matter jurisdiction at a later date."). As Oracle has shown in its opposition to epicRealm's Extension Motion, the Court cannot transfer this case if it lacks subject matter jurisdiction.  D.I. 12 at 4 (citing *Moravian Sch. Advisory Bd. v. Rawlins*, 70 F.3d 270, 278 (3d Cir. 1995); *Atl. Ship Rigging Co. v. McLellan*, 288 F.2d 589, 590-91 (3d Cir. 1961); *James v. Daley & Lewis*, 406 F. Supp. 645, 649 (D. Del. 1976)).

EpicRealm characterized this argument as "frivolous."  D.I. 14 at 1.  EpicRealm's response is perplexing since it is contradicted by Third Circuit law.  For example, in *Atlantic Ship Rigging*, the Third Circuit held that:

> [A] court is without power to transfer an action under 28 U.S.C. § 1406(a) absent jurisdiction over the person of the defendant. Where, as here, the court lacks jurisdiction over the subject matter, which is a more fundamental defect than an absence of in personam jurisdiction, and one which precludes it from acting at all, a fortiori a court lacks power to transfer.

288 F.2d at 590-91.  EpicRealm has not attempted to distinguish this controlling authority.

In *James*, this District relied on *Atlantic Ship Rigging* when holding that jurisdiction must be resolved prior to deciding venue:

> Plaintiffs also seem to suggest that this Court should transfer the cases of the two Delaware corporate plaintiffs to the District of Columbia. Since it appears that this Court at present lacks subject matter jurisdiction over the claims brought by the two plaintiff Delaware corporations, it has no power to transfer these cases under 28 U.S.C. § 1404(a) which relates solely to venue.

406 F. Supp. at 649 (citing *Atl. Ship Rigging*, 288 F.2d at 591, and *Raese v. Kelly*, 59 F.R.D. 612 (N.D.W. Va. 1973)). Similarly, in *Moravian*, the Third Circuit held that:

> Neither Rogers nor Moravian disputes that the court lacked jurisdiction over their lawsuits. It is clear, therefore, that the district court . . . lacked express or implied authority under federal law to transfer these cases to the territorial court . . . .

70 F.3d at 274.

EpicRealm attempts to distinguish *James* and *Moravian* on the grounds that defendants in those cases had filed motions to dismiss for lack of subject matter jurisdiction, while epicRealm has merely, and cleverly, "expressly reserved its right to challenge this Court's subject matter jurisdiction at a later point . . . ." D.I. 10 at 2 n.1. Thus, epicRealm concludes that "as a result, the issue of this Court's subject matter jurisdiction is not pending before the Court." *Id.* EpicRealm is wrong.[2] EpicRealm cannot suggest, on the one hand, that this Court lacks

---

[2]    EpicRealm also attempts to distinguish *James* on the grounds that the district court "entertained" a transfer motion even though it believed it lacked subject matter jurisdiction. But this is irrelevant because the court did not transfer a case over which it lacked subject matter jurisdiction. The *James* court simply denied plaintiffs' motion to transfer under 28 U.S.C. § 1406(a), while allowing plaintiffs leave to amend the defectively pleaded complaint – which failed to allege the citizenship of the plaintiff James and of the defendants – to properly state diversity jurisdiction. 406 F. Supp. at 647. There was to be no transfer under § 1406(a), regardless of whether plaintiffs ever successfully pleaded subject matter jurisdiction.

subject matter jurisdiction but, on the other hand, request that the Court transfer this action to Texas in violation of clear Third Circuit authority to the contrary.

The sole case on which epicRealm relies, *Bloom v. Barry*, 755 F.2d 356 (3d Cir. 1985), does not support epicRealm's attempt to forum shop for the court it wants to decide its jurisdictional challenge. *Bloom* did not involve transfer of a case where a party was questioning the court's subject matter jurisdiction. Rather, it involved transfer when the district court believed it did possess subject matter jurisdiction. In *Bloom*, plaintiff filed an action in Florida state court. Defendant removed the action to the Southern District of Florida, contending that there was diversity jurisdiction, and simultaneously moved to transfer the case to the District of New Jersey. *Id.* at 356-57. There is no indication that the plaintiff questioned the existence of diversity jurisdiction. The Florida District Court, thus apparently believing that it *had* subject matter jurisdiction, transferred the case to the District of New Jersey. *Id.* at 357. Defendant then changed its position, argued that there was *no* subject matter jurisdiction, and successfully moved the District of New Jersey to *remand* the case to a New Jersey state court. *Id.* The Third Circuit reversed, ruling that *if* there was no subject matter jurisdiction, the only court to which the case could be remanded was the Florida state court. *Id.* at 358. Thus, *Bloom* does not stand for the proposition that a district court without subject matter jurisdiction can transfer the case to another district court. In fact, the effect of the ruling is precisely what Oracle contends is the law: if the Florida District Court lacked subject matter jurisdiction, so did the New Jersey District Court; there could be no effective "transfer" of the case to the New Jersey District Court and the case had to be returned to Florida state court. Of course, here there can be no "remand." If this Court lacks subject matter jurisdiction, so does the Eastern District of Texas, and under the above-cited authorities there can be no transfer.

- 11 -

Oracle believes strongly that there is an active case or controversy with epicRealm. Oracle is acting reasonably to protect its customers from epicRealm's lawsuits. Nevertheless, in light of the above authorities, epicRealm cannot be allowed to hold a subject matter jurisdiction defense in reserve while it decides whether or not it likes the outcome of this Transfer and Consolidation Motion. The Court should order epicRealm either to answer Oracle's Complaint and admit subject matter jurisdiction or to file a Rule 12 motion if epicRealm intends to assert lack of subject matter jurisdiction. In any event, the Motion to Transfer cannot be decided until jurisdiction is settled.

