IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORACLE CORPORATION and      :
ORACLE U.S.A., INC.,            :
                              :
        Plaintiffs,           :
                              :
v.                           :       C. A. No. 06-cv-414 (SLR)
                              :
EPICREALM LICENSING, LP,      :
                              :
        Defendant.         :

**DEFENDANT EPICREALM LICENSING, LP'S REPLY
IN SUPPORT OF ITS MOTION TO CONSOLIDATE AND TRANSFER**

SAUL EWING, LLP
Michael F. Bonkowski, Esquire (No. 2219)
Kimberly L. Gattuso, Esquire (No. 3733)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware 19801-1611
(302) 421-6800

BAKER BOTTS L.L.P.
Larry D. Carlson, Esquire
Kevin J. Meek, Esquire
Jeff Moles, Esquire
2001 Ross Avenue
Dallas, TX 75201-2980

Attorneys for epicRealm Licensing, LP

DATED:     October 3, 2006

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   THE COURT SHOULD CONSOLIDATE THE ORACLE AND QUINSTREET
      ACTIONS ..............................................................................................................2

III.  THE COURT SHOULD TRANSFER THIS ACTION TO THE EASTERN
      DISTRICT OF TEXAS, MARSHALL DIVISION............................................5

      A.    Contrary to Oracle's Claim, This Action Is Closely Connected to the
            Pending Texas Action .................................................................................5

      B.    Convenience of the Witnesses ....................................................................6

      C.    Convenience of the Parties.........................................................................10

      D.    Local Interest .............................................................................................13

      E.    Judicial Efficiency, First Filed Case: The Texas Court Is Already Familiar
            with the Technology, the Patents, Claim Construction, and Infringement
            Issues..........................................................................................................14

      F.    *Air Products* ..............................................................................................17

IV.   EPICREALM IS NOT REQUIRED TO CHALLENGE THE COURT'S
      SUBJECT MATTER JURISDICTION BEFORE THE COURT DECIDES THE
      CONSOLIDATION AND TRANSFER ISSUES .............................................18

V.    CONCLUSION.....................................................................................................20

**TABLE OF AUTHORITIES**

**CASES**

*ADE Corp. v. KLA-Tencor Corp.*,
    138 F. Supp. 2d 565 (D. Del. 2001)..................................................................7, 9

*Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*,
    133 F. Supp. 2d 354 (D. Del. 2001)..................................................2, 17-18, 20

*Affymetrix Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998)....................................................................6, 7

*Atl. Ship Rigging Co. v. McLellan*,
    184 F. Supp. 569 (3d Cir. 1961) ....................................................................18-19

*APV North America, Inc. v. Sig Simonazzi North America, Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002)......................................................................11

*Arrow Communication Laboratories, Inc. v. John Mezzalingua Associates, Inc.*,
    No. Civ. A. 05-357-SLR, 2005 WL 2786691 (D. Del. Oct. 26, 2005)..............11

*Bloom v. Barry*,
    755 F.2d 356 (3d. Cir. 1985)........................................................................ 19-20

*BP Chemicals Ltd. v. Union Carbide Corp.*,
    4 F.3d 975, 978 (Fed. Cir. 1993)............................................................................6

*Cashedge, Inc. v. Yodlee Inc.*,
    No. Civ. A. 06-170-JJF, 2006 WL 2038504 (D. Del. July 19, 2006)................16

*Citizen Electronics Co., Ltd. v. OSRAM GMBH*,
    377 F. Supp. 2d 149 (D.D.C. 2005) ................................................................12-13

*Discount Bank & Trust Co. v. Salomon Inc.*,
    141 F.R.D. 42 (S.D.N.Y. 1992) ..............................................................................4

*DVI, Inc. v. DVI Financial Services, Inc.*,
    No. 03-12656 MFW, 2004 WL 1498593 (D. Del. June 23, 2004)........................6

*Green Isle Partners, Ltd. S.E. v. Ritz Carlton Hotel Co.*,
    C.A. No. 01-202-JJF (D. Del. Nov. 2, 2001)......................................................11

i

*See IP Development, Inc. v. TCI Cablevision of Calif., Inc.,*
    248 F.3d 1333 (Fed. Cir. 2001)....................................................................................12

*James v. Daley & Lewis,*
    406 F. Supp. 645 (D.Del. 1976) ........................................................................... 18-19

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3rd Cir. 1995) ......................................................................................11

*Krupp Int'l, Inc. v. Yarn Indust., Inc.,*
    615 F. Supp. 1103 (D. Del. 1985) ...............................................................................8

*Moravian Sch. Advisory Bd. v. Rawlins,*
    70 F.3d 270 (3d. Cir. 1995)................................................................................ 18-19

*Memminger v. Infocure Corp.,*
    2000 U.S. Dist. LEXIS 22077 (D. Del. Nov. 14, 2000) .....................................................6

*Mentor Graphics Corp. v. Quickturn Design Systems, Inc.,*
    77 F. Supp. 2d 505 (D. Del. 1999)...............................................................................11

*Nesbit v. Gears Unlimited, Inc.,*
    347 F.3d 72 (3d. Cir. 2003)........................................................................................19

*Nilssen v. Everbrite, Inc.,*
    No. Civ.A. 00-189-JJF, 2001 WL 34368396 (D. Del. Feb. 16, 2001) .................6-7, 15-16

*Pennwalt Corp. v. Purex Indust., Inc.,*
    659 F. Supp. 287 (D. Del. 1986)..................................................................................8

*Primavera Familienstiftung v. Askin,*
    173 F.R.D. 115 (S.D.N.Y. 1997) ..................................................................................4

*Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.,*
    No. Civ. 04-852-SLR, 2005 WL 735880 (D. Del. March 30, 2005)................ 11-12, 14-16

*Tongkook America, Inc. v. Shipton Sportswear Co.,*
    14 F.3d 781 (2d Cir. 1994).........................................................................................19

*Tracinda Corp. v. DaimlerChrysler AG,*
    Nos. 00-984, 01-004 and 00-993, 2001 WL 849736 (D. Del. July 26, 2001) ....................4

*U.S. v. Dentsply Int'l, Inc.,*
    190 F.R.D. 140 (D. Del. 1999) ....................................................................................2

*U.S. Wireless Corp. v. Haskell & White, LLP,*

Nos. 01-10262 (PJW), 01-10263 (PJW), 01-10264 (PJW), ADV. 03-55652
(PJW), 2004 WL 1146098 (D. Del. May 18, 2004) .........................................................8

*Virgin Wireless, Inc. v. Virgin Enterprises Ltd.,*
201 F. Supp. 2d 294 (D. Del. 2002)........................................................................16

*Zoetics, Inc. v. Yahoo!, Inc.,*
No. Civ. A. 06-108-JJF, 2006 WL 1876912 (D. Del. July 6, 2006)................................ 6-8

## STATUTES

28 U.S.C. § 1404(a) ............................................................................... 1, 10-12, 15, 20

## RULES

Federal Rule of Civil Procedure 26........................................................................8

Federal Rule of Civil Procedure 42.......................................................................2, 4

## TREATISES

8 James Wm. Moore, Moore's Federal Practice § 42.10[6] (2006)..................................3

9 Wright & Miller, Federal Practice and Procedure § 2384 (2006)..................................3

Defendant epicRealm Licensing, LP ("epicRealm") files this Reply in support of its Motion to Consolidate and Transfer ("Motion") and in response to Oracle Corporation and Oracle U.S.A. Inc.'s ("Oracle") Opposition to epicRealm's Motion ("Opposition").

## I.    INTRODUCTION

Common issues of fact, overlapping parties, and identical patents weigh heavily in favor of consolidating the Oracle and QuinStreet actions. Ignoring these obvious and significant similarities between the two actions, Oracle argues that consolidation with QuinStreet will prejudice its rights at trial. Delaware courts have rejected this argument. Nor do differences in Oracle's and QuinStreet's products prevent consolidation. As QuinStreet admits in its action against epicRealm, one or more of its systems for generating dynamic web pages utilize Oracle software.

Cognizant of the close connection between this lawsuit and the Texas Action, Oracle attempts to avoid transfer by distancing itself from the Texas Action. Oracle's claims in this lawsuit, however, are closely connected to the Texas Action. Oracle bases its entire Complaint on epicRealm conduct that occurred solely in connection with the Texas Action.

The convenience of the witnesses, typically the most important factor in a section 1404(a) analysis, argues forcefully for transfer to Texas. EpicRealm has identified five non-party fact witnesses located in Texas. All these witnesses are unavailable to attend trial in Delaware. By contrast, Oracle has not named even a single non-party fact witness, much less one who is located in Delaware.

Convenience of the parties, another section 1404(a) factor, also strongly supports transfer to Texas. Transfer to Texas will greatly inconvenience epicRealm, a small company located in Dallas, Texas, a 150 mile car ride from the courthouse in Marshall, Texas. Transfer to Texas may actually be more convenient to Oracle, which is located in Redwood Shores, California, because Texas is

closer to California than is Delaware.[1]  Certainly, transfer to Texas will not inconvenience Oracle or its witnesses.

The trial court in Texas has acquired substantial expertise concerning the epicRealm patents and related technology.  It would be a waste of judicial resources for this Court to have to get up to speed on the patents and technology when the Texas court already has that expertise.  Transferring this case to Texas, where the Texas court can address any additional issues presented with little incremental investment of time or effort, would be far more efficient.

The facts of this case are remarkably similar to the facts in *Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*, 133 F. Supp. 2d 354 (D. Del. 2001).  Because this Court transferred that patent declaratory judgment case to Texas, it should transfer this case to Texas also.

## II.    THE COURT SHOULD CONSOLIDATE THE ORACLE AND QUINSTREET ACTIONS.

In its Opposition to epicRealm's Motion, Oracle erroneously claims that "epicRealm has not met its burden of showing that consolidation is warranted."  D.I. 16 at 30.  Oracle argues that its products and services are different from those of QuinStreet.  It then suggests a few "possibilities" of how it might be prejudiced by a consolidated trial depending on the outcome of a trial in the Texas Action against QuinStreet customer Herbalife.    D.I. 16 at 31-32.    Neither of these arguments, however, defeats the very strong case for consolidation.

