**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ORACLE CORPORATION and ORACLE U.S.A. INC. | ) ) C.A. No. 06-414 (SLR) |
| | ) **JURY TRIAL DEMANDED** |
| Plaintiffs/Counterdefendants, | ) |
| | ) |
| v. | ) |
| | ) |
| EPICREALM LICENSING, LP, | ) |
| | ) |
| Defendant/Counterclaimant. | ) |
| | ) |
| AND RELATED COUNTERCLAIMS | ) |
| | ) |

**DECLARATION OF THEODORE T. HERHOLD IN SUPPORT OF
ORACLE'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE
TO AMEND ITS DECLARATORY JUDGMENT COMPLAINT**

I, Theodore T. Herhold, declare as follows:

1.      I am a member in good standing of the State Bar of California and an attorney at the law firm of Townsend and Townsend and Crew LLP ("Townsend"), counsel for Plaintiffs and Counterdefendants, Oracle Corporation and Oracle U.S.A. Inc. (collectively, "Oracle"). I have personal knowledge of the matters stated, except where otherwise indicated in this Declaration, and could competently testify to them if I were called as a witness.

2.      When Oracle filed its original complaint for declaratory relief on June 30, 2006, it was not yet in possession of sufficient evidence to properly allege inequitable conduct.

3.      Formal discovery in this litigation commenced in August 2007.  The parties are in the process of concluding written discovery and document productions, and have just recently commenced depositions on December 20, 2007.

4.      EpicRealm is plaintiff in patent infringement suits currently being litigated in the Eastern District of Texas, Civil Action No. 2:05-CV-163 (E.D. Tex. filed May 2, 2005) and Civil Action No. 2:05-CV-356 (E.D. Tex. filed August 5, 2005).

5.      Oracle declined to claim inequitable conduct in its original complaint because it lacked sufficient evidence to plead with the requisite particularity.  Oracle later obtained such evidence through the formal discovery process.  Upon obtaining what it believes to be more than sufficient evidence to plead an inequitable conduct claim, Oracle promptly notified epicRealm of its intent to do so, provided epicRealm with evidence supporting its claim, and met and conferred in good faith to negotiate a stipulation.  Only after its repeated efforts to reach a stipulation proved unsuccessful did Oracle bring its motion for leave to amend.  Oracle therefore believes that the present motion is brought in good faith and is not made for any dilatory purpose.

6.      EpicRealm principal and inventor, Keith Lowery, and epicRealm's patent prosecution attorneys have not yet been deposed in this litigation.  EpicRealm only recently gave Oracle permission to obtain copies of those deposition transcripts, which Oracle was able to obtain on January 3, 2008.

7.      Attached hereto as Exhibit A is a copy of a letter dated October 27, 2007, from Paul D. Margolis of Jenner & Block, counsel for epicRealm, to me, the second full paragraph of which reflects Oracle's notification to epicRealm of its intent to file an amended complaint with inequitable conduct claims.

8.     Attached hereto as Exhibit B is a copy of an e-mail, dated November 1, 2007, from me to George S. Bosy of Jenner & Block, again offering to stipulated to amend the parties' pleadings.

9.     Attached hereto as Exhibit C is a copy of an e-mail, dated November 7, 2007, from me to George S. Bosy and Patrick L. Patras of Jenner & Block, which provided them with a draft of Oracle's amended complaint and discussing the terms of the parties' stipulation.

10.     Attached hereto as Exhibit D is a copy of an e-mail, dated November 14, 2007, from me to David R. Bennett of Jenner & Block, requesting that Mr. Bennett or Mr. Bosy explain their refusal to stipulate to amend the pleadings.

11.     Attached hereto as Exhibit E is a copy of an e-mail, dated December 4, 2007, from me to Messrs. Bosy and Patras, describing some of the evidence supporting Oracle's inequitable conduct claims, and again requesting that the parties stipulate to the filing of Oracle's amended complaint.

12.     Attached hereto as Exhibit F is a copy of an e-mail, dated December 11, 2007, from me to Messrs. Bosy and Patras, after epicRealm's filing of its motion to substitute parties, indicating that Oracle would not oppose epicRealm's motion and again offering to negotiate a stipulation for amended pleadings.

13.     Attached hereto as Exhibit G is a copy of an e-mail, dated December 13, 2007, from Mr. Bosy to me, explaining epicRealm's position in response to my December 11 e-mail (Ex. H).

14.     Attached hereto as Exhibit H is a copy of an e-mail, dated January 2, 2008, from Robert J. Artuz of Townsend and Townsend and Crew, counsel for Oracle, to Mr. Patras, providing epicRealm with another copy of Oracle's draft amended complaint and again

requesting that epicRealm stipulate to the amended pleading.

15.     Attached hereto as Exhibit I is a copy of an e-mail, dated January 3, 2008, from Mr. Patras to Mr. Artuz, notifying Oracle of epicRealm's intent to oppose Oracle's motion for leave to amend its complaint.

16.     Attached hereto as Exhibit J (filed under seal) is a copy of an e-mail, dated September 1, 1995, from Keith Lowery, principal at epicRealm and named co-inventor of the patents-in-suit, the contents of which have been designated by epicRealm as "Confidential" under the terms of the Stipulated Protective Order entered in this case.

17.     Attached hereto as Exhibit K is a copy of a Notice of References Cited and an Interview Summary contained in the prosecution file history for epicRealm patent-in-suit 5,894,554, from Patent Office examiner Rehana Perveen to James Salter, patent attorney for epicRealm, dated December 17, 1998, in which the examiner cites U.S Patent No. 5,761,673, an Oracle patent prosecuted by Mr. Salter, which epicRealm failed to disclose to the Patent Office.

18.     Attached hereto as Exhibit L is a copy of an office action contained in the prosecution file history for epicRealm patent-in-suit 6,415,335, from examiner Perveen to Mr. Salter, dated February 18, 2001, in which the examiner cites U.S Patent No. 5,761,673, an Oracle patent prosecuted by Mr. Salter, which epicRealm failed to disclose to the Patent Office.

19.     Attached hereto as Exhibit M is a copy of the Patent Office's order of January 25, 2007, granting the request filed on November 27, 2006, for *ex parte* reexamination of epicRealm's '554 patent, in which the Patent Office cites, *inter alia*, the Oracle prior art as material to the patentability of the claimed inventions.

20.     Attached hereto as Exhibit N is a copy of the Patent Office's order of January 25, 2007, granting the request filed on November 27, 2006, for *ex parte* reexamination of

epicRealm's '335 patent, in which the Patent Office cites, *inter alia*, the Oracle prior art as material to the patentability of the claimed inventions.

21.     Attached hereto as Exhibit O is a copy of the Patent Office's order of May 4, 2007, granting the request filed on March 29, 2007, for *ex parte* reexamination of epicRealm's '554 patent, in which the Patent Office cites, *inter alia*, the Oracle prior art as material to the patentability of the claimed inventions.

22.     Attached hereto as Exhibit P is a copy of the Patent Office's order of May 4, 2007, granting the request filed on March 29, 2007, for *ex parte* reexamination of epicRealm's '335 patent, in which the Patent Office cites, *inter alia*, the Oracle prior art as material to the patentability of the claimed inventions.

23.     Attached hereto as Exhibit Q is a copy of the Patent Office's order of May 4, 2007, granting the request filed on April 3, 2007, for *ex parte* reexamination of epicRealm's '554 patent, in which the Patent Office cites, *inter alia*, the Oracle prior art as material to the patentability of the claimed inventions.

24.     Attached hereto as Exhibit R is a copy of the Patent Office's order of May 4, 2007, granting the request filed on April 3, 2007, for *ex parte* reexamination of epicRealm's '335 patent, in which the Patent Office cites, *inter alia*, the Oracle prior art as material to the patentability of the claimed inventions.

25.     Attached hereto as Exhibit S is a copy of the "Amended Answer and Counterclaims of Defendant Herbalife International of America, Inc., In Response to Plaintiff epicRealm Licensing LP's Second Amended Complaint" that was filed on October 23, 2006 in the Eastern District of Texas, which includes the defense of inequitable conduct.

26.    Attached hereto as Exhibit T is a copy of the "Amended Answer and Counterclaims of Defendant FriendFinder Network, Inc." that was filed on October 27, 2006 in the Eastern District of Texas, which includes the defense of inequitable conduct.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on this 4th day of January, 2008 at Palo Alto, California.

By: _____
     Theodore T. Herhold

61243342 v1

### CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Richard L. Horwitz
> David Ellis Moore
> POTTER ANDERSON & CORROON, LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on January 4, 2008 upon the following individuals in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**

Richard L. Horwitz
David Ellis Moore
POTTER ANDERSON & CORROON, LLP
1313 N. Market St., Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899-0951

**rhorwitz@potteranderson.com**
**dmoore@potteranderson.com**

**BY E-MAIL**

George S. Bosy, Esquire
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603

**gbosy@jenner.com**


*/s/ James W. Parrett, Jr.*
James W. Parrett, Jr. (#4292)

# EXHIBIT A

# JENNER&BLOCK

October 27, 2007

Jenner & Block LLP    Chicago
330 N. Wabash Avenue   Dallas
Chicago, IL 60611     New York
Tel 312-222-9350    Washington, DC
www.jenner.com

**VIA EMAIL**

Theodore T. Herhold, Esq.
Townsend and Townsend and Crew
379 Lytton Avenue
Palo Alto, California 94301-1431

Paul D. Margolis
Tel 312 923-8323
Fax 312 923-8423
pmargolis@jenner.com

Re:     ***Oracle Corp. et al. v. epicRealm Licensing, LP***
       **CA No. 06-CV-414 (SLR)**

Dear Ted:

We are writing to summarize the telephonic meet and confer that you, Eric Hutchins, Pat Patras and I conducted last night. We once again addressed four issues: (1) the stipulation regarding Parallel Networks; (2) Oracle's document production; (3) issues regarding Oracle's source code production; and (4) epicRealm's discovery responses.

*First*, with respect to the stipulation that we sent for your review regarding Parallel Networks, you stated that you may have a few minor changes, but agreed to the substitution of Parallel Networks for epicRealm as the defendant in this action. Additionally, you informed us that Oracle was working on a proposed amended complaint that would add an inequitable conduct claim, but that you would be in a better position to talk about this issue next week.

*Second*, with respect to Oracle's document production, you indicated that Oracle was not prepared at this time to provide a date by which its document production would be complete. In addition, you informed us that you were in the process of reviewing the categories of documents listed in David Bennett's October 23 letter that we believed to be missing from Oracle's production. You also explained that we would be receiving executable code for Oracle current software releases next week, but that it would take longer to produce executable code for older versions of Oracle software.

*Third*, we discussed issues relating to Oracle's production of source code. You informed us that Oracle will provide the manifest of the contents of the Texas computers and MD5 checksums next week. You also stated that Oracle would be willing to provide programs needed to read the contents of the Texas computers such as Microsoft Word and Adobe Acrobat. In addition, we provided you with a folder that we have identified as missing from the source code. With respect to our request to depose an Oracle Rule 30(b)(6) witness pursuant to our August 31, 2007 notice, you were not able to provide us with a date for the deposition yesterday. At the present time, we have an impasse as to when, in addition to where, the deposition will be. We believe the deposition should proceed at the escrow facility where Oracle has produced the source code.

Theodore T. Herhold, Esq.
October 27, 2007
Page 2

You indicated that you believed the deposition should proceed at Townsend's offices, even though Townsend does not currently have a copy of what Oracle produced at the escrow facility.

*Fourth*, we discussed Oracle's complaints about epicRealm's discovery responses. We agreed to supplement our response to Interrogatory No. 4 and to identify secondary considerations of nonobviousness in response to Interrogatory No. 12 by November 9. With respect to Interrogatory Nos. 6, 7, 10, 11, 12, 14, 15 and 16, we agreed to provide more specificity with respect to its use of Rule 33(d) in answering those interrogatories by November 30.

You indicated that you no longer want to submit a joint letter to the Court in advance of Monday's hearing. If you would like to speak again in advance of Monday's hearing, please let us know.

Very truly yours,

Paul D. Margolis

PDM

cc:    Robert J. Artuz, Esq.
       Mary B. Graham, Esq.
       George S. Bosy, Esq.
       Patrick L. Patras, Esq.
       Benjamin J. Bradford, Esq.

# EXHIBIT B

## Cameron, Alice M.

| | |
|---|---|
| **From:** | Herhold, Ted T. |
| **Sent:** | Thursday, November 01, 2007 4:15 PM |
| **To:** | 'Bosy, George S' |
| **Cc:** | Roper, Harry J; Patras, Patrick L |
| **Subject:** | RE: Parallel Networks |

George, as I mentioned to Pat, the plan is for us to draft an amended complaint replacing ER with PN and setting forth our inequitable conduct defense and forward that to you for review (as discussed with Pat, we believe both issues should be covered at the same time in the same amended complaint). If you agree to the proposed amended complaint, we can enter into the stip (which should be revised to account for our inequitable conduct defense) and we will go ahead and file the amended complaint, you can file your amended answer and counterclaims within, e.g., 5 days, and we can then file our amended answer to your counterclaims 5 days later. That all should be spelled out in the stip.

Let me know if this procedure is acceptable. We should have the draft amended complaint to you by Monday.

Ted


Theodore T. Herhold
Partner
Townsend and Townsend and Crew LLP
379 Lytton Ave.
Palo Alto, CA 94301
(650) 326-2400 (main)
(650) 326-2422 (fax)
(650) 752-2433 (direct)
tth@townsend.com

This message is from a lawyer and may contain confidential and/or privileged information. If you are not the intended recipient, please notify me immediately by return email and delete this message from your computer system.

-----Original Message-----
**From:** Willette, Timothy M [mailto:TWillette@jenner.com] **On Behalf Of** Bosy, George S
**Sent:** Thursday, November 01, 2007 9:22 AM
**To:** Herhold, Ted T.
**Cc:** Roper, Harry J; Patras, Patrick L
**Subject:** Parallel Networks

Ted,

When you have time, can we discuss the status of our proposal to substitute Parallel Networks for epicRealm? I'm available at any time over the next several days.

George

**George S. Bosy**
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
(312) 923-8305
(312) 923-8405 (fax)

---

**Timothy M. Willette**
**Legal Secretary**
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel (312) 923-4784
Fax (312) 527-0484
TWillette@jenner.com
www.jenner.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient (s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

# EXHIBIT C

## Cameron, Alice M.

**From:**    Herhold, Ted T.
**Sent:**    Wednesday, November 07, 2007 10:06 PM
**To:**      George S. Bosy (gbosy@jenner.com); Patrick L. Patras (ppatras@jenner.com)
**Cc:**      rhorwitz@potteranderson.com; Mary B. Graham (mgraham@MNAT.com)
**Subject:** Oracle/epicRealm

George and Pat, attached is a draft amended complaint substituting in Parallel Networks
for epicRealm and asserting a claim for inequitable conduct.  Substantive changes are
highlighted for ease of reference.  Please give me your thoughts before we finalize and
submit to the court along with the proposed stipulation.  With regard to the stipulation, it
should be revised to reflect both the substitution of parties and the addition of Oracle's
inequitable conduct claim.  It should probably also lay out the timing for
PN's answer/counterclaims, and Oracle's answer to PN's counterclaims.  Let's get local
counsel to weigh in on the proper wording and procedure for the stipulation.  I've copied
Mary and  Rich to get their input.

Ted

Theodore T. Herhold
Partner
Townsend and Townsend and Crew LLP
379 Lytton Ave.
Palo Alto, CA 94301
(650) 326-2400 (main)
(650) 326-2422 (fax)
(650) 752-2433 (direct)
tth@townsend.com

This message is from a lawyer and may contain confidential and/or privileged information.
If you are not the intended recipient, please notify me immediately by return email and
delete this message from your computer system.

# EXHIBIT D

## Cameron, Alice M.

**From:**     Herhold, Ted T.

**Sent:**     Wednesday, November 14, 2007 11:46 AM

**To:**       'Bennett, David R'; Hutchins, Eric M.; Artuz, Robert J.

**Cc:**       MGraham@MNAT.com; Bosy, George S; Patras, Patrick L; Moore, David E.; Horwitz, Richard L.;
              Margolis, Paul D; OracleEpicrealm

**Subject:** RE: Oracle v. epicRealm - Substitution of Parallel Networks

Can you or George explain why our last proposal was unacceptable.  I do not understand your
position.  We are agreeable to the substitution of PN for ER but believe it should be done in
conjunction with our proposed amendment adding our inequitable conduct claims.  We would
like to avoid a motion for leave to amend, as I'm sure you would like to do with the substitution
issue.  We should be able to work this out.  Please give me a call to discuss.

Ted

-----Original Message-----
**From:** Bennett, David R [mailto:DBennett@jenner.com]
**Sent:** Wednesday, November 14, 2007 11:10 AM
**To:** Herhold, Ted T.; Hutchins, Eric M.; Artuz, Robert J.
**Cc:** MGraham@MNAT.com; Bosy, George S; Patras, Patrick L; Moore, David E.; Horwitz, Richard L.;
Margolis, Paul D; OracleEpicrealm
**Subject:** RE: Oracle v. epicRealm - Substitution of Parallel Networks

We have made a reasonable effort to reach an agreement on the issue as required by Rule 7.1.1 of the
Delaware local rules, however, we no longer believe that an agreement can be reached.  This issue has
been between the party for months, your last proposal was unacceptable, and we are farther away from an
agreement than we were a month ago.  Therefore, we see no reason to further delay filing the motion.

