IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORACLE CORPORATION and
ORACLE U.S.A. INC.,                    )
                                       )
          Plaintiffs/Counterdefendants,    )       C.A. No. 06-414 (SLR)
                                       )
     v.                                )       **REDACTED PUBLIC**
                                       )       **VERSION**
EPICREALM LICENSING, LP,               )
                                       )
          Defendant/Counterclaimant.       )

**ORACLE'S BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT REPORT
AND TESTIMONY OF EPICREALM'S DAMAGES EXPERT, MICHAEL J. WAGNER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
mgraham@mnat.com
jparrett@mnat.com
(302) 658-9200

*Attorneys for Oracle Corporation
and Oracle U.S.A. Inc.*

OF COUNSEL:

James G. Gilliland
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, CA 94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA 94065

DATED: July 31, 2008
Redacted Filing Date: August 7, 2008

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS ...................................................1

II.   SUMMARY OF ARGUMENT ......................................................................1

III.  STATEMENT OF FACTS ...........................................................................2

IV.   LEGAL STANDARDS ...............................................................................8

V.    ARGUMENT............................................................................................10

      A.    Wagner's Testimony Should Be Excluded as Inherently
            Unreliable Based on His Improper Reliance on the
            IBM/InfoSpinner Software Agreement to Determine a
            Reasonable Royalty for the Patents-In-Suit.......................................10

      B.    Wagner's Report and Testimony Should Be Excluded Because It
            Contravenes the Entire Market Value Rule .......................................13

            1.    Wagner Failed to Consider Whether "Intelligent
                  Dispatching" Forms the Basis for Customer Demand for
                  Oracle Internet Application Server or Oracle Database .........................15

VI.   CONCLUSION.........................................................................................24

# TABLE OF AUTHORITIES

Page

**Cases**

*Cornell Univ. v. Hewlett-Packard Co.*,
   No. 01-CV-1974, 2008 U.S. Dist. LEXIS 41848 (N.D.N.Y. May 27, 2008).............. 14, 15, 21

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993)............................................................................................... 9, 10

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3rd Cir. 2000) ..................................................................................... 9

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F.Supp. 1116 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir.
   1971), *cert. denied*, 404 U.S. 870, 92 S Ct. 105, 30 L. Ed. 2d 114 (1971)........................... 3, 14

*Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH*,
   408 F.3d 1374 (Fed Cir. 2005) ................................................................... 14, 21, 22

*Isumi Products Co. v. Koninklijke Philips Electronics N.V.*,
   315 F. Supp. 2d 589 (D. Del. 2004)............................................................................. 9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)............................................................................................... 9

*MLMC, Ltd. v. Airtouch Communications, Inc.*,
   No. 99-781-SLR, 2001 U.S. Dist. LEXIS 26078  (D. Del. Nov. 9, 2001) .............................. 10

*Rite-Hite Corp. v. Kelley Co., Inc.*,
   56 F.3d 1538 (Fed. Cir. 1995) ............................................................... 14, 21, 22

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
   883 F.2d 1573 (Fed. Cir. 1989) ..................................................................................... 14

**Rules**

Rule 702 of the Federal Rules of Evidence .........................................1, 2, 8, 9, 10, 13, 21, 23, 24

.

Plaintiffs and Counterdefendants Oracle Corporation and Oracle U.S.A. Inc. (jointly "Oracle") submit the following brief in support of Oracle's Motion To Exclude Expert Report and Testimony of Defendant and Counterclaimant epicRealm Licensing, LP's ("epicRealm") Damages Expert, Michael J. Wagner ("Wagner").

## I.      NATURE AND STAGE OF PROCEEDINGS

Oracle incorporates by reference its summary of the Nature and Stage of Proceedings set forth in its Opening Claim Construction Brief, filed herewith.[1]

## II.     SUMMARY OF ARGUMENT

1.      The expert report and testimony of epicRealm's damages expert, Michael J. Wagner ("Wagner"), should be excluded under Rule 702 of the Federal Rules of Evidence as fundamentally flawed and inherently unreliable because he improperly relied on a single software and technology license agreement between epicRealm's purported predecessor-in-interest, InfoSpinner, Inc., and IBM (the "IBM/InfoSpinner software agreement") as the basis for his determination of a reasonable royalty. Wagner misinterpreted and misapplied the IBM/InfoSpinner software agreement as a patent license agreement and erroneously used it as the "baseline royalty rate" in his analysis of a hypothetical negotiation between epicRealm and Oracle to determine epicRealm's alleged damages in this case.

