IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORACLE CORPORATION and           )
ORACLE U.S.A. INC.,              )
                                 )
          Plaintiffs/Counterdefendants,    )          C.A. No. 06-414 (SLR)
                                 )
     v.                          )          **REDACTED PUBLIC**
                                 )          **VERSION**
EPICREALM LICENSING, LP,         )
                                 )
          Defendant/Counterclaimant.       )

## ORACLE'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT EXCLUDING DAMAGES BASED ON ORACLE'S FOREIGN SALES

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
mgraham@mnat.com
jparrett@mnat.com
(302) 658-9200

OF COUNSEL:

James G. Gilliland
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, CA 94301
(650) 326-2400

*Attorneys for Oracle Corporation*
*and Oracle U.S.A. Inc.*

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA 94065

DATED: July 31, 2008
Redacted Filing Date: August 7, 2008

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS .............................................................................1

II.   SUMMARY OF ARGUMENT ...........................................................................................1

III.  STATEMENT OF FACTS ...................................................................................................3

IV.   LEGAL STANDARDS ....................................................................................................6

V.    ARGUMENT.......................................................................................................................10

    A.    Oracle's Sending of Software Outside the United States By Way
         of a Master Disk or Electronic Transmission Cannot Constitute
         Infringement Under 35 U.S.C. §271(f).....................................................................10

    B.    EpicRealm Cannot Recover Damages Based On Oracle's Sales
         of Products Made Outside the United States Under Any Other
         Section of the Patent Act...........................................................................................16

         1.    Section 271(a) Applies Only to Infringing Acts in the
                United States ..............................................................................................17

         2.    The Only Damages Arguably Recoverable for Making
                the Master Disk in the United States are *De Minimis* ...........................18

         3.    EpicRealm Cannot Recover Damages for Overseas Sales
                Based on Export or Use of a Master Disk Outside the
                United States ..............................................................................................19

VI.   CONCLUSION...................................................................................................................19

## TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*AT&T Corp. v. Microsoft Corp.*
No. 1 Civ. 4872 (WHP), 2004 WL 406640 (S.D.N.Y. Mar. 5, 2004), *aff'd*,
414 F.3d 1366 (Fed. Cir. 2005), *rev'd*, 127 S. Ct. 1746 (2007) ....................................... 8, 9, 18

*Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*
235 U.S. 641 (1915) .......................................................................................................... 18

*DSU Medical Corp. v. JMS Co., Ltd.*
471 F.3d 1293 (Fed. Cir. 2006) ........................................................................................ 16

*Eolas Tech. Inc. v. Microsoft Corp.*
399 F.3d 1325 (Fed. Cir. 2005) ........................................................................................ 15

*Informatica Corp. v. Business Objects Data Integration, Inc.*
489 F. Supp. 2d 1075 (N.D. Cal. 2007) ............................................................................ 15

*Johns Hopkins Univ. v. CellPro, Inc.*
152 F.3d 1342 (Fed. Cir. 1998) .................................................................................... 16, 19

*MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*
420 F.3d 1369 (Fed. Cir. 2005) ........................................................................................ 17

*Microsoft Corp. v. AT&T Corp.*
127 S. Ct. 1746 (2007) ................................................................................................. passim

*NTP, Inc. v. Research In Motion, Ltd.*
418 F.3d 1282 (Fed. Cir. 2005) .................................................................................... 17, 18

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*
745 F.2d 11 (Fed. Cir. 1984) ............................................................................................ 16

*Rotec Indus., Inc. v. Mitsubishi Corp.*
215 F.3d 1246 (Fed. Cir. 2000) .................................................................................... 17, 18

<u>Statutes</u>

35 U.S.C. §271(a) ....................................................................................................... passim

**TABLE OF AUTHORITIES (*Continued*)**

<u>Page</u>

35 U.S.C. §§271(b) or (c) ........................................................................................................ 16

35 U.S.C. §271(f).............................................................................................................. passim

Plaintiffs and Counterdefendants Oracle Corporation and Oracle U.S.A. Inc. (jointly "Oracle") submit this brief in support of Oracle's Motion For Partial Summary Judgment Excluding Damages Based on Oracle's Foreign Sales.