B.  The Court Should Decide Whether To Transfer Before Addressing Whether To Consolidate.

EpicRealm's motion asks the Court to decide the consolidation and transfer issues in the wrong order. If the Court agrees with Oracle that subject matter jurisdiction exists, the Court should not address consolidation of this action and the QuinStreet action until it determines whether neither, only one, or both of these actions should be transferred.

Oracle and QuinStreet are separate companies with different products and different procedural circumstances. Oracle is not a party to the consolidated Eastern District of Texas action and never litigated against the epicRealm patents in that action. QuinStreet is, however, currently defending its customer, Herbalife, in that action. While Oracle does not believe that this fact warrants transfer of the QuinStreet Action, Oracle's lack of involvement in the Texas action is an important fact that the Court should consider when deciding whether Oracle's action should be transferred. That QuinStreet may be involved in the Texas action should not affect whether Oracle's action should remain in this District.

If the Court were to decide that Oracle's action should remain in this District but the QuinStreet Action should be transferred, the consolidation issue would be moot. The same

would be true if the Court were to decide that both actions should be transferred; in that event, the transferee court should decide how, if at all, to coordinate the two actions. Only if the Court were to decide that **neither** action should be transferred would the consolidation issue even need to be decided. As Oracle demonstrates in Section II, *infra*, epicRealm has not met its burden of showing why the two actions should be consolidated for any purpose at this early stage of the proceedings, and a decision on consolidation is premature. In any event, however, the Court should decide the transfer issue before deciding the issue of consolidation, and should judge whether epicRealm has met its burden of showing that Oracle's action should be transferred apart from whether epicRealm has met that burden with respect to the QuinStreet Action.

  C.  EpicRealm Has Not Met Its Heavy Burden Of Showing That The
     <u>Public And Private Interests Weigh Strongly In Favor Of Transfer.</u>

    The plaintiff's choice of forum is of "paramount consideration," and the burden remains at all times on the defendant to show that the balance of convenience and the interests of justice weigh "strongly" in favor of transfer. *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 975-76 (D. Del. 1993). Stated another way, the plaintiff's choice of forum should be given "substantial deference." *Datex-Ohmeda, Inc. v. Hill-Rom Servs., Inc.*, 185 F. Supp. 2d 407, 412 (D. Del. 2002); *see also Arrow Comm'n*, No. 05-357-SLR, 2005 WL 2786691, at *1 ("plaintiff's choice of forum is to be accorded 'substantial weight'"). The plaintiff's choice of venue will "not be lightly disturbed." *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 556-557 (D. Del. 2003) (quoting *Jumara*, 55 F.3d at 879). The balance of convenience and the interests of justice must weigh strongly in favor of transfer for it to be granted; "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of transfer." *In re ML-Lee*, 816 F. Supp. at 976. Oracle's choice of forum must prevail, therefore, unless epicRealm

provides strong, compelling facts in favor of transfer sufficient to override Oracle's choice of forum. EpicRealm has failed to do so.

     D.      The Public Interest Factors Do Not Favor Transfer.

          1.      The First-Filed Rule Does Not Apply To Oracle's Case.

        EpicRealm mistakenly bases its motion on the premise that the "first-filed rule" applies to this case. D.I. 10 at 8-12. That rule generally states that "in all cases of federal **concurrent jurisdiction**, the court which first has possession of the subject must decide it." *EEOC v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1988) (quotations and citations omitted) (emphasis added). In order for the rule to apply, two federal courts must have "**concurrent jurisdiction**" over two cases that involve "the **same parties and the same issues.**" *Id.* There is no such "concurrent jurisdiction" over this case and the Texas action because: (1) Oracle is not a party to the Texas action, and (2) Oracle's products and services are not at issue in the Texas action, because no Oracle customer charged with infringement for using Oracle's products is currently a party to the Texas action. Although Oracle's customer, Safelite, filed a third-party complaint against Oracle in the Texas action, Oracle did not participate in defending against epicRealm's patent infringement claims in the Texas action and the Texas court dismissed both Oracle and Safelite with prejudice before Oracle filed this case. Accordingly, this Court and the Eastern District of Texas have never had concurrent jurisdiction over the same parties and issues concerning this case. The first-filed rule does not apply.

        EpicRealm relies on a single Delaware case, *Air Products*, to support its incorrect argument that the first-filed rule should apply to this case. *See* D.I. 10 at 8 (citing *Air Prods. and Chems., Inc. v. MG Nitrogen Svcs., Inc.*, 133 F. Supp. 2d 354 (D. Del. 2001)). But, unlike this case, *Air Products* **did** involve concurrent jurisdiction. In that case, Messer Griesheim

Industries, Inc. ("MGI") and International Nitrogen Services, L.L.C. ("INS") had filed a patent infringement action against Air Products' customers in the Eastern District of Texas. *Id*. at 356. While the case against its customers was still pending in Texas, Air Products filed a declaratory judgment action against MGI and INS in this District on the same patents that were asserted against its customers in Texas. *Id.* Four months later, Air Products amended its complaint against MGI and INS to include its customers as plaintiffs seeking the same declaratory relief. *Id.* Once that amendment was made, both this District and the Eastern District of Texas had concurrent jurisdiction over (1) most of the same parties – MGI, INS and Air Products' customers; and (2) the same issues – whether or not the customers' use of the manufacturer's product infringed the patents-in-suit. In *Air Products*, therefore, it was appropriate for the Court to apply the first-filed rule. Here, neither Oracle nor any Oracle customer charged with infringement for using Oracle's products is currently a party in the Texas action; thus, the central issue of whether Oracle's products infringe the patents-in-suit is not involved in the Texas action. Because similar circumstances do not exist in this case, the first-filed rule does not apply.[3]