As set forth more fully in epicRealm's Motion, Federal Rule of Civil Procedure 42 ("Rule 42") "gives this Court broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice."  *U.S. v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 142-43 (D. Del. 1999); D.I. 10 at 5.  In light of the identical allegations contained in the Oracle and QuinStreet complaints, Rule 42's requirement of common

---

[1]    Oracle has six offices in Texas (including an office in Dallas), and it has no offices in Delaware.  *See* http://www.oracle.com/corporate/contacts/us.html.

factual or legal issues is clearly satisfied.  In addition, several other factors favor consolidation in this instance, including overlapping parties (epicRealm is the sole defendant in both actions), similar non-infringement claims based on common facts, similar or identical claims of invalidity, identical patents and similar technology, non-party witness testimony relevant to both Oracle and QuinStreet, and discovery overlap.  *See* 8 James Wm. Moore, Moore's Federal Practice § 42.10[6] (2006); 9 Wright & Miller, Federal Practice and Procedure § 2384 (2006).  Perhaps recognizing the overwhelming similarity between the Oracle and QuinStreet actions, QuinStreet, unlike Oracle, does not oppose consolidation.

Oracle claims that its products and services are different from those of QuinStreet.  D.I. 16 at 31-32.  There is, however, overlap between the products and services offered by QuinStreet and those offered by Oracle.  While Oracle did not apprise the Court of this fact, QuinStreet candidly admitted in its response to epicRealm's Motion to Transfer that "one or more of QuinStreet's systems for generating dynamic web pages utilize Oracle software."  *See* QuinStreet's Memorandum of Law in Opposition to Defendant epicRealm Licensing, LP's Motion to Transfer, QuinStreet D.I. 10 at 9-10.  The Court and the parties will benefit from consolidated discovery, a consolidated technology tutorial and Markman hearing, and consolidated motion practice on common issues such as validity.  That there may be some differences between the products and services offered by Oracle and those offered by QuinStreet will not deprive the Court and the parties of these benefits.[2]

Oracle argues that it may be prejudiced by a consolidated trial with QuinStreet if QuinStreet's customer Herbalife loses at trial of the Texas Action.  Specifically, Oracle claims that if Herbalife loses on issues of infringement, validity, or damages in Texas, QuinStreet might be bound by those adverse determinations, with spillover harm to Oracle in the event of a consolidated

---

[2]   Not granting consolidation could have the unfortunate result of having two different judges giving conflicting rulings on whether Oracle's software – which is part of QuinStreet's systems for generating dynamic web pages – does infringe epicRealm's patents.

trial here. D.I. 16 at 32-33. The short answer to these speculative concerns is that if Herbalife tries (does not settle) the Texas Action, if it loses at trial, and if QuinStreet is bound by the jury's fact determinations, then this Court can later decide if Oracle will be prejudiced by a consolidated trial with QuinStreet. If so, the Court can order separate trials pursuant to Rule 42(b). The Court should still consolidate these cases, however, to achieve all the benefits that will result from consolidated pre-trial proceedings.

"[C]ourts considering similar arguments concerning the impact of consolidation on a party's choice of counsel or its procedural and substantive rights have . . . conclude[d] that no such prejudice will result from consolidation." *Tracinda Corp. v. DaimlerChrysler AG*, Nos. 00-984, 01-004 and 00-993, 2001 WL 849736, at *2 (citing *Primavera Familienstiftung v. Askin,* 173 F.R.D. 115, 129-130 (S.D.N.Y. 1997) and *Discount Bank & Trust Co. v. Salomon Inc.*, 141 F.R.D. 42, 44 (S.D.N.Y. 1992)). "Where, as here, common questions of law and fact exist among the claims advanced, the mere pursuit of a different legal theory or a different claim by one of the parties is insufficient to defeat a motion to consolidate." *Tracinda Corp.*, 2001 WL 849736, at *2. In short, if this Court were to grant epicRealm's Motion, both Oracle and QuinStreet would still be able to pursue any individual claims or defenses they may have. If a consolidated trial created a real risk of prejudice to Oracle (a judgment that cannot be made until much later, after trial in Texas), then the procedural remedy of separate trials is available under Rule 42(b). Oracle's unsupported claim of prejudice is, at best, a red herring.

Given the existence of common factual and legal issues, the lack of prejudice to the rights of the parties, and the savings of time, money and effort, consolidation of the Oracle and QuinStreet actions is warranted.

Oracle also contends that there is no reason for the Court "to decide consolidation before the decisions on subject matter jurisdiction and transfer." D.I. 16 at 33-34. In support of this argument,

4

Oracle asserts that the Court does not have enough information about "the differences or similarities of the actions . . . to make an informed decision on whether to consolidate . . . " *Id.* Oracle's contentions are wrong for a variety of reasons. First and most importantly, the issue of this Court's subject matter jurisdiction is not presently before the Court. Therefore, it is illogical for Oracle to suggest that the Court ignore a pending motion in favor of deciding an issue that is not presently before it. That notwithstanding, the Court has plenty of information before it to determine whether or not consolidation is appropriate. Indeed, over the last six weeks, the parties have collectively filed ten briefs, three declarations, and have requested oral argument on epicRealm's Motion. Ironically, as Oracle is the only party opposing consolidation, it certainly had ample opportunity to highlight any reasons why it contends that the cases should not be consolidated. Given the commonality of the issues of fact and law presented in the Oracle and QuinStreet actions, consolidation is appropriate. The Court can then jointly decide the transfer motions.

### III. THE COURT SHOULD TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION.

#### A. Contrary to Oracle's Claim, This Action Is Closely Connected to the Pending Texas Action.

Oracle attempts to distance itself from the Texas Action by arguing that both Oracle and its indemnitee, Safelite, are no longer parties in the Texas Action. D.I. 16 at 3, 6, 29-30. The Texas Action, however, is the foundation of Oracle's declaratory judgment claims. In its Complaint, Oracle describes at length the two infringement cases that epicRealm filed in the Eastern District of Texas, the consolidation of those two actions into the Texas Action, the filing by its customer Safelite of a Third-Party Complaint against Oracle in the Texas Action, the alleged breadth of epicRealm's infringement claims in the Texas Action, the nature of the indemnity claim asserted by Safelite against Oracle in the Texas Action, epicRealm's letter to defendant Clark Consulting in the Texas Action, discovery requested by epicRealm in the Texas Action, epicRealm's settlement with

Safelite in the Texas Action, and Safelite's settlement with Oracle in the Texas Action. D.I. 1 at ¶¶ 10-28. A declaratory judgment plaintiff's "reasonable apprehension of suit turns on the conduct of the patentee." *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993). Oracle's claimed reasonable apprehension of suit is based exclusively on activities of epicRealm taken in connection with the Texas Action. *Id.* Oracle's claims are, therefore, intimately connected to the Texas Action.

**B.    Convenience of the Witnesses.**

"'Convenience of the expected trial witnesses is the most important factor to consider when determining whether or not transfer is appropriate.'" *Zoetics, Inc. v. Yahoo!, Inc.*, No. Civ. A. 06-108-JJF, 2006 WL 1876912, at *4 (D. Del. July 6, 2006) (quoting *Memminger v. Infocure Corp.*, 2000 U.S. Dist. LEXIS 22077, at *12-13 (D. Del. Nov. 14, 2000)); *accord, e.g.*, *DVI, Inc. v. DVI Financial Services, Inc.*, No. 03-12656 MFW, 2004 WL 1498593, at *2 (D. Del. June 23, 2004) ("'most crucial factor'"); *Nilssen v. Everbrite, Inc.*, No. Civ. A. 00-189-JJF, 2001 WL 34368396, at *2 (D. Del. Feb. 16, 2001) ("the most important factor"); *Affymetrix Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) ("'[p]robably the most important factor'"; "traditionally weighed quite heavily").

In its Motion, epicRealm identified five fact witnesses, including one of the inventors, who are located in Texas. D.I. 10 at 17-18. EpicRealm described the subject matter of the testimony that it anticipates eliciting from each of these witnesses at trial. These witnesses are not subject to the trial subpoena power of this Court, but in the event of transfer to the Eastern District of Texas, could be subpoenaed by the Texas court to testify at trial. In response, Oracle has not identified a single Delaware witness. Instead, it makes two arguments. First, it claims that the five Texas witnesses should be considered available to testify in Delaware. Second, it suggests that their testimony may not be important in any event. Oracle is wrong on both counts.

Oracle argues that these witnesses should be considered available for trial in Delaware because they might be persuaded by epicRealm to travel to Delaware to attend trial. D.I. 16 at 24-27. None of these witnesses, however, is a current employee of epicRealm. Four are ex-employees of epicRealm's predecessor company, and the fifth, a patent lawyer who helped prosecute epicRealm's patent applications, is no longer associated with epicRealm or with any law firm that does business for it. EpicRealm currently has no control over these witnesses.