---

**David R. Bennett**
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel (312) 923-8314
Fax (312) 923-8414
DBennett@jenner.com
www.jenner.com
CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient
(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please
notify the sender immediately and delete it from your system.

---

---

**From:** Herhold, Ted T. [mailto:ttherhold@townsend.com]
**Sent:** Wednesday, November 14, 2007 11:52 AM
**To:** Bennett, David R; Hutchins, Eric M.; Artuz, Robert J.

**Cc:** MGraham@MNAT.com; Bosy, George S; Patras, Patrick L; Moore, David E.; Horwitz, Richard L.; Margolis, Paul D; OracleEpicrealm
**Subject:** RE: Oracle v. epicRealm - Substitution of Parallel Networks

I'm not sure I understand.  Can you explain the "impasse."

> -----Original Message-----
> **From:** Bennett, David R [mailto:DBennett@jenner.com]
> **Sent:** Wednesday, November 14, 2007 8:58 AM
> **To:** Herhold, Ted T.; Hutchins, Eric M.; Artuz, Robert J.
> **Cc:** MGraham@MNAT.com; Bosy, George S; Patras, Patrick L; Moore, David E.; Horwitz, Richard L.; Margolis, Paul D; OracleEpicrealm
> **Subject:** Oracle v. epicRealm - Substitution of Parallel Networks
>
> Ted,
>
> We wanted to inform you that we believe that we have reached an impasse with regard to resolving the issue of substituting Parallel Networks for epicRealm.  We intend to file a Motion for Substitution this week.
>
> David Bennett
>
> ---
>
> **David R. Bennett**
> Jenner & Block LLP
> 330 N. Wabash Avenue
> Chicago, IL 60611-7603
> Tel (312) 923-8314
> Fax (312) 923-8414
> DBennett@jenner.com
> www.jenner.com
> CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.
>
> ---

# EXHIBIT E

## Cameron, Alice M.

**From:**     Herhold, Ted T.

**Sent:**     Tuesday, December 04, 2007 11:09 AM

**To:**       Bosy, George S; 'Patras, Patrick L'

**Subject:** Oracle/epicRealm - Inequitable Conduct Evidence

George and Pat, below is a summary of some of the evidence we will rely on in support of our inequitable conduct claims as alleged in the draft amended complaint. After you've had a chance to review, please let me know if you will stipulate to filing the amended complaint so we can get going on that and the substitution of Parallel Networks for epicRealm.

Regards,

Ted

Theodore T. Herhold
Partner
Townsend and Townsend and Crew LLP
379 Lytton Ave.
Palo Alto, CA 94301
(650) 326-2400
(650) 752-2433 (direct)
(650) 326-2422 (fax)
tth@townsend.com

Below are the bates numbers of the file histories of the patents-in-suit showing that counsel at Blakely Sokoloff was involved in the prosecution of both patents:

EPIC000174-324 '554 FH

EPIC000325-565 '335 FH

Below are the bates numbers for the file history of the Oracle "Bookman" patent that was cited by the Examiner as prior art against the epicRealm patents and was also prosecuted by Blakely:

ORCL01032002-32156

The Bookman patent application was filed by Blakely only a few months prior to the filing of the application for epicRealm's '554 patent.  Blakely never cited the Bookman patent application as prior art and never cited the numerous Oracle references that were cited in the Bookman patent as prior art.  The Examiner was the first to cite the Bookman patent.

Additionally, below are bates numbers of numerous epicRealm documents that show that epicRealm had knowledge of Oracle products (either prior art products or successors to prior art products) before or during the prosecution of the patents-in-suit.  These documents  support the conclusion that epicRealm was well aware of products that were being developed and sold in the internet server market prior to the filing of the patent applications yet failed to disclose any of this information to the examiner.

| BEGBATES | ENDBATES |
|---|---|
| EPIC000149 | EPIC000150 |
| EPIC001391 | EPIC001560 |
| EPIC001561 | EPIC001725 |

| | |
|---|---|
| EPIC002199 | EPIC002340 |
| EPIC002549 | EPIC002682 |
| EPIC002683 | EPIC002910 |
| EPIC002911 | EPIC003052 |
| EPIC003858 | EPIC003892 |
| EPIC003893 | EPIC003919 |
| EPIC010715 | EPIC010748 |
| EPIC011041 | EPIC011266 |
| EPIC014963 | EPIC014975 |
| EPIC015278 | EPIC015290 |
| EPIC016060 | EPIC016465 |
| EPIC016466 | EPIC016880 |
| EPIC017175 | EPIC017588 |
| EPIC018038 | EPIC018044 |
| EPIC018754 | EPIC018997 |
| EPIC020627 | EPIC021240 |
| EPIC021537 | EPIC021539 |
| EPIC021582 | EPIC021595 |
| EPIC022213 | EPIC022244 |
| EPIC022266 | EPIC022289 |
| EPIC022958 | EPIC022961 |
| EPIC023135 | EPIC023152 |
| EPIC024084 | EPIC024088 |
| EPIC024099 | EPIC024103 |
| EPIC024227 | EPIC024425 |
| EPIC024851 | EPIC025020 |
| EPIC025585 | EPIC025754 |
| EPIC025951 | EPIC026012 |
| EPIC026013 | EPIC026164 |
| EPIC026271 | EPIC026440 |
| EPIC026798 | EPIC026975 |
| EPIC027963 | EPIC027965 |
| EPIC027966 | EPIC027971 |
| EPIC027988 | EPIC027990 |
| EPIC027997 | EPIC028000 |
| EPIC028001 | EPIC028004 |
| EPIC028011 | EPIC028011 |
| EPIC028012 | EPIC028012 |
| EPIC028036 | EPIC028036 |
| EPIC028051 | EPIC028052 |
| EPIC028190 | EPIC028359 |
| EPIC028373 | EPIC028399 |
| EPIC028495 | EPIC028664 |
| EPIC029572 | EPIC029713 |
| EPIC029830 | EPIC029994 |
| EPIC030467 | EPIC030528 |
| EPIC030529 | EPIC030680 |
| EPIC030913 | EPIC030916 |
| EPIC031338 | EPIC031364 |
| EPIC032111 | EPIC032271 |
| EPIC033326 | EPIC033334 |
| EPIC033337 | EPIC033340 |
| EPIC033349 | EPIC033352 |

| | |
|---|---|
| EPIC033388 | EPIC033427 |
| EPIC035340 | EPIC035345 |
| EPIC036426 | EPIC036427 |
| EPIC037448 | EPIC037450 |
| EPIC038294 | EPIC038297 |
| EPIC038326 | EPIC038326 |
| EPIC038343 | EPIC038346 |
| EPIC039609 | EPIC039613 |
| EPIC039614 | EPIC039619 |
| EPIC039637 | EPIC039641 |
| EPIC040195 | EPIC040202 |
| EPIC040235 | EPIC040270 |
| EPIC040279 | EPIC040286 |
| EPIC040367 | EPIC040367 |
| EPIC040683 | EPIC040770 |
| EPIC042260 | EPIC042267 |
| EPIC042416 | EPIC042451 |
| EPIC045645 | EPIC045697 |
| EPIC051456 | EPIC051458 |
| EPIC051664 | EPIC051664 |
| EPIC054608 | EPIC054765 |
| EPIC056389 | EPIC056401 |
| EPIC057860 | EPIC057862 |
| EPIC057885 | EPIC057896 |
| EPIC057897 | EPIC057913 |
| EPIC058064 | EPIC058065 |
| EPIC058088 | EPIC058117 |
| EPIC058145 | EPIC058161 |
| EPIC058164 | EPIC058175 |
| EPIC058207 | EPIC058281 |
| EPIC059765 | EPIC059849 |
| EPIC060630 | EPIC060634 |
| EPIC065469 | EPIC065476 |
| EPIC070500 | EPIC070501 |
| EPIC071089 | EPIC071095 |
| EPIC080776 | EPIC080816 |
| EPIC086737 | EPIC086751 |
| EPIC086753 | EPIC086834 |
| EPIC087093 | EPIC087194 |
| EPIC087505 | EPIC087506 |
| EPIC088207 | EPIC088476 |
| EPIC088477 | EPIC088944 |
| EPIC094776 | EPIC095555 |
| EPIC103910 | EPIC103911 |
| EPIC104098 | EPIC104135 |
| EPIC112509 | EPIC112510 |
| EPIC113024 | EPIC113026 |
| EPIC113094 | EPIC113110 |
| EPIC113826 | EPIC113833 |
| EPIC114940 | EPIC114959 |
| EPIC114961 | EPIC114980 |
| EPIC114982 | EPIC115001 |
| EPIC115119 | EPIC115135 |

| | |
|---|---|
| EPIC117357 | EPIC117359 |
| EPIC119754 | EPIC119788 |
| EPIC120783 | EPIC120788 |
| EPIC121431 | EPIC121465 |
| EPIC125528 | EPIC125577 |
| EPIC126033 | EPIC126058 |
| EPIC126260 | EPIC126265 |
| EPIC126267 | EPIC126271 |
| EPIC126275 | EPIC126278 |
| EPIC126700 | EPIC126701 |
| EPIC126843 | EPIC126851 |
| EPIC127042 | EPIC127042 |
| EPIC127611 | EPIC127645 |
| EPIC128312 | EPIC128326 |
| EPIC128683 | EPIC128711 |
| EPIC131696 | EPIC131751 |
| EPIC139013 | EPIC139015 |
| EPIC139029 | EPIC139073 |
| EPIC139198 | EPIC139198 |
| EPIC145782 | EPIC145791 |
| EPIC155071 | EPIC155098 |
| EPIC155099 | EPIC155126 |
| EPIC157592 | EPIC157607 |
| EPIC159399 | EPIC159445 |
| EPIC164441 | EPIC164442 |
| EPIC167485 | EPIC167505 |
| EPIC167663 | EPIC167678 |
| EPIC167756 | EPIC167773 |
| EPIC167783 | EPIC167800 |
| EPIC167816 | EPIC167833 |
| EPIC167840 | EPIC167845 |
| EPIC167846 | EPIC167847 |
| EPIC168581 | EPIC168582 |
| EPIC169859 | EPIC169859 |
| EPIC172095 | EPIC172199 |
| EPIC172222 | EPIC172312 |
| EPIC172485 | EPIC172499 |
| EPIC172502 | EPIC172516 |
| EPIC172533 | EPIC172547 |
| EPIC177453 | EPIC177454 |
| EPIC178872 | EPIC178892 |
| EPIC179046 | EPIC179068 |
| EPIC179195 | EPIC179217 |
| EPIC179343 | EPIC179346 |
| EPIC179604 | EPIC179655 |
| EPIC181992 | EPIC182012 |
| EPIC183788 | EPIC183879 |
| EPIC183880 | EPIC183989 |
| EPIC185833 | EPIC185834 |
| EPIC188637 | EPIC188660 |
| EPIC192587 | EPIC192591 |
| EPIC202970 | EPIC202972 |
| EPIC211100 | EPIC211209 |

| | |
|---|---|
| EPIC213099 | EPIC213297 |
| EPIC215797 | EPIC215823 |
| EPIC217793 | EPIC217801 |
| EPIC222556 | EPIC222563 |
| EPIC225341 | EPIC225411 |
| EPIC227119 | EPIC227134 |
| EPIC227136 | EPIC227182 |
| EPIC227950 | EPIC227956 |
| EPIC232703 | EPIC232705 |
| EPIC233886 | EPIC233892 |
| EPIC234057 | EPIC234107 |
| EPIC238177 | EPIC238181 |
| EPIC238183 | EPIC238186 |
| EPIC239233 | EPIC239234 |
| EPIC239493 | EPIC239494 |
| EPIC239496 | EPIC239497 |
| EPIC239503 | EPIC239505 |
| EPIC239510 | EPIC239511 |
| EPIC239524 | EPIC239525 |
| EPIC239665 | EPIC239668 |
| EPIC242032 | EPIC242036 |
| EPIC242038 | EPIC242042 |
| EPIC242140 | EPIC242161 |
| EPIC242205 | EPIC242214 |
| EPIC242251 | EPIC242265 |
| EPIC242274 | EPIC242330 |
| EPIC242334 | EPIC242380 |
| EPIC242460 | EPIC242495 |
| EPIC242533 | EPIC242575 |
| EPIC242580 | EPIC242622 |
| EPIC242625 | EPIC242673 |
| EPIC242723 | EPIC242724 |
| EPIC243453 | EPIC243490 |
| EPIC243503 | EPIC243525 |
| EPIC243527 | EPIC243552 |
| EPIC243554 | EPIC243587 |
| EPIC249948 | EPIC249950 |
| EPIC250526 | EPIC250530 |
| EPIC251009 | EPIC251029 |
| EPIC251176 | EPIC251198 |
| EPIC251199 | EPIC251217 |
| EPIC251296 | EPIC251300 |
| EPIC251581 | EPIC251588 |
| EPIC251638 | EPIC251647 |
| EPIC252049 | EPIC252051 |
| EPIC252052 | EPIC252054 |
| EPIC252841 | EPIC252845 |
| EPIC256512 | EPIC256538 |
| EPIC258495 | EPIC258500 |
| EPIC258530 | EPIC258539 |
| EPIC258555 | EPIC258575 |
| EPIC261086 | EPIC261093 |
| EPIC261140 | EPIC261164 |

| | |
|---|---|
| EPIC261618 | EPIC261624 |
| EPIC264402 | EPIC264402 |
| EPIC264404 | EPIC264404 |
| EPIC264405 | EPIC264405 |
| EPIC264406 | EPIC264406 |
| EPIC264453 | EPIC264460 |
| EPIC264834 | EPIC264836 |
| EPIC270193 | EPIC270205 |
| EPIC270270 | EPIC270282 |
| EPIC270283 | EPIC270294 |
| EPIC270295 | EPIC270307 |
| EPIC271467 | EPIC271482 |
| EPIC271531 | EPIC271537 |
| EPIC272078 | EPIC272078 |
| EPIC272193 | EPIC272213 |
| EPIC272215 | EPIC272235 |
| EPIC272441 | EPIC272445 |
| EPIC275127 | EPIC275133 |
| EPIC282745 | EPIC282791 |
| EPIC283479 | EPIC283480 |
| EPIC283668 | EPIC283669 |
| EPIC283674 | EPIC283674 |
| EPIC283977 | EPIC283979 |
| EPIC286630 | EPIC286636 |
| EPIC286783 | EPIC286859 |
| EPIC292057 | EPIC292058 |
| EPIC292884 | EPIC292907 |
| EPIC292959 | EPIC292965 |
| EPIC292986 | EPIC293023 |
| EPIC293103 | EPIC293112 |
| EPIC293167 | EPIC293170 |
| EPIC293185 | EPIC293222 |
| EPIC293354 | EPIC293356 |
| EPIC293528 | EPIC293528 |
| EPIC294053 | EPIC294057 |
| EPIC294204 | EPIC294208 |
| EPIC294215 | EPIC294217 |
| EPIC298657 | EPIC298787 |
| EPIC298788 | EPIC298914 |
| EPIC299952 | EPIC299955 |
| EPIC301297 | EPIC301350 |
| EPIC302468 | EPIC302471 |
| EPIC302472 | EPIC302475 |
| EPIC302476 | EPIC302478 |
| EPIC302479 | EPIC302480 |
| EPIC304398 | EPIC304404 |
| EPIC305287 | EPIC305288 |
| EPIC305632 | EPIC305633 |
| EPIC305638 | EPIC305638 |
| EPIC305639 | EPIC305639 |
| EPIC305641 | EPIC305642 |
| EPIC305679 | EPIC305680 |
| EPIC307855 | EPIC307879 |

| | |
|---|---|
| EPIC307904 | EPIC307927 |
| EPIC309607 | EPIC309612 |
| EPIC329984 | EPIC329985 |
| EPIC332069 | EPIC332073 |
| EPIC332115 | EPIC332120 |
| EPIC332125 | EPIC332130 |
| EPIC332131 | EPIC332136 |
| EPIC348066 | EPIC348067 |
| EPIC359673 | EPIC359719 |
| EPIC360421 | EPIC360430 |
| EPIC360555 | EPIC360564 |
| EPIC400620 | EPIC400624 |
| EPIC403179 | EPIC403285 |
| EPIC416199 | EPIC416199 |
| EPIC416413 | EPIC416516 |
| EPIC421716 | EPIC421736 |
| EPIC422027 | EPIC422035 |
| EPIC423407 | EPIC423559 |
| EPIC423840 | EPIC423847 |
| EPIC424505 | EPIC424777 |

# EXHIBIT F

## Cameron, Alice M.

| | |
|---|---|
| **From:** | Herhold, Ted T. |
| **Sent:** | Tuesday, December 11, 2007 10:48 AM |
| **To:** | MGraham@MNAT.com; Patrick L. Patras (ppatras@jenner.com); George S. Bosy (gbosy@jenner.com) |
| **Cc:** | OracleEpicrealm |
| **Subject:** | RE: Oracle et al. v. epicRealm Licensing, LP, (C.A. No. 06-414-SLR) |

George and Pat, I am disappointed to see that you went ahead with your motion without the courtesy of responding to our request to simultaneously add our inequitable conduct claims. At your request, we forwarded the evidence underlying our inequitable conduct claims last week but have yet to hear back from you. I assume your motion means that you will not stipulate to adding these claims to the lawsuit. As you know, we did not oppose your proposed substitution of Parallel Networks for epicRealm but only sought to streamline the process by amending the complaint only once to effectuate the substitution and add our inequitable conduct claims. You have declined to respond to our offer and instead proceeded with your motion, which appears to be a violation of Local Rule 7.1.1. We are still open to reaching an agreement on both issues. If we do not hear from you, we will take appropriate action in responding to your motion and will proceed with our motion to amend the complaint to add our inequitable conduct claims.