---

[1]  In addition to the present motion, Oracle also files herewith: 1) Oracle's Opening Claim Construction Brief; 2) Oracle's Motion for Summary Judgment of Non-Infringement; 3) Oracle's Motion for Summary Judgment of Invalidity; 4) Oracle's Motion for Partial Summary Judgment of No Willful Infringement; and 5) Oracle's Motion to Exclude Damages Based on Foreign Sales. Exhibits in support of Oracle's motions are contained in the Appendix of Exhibits in Support of Oracle's Motions, filed herewith. Evidentiary support for each of the exhibits is contained in the accompanying declarations in support of Oracle's motions.

2.     Wagner's report and testimony should also be excluded because it contravenes the "entire market value rule," which permits recovery of damages based on the value of an entire apparatus containing several features where the patent-related feature is the basis for customer demand.  In rendering his expert opinion on damages, Wagner applied the royalty rates derived from the IBM/InfoSpinner software agreement to sales of the accused Oracle products – Oracle Internet Application Server ("IAS") and Oracle Database – as a whole.  Despite acknowledging that the patent-related aspect of the accused products is an optional feature which he describes as "intelligent dispatching," Wagner made no effort to consider, much less analyze, whether this minor and seldomly-used feature forms the basis for actual customer demand for the accused products as a whole.  He also demonstrates a fundamental misunderstanding of the rule and its application to the facts of this case.  These failures render his entire report and testimony flawed and they should therefore be excluded under Rule 702.

## III.    STATEMENT OF FACTS[2]

Wagner was retained on behalf of epicRealm to provide an opinion and expert report regarding damages resulting from Oracle's alleged infringement of the patents-in-suit, which pertain to a system and method for managing dynamic web page generation requests.  In his expert damages report and deposition testimony, Wagner opined regarding a "reasonable royalty" rate for Oracle's alleged infringement of the patents-in-suit, the royalty base to which the

---

[2]    The general factual background for this case is set forth in Oracle's Opening Claim Construction Brief, filed herewith.  Only facts relevant to this motion are set forth herein.  A more detailed description of the patented technology and accused Oracle products is contained in Oracle's Motion for Summary Judgment of Non-Infringement, also filed herewith.

royalty rate should be applied, and the resulting royalty amounts allegedly due epicRealm. A30[3]

at pp. 1-2. Wagner concludes that the reasonable royalty rate should be 11% percent for IAS and

3% for all other accused products. *Id.* Wagner asserts that the royalty base for IAS is

$2,541,890,458 and that the royalty base for the other accused products is $3,358,418,325.

According to Wagner, the resulting damage amount due epicRealm is $380,360,500, before

prejudgment interest. *Id.*

Wagner analyzed the projected reasonably royalty rate based on a hypothetical

negotiation between epicRealm and Oracle at the time of the first alleged infringement in

November, 2000, pursuant to *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116

(S.D.N.Y. 1970), *mod. and aff'd,* 446 F.2d 295 (2d Cir. 1971), *cert. denied,* 404 U.S. 870, 92 S

Ct. 105, 30 L. Ed. 2d 114 (1971). A30 at pp. 9-10, ¶¶27-28. Wagner predicated his analysis on

a single software license agreement entered into between InfoSpinner and IBM on January 30,

1998. A61.

---

[3]  Appendix Exhibits are contained in Oracle's Appendix of Exhibits in Support of Oracle's
Opening Claim Construction Brief and Motions Filed on July 31, 2008, and are referred to by
number as "A___."





_____

[4] The '554 patent issued on April 13, 1999, and the '335 patent issued on July 2, 2002. *See* A1 and A2.



Oliver Willis, the IBM project manager with respect to the IBM/InfoSpinner software agreement, testified at his deposition that the purpose of the agreement was to license InfoSpinner's existing ForeSite software:



A22 at p. 162:12-22 (emphasis added); *see also* A22 [Willis Exh. 27]

At his deposition, Wagner agreed that IBM was licensing the ForeSite software and related services and was not interested in InfoSpinner's patents when it entered into the agreement:



A24 at pp. 75:16-76:1 (emphasis added).