## I.    NATURE AND STAGE OF PROCEEDINGS

Oracle incorporates by reference its summary of the Nature and Stage of Proceedings set forth in its Opening Claim Construction Brief, filed herewith.[1]

## II.    SUMMARY OF ARGUMENT

1.    EpicRealm is claiming over $380 million in alleged "reasonable royalty" damages against Oracle. EpicRealm includes in its royalty base all sales of accused Oracle software, even if that software was made and sold outside of the United States. With respect to the sale of Oracle products to foreign customers, ███████████████████████ ███████████████████████████████████████ ████████████████████████████ By this motion, Oracle moves to

---

[1] In addition to the present motion, Oracle also files herewith: 1) Oracle's Opening Claim Construction Brief; 2) Oracle's Motion for Summary Judgment of Non-Infringement; 3) Oracle's Motion for Summary Judgment of Invalidity; 4) Oracle's Motion for Partial Summary Judgment of No Willful Infringement; and 5) Oracle's Motion to Exclude Expert Report and Testimony of EpicRealm's Damages Expert, Michael J. Wagner. Exhibits in support of Oracle's motions are contained in the Appendix of Exhibits in Support of Oracle's Motions, filed herewith. Evidentiary support for each of the exhibits is contained in the accompanying declarations in support of Oracle's motions.

exclude epicRealm's alleged damages based on Oracle products made and sold outside the United States.[2]

2. This motion is governed by the United States Supreme Court's holding in *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746 (2007). In *Microsoft*, the Supreme Court explained that "[i]t is the general rule under United States Patent law that no infringement occurs when a patented product is made and sold in another country." *Microsoft*, 127 S. Ct. at 1750. 35 U.S.C. §271(f) provides a limited exception to the rule against extraterritorial infringement of U.S. patents when a person "supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention." *Id.* at 1750-51.

3. Specifically, the Supreme Court held in *Microsoft* that when software object code is sent from the United States on a master disk or by electronic transmission to a foreign facility for copying and installation on computers to be sold to foreign customers, no "component" of a patented invention has been "supplied" from the United States and therefore no violation of §271(f) has occurred. *Id.* at 1757. In so holding, the Supreme Court clarified that the "abstract" software code contained in the master disk or electronic transmission cannot be considered a "component" within the meaning of §271(f). *Id.* at 1751.

4. [redacted]

---

2 [redacted]

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████ As the Supreme Court held in *Microsoft*, neither the master disk nor

the electronic transmission containing Oracle's master code can be considered a "component"

within the meaning of §271(f) and therefore cannot satisfy that section's requirement that a

"component" of a patented invention be "supplied from the United States."  Accordingly, all such

foreign sales should be excluded from the royalty base.

　　　5.　　EpicRealm is not entitled to damages for Oracle's making and selling of software

products outside the United States based on alleged infringement of Claim 11 of the '554 patent

(a "computer readable medium" claim) under §271(a).  Section 271(a) does not apply to

extraterritorial activities. ██████████████████████████ Even assuming,

*arguendo,* that the making of a master disk infringes Claim 11, any damages would be limited to

the allegedly infringing copy and would be *de minimis.*

　　　6.　　Because the facts underlying the present motion are undisputed, Oracle requests

that partial summary judgment be granted in its favor.

## III.　STATEMENT OF FACTS[3]

　　　EpicRealm has accused the following Oracle products of infringing the patents-in-suit:

---

[3]　The general factual background for this case is set forth in Oracle's Opening Claim
Construction Brief, filed herewith.  Only facts relevant to this motion are set forth herein.  A
more detailed description of the patented technology and accused Oracle products is contained
in Oracle's Motion for Summary Judgment of Noninfringement, also filed herewith.

| Accused Oracle Products | Releases at Issue | '554 Patent Claims Infringed | '335 Patent Claims Infringed |
|---|---|---|---|
| Accused Oracle Web Cache Products | Release 1.0.2 (November 2000) and all subsequent releases | 1-5, 7-11 | 2 and 16 |
| Accused Oracle Application Server Products | 10gR1 (9.0.4) (April 2003) and all subsequent releases | 1-5, 7-11 | 2 and 16 |
| Accused Oracle Database Products | for RAC and JDBC: 10gR2 (10.2.0.1.0) (May 2005) and all subsequent releases; for RAC and OCI: 11g (11.1) (October 2007) and all subsequent releases | 1-3, 7-11 | 2 and 16 |