### 2.    Transfer Will Not Conserve Judicial Resources.

Contrary to epicRealm's assertions, transfer of this case to this Eastern District of Texas will **not** conserve judicial resources because: (1) the Texas action's advanced procedural

---

[3]    Moreover, this District has held that an exception to the first-filed rule exists where, as here, a manufacturer sues for declaratory relief to protect its customers from each having to defend an infringement lawsuit. *Ricoh*, 279 F. Supp. 2d at 557. As the court noted, a manufacturer's declaratory relief action is preferred because "it is more efficient for the dispute to be settled directly between the parties in interest" and because "a patentee's election to sue customers, rather than the manufacturer itself, is often based on a desire to intimidate smaller businesses." *Id.* (citations omitted).

posture would make it extremely impractical and burdensome to combine this action with the Texas action, and (2) this case involves factual and legal issues that are not involved in the Texas action, including different questions of noninfringement and invalidity.

First, the Texas action has been pending for approximately sixteen months. The numerous parties in that case already have served preliminary infringement and invalidity contentions, have completed claim construction briefing and argument, and have begun filing motions for summary judgment. *See* Statement of Facts, *supra*; Artuz Decl., Ex. B (Texas court's Docket Control Order). Even epicRealm admits that the Texas court cannot simply pick up Oracle as an additional defendant in the existing consolidated action. EpicRealm's Reply to Quinstreet's Opposition (D.I. 13 in the QuinStreet Action) at 13. The Texas court cannot consolidate this action with the existing Texas action because, in order to give Oracle a fair opportunity to litigate, Oracle must be allowed to take discovery, engage in the claim construction process, and prepare for trial. If this case were transferred to Texas, it would have to start at the beginning of the litigation process, just as it would in this Court. Consequently, there is no efficiency to be gained by transfer. *See Truth Hardware Corp. v. Ashland Prods.*, C.A. No. 02-1541 GMS, 2003 U.S. Dist. LEXIS 409, at *4 (D. Del. Jan. 13, 2003) (holding that a related case's "advanced procedural posture" in a transferee forum "militates against transfer"); *Datex-Ohmeda, Inc. v. Hill-Rom Servs.*, 185 F. Supp. 2d 407, 411-12 (D. Del. 2002) (declining to transfer a case despite there being a related case in the transferee forum involving the "identical products and related patents").

Second, this case involves factual and legal issues that the Texas court has not considered and will not consider. Because Oracle's products and services are not at issue in the Texas action, this case involves unique infringement issues. Similarly, because Oracle intends to

prove that epicRealm's patents are invalid in view of prior art that has not been disclosed in the Texas action, this case will also involve unique invalidity issues. Wherever this action ultimately resides, the presiding court will have to decide factual and legal issues that have not been decided by any other court. Accordingly, transferring this case to Texas will not conserve judicial resources.

While it is true that the Texas court is already familiar with the epicRealm patents, this fact should carry little, if any, weight in the transfer analysis. Mere familiarity with patented technology will not allow the Texas court to simply skip past discovery, claim construction, and summary judgment in this case and proceed directly to trial. The Texas court has no familiarity with Oracle, Oracle's products and services, or Oracle's claim construction, noninfringement or invalidity arguments. Any federal court will have to thoroughly address this case's unique facts and issues regardless of where the case proceeds. There is no efficiency to be gained by transferring this case to Texas.

Moreover, this case is not so complicated that the Texas court's familiarity with the case there would provide a meaningful advantage. This case effectively only involves one patent because the patents-in-suit are related and share a common specification. This Court is experienced in patent matters and complex technology. *See Cypress Semiconductor Corp. v. Integrated Circuit Sys.*, C.A. No. 01-199-SLR, 2001 U.S. Dist. LEXIS 20803, at *14 (D. Del. 2001 November 28, 2001) ("[T]he [Delaware] court is noted for its efficient docket and its expertise in complex civil litigation."). Indeed, through a technology tutorial, this Court will become conversant with the technology at issue in less time than it will take to consider and decide epicRealm's motions for consolidation, transfer, and extension of time to answer. That another court also has learned the patented technology should have no bearing on the transfer

analysis. *See Datex-Ohmeda*, 185 F. Supp. 2d at 411-12 (declining to transfer a case despite the desired transferee court already being familiar with the patented technology).

None of the cases epicRealm cites supports its argument that transfer will conserve judicial resources. D.I. 10 at 11-12. None of those cases involves facts similar to this case where: (1) Oracle and epicRealm are both incorporated in Delaware; (2) neither Oracle nor epicRealm has its principal place of business in the transferee forum (the Eastern District of Texas); and (3) Oracle is not a party to, and its products are not at issue in, the Eastern District of Texas action. Accordingly, unlike the facts in epicRealm's cited cases, the facts of this case weigh against transfer.

3.    Delaware Has An Interest In Adjudicating This Lawsuit
      Between Parties Incorporated In Delaware.

Delaware has a local interest in resolving disputes between its corporate citizens, especially when a dispute involves the sale or use of products within its territorial borders. In a patent case involving two Delaware corporations, this District has stated:

> Delaware's interest in this dispute are substantial. Both Motorola and PC-Tel are Delaware corporations. Clearly this forum's interest extends to these corporate citizens that have sought the protection of Delaware's laws. Delaware also has an interest in discouraging injuries that occur within the state, and that interest extends to patent infringement actions such as this one.

*Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 356 (D. Del. 1999); *see also Datex-Ohmeda*, 185 F. Supp. 2d at 412 ("The Court is persuaded that Delaware has an interest in adjudicating this action because it involves two Delaware corporations."). Accordingly, because both epicRealm and Oracle sought the benefits and protections of this State by incorporating themselves in Delaware, this Court certainly has an interest in resolving business disputes

between them. EpicRealm cannot complain of this fact because it has chosen Delaware as its corporate home:

> In some senses, Delaware is [Defendant's] home. It is, for example, treated as a citizen of this state for the purposes of determining jurisdiction and venue. In developing their business plans, managers may not be able to anticipate having to defend litigation in all of the states where their corporation does business. They should, however, expect that the corporation may have to respond to litigation both at their principal place of business and in their state of incorporation.