Oracle cites cases for the proposition that only the convenience of unavailable witnesses should be considered. What Oracle does not acknowledge, however, is that Delaware courts have consistently held that a witness is deemed to be "unavailable" to testify at trial if the witness is beyond the subpoena power of the trial court. Contrary to Oracle's suggestion, no additional showing of unavailability is required. EpicRealm "bears no burden to show that the witnesses it plans to subpoena would be 'reluctant' to testify. 'It is sufficient . . . [that] the witness is not subject to a Court's subpoena power.'" *Zoetics*, 2006 WL 1876912, at *5. "A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power." *Nilssen*, 2001 WL 34368396, at *4. Even if the third-party witnesses agreed to appear for trial in Delaware, "the mere assurance that these individuals will 'appear at trial is not the same thing as having them amenable to the subpoena power of the trial court' . . . 'even previously cooperative witnesses may become reluctant participants where a trial in a distant state such as Delaware promises the incurrence of substantial, prolonged inconvenience.'" *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 205 (D. Del. 1998).[3]

---

[3] Oracle argues that *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565 (D. Del. 2001), requires epicRealm to show that the third-party witnesses are unwilling to travel to Delaware in addition to showing that they are not subject to subpoena power of the Delaware court. Contrary to Oracle's suggestion, however, the lawyer's statements to the court in *ADE* did represent that he would likely be able to secure the attendance of one of the inventors. *Id.* at 571. EpicRealm, however, cannot say the same for the five fact witnesses it has identified. None has stated whether he is

Several Delaware decisions hold that convenience of witnesses who are former employees of a party should be considered. *E.g.*, *U.S. Wireless Corp. v. Haskell & White, LLP*, Nos. 01-10262 (PJW), 01-10263 (PJW), 01-10264 (PJW), ADV. 03-55652 (PJW), 2004 WL 1146098, at *2 (D. Del. May 18, 2004) (granting transfer where former employee-officers were subject to subpoena power of transferee court but were not subject to subpoena power in Delaware); *Pennwalt Corp. v. Purex Indust., Inc.*, 659 F. Supp. 287, 291 (D. Del. 1986) ("The availability of witnesses, in particular the amenability of nonparty witnesses to subpoena, is in the context of this case the most crucial factor in deciding this motion to transfer . . . Many of these potential [nonparty] witnesses are former employees of either Purex or Turco, who cannot be compelled by either party to attend trial in Delaware"); *Krupp Int'l, Inc. v. Yarn Indust., Inc.*, 615 F. Supp. 1103, 1108 (D. Del. 1985) ("Platt Saco has identified additional former employees who would be called to testify and who could be subpoenaed in South Carolina but not in Delaware. Thus, this factor weighs somewhat more heavily in favor of transfer to South Carolina.").

Oracle is wrong in suggesting that the testimony of the five Texas witnesses may not be important. EpicRealm first identified these witnesses (along with five others, none of whom are in Delaware) in its Initial Disclosures served in the Texas Action on February 16, 2006, long before Oracle filed this case. These are the witnesses that epicRealm believes it will call at trial to "support its claims." Fed. R. Civ. P. 26(a)(1)(A).

Two of the witnesses, John Ferguson and Kent Hill, were employed by epicRealm's predecessor company, epicRealm, Inc. These witnesses are familiar with the corporate history, sales and marketing, and business operations of epicRealm, Inc. D.I. 10 at 17-18. They can tell the "epicRealm story" and can testify to facts relevant to the hypothetical negotiation that will

---

willing to travel to Delaware, and epicRealm is under no obligation to obtain a definitive answer from these witnesses regarding their willingness to attend trial in Delaware. *Zoetics*, 2006 WL 1876912, at *5.

determine a reasonable royalty rate. Oracle is wrong in claiming that epicRealm can find another employee who would be willing to travel to Delaware to testify regarding the corporate history of epicRealm and other general corporate knowledge, D.I. 16 at 26, because epicRealm does not have any current employees who were part of its predecessor company.

A third Texas witness, Bradley A. Carl, is the former Vice-President, Chief Operating Officer, and General Counsel of epicRealm, Inc. He can describe the relationship between epicRealm and its predecessor and discuss prosecution of the patents and their transfer to epicRealm. D.I. 10 at 17-18.

The fourth Texas witness, Matt Talpis, was never an epicRealm employee. He is outside counsel who prosecuted the epicRealm patents. (Mr. Talpis is now with a firm that has no association with epicRealm.) Mr. Talpis can testify concerning any prosecution history or inequitable conduct arguments raised by Oracle. *Id.*

The last Texas witness is Ronald Howell, one of three inventors. D.I. 16 at 26-27. Oracle cites *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565 (D. Del. 2001), for the proposition that Delaware courts have recognized that the testimony of some inventors may not be critical. In *ADE Corp.*, however, the court disregarded the third-party testimony of the inventors of a patent that the defendant asserted in its counterclaims. *Id.* at 570. These witnesses were not the inventors of the original patent asserted by the plaintiff, and the court called into question the defendant's intentions in asserting the new patent, noting that "the defendant should not be able to undermine a plaintiff's choice of forum by voluntarily joining claims and then contending they cannot fairly be resolved here." *Id.*

This case presents a completely different situation. Oracle chose to file its declaratory judgment action seeking to, *inter alia*, invalidate the patents on which Mr. Howell is listed as one of the inventors. EpicRealm has not introduced any new patents or claims in this lawsuit in an attempt

to undermine Oracle's choice of forum. The inventor in question, Mr. Howell, is one of only three inventors of the two patents that are at the very heart of both this lawsuit and the Texas Action. It is hard to imagine how Mr. Howell's testimony will not be critical in this lawsuit.

The first action that epicRealm filed in the Eastern District of Texas for infringement of the patents-in-suit was against Speedera Networks, Inc. QuinStreet's Complaint, QuinStreet D.I. 1 at ¶ 9. That case has since settled. Speedera noticed just one deposition in that case, the deposition of inventor Howell. *See* Declaration of Larry D. Carlson at ¶ 3-5, attached hereto as Exhibit 1. That Mr. Howell was the first and only witness whose deposition Speedera requested before settlement of that case confirms the importance of Mr. Howell as a witness.

Oracle goes to great lengths to attack the significance of the third-party testimony identified by epicRealm, but noticeably fails to identify even one witness in or near Delaware that would suffer inconvenience if this case were transferred to Texas. By contrast, epicRealm has named five witnesses located in Texas and described the subject matter of the testimony that it expects to elicit from these witnesses at trial. These individuals are not employees of epicRealm, and epicRealm has no control over them. Because these witnesses are not subject to the trial subpoena power of this Court, they are deemed unavailable. The convenience of the witnesses factor, often deemed to be the most important, argues overwhelmingly for transfer to Texas.

### C. Convenience of the Parties.

This is not a situation in which transfer will merely shift any inconvenience from one party to the other. Marshall, Texas, is a 150 mile car ride from epicRealm's headquarters in Dallas, Texas. Transfer to Texas will eliminate venue inconvenience for epicRealm. Transfer to Texas will not additionally inconvenience Oracle, which is headquartered in Redwood Shores, California. In this situation, Delaware courts have held that convenience of the parties is a powerful section 1404(a) factor. EpicRealm cited seven Delaware cases for that proposition in its Motion. *See* D.I.

10 at 14-15. Oracle does not attempt to distinguish, discuss, or even mention a single one of these cases in its Opposition.

Oracle notes that epicRealm chose to incorporate in Delaware as a basis for avoiding transfer to Texas. While the state of epicRealm's incorporation is relevant, it does not prevent a transfer that would materially advance the overall convenience of the parties and witnesses. "Although a party's incorporation in Delaware is not irrelevant to the Court's decision, it is not dispositive. Where an alternative forum is more convenient and has more substantial connections with the litigation, 'incorporation in Delaware will not prevent transfer.'" *APV North America, Inc.,* 295 F. Supp. 2d 393, 399-400 (D. Del. 2002) (quoting *Green Isle Partners, Ltd. S.E. v. Ritz Carlton Hotel Co.,* C.A. No. 01-202-JJF (D. Del. Nov. 2, 2001)); *accord, e.g., Mentor Graphics Corp. v. Quickturn Design Systems, Inc.,* 77 F. Supp. 2d 505, 509 n. 6 (D. Del. 1999) ("Although the court does not mean to suggest that defendant's state of incorporation is irrelevant to a venue transfer inquiry, it is certainly not dispositive. Indeed, it is not mentioned in § 1404, nor is it among the eleven factors identified by the Third Circuit Court of Appeals in *Jumara.*").

As epicRealm pointed out in its Motion, the "home turf" rule recognizes that a plaintiff's filing where its principal place of business is located argues against transfer, because transfer will necessarily inconvenience such a plaintiff. D.I. 10 at 13-14. On the other hand, if a plaintiff chooses to file suit in a venue other than its principal place of business, ordinarily its convenience does not factor into the section 1404(a) analysis because a transfer will not inconvenience such a plaintiff. *E.g., Arrow Communication Laboratories, Inc. v. John Mezzalingua Associates, Inc.,* No. Civ. A. 05-357-SLR, 2005 WL 2786691, at *2 (recognizing that even where the plaintiff does have legitimate reasons for choosing Delaware, "[T]ransfer of an action is usually regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its 'home turf' or a forum where the alleged wrongful activity or injury occurred . . . ."); *Sumito Mitsubishi Silicon Corp. v. MEMC Electronic*

11

*Materials, Inc.*, No. Civ. 04-852-SLR, 2005 WL 735880, at *2 (same).  In this case, Oracle chose to file suit in a venue that is 2,499 miles from its "home turf." www.geobytes.com/CityDistanceTool.htm?loadpage.  None of the reasons provided by Oracle for filing suit in Delaware, however, are related to Oracle's convenience.  Indeed, Oracle does not provide one piece of evidence that would suggest that litigation in Delaware would be more convenient than litigation in Texas.  Accordingly, under the "home turf" rule, Oracle's convenience should not be a factor in the section 1404(a) analysis.

Oracle accuses epicRealm of forum shopping because it sued Oracle's indemnitee, Safelite, in the Eastern District of Texas as opposed to the Northern District of Texas.  D.I. 16 at 23.  One reason why epicRealm chose to file suit in the Eastern District of Texas is that "the judges in the Eastern District have vast experience with patent litigation."  D.I. 10 at 16 n.3.  Ironically, Oracle identifies this same factor — experience and expertise in patent litigation — as one of the "legitimate reason[s]" why it chose to file suit in Delaware.  D.I. 16 at 22.  EpicRealm chose the Eastern District of Texas for the additional two legitimate reasons that that district has local patent rules, which the Northern District of Texas does not, and provides a quick time to trial in patent cases.

Oracle's accusation of forum shopping is ironic for the additional reason that it failed to assert its declaratory judgment claims in the Texas Action despite being party to that action for over five months, but instead waited until the day after it was dismissed from the Texas Action to file suit here.  *See IP Development, Inc. v. TCI Cablevision of Calif., Inc.*, 248 F.3d 1333, 1341 (Fed. Cir. 2001) ("If TCI-California's interests are affected by a different suit regarding the 202 patent, then TCI-Cablevision should join that action as a party"); *Citizen Electronics Co., Ltd. v. OSRAM GMBH*, 377 F. Supp. 2d 149, 156-57 (D.D.C. 2005) ("none of the cases relied on by

plaintiff addresses the unique circumstance of a plaintiff inexplicably waiting to file suit for over six months after the last event that could reasonably have caused an apprehension of suit").