Ted

Theodore T. Herhold
Partner
Townsend and Townsend and Crew LLP
379 Lytton Ave.
Palo Alto, CA 94301
(650) 326-2400 (main)
(650) 326-2422 (fax)
(650) 752-2433 (direct)
tth@townsend.com

This message is from a lawyer and may contain confidential and/or privileged information. If you are not the intended recipient, please notify me immediately by return email and delete this message from your computer system.

-----Original Message-----
**From:** Baker, Melinda S. [mailto:mbaker@potteranderson.com]
**Sent:** Tuesday, December 11, 2007 8:56 AM
**To:** OracleEpicrealm; MGraham@MNAT.com
**Subject:** Oracle et al. v. epicRealm Licensing, LP, (C.A. No. 06-414-SLR)

Attached is your service copy of the following document filed and/or served today in the above-referenced action:

- Motion to Substitute Parties Pursuant to Rule 25(c), Fed. R. Civ. P.; and
- Defendant's Memorandum in Support of Its Motion to Substitute Parties Pursuant to Rule

25(c), Fed. R. Civ. P.



**Melinda S. Baker**
Secretary to Richard L. Horwitz
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984 6251 Direct Dial
302 658 1192 Fax
mbaker@potteranderson.com
www.potteranderson.com

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice
contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (a)
avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter
addressed herein.

THIS ELECTRONIC MAIL TRANSMISSION AND ANY ATTACHMENTS MAY CONTAIN PRIVILEGED, CONFIDENTIAL, OR
PROPRIETARY INFORMATION INTENDED ONLY FOR THE PERSON(S) NAMED. IF THE READER OF THIS MESSAGE IS NOT THE
INTENDED RECIPIENT OR THE AUTHORIZED REPRESENTATIVE OF THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED
THAT ANY DISTRIBUTION, COPYING, OR DISCLOSURE OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

# EXHIBIT G

## Cameron, Alice M.

**From:** Willette, Timothy M [TWillette@jenner.com] on behalf of Bosy, George S [GBosy@jenner.com]

**Sent:** Thursday, December 13, 2007 1:04 PM

**To:** Herhold, Ted T.

**Cc:** Patras, Patrick L

**Subject:** RE: Oracle et al. v. epicRealm Licensing, LP, (C.A. No. 06-414-SLR)

Ted,

This is in response to your e-mail of December 11, 2007 with respect to our motion to substitute Parallel Networks as the real party in interest.

Your e-mail contains assertions that are knowingly erroneous and that suggest that our good faith attempt to reach an agreement on the substitution issue was doomed to failure because of Oracle's bad faith from the start. Contrary to your assertions, Oracle never agreed to substitute without the further condition that we agree to your amending your complaint to include the new and meritless charge of inequitable conduct. Indeed, it was not until well after negotiations began that Oracle added this condition in an attempt to gain a substantial advantage for Oracle having nothing to do with what really should have been a straightforward substitution issue. And so, your assertion that we have violated Local Rule 7.1.1 is specious.

As you know, we will not agree to Oracle's request to substantially amend its complaint in exchange for what Oracle should have agreed to in the first instance -- the substitution of Parallel Networks for epicRealm. I await to see what basis Oracle has for opposing our motion, because you have never articulated one.

George

**George S. Bosy**
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
(312) 923-8305
(312) 923-8405 (fax)

---

**Timothy M. Willette**
**Legal Secretary**
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel (312) 923-4784
Fax (312) 527-0484
TWillette@jenner.com
www.jenner.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

12/28/2007

**From:** Herhold, Ted T. [mailto:ttherhold@townsend.com]
**Sent:** Tuesday, December 11, 2007 12:48 PM
**To:** MGraham@MNAT.com; Patras, Patrick L; Bosy, George S
**Cc:** OracleEpicrealm
**Subject:** RE: Oracle et al. v. epicRealm Licensing, LP, (C.A. No. 06-414-SLR)

George and Pat, I am disappointed to see that you went ahead with your motion without the
courtesy of responding to our request to simultaneously add our inequitable conduct claims.
At your request, we forwarded the evidence underlying our inequitable conduct claims last
week but have yet to hear back from you. I assume your motion means that you will not
stipulate to adding these claims to the lawsuit. As you know, we did not oppose your proposed
substitution of Parallel Networks for epicRealm but only sought to streamline the process by
amending the complaint only once to effectuate the substitution and add our inequitable
conduct claims. You have declined to respond to our offer and instead proceeded with your
motion, which appears to be a violation of Local Rule 7.1.1. We are still open to reaching an
agreement on both issues. If we do not hear from you, we will take appropriate action in
responding to your motion and will proceed with our motion to amend the complaint to add our
inequitable conduct claims.

Ted

Theodore T. Herhold
Partner
Townsend and Townsend and Crew LLP
379 Lytton Ave.
Palo Alto, CA 94301
(650) 326-2400 (main)
(650) 326-2422 (fax)
(650) 752-2433 (direct)
tth@townsend.com

This message is from a lawyer and may contain confidential and/or privileged information. If
you are not the intended recipient, please notify me immediately by return email and delete this
message from your computer system.

    -----Original Message-----
    **From:** Baker, Melinda S. [mailto:mbaker@potteranderson.com]
    **Sent:** Tuesday, December 11, 2007 8:56 AM
    **To:** OracleEpicrealm; MGraham@MNAT.com
    **Subject:** Oracle et al. v. epicRealm Licensing, LP, (C.A. No. 06-414-SLR)

    Attached is your service copy of the following document filed and/or served today in the
    above-referenced action:

        • Motion to Substitute Parties Pursuant to Rule 25(c), Fed. R. Civ. P.; and
        • Defendant's Memorandum in Support of Its Motion to Substitute Parties Pursuant to
          Rule 25(c), Fed. R. Civ. P.



**Melinda S. Baker**
Secretary to Richard L. Horwitz
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984 6251 Direct Dial
302 658 1192 Fax
mbaker@potteranderson.com
www.potteranderson.com

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.

THIS ELECTRONIC MAIL TRANSMISSION AND ANY ATTACHMENTS MAY CONTAIN PRIVILEGED, CONFIDENTIAL, OR PROPRIETARY INFORMATION INTENDED ONLY FOR THE PERSON(S) NAMED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE AUTHORIZED REPRESENTATIVE OF THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISTRIBUTION, COPYING, OR DISCLOSURE OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

# EXHIBIT H

**Hutchins, Eric M.**

| | |
|---|---|
| **From:** | Artuz, Robert J. |
| **Sent:** | Wednesday, January 02, 2008 5:57 PM |
| **To:** | Patras, Patrick L |
| **Cc:** | 'Bosy, George S'; Herhold, Ted T.; Hutchins, Eric M. |
| **Subject:** | Oracle's Amended Complaint for Declaratory Judgment.DOC |

Pat,

I don't believe we ever got final word from epicRealm as to whether it will stipulate to Oracle amending its complaint to add an inequitable conduct claim.

Attached again is a draft of Oracle's proposed amended complaint. This draft contains additional facts to support its claim. Oracle must move to amend its complaint by January 4. Please state whether or not epicRealm will oppose Oracle's motion to seek the amendment. If we do not hear from you by Friday, we will assume that you intend to oppose Oracle's motion.

Regards,

Rob Artuz

Robert J. Artuz
Associate
Townsend and Townsend and Crew LLP
379 Lytton Ave.
Palo Alto, CA 94301
Phone: 650-326-2400
Fax: 650-326-2422
rjartuz@townsend.com

www.townsend.com

This message may contain confidential information. If you are not
the intended recipient and received this in error, any use, or distribution
is strictly prohibited. Please also notify us immediately by return e-mail,
and delete this message from your computer system.



Oracle_s Amended
  Complaint for...

# EXHIBIT I

## Hutchins, Eric M.

| | |
|---|---|
| **From:** | Patras, Patrick L [PPatras@jenner.com] |
| **Sent:** | Thursday, January 03, 2008 1:54 PM |
| **To:** | Artuz, Robert J. |
| **Cc:** | Bosy, George S; Herhold, Ted T.; Hutchins, Eric M. |
| **Subject:** | RE: Oracle's Amended Complaint for Declaratory Judgment.DOC |

Rob:
    We intend to oppose Oracle's motion.

Pat

**Patrick L. Patras**
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel (312) 923-2945
Fax (312) 840-7345
PPatras@jenner.com
www.jenner.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Artuz, Robert J. [mailto:rjartuz@townsend.com]
**Sent:** Wednesday, January 02, 2008 7:57 PM
**To:** Patras, Patrick L
**Cc:** Bosy, George S; Herhold, Ted T.; Hutchins, Eric M.
**Subject:** Oracle's Amended Complaint for Declaratory Judgment.DOC

Pat,

I don't believe we ever got final word from epicRealm as to whether it will stipulate to Oracle amending its complaint to add an inequitable conduct claim.

Attached again is a draft of Oracle's proposed amended complaint. This draft contains additional facts to support its claim. Oracle must move to amend its complaint by January 4. Please state whether or not epicRealm will oppose Oracle's motion to seek the amendment. If we do not hear from you by Friday, we will assume that you intend to oppose Oracle's motion.

Regards,

Rob Artuz

Robert J. Artuz
Associate
Townsend and Townsend and Crew LLP
379 Lytton Ave.
Palo Alto, CA  94301
Phone:  650-326-2400
Fax:  650-326-2422
rjartuz@townsend.com

www.townsend.com

This message may contain confidential information.  If you are not
the intended recipient and received this in error, any use, or distribution
is strictly prohibited.  Please also notify us immediately by return e-mail,
and delete this message from your computer system.

<<Oracle's Amended Complaint for Declaratory Judgment.DOC>>

1/3/2008

# EXHIBIT K

| **Notice of References Cited** | | Application No.<br>08/636,477 | | Applicant(s)<br>LOWERY et al | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Examiner<br>Rehana Perveen | | Group Art Unit<br>2782 | | Page 1 of 1 | |

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
| --- | --- | --- | --- | --- | --- | --- |
| X | A | 5,761,673 | 6/2/98 | Bookman et al | 707 | 104 |
| X | B | 5,751,956 | 5/12/98 | Kirsch | 395 | 200.33 |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |
| | R | | | | | | |
| | S | | | | | | |
| | T | | | | | | |

**NON-PATENT DOCUMENTS**

| * | | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
| --- | --- | --- | --- |
| | U | | |
| | V | | |
| | W | | |
| | X | | |

* A copy of this reference is not being furnished with this Office action.
(See Manual of Patent Examining Procedure, Section 707.05(a).)

| *Interview Summary* | Application No.<br>08/636,477 | Applicant(s)<br>LOWERY et al | |
|---|---|---|---|
| | Examiner<br>Rehana Perveen | Group Art Unit<br>2782 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Rehana Perveen_      (3) _____

(2) _MR. JAMES SALTER_      (4) _____

Date of Interview _____ _Dec 17, 1998_ _____

Type: ☒ Telephonic ☐ Personal (copy is given to ☐ applicant ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☒ No. If yes, brief description:

_____

_____

Agreement ☒ was reached. ☐ was not reached.

Claim(s) discussed: _1-9 and 11-16_

Identification of prior art discussed:
_prior art of record_

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
_Applicants agreed to cancel dependent claim 2 to include the limitations of claim 2 into independent claims 1, 11, and 16;_
_applicants also agreed to cancel independent claim 13, independent claim 14, and dependent claim 15, as set forth in the_
_attached examiner's amendment._

_____

_____

_____

_____

_____

_____

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

1. ☒ It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph above has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a response to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.

2. ☐ Since the Examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the interview unless box 1 above is also checked.

Examiner Note: You must sign and stamp this form unless it is an attachment to a signed Office action.

U. S. Patent and Trademark Office
PTO-413 (Rev. 10-95)          Interview Summary          Paper No. __8__

# EXHIBIT L



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
                Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 09/234,048 | 01/19/99 | LOWERY | K     02577.P001D |

```
                                              ┌─────────────────────┐
┌                                          ┐  │       EXAMINER       │
                                              └─────────────────────┘
                          TM21/0223
 JAMES H SALTER                               ┌──────────┬──────────┐
 BLAKELY SOKOLOFF TAYLOR & ZAFMAN             │ ART UNIT │ PAPER NUMBER │
 12400 WILSHIRE BOULEVARD                     │          │     7        │
 7TH FLOOR                                     2182
 LOS ANGELES CA 90025                         DATE MAILED:
                                                      02/23/01
```

Please find below and/or attached an Office communication concerning this application or
proceeding.

Commissioner of Patents and Trademarks

| **Office Action Summary** | Application No.<br>09/234,048 | Applicant(s)<br>LOWERY et al |
| | Examiner<br>Rehana Perveen | Group Art Unit<br>2182 |

☒ Responsive to communication(s) filed on _Jul 12, 1999_

☐ This action is FINAL.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___3___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) _17-45_ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) _17-45_ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐approved ☐disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). _2, 3, & 6_

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

THOMAS LEE
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2100

--- SEE OFFICE ACTION ON THE FOLLOWING PAGES ---

Application/Control Number: 09/234,048                                    Page 2

Art Unit: 2182

Part III    DETAILED ACTION

1.              Claims 17-45 are presented for examination.

                              *Specification*

2.              The title of the invention is not descriptive.  A new

title is required that is clearly indicative of the

invention to which the claims are directed.

                            *Double Patenting*

3.              The nonstatutory double patenting rejection is based on
a judicially created doctrine grounded in public policy (a
policy reflected in the statute) so as to prevent the
unjustified or improper timewise extension of the "right to
exclude" granted by a patent and to prevent possible
harassment by multiple assignees.  See *In re Goodman*, 11
F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759
F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,
686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422
F.2d 438, 164 USPQ 619 (CCPA 1970);and, *In re Thorington*,
418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37

CFR 1.321© may be used to overcome an actual or provisional

rejection based on a nonstatutory double patenting ground

provided the conflicting application or patent is shown to be

commonly owned with this application.  See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of

record may sign a terminal disclaimer.  A terminal disclaimer

signed by the assignee must fully comply with 37 CFR 3.73(b).

Application/Control Number: 09/234,048                                         Page 3

Art Unit: 2182

4.      Claims 17-45 are rejected under the judicially created
doctrine of obviousness-type double patenting as being
unpatentable over claims 1-11 of U.S. Patent No. 5,894,554.
Although the conflicting claims are not identical, they are
not patentably distinct from each other.

                    *Claim Rejections - 35 USC § 102*

5.      The following is a quotation of the appropriate
paragraphs of 35 U.S.C. 102 that form the basis for the
rejections under this section made in this Office action:

A person shall be entitled to a patent unless --

(e) the invention was described in a patent granted on an application for
patent by another filed in the United States before the invention thereof
by the applicant for patent, or on an international application by another
who has fulfilled the requirements of paragraphs (1), (2), and (4) of
section 371© of this title before the invention thereof by the applicant
for patent.

6.      Claims 17-45 are rejected under 35 U.S.C. 102(e) as
being anticipated by Leaf, patent no. 5,754,772.

7.      As to claim 17, <u>Leaf</u> teaches routing a request from a
Web server to a page server, the page server receiving the
request and releasing the Web server to process other
requests, intercepting the request at the Web server and
routing the request to the page server, processing the
request by the page server while the Web server concurrently

Application/Control Number: 09/234,048                                    Page 4

Art Unit: 2182

        processes the other requests, and dynamically generating a
Web page in response to the request, the Web page including
data dynamically retrieved from one or more data sources
(col. 2 lines 30-60 and col. 4 line 10 - col. 5 line 50).

8.      As to claim 18, Leaf teaches routing the request from
the Web server to a dispatcher (Transaction Gateway Client),
and dispatching the request to the page server (Transaction
processing System 26) (col. 4 lines 55-67).

9.      As to claims 19 and 20, Leaf teaches identifying said
one or more data sources and dynamically retrieving data
from the one or more data sources (col. 4 lines 55-67).

10.     As to claim 21, Leaf, inherently, teaches maintaining a
connection cache to one or more data sources.

11.     As to claim 22, Leaf teaches logging into the one or
more data sources (inherent, col. 4 lines 10-67).

12.     As to claim 23, Leaf, inherently, teaches maintaining a
page cache containing the Web page.

Application/Control Number: 09/234,048                                    Page 5

Art Unit: 2182

13.        As to claims 24-26, Leaf teaches tag-based text
      templates for configuring the Web page, inserting the
      dynamically retrieved data from the one or more data sources
      into the tag-based text templates, at least one of said tag-
      based text templates drives a format of the data dynamically
      retrieved from the one or more data sources in response to
      the request (col. 4 line 10 - col. 5 line 50).

14.        As to claim 27, Leaf teaches the tag-based text
      templates include HTML templates (col. 4 lines 55-67).

15.        As to claim 28, Leaf, inherently, teaches dynamically
      updating data at the one or more data sources.

16.        As to claims 29 and 30, Leaf teaches processing an
      object handling extension, the object handling extension
      being an OLE extension (col. 4 line 10 - col. 5 line 45).

17.        Claims 31-45 are different variations of claims 17-30,
      and therefore, are rejected under the same rationale.

18.        Further references of interest are cited on Form PTO-
      892 which is an attachment to this office action.

Application/Control Number: 09/234,048                                    Page 6

Art Unit: 2182


Any response to this action should be mailed to:

    Commissioner of Patents and Trademarks
    Washington, D.C. 20231

  or faxed to:

    (703) 308-9051, (for formal communications
    intended for entry)
  Or:
    (703) 306-5404 (for informal or draft
    communications, please label "PROPOSED" or
    "DRAFT")


  Hand-delivered responses should be brought to Crystal Park II, 2121 Crystal Drive,
  Arlington. VA., Sixth Floor (Receptionist).