In his expert report on damages, Wagner refers to a necessary feature of the alleged invention of the patents-in-suit as "Intelligent Dispatching":



A30 at p. 5, ¶12 (emphasis added).

The corresponding functionality in the Oracle products accused of satisfying the alleged necessary "intelligent dispatching" requirement of the patents-in-suit is referred to as "metrics-based load balancing." A23 at p. 178:1-13.[5] The accused metrics-based load balancing

---

[5] Dr. Finkel is epicRealm's technical expert.

functionality is performed by two features of the Oracle IAS product (the Web Cache option for metrics-based load balancing, and the metrics-based load balancing capability provided by mod_oc4j), and by one feature of the Oracle Database (the metrics-based load balancing functionality that is available to be used with Real Application Clusters ("RAC")). A36 at pp. 36-37; A27 at pp. 13-14.

The evidence shows that the metrics-based load balancing feature of the accused products is of minor importance and that few customers actually use it. *See, e.g.,* A21 at pp. 105:21-106:19; 109:6-112:3; 137:5-11. For example, mod_oc4j in IAS can implement eight different load balancing algorithms. Declaration of Dr. Paul C. Clark in Support of Oracle's Opening Claim Construction Brief and Oracle's Motion for Summary Judgment of Noninfringement ("Clark Decl.") ¶¶106-108. But epicRealm claims that only two of the eight load balancing algorithms actually infringe the patents-in-suit. A27 at p. 13-14. Moreover, IAS's "default" load balancing algorithm, which customers will use unless they take affirmative steps to configure a different algorithm, is "Round Robin," which Wagner and epicRealm explicitly contend cannot be used to practice the claimed inventions. *Id,* A30 at p. 53, ¶¶184-185, A21, 105:21-106:9 ("Because virtually all of our customers use round robin or weighted round robin as their load balancing approach."). Similarly, Oracle customers can, and do, use IAS with Web Cache and Database with a RAC configuration without ever implementing the "metrics-based load balancing" functionality. A21 at pp. 105:21-106:19; 109:6-112:3; 137:5-11; Clark Decl. ¶¶169-174. Nowhere in Wagner's expert analysis or report does he account for these important facts.

## IV.     LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governing the admissibility of expert testimony provides:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 requires judges to ensure that expert testimony is relevant, reliable and will assist the trier of fact to understand the evidence or determine a fact at issue. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589-91 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Izumi Products Co. v. Koninklijke Philips Electronics N.V.*, 315 F. Supp. 2d 589, 600 (D. Del. 2004).

The Third Circuit has described Rule 702 as "embodying 'three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit.'" *Izumi*, 315 F. Supp. 2d at 600 (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)). The court acts as the gatekeeper, charged with preventing testimony that does not meet these requirements from reaching the jury. *Id.* at 601. In determining the admissibility of expert testimony, the court's task is to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and … can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93; *Kumho,* 526 U.S. at 147 (applying the standards of *Daubert* to non-scientific testimony). The proponent of the purported expert testimony bears the burden of showing, by a preponderance of the evidence, that these requirements are satisfied. *Izumi*, 315 F. Supp. 2d at 601.

An expert's opinion must be based upon "good grounds" rather than mere "unsupported speculation." *Id.* at 600; *Daubert*, 509 U.S. at 597 (district court judges must ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand"). "Expert testimony must be tied to the facts of the particular case; otherwise, such testimony 'cannot be said to assist

the trier of fact.'" *MLMC, Ltd. v. Airtouch Communications, Inc.*, No. 99-781-SLR, 2001 U.S.

Dist. LEXIS 26078, at *3 (D. Del. Nov. 9, 2001) (concluding that proffered expert opinion

regarding a reasonable royalty was not supported by the facts of the case or by industry custom).

As demonstrated below, Wagner's expert opinion is fatally flawed and does not meet

even the minimum requirements of reliability under Rule 702 and *Daubert*.