## IV.    LEGAL STANDARDS

There is a strong presumption against the extraterritorial application of United States

patent law.  As the United States Supreme Court stated in *Microsoft*:

> The presumption that United States law governs domestically but
> does not rule the world applies with particular force in patent law.
> The traditional understanding that our patent law "operate[s] only
> domestically and d[oes] not extend to foreign activities," is
> embedded in the Patent Act itself, which provides that a patent
> confers exclusive rights in an invention within the United States.

*Microsoft*, 127 S. Ct. at 1758 (citations omitted).  35 U.S.C. §271(f) provides a limited exception

to the presumption against the extraterritorial reach of U.S. patent laws:

> Whoever without authority *supplies or causes to be supplied in or*
> *from the United States* all or a substantial portion of the
> *components* of a patented invention, where such *components* are
> uncombined in whole or in part, in such manner as to actively

---

[5]    Appendix Exhibits are contained in Oracle's Appendix of Exhibits in Support of Oracle's
Opening Claim Construction Brief and Motions Filed on July 31, 2008, filed concurrently
herewith and are referred to by number as "A__."

induce the combination of such *components* outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. §271(f)(1) (emphasis added).[6]

In *Microsoft*, ▮▮▮▮ the Supreme Court confronted the issue of whether Microsoft's supply of software abroad on a "golden master" disk or by electronic transmission from the United States could form the basis for infringement of AT&T's U.S. patent under §271(f):

> This case concerns the applicability of *§271(f)* to computer software first sent from the United States to a foreign manufacturer on a master disk, or by electronic transmission, then copied by the foreign recipient for installation on computers made and sold abroad....
>
> The question before us: Does Microsoft's liability extend to computers made in another country when loaded with Windows software copied abroad from a master disk or electronic transmission dispatched by Microsoft from the United States? Our answer is "No."

*Microsoft*, 127 S. Ct. at 1750-51.

In *Microsoft*, AT&T alleged that Microsoft's Windows software product, when installed on a computer, infringed a patent owned by AT&T for an apparatus that digitally encodes and compresses recorded speech. *Id.* at 1753. Microsoft stipulated that its Windows software, when installed on computers sold in the United States, infringed the patent and that by licensing Windows to computer manufacturers, Microsoft induced infringement. *Id.* Microsoft, however, disputed liability for foreign sales of its software under §271(f). While Microsoft supplied

---

[6] Section 271(f)(2) similarly provides that "[w]hoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use ... shall be liable as an infringer."

master disks or electronic transmissions that included the Windows object code to computer

manufacturers outside the United States, those master disks or electronic transmissions

themselves were not installed on computers. Rather, the computer manufacturers made copies of

the Windows code and installed those *copies* on computers sold outside of the United States. *Id.*

      The district court found infringement under §271(f), rejecting Microsoft's claims that the

software on the master disks or electronic transmissions did not qualify as a "component"

"supplied from … the United States." *AT&T Corp. v. Microsoft Corp.,* No. 1 Civ. 4872 (WHP),

2004 WL 406640, at *1 (S.D.N.Y. Mar. 5, 2004), *aff'd,* 414 F.3d 1366 (Fed. Cir. 2005), *rev'd,*

127 S. Ct. 1746 (2007). A divided panel of the Federal Circuit affirmed, holding that the

software on the master disks or electronic transmissions represented a "component" of the

invention and that the act of copying the software overseas was "subsumed" in the act of

supplying the golden master. *AT&T Corp. v. Microsoft Corp.,* 414 F.3d 1366, 1368 (Fed. Cir.

2005).