*Wesley-Jessen Corp. v. Pilkington Visioncare*, 157 F.R.D. 215, 218 (D. Del. 1993). Moreover, Oracle sells products and services in this District that will be the subject of Oracle's request for declaratory judgment of noninfringement. Hartig Decl., ¶ 2. Accordingly, Delaware has even more of a local interest in overseeing this case because it involves activities that occur within its own borders. The local interests of this forum weigh against transfer.

Finally, contrary to epicRealm's suggestion, this dispute is not local to the Eastern District of Texas. D.I. 10 at 12. Neither epicRealm nor Oracle is incorporated in or has a place of business in the Eastern District of Texas. EpicRealm has never alleged that it even does business in that district. Additionally, the fact that Oracle's Complaint is partly based on events that occurred in the Eastern District of Texas does not make this dispute local to Texas. Oracle's Complaint relies, in part, on the fact that epicRealm sued one of its customers, Safelite, in the Eastern District of Texas and that Safelite in turn sued Oracle for indemnity in that district. D.I. 1 at ¶ 28. These events and Oracle's short-lived involvement in the Texas action, however, do not makes this a Texas dispute. These facts establish that the Court has subject matter jurisdiction over this action because, for example, epicRealm has created an apprehension that it will continue to sue Oracle's customers. They do not, however, mean that the Eastern District of

Texas is the locus of this dispute.  Oracle is acting to protect its customers throughout the United States, including in Delaware.  Delaware has a local interest in this dispute.

>       4.      EpicRealm Admits That The Remaining Public Interest
>               Factors Do Not Favor Transfer.

EpicRealm admits that the remaining public interest factors – (1) the enforceability of the judgment; (2) court congestion; and (3) the public policies of the fora – do not weigh in favor of transfer.  D.I. 10 at 13.  Accordingly, epicRealm cannot use these factors to argue that transfer is appropriate.

>   E.      The Private Interest Factors Do Not Favor Transfer.

>       1.      Oracle's Choice Of Delaware Should Be Given Substantial
>               Deference.

EpicRealm acknowledges the fundamental rule that "[o]rdinarily, a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed."  D.I. 10 at 13 (citing *Virgin Wireless*, *Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 300 (D. Del. 2002)).  But epicRealm then ignores that rule, arguing that plaintiff's choice of forum is not given as much deference when the plaintiff does not bring suit on its "home turf," and that "it is easier for the defendant to satisfy the burden necessary to tip the balance of convenience in its favor" when this occurs.  *Id*.  EpicRealm truncates this exception, however.  The *Arrow* case cited by epicRealm in support of the "home turf" rule actually states that the convenience to the plaintiff is not as great when the plaintiff brings suit in a venue that is not its home turf, "***and* that has *no connection to any acts giving rise to the lawsuit***."  *Arrow Comm'n Labs. v. John Mezzalingua Assoc., Inc.*, No. 05-357-SLR, 2005 WL 2786691, at *3 (D. Del. 2005) (emphasis added); *see also Filmtec Corp. v. Allied-Signal, Inc.*, 1989 WL 201603 (D. Del. 1989) (cited in epicRealm's Motion, D.I. 10 at 13-14).  This forum has clear connections to the acts giving rise

- 20 -

to the lawsuit. Oracle has significant sales and presence covering Delaware, and has customers located in Delaware whose interests it seeks to protect. Hartig Decl., ¶ 2. Both Oracle and epicRealm are incorporated here. Therefore, *Arrow*'s "home turf" exception to forum selection deference does not apply.

Moreover, this District has been clear (including this Court in four separate rulings from 2005 and one from 2001) that even if a lawsuit is brought outside a plaintiff's home turf or in a forum without any connection to the acts giving rise to the litigation, plaintiff's choice of forum is still "paramount:"

> While transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of ***paramount consideration***, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh ***strongly*** in favor of transfer.

*In re ML-Lee*, 816 F. Supp. at 976 (emphasis added); *see also Arrow Comm'n*, 2005 WL 2786691 at *2 (D. Del. 2005) (quoting *In re ML-Lee*); *SRI Int'l, Inc. v. Internet Sec. Sys.*, No. 04-1199-SLR, 2005 U.S. Dist. LEXIS 6797, at *13-14 (D. Del. 2005) (quoting *In re ML-Lee*); *SRU Biosystems, Inc. v. Douglas S. Hobbs*, 05-201-SLR, 2005 U.S. Dist. LEXIS 19863, at *6-7 (D. Del. 2005) (quoting *In re ML-Lee*); *Sumito Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.*, No. 04-852-SLR, 2005 U.S. Dist. LEXIS 5174, at *7 (D. Del. 2005) (quoting *In re ML-Lee*); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*., No. 01-199-SLR, 2001 U.S. Dist. LEXIS 20803, at *6 (D. Del. 2001) (citing *In re ML-Lee*).