### D.    Local Interest.

In an effort to find some connection between this litigation and Delaware, Oracle argues that it sells products and services to 80 customers in Delaware. D.I. 16 at 18-20; D.I. 18 at ¶ 2. In its Opposition, Oracle did not apprise the Court of how many customers it has in Texas. After Oracle filed its Opposition, epicRealm researched that issue. It turns out that Oracle has more than 150 customers who maintain a corporate or sales office in Texas. *See* Declaration of Terry Fokas at ¶ 3-4, attached hereto as Exhibit 2. Therefore, if the number of customers is a relevant consideration, it is one that argues for transfer to Texas.

Other facts confirm that Oracle and this case have far more contacts and connections (local interest) with Texas than with Delaware. For example, Oracle has six offices, and therefore a significant employee base, in Texas, but no offices or employees in Delaware. *See* Appendix in Support of Defendant EpicRealm Licensing, LP's Motion to Consolidate and Transfer ("App.") at A88-A93. Also, in the earlier filed Texas Action, epicRealm sued Oracle's indemnitee, Safelite. Unlike Oracle's customers in Delaware that may potentially be affected by epicRealm's patents in some hypothetical future litigation, Oracle's customer Safelite has already faced an infringement lawsuit on the same patents in the Eastern District of Texas.

The facts in the QuinStreet case, which epicRealm seeks to have consolidated with this one, are similar. Like Oracle, QuinStreet told the Court about its Delaware customers. QuinStreet claimed three Delaware customers. D.I. 10 at 18. Like Oracle, QuinStreet stood mute about the number of customers it has in Texas. EpicRealm also researched this issue. It turns out that QuinStreet has at least 6 customers in Texas, more than twice the number it has in Delaware. *See* www.houseofedu.com/tca/index.jsp,  www.studyatabc.com,  info.tcti.org/index.jsp,  www.info-

cri.com/index.jsp,   info.bitelp.edu/index.jsp,   and   www.collegeforsuccess.com/bsh/2/index.jsp.
Again, if the number of customers is a relevant consideration, it argues for transfer of the
QuinStreet case to Texas.

Other facts in the QuinStreet case confirm that QuinStreet and its case, like Oracle and this
case, are far more closely connected to Texas than to Delaware. QuinStreet has no offices in
Delaware and is not even registered to do business in Delaware. By contrast, QuinStreet applied to,
received authorization from, and paid annual filing fees to the Texas Secretary of State to transact
business in Texas as both "QuinStreet LLC" and "QuinStreet Media, Inc." *See* QuinStreet filings
with the Texas Secretary of State, attached as Exhibit 3. According to QuinStreet's web site, Dallas
is one of only three cities in the United States where it maintains an office.     *See*
www.cytiva.com/qnst/template_qnst.asp.    QuinStreet even advertises in Texas for its open job
positions.    *See*   www.gomeangreen.com/forums/index.php?showtopic=26413$mode=linearplus.
QuinStreet also owns a web site, GuideToRealty.com, which helps residents in Texas find local real
estate agents. *See* www.guidetorealty.com/local/TX/index.jsp

Given the existence of the Texas Action, combined with QuinStreet's and Oracle's contacts
with Texas, these lawsuits are local in nature to Texas, not Delaware.

**E.     Judicial Efficiency, First Filed Case: The Texas Court Is Already Familiar with
the Technology, the Patents, Claim Construction, and Infringement Issues.**

Oracle argues that the Texas court's familiarity with the patents-in-suit and the patented
technology will not provide it with a "meaningful advantage" in the event of transfer and should
carry "little, if any, weight in the transfer analysis." D.I. 16 at 17. Contrary to this argument, in
numerous decisions Delaware courts have affirmed the judicial efficiency that results from
assigning a patent case to a judge who is already familiar with the patents and the relevant
technology. For example, in *Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.,*
No. Civ. 04-052-SLR, 2005 WL 735880 (D. Del. Mar. 30, 2005), Sumito sued MEMC, requesting a

14

declaratory judgment of noninfringement and invalidity of certain patents and alleging that

MEMC's attempts to enforce those patents violated the antitrust laws. Earlier, MEMC had sued

Sumito for infringement of the patents in the Northern District of California. In the Delaware

action, pursuant to 28 U.S.C. § 1404(a), MEMC moved to transfer to the Northern District of

California. The Delaware court granted that motion, concluding that the "facts of the case balance

strongly in favor of transfer to the Northern District of California" because of the preexisting patent

infringement suit in that district.

> The court in the Northern District Litigation has considered and ruled on many
> of the issues presented by plaintiffs' amended complaint. In particular, that court
> has already considered briefs regarding whether the '302 patent was
> fraudualently obtained, was invalid under the doctrine of inequitable conduct, or
> was invalid for patent misuse. Furthermore, the court has already considered
> whether plaintiffs' Samsung wafer infringed the '302 patent. . . . Finally, the
> court was presented with several briefs addressing whether the '302 patent was
> invalid. . . . Thus, all of plaintiffs' contentions relating [to] the '302 patent have
> already been presented to the court in the Nothern District Litigation. . . . The
> court in the Northern District Litigation has three years of experience with this
> litigation and has already issued several orders regarding infringement of the
> '302 patent. Its grasp of the facts and issues in connection with the '302 patent,
> together with the similarity between the '302 patent and the '380 patent, make
> that court a more appropriate venue for the present matter. *Id.* at *3.

*Nilssen v. Everbrite, Inc.*, No. Civ. A. 00-189-JJF, 2001 WL 34368396 (D. Del. Feb. 16,

2001), is similar authority. Nilssen sued Everbrite in Delaware for patent infringement. Everbrite

moved to transfer to the Northern District of Illinios. In granting that motion, the Delaware court

relied on the existence of a previously filed, related patent infringement action in the Northern

District of Illinois.

> In the instant action, Plaintiff has alleged infringement of three patents that are
> also at issue in the litigation in the Northern District of Illinios. In those Illinois
> cases, Markman rulings have already been issued and case dispositive motions
> have already been filed. . . . Therefore, the Court concludes that the waste of
> judicial resources in requiring two different courts to become familiar with three
> patents, and to render Markman rulings on each of those patents, is a factor that
> strongly weighs in favor of transfer. *Id.* at *4.

In its Motion, epicRealm cited *Sumito, Nilssen,* and three other Delaware decisions holding that another court's experience with a related case is a factor that strongly favors transfer. D.I. 10 at 11-12. In its Opposition, Oracle does not attempt to distinguish, discuss, or even mention any of these cases on this issue. Here is additional Delaware authority on this point: *Cashedge, Inc. v. Yodlee Inc.,* No. Civ. A. 06-170-JJF, 2006 WL 2038504, at *2 (D. Del. July 19, 2006) (transferring to a venue with a related patent action in which the Court had already received a technology tutorial and heard argument on Markman issues); *Virgin Wireless, Inc. v. Virgin Enterprises Ltd.,* 201 F. Supp. 2d 294, 301 ("It would be a waste of judicial resources to allow [two lawsuits in different courts] to progress in parallel."). The lesson of these cases is clear — related lawsuits pending in other jurisdictions provide a more experienced and efficient forum for litigation involving the same patents and similar issues.

In the Texas Action, the trial court has received a technology tutorial on the technology covered by epicRealm's patents (*see* July 7, 2006 Minutes of Tutorial, App. at A20), has conducted a full day Markman hearing (*see* Minutes of Claim Construction Hearing, App. at A21-A22), has issued a claim construction report and recommendation (App. at A23-A56), and just recently issued a report and recommendation regarding a motion for summary judgment of noninfringement (attached as Exhibit 4 hereto). The trial court in the Texas Action, therefore, has acquired substantial expertise concerning the patents-in-suit and the relevant technology. For this Court to have to come up to speed on the patents and technology would be an unnecessary waste of judicial resources. It would be far more efficient to transfer this case to Texas, where the Texas trial court can apply the expertise that it has already attained to resolve the issues that will arise in this case.

Oracle argues that because the Texas Action has progressed to a point where it would be impractical to consolidate this action with it for trial, transfer will not serve judicial efficiency. D.I. 16 at 16. That is not so. Certainly, the Texas court will apply the expertise it has gained concerning

the patents, the patented technology, multiple other products accused of infringement, and validity and damages claims and defenses in addressing similar issues that will arise in this case following transfer.  By contrast, absent transfer, this Court will have to start from scratch, duplicating the Texas court's learning curve.

Oracle also argues that transfer to Texas will not serve judicial economy because its products and services are different from those of the Texas defendants.  (Again, this is only partially correct:  As pointed out above, QuinStreet, the service provider for Texas defendant Herbalife, has admitted that certain of its systems used for generating dynamic web pages use Oracle software.)  This argument misses the mark.  Given the Texas court's existing expertise regarding the patents, the patented technology, and the infringing products of multiple other defendants, it will be far easier for that court to get up to speed on any differences that may exist with respect to the Oracle products and services.  As epicRealm noted in its Motion, the infringement issue as to Oracle's products and services is the only issue presented in this case that is not present in the Texas Action.  D.I. 10 at 11.  The addition of this one issue does not outweigh the efficiency that will result from the Texas court's vast experience with the patents and related technology.

**F.**     ***Air Products.***

The facts of this case are nearly identical to the facts in *Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*, 133 F. Supp. 2d 354 (D. Del. 2001).  In *Air Products*, INS and MGI sued Tesco for patent infringement in the Southern District of Texas (the first-filed suit).  *Id.* at 356.  Air Products made and sold membrane equipment to Tesco for use in the infringing process, which involved oil and gas drilling methods.  *Id.* at 355-57.  Air Products, who unlike Oracle was not a party to the original lawsuit in Texas, filed a separate lawsuit in Delaware against INS and MGI seeking a declaratory judgment of noninfringement and invalidity on the same patents involved in the Texas case.  *Id.*  The Delaware court transferred Air Products' case to Texas, recognizing that

17

"the interests of judicial economy dictate that an action involving the same patents-in-suit and most of the same parties should not proceed simultaneously in two different district courts." *Id.* at 357.