19.   Any inquiry concerning this communication or earlier
communications from the examiner should be directed to
Rehana Perveen, whose telephone number is (703) 305-8476.
The examiner can normally be reached Monday through Friday
from 8:00 AM - 4:30 PM.

   If attempts to reach the examiner by telephone are
unsuccessful, the examiner's supervisor, Thomas C. Lee, can
be reached at (703) 305-9717.  The fax phone number for this
Group is (703) 306-5404.

   Any inquiry of a general nature or relating to the
status of this application should be directed to the Group
receptionist whose telephone number is (703) 305-9600.


Rehana Perveen
February 18, 2001

| | | Application No. 09/234,048 | | Applicant(s) LOWERY et al | | | |
|---|---|---|---|---|---|---|---|
| ***Notice of References Cited*** | | Examiner Rehana Perveen | | Group Art Unit 2182 | | Page 1 of 1 | |

**U.S. PATENT DOCUMENTS**

| | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| | A | 5,761,673 | 6/1998 | Bookman et al | 707 | 104 |
| | B | 5,754,772 | 5/1998 | Leaf | 395 | 200.33 |
| | C | 5,404,527 | 4/1995 | Irwin et al | 395 | 700 |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |
| | R | | | | | | |
| | S | | | | | | |
| | T | | | | | | |

**NON-PATENT DOCUMENTS**

| | | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|---|
| | U | | |
| | V | | |
| | W | | |
| | X | | |

U. S. Patent and Trademark Office
PTO-892 (Rev. 9-95)                    Notice of References Cited                    Part of Paper No. __7__

# EXHIBIT M



### UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,342 | 11/27/2006 | 5894554 | | 2076 |

| | | |
|---|---|---|
| 8791 | 7590 | 01/25/2007 |

BLAKELY SOKOLOFF TAYLOR & ZAFMAN
12400 WILSHIRE BOULEVARD
SEVENTH FLOOR
LOS ANGELES, CA  90025-1030

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 01/25/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

1/25/07

DANIEL B. RAVICHER

PUBLIC PATENT FOUNDATION

1375 BROADWAY, SUITE 600

NEW YORK NY   10015

## *EX PARTE*  REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008342

PATENT NO.   5,894,554

ART UNI   3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,342 | Patent Under Reexamination 5894554 |
|---|---|---|
| | Examiner Scott L. Weaver | Art Unit 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>27 November 2006</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐  PTO-892,    b)☒  PTO/SB/08,    c)☒  Other: <u>Decision on Request</u>

1. ☒   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐   The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)).  **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

   a) ☐  by Treasury check or,

   b) ☐  by credit to Deposit Account No. _____,  or

   c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)                    Office Action in *Ex Parte* Reexamination                    Part of Paper No. 20070119

Application/Control Number: 90/008,342                                    Page 2
Art Unit: 3992

### *Decision on Request for Ex Parte Reexamination*

Reexamination has been requested for claims 1-11 of United States Patent Number 5,894,554 to Lowery et al. issued on April 13, 1999 from application No. 08/636,477 filed on April 23, 1996.

A substantial new question of patentability affecting claims 1-11 of United States Patent Number 5,894,554 to Lowery is raised by the request for reexamination filed on November 27,2006 for the reasons set forth below.

### *The References Cited in The Request*

The Request identifies the following documents as providing teachings relevant to claims 1-11 of United States Patent Number 5,894,554 to Lowery

Exhibit A:     U.S. Patent **5,701,451 to Rogers et al**. which issued on December 23, 1997 from application filed on date of June 7, 1995.

Rogers has not previously been made of record during prosecution of the application which became the 5,894,554 patent to Lowery and as such has not been previously considered nor addressed during an 'examination' of the application which became the 5,894,554 patent to Lowery, nor in a final holding of invalidity by the Federal Courts. The Rogers patent listed above is not cumulative to the prior art of record.

### *Issues Raised in the Request*

The request indicates that the requestor considers:

-Claims 1-11 of the 5,894,554 patent to Lowery may be unpatentable over Rogers alone with details provided on pages 3-7 of the request.

The 5,894,554 patent to Lowery discloses management of dynamic web page generation requests to a web server with the request intercepted and routed from web server to a page server such as to release the web server from processing the request and so that the web server may process other requests concurrently. A dynamically generated web page with data dynamically retrieved from one or more data sources is generated from the intercepted request and sent back to the requesting client or stored on machine accessible to web server for later retrieval (col.2,ln.21-33; col.4,ln.54-62; col.5,ln.38-48; col.6,ln.21-32).

Application/Control Number: 90/008,342                                                Page 3
Art Unit: 3992

Claim 1 is representative:

> 1. A computer-implemented method for managing a dynamic Web page generation
> request to a Web server, said computer-implemented method comprising the steps
> of:
> routing said request from said Web server to a page server, said page server
> receiving said request and releasing said Web server to process other requests,
> wherein said routing step further includes the steps of intercepting said
> request at said Web server, routing said request from said Web server to a
> dispatcher, and dispatching said request to said page server;
> processing said request, said processing being performed by said page server
> while said Web server concurrently processes said other requests; and
> dynamically generating a Web page in response to said request, said Web page
> including data dynamically retrieved from one or more data sources.

The examiner did not indicate reasons for allowance during prosecution of the application which
became the 5,894,554 patent to Lowery. The record indicates that the prior art of record did not
teach or suggest 'dynamically generating a Web page in response to a request wherein the Web
page includes data dynamically retrieved from one or more data sources, as claimed'.

Requester takes the position that Rogers describes web server receiving request for web page
from client (col.4,ln.52-60; col.5,ln.28-35), a control program agent acting to intercept the
request (col.4,ln.44-51; col.12,ln.49-53) and routing the intercepted request to an open data
interpretation system server (ODAS) (page server) (Figure 7, col.5,ln.10-22). The processing of
the request by the ODAS server enabled the web server to process other requests concurrently
(figure 11; col.5,ln.10-16; col.14,ln.33-43) . And data from various data sources was used to
generate the dynamic web page of the intercepted request (col.5,ln.28-39; col.5,ln.45-53;
col.7,ln.42-29).

It is agreed that the description of the system in the Rogers patent as presented in the request
raise a substantial new question of patentability with respect to at least claim 1 of the 5,894,554
patent to Lowery . The  Rogers reference describing the dynamic generation of a web page from
various data sources responsive to an intercepted request at a web page server was not before the
office during any previous examination of the application which became the 5,894,554 patent to
Lowery. There is a substantial likelihood that a reasonable examiner would have considered the
Rogers reference describing these features important in making a decision as to the patentability
of claims 1-11 during the examination· of the application which became the 5,894,554 patent to
Lowery.

There is a substantial likelihood that a reasonable examiner would have considered the Rogers
reference describing these features important in making a decision as to the patentability of
claims 1-11 during the examination of the application which became the 5,894,554 patent to
Lowery.

Application/Control Number: 90/008,342                                    Page 4
Art Unit: 3992

All claims 1-11 of the 5,894,554 patent to Lowery will be reexamined as requested in the request filed on 11/27/2006.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving U.S. Patent Number 6,151,606 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Please mail any communications to:
Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA  22313-1450

Please FAX any communications to:
(571) 273-9900
Central Reexamination Unit

Please hand-deliver any communications to:
Customer Service Window
Attn:  Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Scott L. Weaver                                    Conferees:
Primary Examiner
Central Reexam Unit 3992                            ROLAND G. FOSTER
(571) 272-7548                                     CRU EXAMINER-AU 3992

                                                  CENTRAL REEXAMINATION UNIT
                                                  SPRE-AU 3992
                                                  MARK J. REINHART

# EXHIBIT N



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,343 | 11/27/2006 | 6415335 | | 3417 |

7590          01/25/2007

Matthew B. Talpis, Esq.
BAKER BOTTS LLP
2001 Ross Ave.
Dallas, TX  75201-2980

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 01/25/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

1/25/07

Public Patent Foundation

1375 Broadway, Suite 600

New York, NY  10018

## *EX PARTE*  REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008343

PATENT NO.   6,415,335

ART UNI   3993

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,343 | Patent Under Reexamination 6415335 |
| | Examiner Scott L. Weaver | Art Unit 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>27 November 2006</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☐ Other: <u>*Decision on Request*</u>

1. ☒  The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐  The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)).  **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐  by Treasury check or,

b) ☐  by credit to Deposit Account No. _____,  or

c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)          Office Action in *Ex Parte* Reexamination          Part of Paper No. 20070121

Application/Control Number: 90/008,343                                      Page 2
Art Unit: 3992

### Decision on Request for Ex Parte Reexamination

Reexamination has been requested for claims 1-29 of United States Patent Number
6,415,335 to Lowery et al. issued on July 2, 2002 from divisional application No. 09/234,048
claiming priority to the 5,894,554 patent to Lowery filed on April 23, 1996 and subject of
reexamination control number 90/008,342.

A substantial new question of patentability affecting claims 1-29 of United States Patent Number
6,415,3356 to Lowery is raised by the request for reexamination filed on November 27,2006 for
the reasons set forth below.

### The References Cited in The Request

The Request identifies the following documents as providing teachings relevant to claims 1-29
of United States Patent Number 6,415,335 to Lowery.

Exhibit A:      U.S. Patent **5,701,451 to Rogers et al.** which issued on December 23, 1997 from
application filed on date of June 7, 1995.

The 5,701,451 patent to Rogers has not previously been made of record during prosecution of the
application which became the 6,415,335 patent to Lowery and as such has not been previously
considered nor addressed during an 'examination' of the application which became the 6,415,335
patent to Lowery, nor in a final holding of invalidity by the Federal Courts.

### Issues Raised in the Request

The request indicates that the requestor considers:

     -Claims 1-29 of the 6,415,3356 patent to Lowery may be unpatentable over Rogers
     alone with details provided on pages 3-10 of the request.

Application/Control Number: 90/008,343                                    Page 3
Art Unit: 3992

The 6,415,3356 patent to Lowery discloses management of dynamic web page generation
requests to a web server with the request intercepted and routed from web server to a page server
such as to release the web server from processing the request and so that the web server may
process other requests concurrently. A dynamically generated web page with data dynamically
retrieved from one or more data sources is generated from the intercepted request and sent back
to the requesting client or stored on machine accessible to web server for later retrieval (col. 2,
ln.. 21-32;  col. 4, ln. 54-62;  col. 5, ln. 38-48;  col. 6 ,ln. 19-31).


Claim 1 is representative:


      1.  A computer-implemented method for managing a dynamic Web page generation
      request to a Web server, said computer-implemented method comprising the steps
      of:
      routing a request from a Web server to a page server, said page server
      receiving said request and releasing said Web server to process other requests
      wherein said routing step further includes the steps of:
      intercepting said request at said Web server and routing said request to
      said page server;
      processing said request, said processing being performed by said page server
      while said Web server concurrently processes said other requests;
      and
      dynamically generating a Web page in response to said request, said Web page
      including data dynamically retrieved from one or more data sources.

      2.  The computer-implemented method in claim 1 wherein said step of routing
      said request includes the steps of:
      routing said request from said Web server to a dispatcher;  and
      dispatching said request to said page server.


The examiner did not indicate a reasons for allowance during prosecution of the application
which became the 6,415,335 patent to Lowery.


Requester takes the position that Rogers describes web server receiving request for web page
from client (col.4,ln.52-60; col.5,ln.28-35), a control program agent acting to intercept the
request (col.4,ln.44-51; col.12,ln.49-53) and route the intercepted request to an open data
interpretation system server (ODAS) (page server) (Figure 7, col.5,ln.10-22). The processing of
the request by the ODAS server enabled the web server to process other requests concurrently
(figure 11; col.5,ln.10-16; col.14,ln.33-43) . And data from various data sources was used to
generate the dynamic web page of the intercepted request (col.5,ln.28-39; col.5,ln.45-53;
col.7,ln.42-29).

Application/Control Number: 90/008,343                                          Page 4
Art Unit: 3992

It is agreed that the description of the system in the Rogers 5,701,451 patent as presented in the
request raise a substantial new question of patentability with respect to at least claim 1 of the
6,415,335 patent to Lowery . The Rogers 5,701,451 patent describing the dynamic generation
of a web page from various data sources responsive to a request received at a web page server
was not before the office during any previous examination of the application which became the
6,415,335 patent to Lowery. There is a substantial likelihood that a reasonable examiner would
have considered the Rogers 5,701,451 patent describing these features important in making a
decision as to the patentability of claims 1-29 during the examination of the application which
became the 6,415,335 patent to Lowery.

All claims 1-29 of the 6,415,335 patent to Lowery will be reexamined as requested in the
request filed on 11/27/2006.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the
provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination
proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will
be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte*
reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise
the Office of any litigation activity, or other prior or concurrent proceeding, involving U.S.
Patent Number 6,151,606 throughout the course of this reexamination proceeding. The third
party requester is also reminded of the ability to similarly apprise the Office of any such activity
or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282
and 2286.

Application/Control Number: 90/008,343                                    Page 5
Art Unit: 3992

Please mail any communications to:
Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA   22313-1450

Please FAX any communications to:
(571) 273-9900
Central Reexamination Unit

Please hand-deliver any communications to:
Customer Service Window
Attn:  Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Scott L. Weaver                                    Conferees:
Primary Examiner
Central Reexam Unit 3992
(571) 272-7548

                                                   ROLAND G. FOSTER
                                                   CRU EXAMINER-AU 3992


                                                   MARK J. REINHART
                                                   SPRE-AU 3992
                                                   CENTRAL REEXAMINATION UNIT

# EXHIBIT O

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP

300 S. WACKER DRIVE

32ND FLOOR

CHICAGO, IL 60606

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,562*.

PATENT NO. *5894554*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No.<br>90/008,562 | Patent Under Reexamination<br>5894554 | |
|---|---|---|---|
| | Examiner<br>Scott L. Weaver | Art Unit<br>3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>29 March 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☒ Other: <u>*Decision on Request*</u>

1. ☒    The request for *ex parte* reexamination is GRANTED.

        RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☐  by credit to Deposit Account No. _____, or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )

Application/Control Number: 90/008,562                                           Page 2
Art Unit: 3992

### *Decision on Request for Ex Parte Reexamination*

Reexamination has been requested for claims 1-11 of United States Patent Number
5,894,554 to Lowery et al. issued on April 13, 1999 from application No. 08/636,477 filed on
April 23, 1996.

A substantial new question of patentability affecting claims 1-11 of United States Patent
Number 5,894,554 to Lowery is raised by the request for reexamination filed on
March 29, 2007 for the reasons set forth below.

### *The References Cited in The Request*

The Request identifies the following documents as providing teachings relevant to claims 1-11
of United States Patent Number 5,894,554 to Lowery

Exhibit E:       "The World-Wide Web Gateway to Hyper-G: Using a Connectionless Protocol to
                 Access Session-Oriented Services", Diploma Thesis of Christian Derler,
                 Technology University of Graz, Austria, July 1, 1995 (hereafter "Derler")

Exhibit F:       "Dienst: Implementation Reference Manual", Technical Report TR 95-1514,
                 Lagoze et al., , Department of Computer Science, Cornell University, May 5,
                 1995 (hereafter "Dienst).

Each of the Derler and Dienst references has not previously been made of record during
prosecution of the application which became the 5,894,554 patent to Lowery and as such has not
been previously considered nor addressed during an 'examination' of the application which
became the 5,894,554 patent to Lowery, nor in a final holding of invalidity by the Federal
Courts. The Derler and Dienst references listed above are not cumulative to the prior art of
record.

Application/Control Number: 90/008,562                                    Page 3
Art Unit: 3992

### *Issues Raised in the Request*

The request indicates that the requestor considers:

> Claims 1-11 of the 5,894,554 patent to Lowery may be unpatentable over
> Derler alone with details provided on pages 8-21 of the request.

> Claims 1-5 and 7-11 of the 5,894,554 patent to Lowery may be unpatentable over
> Dienst alone with details provided on pages 22-35 of the request.

> Claim 6 of the 5,894,554 patent to Lowery may be unpatentable over Derler in
> combination with Dienst with details provided on page 29 of the request.

The 5,894,554 patent to Lowery discloses management of dynamic web page generation requests
to a web server with the request intercepted and routed from web server to a page server such as
to release the web server from processing the request and so that the web server may process
other requests concurrently. A dynamically generated web page with data dynamically retrieved
from one or more data sources is generated from the intercepted request and sent back to the
requesting client or stored on machine accessible to web server for later retrieval (col.2,ln.21-33;
col.4,ln.54-62; col.5,ln.38-48; col.6,ln.21-32).

Claim 1 is representative:

> 1. A computer-implemented method for managing a dynamic Web page generation
> request to a Web server, said computer-implemented method comprising the steps
> of:
> routing said request from said Web server to a page server, said page server
> receiving said request and releasing said Web server to process other requests,
> wherein said routing step further includes the steps of intercepting said
> request at said Web server, routing said request from said Web server to a
> dispatcher, and dispatching said request to said page server;
> processing said request, said processing being performed by said page server
> while said Web server concurrently processes said other requests; and
> dynamically generating a Web page in response to said request, said Web page
> including data dynamically retrieved from one or more data sources.

The examiner did not indicate reasons for allowance during prosecution of the application which
became the 5,894,554 patent to Lowery. The record indicates that the prior art of record did not
teach or suggest 'dynamically generating a Web page in response to a request wherein the Web
page includes data dynamically retrieved from one or more data sources, as claimed'.