## V.   ARGUMENT

### A.   Wagner's Testimony Should Be Excluded as Inherently Unreliable Based on His Improper Reliance on the IBM/InfoSpinner Software Agreement to Determine a Reasonable Royalty for the Patents-In-Suit

Wagner predicates his entire damages analysis on the IBM/InfoSpinner software

agreement.  Wagner opines that in the hypothetical negotiation between Oracle and epicRealm,

the parties would have used the royalty rates specified in the IBM/InfoSpinner software

agreement pertaining to the sale of *software and services* to derive the royalty rates Oracle

would have paid for a license to the *patents-in-suit.*  Based on this single agreement, which was

entered into before the patents-in-suit were issued and placed no value on the patents themselves,

Wagner concludes that epicRealm's damages approximate $400 million despite the fact that IBM

never actually paid the rates specified in the agreement and paid less than $250,000 in total

license fees to InfoSpinner prior to the termination of the agreement.  Wagner provides no

alternative theory of damages.  As demonstrated below, this apples-to-oranges analysis is

fundamentally flawed and Wagner's report and testimony should be excluded as unsupported and

inherently unreliable under Rule 702.

Wagner determined a "baseline royalty rate" for his analysis based on the terms of the

IBM/InfoSpinner software agreement because, in his opinion, the agreement "most closely

matches the licensing dynamics that would have been present in the hypothetical negotiation"

between epicRealm and Oracle since "the InfoSpinner software licensed by IBM embodies the patented inventions." A30 at pp. 12, 14-15, ¶¶35, 41. The IBM/InfoSpinner software agreement, however, was an agreement for the sale of software and services, not a patent license. Although the subject matter of the agreement was ForeSite, it was fundamentally a technology and services agreement and placed *no* value on the licensing of the actual patents-in-suit. A22 at p. 162:12-22; *see also* A22 [Willis Exh. 27]. As Wagner conceded in his deposition, IBM was ███████████████████████████████████████████████████ A24 at pp. 75:16-76:1.

IBM's purpose for entering into the agreement was to get a product on the market as quickly as possible while it developed its own product in-house. A22 at p. 162:12-22 and Exh. 11. Oracle, on the other hand, had already developed and begun selling its Internet application server product by the time of the hypothetical negotiation (November 2000) and would not have been in need of a software license to the ForeSite product or related services. As Wagner admitted in his deposition, while IBM was only interested in the InfoSpinner software and related services, ███████████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ A24 at pp. 73:5-74:3 (emphasis added).

███████████████████████████████████████████ ███████████████████████████████████████ A22 at p. 105:5-22. Wagner ignores this key fact in rendering his expert opinion. He also failed to take into account that the subject of the IBM/InfoSpinner software agreement – ForeSite – proved to be a completed failure the marketplace (A67 at p. 31:12-18), a fact that would have been known to

Oracle at the time of the hypothetical negotiation but was not known to IBM when it entered into the IBM/Infospinner software agreement.

Although the IBM/InfoSpinner software agreement included the applications for the patents-in-suit, there was no provision for any consideration to be paid by IBM for the actual issuance of the patents, and thus there was no recognition of the economic value of the patents-in-suit contemplated in the agreement.  As Wagner testified at his deposition:



████████████████████████████████████

*Id.* at pp. 77:20-78:7 (emphasis added).

The failure of the IBM/InfoSpinner software agreement to recognize, much less value, the eventual issuance of the patents-in-suit renders it a flawed measure from which to value a naked license to the patents, as would have been contemplated in the hypothetical negotiation between epicRealm and Oracle. Wagner's assertion that the IBM/InfoSpinner software agreement "most closely matches the licensing dynamics that would have been present in the hypothetical negotiation" between epicRealm and Oracle (A30 at p. 12, ¶35) is belied by his own testimony.

These fundamental differences between the IBM/InfoSpinner software agreement and the hypothetical patent license between epicRealm and Oracle, and the disparate nature of the needs and positions of IBM and Oracle at the time of their respective negotiations, renders the agreement meaningless in assessing a reasonable royalty in this case. As such, Wagner's expert report and testimony regarding damages should be excluded under Rule 702 as not properly supported and inherently unreliable.

**B.    Wagner's Report and Testimony Should Be Excluded Because It Contravenes the Entire Market Value Rule**

Wagner's expert opinion and testimony should also be excluded under Rule 702 because he failed to consider, much less analyze, whether what he contends is the necessary patented feature of the accused products – "Intelligent Dispatching" – formed the basis for customer demand as required under the entire market value rule.