      The Supreme Court reversed. In *Microsoft,* the claim at issue was directed to an

apparatus [computer] capable of digitally encoding and compressing recorded speech. The

parties agreed that Windows contained software "that enables a computer to process speech in

the manner claimed by the [AT&T] '580 patent." *Microsoft,* 127 S. Ct. at 1753. The Supreme

Court concluded that the software, standing alone, could not infringe:

> Neither Windows software (*e.g.,* in a box on the shelf) nor a
> computer standing alone (*i.e.,* without Windows installed)
> infringes AT&T's patent. Infringement occurs only when
> Windows is installed on a computer, thereby rendering it capable
> of performing as the patented speech processor.

*Id.* AT&T argued that Microsoft, in sending a golden master or electronic transmission

containing the relevant object code to its overseas facility for copying, was supplying a

"component" of a patented invention from the United States and therefore infringed under

§271(f). Whether Microsoft's supply of master disks and electronic transmissions from the

United States constituted infringement under §271(f) turned on the answer to a single question:

at what stage does software become a "component" of an infringing combination? As the

Supreme Court explained:

> If the relevant components are the *copies* of Windows *actually*
> *installed* on the foreign computers, AT&T could not persuasively
> argue that those components, though generated abroad, were
> "supplie[d] … from the United States" as *§ 271(f)* requires for
> liability to attach. If, on the other hand, Windows *in the abstract*
> qualifies as a component within *§271(f)*'s compass, it would not
> matter that the master copies of Windows software dispatched
> from the United States were not themselves installed abroad as
> working parts of the foreign computers.

*Id.* at 1754 (footnotes omitted; emphasis added).

Since §271(f) states that a party is only liable for supplying components overseas that are

*combined* to form a patented invention, the Supreme Court concluded that software in the

abstract cannot be "combined" without being contained on a specific medium. Consequently, the

use of the word "component" within §271(f) cannot include software in the abstract. *Id.* at 1755.

> Until it is expressed as a computer-readable "copy," *e.g.*, on a CD-
> ROM, Windows software – indeed any software detached from an
> activating medium –remains uncombinable. It cannot be inserted
> into a CD-ROM drive or downloaded from the Internet; it cannot
> be installed or executed on a computer. Abstract software code is
> an idea without physical embodiment, and as such, it does not
> match *§271(f)*'s categorization: "components" amenable to
> "combination."

*Id.* The Supreme Court further held that:

> On this view of "component," the copies of Windows on the
> master disks and electronic transmissions that Microsoft sent from
> the United States could not themselves serve as a basis for liability,
> because those copies were not installed on the foreign
> manufacturers' computers.

*Id.* at 1754, n. 9.  Accordingly, the Court held, Microsoft was not liable under §271(f) for the

*copies* of Windows that were made and installed on computers outside the United States because

those copies "were not themselves supplied from the United States." *Id.*  "Indeed, those copies

did not exist until they were generated by third parties outside the United States." *Id.*



## V.     ARGUMENT

### A.     Oracle's Sending of Software Outside the United States By Way of a Master Disk or Electronic Transmission Cannot Constitute Infringement Under 35 U.S.C. §271(f)

EpicRealm's damages expert included all sales, both foreign and domestic, of Oracle's

accused products into the royalty base for purposes of calculating epicRealm's alleged damages.

Without differentiating between Oracle products supplied from the United States and products

copied and supplied from abroad, Mr. Wagner opined that "the distinction between U.S. and

worldwide rights in this case is immaterial because all of Oracle's worldwide sales are covered

under the hypothetical████████████████████████

████████████ A30 at p. 43, ¶151. ████████

████████████████████████████

████████████████████████████

██████████████████

████████████████████████



Here, the patents-in-suit contain both "system" and "method" claims. Like the claim at issue in *Microsoft*, these claims require that a tangible copy of infringing software be installed in a computer before anyone can practice the claim. Claim 9 of the '554 patent is a representative system claim:

> A networked system for managing a dynamic Web page generation request, said system comprising:
>
> one or more data sources;
>
> a page server having a processing means;
>
> a first computer system including means for generating said request; and
>
> a second computer system including means for receiving said request from said first computer, said second computer system also including a router, said router routing said request from said second computer system to said page server, wherein said routing further includes intercepting said request at said second computer, routing said request from said second computer to a dispatcher, and dispatching said request to said page server said page server receiving said request and releasing said second computer system to process other requests, said page server processing means processing said request and dynamically generating a Web page in response to said request, said Web page including data dynamically retrieved from said one or more data sources.