A plaintiff's choice of forum is given less deference only if the plaintiff did not select the forum for some legitimate reason. *Cypress*, 2001 U.S. Dist. LEXIS 20803 at *5 (citing *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 563 (D. Del. 1998)); *Joint Stock Soc'y v. Heublein, Inc.*, 936 F. Supp. 177, 186-187 (D. Del. 1996). But Oracle had many legitimate

reasons for choosing to sue epicRealm in Delaware.  For example, the fact that epicRealm is a Delaware Limited Partnership, which has received the benefits of Delaware corporate laws and shoulders the responsibility of being subject to suit there, is a legitimate and rational reason to sue epicRealm in Delaware.  *See Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 965 (D. Del. 1993) ("[Defendant] chose Delaware as its legal home and should not now complain that another corporation has decided to sue [it] in Delaware.").  Further, Oracle is incorporated in Delaware, and "[i]t is also legitimate and rational . . . for a plaintiff to choose to litigate in a forum in which it is incorporated."  *Joint Stock Soc'y*, 936 F. Supp. at 187; *Intel Corp. v. Broadcom Corp.*, 167 F. Supp.. 2d 692, 706 (D. Del. 2001).

Oracle's choice of forum legitimately avoided a battle over personal jurisdiction. EpicRealm's only "business" is licensing its patents out of its Dallas, Texas office.  D.I. 10 at 6. While Oracle could have tried to sue epicRealm in California – Oracle's principal place of business – it appeared unlikely that Oracle could have obtained personal jurisdiction over epicRealm in California.  Avoiding a "time consuming, expensive, and relatively unproductive dispute over personal jurisdiction" is a legitimate and rational reason for bringing this litigation in Delaware, where epicRealm unquestionably is subject to personal jurisdiction.  *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001).  It is also legitimate and rational for Oracle to bring suit in Delaware "because the court is noted for its efficient docket and its expertise in complex civil litigation," especially in connection with patent disputes.  *Cypress*, 2001 U.S. Dist. LEXIS 20803 at *14.  Thus, for all of these logical, legitimate reasons, the deference afforded to Oracle as plaintiff should not be disturbed, and this factor weighs strongly against transfer.

2.    EpicRealm's Admittedly Strategic Choice Of The Eastern District Of Texas, Which Is Not Its Place Of Business Or Incorporation, Should Be Given Little Weight.

EpicRealm was forum shopping when it filed the Texas action in the Eastern District of Texas, instead of the Northern District of Texas where it is located.  In fact, it stated as much in its Motion, laying out the strategic reasons why it chose the Eastern District over its "home turf," the Northern District.  D.I. 10 at 16 n.3.  EpicRealm has no connection with the Eastern District of Texas.  It tries to camouflage that fact by emphasizing that Marshall is "only" 150 miles away from Dallas.  But mere proximity of a strategically more desirable forum does not excuse epicRealm's decision to forum shop there.[4]  *See Smith v. Nissan N. Am.*, No. 206 CV 41, 2006 WL 1624514 (E.D. Tex. 2006) (denying motion to transfer from the Eastern District of Texas to the Northern District of Texas).

Moreover, epicRealm ***could*** have sued Oracle in the Eastern District of Texas, but chose not to do so, even after Safelite brought Oracle into the Texas action with its Third Party Complaint.  This was clearly a strategic choice, because epicRealm preferred targeting end-users of the accused software products, such as Safelite, rather than manufacturers, such as Oracle.  Thus, while epicRealm argues that extensive discovery, infringement and invalidity contentions, a tutorial for the court, a claim construction hearing and order for claim construction, and two summary judgment motions have already occurred in the Eastern District of Texas action, epicRealm neglects to mention ***that Oracle has not played any role in any of these events***,

---

[4]    The Third Circuit has stated that bad faith and forum shopping are proper bases for departing from the "first-filed" rule that generally requires that between two parallel litigations, the first-filed should have priority.  *EEOC,* 850 F.2d at 976.  Although the present case does not invoke the "first-filed" rule because it is not the same case as the one pending in the Eastern District of Texas (discussed *supra*), with different parties, accused products, and infringement contentions, the "forum shopping" exception to the "first-filed" rule shows that courts use forum shopping as a reason to negate a party's choice of forum.

precisely because of epicRealm's strategic choice to sue customers, not manufacturers.  D.I. 10 at 10-11.  Given epicRealm's prior strategic choices, its current  "preference" for the Eastern District of Texas should not be given any weight.

        3.     <u>The Location Of Witnesses Does Not Favor Transfer.</u>

EpicRealm asserts that five "key" witnesses – one inventor, one prosecuting attorney, two former CEOs, and the general counsel of epicRealm's predecessor – are not subject to subpoena power in Delaware.  EpicRealm contends that because these witnesses cannot be subpoenaed to trial in Delaware, they are necessarily "unavailable" to testify at trial.  But the controlling Third Circuit case, *Jumara*, states that the factor to consider is "the convenience of the witnesses – ***but only to the extent that the witnesses may actually be unavailable for trial in one of the fora***."  *Jumara*, 55 F.3d at 879 (emphasis added).  Thus, this factor should not weigh in epicRealm's favor unless and until it offers some specific "facts and circumstances" that demonstrate that a subpoena would be necessary because its identified witnesses would be unwilling to testify.  *See ADE Corp.*, 138 F. Supp. 2d at 570-571 ("Rather than starting with a presumption that witnesses may not appear and concluding the case should be transferred based on that assumption, it may make more sense to look at the facts and circumstances of each witness to see whether a subpoena is necessary.").[5]  Former employees of a party are presumed

---

[5]    In its Reply to QuinStreet's Opposition to its Motion to Consolidate and Transfer, epicRealm attempts to distinguish *ADE Corp.* based on the fact that the defendant's attorney in that case admitted that the third-party witness (an inventor) would likely be available for trial in Delaware, whereas epicRealm has no such information.  D.I.  13 in QuinStreet Action at 4 n.1.  However, what the defendant's attorney actually stated was that "he had never had a trial in a patent case [where] he was unable to get an inventor to appear and testify voluntarily," which would apply equally to epicRealm's  inventor-witness. *ADE Corp.*, 138 F. Supp. 2d at 571.  Moreover, epicRealm's claim that "none [of the five witnesses] has stated whether he is willing to travel to Delaware" ignores the obvious fact that:  epicRealm
(Continued . . .)

to be willing to testify even absent a subpoena. *Critikon*, 821 F. Supp. at 967; *see also J-Squared Tech., Inc. v. Motorola, Inc.*, No. 04-960-SLR, 2005 U.S. Dist. LEXIS 2258, at *8-9 (D. Del. 2005) (denying transfer in part because "two potential witnesses no longer employed by [defendant] have not refused to travel to Delaware for trial").