Oracle attempts to distinguish *Air Products* by arguing that the two lawsuits in that case involved (1) "most of the same parties"; and (2) "the same issues." D.I. 16 at 15. First, Oracle is right that this lawsuit does not involve "most of the same parties" in the Texas Action. It involves the *exact same* parties. Unlike the manufacturer in *Air Products*, Oracle was a party in the Texas Action. Second, aside from Oracle's products and services, every other issue in this lawsuit is also present in the Texas Action, and although Oracle's products and services are not currently at issue in the Texas Action, epicRealm's alleged implication of those products and services in the Texas Action forms the basis for this declaratory judgment claim. Both this lawsuit and *Air Products* involve suppliers (Air Products and Oracle) that sued patent holders (INS/MGI and epicRealm) for declaratory judgment in Delaware after these patent holders had already sued the suppliers' customers (Tesco and Safelite) for infringement in Texas.

## IV.   EPICREALM IS NOT REQUIRED TO CHALLENGE THE COURT'S SUBJECT MATTER JURISDICTION BEFORE THE COURT DECIDES THE CONSOLIDATION AND TRANSFER ISSUES.

In a blatant effort to delay a resolution of epicRealm's Motion, Oracle repeats its unpersuasive argument that epicRealm must file its first responsive pleading prior to the Court's ruling on this Motion.[4] As set forth more fully in epicRealm's Reply in Support of its Motion to Extend Time to Answer, Move or Otherwise Respond, Oracle's argument on this point is illogical and unsupported by Third Circuit law. *See* D.I. 14 at 2-3. Ignoring this fact, Oracle cites to the same three cases it relied upon in its opposition to epicRealm's Motion to Extend. *See* D.I. 12 at 4 (citing *Moravian Sch. Advisory Bd. v. Rawlins*, 70 F.3d 270 (3d. Cir. 1995), *Atl. Ship Rigging Co.*

---

[4]   Oracle's argument on this issue was improperly included in its Opposition to epicRealm's Motion since Oracle's request for this Court to require epicRealm to file a responsive pleading prior to the Court's ruling on this Motion was fully and properly addressed in the parties' briefing on epicRealm's Motion to Extend Time to Answer.

*v. McLellan*, 184 F. Supp. 569 (3d Cir. 1961) and *James v. Daley & Lewis*, 406 F. Supp. 645 (D.Del. 1976)). Oracle's reiteration of its flawed arguments, however, fails to provide any rational basis for requiring epicRealm to respond to the Complaint prior to the Court's ruling on the consolidation and transfer issues.

Rather than rely on cases that are analogous to the procedural circumstances presented here, Oracle seems content to regurgitate the facts and holdings in cases that are clearly distinguishable from the instant action. D.I. 16 at 9-10. Specifically, in *Moravian Sch. Advisory Bd. v. Rawlins*, *James v. Daley and Lewis*, and *Atlantic Ship Rigging Co., Inc. v. McLellan*, the defendants all filed motions to dismiss for lack of subject matter jurisdiction that were **currently pending** before the Court. *See Moravian Sch. Advisory Bd.*, 70 F.3d at 272 (3d Cir. 1995); *James v. Daley and Lewis*, 406 F. Supp. at 647 (D.Del. 1976); and *Atlantic Ship Rigging Co., Inc. v. McLellan*, 184 F. Supp. 569, 571 (D.N.J. 1960). It is undisputed that epicRealm has not filed a motion to dismiss based on lack of subject matter jurisdiction. As a result, the issue of this Court's subject matter jurisdiction is not presently before the Court. Indeed, even if this Court were to require epicRealm to file its responsive pleading prior to the Court's ruling on epicRealm's Motion, epicRealm would have no obligation to challenge this Court's subject matter jurisdiction. It is well settled that "the defense of subject matter jurisdiction cannot be waived and the issue can be raised at any time in the course of litigation." *Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 786 (2d Cir. 1994); *see also Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76 (3d. Cir. 2003) ("subject matter jurisdiction is non-waivable"). Therefore, Oracle's insistence on receiving epicRealm's responsive pleading prior to this Court's ruling on the consolidation and transfer issues is entirely unsupported.

Oracle then unsuccessfully attempts to distinguish *Bloom v. Barry* - the case cited by epicRealm in its Reply in Support of its Motion to Extend. *See* D.I. 14 at 3. The procedural posture in *Bloom* is identical to the circumstances presented here. Even Oracle correctly posits, "*Bloom* did

not involve transfer of a case where a party was questioning the court's subject matter jurisdiction." D.I. 16 at 11. Likewise, in this instance, epicRealm has not questioned the court's subject matter jurisdiction. Instead, epicRealm simply reserved its right to assert a defense based on a lack of subject matter jurisdiction at a later point, if at all.[5] Such a reservation does not equate to challenging this Court's jurisdiction.

Oracle's failure to provide any authority supporting its illogical desire to have this Court effectively stay its ruling on the consolidation and transfer issues pending the filing of epicRealm's responsive pleading speaks volumes about the merits of its claims. For these reasons, as well as the reasons set forth in epicRealm's Motion to Extend, Oracle's request for an informal stay of the Court's ruling on epicRealm's Motion should be denied.

## V.     CONCLUSION.

Common issues of fact, overlapping parties, and identical patents make the Oracle and QuinStreet cases ideal for consolidation. Contrary to Oracle's assertions, QuinStreet even admits that its systems for generating dynamic web pages use Oracle's products.

EpicRealm recognizes that it has the burden on the transfer issue and that this Court denies more section 1404(a) motions than it grants. In this case, however, the close connection to the Texas Action, the convenience of the parties and the five non-party fact witnesses that epicRealm has identified, and considerations of judicial efficiency all argue strongly for transfer to Texas. The facts of the *Air Products* case are virtually identical to the facts of this case. The Court should transfer this patent declaratory judgment action to Texas, just as it transferred the patent declaratory judgment action in *Air Products* to Texas.

---

[5]    Given the fact that a lack of subject matter jurisdiction defense can be raised at any point, including on appeal, epicRealm's express reservation of that right does not impose any requirement on epicRealm to expressly assert that jurisdictional defense.

20

SAUL EWING LLP


 /s/ Kimberly L. Gattuso
Michael F. Bonkowski, Esquire (No. 2219)
Kimberly L. Gattuso, Esquire (No. 3733)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware  19801-1611
(302) 421-6800


BAKER BOTTS L.L.P.
Larry D. Carlson, Esquire
Kevin J. Meek, Esquire
Jeff Moles, Esquire
2001 Ross Avenue
Dallas, TX  75201-2980

Attorneys for epicRealm Licensing, LP

DATED:    October 3, 2006

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORACLE CORPORATION and    :
ORACLE U.S.A., INC.,       :
              :
    Plaintiffs,      :
              :
v.             :   C. A. No. 06-cv-414 (SLR)
              :
EPICREALM LICENSING, LP,   :
              :
    Defendant.     :

**DECLARATION OF LARRY D. CARLSON**

I, Larry D. Carlson, declare as follows:

1.  My name is Larry D. Carlson.  I am over the age of 21 years, of sound mind, and am competent to make this declaration.  I have personal knowledge of the facts described herein, and those facts are true and correct.

2.  I am a senior partner in the Dallas office of Baker Botts L.L.P.

3.  I was counsel of record for epicRealm Licensing, LLC ("epicRealm") in the case captioned: *EpicRealm Licensing, LLC v. Speedera Networks, Inc.*, Civil Action No. 2:05-CV-150-DF, in the Eastern District of Texas, Marshall Division ("*Speedera* case").

4.  The *Speedera* case involved the same patents that are at issue in this litigation.

5.  In the *Speedera* case, before the parties settled, Speedera noticed the deposition of inventor Ronald Howell.  A copy of that deposition notice is attached as Exhibit A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

- 1 -

Executed on October 3, 2006.



Larry D. Carlson

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM LICENSING, LLC | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2-05CV-150DF |
| | § | |
| SPEEDERA NETWORKS, INC. | § | |
| Defendant. | § | |

## NOTICE OF TAKING DEPOSITION OF RONALD HOWELL

**TO PLAINTIFF EPICREALM LICENSING, LLC AND TO ITS ATTORNEYS OF RECORD IN THIS ACTION:**

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 30, defendant Speedera Networks, Inc. ("Speedera") will take the deposition of Ronald Howell, beginning on October 20, 2005 at 9:00 a.m. and continuing from day to day thereafter until completed, at the offices of Figari & Davenport, LLP, 3400 Bank of America Plaza, 901 Main Street, Dallas, Texas.

The deposition will be taken before a notary public or other officer authorized by law to administer oaths, and may be recorded both stenographically and by sound-and-visual means (*i.e.*, by videotape), and provision may be made for real-time monitoring using LiveNote™ or similar means.

PLEASE TAKE FURTHER NOTICE that the deponent is requested to produce the documents and things listed in the attached Subpoena in a Civil Case at the offices of Figari & Davenport, LLP. A true and correct copy of the subpoena served on Mr. Howell is attached as Exhibit A.

Respectfully submitted,

Jennifer Haltom Doan
Texas Bar No. 08809050
John Peyton Perkins, III
Texas Bar No. 24043457
HALTOM & DOAN, LLP
6500 N. Summerhill Road, Suite 1A
Texarkana, TX 75505-6227
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
E-mail: jdoan@haltomdoan.com

Daralyn J. Durie
Asim M. Bhansali
Ryan M. Kent
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email: amb@kvn.com

**ATTORNEYS FOR DEFENDANT SPEEDERA NETWORKS, INC.**

## CERTIFICATE OF SERVICE

I certify that on October ___5___, 2005, I served the foregoing instrument and supporting declarations upon counsel for Plaintiff listed below by telecopy and certified mail, return receipt requested:

Harry L. Gillam, Jr.
GILLAM & SMITH, LLP
110 South Bolivar
Suite 204
Marshall, TX 75670

Michael O. Sutton
LOCKE LIDDELL & SAPP LLP
600 Travis Street, Suite 3400
Houston, Texas 77002

Larry Carlson
Baker Botts, LLP
2001 Ross Avenue
Dallas, TX 75201

Jennifer Haltom Doan

**NOTICE OF TAKING DEPOSITION OF RONALD HOWELL – Page 3**

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT    DISTRICT OF TEXAS

EPICREALM LICENSING, LLC

SUBPOENA IN A CIVIL CASE

v.