Application/Control Number: 90/008,562                                    Page 4

Art Unit: 3992

-Requester takes the position that Derler discloses a WWW (world wide web) Gateway which includes software features including Master, Slave, and Child processes which intercept and dispatch requests to the page server (a Hyper-G server) while the WWW Gateway processes other requests, the description on page 51, last paragraph through page 55 first paragraph and figures 4.3, 4.4., 4.5 of Derler describes the generation of dynamic web pages using architecture as shown in figure 4.17 on page 95.

It is agreed that the description of the system in Derler as presented in the request raise a substantial new question of patentability with respect to claim 1 of the 5,894,554 patent to Lowery . The Derler reference describing the dynamic generation of a web page using the Master, Slave, Child processes of the gateway and Hyper-G server as described on pages 11-14 was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery. There is a substantial likelihood that a reasonable examiner would have considered the Derler reference describing these features important in making a decision as to the patentability of claims 1-11 during the examination of the application which became the 5,894,554 patent to Lowery.

-Requester takes the position that Dienst discloses a system and method for managing requests for documents ("Web Pages") stored on page server (Dienst server) or other server from WWW clients. The requester indicates that Dienst discloses the requests from the client being intercepted at the server by a CGI (Common Gateway Interface) stub as shown via figure 2 on page 10 of Dienst. The CGI stub dispatches the requests to a page server (Dienst server) which retrieve the requested dynamic content for delivery to the requesting client and which allows the WWW server to handle other incoming requests.

It is agreed that the description of the system in Dienst as presented in the request raise a substantial new question of patentability with respect to claim 1 of the 5,894,554 patent to Lowery . The Dienst reference describing the dynamic generation of a web page using the Dienst Server , WWW server and CGI stub as described on pages 22-35 of the request was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery. There is a substantial likelihood that a reasonable examiner would have considered the Dienst reference describing the disclosed features noted above important in making a decision as to the patentability of claims 1-11 during the examination of the application which became the 5,894,554 patent to Lowery.

-Requester takes the position that Derler  in combination with Dienst  as discussed on page 29 of the request raises a substantial new question of patentability with respect to claims 6. Since each of Derler and Dienst alone is considered to raise a substantial new question of patentability as noted above, the combination proposed also raises a substantial new question of patentability for similar reasons.

Application/Control Number: 90/008,562                                    Page 5
Art Unit: 3992

All claims 1-11 of the 5,894,554 patent to Lowery will be reexamined as requested in the
request filed on 03/29/2007.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the
provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination
proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will
be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte*
reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise
the Office of any litigation activity, or other prior or concurrent proceeding, involving U.S.
Patent Number 5,894,554 throughout the course of this reexamination proceeding. The third
party requester is also reminded of the ability to similarly apprise the Office of any such activity
or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282
and 2286.

Please mail any communications to:
Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA   22313-1450

Please FAX any communications to:
(571) 273-9900
Central Reexamination Unit

Please hand-deliver any communications to:
Customer Service Window
Attn:  Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Scott L. Weaver                                          Conferees:
Primary Examiner
Central Reexam Unit 3992
(571) 272-7548

SCOTT L. WEAVER
CRU EXAMINER-AU 3992

ROLAND G. FOSTER
CRU EXAMINER-AU 3992

MARK J. REINHART
SPRE-AU 3992
CENTRAL REEXAMINATION UNIT

## NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

C:\kiva\kenreex\ RRR-new-PO-address_by-rule.doc
May 1, 2007

# EXHIBIT P

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP

300 S. WACKER DRIVE

32ND FLOOR

CHICAGO, IL 60606

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,568*.

PATENT NO. *6415335*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| | Control No. | Patent Under Reexamination |
|---|---|---|
| **Order Granting / Denying Request For Ex Parte Reexamination** | 90/008,568 | 6415335 |
| | Examiner | Art Unit | |
| | Scott L. Weaver | 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>29 March 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐ PTO-892,      b)☒ PTO/SB/08,      c)☒ Other: *Decision on Request*

1. ☒   The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐   The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☐  by credit to Deposit Account No. _____,  or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)                    Office Action in *Ex Parte* Reexamination                    Part of Paper No. 20070425

Application/Control Number: 90/008,568                                   Page 2
Art Unit: 3992

### *Decision on Request for Ex Parte Reexamination*

Reexamination has been requested for claims 1-29 of United States Patent Number
6,415,335 to Lowery et al. issued on July 2, 2002 from divisional application No. 09/234,048
claiming priority to the 5,894,554 patent to Lowery filed on April 23, 1996 and subject of
reexamination control number 90/008,342.

A substantial new question of patentability affecting claims 1-29 of United States Patent Number
6,415,3356 to Lowery is raised by the request for reexamination filed on March 29, 2007 for the
reasons set forth below.

### *The References Cited in The Request*

The Request identifies the following documents as providing teachings relevant to claims 1-29
of United States Patent Number 6,415,335 to Lowery.

Exhibit E:    "The World-Wide Web Gateway to Hyper-G: Using a Connectionless Protocol to
              Access Session-Oriented Services", Diploma Thesis of Christian Derler,
              Technology University of Graz, Austria, July 1, 1995 (hereafter "Derler")

Exhibit F:    "Dienst: Implementation Reference Manual", Technical Report TR 95-1514,
              Lagoze et al., , Department of Computer Science, Cornell University, May 5,
              1995 (hereafter "Dienst).

Exhibit G:    U.S. Patent 5,682,468 to Fortenbery et al.

Each of the references cited as the exhibits E, F, and G above has not previously been made of
record during prosecution of the application which became the 6,415,335 patent to Lowery and
as such has not been previously considered nor addressed during an 'examination' of the
application which became the 6,415,335 patent to Lowery, nor in a final holding of invalidity
by the Federal Courts. The references listed above are not cumulative to the prior art of record.

Application/Control Number: 90/008,568                                   Page 3
Art Unit: 3992

<i>Issues Raised in the Request</i>

The request indicates that the requestor considers:

-Claims 1-12, 15-26 and 29 of the 6,415,3356 patent to Lowery may be unpatentable over Derler alone with details provided on pages 9-26 of the request.

-Claims 13-14, and 27-28 of the 6,415,3356 patent to Lowery may be unpatentable over Derler in combination with Fortenbery with details provided on pages 17-18, and 23-24 of the request.

-Claims 1-6, 8-12, 15-26 and 29 of the 6,415,3356 patent to Lowery may be unpatentable over Dienst alone with details provided on pages 27-43 of the request.

-Claims 7 and 21 of the 6,415,3356 patent to Lowery may be unpatentable over Dienst in combination with Derler with details provided on pages 33 and 39 of the request.

-Claims 13-14, and 27-28 of the 6,415,3356 patent to Lowery may be unpatentable over Dienst in combination with Fortenbery with details provided on pages 35-36 and 41-42 of the request.


The 6,415,3356 patent to Lowery discloses management of dynamic web page generation requests to a web server with the request intercepted and routed from web server to a page server such as to release the web server from processing the request and so that the web server may process other requests concurrently. A dynamically generated web page with data dynamically retrieved from one or more data sources is generated from the intercepted request and sent back to the requesting client or stored on machine accessible to web server for later retrieval (col. 2, ln.. 21-32; col. 4, ln. 54-62; col. 5, ln. 38-48; col. 6 ,ln. 19-31).

Claim 1 is representative:

1. A computer-implemented method for managing a dynamic Web page generation request to a Web server, said computer-implemented method comprising the steps of:
routing a request from a Web server to a page server, said page server
receiving said request and releasing said Web server to process other requests
wherein said routing step further includes the steps of:
intercepting said request at said Web server and routing said request to said page server;
processing said request, said processing being performed by said page server while said Web server concurrently processes said other requests;
and
dynamically generating a Web page in response to said request, said Web page

Application/Control Number: 90/008,568                                    Page 4
Art Unit: 3992

including data dynamically retrieved from one or more data sources.

2. The computer-implemented method in claim 1 wherein said step of routing said request includes the steps of:
routing said request from said Web server to a dispatcher;  and
dispatching said request to said page server.

The examiner did not indicate a reasons for allowance during prosecution of the application which became the 6,415,335 patent to Lowery.

-Requester takes the position that Derler discloses a WWW (world wide web) Gateway which includes software features including Master, Slave, and Child processes which intercept and dispatch requests to the page server (a Hyper-G server) while the WWW Gateway processes other requests. On page 51, last paragraph through page 55 first paragraph and figures 4.3, 4.4., 4.5, Derler describes the generation of dynamic web pages using architecture as shown in figure 4.17 on page 95.

It is agreed that the description of the system in Derler as presented in the request raise a substantial new question of patentability with respect to claim 1 of the 6,415,335 patent to Lowery . The Derler reference describing the dynamic generation of a web page using the Master, Slave, Child processes of the gateway and Hyper-G server as described on pages 9-11 was not before the office during any previous examination of the application which became the 6,415,335 patent to Lowery. There is a substantial likelihood that a reasonable examiner would have considered the Derler reference describing these features important in making a decision as to the patentability of claims 1-29 during the examination of the application which became the 6,415,335 patent to Lowery.

-Requester takes the position that Dienst discloses a system and method for managing requests for documents ("Web Pages") stored on page server (Dienst server) or other server from WWW clients. The requester indicates that Dienst discloses the requests from the client being intercepted at the server by a CGI (Common Gateway Interface) stub as shown via figure 2 on page 10 of Dienst. The CGI stub dispatches the requests to a page server (Dienst server) which retrieve the requested dynamic content for delivery to the requesting client and which allows the WWW server to handle other incoming requests.

It is agreed that the description of the system in Dienst as presented in the request raise a substantial new question of patentability with respect to claim 1 of the 6,415,335 patent to Lowery . The Dienst reference describing the dynamic generation of a web page using the Dienst Server , WWW server and CGI stub as described on pages 27-43 of the request was not before

Application/Control Number: 90/008,568                                        Page 5
Art Unit: 3992

the office during any previous examination of the application which became the 6,415,335
patent to Lowery. There is a substantial likelihood that a reasonable examiner would have
considered the Dienst reference describing the noted features important in making a decision as
to the patentability of claims 1-29 during the examination of the application which became the
6,415,335 patent to Lowery.


-Requester takes the position that Derler in combination with Dienst as discussed on pages 33
and 39 of the request and that Derler or Dienst separately in combination with Fortenbery raise a
substantial new question of patentability with respect to claims noted above. Since each of Derler
and Dienst alone is considered to raise a substantial new question of patentability as noted above,
the combinations proposed also raises a substantial new question of patentability for similar
reasons.


All claims 1-29 of the 6,415,335 patent to Lowery will be reexamined as requested in the
request filed on 3/29/2007.


Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the
provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination
proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will
be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte*
reexamination proceedings are provided for in 37 CFR 1.550(c).


The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise
the Office of any litigation activity, or other prior or concurrent proceeding, involving U.S.
Patent Number 6,415,335 throughout the course of this reexamination proceeding. The third
party requester is also reminded of the ability to similarly apprise the Office of any such activity
or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282
and 2286.

Application/Control Number: 90/008,568                                Page 6
Art Unit: 3992

Please mail any communications to:
Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA   22313-1450

Please FAX any communications to:
(571) 273-9900
Central Reexamination Unit

Please hand-deliver any communications to:
Customer Service Window
Attn:  Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Scott L. Weaver                              Conferees:
Primary Examiner
Central Reexam Unit 3992
(571) 272-7548

SCOTT L. WEAVER
CRU EXAMINER-AU 3992                          ROLAND G. FOSTER
                                             CRU EXAMINER-AU 3992

                                             MARK J. REINHART
                                             SPRE-AU 3992
                                             CENTRAL REEXAMINATION UNIT

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), automatically changed to that of the patent file as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, including the present reexamination proceeding, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice     (571) 272-7703
Central Reexam Unit (CRU)                (571) 272-7705
Reexamination Facsimile Transmission No. (571) 273-9900

C:\kiva\kenreex\ RRR-new-PO-address_by_rule.doc
May 1, 2007

# EXHIBIT Q

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

INTELLECTUAL PROPERTY LAW GROUP LLP

12 SOUTH FIRST STREET

SUITE 1205

SAN JOSE, CA  95113

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,574*.

PATENT NO. *5894554*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,574 | 04/03/2007 | 5894554 | FRIENDFINDER.RX1 | 2817 |

8791        7590        05/04/2007

BLAKELY SOKOLOFF TAYLOR & ZAFMAN
12400 WILSHIRE BOULEVARD
SEVENTH FLOOR
LOS ANGELES, CA  90025-1030

| EXAMINER |
|---|
| Scott L. Weaver |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | IFW |

DATE MAILED: 05/04/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,574 | Patent Under Reexamination 5894554 | |
|---|---|---|---|
| | Examiner Scott L. Weaver | Art Unit 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>03 April 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☒ Other: <u>*Decision on Request*</u>

1. ☒    The request for *ex parte* reexamination is GRANTED.

### RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)).  **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☐  by credit to Deposit Account No. _____, or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)          Office Action in *Ex Parte* Reexamination          Part of Paper No. 20070425

Application/Control Number: 90/008,574                                    Page 2
Art Unit: 3992

### *Decision on Request for Ex Parte Reexamination*

Reexamination has been requested for claims 1-11 of United States Patent Number
5,894,554 to Lowery et al. issued on April 13, 1999 from application No. 08/636,477 filed on
April 23, 1996.

A substantial new question of patentability affecting claims 1-11 of United States Patent
Number 5,894,554 to Lowery is raised by the request for reexamination filed on
April 3, 2007 for the reasons set forth below.

### *The References Cited in The Request*

The Request identifies the following documents as providing teachings relevant to claims 1-11
of United States Patent Number 5,894,554 to Lowery

| | |
|---|---|
| Exhibit B: | Installation and Planning Guide for Microsoft Internet Information Server, Version 1.0 ("Installation Guide"). |
| Exhibit C: | ODBC Web Database Add-on for Microsoft Internet Server Beta Release Notes (Exhibit B and C collectively hereafter referred to as "ODBC Notes"). |
| Exhibit D: | Oracle® Web Server User's Guide, Release 1.0 (1995). |
| Exhibit E: | Katrina Montinola, "The Oracle WebServer: A Technical Discussion," September 25, 1995 (Exhibit D and E collectively hereafter referred to as "the Oracle references"). |
| Exhibit F: | John Gaffney, "Illustra's Web DataBlade Module, An Illustra Technical Paper," SIGMOD Record, Vol. 25, No. 1, March 1996 (hereafter "Illustra"). |
| Exhibit G: | Carl Lagoze, Erin Shaw, James R. Davis and Dean B. Krafft, "Dienst: Implementation Reference Manual," pp. 1-69 (May 5, 1995) (hereafter "Lagoze" or "Dienst"). |
| Exhibit H: | Alexander Clausnitzer, Pavel vogel and Stephan Wiesener, "A WWW Interface to the OMNIS/Myriad Literature Retrieval Engine" (1995) (hereafter "Clausnitzer"). |
| Exhibit I: | Christian Derler, "The World-Wide Web Gateway to Hyper-G: Using a Connectionless Protocol to Access Session-Oriented Services," Institut fur Informationsverarbeitung und Computergestutzte neue Medien, pp. 1-104 (March 1995) (hereafter "Derler") . |
| Exhibit J: | U.S. Patent No. 6,249,291 to Popp (hereafter Popp). |

Application/Control Number: 90/008,574                                      Page 3

Art Unit: 3992

Exhibit K:    Bowman et al., "Harvest: A scalable, Customizable Discovery and Access
              System" (March 12, 1995) (hereafter "Harvest").

Exhibit L:    Antchev et al., "A WWW Learning Environment for Mathematics" (December
              12, 1995) (hereafter "Antchev").

Exhibit M:    Ashley Beitz, Renato Iannella, Andreas Vogel, zhonghua Yang, "integrating
              WWW and Middleware"(May 2, 1995) (hereafter "Beitz").

Exhibit N:    Ari Luotonen, and Kevin Altis, "World-Wide Web Proxies" (April 1994)
              (hereafter "Luotonen").

Exhibit O:    Richard Knudson, "Application Development with Microsoft's Internet
              Information Server" (February 2, 1996) (hereafter "Knudson").

Each of the references listed as Exhibit B through Exhibit O has not previously been made of
record during prosecution of the application which became the 5,894,554 patent to Lowery and
as such has not been previously considered nor addressed during an 'examination' of the
application which became the 5,894,554 patent to Lowery, nor in a final holding of invalidity by
the Federal Courts. The references listed above are not cumulative to the prior art of record.

### *Prosecution History*

The 5,894,554 patent to Lowery discloses management of dynamic web page generation requests
to a web server with the request intercepted and routed from web server to a page server such as
to release the web server from processing the request and so that the web server may process
other requests concurrently. A dynamically generated web page with data dynamically retrieved
from one or more data sources is generated from the intercepted request and sent back to the
requesting client or stored on machine accessible to web server for later retrieval (col.2,ln.21-33;
col.4,ln.54-62; col.5,ln.38-48; col.6,ln.21-32).

Claim 1 is representative:

    1. A computer-implemented method for managing a dynamic Web page generation
    request to a Web server, said computer-implemented method comprising the steps
    of:
    routing said request from said Web server to a page server, said page server
    receiving said request and releasing said Web server to process other requests,
    wherein said routing step further includes the steps of intercepting said
    request at said Web server, routing said request from said Web server to a
    dispatcher, and dispatching said request to said page server;
    processing said request, said processing being performed by said page server

Application/Control Number: 90/008,574                          Page 4
Art Unit: 3992

    while said Web server concurrently processes said other requests; and
dynamically generating a Web page in response to said request, said Web page
including data dynamically retrieved from one or more data sources.