The entire market value rule "permits recovery of damages based on the value of the entire apparatus containing several features, where the patented related feature is the basis for

customer demand." *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1580 (Fed. Cir.

1989); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995).

In *Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374 (Fed. Cir.

2005), the Federal Circuit affirmed the district court's refusal to permit expert testimony applying

the entire market value rule in assessing damages based on the value of laundry machines that

incorporated the patentee's coin selection invention.  The Federal Circuit upheld the exclusion of

the testimony because the expert offered no evidence that the patented features of the coin

selector were the basis of customer demand for laundry machines as a whole.  *Imonex*, 408 F.3d

at 1380 ("Without any evident record that the patented features were the basis for customer

demand for the laundry machines as a whole, the trial court properly foreclosed further evidence

on this unsupported theory.").  In so holding, the court noted that plaintiff's reliance on the

*Georgia-Pacific* factors could not cure this fundamental flaw in the damages analysis.  *Id.* ("Any

reliance on the so-called *Georgia-Pacific* factors, actually a Georgia-Pacific listing, had little or

no relation to Imonex's entire-value calculation in different clothing.").

In *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 U.S. Dist. LEXIS

41848 (N.D.N.Y. May 27, 2008),  Federal Circuit Judge Rader, sitting by designation as a

district court judge, excluded expert testimony on damages based on the entire market value rule

where the patented invention was only one component of the accused Hewlett-Packard servers

and workstations and plaintiff failed offer sufficient economic proof that the patented invention

drove the customer demand for the products as a whole.  *Cornell*, No. 01-CV-1974, 2008 U.S.

Dist. LEXIS, at *6-7.  As Judge Rader held, Plaintiffs' expert "simply could not identify any

reliable evidence in support of his position…and could not apportion value or demand between

the claimed invention ... and the accused products." *Id.*  As a result, the expert's testimony was

excluded because he "made no effort to account for the need to link the entire performance or entire market value to the patented invention." *Id.* at *8.

    1.    **Wagner Failed to Consider Whether "Intelligent Dispatching" Forms the Basis for Customer Demand for Oracle Internet Application Server or Oracle Database**

        The alleged necessary patented feature is described by Wagner as "Intelligent Dispatching." A30 at p. 5. The corresponding functionality in the Oracle products accused of meeting this alleged requirement is referred to as "metrics-based load balancing." A23 at p. 178:1-13. The accused metrics-based load balancing functionality is performed by two features of the Oracle IAS product (the Web Cache option for metrics-based load balancing, and the metrics-based load balancing capability provided by mod_oc4j), and by one feature of the Oracle Database (the metrics-based load balancing option within RAC). As Wagner admits, metrics-based load balancing is only one of many different features contained in the accused Oracle products. A30 at pp. 77-78.

        Wagner performed *no* analysis to determine whether metrics-based load balancing formed the basis for customer demand for either IAS or Oracle Database or to otherwise apportion the royalty rate and resulting damages to this feature of the accused products. As Wagner admitted at his deposition:



A24 at p. 130:1-6 (emphasis added). At his deposition, Wagner made no effort to cover up this gaping hole in his analysis:







*Id.* at pp. 156:7-157:6 (emphasis added).

Despite these telling admissions, Wagner made no effort to adjust the royalty rates one

way or the other based on whether the patented feature formed the basis of customer demand.[6]

As Wagner admitted, the ▬▬▬▬▬▬▬▬ to determine the importance of

metrics-based load balancing to customer demand would be ▬▬▬▬▬▬▬▬



*Id.* at p. 130:9-14.   However, Wagner conducted no such analysis of Oracle's sales information.

*Id.* at pp. 130:24-131:3.  Nor did Wagner ask epicRealm's counsel to obtain any additional sales

information to verify his assumptions.  *Id.* at pp. 131:14-18.  As he stated at his deposition:

_____

[6] Wagner cites in his expert report Oracle white papers and testimony touting the benefits of load
 balancing to website performance.  A30 at pp. 59-71.  However, at no time did he ever attempt
 to gauge customer demand for load balancing generally or metrics-based load balancing
 specifically.  As stated above, epicRealm and Wagner explicitly contend that many forms of
 load balancing – *e.g.* "Round Robin" – do not satisfy the alleged "intelligent dispatching"
 requirement of the patents-in-suit.  As discussed below, the evidence shows that Oracle's
 metrics-based load balancing feature is both minor and rarely used by Oracle's customers.