A1. Neither the "first computer system," nor the "second computer system," can operate without software. Oracle's accused software – which epicRealm alleges provides the alleged "routers," "page servers," "dispatchers," etc., of the claimed system, and which epicRealm alleges performs the various claimed functions of "receiving," "routing," "intercepting," "dispatching," etc. – must be installed on the "second computer system" before any of these alleged structures or functions can exist under epicRealm's

infringement theories.[7]  As in *Microsoft*, a mere uninstalled copy of Oracle's accused

products cannot infringe the "system" claims.  *Microsoft*, 127 S. Ct. at 1753.

The same is true of the "method" claims.  Claim 1 of the '554 patent is a

representative method claim:

> A computer-implemented method for managing a dynamic Web page generation
> request to a Web server, said computer-implemented method comprising the steps
> of:
>
> routing said request from said Web server to a page server, said page server
> receiving said request and releasing said Web server to process other requests,
> wherein said routing step further includes the steps of intercepting said request at
> said Web server, routing said request from said Web server to a dispatcher, and
> dispatching said request to said page server;
>
> processing said request, said processing being performed by said page server
> while said Web server concurrently processes said other requests; and
>
> dynamically generating a Web page in response to said request, said Web page
> including data dynamically retrieved from one or more data sources.

Al.  As the claim plainly recites, it is a "computer-implemented method."  No one can

practice the claimed method without installing a copy of allegedly infringing software on

a computer.  Again, as in *Microsoft*, no one can infringe the "method" claims with a mere

uninstalled copy of Oracle's accused software.[8]

---

[7]  Oracle, of course, denies that its software infringes any of the asserted claims.  *See* Oracle's
Motion for Summary Judgment of Noninfringement, filed herewith.

[8]  The Supreme Court in *Microsoft* expressly refused to address "whether software in the
abstract, or any other intangible, can *ever* be a component under *271(f)*."  127 S. Ct. at 1756 n.
13.  The Court stated in dicta that "[i]f an intangible method or process, for instance, qualifies
as a 'patented invention' under §271(f) (a question as to which we express no opinion), the
combinable components of that invention might be intangible as well."  *Id.*  Here, as shown
above, the method claims are not "intangible," but instead require the use of computer
hardware and copies of computer software installed on that hardware to practice the claimed
method.

Accordingly, under *Microsoft*, the copies of Oracle software made and sold outside of the United States are not "components" supplied from the United States under §271(f). *Microsoft*, 127 S. Ct. at 1754-59. As a matter of law, therefore, Oracle cannot be liable for infringement for the manufacture and sale of the accused products abroad as set forth above.

EpicRealm also asserts that Oracle infringes claim 11 of the '554 patent, which is for a "machine readable medium having stored thereon data representing sequences of instructions which when executed by a computer system cause said computer system to perform the steps of ...."[9] The recited "steps" are substantially the same as those required by method claim 1. EpicRealm contends that the copies of Oracle's accused products infringe this claim, regardless of whether they are ever placed in a computer. Even assuming, *arguendo*, that this is true, the copies generated outside the United States cannot infringe claim 11 under §271(f) because the "abstract code" on the master disk or the electronic transmission from which the copies are made cannot be a "component" under the Supreme Court's holding in *Microsoft*. *Microsoft*, 127 S. Ct. at 1754-59. ████

████████████████████████████████████████████████

████████████████████████████████ does not, therefore, contain any "component" supplied from the United States, as required by §271(f). Accordingly, such foreign sales of the accused Oracle software must be excluded from the royalty base.

Prior to the *Microsoft* decision, the Federal Circuit addressed §271(f) in the

---

[9] Claims such as Claim 11 are commonly referred to as "Beauregard" claims. *In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995).

context of accused infringement of a Beauregard claim similar to Claim 11.  *Eolas Tech.*

*Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1338-39 (Fed. Cir. 2005).  In *Eolas*, the issue was

whether software code exported on a golden master disk could be a component under

§271(f).  The claim was directed to a software product, comprising a computer usable

medium having computer readable program code physically embodied therein and

computer readable program code.  The Federal Circuit held that software code, even if

intangible, is a component of an invention for purposes of §271(f).  *Id.* at 1338-41.