This Court previously has stated that while the appearance of three former employee witnesses outside of the subpoena power of the Court may not be guaranteed, "neither is their nonappearance written in stone," and has insisted on sufficient support for a claim that key witnesses will refuse to appear in Delaware. *AlliedSignal, Inc. v. Cooper Auto., Inc*., No. 96-540-SLR, 1997 U.S. Dis. LEXIS 22902, at *10-11 (D. Del. 1997); *see also Tse v. Ventana Med. Sys., Inc.*, No. 97-37-SLR, 1997 WL 811566, at *8 (D. Del. 1997) ("There is no evidence of record which suggests that any material witness is unable or unwilling to appear in this district."). This Court also has held that even a declaration of a litigation attorney stating that, based on prior experience, certain witnesses would not testify voluntarily was not a sufficient showing of the necessity of compulsory process to warrant transfer. *Matsushita Battery Indus. Co., Ltd. v. Energy Conversion Devices, Inc.*, No. 96-101-SLR, 1996 WL 328594, at *5 (D. Del. 1996). EpicRealm does not provide ***any*** facts or circumstances indicating why a subpoena would be necessary for four former employees and its former patent attorney. *See ADE Corp.*, 138 F. Supp. 2d at 571 (former-employee inventors "would have some incentive to cooperate with their assignee, even if that means having to travel to Delaware to testify in support of an infringement claim or in opposition to a claim the patent is invalid or unenforceable").

---

(. . . continued.)
    ***has not asked*** any of the witnesses whether they would travel to Delaware without a subpoena.

Nor has epicRealm shown that the witnesses it identifies as "key" witnesses have material information only available from them.  This Court previously has rejected the argument that three former technical employees with knowledge of the patented and accused products were material, or the only witnesses with this information.  *See AlliedSignal*, 1997 U.S. Dist. LEXIS 22902 at *9-10.

In particular, two of the five epicRealm witnesses who reside in Texas (John Ferguson and Kent Hill) have only general corporate knowledge:  epicRealm's corporate history, sales and marketing, business models, etc.  D.I. 10 at 17-18.  It seems unlikely that epicRealm could not find one current or former employee willing to travel to Delaware to provide this type of general background testimony.

Two of the other identified witnesses are the former general counsel (Bradley A. Carl) and Matt Talpis, one of three patent attorneys who worked on prosecution of the patents-in-suit.  *See* Artuz Decl., Ex. C (epicRealm's Initial Disclosures) at 2.  EpicRealm does not explain how the testimony of these attorneys would be critical, or even admissible.  For example, a patent's file history generally speaks for itself and to the extent testimony concerning it is relevant and admissible, it almost always is in the nature of expert testimony.

The fifth identified witness is an inventor (Ronald Howell), who is only one of three named inventors of the patents-in-suit.  EpicRealm identifies the subject matter of his testimony as "the creation of the technology encompassed by the epicRealm Patents and the sales and marketing efforts of such technology by epicRealm, Inc."  D.I. 10 at 18.  A Delaware court has rejected such conclusory statements in denying the criticality of three inventors when the defendant had not established what key testimony they would provide, or whether defendant planned to call just some or all of the inventors.  *ADE Corp.*, 138 F. Supp. 2d at 570.  Moreover,

it again seems unlikely that epicRealm could not persuade one of the three named inventors to travel to Delaware to testify.  For example, one of the inventors, Andrew B. Levine, resides in Owings Mills, Maryland.  Artuz Decl., Ex. C at 2.

Because epicRealm has not made any specific showing that its non-party witnesses have critical information that is not available from other sources, and because epicRealm has not offered any evidence that the witnesses would be unwilling to travel to Delaware for trial, this factor does not weigh in favor of transfer.

### 4. The Convenience Of The Parties Does Not Favor Transfer.

While generally averring inconvenience, epicRealm has not articulated any facts that indicate "any unique or unusual burden that this litigation places on its business operations." *Wesley-Jessen*, 157 F.R.D. at 218.  In fact, epicRealm has not indicated that it has any business operations other than licensing and litigation.  And this Court has been very clear that modern litigation – using email, faxes, overnight mail, etc. – all but eliminates any inconvenience to parties:

> [Plaintiff] counters that [defendant's] arguments are muted by modern technology. This court agrees. Convenience of the parties is a somewhat archaic notion in the world today.  Advances in technology have significantly lessened the burden of litigating in a distant district.

*Cypress*, 2001 U.S. Dist. LEXIS 20803 at *8-9 (internal citations omitted); *see also Wesley-Jessen*, 157 F.R.D. at 218.  Also, there is a distinction between discovery, which can be conducted at any convenient location for the parties and their employees, and trial, the only event that necessarily will take place in Delaware.  *Kuck v. Veritas Software Corp.*, No. 04-831-SLR, 2005 WL 123744, at *3 (D. Del. 2005).

- 27 -

EpicRealm goes to great lengths in its briefs to disavow any connection to Delaware. D.I. 10 at 12, 16. EpicRealm concedes, however, that its incorporation in Delaware is "relevant," but argues that it should not have to litigate in Delaware, because it is inconvenient for epicRealm. Reply to QuinStreet's Opposition (D.I. 13 in the Quinstreet Action) at 7-8. This Court repeatedly has disagreed with that logic:

> [Plaintiff] filed suit against [defendant] in the District of Delaware because [defendant] is a Delaware limited liability company. Given [defendant's] choice for incorporation, the court finds that it voluntarily exposed itself to the possibility of litigation in Delaware. [Defendant] cannot now attempt to shield itself from litigation in this forum by arguing that no conduct occurred in Delaware, that no injury was felt in Delaware, and that deposition and trial in Delaware would involve additional expense.