SPEEDERA NETWORKS, INC.

Case Number:[1] 2-05CV-150DF
Eastern District of Texas
Texarkana Division

TO:  RONALD HOWELL, 4805 Toler Road, Rowlett, TX  75089-3436

972-475-7557

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION Figari & Davenport, LLP, 3400 Bank of America Plaza, 901 Main Street, Dallas, TX  Tel: (214) 939-2000 | DATE AND TIME October 20, 2005 9:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
Please see Attachment A.

| PLACE Figari & Davenport, LLP, 3400 Bank of America Plaza, 901 Main Street, Dallas, TX  Tel: (214) 939-2000 | DATE AND TIME October 20, 2005 9:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Jennifer Haltom Doan, Attorney for Defendant | DATE September 29, 2005 |
|---|---|

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Haltom & Doan, LLP, 6500 N. Summerhill Road, Suite 1A
Texarkana, TX  75505  Tel: (903) 255-1000

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

O 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 10-3-05 | 4805 Joier Rd Rooleft TX |

SERVED ON (PRINT NAME)                    MANNER OF SERVICE

Ronald Howell                             Hand Delivered

SERVED BY (PRINT NAME)                    TITLE

George Reeser                             Process Server

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___10-3-05___
              DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER    1201 Elm #5200

Dallas TX 75201

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney=s fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

5.5°°
15.5°°

**Attachment A**

**DEFINITIONS**

A)    "RONALD HOWELL," "YOU" and "YOUR" refer to the Ronald Howell listed as an inventor of United States Patent Nos. 5,894,554 and 6,415,335.

B)    "EPIC" means epicRealm Operating Inc., its subsidiaries, divisions, predecessor and successor companies (including but not limited to epicRealm Licensing, LLC), affiliates, parents, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time.

C)    "SPEEDERA" means Speedera Network Inc., its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time.

D)    "INFOSPINNER" means InfoSpinner, Inc., its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time.

E)    The phrase "PATENTS-IN-SUIT" refers to United States Patent Nos. 5,894,554 and 6,415,335, collectively.

F)    The term "RELATED PATENT" means any patent claiming priority from a patent application from which any of the PATENTS-IN-SUIT claims priority, any continuation, continuation in part, or divisional of a patent application from which any of the PATENTS-IN-SUIT claims priority, any foreign counterpart patent or patent application RELATING TO any of the above categories of patents or patent applications.

G)    The term "DOCUMENT(S)" is used in the broadest possible sense as interpreted under the Federal Rules of Civil Procedure and includes, without limitation, all originals and copies, duplicates, drafts, and recordings of any written, printed, graphic or otherwise recorded matter, however produced or reproduced, and all "writings" as defined in Federal Rule of Evidence 1001, including without limitation the following:  abstracts, advertisements, agendas, agreements, analyses of any kind, appointment calendars, articles, assignments, blueprints, books, brochures, charts, circulars, compilations, computer programs, runs and printouts, computer data files in machine readable form, contracts, diaries, letters, email, reports (including reports or notes of telephone or other conversations), memoranda, brochures, books, ledgers, drawings, photographs, specifications, drafts, catalogs, instructions, invoices, bills of materials, minutes, orders, publications, purchase orders, proposals, working papers, laboratory notebooks and other writings of whatsoever nature, whether on paper, magnetic tape or other information storage means, including film and computer memory devices; all drafts prepared in connection with any such writings, whether used or not, regardless of whether the document still exists, and regardless of who has maintained custody of such documents; and where any such items contain any marking not appearing on the original or are altered from the original, then such items shall

be considered to be separate original documents.

H)    The term "COMMUNICATION(S)" means every manner or method of disclosure or transfer or exchange of information, whether oral or by document, and whether face-to-face, by telephone, mail, personal delivery or otherwise.

I)    The term "RELATING TO" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting upon, evidencing, describing or otherwise RELATING TO the subject matter.

J)    The words "and" and "or" shall be construed in the conjunctive or disjunctive, whichever makes the request more inclusive.

K)    "Any" shall mean one or more; "each" shall mean "each and every."

## INSTRUCTIONS

A)    In answering this subpoena, YOU are required to furnish all DOCUMENTS that are available to YOU, under YOUR custody or control, not merely such DOCUMENTS as the persons preparing the responses know of their own personal knowledge, but including without limitation DOCUMENTS in the possession of YOUR attorneys, employees, or other persons directly or indirectly employed by, or connected with YOU or YOUR attorneys or consultants, or anyone acting on YOUR behalf or otherwise subject to YOUR control. In answering this subpoena YOU are requested to make a diligent search of YOUR records and of other papers and materials in YOUR possession or control or in the possession or control of YOUR employees, attorneys, consultants, or other representatives.

B)    YOU are required to produce all DOCUMENTS in the manner, form and position in which they are kept in the ordinary course of business, as required by Federal Rule of Civil Procedure 34(b), including, where applicable, any index tabs, file dividers, designations or information as to the location of DOCUMENTS.

C)    In the event any information is withheld on a claim of attorney-client privilege or work product doctrine, YOU are required to provide a privilege log which includes at least the following information: the nature of the information contained in the withheld DOCUMENT, the date of the DOCUMENT, its source and subject matter, and to whom that information was disclosed, such as would enable the privilege claim to be adjudicated and cite any authority which YOU assert supports any claim of privilege.

D)    In the event that any DOCUMENT called for by the requests has been destroyed, lost, discarded or is otherwise no longer in YOUR possession, custody or control, YOU shall identify such DOCUMENT, as completely as possible, and shall specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing the disposal, and the person disposing of the DOCUMENT.

**ATTACHMENT A – Page 2**

## DOCUMENTS REQUESTED

1.    All DOCUMENTS RELATING TO the PATENTS-IN-SUIT or any RELATED PATENT, including without limitation all documents RELATING TO the conception and reduction to practice of any invention allegedly described therein; the preparation, filing, and prosecution of any patent application(s) related thereto (including the application(s) that matured into the PATENTS-IN-SUIT or any RELATED PATENT, continuation applications, continuation-in-part applications, divisional applications, and foreign counterpart applications); and any documents RELATED TO any attempt to license, enforce, or sell the PATENTS-IN-SUIT or any RELATED PATENT.

2.    All DOCUMENTS RELATING TO the validity of any of the PATENTS-IN-SUIT or any RELATED PATENT, including without limitation all documents reflecting contentions (by YOU, EPIC, INFOSPINNER or anyone else) that any PATENT-IN-SUIT or RELATED PATENT is valid, all documents reflecting comparisons of any PATENT-IN-SUIT or RELATED PATENT with the prior art, and all evidence of alleged novelty or non-obviousness of any PATENT-IN-SUIT or RELATED PATENT.

3.    All DOCUMENTS RELATING TO the first written description of the subject matter of each claim of the PATENTS-IN-SUIT or any RELATED PATENT.

4.    All DOCUMENTS RELATING TO the first disclosure to a person other than a listed inventor of the subject matter of each claim of the PATENTS-IN-SUIT or any RELATED PATENT.

5.    All DOCUMENTS published or publicly presented by the inventors named in the PATENTS-IN-SUIT or any RELATED PATENT regarding the worldwide, internet, or computer networking.

6.    All DOCUMENTS RELATING TO the first use or demonstration of any product, device, or method that incorporates or embodies any of the subject matter claimed in the PATENTS-IN-SUIT or any RELATED PATENT.

7.    All DOCUMENTS RELATING TO the first sale or offer for sale of any product, device, or method that incorporates or embodies any of the subject matter claimed in the PATENTS-IN-SUIT or any RELATED PATENT.

8.    All DOCUMENTS RELATING TO the first commercial embodiment of any or all of the PATENTS-IN-SUIT and any or all of the RELATED PATENTS.

9.    All DOCUMENTS RELATING TO the conception and/or reduction to practice of the invention(s) claimed in the PATENTS-IN-SUIT or any RELATED PATENT.

10.    All DOCUMENTS RELATING TO research performed for, or literature, patents or other sources utilized in the design and development of the first commercial embodiment of any or all of the PATENTS-IN-SUIT and any or all of the RELATED PATENTS.

11.     All DOCUMENTS that describe Foresite or any other product or service offered for sale at any time by INFOSPINNER or EPICREALM.

12.     All DOCUMENTS consisting of papers, articles, patents, product descriptions, data sheets, or literature in YOUR possession dated earlier than April 23, 1996 that refer to "dynamic" generation of one or more web pages.

13.     All DOCUMENTS RELATING TO any patent, literature or prior art search, study, investigation or evaluation conducted with respect to the PATENTS-IN-SUIT or any RELATED PATENT.

14.     All DOCUMENTS RELATING TO any COMMUNICATION between EPIC or anyone acting on its behalf, and any customer, potential customer, distribution partner, field representative, supplier, manufacturer, or any other third party about the patentability, validity, enforceability, scope, or infringement of any claim of the PATENTS-IN-SUIT or any RELATED PATENT.

15.     All DOCUMENTS RELATING TO any COMMUNICATION between INFOSPINNER or anyone acting on its behalf, and any customer, potential customer, distribution partner, field representative, supplier, manufacturer, or any other third party about the patentability, validity, enforceability, scope, or infringement of any claim of the PATENTS-IN-SUIT or any RELATED PATENT.