The examiner did not indicate reasons for allowance during prosecution of the application which
became the 5,894,554 patent to Lowery. The record indicates that the prior art of record did not
teach or suggest 'dynamically generating a Web page in response to a request wherein the Web
page includes data dynamically retrieved from one or more data sources, as claimed'.

### *Issues Raised in the Request*

**The Requestor alleges that an SNQ is raised by Exhibits B and C collectively (ODBC
Notes).**

It is agreed that the consideration of Exhibit B and C (ODBC Notes) raises a substantial new
question of patentability as to claims 1-11 of the 5,894,554 patent to Lowery.

Request pages 12-16 are hereby incorporated by reference from the request for reexamination for
their explanation of the teaching provided in ODBC Notes that was not present in the
prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, ODBC Notes provides a discussion of features of the Microsoft Internet
Information Server as shown in figure 2 of page 2 of the Release Notes Document portion of
ODBC Notes which provides dynamic generation of web pages using a database connector as
described in steps one through six on pages 12-16 of the request. Requester takes the position
that the web server performs as a dispatcher dispatching the requests to database(s) and
necessarily releases connections in order to support the described multiple simultaneous
connections.

There is a substantial likelihood that a reasonable examiner would have considered the ODBC
Notes reference describing these features important in making a decision as to the patentability
of claims 1-11 during the examination of the application which became the 5,894,554 patent to
Lowery. The ODBC Notes references describing the dynamic generation of a web page using the
database connector and dispatch of requests to database by web server as described on pages 12-
16 and 34-42 of the request was not before the office during any previous examination of the
application which became the 5,894,554 patent to Lowery.

Accordingly, ODBC Notes raises a substantial new question of patentability as to claims 1-11,
which question has not been decided in a previous examination of the 5,894,554 patent to
Lowery.

Application/Control Number: 90/008,574                                    Page 5
Art Unit: 3992

**The Requestor alleges that an SNQ is raised by Exhibits D and E collectively (the Oracle references).**

It is agreed that the consideration of Exhibit D and E (the Oracle references) raises a substantial new question of patentability as to claims 1-3 and 5-11 of the 5,894,554 patent to Lowery.

Request pages 16-20 are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in the Oracle references that was not present in the prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, the Oracle references provides a discussion of features of Release 1.0 of Oracle Web Server, which disclose a Listener which determines if a received request from a client is for a dynamic or static document (p.1-3 Exhibit C and p.3 Exhibit D). A web agent is invoked if the request is for a dynamic document and thus the interception of the request occurs at the listener. The web agent is described as serving as a dispatcher which dispatches a request to a dynamic web page server (Oracle Server 7) and releasing the listener to process other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Oracle references describing these features important in making a decision as to the patentability of claims 1-11 during the examination of the application which became the 5,894,554 patent to Lowery. The Oracle references describing the dynamic generation of a web page using the database connector and dispatch of requests to database by web server as described on pages 16-20 and 42-50 of the request was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery.

Accordingly, the Oracle references raises a substantial new question of patentability as to claims 1-3 and 5-11, which question has not been decided in a previous examination of the 5,894,554 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit F (Illustra).**

It is agreed that the consideration of Exhibit F (Illustra) raises a substantial new question of patentability as to claims 1-5 and 7-11 of the 5,894,554 patent to Lowery.

Request pages 20-22 section C are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Illustra that was not present in the prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, Illustra provides a discussion of features of the Illustra web server architecture for generating a dynamic web page as shown on page 110 figure 2 of Illustra.

Application/Control Number: 90/008,574                                           Page 6
Art Unit: 3992

There is a substantial likelihood that a reasonable examiner would have considered the Illustra reference describing these features important in making a decision as to the patentability of claims 1-5 and 7-11 during the examination of the application which became the 5,894,554 patent to Lowery. The Illustra reference describing the dynamic generation of a web page using the described components as described on pages 20-22 and 50-55 of the request was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery.

Accordingly, Illustra raises a substantial new question of patentability as to claims 1-5 and 7-11, which question has not been decided in a previous examination of the 5,894,554 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit G (Lagoze (Dienst)).**

It is agreed that the consideration of Exhibit G (Lagoze (Dienst)) raises a substantial new question of patentability as to claims 1-4 and 7-11 of the 5,894,554 patent to Lowery.

Request pages 22-24 section D are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Lagoze (Dienst)) that was not present in the prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, the request provides a discussion of Lagoze (Dienst)) which includes a system and method for managing requests for documents ("Web Pages") stored on page server (Dienst server) or other server from WWW clients. The requester indicates that Dienst discloses the requests from the client being intercepted at the server by a CGI (Common Gateway Interface) stub as shown via figure 2 on page 10 of Dienst. The CGI stub dispatches the requests to a page server (Dienst server) which retrieve the requested dynamic content for delivery to the requesting client and which allows the WWW server to handle other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Lagoze reference (Dienst) describing the dynamic generation of a web page using the Dienst Server , WWW server and CGI stub important in making a decision as to the patentability of claims 1-4 and 7-11 during the examination of the application which became the 5,894,554 patent to Lowery. The Lagoze (Dienst) reference describing the dynamic generation of a web page using the described components as described on pages 22-24 and 55-61 of the request was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery.

Accordingly, Lagoze (Dienst)) raises a substantial new question of patentability as to claims 1-4 and 7-11, which question has not been decided in a previous examination of the 5,894,554 patent to Lowery.

Application/Control Number: 90/008,574                                  Page 7
Art Unit: 3992

**The Requestor alleges that an SNQ is raised by Exhibit H (Clausnitzer).**

It is agreed that the consideration of Exhibit H (Clausnitzer) raises a substantial new question of patentability as to claims 1-5 and 7-11 of the 5,894,554 patent to Lowery.

Request pages 24-26 section E are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Clausnitzer that was not present in the prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, Clausnitzer provides a discussion of a WWW interface to a search and retrieval system as shown in figure 5 as shown on page 25 of the request. The figure and explanation accompanying show a CGI gateway program, OMNIS servers and document servers which manages requests for documents stored on a server from WWW clients. The request indicates the requests from the client being intercepted at the server by a CGI (Common Gateway Interface) stub as shown via figure 5 of Clausnitzer.

There is a substantial likelihood that a reasonable examiner would have considered the Clausnitzer reference describing these features important in making a decision as to the patentability of claims 1-5 and 7-11 during the examination of the application which became the 5,894,554 patent to Lowery. The Clausnitzer reference describing the dynamic generation of a web page using the described components as described on pages 24-26 and 61-66 of the request was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery.

Accordingly, Clausnitzer raises a substantial new question of patentability as to claims 1-5 and 7-11, which question has not been decided in a previous examination of the 5,894,554 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit I (Derler).**

It is agreed that the consideration of Exhibit I (Derler) raises a substantial new question of patentability as to claims 1-6 and 9-11 of the 5,894,554 patent to Lowery.

Request pages 26-29 section F are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Derler that was not present in the prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, Derler provides a discussion of a WWW (world wide web) Gateway which includes software features including Master, Slave, and Child processes which intercept and dispatch requests to the page server (a Hyper-G server) while the WWW Gateway processes other requests. Derler describes the generation of dynamic web pages using architecture as shown in figure 4.17 on page 95.

Application/Control Number: 90/008,574                                    Page 8
Art Unit: 3992

There is a substantial likelihood that a reasonable examiner would have considered the Derler reference describing the dynamic generation of a web page using the Master, Slave, Child processes of the gateway and Hyper-G server important in making a decision as to the patentability of claims 1-6 and 9-11 during the examination of the application which became the 5,894,554 patent to Lowery. The Derler reference describing the dynamic generation of a web page using the described components as described on pages 26-29 and 66-73 of the request was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery.

Accordingly, Derler raises a substantial new question of patentability as to claims 1-6 and 9-11 which question has not been decided in a previous examination of the 5,894,554 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit J (Popp).**

It is agreed that the consideration of Exhibit J (Popp) raises a substantial new question of patentability as to claims 1-3, 5, and 7-11 of the 5,894,554 patent to Lowery.

Request pages 29-31 section G are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Popp that was not present in the prosecution of the application which became the 5,894,554 patent to Lowery.

In summary, Popp provides a discussion of using a web server, CGI Messenger and page servers to generate dynamic web pages. The CGI messenger takes over the request for dynamic content and acts as a dispatcher releasing the web server to process other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Popp reference describing the dynamic generation of a web page using these features important in making a decision as to the patentability of claims 1-3, 5, and 7-11 during the examination of the application which became the 5,894,554 patent to Lowery. The Popp reference describing the dynamic generation of a web page using the described components as described on pages 29-31 and 73-78 of the request was not before the office during any previous examination of the application which became the 5,894,554 patent to Lowery.

Accordingly, Popp raises a substantial new question of patentability as to claims 1-3, 5, and 7-11 which question has not been decided in a previous examination of the 5,894,554 patent to Lowery.

Application/Control Number: 90/008,574                                    Page 9
Art Unit: 3992

Requestor further alleges that claims 4-8 may be unpatentable in consideration of various combinations of exhibits A-J and secondary references K-O as indicated on pages 78-81 of the request. Since each of the exhibits A-J as indicated in the request is considered to raise a substantial new question of patentability as noted above, the combinations of exhibits in combination therewith as suggested on pages 78-81 of the request also raises substantial new question of patentability for similar reasons.

All claims 1-11 of the 5,894,554 patent to Lowery will be reexamined as requested in the request filed on 4/3/2007.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving U.S. Patent Number 5,894,554 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Please mail any communications to:
Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA  22313-1450

Application/Control Number: 90/008,574                                    Page 10
Art Unit: 3992

Please FAX any communications to:
(571) 273-9900
Central Reexamination Unit

Please hand-deliver any communications to:
Customer Service Window
Attn:  Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Scott L. Weaver
Primary Examiner
Central Reexam Unit 3992
(571) 272-7548

**SCOTT L. WEAVER**
**CRU EXAMINER-AU 3992**

Conferees:

**ROLAND G. FOSTER**
**CRU EXAMINER-AU 3992**

**MARK J. REINHART**
**SPRE-AU 3992**
**CENTRAL REEXAMINATION UNIT**

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination,* 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), automatically changed to that of the patent file as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, including the present reexamination proceeding, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

C:\kiva\kenreex\ RRR-new-PO-address_by-rule.doc
May 1, 2007

# EXHIBIT R

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

INTELLECTUAL PROPERTY LAW GROUP LLP

12 SOUTH FIRST STREET

SUITE 1205

SAN JOSE, CA  95113

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,584*.

PATENT NO. *6415335*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/008,584 | 6415335 |
| | Examiner | Art Unit | |
| | Scott L. Weaver | 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>03 April 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☒ Other: <u>*Decision on Request*</u>

1. ☒    The request for *ex parte* reexamination is GRANTED.

                RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☐  by credit to Deposit Account No. _____ , or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)          Office Action in *Ex Parte* Reexamination          Part of Paper No. 20070425

Application/Control Number: 90/008,584                                    Page 2

Art Unit: 3992

### *Decision on Request for Ex Parte Reexamination*

Reexamination has been requested for claims 1-29 of United States Patent Number 6,415,335 to Lowery et al. issued on July 2, 2002 from divisional application No. 09/234,048 claiming priority to the 5,894,554 patent to Lowery filed on April 23, 1996 and subject of reexamination control number 90/008,342.

A substantial new question of patentability affecting claims 1-29 of United States Patent Number 6,415,3356 to Lowery is raised by the request for reexamination filed on April 3, 2007 for the reasons set forth below.

### *The References Cited in The Request*

The Request identifies the following documents as providing teachings relevant to claims 1-29 of United States Patent Number 6,415,335 to Lowery.

Exhibit B:    Installation and Planning Guide for Microsoft Internet Information Server, Version 1.0 ("Installation Guide").

Exhibit C:    ODBC Web Database Add-on for Microsoft Internet Server Beta Release Notes (Exhibit B and C collectively hereafter referred to as "ODBC Notes").

Exhibit D:    Oracle® Web Server User's Guide, Release 1.0 (1995).

Exhibit E:    Katrina Montinola, "The Oracle WebServer: A Technical Discussion," September 25, 1995 (Exhibit D and E collectively hereafter referred to as "the Oracle references").

Exhibit F:    John Gaffney, "Illustra's Web DataBlade Module, An Illustra Technical Paper," SIGMOD Record, Vol. 25, No. 1, March 1996 (hereafter "Illustra").

Exhibit G:    Carl Lagoze, Erin Shaw, James R. Davis and Dean B. Krafft, "Dienst: Implementation Reference Manual," pp. 1-69 (May 5, 1995) (hereafter "Lagoze" or "Dienst").

Exhibit H:    Alexander Clausnitzer, Pavel vogel and Stephan Wiesener, "A WWW Interface to the OMNIS/Myriad Literature Retrieval Engine" (1995) (hereafter "Clausnitzer").

Exhibit I:    Christian Derler, "The World-Wide Web Gateway to Hyper-G: Using a Connectionless Protocol to Access Session-Oriented Services," Institut fur Informationsverarbeitung und Computergestutzte neue Medien, pp. 1-104 (March 1995) (hereafter "Derler").

Exhibit J:    U.S. Patent No. 6,249,291 to Popp (hereafter Popp).

Application/Control Number: 90/008,584                                        Page 3
Art Unit: 3992

Exhibit K:    Bowman et al., "Harvest: A scalable, Customizable Discovery and Access
              System" (March 12, 1995) (hereafter "Harvest").

Exhibit L:    Antchev et al., "A WWW Learning Environment for Mathematics" (December
              12, 1995) (hereafter "Antchev").

Exhibit M:    Ashley Beitz, Renato Iannella, Andreas Vogel, zhonghua Yang, "integrating
              WWW and Middleware"(May 2, 1995) (hereafter "Beitz").

Exhibit N:    Ari Luotonen, and Kevin Altis, "World-Wide Web Proxies" (April 1994)
              (hereafter "Luotonen").

Exhibit O:    Richard Knudson, "Application Development with Microsoft's Internet
              Information Server" (February 2, 1996) (hereafter "Knudson").


Each of the references listed as Exhibit B through Exhibit O above has not previously been made
of record during prosecution of the application which became the 6,415,335 patent to Lowery
and as such has not been previously considered nor addressed during an 'examination' of the
application which became the 6,415,335 patent to Lowery, nor in a final holding of invalidity
by the Federal Courts. The references listed above are not cumulative to the prior art of record.

### *Prosecution History*

The 6,415,335 patent to Lowery discloses management of dynamic web page generation
requests to a web server with the request intercepted and routed from web server to a page server
such as to release the web server from processing the request and so that the web server may
process other requests concurrently. A dynamically generated web page with data dynamically
retrieved from one or more data sources is generated from the intercepted request and sent back
to the requesting client or stored on machine accessible to web server for later retrieval (col. 2,
ln.. 21-32; col. 4, ln. 54-62; col. 5, ln. 38-48; col. 6 ,ln. 19-31).

Claim 1 is representative:

> 1. A computer-implemented method for managing a dynamic Web page generation
> request to a Web server, said computer-implemented method comprising the steps
> of:
> routing a request from a Web server to a page server, said page server
> receiving said request and releasing said Web server to process other requests
> wherein said routing step further includes the steps of:
> intercepting said request at said Web server and routing said request to
> said page server;
> processing said request, said processing being performed by said page server

Application/Control Number: 90/008,584                                    Page 4
Art Unit: 3992

> while said Web server concurrently processes said other requests;
> and
> dynamically generating a Web page in response to said request, said Web page
> including data dynamically retrieved from one or more data sources.
>
> 2. The computer-implemented method in claim 1 wherein said step of routing
> said request includes the steps of:
> routing said request from said Web server to a dispatcher;  and
> dispatching said request to said page server.

The examiner did not indicate a reasons for allowance during prosecution of the application
which became the 6,415,335 patent to Lowery.

### *Issues Raised in the Request*

**The Requestor alleges that an SNQ is raised by Exhibits B and C collectively (ODBC
Notes).**

It is agreed that the consideration of Exhibit B and C (ODBC Notes) raises a substantial new
question of patentability as to claims 1-12, 15-26 and 29 of the 6,415,335 patent to Lowery.

Request pages 14-15 are hereby incorporated by reference from the request for reexamination for
their explanation of the teaching provided in ODBC Notes that was not present in the
prosecution of the application which became the 6,415,335 patent to Lowery.

In summary,  ODBC Notes  provides a discussion of  features of the Microsoft Internet
Information Server as shown in figure 2 of page 2 of the Release Notes Document portion of
ODBC Notes which provides dynamic generation of web pages using a database connector as
described in steps one through six on pages 14-15  of the request. Requester takes the position
that the web server performs as a dispatcher dispatching the requests to database(s) and
necessarily releases connections in order to support the described multiple simultaneous
connections.

There is a substantial likelihood that a reasonable examiner would have considered the ODBC
Notes reference describing these features important in making a decision as to the patentability
of claims 1-12, 15-26 and 29 during the examination of the application which became the
6,415,335  patent to Lowery. The ODBC Notes references describing the dynamic generation of
a web page using the database connector and dispatch of requests to database by web server as
described on pages 14-15 and 35-44 of the request was not before the office during any previous
examination of the application which became the 6,415,335  patent to Lowery.

Accordingly, ODBC Notes raises a substantial new question of patentability as to claims 1-12,
15-26 and 29, which question has not been decided in a previous examination of the 6,415,335
patent to Lowery.