*Id.* at p. 172:6-18 (emphasis added). Wagner admitted that had he conducted such an analysis

and the results showed that customers would still buy the product without the allegedly

infringing feature, he would have to lower the royalty rate to account for this fact. Of course, no

such analysis was conducted:





*Id.* at pp. 172:19-173:13. (emphasis added).

As if to underscore the flawed nature of his analysis, Wagner testified:



*Id.* at pp. 132:13-133:4 (emphasis added).

In fact, the evidence shows that metrics-based load balancing is a minor and seldomly-used feature of the accused products. *See* evidence cited *supra* at p. 8. As Wagner conceded, metrics-based load balancing cannot be considered the basis for customer demand for the Oracle products if the customers did not actually use it:





A24 at pp. 137:18-138:12 (emphasis added).

Wagner's complete failure to consider whether the patented feature constitutes the basis for customer demand for the accused products as a whole contravenes the entire market value rule. *Rite-Hite*, 56 F.3d at 1549; *Imonex*, 408 F.3d at 1380, *Cornell Univ.*, No. 01-CV-1974, 2008 U.S. LEXIS 41848, at *6-8. This fundamental flaw renders his damages report and testimony inherently unreliable and inadmissible under Rule 702.

As if this were not enough, Wagner also demonstrated a basic misunderstanding of the entire market value rule and misapplied the rule to the facts of this case. Wagner testified that the entire market value rule should apply to IAS but not to Oracle Database because IAS, in his view, is "primarily driven by the functionality enabled by the patents," whereas Database is not. As Wagner testified:





A24 at pp. 160:17-161:17.

Even if Wagner's assumption was true, he demonstrates a fundamental misunderstanding of the entire market value rule.  The rule applies when a patentee seeks damages based on the value of an entire apparatus or product where only certain of the features are covered by the patent-in-suit.  *Rite-Hite*, 56 F.3d at 1550; *Imonex*, 408 F.3d at 1380.  If, as Wagner assumes, the ***entire*** IAS product is a commercial embodiment of the patents-in-suit, then there is ***no*** need to apply the entire market value rule.  Likewise, if Oracle Database contains many different features, only one of which is covered by the patents-in-suit, then the rule ***would*** apply.  Wagner's confusion is palpable.  Not only did he fail to consider customer demand for the patented feature as required by the entire market value rule, he applied the rule to the ***wrong*** product.

Wagner's admission that the Database product contains features not covered by the patents-in-suit, coupled with his failure to investigate whether the alleged patented features are the basis for consumer demand for Database, undermines his attempt to use sales of the entire

Database product as the royalty base. His attempt to draw parallels to the IBM/InfoSpinner license cannot be used to escape the legal requirements of the entire market value rule. By failing to meet the requirements of the entire market value rule, Wagner has failed to satisfy a necessary predicate for using all sales of Database as the royalty base, and his opinion based on that royalty base should be excluded.

Wagner's conclusion that the reasonable royalty rate for IAS should be 11% percent is based on his fundamental misapprehension of the law and the facts in this case.



A24 at p. 82:4-9 (emphasis added). But again, Wagner's testimony is undermined by his own admission that there are other types of load balancing in IAS, such as "Round Robin," which do not satisfy the alleged "Intelligent Dispatching" requirement of the patent. Because IAS unequivocally contains features other than those claimed by the patents-in-suit, the entire market value rule requires Wagner to determine whether the patented features are the basis of consumer demand for IAS before using sales of IAS as the royalty base. Wagner's failure to perform this analysis precludes his opinion based on that royalty base.

Wagner's fundamental misunderstanding and misapplication of the entire market value rule requires that his report and testimony be excluded.

## VI.    CONCLUSION

For the foregoing reasons, it is respectfully requested that Oracle's motion be granted and

that Wagner's expert report and testimony be excluded for failure to satisfy the requirements for

admissibility under Rule 702 of the Federal Rules of Evidence.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
mgraham@mnat.com
jparrett@mnat.com
(302) 658-9200

OF COUNSEL:

James G. Gilliland
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, CA  94301
(650) 326-2400

*Attorneys for Oracle Corporation*
*and Oracle U.S.A. Inc.*

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA  94065

Dated: July 31, 2008

2433458