However, subsequently, the Supreme Court in *Microsoft* held the opposite: that

abstract code is *not* a component for purposes of §271(f).  *Microsoft,* 127 S. Ct. at 1755.

Although the Supreme Court did not expressly overrule *Eolas*, it questioned the Federal

Circuit's holding.  The Supreme Court noted that the Federal Circuit had relied on its

earlier decision in *Eolas* to hold that "software qualifies as a component under § 271(f)"

in *Microsoft.  Id.* at 1754, n.10.  The Supreme Court commented that it was "unable to

determine, however, whether the Federal Circuit panels regarded as a component

software in the abstract, or a copy of software."  *Id.*  To the extent that the Federal

Circuit's holdings in *Eolas* and *Microsoft* encompass abstract code on a master disk or

electronic transmission, they are superceded by the Supreme Court's *Microsoft* decision.

*See, e.g., Informatica Corp. v. Business Objects Data Integration, Inc.*, 489 F. Supp. 2d

1075, 1083 (N.D. Cal. 2007) ("[The Supreme Court decision in] *Microsoft* calls into

question the reasoning of *Eolas* to the extent that the Federal Circuit may have been

referring to software in the abstract, rather than captured in a medium.").  Furthermore,

any ambiguity should be resolved by limiting the scope of  §271(f) in light of the

presumption against extraterritoriality.  *Id., citing Microsoft*, 127 S. Ct. at 1758 ("Any

doubt that Microsoft's conduct falls outside §271(f)'s compass would be resolved by the presumption against extraterritoriality.").

Accordingly, whether infringement is viewed under the method claims, system claims, or Beauregard claims, all foreign sales ████████████████████████████ ████████████████████████████████████ must be excluded from the royalty base and epicRealm's damages reduced accordingly.

### B.    EpicRealm Cannot Recover Damages Based On Oracle's Sales of Products Made Outside the United States Under Any Other Section of the Patent Act

EpicRealm cannot recover damages based on Oracle's sales of products made outside the United States under any section of the patent statute.  Section 271(a) requires making, using, offering to sell or selling the patented invention *within the United States*.  Likewise, to induce infringement or contributorily infringe a patent under 35 U.S.C. §271(b) or (c), there must be direct infringement in the United States.  *DSU Medical Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1305 (Fed. Cir. 2006).  With the exception of §271(f), there is no patent statute that makes exportation or use in a foreign country of a product or a component of a product an act of infringement.  *See Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1366 (Fed. Cir. 1998) ("[N]either export from the United States nor use in a foreign country of a product covered by a United States patent constitutes infringement [under §271(a)]"); *see also Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 16 (Fed. Cir. 1984) ("By the terms of the patent grant, *no* activity other than the unauthorized making, using or selling of the claimed invention can constitute direct infringement of a patent, *no matter* how great the adverse impact of that activity on the economic value of a patent.") (emphasis in original).  And, as discussed above, §271(f) does not apply ████████████████████ is not a "component."

### 1.    Section 271(a) Applies Only to Infringing Acts in the United States

Section 271(a) of the patent statute sets forth the requirements for a claim of direct

infringement of a patent.

> Except as otherwise provided in this title, whoever without authority
> makes, uses, offers to sell, or sells any patented invention, within the
> United States or imports into the United States any patented invention
> during the term of the patent therefor, infringes the patent.

35 U.S.C. §271(a).  By its terms, §271(a) applies only to infringing acts done in the United States

or importation of a patented invention into the United States.  *See MEMC Electronic Materials,*

*Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1375 (Fed. Cir. 2005) ("It is well-

established that the reach of section 271(a) is limited to infringing activities that occur within the

United States."); *accord NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir.

2005).  Extraterritorial activities are irrelevant to an analysis under §271(a) because "the right

conferred by a patent under our law is confined to the United States and its territories, and

infringement of this right cannot be predicated of acts wholly done in a foreign country."  *Rotec*

*Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000), *quoting Dowagiac Mfg.*

*Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 650 (1915) (citation omitted).