*Argos v. Orthotec LLC*, 304 F. Supp. 2d 591, 598 (D. Del. 2004); *Kuck*, No. 04-831-SLR, 2005 WL 123744, at *3 ("Defendants' complaints about litigating here are outweighed by the fact that [defendant] has enjoyed the benefits and protections of incorporation in Delaware . . . ."); *Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600, 604 (D. Del. 2004) ("Defendant voluntarily chose to incorporate in Delaware and avail itself of the laws of this State. As such, defendant cannot now claim that litigation in Delaware is too burdensome and warrants a transfer of venue without putting forth more than the argument that Ohio is a more convenient forum for it.").

Finally, if epicRealm were truly concerned about convenience, it would not have forum shopped into a jurisdiction 150 miles away from its place of business. For these reasons, epicRealm's convenience does not weigh in favor of transfer.

5. <u>The Location Of Documents Does Not Favor Transfer.</u>

EpicRealm argues that it has 146 boxes of paper-only documents in Texas that it would have to sort, copy, transport to Delaware, and store, if its motion to transfer is not granted. D.I. 10 at 19. This is a red herring.

First, epicRealm confuses **discovery** with **trial.** The location of discovery is independent of the location of trial, and the 146 boxes will be available in Texas regardless of whether or not epicRealm's motion to transfer to the Eastern District of Texas is granted. Second, epicRealm surely would not be able to introduce 146 boxes worth of documents as trial exhibits, so this number is meaningless. Third, epicRealm will be forced to choose its trial exhibits no matter where this trial occurs, so the sorting issue is moot. Finally, the cost of shipping and storing boxes cannot possibly be considered a substantial cost in a major patent litigation. *See Cypress*, 2001 U.S. Dist. LEXIS 20803 at *9 ("These technologies have . . . lowered the cost of moving that information from one place to another.") (quoting *Wesley-Jessen*, 157 F.R.D. at 218); *ADE Corp.*, 138 F. Supp. 2d at 571 ("With new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles.").

6. Oracle's Claims Are Not Specific To The Eastern District
Of Texas.

Oracle's litigation against epicRealm arises out of Oracle's reasonable apprehension of suit by epicRealm, which is not specific to the Eastern District of Texas. While Oracle first received notice of the allegations of potential infringement from Safelite when Safelite was a party to the Texas action, Oracle does not seek declarations of noninfringement and invalidity of the epicRealm patents just for its customers in the Eastern District of Texas. Rather, because "[p]atent cases are explicitly federal issues and the rights determined thereunder

are national in scope," Oracle seeks to protect its customers nationwide, including its Delaware customers. *Praxair, Inc. v. ATMI, Inc.*, No. 03-1158-SLR, 2004 WL 883395, at *2 (D. Del. 2004). Further, Safelite has settled out of the case in the Eastern District of Texas, and Safelite's indemnity claims against Oracle have been settled as well. Moreover, as discussed above, Oracle conducts significant sales of its purportedly infringing software with customers in Delaware, and thus this case concerns Delaware interests. Hartig Decl., ¶ 2.

Because this case involves two Delaware companies and concerns conduct that impacts other Delaware residents, it should remain in Delaware's court.

## II.    THE COURT SHOULD NOT CONSOLIDATE THIS CASE WITH THE QUINSTREET CASE.

### A.    EpicRealm Has Not Met Its Burden Of Showing That Consolidation Is Warranted.

The party seeking consolidation under Fed. R. Civ. P. 42(a) "must bear the burden of showing the commonality of  factual and legal issues in different actions . . . ." *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993) (*citing MacAlister v. Guterma*, 263 F.2d 65, 70 (2d Cir. 1958)). In particular, "[t]he burden is on the party seeking aggregation to show common issues of law or fact; the burden is not on the party opposing aggregation to show divergences." *Id.* at 374 (citing *MacAlister*, 263 F.2d at 70). "The mere existence of common issues, however, does not require consolidation." *U.S. v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 143 (D. Del. 1999). That is, the moving party's showing of a common issue of law or fact is simply the starting point. "[A] district court must examine the 'special underlying facts' with 'close attention' before ordering consolidation." *In re Repetitive Stress Injury Litig.*, 11 F.3d at 373 (quoting *Katz v. Realty Equities Corp.*, 521 F.2d 1354, 1361 (2d Cir.  1975)).

- 30 -

Only after a court has weighed the *specific facts* of the cases can the Court decide whether or not to exercise its discretion to consolidate. "[I]t is possible to go too far in the interests of expediency and to sacrifice basic fairness in the process." *In re Repetitive Stress Injury Litig.*, 11 F.3d at 374 (quoting *Malcolm v. Nat. Gypsum Co.*, 995 F.2d 346, 353 (2d Cir. 1993)). "To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *Southwest Marine Inc. v. Triple A. Mach. Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989); *see also Dentsply*, 190 F.R.D. at 143 ("In determining whether to consolidate, the court balances the savings of time and effort gained through consolidation against the inconvenience, delay, or expense that it might cause."); *In re Consolidated Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1988).

EpicRealm has not satisfied its burden to show that consolidation is proper. To justify consolidation, epicRealm relies on general statements that "[t]he facts and law giving rise to the Oracle and Quinstreet Complaints are virtually identical" because "[b]oth Oracle and Quinstreet seek a declaration that the epicRealm Patents are not infringed and are invalid." D.I. 10 at 5. But these statements completely ignore that Quinstreet's products and services differ substantially from Oracle's products.