16.     All DOCUMENTS RELATING TO the meaning of the claims of the PATENTS-IN-SUIT or any RELATED PATENT, including without limitation all documents relating to any communications between YOU and any other person or entity relating to the meaning of the claims, and any internal notes, analysis, or studies relating to the meaning of the claims.

17.     All DOCUMENTS RELATING TO any skepticism or disbelief expressed by anyone regarding any of the subject matter claimed in the PATENTS-IN-SUIT or any RELATED PATENT.

18.     DOCUMENTS sufficient to identify the titles and responsibilities of all persons who participated in the conception, reduction to practice and/or design, development, and engineering of any commercial embodiment of the invention claimed in the PATENTS-IN-SUIT or any RELATED PATENT.

19.     All DOCUMENTS RELATING TO the identification, selection, or determination of the inventors of the PATENTS-IN-SUIT or any RELATED PATENT.

20.     All DOCUMENTS RELATING TO ownership, title, transfer, licensing, or assignment of the PATENTS-IN-SUIT, including without limitation all documents concerning EPIC'S or INFOSPINNER's claim of ownership of the PATENTS-IN-SUIT, all documents relating to any ownership interest that anyone other than EPIC or INFOSPINNER has or ever had in the PATENTS-IN-SUIT, and all documents relating to any transfer of ownership interest in the PATENTS-IN-SUIT.

21.     All DOCUMENTS RELATING TO any decision as to what prior art references

to cite or not to cite during the prosecution of the PATENTS-IN-SUIT.

22.    All documents provided by EPIC or INFOSPINNER or any of their employees at any conference, symposium seminar, exhibition, convention, or trade show at which any product, device, apparatus, or method that allegedly embodies, or falls within the scope of, any of the subject matter claimed in the PATENTS-IN-SUIT or any RELATED PATENT were discussed, referred to, advertised, displayed, demonstrated, or shown, including without limitation any such advertisements, brochures, articles, pamphlets, price lists, product specifications, or other promotional or marketing material.

23.    All DOCUMENTS RELATING TO any abandonment, suppression, or concealment, of any of the inventions claimed in the PATENTS-IN-SUIT or any RELATED PATENT.

24.    All DOCUMENTS RELATING TO any COMMUNICATION between EPIC or INFOSPINNER and any other person or entity relating to the PATENTS-IN-SUIT or any RELATED PATENT, including without limitation, any demand letters, notice letters, presentations, claim charts, licenses, or correspondence in which any person or entity was accused of, notified of, or charged with infringing or possibly infringing the PATENTS-IN-SUIT or any RELATED PATENT.

25.    All DOCUMENTS RELATING TO any opinions, written or oral, as to the patentability, validity, novelty, obviousness, invalidity, enforceability, non-enforceability, infringement, or non-infringement of any claim of the PATENTS-IN-SUIT or any RELATED PATENT, or to the research, investigation or preparation of any such opinions, or which were considered in formulating any such opinions.

26.    All patents, publications or other DOCUMENTS that were reviewed, received or generated by YOU in connection with the prosecution of each of the PATENTS-IN-SUIT or any RELATED PATENT.

27.    All DOCUMENTS RELATING TO any representation made by YOU during the prosecution of the PATENTS-IN-SUIT or any RELATED PATENT.

28.    All DOCUMENTS RELATING TO any meeting, discussion, or interview regarding the subject matter of the PATENTS-IN-SUIT or any RELATED PATENT, including without limitation meeting minutes, interview notes, or invention disclosure forms for the inventions of each of the PATENTS-IN-SUIT or any RELATED PATENT and reviews or evaluations of the patentability of those inventions.

29.    All DOCUMENTS RELATING TO or comprising any DOCUMENT, reference or activity claimed by anyone to be prior art with respect to any of the PATENTS-IN-SUIT, or to affect the validity, enforceability, meaning, construction or scope of any of the PATENTS-IN-SUIT.

30.    All DOCUMENTS RELATING TO whether any invention claimed or disclosed in any of the PATENTS-IN-SUIT or any RELATED PATENT has been copied or infringed by others.

**ATTACHMENT A – Page 5**

31.    All DOCUMENTS RELATING TO any investigation (by YOU, EPIC, INFOSPINNER or anyone else) regarding whether any product made, used or sold or offered for sale by anyone falls within the scope of any claim of any of the PATENTS-IN-SUIT or any RELATED PATENT.

32.    All DOCUMENTS RELATING TO any COMMUNICATIONS regarding YOUR services to EPIC and/or INFOSPINNER RELATING TO the prosecution and/or procurement of the PATENTS-IN-SUIT or any RELATED PATENT, including without limitation billing records, expenditure records and retainer agreements.

33.    All DOCUMENTS RELATING to any analysis, study or investigation (by YOU, EPIC, INFOSPINNER or anyone else) of SPEEDERA or its products.

34.    All DOCUMENTS RELATING TO COMMUNICATIONS between the other named inventors of the PATENTS-IN-SUIT and YOU RELATING TO the PATENTS-IN-SUIT or any RELATED PATENT.

35.    All DOCUMENTS RELATING TO communications or agreements, or proposed agreements between YOU and INFOSPINNER and/or EPIC regarding any licensing efforts and/or patent litigation.

36.    All DOCUMENTS RELATING TO communications, agreements, or proposed agreements between YOU and any other person(s) or entit(ies) regarding any licensing efforts and/or patent litigation regarding the PATENTS-IN-SUIT, including but not limited to any agreements agreements regarding consulting services or other services pertaining to litigation involving the PATENTS-IN-SUIT.

37.    All DOCUMENTS RELATING TO communications, agreements, or proposed agreements between YOU and INFOSPINNER and/or EPIC pertaining to the PATENTS-IN-SUIT or litigation.

38.    All DOCUMENTS that refer to SPEEDERA.

39.    All DOCUMENTS RELATING TO any stock, stock option, stock warrant or other share offerings regarding INFOSPINNER or EPIC.

40.    All DOCUMENTS RELATING TO any corporate changes to EPIC and/or INFOSPINNER, including but not limited to any share or asset sales, spin-offs, reorganizations, or restructurings.

41.    All DOCUMENTS RELATING TO INFOSPINNER and/or EPIC'S document retention policies for any of the types of documents requested herein.

**ATTACHMENT A – Page 6**

# **Exhibit 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORACLE CORPORATION and                          :
ORACLE U.S.A. INC.,                             :
                                                :
              Plaintiffs,                       :
                                                :
v.                                              :  C. A. No. 06-cv-414 (SLR)
                                                :
EPICREALM LICENSING, LP,                        :
                                                :
              Defendant.                        :

## DECLARATION OF TERRY FOKAS

I, Terry Fokas, declare as follows:

1.       My name is Terry Fokas.  I am over the age of 21, of sound mind, and am competent to make this declaration.  I have personal knowledge of the facts described herein, and those facts are true and correct.

2.       I am the Managing Partner of epicRealm Licensing, LP ("epicRealm").

3.       In support of epicRealm's Reply in Support of its Motion to Consolidate and Transfer, I compiled a list of Oracle customers in Texas.  To compile this list, I visited Oracle's web site at www.oracle.com which lists Oracle's customers in alphabetical order.  I reviewed the web site of each Oracle customer to determine whether they maintained a corporate or sales office in Texas.

4.       Utilizing the afore-mentioned review methodology, I was able to determine that Oracle has at least one hundred fifty-six (156) customers which maintain corporate or sales offices in Texas.  A list of those Oracle customers is attached to this declaration as Exhibit A.

- 1 -

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 3, 2006.

Terry Fokas

**EXHIBIT A**

**ORACLE CUSTOMERS IN TEXAS**

1.    360Commerce, Inc.
2.    Acquity Group, LLC
3.    Agilent Technologies
4.    Alaska Airlines
5.    Alcoa
6.    Allen Lund Company
7.    Allstate Insurance Company
8.    Alternate Marketing Networks, Inc.
9.    American Airlines
10.   American Bureau of Shipping
11.   American Data Exchange Corporation
12.   American States Water Company
13.   AMF Bowling Worldwide
14.   Anchor Blue
15.   Applied Biosystems
16.   Arby's
17.   ARKONA Inc.
18.   Avnet  Partner Solutions
19.   Axtive Corporation
20.   Bank of New York
21.   BDO Seidman
22.   Berlin Packaging
23.   Bio-Rad
24.   Blue Gecko
25.   Boehringer Ingelheim
26.   Bollinger Shipyards Inc.
27.   Bombay Company, Inc.
28.   Bowne & Co.
29.   Bradmark Technologies, Inc.
30.   Buckeye Partners
31.   Burlington Coat Factory
32.   Business Objects
33.   CB Richard Ellis
34.   Canon
35.   Capgemini
36.   Capital One
37.   Cardinal Health
38.   Cargill
39.   CarrAmerica
40.   Carter & Burgess
41.   Cbeyond Inc.