Application/Control Number: 90/008,584                                    Page 5
Art Unit: 3992

**The Requestor alleges that an SNQ is raised by Exhibits D and E collectively (the Oracle references).**

It is agreed that the consideration of Exhibit D and E (the Oracle references) raises a substantial new question of patentability as to claims 1-12, 15-26 and 29 of the 6,415,335 patent to Lowery.

Request pages 17-18 are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in the Oracle references that was not present in the prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, the Oracle references provides a discussion of features of Release 1.0 of Oracle Web Server, which disclose a Listener which determines if a received request from a client is for a dynamic or static document (p.1-3 Exhibit C and p.3 Exhibit D). A web agent is invoked if the request is for a dynamic document and thus the interception of the request occurs at the listener. The web agent is described as serving as a dispatcher which dispatches a request to a dynamic web page server (Oracle Server 7) and releasing the listener to process other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Oracle references describing these features important in making a decision as to the patentability of claims 1-12, 15-26 and 29 during the examination of the application which became the 6,415,335 patent to Lowery. The Oracle references describing the dynamic generation of a web page using the described components including the Listener, Agent, and server to dispatch requests as described on pages 17-18 and 44- 56 of the request was not before the office during any previous examination of the application which became the 6,415,335 patent to Lowery.

Accordingly, the Oracle references raises a substantial new question of patentability as to claims 1-12, 15-26 and 29, which question has not been decided in a previous examination of the 6,415,335 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit F (Illustra).**

It is agreed that the consideration of Exhibit F (Illustra) raises a substantial new question of patentability as to claims 1-6, 8-11,15-20, 22-25, and 29 of the 6,415,335 patent to Lowery.

Request pages 21-22 section C are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Illustra that was not present in the prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, Illustra provides a discussion of features of the Illustra web server architecture for generating a dynamic web page as shown on page 110 figure 2 of Illustra.

There is a substantial likelihood that a reasonable examiner would have considered the Illustra reference describing these features important in making a decision as to the patentability of

Application/Control Number: 90/008,584                                    Page 6
Art Unit: 3992

claims 1-6, 8-11,15-20, 22-25, and 29 during the examination of the application which became
the 6,415,335 patent to Lowery. The Illustra reference describing the dynamic generation of a
web page using the described components as described on pages 21-22 and 56-63 of the request
was not before the office during any previous examination of the application which became the
6,415,335 patent to Lowery.

Accordingly, Illustra raises a substantial new question of patentability as to claims 1-6, 8-11,15-
20, 22-25, and 29, which question has not been decided in a previous examination of the
6,415,335 patent to Lowery.


**The Requestor alleges that an SNQ is raised by Exhibit G (Lagoze (Dienst))**

It is agreed that the consideration of Exhibit G (Lagoze (Dienst)) raises a substantial new
question of patentability as to claims 1-5, 8-11,15-19, 22-25, and 29 of the 6,415,335 patent to
Lowery.

Request pages 22-24 section D are hereby incorporated by reference from the request for
reexamination for their explanation of the teaching provided in Lagoze (Dienst)) that was not
present in the prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, Lagoze (Dienst)) provides a discussion of Dienst which includes a system and
method for managing requests for documents ("Web Pages") stored on page server (Dienst
server) or other server from WWW clients.  The requester indicates that Dienst discloses the
requests from the client being intercepted at the server by a CGI (Common Gateway Interface)
stub as shown via figure 2 on page 10 of Dienst. The CGI stub dispatches the requests to a page
server (Dienst server) which retrieve the requested dynamic content for delivery to the requesting
client and which allows the WWW server to handle other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Lagoze
reference (Dienst) describing the dynamic generation of a web page using the Dienst Server ,
WWW server and CGI stub important in making a decision as to the patentability of claims 1-5,
8-11,15-19, 22-25, and 29 during the examination of the application which became the 6,415,335
patent to Lowery. The Lagoze (Dienst) reference describing the dynamic generation of a web
page using the described components as described on pages 22-24 and 63-73 of the request was
not before the office during any previous examination of the application which became the
6,415,335 patent to Lowery.

Accordingly, Lagoze (Dienst) raises a substantial new question of patentability as to claims 1-5,
8-11,15-19, 22-25, and 29, which question has not been decided in a previous examination of the
6,415,335 patent to Lowery.

Application/Control Number: 90/008,584                                    Page 7
Art Unit: 3992

**The Requestor alleges that an SNQ is raised by Exhibit H (Clausnitzer).**

It is agreed that the consideration of Exhibit H (Clausnitzer) raises a substantial new question of patentability as to claims 1-6, 8-11,15-20, 22-25, and 29 of the 6,415,335 patent to Lowery.

Request pages 24-26 section E are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Clausnitzer that was not present in the prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, Clausnitzer provides a discussion of a WWW interface to a search and retrieval system as shown in figure 5 as shown on page 25 of the request. The figure and explanation accompanying show a CGI gateway program, OMNIS servers and document servers which manages requests for documents stored on a server from WWW clients. The request indicates the requests from the client being intercepted at the server by a CGI (Common Gateway Interface) stub as shown via figure 5 of Clausnitzer.

There is a substantial likelihood that a reasonable examiner would have considered the Clausnitzer reference describing these features important in making a decision as to the patentability of claims 1-6, 8-11,15-20, 22-25, and 29 during the examination of the application which became the 6,415,335 patent to Lowery. The Clausnitzer reference describing the dynamic generation of a web page using the described components as described on pages 24-26 and 73-81 of the request was not before the office during any previous examination of the application which became the 6,415,335 patent to Lowery.

Accordingly, Clausnitzer raises a substantial new question of patentability as to claims 1-6, 8-11,15-20, 22-25, and 29, which question has not been decided in a previous examination of the 6,415,335 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit I (Derler).**

It is agreed that the consideration of Exhibit I (Derler) raises a substantial new question of patentability as to claims 1-7, 15-21, and 29 of the 6,415,335 patent to Lowery.

Request pages 26-29 section F are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Derler that was not present in the prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, Derler provides a discussion of a WWW (world wide web) Gateway which includes software features including Master, Slave, and Child processes which intercept and dispatch requests to the page server (a Hyper-G server) while the WWW Gateway processes other requests. Derler describes the generation of dynamic web pages using architecture as shown in figure 4.17 on page 95.

Application/Control Number: 90/008,584                                    Page 8
Art Unit: 3992

There is a substantial likelihood that a reasonable examiner would have considered the Derler reference describing the dynamic generation of a web page using the Master, Slave, Child processes of the gateway and Hyper-G server important in making a decision as to the patentability of claims 1-7, 15-21, and 29 during the examination of the application which became the 6,415,335 patent to Lowery. The Derler reference describing the dynamic generation of a web page using the described components as described on pages 26-29 and 81-90 of the request was not before the office during any previous examination of the application which became the 6,415,335 patent to Lowery.

Accordingly, Derler raises a substantial new question of patentability as to claims 1-7, 15-21, and 29 which question has not been decided in a previous examination of the 6,415,335 patent to Lowery.

**The Requestor alleges that an SNQ is raised by Exhibit J (Popp).**

It is agreed that the consideration of Exhibit J (Popp) raises a substantial new question of patentability as to claims 1-4, 6, 8-11, 15-18, 20-24 and 29 of the 6,415,335 patent to Lowery.

Request pages 29-31 section G are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Popp that was not present in the prosecution of the application which became the 6,415,335 patent to Lowery.

In summary, Popp provides a discussion of using a web server, CGI Messenger and page servers to generate dynamic web pages. The CGI messenger takes over the request for dynamic content and acts as a dispatcher releasing the web server to process other incoming requests.

There is a substantial likelihood that a reasonable examiner would have considered the Popp reference describing the dynamic generation of a web page using these features important in making a decision as to the patentability of claims 1-4, 6, 8-11, 15-18, 20-24 and 29 during the examination of the application which became the 6,415,335 patent to Lowery. The Popp reference describing the dynamic generation of a web page using the described components as described on pages 29-31 and 90-97 of the request was not before the office during any previous examination of the application which became the 6,415,335 patent to Lowery.

Accordingly, Popp raises a substantial new question of patentability as to claims 1-4, 6, 8-11, 15-18, 20-24 and 29 which question has not been decided in a previous examination of the 6,415,335 patent to Lowery.

Application/Control Number: 90/008,584                                    Page 9
Art Unit: 3992

Requestor further alleges that claims 5-14, and 19-28, may be unpatentable in consideration of
various combinations of exhibits A-J and secondary references K-O as indicated on pages 97-
101 of the request. Since each of the exhibits A-J as indicated in the request is considered to raise
a substantial new question of patentability as noted above, the combinations of exhibits in
combination therewith as suggested on pages 97-101 of the request also raises substantial new
question of patentability for similar reasons.

All claims 1-29 of the 6,415,335 patent to Lowery will be reexamined as requested in the
request filed on 4/03/2007.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the
provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination
proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will
be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte*
reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise
the Office of any litigation activity, or other prior or concurrent proceeding, involving U.S.
Patent Number 6,415,335 throughout the course of this reexamination proceeding. The third
party requester is also reminded of the ability to similarly apprise the Office of any such activity
or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282
and 2286.

Application/Control Number: 90/008,584                                     Page 10
Art Unit: 3992

Please mail any communications to:
Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA   22313-1450

Please FAX any communications to:
(571) 273-9900
Central Reexamination Unit

Please hand-deliver any communications to:
Customer Service Window
Attn:  Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Scott L. Weaver
Primary Examiner
Central Reexam Unit 3992
(571) 272-7548

Conferees:

SCOTT L. WEAVER
CRU EXAMINER-AU 3992

ROLAND G. FOSTER
CRU EXAMINER-AU 3992

MARK J. REINHART
SPRE-AU 3992
CENTRAL REEXAMINATION UNIT

## NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), automatically changed to that of the patent file as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, including the present reexamination proceeding, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

C:\kiva\kenreex\ RRR-new-PO-address_by-rule.doc
May 1, 2007

# EXHIBIT S

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM LICENSING, LP. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | 2:05CV163 (DF-CMC) |
| | § | |
| AUTOFLEX LEASING, INC., et al | § | |
| | § | |
| Defendants. | § | (Lead Case) |
| | § | |

*******************************************

| | | |
|---|---|---|
| EPICREALM LICENSING, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | 2:05CV356 (DF-CMC) |
| | § | |
| FRANKLIN COVEY CO., et al. | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

---

**AMENDED ANSWER AND COUNTERCLAIMS OF DEFENDANT HERBALIFE
INTERNATIONAL OF AMERICA, INC., IN RESPONSE TO
PLAINTIFF EPICREALM LICENSING, LP'S SECOND AMENDED COMPLAINT**

---

Defendant Herbalife International of America, Inc. ("Herbalife"), by counsel, answers the Second Amended Complaint in the above civil actions (the "Complaint"), but solely insofar as its allegations pertain to Herbalife. Nothing herein is intended as a response on behalf of or with respect to the other named defendants in this action. Paragraph numbers 1-22, below, correspond to the paragraph numbers of the allegations in the Complaint to which they respond:

## I.   PARTIES

1.   Herbalife is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1, and, accordingly, denies same.

2.   Not applicable to Herbalife.

3.      Not applicable to Herbalife.

4.      Not applicable to Herbalife.

5.      Not applicable to Herbalife.

6.      Not applicable to Herbalife.

7.      Not applicable to Herbalife.

8.      Not applicable to Herbalife.

9.      Not applicable to Herbalife.

10.     Not applicable to Herbalife.

11.     Herbalife admits that it is a California corporation with a principal place of business in California, and that Herbalife does business in this district and elsewhere in Texas by selling nutritional and personal care products to residents of the State of Texas.  Herbalife further admits that service may be made upon Herbalife's registered agent in Texas.  The remaining allegations of paragraph 11 are denied.

12.     Not applicable to Herbalife.

## II.      JURISDICTION AND VENUE

13.     Herbalife admits that the Complaint purports to assert an infringement of two United States patents, and that as such this Court has subject matter jurisdiction.  Except as so admitted, Herbalife denies the remaining allegations of paragraph 13.

14.     Herbalife admits, for purposes of this action only, that venue in this judicial district is proper.   Except as so admitted, Herbalife denies the remaining allegations of paragraph 14.

## III.     PATENT INFRINGEMENT

15.     Herbalife admits that copies of U.S. Patent No. '5,894,554 ("the '554 patent") and U.S. Patent No. 6,415,335 ("the '335 patent"), have been provided as exhibits to the Complaint

and that the patents, on their face, list issuance dates of April 13, 1999 and July 2, 2002, respectively. Herbalife further admits that, on their face, the '554 and '335 patents purport to concern systems and methods for managing dynamic web page generation requests. The remaining allegations of paragraph 15 are denied.

16. Herbalife is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16, and, accordingly, denies same.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

## IV.    JURY DEMAND

21. Paragraph 21 requires no response from Herbalife.

## V.    PRAYER FOR RELIEF

22. Paragraph 22 concerns Plaintiff's prayer for relief for which no response is necessary. To the extent a reply is deemed necessary, Herbalife denies that Plaintiff is entitled to any judgment or relief.

## VI.    DEFENSES

Further answering the Complaint, Herbalife asserts the following defenses. Herbalife maintains the right to amend its answer with additional defenses as further information is obtained.

1. The Complaint fails to state a claim against Herbalife upon which relief can be granted.

2. Herbalife has not in the past and does not presently infringe, directly or indirectly, any claim of the '554 patent or the '335 patent.

- 3-

3.      On information and belief, the '554 patent and the '335 patent are invalid for failure to comply with one or more provisions of the Patent Laws, Title 35 United States Code.

4.      Plaintiff is estopped from construing the claims of the '554 patent or the '335 patent in such a manner as may cover Herbalife's activities by virtue of admissions and representations made to the United States Patent and Trademark Office during prosecution of the applications that matured into the '554 patent and the '335 patent and legally related applications, and by virtue of admissions and representations made in this or any other litigation.

5.      Plaintiff is barred under 35 U.S.C. § 287 from recovering damages for any alleged infringement occurring before Plaintiff provided actual notice to Herbalife of its alleged infringement of the '554 patent and the '335 patent.

6.      Under the provisions of 35 U.S.C. § 286, Plaintiff is precluded from seeking recovery for any alleged infringement occurring more than six years before the filing of the Complaint.

7.      Plaintiff's claims against Herbalife are barred, in whole or in part, by laches.

8.      The '554 and '335 patents' inventor, Keith Lowery ("Lowery"), and his attorneys committed acts constituting inequitable conduct during the prosecution of the patent applications that issued as the '554 and '335 patents ("the '554 patent application") and ("the '335 patent application"), rendering the '554 and '335 patents unenforceable.  These acts of inequitable conduct include the failure to make the USPTO aware of highly material information and non-cumulative prior art, including Oracle web servers and related software such as Web Oracle Web (WOW) gateway ("Oracle web server related software"), known to Lowery and his attorneys prior to issuance of the '554 and '335 patents.  The facts and circumstances surrounding these acts of inequitable conduct include at least the following:

      a.      Upon information and belief, Oracle web server related software was known to Lowery before April 23, 1996.  The '335 patent was filed January 19, 1999 and claims priority to the '554 patent application filed April 23, 1996.

- 4-

b. One or more of these prior art products, including the Oracle web server related software, and the features thereof, were highly material to the patentability of claims of the '554 and '335 patent applications.

c. The '554 and '335 patents' inventor, Lowery, and his attorneys failed to appropriately disclose the Oracle web server related software, which is material and non-cumulative prior art.

d. On information and belief, Lowery, and his attorneys, prior to the issuance of the '554 and '335 patents, were aware of the highly material Oracle web server related software.

e. On information and belief, Lowery, and his attorneys, prior to the issuance of the '554 and '335 patents, were aware that the Oracle web server related software, and the features thereof, were highly material to the patentability of claims of the '554 and '335 patent applications.

f. Despite this, Lowery, and his attorneys failed to cite any of the known, highly material prior art Oracle web server related software to the USPTO for review in consideration of the pending claims of the '554 and '335 patent applications. This prior art information was not otherwise before the patent examiner.

g. On information and belief, Lowery, and his attorneys withheld this highly material information with the intent to deceive the USPTO.

h. The prior art Oracle web server related software withheld by Lowery, and his attorneys, was more material than other prior art cited in connection with the prosecution of the '554 and '335 patent applications.

- 5-

    i.   The highly material prior art Oracle web server related software invalidates some or all of the claims of the '554 and '335 patents.

    j.   By withholding this information, Lowery, and his attorneys breached their duty of candor and good faith to the USPTO.

## VII.    COUNTERCLAIMS

In addition to its defenses, Herbalife asserts the following counterclaims against Plaintiff.

1.    Herbalife is a California corporation with its principal place of business at 1800 Century Park East, Los Angeles, CA 90067.

2.    According to this Second Amended Complaint, counterclaim defendant epicRealm Licensing, LP ("epicRealm") is a Delaware limited partnership with its principal place of business in Dallas, Dallas County, Texas.

3.    The Court has subject matter jurisdiction to hear these counterclaims under 28 U.S.C. §§1331, 1338(a), and the Declaratory Judgments Act, 28 U.S.C. §§ 2201-02.

4.    Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c) and 1400.

5.    EpicRealm purports to be the owner of the '554 patent and the '335 patent and has asserted that Herbalife infringes these two patents.

6.    There exists an actual and justiciable controversy between Plaintiff and Herbalife with respect to the alleged infringement and validity of the '554 patent and the '335 patent.