EpicRealm alleges that Oracle infringes claim 11 of the '554 patent as a result of Oracle's

making and selling copies of the accused software products, even if the product is never installed

in a computer and used to practice the system or method claims.  But regardless of whether such

acts constitute infringement of §271(a) in the United States, the making and selling of copies

outside the United States is not infringement and cannot provide a basis for infringement

damages.  To establish infringement of claim 11 under §271(a), epicRealm must prove that

Oracle made, used, offered to sell or sold the patented invention *in the United States*.  *See NTP,*

- 17 -

418 F.3d at 1316, *quoting N. Am. Phillips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1476, 1579

(Fed. Cir. 1994) ([Section 271] on its face clearly suggest the conception that the 'tort' of patent

infringement occurs where the offending act is committed and *not where the injury is felt.*")

(emphasis added). Claim 11 simply does not cover the end software products made and sold

overseas because extraterritorial activities are irrelevant to an infringement analysis under

§271(a). Accordingly, damages for the alleged infringement of claim 11 cannot reach the

software products made and sold in foreign countries.

### 2. The Only Damages Arguably Recoverable for Making the Master Disk in the United States are *De Minimis*

The reach of §271(a) extends only to activities occurring in the United States. *Rotec*, 215

F.3d at 1251; *Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 650 (1915).

Even assuming, *arguendo*, ████████████████████████████████████████████████

████████████████████████████████████constitutes direct infringement of

claim 11 under the "making" prong of §271(a), the situs of the alleged infringement would be in

the United States. *See NTP*, 418 F.3d at 1317. The situs of infringement for copies of the

accused end software products *made in foreign countries,* however, is outside the United States.

As a result, making of those copies is not covered by §271(a).

EpicRealm cannot use the allegedly ████████████████████████████████████

a "springboard" to claim damages for copies made and sold overseas. The Supreme Court

rejected this same argument in *Microsoft*:

> AT&T's reading, however, "converts a single act of supply from
> the United States into a springboard for liability each time a copy
> of the software is subsequently made [abroad] and combined with
> computer hardware [abroad] for sale [abroad.]" (citation omitted)
> *In short, foreign law alone, not United States law, currently
> governs the manufacture and sale of components of patented
> inventions in foreign countries. If AT&T desires to prevent copying*

*in foreign countries, its remedy today lies in obtaining and*
*enforcing foreign patents.*

*Microsoft*, 127 S. Ct. at 1758-59 (emphasis added).  As a result, any damages for infringing

claim 11 under §271(a) would be limited to █████████████████████████████████████

████ and those damages would be *de minimis*.

### 3.    EpicRealm Cannot Recover Damages for Overseas Sales Based on Export or Use of a Master Disk Outside the United States

Nor can EpicRealm recover damages for overseas sales of software products based on a

theory that export or use ████████████████████████████ outside the United States

constitutes infringement of claim 11, or a basis for infringement damages, under the "use" prong

of §271(a).  As the Federal Circuit clearly stated in *CellPro,* "neither export from the United

States nor use in a foreign country of a product covered by a United States patent constitutes

infringement [under §271(a).]" *CellPro,* 152 F.3d at 1366.

Because copying software code outside the United States for sale, distribution and use

abroad is not prohibited under any section of the Patent Act, it cannot form the basis for a claim

of infringement regardless of what alleged infringing activity took place inside the United States.

Accordingly, this Court should grant Oracle's motion for partial summary judgment and preclude

epicRealm from claiming damages for the sale of any of the accused products that were made,

sold and distributed outside of the United States.[10]

## VI.    CONCLUSION

For the foregoing reasons, Oracle respectfully requests that the Court grant Oracle partial

---

[10]  If the Court grants the motion, the parties can meet and confer to agree on the final sales figures for copies of the accused products made in the United States.

summary judgment and exclude sales of accused products made and sold outside the United

States as a basis for any damages epicRealm may seek to recover.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*
_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
mgraham@mnat.com
jparrett@mnat.com
(302) 658-9200

OF COUNSEL:

James G. Gilliland
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, CA  94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA  94065

Dated: July 31, 2008

*Attorneys for Oracle Corporation
and Oracle U.S.A. Inc.*

2433436
61450947 v1