Oracle is a software developer and manufacturer and provides support to its customers for Oracle software. QuinStreet's business is "on line direct marketing." Declaration of Michael McDonough (D.I. 11 in QuinStreet Action), ¶ 3. QuinStreet's "clients purchase customer leads that QuinStreet generates by operating thousands of customer lead-generating web sites . . . ." *Id.* "QuinStreet also provides web site hosting services to a number of clients."

- 31 -

*Id.*  As even epicRealm admits, "Oracle and Quinstreet are different entities that each produce their own products."  D.I. 14 at 5 (epicRealm's Reply Brief in support of Extension Motion).

EpicRealm's conclusions that consolidation will "conserve judicial resources" and "not cause prejudice to the rights of any party" are not, therefore, supported by the specific facts of the two cases, but rather amount to nothing more than broad generalizations.  *See* D.I. 10 at 6. The differences in Oracle's and QuinStreet's products and services, as well as in their procedural circumstances, give rise to numerous possibilities that Oracle will be prejudiced by a consolidated trial with QuinStreet.  For example, QuinStreet may be bound under principles of res judicata or collateral estoppel by the rulings of the Texas action, where it is defending its customer, Herbalife.  *See Foster v. Hallco Mfg. Co, Inc.*, 947 F.2d 469 (Fed. Cir. 1991).  If the patents-in-suit were held valid in that case, and epicRealm were then to argue that QuinStreet was bound by that outcome, then how could Oracle ***possibly*** receive a fair trial before the same jury with QuinStreet?  The jury would have to be instructed – at least implicitly – that the patents are valid insofar as QuinStreet's defenses are concerned, undoubtedly causing prejudice to Oracle's invalidity defenses.

Similarly, if QuinStreet is bound by infringement or reasonable royalty determinations made in Texas, the prejudice of a consolidated trial is similarly evident:  even though Oracle's products are different, the jury is likely to be influenced by the established fact that at least one defendant's product infringes and is likely to wonder how substantial the differences are between Oracle's products and what already has been adjudged to infringe.  Thus, there is a serious possibility that a consolidated trial will involve a comparison of Oracle's products and QuinStreet's products, rather than Oracle's products and the claims of the patents-

in-suit.  Similarly, if QuinStreet is bound by a reasonable royalty finding, how can Oracle's attempt to argue for a lower royalty not be prejudiced by a consolidated trial?

Even if there are no binding rulings from the Texas action, a consolidated trial may well prejudice Oracle precisely because the parties' products are different and conflicts may arise between Oracle and QuinStreet on how to argue noninfringement or how to argue invalidity based on how the claims are applied to the accused products.  Oracle would then be faced with a trial where it not only has to refute epicRealm's arguments, but also QuinStreet's arguments. The potential prejudice to Oracle is thus evident.  *See In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) ("[W]hile consolidated cases may be treated as one lawsuit in order to conserve judicial resources, the procedure should not impose the heavy toll of a diminution of any party's rights.").

        B.        It Is Premature For The Court To Decide Whether The Cases Should Be Consolidated For Purposes Of Discovery, Claim Construction, Motions Or Trial.

A decision on consolidation is premature for various reasons.  EpicRealm not only has refused to respond to Oracle's Complaint, but also has suggested that this Court does not have subject matter jurisdiction over this case.  As discussed above, epicRealm should either concede that subject matter jurisdiction exists or file a Rule 12 motion.

Once subject matter jurisdiction is established, the Court should then decide whether neither, only one, or both of these actions should be transferred.  That decision may moot the issue of whether to consolidate; only if the Court decides that neither action should be transferred would consolidation remain an issue.  Consequently, there is no reason to decide consolidation before the decisions on subject matter jurisdiction and transfer.

Even if subject matter jurisdiction and transfer were decided now – and both Oracle's and QuinStreet's actions remained in this Court – there is not enough information about the differences or similarities of the actions at this point for the Court to make an informed decision on whether to consolidate the actions for any purpose.  Only after epicRealm responds to the Complaints in both actions, counsel meet and confer, and the parties make their initial disclosures can consolidation – even for purposes of discovery, let alone trial – be addressed in any rational manner.

## CONCLUSION

The parties in this lawsuit are Delaware companies.  The patent infringement and validity claims asserted are related to commercial activities throughout the United States, including Delaware.  Oracle's selection of Delaware as the forum in which to resolve this dispute was proper, rational and should be given substantial deference.  EpicRealm has not met, and cannot meet, its heavy burden of proving that this case should be transferred to a different venue where neither party is incorporated nor a resident.  For the foregoing reasons, the Court should deny epicRealm's motion to consolidate and transfer.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

_____

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Plaintiffs Oracle Corporation and Oracle U.S.A. Inc.*

OF COUNSEL:

James G. Gilliland, Jr.
Joseph A. Greco
Chad E. King
Robert J. Artuz
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, CA  94301
650.326.2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA  94065

Dated:  September 26, 2006
538871

- 35 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Michael F. Bonkowski, Esquire
> SAUL EWING LLP
> 222 Delaware Avenue, Suite 1200
> P.O. Box 1266
> Wilmington, DE  19899

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on September 26, 2006 upon the following individuals in the manner indicated:

| **<u>BY E-MAIL AND HAND DELIVERY</u>** | **<u>BY E-MAIL</u>** |
|---|---|
| Michael F. Bonkowski, Esquire | Larry D. Carlson, Esquire |
| SAUL EWING LLP | BAKER BOTTS L.L.P. |
| 222 Delaware Avenue, Suite 1200 | 2001 Ross Avenue |
| P.O. Box 1266 | Dallas, TX  75201 |
| Wilmington, DE  19899 | |

*/s/ Mary B. Graham*

_____

Mary B. Graham (#2256)