42. Cendant Corporation
43. CGE&Y
44. CH2M Hill
45. Cingular Wireless, LLC
46. Cisco Systems
47. Citigroup
48. Colgate-Palmolive
49. Compass Bank
50. CompUSA
51. Consultants' Choice Professional Services Group
52. Continental Corporation
53. Corporate Express
54. Covenant Health
55. Cox Communications
56. Crestone
57. Darden Restaurants
58. Data Return LLC
59. Del Monte Fresh
60. Dell Inc.
61. Deloitte Consulting
62. DHL
63. Dollar Thrifty Automotive Group
64. EDS, Inc.
65. EMC Corporation
66. ENSCO
67. Entergy
68. eVerge
69. Fairchild Semiconductor
70. Fair Isaac
71. Family Dollar
72. Fannie mae
73. Fiberdyne Labs
74. Fidelity Information Services
75. Finisar
76. Ford Motor Company
77. FWMurphy
78. Gevity
79. Giorgio Armani
80. Great Dane Trailers
81. Greenbrier and Russel, Inc.
82. Halliburton
83. Hanover Compressor Co.
84. JE Dunn Construction
85. The Jewelry Exchange
86. JCB
87. Kirkpatrick & Lockhart

88.   LaSalle Bristol
89.   Lexicon Genetics Incorporated
90.   Marriott International
91.   Marvell Semiconductor, Inc.
92.   MasterCard
93.   MB Foster
94.   Metalsa
95.   Michael Baker Corporation
96.   Minerals Technologies Inc.
97.   Mitsubishi Motors
98.   Motorola
99.   MyDanka.com
100.  NEON Enterprise Software
101.  Network Appliance
102.  New Plan Excel Realty Trust, Inc.
103.  NewMarket Technology, Inc.
104.  Nordstrom
105.  Oakwood
106.  Office Depot
107.  Optimal Solutions Integration Inc.
108.  Orscheln Farm and Home
109.  Otis Spunkmeyer
110.  Owens Corning
111.  Panasonic Logistics
112.  Perot Systems
113.  Pitney Bowes
114.  Polycom
115.  POWER Engineers, Inc.
116.  PPD, Inc.
117.  Precision Response Corporation
118.  PricewaterhouseCoopers
119.  ProQuest Business Solutions
120.  Pulte Homes
121.  QUALCOMM
122.  Red Dot Corporation
123.  Regions Financial
124.  ReserveAmerica
125.  Robbins Bros.
126.  RWD Technologies
127.  Santos Ltd
128.  SBC
129.  Shoe Carnival Inc.
130.  Silicon Graphics Inc.
131.  Silicus Technologies, Inc.
132.  Sirius Computer Solutions, Inc.
133.  Southern Methodist University

134.   Texas Industries Inc. (TXI)
135.   Texas Memory Systems, Inc.
136.   TUFF SHED, Inc.
137.   TXU Energy
138.   Unisys
139.   University of Texas Medical Branch
140.   UPS
141.   URS
142.   U.S. Marine Corps
143.   U.S. Navy
144.   U.S. Postal Service
145.   Ventura Foods, LLC
146.   Verisign
147.   Verizon Wireless
148.   Wachovia
149.   Washington Group International
150.   The Watt Stopper, Inc.
151.   Weil, Gotshal & Manges, LLP
152.   Wells Fargo
153.   Weyerhaeuser
154.   Willbros Group, Inc.
155.   Wyeth
156.   Xcel Energy

# **Exhibit 3**

 

**Texas Secretary of State**
**Roger Williams**

<u>UCC</u> | **Business Organizations** | **Trademarks** | **Account** | **Help/Fees** | **Briefcase** | **Logout**

BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800396380 | **Entity Type:** | Foreign For-Profit Corporation |
| **Original Date of Filing:** | September 30, 2004 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 10506069334 | **FEIN:** | |
| **Name:** | QuinStreet Media, Inc. | | |
| **Address:** | 5345 KIETZKE LN STE 109 RENO, NV 89511-2063 USA | | |
| **Fictitious Name:** | N/A | | |
| **Jurisdiction:** | NV, USA | | |
| **Foreign Formation Date:** | July 22, 2004 | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| **Name** | **Address** | **Inactive Date** |
|---|---|---|
| National Registered Agents, Inc. | 1614 Sidney Baker Street Kerrville, TX 78028 USA | |

 

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

 

**Texas Secretary of State**
**Roger Williams**

*S@SDirect*

<u>UCC</u> | <u>Business Organizations</u> | <u>Trademarks</u> | <u>Account</u> | <u>Help/Fees</u> | <u>Briefcase</u> | <u>Logout</u>

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 800600386 | **Entity Type:** | Foreign Limited Liability Company (LLC) |
| **Original Date of Filing:** | January 18, 2006 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 11418840143 | **FEIN:** | 141884014 |

| | |
|---|---|
| **Name:** | QuinStreet LLC |
| **Address:** | 1051 E HILLSDALE BLVD FL 8 FOSTER CITY, CA 944041603 USA |
| **Fictitious Name:** | N/A |
| **Jurisdiction:** | IL, USA |
| **Foreign Formation Date:** | May 1, 2003 |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Name | Address | Inactive Date |
|---|---|---|
| National Registered Agents, Inc. | 1614 Sidney Baker Street Kerrville, TX 78028 USA | |

[Order] [Return to Search]

<u>Instructions:</u>
- To place an order for additional information about a filing press the 'Order' button.

# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## OF THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM, LICENSING, LLC | § | |
| | § | |
| v. | § | No. 2:05CV163 |
| | § | |
| AUTOFLEX LEASING, INC., et al. | § | |

### MEMORANDUM ORDER

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The Report of the Magistrate Judge which contains her proposed findings of fact and recommendations for the disposition of such action has been presented for consideration. Autoflex Leasing – Dallas LP ( "Autoflex") filed objections to the Report and Recommendation of the Magistrate Judge. The Court conducted a *de novo* review.

### BACKGROUND

EpicRealm Licensing, LLC ("Plaintiff") sued Autoflex and five unrelated companies (collectively "Defendants"), alleging Defendants are infringing United States Patent Nos. 5,894,554 and 6,415,335 (the "Patents"). The Patents allegedly encompass certain systems and methods to dynamically generate web pages. Plaintiff's Patents purport to cover a process in which a web server interacts with middleware to use page servers and other data sources to generate HTML web pages that are subsequently transmitted over the Internet. According to the Patents, requests for dynamic web pages are routed from the web server to the page server, which then processes the request.

### REPORT AND RECOMMENDATION

In her Report and Recommendation dated August 29, 2006, the Magistrate Judge recommended Autoflex's Motion for Summary Judgment of Non-infringement be denied.

Specifically, the Magistrate Judge found a genuine issue of material fact exists concerning the existence of an agency relationship between Joseph Camblin of Jozee Designs, Autoflex's web site designer, and Autoflex. Autoflex did not convince the Magistrate Judge that no genuine issues of material fact exist regarding Plaintiff's claim for direct infringement against Autoflex. Similarly, the Magistrate Judge found genuine issues of material fact exist as to Plaintiff's indirect inducement to infringe claim against Autoflex.

## AUTOFLEX'S OBJECTIONS

Autoflex filed objections to the Magistrate Judge's recommendation that its motion for summary judgment of non-infringement be denied. Autoflex first contends Plaintiff's Preliminary Infringement Contentions refer *only* to software called "Tomcat" that manages requests to web servers for "dynamic web pages." According to Autoflex, the uncontroverted evidence shows that the specifically accused Autoflex web site does not use Tomcat and never has. Even though Plaintiff argued its Preliminary Infringement Contentions are not limited to Autoflex systems that use Tomcat, Autoflex contends Plaintiff has not shown good cause for not already having identified some page server other than Tomcat. Autoflex argues no matter what other web sites Autoflex may or may not have, Autoflex is at least entitled to partial summary judgment of non-infringement insofar as Plaintiff's specific charge of infringement based on NetIn.com's alleged use of Tomcat is concerned.

In addition, Atuoflex asserts the accused Autoflex web site does not process requests for dynamic web pages. Autoflex further asserts there is no agency between NetIn.com and Autoflex that could implicate Autoflex as an infringer even if NetIn.com did provide such services for Autoflex. Finally, Autoflex contends it cannot be held to be an infringer under 35 U.S.C. § 271

2

because it does not own, operate, or control any web servers, and it does not direct the operation of any web servers.

## *DE NOVO* REVIEW

Autoflex's objections make clear there is an unresolved disagreement among the parties as to what is being accused in this case. In some respects, Autoflex seems to be arguing regarding the scope and adequacy of Plaintiff's Preliminary Infringement Contentions ("PICs") and whether the PICs sufficiently accuse the web site and/or web server addressed in the summary judgment briefing.

For example, in its surreply to Autoflex's motion for summary judgment, Plaintiff asked the Magistrate Judge to take judicial notice of the dynamic content contained in an Autoflex web site. In its objections, Autoflex argues the web site discussed by Plaintiff in the surreply is not accused of infringement. According to Autoflex, that particular web site has not been accused, and there is no legitimate basis for Plaintiff to include it in its Final Infringement Contentions. Autoflex's Objections at pg. 11.

The Court finds it is necessary to first establish what is accused in this case before ultimately deciding the overall issue before the Court of whether summary judgment should be granted in Autoflex's favor on the issues of direct infringement and inducement to infringe. This is because many of the arguments raised by the parties in the original briefing refer to what is properly accused in Plaintiff's infringement contentions. The Court notes that in a June 27, 2006 letter to the Court, Autoflex states its web site does not process dynamic content "using the accused page server identified in epicRealm's preliminary infringement contentions." *See* Docket Entry # 169. Obviously, what is properly included in Plaintiff's infringement contentions is an important issue in determining Autoflex's motion for summary judgment.

3

Considering the parties' disagreement as to the scope and validity of Plaintiff's infringement contentions and the Court's uncertainty as to what items and methods are properly accused of infringement, the Court is not willing to rule at this time on Autoflex's motion for summary judgment. The Court will not make, in the context of a summary judgment motion, the determination of what items and methods are properly accused of infringement in this case. Instead, the parties are instructed to meet and confer, within twenty days from the date of entry of this Order, regarding the filing of proper briefing on this separate issue.

Once the Court determines what items and methods are properly accused in this case, Autoflex may refile its current motion for summary judgment guided by this determination. Accordingly, Autoflex's motion for summary judgment of non-infringement is denied without prejudice to refiling. The Court is not adopting the finding and conclusions contained in the Report and Recommendation at this time. Rather, the Court is convinced it must determine what items and methods are properly accused in this case before it can determine the issues raised in Autoflex's motion. Based on the foregoing, it is

ORDERED that Autoflex's Motion For Summary Judgment of Non-infringement (Dkt. No. 125) is **DENIED WITHOUT PREJUDICE TO REFILING.**

**SIGNED this 29th day of September, 2006.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

4

## CERTIFICATE OF SERVICE

I, Kimberly L. Gattuso, Esquire, hereby certify that on this 3rd day of October, 2006, I electronically filed a true and correct copy of the foregoing Reply using CM/ECF which will send notification of such filing.  A copy of the document was served on the following attorneys of record in the manner indicated:

**VIA U.S. MAIL**
Mary B. Graham, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19899-1347

   /s/ *Kimberly L. Gattuso*
Kimberly L. Gattuso (No. 3733)