7.    Herbalife does not infringe, directly or indirectly, the '554 patent or the '335 patent, and has never done so.

8.    Accordingly, Herbalife seeks a declaratory judgment of noninfringement of the '554 patent and the '335 patent.

8.    The '554 patent and the '335 patent are invalid for failure to comply with one or more provisions of the United States Patent Laws, Title 35 United States Code.

9.     Accordingly, Herbalife seeks a declaratory judgment of invalidity of the '554 patent and the '335 patent.

## VIII.   **DEMAND FOR JURY TRIAL**

Herbalife requests trial by jury pursuant to Federal Rules of Civil Procedure 38 for all issues so triable.

## IX.     **PRAYER FOR RELIEF**

WHEREFORE, Herbalife prays that the Court:

(i)     dismiss the Complaint with prejudice;

(ii)    declare, adjudge, and decree that Herbalife has not and does not infringe, directly or indirectly, the '554 patent;

(iii)   declare, adjudge, and decree that Herbalife has not and does not infringe, directly or indirectly, the '335 patent;

(iv)    declare, adjudge, and decree that the '554 patent is invalid;

(v)     declare, adjudge, and decree that the '335 patent is invalid;

(vi)    issue preliminary and permanent injunctions against plaintiff's assertion of the '554 patent and the '335 patent;

(vii)   find this to be an exceptional case under Section 285 of Title 35 of the United States Code, and award Herbalife its costs, disbursements, and attorneys' fees incurred in this action; and

(viii)  award Herbalife such other and further relief as the Court may deem just and proper.

Respectfully submitted,


By: s/ Ognjan V. Shentov
     One of its Attorneys

Ognjan V. Shentov
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
E-mail:  ovshentov@jonesday.com

Kenneth R. Adamo (Bar No. 00846960)
Lead Attorney
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone:  (214) 220-1515
Facsimile:  (214) 969-5100
E-mail:  kradamo@jonesday.com

Carl R. Roth (Bar No. 17312000)
Michael Smith (Bar No. 18650410)
THE ROTH LAW FIRM P.C.
115 N. Wellington, Suite 200
Marshal, Texas  75670
Telephone:  (903) 935-1665
Facsimile:  (903) 935-1797
E-mail:  cr@rothfirm.com

Robert A. Beiser
Ludwig E. Kolman
VEDDER, PRICE, KAUFMAN &
KAMMHOLZ, P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL 60601
Phone:  312-609-7500
Fax:  312-609-5005
rbeiser@vedderprice.com
lkolman@vedderprice.com


Attorneys for Defendant HERBALIFE
INTERNATIONAL OF AMERICA, INC.

- 8-

CHICAGO/#1564532.1

## <u>PROOF OF SERVICE</u>

      The undersigned certifies that on the 23rd day of October, 2006, the foregoing Amended Answer and Counterclaims of Defendant Herbalife International of America, Inc., in Response to Plaintiff Epicrealm Licensing, LP's Second Amended Complaint were electronically filed with the Court. Notice of this fiilng will be sent to all counsel of record by operation of the Court's electronic filing system.

                       s/ Ognjan V. Shentov

# EXHIBIT T

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM LICENSING, LLC, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | 2:05-CV-163 |
| | § | |
| AUTOFLEX LEASING, INC., et al., | § | |
| | § | |
| Defendants. | § | |

_____

| | | |
|---|---|---|
| EPICREALM LICENSING, LLC, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | 2:05-CV-356 |
| | § | |
| FRANKLIN COVEY CO., et al., | § | |
| | § | |
| Defendants. | § | |

## AMENDED ANSWER AND COUNTERCLAIMS OF DEFENDANT FRIENDFINDER NETWORK, INC.

Defendant Friendfinder Network, Inc. ("Friendfinder"), by counsel, answers the Second

Amended Complaint filed by Plaintiff epicRealm Licensing, L.L.C. ("epicRealm"), as follows:

### ANSWER

### I. Parties

1.     Friendfinder lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 1 of the Second Amended Complaint, and accordingly,

denies the same.

2.      Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 of the Second Amended Complaint, and accordingly, denies the same.

3.      Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3 of the Second Amended Complaint, and accordingly, denies the same.

4.      In response to Paragraph 4 of the Second Amended Complaint, Friendfinder admits that it is a California corporation with its principal place of business located on 445 Sherman Avenue, Suite T, Palo Alto, California 94306.  Friendfinder also admits that it has done and continues to do business in the Eastern District and elsewhere in the State of Texas by entering into membership contracts with residents of the State of Texas regarding the use of its websites as a tool to make connections with other members and to find partners for dating, romance and friendship.  Friendfinder also admits that it has not designated or maintained an agent for service of process in Texas.  Friendfinder denies the remaining allegation of Paragraph 4 of the Second Amended Complaint regarding Section 17.044 of the Texas Civil Practice and Remedies Code because that allegation calls for a conclusion of law about the interpretation of a particular statute, and as such requires no answer from Friendfinder.

5.      Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 of the Second Amended Complaint, and accordingly, denies the same.

6.      Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 of the Second Amended Complaint, and accordingly, denies the same.

7.      Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of the Second Amended Complaint, and accordingly, denies the same.

8.      Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 of the Second Amended Complaint, and accordingly, denies the same.

9.      Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9 of the Second Amended Complaint, and accordingly, denies the same.

10.      Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the Second Amended Complaint, and accordingly, denies the same.

11.      Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Second Amended Complaint, and accordingly, denies the same.

12.      Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 of the Second Amended Complaint, and accordingly, denies the same.

## II. Jurisdiction and Venue

13.      In response to Paragraph 13 of the Second Amended Complaint, Friendfinder admits that this action purports to assert an infringement of two United States patents and that as such, this Court has subject matter jurisdiction under 28 U.S.C. § 1338(a).  Friendfinder denies the remaining allegations of Paragraph 13.

14. In response to Paragraph 14 of the Second Amended Complaint, Friendfinder admits that it has done and continues to do business in the Eastern District of Texas by entering into membership contracts with residents within the District regarding the use of its websites as a tool to make connections with other members and to find partners for dating, romance and friendship. Friendfinder denies the remaining allegations of Paragraph 14 to the extent they purport to characterize its business activities and actions and to draw legal conclusions therefrom regarding the question of personal jurisdiction or venue. Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14 of the Second Amended Complaint to the extent they relate to any other defendant, and accordingly, denies the same.

### III. Patent Infringement

15. In response to Paragraph 15 of the Second Amended Complaint, Friendfinder admits that Exhibit A purports to be a copy of United States Patent No. 5,894,554 (the "'554 patent"), which appears on its face to have issued on April 13, 1999. Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegation that the issuance of the '554 patent was proper or legal, and accordingly, denies the same. Friendfinder also admits that Exhibit B purports to be a copy of United States Patent No. 6,415,335 B1 (the "'335 patent"), which appears on its face to have issued on July 2, 2002. Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegation that the issuance of the '335 patent was proper or legal, and accordingly, denies the same. Friendfinder also admits that the '554 patent and the '335 patent on their face purportedly relate to inventions entitled "System for Managing Dynamic Web Page Generation Requests by Intercepting Request at Web Server and Routing to Page Server Thereby Releasing Web Server to Process Other

Requests" and "System and Method for Managing Dynamic Web Page Generation Requests," respectively. Except as admitted above, Friendfinder denies the allegations of Paragraph 15 of the Second Amended Complaint.

16.     Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 of the Second Amended Complaint, and accordingly, denies the same.

17.     Answering for itself, Friendfinder denies the allegations of Paragraph 17 of the Second Amended Complaint. Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 of the Second Amended Complaint to the extent they relate to any other defendant, and accordingly, denies the same.

18.     Answering for itself, Friendfinder denies the allegations of Paragraph 18 of the Second Amended Complaint. Friendfinder lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 of the Second Amended Complaint to the extent they relate to any other defendant, and accordingly, denies the same.

19.     Friendfinder denies the allegations of Paragraph 19 of the Second Amended Complaint.

20.     Friendfinder denies the allegations of Paragraph 20 of the Second Amended Complaint.

## IV. <u>Jury Demand</u>

21.     Paragraph 21 of the Second Amended Complaint requires no response from Friendfinder.

### AFFIRMATIVE DEFENSES

22.     The Second Amended Complaint fails to state a claim against Friendfinder for which relief can be granted.

23. On information and belief, Friendfinder does not infringe any claim of the '554 patent.

24. On information and belief and based on likely evidentiary support after a reasonable opportunity for further investigation and/or discovery, the '554 patent is invalid for failure to meet one or more requirements of patentability under 35 U.S.C. §§ 102, 103, 112, and/or the judicial doctrine of double patenting; and no claim of the '554 patent can be validly construed to cover any Friendfinder product or service.

25. On information and belief, Friendfinder does not infringe any claim of the '335 patent.

26. On information and belief and based on likely evidentiary support after a reasonable opportunity for further investigation and/or discovery, the '335 patent is invalid for failure to meet one or more requirements of patentability under 35 U.S.C. §§ 102, 103, 112, and/or the judicial doctrine of double patenting; and no claim of the '335 patent can be validly construed to cover any Friendfinder product or service.

27. Friendfinder avers that any finding of willful infringement of the '554 patent or the '335 patent, based on an alleged failure to exercise due care, contravenes the Due Process Clause of the Fifth Amendment to the United States Constitution, and therefore cannot support an award of enhanced damages or attorneys' fees.

28. epicRealm's claims against Friendfinder are barred by the equitable doctrines of laches and waiver.

29. epicRealm's claims against Friendfinder are barred by the doctrines of prosecution disclaimer and prosecution history estoppel.

30. epicRealm's recovery of damages against Friendfinder for any infringement of the '554 patent, if proven, is limited by epicRealm's failure to comply with the marking

requirement of 35 U.S.C. § 287(a) as to networked systems and computer program products

claimed by the '554 patent.

31.     The '554 and '335 patents' inventor, Keith Lowery ("Lowery"), and his

attorneys committed acts constituting inequitable conduct during the prosecution of the patent

application that issued as the '554 and '335 patents ("the '554 patent application" and "the

'335 patent application"), rendering the '554 and '335 patents unenforceable.  These acts of

inequitable conduct include the failure to make the USPTO aware of highly material

information and non-cumulative prior art, including Oracle web servers and related software

such as Web Oracle Web (WOW) gateway ("Oracle web server related software"), known to

Lowery and his attorneys prior to issuance of the '554 and '335 patents.  The facts and

circumstances surrounding these acts of inequitable conduct include at least the following:

   a.   Upon information and belief, the ADABAS reference was known to Lowery

   before April 23, 1996.  The '554 patent was filed January 19, 1999 and claims priority

   to the '335 patent application filed April 23, 1996.

   b.   One or more of these prior art products, including the Oracle web server related

   software, and the features thereof, were highly material to the patentability of claims

   of the '554 and '335 patent applications.

   c.   The '554 and '335 patents' inventor, Lowery, and his attorneys failed to

   appropriately disclose the Oracle web server related software which is material and

   non-cumulative prior-art.

   d.   On information and belief, Lowery, and his attorneys, prior to the issuance of

   the '554 and '335 patents, were aware of the highly material Oracle web server related

   software.

   e.   On information and belief, Lowery, and his attorneys, prior to the issuance of

   the '554 and '335 patents, were aware that the Oracle web server related software, and

the features thereof, were highly material to the patentability of claims of the '554 and '335 patent applications.

      f.   Despite this, Lowery, and his attorneys failed to cite any of the known, highly material prior art Oracle web server related software to the USPTO for review in consideration of the pending claims of the '554 and '335 patent applications. This prior art information was not otherwise before the patent examiner.

      g.   On information and belief, Lowery, and his attorneys withheld this highly material information with the intent to deceive the USPTO.

      h.   The prior art Oracle web server related software withheld by Lowery, and his attorneys, was far more material than any of the prior art cited in connection with the prosecution of the '554 and '335 patent applications.

      i.   The highly material prior art Oracle web server related software invalidates some or all of the claims of the '554 and '335 patents.

      j.   By withholding this information, Lowery and his attorneys breached their duty of candor and good faith to the USPTO.

Therefore, the '554 and '335 patents are unenforceable.

## COUNTERCLAIMS

In addition to its affirmative defenses, Friendfinder further asserts the following counterclaims against epicRealm:

32.    Defendant and Counterclaimant Friendfinder is a California corporation with a principal place of business at 445 Sherman Avenue, Suite T, Palo Alto, California 94306.

33.    As alleged in its Second Amended Complaint, Plaintiff and Counterclaim-Defendant epicRealm is a Texas limited liability company with its principal place of business at 100 Crescent Court, Suite 700, Dallas, Texas 75201.

**Jurisdiction and Venue**

34.     Friendfinder's counterclaims asserted herein comprise an action for declaratory judgment made pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 1, et seq. An actual controversy exists under the Declaratory Judgment Act because epicRealm has brought the present patent infringement action against Friendfinder, and Friendfinder is currently engaging in activities that epicRealm has accused in the Second Amended Complaint as being infringing. Subject matter jurisdiction exists under 28 U.S.C. § 1338(a) because this action arises under the patent laws of the United States.

35.     epicRealm is subject to personal jurisdiction in this District because on information and belief, it has transacted business within this District.  Moreover, it has commenced a patent infringement action against Friendfinder and other companies in this Court, thereby purposefully availing itself of the protections of this Court.

36.     Venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this District and because epicRealm is deemed to reside in this District, as provided under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).

**Count One – Declaratory Judgment of Noninfringement – '554 Patent**

37.     Friendfinder incorporates by reference its allegations in paragraphs 1-36 above.

38.     epicRealm asserts in this action that Friendfinder is infringing the '554 patent.

39.     On information and belief, Friendfinder does not infringe any of the claims of the '554 patent.

40.     Accordingly, Friendfinder seeks a judgment declaring that it does not infringe and has not infringed, directly or indirectly, contributorily or by inducement, any claim of the '554 patent.

**Count Two – Declaratory Judgment of Invalidity – '554 Patent**

41.     Friendfinder incorporates by reference its allegations in paragraphs 1-40 above.

42.     epicRealm asserts in this action that Friendfinder is infringing the '554 patent.

43.     On information and belief and based on likely evidentiary support after a reasonable opportunity for further investigation and/or discovery, the '554 patent is invalid for failure to meet one or more requirements of patentability under 35 U.S.C. §§ 102, 103, 112, and/or the judicial doctrine of double patenting; and no claim of the '554 patent can be validly construed to cover any Friendfinder product or service.

44.     Accordingly, Friendfinder seeks a judgment declaring that the '554 patent is invalid.

### Count Three - Declaratory Judgment of Noninfringement - '335 Patent

45.     Friendfinder incorporates by reference its allegations in paragraphs 1-44 above.

46.     epicRealm asserts in this action that Friendfinder is infringing the '335 patent.

47.     On information and belief, Friendfinder does not infringe any of the claims of the '335 patent.

48.     Accordingly, Friendfinder seeks a judgment declaring that it does not infringe and has not infringed, directly or indirectly, contributorily or by inducement, any claim of the '335 patent.

### Count Four - Declaratory Judgment of Invalidity - '335 Patent

49.     Friendfinder incorporates by reference its allegations in paragraphs 1-48 above.

50.     epicRealm asserts in this action that Friendfinder is infringing the '335 patent.

51.     On information and belief and based on likely evidentiary support after a reasonable opportunity for further investigation and/or discovery, the '335 patent is invalid for failure to meet one or more requirements of patentability under 35 U.S.C. §§ 102, 103, 112, and/or the judicial doctrine of double patenting; and no claim of the '335 patent can be validly construed to cover any Friendfinder product or service.

52.     Accordingly, Friendfinder seeks a judgment declaring that the '335 patent is invalid.

**Prayer for Relief**

WHEREFORE, Friendfinder prays for the following relief:

1.  Dismissal of epicRealm's claims of patent infringement with prejudice;

2.  Judgment against epicRealm declaring that the '554 patent is not infringed by Friendfinder;

3.  Judgment against epicRealm declaring that the '554 patent is invalid;

4.  Judgment against epicRealm declaring that the '335 patent is not infringed by Friendfinder;

5.  Judgment against epicRealm declaring that the '335 patent is invalid;

6.  A declaration that Friendfinder's defenses and counterclaims present an exceptional case entitling it to, and therefore awarding, its reasonable attorney's fees under 35 U.S.C. § 285;

7.  Award of costs to Friendfinder; and

8.  Award to Friendfinder such other relief as the Court deems just and reasonable.

### Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Friendfinder requests trial by jury on all issues so triable, including without limitation, epicRealm's claims and Friendfinder's defenses and counterclaims.

Dated October 27, 2006

Respectfully submitted,

/s/ Otto O. Lee

_____

Otto O. Lee (admitted *pro hac vice*)
INTELLECTUAL PROPERTY LAW GROUP
12 South First Street, 12th Floor
San Jose, CA 95113
olee@iplg.com

Eric M. Albritton
Texas Bar No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, TX 75606
903.757.8449
903.758.7397 (facsimile)
ema@emafirm.com

Ira P. Rothken
ROTHKEN LAW FIRM
1050 Northgate Dr., Suite 520
San Rafael, CA 94903
415.924.4250
415.924.2905 (facsimile)
ira@techfirm.com

ATTORNEYS FOR DEFENDANT
FRIENDFINDER NETWORK, INC

## CERTIFICATE OF SERVICE

I certify that on October __27__, 2006, all counsel are being served with a copy of this document either: (1) by the Court's Electronic Filing System, pursuant to Local Rule CV-5(a)(3)(A), if they have consented to electronic service, or (2) by electronic mail, pursuant to Local Rule CV-5(e), if they have not so consented.

/s/ *Otto O. Lee*_____
*Otto O. Lee*