# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ORACLE CORPORATION and  )
ORACLE U.S.A. INC.,  )
  )  C.A. No. 06-414-SLR
  Plaintiffs/Counterclaim Defendants,  )
  )  **JURY TRIAL DEMANDED**
v.  )
  )
EPICREALM LICENSING, LP,  )  **PUBLIC VERSION**
  )
  Defendant/Counterclaim Plaintiff.  )

## APPENDIX IN SUPPORT OF EPICREALM'S
## *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF DR. MICHAEL SHAMOS

### VOLUME II of II

### EXHIBITS 3 to 8

|  |  |
|---|---|
|  | Richard L. Horwitz (#2246) |
|  | David E. Moore (#3983) |
|  | POTTER ANDERSON & CORROON LLP |
|  | Hercules Plaza, 6th Floor |
| OF COUNSEL: | 1313 N. Market Street |
|  | Wilmington, DE  19899 |
| Harry J. Roper | Tel:  (302) 984-6000 |
| George S. Bosy | rhorwitz@potteranderson.com |
| Aaron A. Barlow | dmoore@potteranderson.com |
| Patrick L. Patras |  |
| David R. Bennett | *Attorneys for Defendant/Counterclaim* |
| Paul D. Margolis | *Plaintiff epicRealm Licensing, LP* |
| Benjamin J. Bradford |  |
| Emily C. Johnson |  |
| JENNER & BLOCK |  |
| 330 N. Wabash Avenue |  |
| Chicago, IL  60611-7603 |  |
| Tel:  (312) 923-8305 |  |

Dated:  July 31, 2008
876764 / 31393 / Oracle

Public Version Dated:  August 7, 2008

# TABLE OF CONTENTS

*Exh.*    *Document*

1.    Report of Plaintiffs' Expert Michael I. Shamos Concerning Invalidity, May 2, 2008

2.    Exhibit 3 from Shamos Expert Report

3.    Exhibit 4 from Shamos Expert Report

4.    Exhibit 5 from Shamos Expert Report

5.    Deposition transcript of Michael Shamos, June 30, 2008

6.    Report and Recommendation Regarding Claim Construction, August 15, 2006, *EpicRealm Licensing, LLC v. Autoflex Leasing, Inc. et al.,* (E.D. Tex.)

7.    Excerpt from Defendant's Supplemental Response To Plaintiffs' Interrogatory Nos. 3-5, 9-15, 17-20 and 22-25

8.    Excerpt from Rebuttal Expert Report of Dr. David Finkel, June 6, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 7, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on August 7, 2008, the attached document was Electronically Mailed

to the following person(s):

Mary B. Graham
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
MGraham@MNAT.com

James G. Gilliland
Igor Shoiket
Townsend and Townsend and Crew LLP
Two Embarcadero Center
Eighth Floor
San Francisco, CA 94111-3834
OracleEpicrealm@townsend.com

Theodore T. Herhold
Robert J. Artuz
Eric M. Hutchins
Eric A. Mercer
Joseph A. Greco
Nitin Gupta
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA 94301
OracleEpicrealm@townsend.com

Chad E. King
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202
OracleEpicrealm@townsend.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

# Exhibit 3

Exhibit 4 to Report of Defendants' Expert Michael I. Shamos, Ph.D., J.D., Concerning Invalidity

| Claim | Anticipating References -> | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | 039 | 051 | 058 | 063 | 066 | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | |
| '554 1 | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | | 051 | 058 | 063 | | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 29 |
| '554 2 | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | | 051 | 058 | 063 | | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 29 |
| '554 3 | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | | 051 | 058 | 063 | | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 29 |
| '554 4 | 002 | | 00J | | 00O | 00Q | 00W | | 016 | | 019 | | 051 | | 063 | | 141 | 153 | | 162 | 172 | | 180 | | 195 | | | 501 | | 604 | 607 | 18 |
| '554 5 | | | | 00K | | | | | 016 | | 019 | | | 058 | | | 141 | 153 | | 162 | | 173 | 180 | | 195 | 196 | | 501 | 601 | 604 | 607 | 15 |
| '554 6 | 002 | 00H | | | 00O | | | | 016 | | | | 051 | | | | 141 | 153 | 161 | | | | | | | | | 501 | 601 | 604 | 607 | 12 |
| '554 7 | 002 | 00H | | 00K | 00O | 00Q | 00W | | 016 | | 019 | | | 058 | 063 | | 141 | 153 | | | 172 | 173 | | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 22 |
| '554 8 | 002 | 00H | 00J | 00K | 00O | 00Q | | | 016 | | 019 | | | 058 | 063 | | 141 | 153 | | | 172 | 173 | | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 21 |
| '554 9 | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | | 051 | 058 | 063 | | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 29 |
| '554 10 | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | | 051 | 058 | 063 | | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 29 |
| '554 11 | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | | 051 | 058 | 063 | | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 29 |
| '335 1 | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | 039 | 051 | 058 | 063 | 066 | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | | 401 | 501 | 601 | 604 | 607 | 30 |
| '335 2 | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | | 051 | 058 | 063 | | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 29 |
| '335 15 | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | 039 | 051 | 058 | | 066 | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 30 |
| '335 16 | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | | 051 | 058 | 063 | | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 29 |
| '335 29 | 002 | 00H | 00J | 00K | 00O | 00Q | 00W | 010 | 016 | 018 | 019 | | 051 | 058 | 063 | | 141 | 153 | 161 | 162 | 172 | 173 | 180 | 194 | 195 | 196 | 401 | 501 | 601 | 604 | 607 | 29 |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | 409 |

Exhibit 4

**Exhibit 5 to Report of Defendants' Expert Michael I. Shamos, Ph.D., J.D., Concerning Invalidity**

**Claim Limitations**

| Ref | Abbreviated Title | Date | 554 | 1a | 1b1 | 1b2 | 1b3 | 1b4 | 1b5 | 1b6 | 1c | 1d1 | 1d2 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9a | 9b | 9c | 9d | 9e1 | 9e2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **References listed in Exhibit 2 to Defendants' Preliminary Invalidity Contentions** | | | | | | | | | | | | | | | | | | | | | | | | | |
| 002 | Varela, DB: Browsing Object-Oriented | Dec. 12, 1995 | | X | X | X | X | X | X | X | X | X | X | X | | | | | | | X | X | X | X | X | X |
| 003 | Attanasio et al. 5,371,852 | Oct. 14, 1992 | | | X | X | | X | X | X | X | | X | | | | | | | | | X | X | | | X |
| 009 | Burkowski, Delivery of Electronic News: A Broadband | Nov. 3, 1994 | | X | X | X | X | | | | X | X | X | | | | | | | | X | X | | | | X |
| 00A | Filepp et al. 5,347,632 Reception System | July 28, 1989 | | X | | | X | X | | | | X | | X | | | X | X | X | | | X | X | X | | |
| 00B | Kolnick 5,335,323 Computer Human Interface | Jan. 5, 1985 | | | | | | | | | | | | | | | | | | | | | | | | |
| 00C | Newmark et al. 5,287,537 Distributed Processing | Nov. 15, 1985 | | X | X | X | X | X | X | X | X | | X | | | | | | | | | X | X | | | X |
| 00D | Robertson, Virtual Frog Dissection: Interactive 3D | 1994 | | | | | | | | X | | X | | | | | | | | | | X | | | | |
| 00E | Weibel, An Architecture for Scholarly Publishing | October 17, 1994 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 00F | Yao et al., FORMANAGER: An Office Forms Mgmt System | July 1984 | | | | | | | | X | X | | X | | | | | X | | | | X | | | | |
| 00G | Hastings, Providing Customers Information Using the | | SAME REFERENCE AS 058 | | | | | | | | | | | | | | | | | | | | | | | |
| 00H | Dönszelmann, Gateways for the World-Wide Web | 1994 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 00I | Chankhunthod, A Hierarchical Internet Object Cache | March 1995 | | X | X | X | | | | | | | X | | | | | | | | | X | X | | | X |
| 00J | Shklar, The Infoharness Information Integration Platform | 1994 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 00K | Sjölin, A WWW Front End to an OODBMS | 1994 | | X | X | X | X | X | X | X | X | X | X | | X | | | | | X | X | X | X | X | X |
| 00L | NASA Technical Memo 109162 NCSA Mosaic | Sept. 5, 1994 | | X | X | | | | | | | | X | | | | | | | | | X | X | | | |
| 00M | Pitkow et al., Towards an Intelligent Publishing Environment | April 1995 | | X | | | | | | | | | | | | | | | | | | | | | | |
| 00N | Luotonen, World-Wide Web Proxies | November 1994 | | SAME REFERENCE AS 066 | | | | | | | | | | | | | | | | | | | | | | |
| 00O | Ingham, W3Objects: Bringing Object-Oriented Tech | December 1995 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 00P | Hurwitz et al,m The Open Meeting | December 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 00Q | Antchev, A WWW Learning Environment | Dec. 12, 1995 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 00R | Lin &Chung, Web Access to IBM Legacy | Dec. 12, 1995 | | X | X | X | | | | | X | X | X | X | | X | | | | | X | X | X | X | X | X |
| 00S | Eichmann, Integrating structured databases | Nov. 1994 | | X | X | X | | | | | X | X | X | X | | X | | | | | X | X | X | X | X | X |
| 00T | Hunter, SWOOP: An Application Generator for ORACLE | December 1995 | | | | | | | | | X | | | | | X | X | X | X | | X | X | | | | |
| 00U | Varela, DB: Browsing Object-Oriented | | SAME REFERENCE AS 002 | | | | X | X | | | | | | X | | | | | | | X | X | | | |
| 00V | Bentley, Supporting Collaborative Information Sharing | December 1995 | | X | | | | | | | | | | | | | | | | | | | | | | |
| 00W | Clausnitzer, A WWW Interface to the OMNIS/Myriad | April 14, 1995 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 00X | Mathews, NSSC OMNIWeb: The First Space Physics | April 1995 | | X | | | | | X | X | X | | X | | | | | | | | | X | | | | |
| 00Y | Rees, A Web of Distributed Objects (Dec. 1995) | December 1995 | | X | | | | | | | | | | | | | | | | | | | | | | |
| 010 | Lagoze et al., Dienst: Implementation Reference | May 5, 1995 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 011 | Mann et al., A Coherent DIstributed File Cache | May 1994 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | | | | | | |
| 012 | Honeycutt, Groupware '95: The Convergence | April 1, 1995 | | | | | | | | | | | | | | | | | X | | | | | | | |
| 013 | Garland, Implementing Distributed Server Groups | Jan. 25, 1995 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 014 | Karimkhany, Intranets help companies streamline | Apr. 23, 1996 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 016 | Gaffney, Illustra's Web DataBlade Module | March 1996 | | X | X | X | X | X | X | X | X | X | X | | | X | X | X | X | X | X | X | X | X | X | X |
| 017 | Crocker, web2mush: Serving Interactive Resources | October 1994 | | X | X | X | | | X | X | X | X | X | X | X | X | | | X | X | | X | X | X | X | X |
| 018 | Poole et al. 5,455,948 Providing Data To An Application | Dec. 17, 1991 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 019 | Srinivas, Applications of Mosaic Health Care Delivery | Oct. 20, 1994 | | X | X | X | X | X | X | X | X | X | X | X | | | | | | X | X | X | X | X | X | X |
| 020 | Shklar, The "Infoharness" Information Integration Platform | | SAME REFERENCE AS 00J | | | | | | | | | | | | | | | | | | | | | | | |

| 9e3 | 9e4 | 9e5 | 9e6 | 9e7 | 9e8 | 9e9 | 9e10 | | 10a | 10b | 10c | 11a | 11b1 | 11b2 | 11b3 | 11b4 | 11b5 | 11b6 | 11c | 11d | 335 | 1a | 1b1 | 1b2 | 1b3 | 1c1 | 1c2 | 1d | 1e1 | 1e2 | | | 2a | 2b | 2c | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| 11 | 12 | 13 | 14 | 15a | 15b1 | 15b2 | 15b3 | 15c | 15d1 | 15d2 | 15e | 16a | 16b | 16c | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29a | 29b | 29c | 29d1 | 29d2 | 29e1 | 29e2 | 29f1 | 29f2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X |  | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  | X | X | X | X |  | X |  | X | X | X | X | X | X | X | X |
|  |  |  |  |  |  |  |  |  |  |  | X |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  | X |  |  | X |
|  |  |  |  |  | X | X | X |  |  |  | X |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  | X | X |
| X |  |  |  |  |  |  |  |  |  |  | X |  |  |  | X |  |  | X | X | X | X | X |  |  |  |  |  |  |  |  | X |  |  |  | X |
|  |  |  |  |  | X | X | X | X |  |  | X |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  | X |  | X |  |
|  |  |  |  |  |  |  |  |  |  |  | X | X | X | X |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  | X | X |
| X |  | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  | X | X | X | X |  |  | X | X | X | X | X | X | X | X | X | X |
| X | X |  |  |  |  |  |  |  |  |  | X |  |  |  | X |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X |  | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  | X | X | X | X |  |  | X | X | X | X | X | X | X | X | X | X |
|  |  |  |  | X | X |  |  |  |  |  |  |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| X |  | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X |  |  | X | X | X | X |  | X | X | X | X | X | X | X | X | X | X |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  |  |  |  |  |  |  | X | X |  |  | X |  |  | X | X |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X |  |  |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  | X | X | X | X |  |  | X | X | X | X | X | X | X | X | X |
|  |  |  |  | X | X | X |  |  |  | X |  |  |  | X | X |  |  | X |  |  |  |  |  |  |  |  | X | X |  |  |  | X |  | X | X |
|  |  |  |  | X | X | X |  |  |  | X |  |  |  | X | X |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  | X | X |
| X |  |  |  |  |  |  |  |  |  | X | X |  |  |  | X |  |  | X |  | X | X | X |  |  | X |  |  |  |  |  |  |  |  |  | X |
|  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  | X |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X |  |  |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  | X | X | X | X |  |  | X | X | X | X | X | X | X | X | X |
|  |  |  |  |  |  |  |  |  |  | X | X |  |  |  | X |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X | X |  |
|  |  | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  |  |  |  |  |  | X |  | X | X | X | X | X | X | X | X | X |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  |  |  |  |  |  |  |  | X | X | X | X | X | X | X | X | X |
| X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X |
| X | X |  |  | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X |  | X | X |  |  | X | X |  |  | X | X | X | X | X |
|  | X |  |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  | X | X | X |  | X |  | X | X | X | X | X | X | X | X | X |
| X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X |

| No. | Title | Date | 554 | 1a | 1b1 | 1b2 | 1b3 | 1b4 | 1b5 | 1b6 | 1c | 1d1 | 1d2 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9a | 9b | 9c | 9d | 9e1 | 9e2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 021 | Fox, Towards Web/Java Based High Performance | August 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 023 | Putz, Interactive Information Services Using WWW | April 20, 1994 | | | | | | | | | | | | | | | | | | | | | | | | |
| 024 | Katz, A scalable HTTP server: The NCSA Prototype | 1994 | | | | | | | | | | | | | | | | | | | | | | | | |
| 025 | Furmanski, WebFlow - a visual programming paradigm | November 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 026 | Petri, Load Balancing and Fault Tolerance in Workstation | October 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 027 | Westerberg, Load Balancing and PRAMs | May 29, 1995 | | | | | | | | | X | | | | | | | | | | | | | | | |
| 028 | Bernstein, Middleware: A Model for Distributed System | February 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 029 | Erkes, Implementing Shared Manufacturing Services | February 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 030 | Shklar, Web Access to Legacy Data | 1995 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 031 | Finkelstein, The New Middleware (Dec. 1995) | December 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 032 | Sybase, Inc. announces Web.Works Internet Architecture | Jan. 22, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 033 | ORACLE WEBSERVER 2.0 SHIPS, NOW AVAILABLE | Apr. 30, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 035 | Kleissner, Enetprise Objects Framework: A Second | June 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 036 | Girgensohn, Experiences in Developing Collaborative | March 20, 1996 | | X | X | | | | | | X | X | X | X | | | | | | | | | X | X | | |
| 038 | SYBASE ANNOUNCES GENERAL AVAILABILITY OF | May 6, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 039 | Gaines, Porting Interactive Applications to the Web | Dec. 11, 1995 | | X | X | X | X | X | | | X | X | X | X | | | | | | | X | X | X | X | X | X | X |
| 040 | Silva, The Case for Design Using the World Wide Web | 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 041 | TIBCO Corporate Overview | August 1997 | | | | | | | | | | | | | | | | | | | | | | | | |
| 042 | Everitt, The ILU Requester: Object Services in HTTP | March 7, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 043 | Perrochon, W3 "Middleware": Notions and Concepts | December 1995 | | X | X | X | X | X | X | X | X | X | X | | | | | | X | | X | X | X | X | X | |
| 045 | YAHOO ENHANCES REAL TIME INFORMATION | April 9, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 046 | Thau, Design considerations for the Apache Server API | Jan. 29, 1996 | | X | X | X | | | | X | | | | | | | | | | | | | | X | | X |
| 047 | CyberTIB Family of Products | 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 048 | Fox et al.,  WebWork:Integrated Programming Environment | June 14, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 049 | Lomet (ed.), Bull. of the Technical Committee on Data | March 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 050 | ParcPlace-Digitalk Introduces VisualWave | Nov. 28, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 051 | Bowman, A Scalable, Customizable Discovery and Access | March 12, 1995 | | X | X | X | X | X | X | X | X | X | X | | | | | | | X | X | X | X | X | X | X |
| 052 | Rasmussen, WDB - A Web Interface to Sybase | 1995 | | X | X | X | X | X | | | X | X | X | X | | | | | | | X | X | X | X | X | X | X |
| 053 | Oki, The Information Bus: An Architecuire for Extensible | December 1993 | | | | | | | | | | | | | | | | | | | | | | | | |
| 054 | Bowman, Harvest Information Discovery and Access Sys | October 1995 | | X | X | X | X | X | | X | | | | | | | | | | | | | | X | | X |
| 055 | O'Callaghan, A Central Caching Proxy Server for WWW | May 2, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 056 | Boutell, Techniques for Server-Side Dynamic | October 1994 | | X | X | X | | | | | X | X | X | X | | | | X | X | | X | X | X | X | X | X |
| 057 | Dönszelmann, Gateways for the World-Wide Web | | SAME REFERENCE AS 00H | | | | | | | | | | | | | | | | | | | | | | | |
| 058 | Hastings, Providing Customers Information Using the | 1994 | | X | X | X | X | X | X | X | X | X | X | | | | | | X | | X | X | X | X | X | X |
| 059 | Risberg et al. 5,339,392 Creation of User Definable Video | Dec. 28, 1990 | | | | | | | | | | | | | | | | | | | | | | | | |
| 060 | Skeen et al. 5,257,369 Decoupling of Data Exchange | Oct. 22, 1990 | | | | | | | | | | | | | | | | | | | | | | | | |
| 061 | Beitz, Integrating WWW and Middleware | May 1995 | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 062 | Interface to Relational Databases (Pythia) | | | X | X | X | X | X | X | X | X | X | X | | X | | | | | | X | X | X | X | X | X |
| 063 | Clausnitzer, A WWW Interface to the OMNIS/Myriad | | | X | X | X | X | X | X | X | X | X | X | X | | | | | | | X | X | X | X | X | X |
| 065 | Sjölin, A WWW Front End to an OODBMS | | | X | X | X | X | X | X | X | X | X | X | | | X | | | | | X | X | X | X | X | X |
| 066 | Luotonen, World-Wide Web Proxies | April 1994 | | X | X | X | X | X | | | X | X | X | X | | | | | | X | | X | X | X | X | X | X |
| 067 | Perrochon, Translation Servers: Gateways Between | 1994 | | | | | | | | | | | | | | | | | | | | | | | | |

| 9e3 | 9e4 | 9e5 | 9e6 | 9e7 | 9e8 | 9e9 | 9e10 | 10a | 10b | 10c | 11a | 11b1 | 11b2 | 11b3 | 11b4 | 11b5 | 11b6 | 11c | 11d | 335 | 1a | 1b1 | 1b2 | 1b3 | 1c1 | 1c2 | 1d | 1e1 | 1e2 | 2a | 2b | 2c | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X |
| X |  |  |  |  | X | X | X |  |  | X |  |  |  |  |  |  |  | X |  |  | X | X |  |  | X |  | X | X |  |  |  |  |  |  | X | X |  |  |  |  |
| X | X |  |  | X | X | X | X | X | X |  | X | X | X | X | X |  | X | X |  |  | X | X | X | X | X | X | X | X | X | X |  |  | X | X |  |  | X | X | X |  |
| X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X |  |  |  |
| X |  |  | X |  |  |  | X | X |  | X |  | X | X |  |  | X |  | X |  |  | X | X | X |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |
| X | X |  |  | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X |  | X | X | X |  | X | X | X | X | X | X |  | X | X | X |  | X | X | X |  |  |
| X | X |  | X |  | X |  |  | X |  | X |  | X | X | X | X |  | X |  |  |  | X | X | X | X | X | X |  |  |  | X |  |  |  |  |  |  |  |  |  |  |
| X |  |  |  | X | X | X |  | X |  | X | X | X |  | X |  |  |  | X |  |  | X | X | X |  |  | X | X |  |  | X | X |  | X | X |  |  |  |  |  |  |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X |  |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X |  |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X |  |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X |  |
| X | X |  |  | X | X | X | X | X | X |  | X | X | X | X | X |  | X | X |  |  | X | X | X | X | X | X | X | X | X | X |  | X |  | X | X |  | X |  |  |  |

| | | | | 15a | 15b1 | 15b2 | 15b3 | 15c | 15d1 | 15d2 | 15e | | | | | | | | | | | | | | | | 29a | 29b | 29c | 29d1 | 29d2 | 29e1 | 29e2 | 29f1 | 29f2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12 | 13 | | | | | | | | | | 16a | 16b | 16c | 17 | 18 | 19 | 20 | 21 | 22 | | | | 26 | 27 | | | | | | | | | | |
| 11 | | | 14 | | | | | | | | | | | | | | | | | | 23 | 24 | 25 | | | 28 | | | | | | | | | |

| No. | Reference | Date | 554 | 1a | 1b1 | 1b2 | 1b3 | 1b4 | 1b5 | 1b6 | 1c | 1d1 | 1d2 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9a | 9b | 9c | 9d | 9e1 | 9e2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 068 | Skeen et al. 5,187,787 Providing Decoupling of Data | July 27, 1989 | | | | | | | | | | | | | | | | | | | | | | | | |
| 069 | TIBCO, CyberTIB and the Internet | 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 070 | Row et al. 5,355,453 Parallel I/O Network File Server | Oct. 13, 1992 | | | | | | | | | | | | | | | | | | | | | | | | |
| 071 | Jain et al. 5,377,327 Congestion Avoidance Scheme | April 22, 1988 | | | | | | | | | | | | | | | | | | | | | | | | |
| 072 | Almeida, Performance Analysis of a WWW Server | December 1996 | | X | X | X | X | X | X | X | X | | X | X | | | | | X | | | X | X | X | X | X | X |
| 073 | Dilley, Web Server Workload Characterization | December 18, 1996 | | X | X | X | | X | X | X | X | | X | X | | | | | X | | | X | X | X | X | X | X |
| 074 | Pacific Coast Software updates WebCatalog | April 12, 1996 | | | | | | | | | X | X | X | X | | | | | | | | | | X | | | |
| 075 | Starnine Previews WebSTAR (formerly MacHTTP) | Aug. 8, 1995 | | | | | | | | | X | X | X | | | | | | | | | | | X | | | |
| 076 | Raggett, A history of HTML | 1998 | | | | | | | | | | | | | | | | | | | | | | | | |
| 077 | Iyengar, An Analysis of Web Server Performance | August 1997 | | | | | | | | | | | | | | | | | | | | | | | | |
| 078 | Nelson, World Wided Web Implementation of the Langley | Sept. 1994 | | X | X | | | | | | | | X | | | | | | | | | | | X | X | | |
| 079 | FASTCGI: A High Performance Gateway Interface | May 2, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 080 | Stadelmann, UNIX Web Server Performance Analysis | December 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 081 | Foster 4,532,588 Electronic Document Distribution | Nov. 9, 1982 | | | X | X | | X | X | X | X | X | X | X | | X | X | | | | | | X | X | | X |
| 082 | Yu et al. 4,831,518 Multiprocessor Interrupt Rerouting | Aug. 26, 1982 | | | | | | | | | | | | | | | | | | | | | | | | |
| 083 | Donohoo 4,891,785 Method for Transferring Data Files | July 8, 1988 | | | X | X | | X | X | X | X | X | X | X | | X | X | | | | | | X | X | | X |
| 084 | Jordan 4,982,344 Accelerating Link Creation | May 18, 1988 | | | | | | | | | | | | | | | | | | | | | | | | |
| 085 | Griffen et al. 5,005,122 Arrangement With Cooperating | Sept. 8, 1987 | | | X | X | | X | X | X | X | X | X | X | | X | X | | | | | | X | X | | X |
| 086 | Harris et al. 5,050,071 Text Retrieval Method for Texts | Nov. 4, 1988 | | | | | | | | | | | | | | | | | | | | | | | | |
| 087 | Crookshanks 5,099,235 Method for Transferring Data | May 14, 1990 | | | | | | | | | | | | | | | | | | | | | | | | |
| 088 | Bonevento et al. 5,131,082 Command Delivery | June 9, 1989 | | | | | | | | | | | | | | | | | X | | | X | | | | |
| 089 | Row et al. 5,163,131 Parallel I/O Network File Server | Sept. 8, 1989 | | | X | X | X | | X | X | | X | X | X | | | | | | | | X | X | X | | X |
| 090 | Heizer 5,249,290 Method of and Apparatus for Operating | Feb. 22, 1991 | | | | | | | | | | | | | | | | | | | | | | | | |
| 092 | Newmark et al. 5,287,537 Distributed Processing | SAME REFERENCE AS 00C | | | | | | | | | | | | | | | | | | | | | | | | |
| 093 | Davidson et al. 5,307,490 Remote Procedure Calls | Aug. 28, 1992 | | | | | | | | | | | | | | | | | | | | | | | | |
| 094 | Kolnick 5,335,323 Computer Human Interface | SAME REFERENCE AS 00B | | | | | | | | | | | | | | | | | | | | | | | | |
| 095 | Civanlar et al. 5,581,552 Multimedia Server | May 23, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 096 | Yada 5,418,728 Computer Aided Design Support Device | Jan. 27, 1994 | | | | | | | | | | | | | | | | | | | | | | | | |
| 097 | Arlitt, Web Server: Workload Characterization | May 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 098 | Jacobson et al. 5,440,744 Implementing Server Functions | Nov. 15, 1994 | | | | | | | | | | | | | | | | | | | | | | | | |
| 099 | Chang et al. 5,600,644 Interconnecting LANs | Mar. 10, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 100 | Miller 5,475,819 Distributed Configuration Profile | Oct. 2, 1990 | | | | | | | | | | | | | | | | | | | | | | | | |
| 101 | Hitz et al. 5,485,579 Multiple Facility Operating System | Sept. 8, 1989 | | | | | | | | | | | | | | | | | | | | | | | | |
| 102 | Poole et al. 6,006,242 Dynamically Creating a Document | April 5, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 103 | Allard 6,067,559 Server Architecture for Segregation | April 23, 1998 | | | | | | | | | | | | | | | | | | | | | | | | |
| 104 | Yeager, Web Server Technology | 1996 | X | X | X | X | X | X | X | X | X | X | X | | | | | | | X | X | X | X | X | X | X |
| 105 | Schmidt, ISAPI: Writing Internet Information Server | Spring 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 106 | Witte et al. 5,655,120 Load Balancing in a Multi-Processor | Sept. 26, 1994 | | | | X | | | X | X | | | | | | | | | | | | | | X | | | |
| 107 | Hirosawa et al. 4,748,558 Load balancing control method | May 1, 1986 | | | | X | | | X | | | | | | | | | | | | | | | X | | | |
| 108 | Yamagishi 5,870,604 Job execution processor | July 10, 1995 | | | | X | X | | | | | | | | | | | | | | | | | X | | | |
| 109 | Eguchi et al. 4,839,798 Controlling job transfer | Nov. 6, 1985 | | | | X | | | X | | | | | | | | | | | | | | | X | | | |
| 110 | Allon et al. 5,539,883 Load balancing of network | April 20, 1994 | | | | X | | | X | | | | | | | | | | | | | | | X | | | |

| 9e3 | 9e4 | 9e5 | 9e6 | 9e7 | 9e8 | 9e9 | 9e10 | 10a | 10b | 10c | 11a | 11b1 | 11b2 | 11b3 | 11b4 | 11b5 | 11b6 | 11c | 11d | 335 | 1a | 1b1 | 1b2 | 1b3 | 1c1 | 1c2 | 1d | 1e1 | 1e2 | 2a | 2b | 2c | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X | X | X | X |  | X |  |  | X | X | X | X |  | X |  | X |  | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X |  |  | X |  |  |  |
| X | X | X | X | X |  |  | X | X | X | X | X |  | X |  | X | X | X | X | X |  |  | X |  |  | X |  | X | X | X |  | X | X | X | X | X |  | X |  |  |  |
|  |  |  |  |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  | X | X |  |  |  |  |  | X | X |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |
| X |  |  |  |  |  |  |  | X |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X | X | X | X | X | X | X | X | X | X | X | X |  | X |  | X | X | X | X | X |  |  | X |  | X | X | X | X |  | X | X | X | X | X |  | X | X | X |  |  |  |
| X | X | X | X | X | X | X | X | X | X | X | X |  | X |  | X | X | X | X |  | X |  | X |  | X | X | X |  | X | X | X | X | X | X |  | X |  |  |  |  |  |
| X | X | X | X | X | X | X | X | X | X | X | X |  | X |  | X | X | X | X | X | X |  | X |  | X | X | X |  | X | X | X | X | X | X |  | X |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |
| X | X | X | X |  | X | X | X | X | X | X | X |  | X |  | X | X | X | X |  | X |  | X | X | X |  | X | X | X |  | X | X | X | X | X | X |  | X |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X |  | X | X |  |  |
|  |  | X |  | X |  |  |  |  |  | X |  |  |  | X |  |  |  | X | X |  |  | X |  |  | X |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |
|  |  | X |  | X |  |  |  |  |  | X |  |  |  | X |  |  |  | X |  |  |  | X |  |  | X |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |
|  | X |  |  |  |  |  |  |  |  | X |  |  |  | X |  | X |  | X |  |  |  | X | X |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |
|  |  | X |  | X |  |  |  |  |  | X |  |  |  | X |  |  |  | X |  |  |  | X |  |  | X |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |
|  |  | X |  | X |  |  |  |  |  | X |  |  |  | X |  |  |  | X |  |  |  | X |  |  | X |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |

| 11 | 12 | 13 | 14 | 15a | 15b1 | 15b2 | 15b3 | 15c | 15d1 | 15d2 | 15e | 16a | 16b | 16c | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29a | 29b | 29c | 29d1 | 29d2 | 29e1 | 29e2 | 29f1 | 29f2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  | X | X | X | X |  | X | X |  | X | X | X | X |  |  | X |  |  |  |  |  |  |  |  |  | X | X |  |  |  |  | X | X |
|  |  |  |  | X | X |  |  |  | X |  |  | X | X | X | X |  |  | X | X |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  | X | X |
|  |  |  |  |  |  |  |  |  |  | X |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X | X |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  | X |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X |  |  |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  | X |  | X | X |  | X | X |  | X |
| X |  |  |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  | X |  | X | X |  | X | X |  | X |
| X |  |  |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  |  | X |  | X | X |  | X | X |  | X |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X |  |  | X | X | X |  | X |  | X | X |  | X | X | X | X |  | X | X | X | X |  |  |  |  |  |  | X | X |  |  | X |  | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X |  | X | X | X | X |  |  | X | X | X | X | X |
|  |  |  |  |  |  |  | X |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  | X |  |
|  |  |  |  |  |  |  | X |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
|  |  |  |  |  |  |  | X |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
|  |  |  |  |  |  |  | X |  | X |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |
|  |  |  |  |  |  |  | X |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |

| # | Reference | Date | 554 | 1a | 1b1 | 1b2 | 1b3 | 1b4 | 1b5 | 1b6 | 1c | 1d1 | 1d2 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9a | 9b | 9c | 9d | 9e1 | 9e2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 111 | Brisco, DNS Support for Load Balancing | April 1995 | | | | | | | | X | | | | | | | | | | | | | X | | | |
| 112 | Clark, DAWGS - A Distributed Computer Server | 1992 | | X | X | X | | X | X | X | | | | | | | | | | | | | X | | | X |
| 113 | Gwertzman, The Case for Geographical Push-Caching | May 1995 | | | | | | | | | | | | | | | | X | | | | | | | | |
| 114 | Graf, HP Task Broker: A Tool for Distributing | August 1993 | | | X | X | | X | X | X | X | | | | | | | | | | | | X | | | X |
| 115 | Hui, BALANCE - A Flexible Parallel Load Balancing | March 28, 1996 | | | X | X | | X | X | X | X | | | | | | | | | | | | X | | | X |
| 117 | Krueger, The Stealth Distributed Schedule | May 24, 1991 | | | | | | | | | | | | | | | | | | | | | | | | |
| 119 | Barak, A Distributed Load-balancing Policy | September 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 120 | Lutz, NHSE Review 1996 First Issue Cluster Management | May 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 121 | Shoja, A Distributed Facility for Load Sharing and Parallel | 1991 | | | | | | | | | | | | | | | | | | | | | | | | |
| 122 | Andresen, SWEB: Towards a Scalable World Wide Web | Sept. 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 123 | Zhou, Utopia: A Load Sharing Facility for Large | December 1993 | | | | | | | | | | | | | | | | | | | | | | | | |
| 124 | Yarborough, Providing mainframe access as a single | June 1994 | | | X | X | | X | X | X | X | | | | | | | | | | | | X | | | X |
| 125 | Amezcua et al. 4,604,710 Converting Data Processing | March 12, 1984 | | | | | | | | | | | | | | | | | | | | | | | | |
| 126 | Kollin et al. 4,774,655 Retrieving Information | Oct. 24, 1984 | | | | | | | | | | | | | | | | | | | | | | | | |
| 128 | Kwan, NCSA's World Wide Web Server | November 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 129 | Rozmanith et al. 5,179,652 Strong, Transmitting | Dec. 13, 1989 | | | | | | | | | | | | | | | | | | | | | | | | |
| 130 | Lagarde et al. 5,710,918 Method for Distributed Task | June 7, 1995 | | X | X | X | | X | X | X | | X | X | X | | X | | | | | X | X | X | X | X | X |
| 135 | Berners-Lee, World Wide Web lecture from Computing | 1992 | | | | | | | | | | | | | | | | | | | | | | | | |
| 137 | Andrews, Serving Information to the Web with Hyper-G | April 6, 1995 | | X | X | X | | | X | X | X | X | X | X | | X | X | X | X | | X | X | X | X | X | X |
| 138 | Kappe, A Scalable Architecture for Maintaining | Feb. 28, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 140 | Dar, Semantic Data Caching and Replacement | September 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 141 | Derler, The World Wide Web Gateway to Hyper-G | March 1995 | | X | X | X | X | X | X | X | X | X | X | X | | X | | | | | X | X | X | X | X | X |
| 142 | Dias, A Scalable and Highly Available Web Server | February 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 143 | Eichmann, Application Architectures for Web-Based | Dec. 11, 1995 | | | X | X | | X | X | | X | X | X | X | | X | | | | | | X | X | X | X | X |
| 144 | Eichmann et al., Integrating Structured Databases | May 27, 1994 | | | | | | | | | | | | | | | | | | | | | | | | |
| 145 | Kappe, Aspects of a Modern Multi-Media Information Sys | June 1991 | | X | X | X | X | X | X | X | X | X | X | X | | X | | | | | | X | X | X | X | X |
| 146 | Microsoft Ships Internet Information Server Free | Feb. 12, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 147 | Lonnroth - WOW source code | 1994 | | X | X | X | | X | X | X | X | X | X | X | | X | | | | | X | X | X | X | X | X |
| 150 | Leaf 5,754,772 Transaction Service Independent HTTP | March 26, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 151 | Sonderegger 5,761,499 Managing Globally Distributed | Dec. 21, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 152 | Microsoft Corp., Writing an ISAPI Filter (Nov. 1995) | November 1995 | | | X | X | X | X | X | X | | X | | | | | | | | | | | X | | | X |
| 153 | Oracle Web Server User's Guide (Release 1.0) | 1995 | | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | | X | X | X | X | X | X |
| 154 | Sheldon, Discover: A Resource Discovery System | April 1995 | | X | X | X | X | X | X | X | X | X | X | X | | X | | | | | | X | X | X | X | X |
| 157 | Lagarde et al. 5,721,908 Computer Network for WWW | June 7, 1995 | | X | X | X | | X | X | X | X | X | X | X | | X | | | | | X | X | X | X | X | X |
| 160 | Lindbo et al. 6,581,090 Internet Communication System | Oct. 14, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 161 | Scholl 5,742,762 Network Management Gateway | May 19, 1995 | | X | X | X | X | X | X | X | X | X | X | X | | X | | | | | X | X | X | X | X | X |
| 162 | Lagarde et al. 5,745,754 Sub-Agent for Fulfilling Requests | June 7, 1995 | | X | X | X | X | X | X | X | X | X | X | X | X | X | | | | | X | X | X | X | X | X |
| 163 | Kirsch 5,751,956 Method and Apparatus for Redirection | Feb. 21, 1996 | | X | X | X | X | X | X | X | X | X | X | X | | X | | | | | X | X | X | X | X | X |
| 164 | Chiu et al. 5,752,022 Creating a Hypertext Language | Aug. 7, 1995 | | X | X | X | | X | X | X | X | X | | | | | | | | | | X | X | X | | | X |
| 165 | Massai 4,937,784 Distributed Interactive Processing | June 2, 1987 | | | | | | | | | | | | | | | | | | | | | | | | |
| 166 | Bittinger et al. 5,754,774 Client/Server Communication | Feb. 15, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 167 | Graber 5,812,769 Redirecting a User To a New Location | Seot. 20, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |

| 9e3 | 9e4 | 9e5 | 9e6 | 9e7 | 9e8 | 9e9 | 9e10 | 10a | 10b | 10c | 11a | 11b1 | 11b2 | 11b3 | 11b4 | 11b5 | 11b6 | 11c | 11d | 335 | 1a | 1b1 | 1b2 | 1b3 | 1c1 | 1c2 | 1d | 1e1 | 1e2 | 2a | 2b | 2c | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | X | | | | | | | X | | | | | | | X | | | | | | X | | X | | | | | | X | | | | | | | | | |
| X | X | X | X | | | | | X | X | X | | X | X | | X | X | X | | | | | | X | | X | | | | | | X | X | | | | | | | | |
| X | X | X | X | | | | | X | X | X | | X | X | | X | X | X | X | | | | | X | | X | | X | | | | X | X | | | | | | | | |
| X | X | X | X | | | | | X | X | X | | X | X | | X | X | X | X | | | | | X | | X | | X | | | | X | X | | | | | | | | |
| | X | X | X | | | | | | X | X | | X | X | | X | X | X | X | | | | | X | | X | | X | | | | X | X | | | | | | | | |
| X | X | X | X | X | | X | X | X | X | X | X | X | X | | X | X | X | X | X | | X | X | X | | X | X | X | X | X | X | X | X | | X | X | X | X | X | | |
| X | | X | X | X | | X | X | X | | X | X | X | X | | | X | X | X | X | | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| X | X | | | | | X | X | X | X | X | | X | X | | X | | X | X | X | | X | X | | X | X | X | X | X | | | X | X | X | | X | | X | | | |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X |
| X | X | X | X | X | | X | X | | X | X | X | X | | X | X | X | X | X | | X | X | | X | X | X | X | X | | X | X | X | | | X | X | X | | |
| X | X | X | X | | X | | | X | X | | X | X | X | X | X | X | | | | | X | X | X | | | | X | X | | | X | X | | X | | | | | | |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X |
| X | X | X | X | X | | X | X | X | X | X | X | X | | X | X | X | X | X | | X | X | X | | X | X | X | X | X | | X | X | X | X | X | X | X | | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | | | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | | | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | | X | X | X | X | | | | | | | | |

| 11 | 12 | 13 | 14 | 15a | 15b1 | 15b2 | 15b3 | 15c | 15d1 | 15d2 | 15e | 16a | 16b | 16c | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29a | 29b | 29c | 29d1 | 29d2 | 29e1 | 29e2 | 29f1 | 29f2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  | X |  |  |  |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  | X |  |  | X |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  | X |  |
|  |  |  |  |  |  | X |  |  | X |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  | X |  |
|  |  |  |  |  |  | X |  |  | X |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  | X |  |
| X | X | X |  | X | X | X |  | X | X |  |  | X | X | X | X | X |  |  | X |  | X | X | X | X | X | X | X | X | X | X |  | X |  | X | X |
| X | X | X |  | X | X | X |  |  | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X |
| X |  | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X |  | X |  | X | X | X | X | X | X | X | X | X |
|  |  |  |  | X | X |  | X | X | X | X |  |  |  | X | X | X |  | X |  | X | X | X |  |  |  |  | X |  |  |  | X | X | X | X |
|  |  | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X |  | X | X | X |  | X | X | X | X | X | X | X | X | X | X | X |
| X | X |  |  | X | X | X |  | X | X | X | X | X | X | X | X |  |  | X |  | X | X | X | X | X |  |  | X |  |  | X | X | X | X | X | X |
|  |  |  |  | X | X | X | X | X |  |  |  | X | X |  |  |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  | X |  | X |  |
| X | X |  |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  | X | X | X | X | X | X | X | X | X |
| X | X | X |  | X | X | X |  | X | X | X | X | X | X | X | X | X |  | X |  | X | X | X | X | X | X | X | X | X | X | X |  | X |  | X | X |
|  |  | X |  | X | X | X | X | X | X | X | X | X | X | X | X |  | X |  |  |  | X |  |  |  | X | X | X | X | X | X | X | X | X | X |
| X | X | X |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |  |  | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
|  | X |  |  | X | X | X | X | X | X | X | X | X | X | X | X |  | X |  |  |  | X |  |  | X |  | X | X | X | X | X | X | X | X | X | X |
|  |  |  |  | X | X | X | X | X | X | X |  | X | X | X | X |  | X |  |  |  |  |  |  |  |  |  | X |  |  | X | X | X | X | X | X |

| No. | | Date | 554 | 1a | 1b1 | 1b2 | 1b3 | 1b4 | 1b5 | 1b6 | 1c | 1d1 | 1d2 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9a | 9b | 9c | 9d | 9e1 | 9e2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 168 | Lagarde et al. 5,761,663 Method for Distributed Task | June 7, 1995 | X | X | X | | X | X | X | X | X | X | X | | | | | | X | | X | X | X | X | X | X |
| 169 | Bookman et al. 5,761,673 Generating Dynamic Web Pages | Jan. 31, 1996 | X | X | X | X | X | X | X | X | X | X | X | | | | | | X | | X | X | X | X | X | X |
| 170 | Rogers et al. 5,793,964 Web Browser System | June 7, 1995 | | X | X | | X | X | X | X | X | X | X | | | | | | X | | X | X | X | X | X | X |
| 171 | Wesinger 5,778,367 Automated On-Line Information | Dec. 14, 1995 | X | | | | | | | | | | | | | | | | | | | | | | | |
| 172 | Microsoft SQL Server in the Active Internet | March 12, 1996 | X | X | X | X | X | X | X | X | X | X | X | X | | | | | | | X | X | X | X | X | X |
| 173 | Knudson, Application Development with Microsoft's | Feb. 6, 1996 | X | X | X | X | X | X | X | X | X | X | X | | X | | | | | | X | X | X | X | X | X |
| 175 | Shklar, InfoHarness: Use of Automatically Generated | June 1995 | X | X | X | X | X | X | X | X | X | X | X | X | | | | | | | X | X | X | X | X | X |
| 176 | Aryulanthu, A Portable Extensible and Efficient Implment | 1997 | | | | | | | | | | | | | | | | | | | | | | | | |
| 177 | Shklar, Providing Web Access to Legacy Data | Dec. 11, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 178 | Wesinger 5,778,367 Automated On-Line Information | Dec. 14, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 180 | Rogers et al. 5,701,451 Fulfilling Requests of a Web | June 7, 1995 | X | X | X | X | X | X | X | X | X | X | X | X | X | | | | | | X | X | X | X | X | X |
| 181 | Kremen et al. 5,706,434 Integrated Request-Response Sys | July 6, 1995 | | | | | | X | | | X | X | | X | | | X | X | | | | X | X | | | |
| 182 | Arias 5,724,514 Controlling the Transfer of Data | Nov. 25, 1994 | X | | | | | | | | | | | | | | | | | | | | | | | |
| 183 | Skeen et al. 5,557,798 Decoupling of Data Exchange | Dec. 21, 1990 | | | | | | | | | | | | | | | | | | | | | | | | |
| 184 | Cahoon, Performance Analysis of Distributed Information | June 7, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 185 | Webrex Technical Description 1 | 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 186 | Webrex Technical Description 2 | 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 187 | Webrex Technical Description 3 | 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 188 | Dickman, Two-Tier Versus Three-Tier Architecture | Nov. 13, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 189 | Schussel, Client/Server: Past, Present, Future (1995) | 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 190 | IT Solutions offers FREE Demonstration copies of WebRex | Aug. 29, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 191 | Edelstein, Unraveling Client/Server Architectures | May 1994 | | | | | | | | | | | | | | | | | | | | | | | | |
| 192 | Galagher, Choosing client-server architecture | Spring 1996 | X | X | X | X | X | | | | X | | | | | | | | | | X | X | X | X | X | X |
| 193 | Eckerson, Three-Tier Client/Server Architecture | January 1995 | | X | | X | X | X | X | X | X | X | X | | | X | X | | | | | X | X | X | X | |
| 194 | Popp 6,651,108 Generating Object-Oriented WWW Pages | Aug. 14, 1995 | X | X | X | X | X | X | X | X | X | X | X | X | X | | | | | | X | X | X | X | X | X |
| 195 | Popp 6,249,291 Managing Internet Transactions | Sept. 22, 1995 | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | | | | X | X | X | X | X | X |
| 196 | Ng et al., GSQL - a Mosaic-SQL gateway | December 1993 | X | X | X | X | X | X | X | X | X | X | X | X | | | | | X | | X | X | X | X | X | X |
| 197 | Wallis et al. 6,282,569 Name Server Computer | Aug. 27, 1994 | X | X | X | X | X | X | X | X | | | | | | | | | | | | | X | X | | X |
| 198 | Wessels, Intelligent Caching for World Wide Web Objects | April 28, 1995 | | | | | | | | | | | | | | | | | | X | | | | | | |

| 9e3 | 9e4 | 9e5 | 9e6 | 9e7 | 9e8 | 9e9 | 9e10 | 10a | 10b | 10c | 11a | 11b1 | 11b2 | 11b3 | 11b4 | 11b5 | 11b6 | 11c | 11d | 335 | 1a | 1b1 | 1b2 | 1b3 | 1c1 | 1c2 | 1d | 1e1 | 1e2 | 2a | 2b | 2c | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| 11 | 12 | 13 | 14 | 15a | 15b1 | 15b2 | 15b3 | 15c | 15d1 | 15d2 | 15e | 16a | 16b | 16c | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29a | 29b | 29c | 29d1 | 29d2 | 29e1 | 29e2 | 29f1 | 29f2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| X | X | X | | X | X | X | | X | X | X | | X | X | X | X | X | X | X | X | X | | | | X | | | X | X | X | X | | | X | X | X |
| X | X | | | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | | | | X | | | X | X | X | X | X | X | X | X | X |
| X | X | | | X | X | X | | X | X | X | | X | X | X | X | X | X | X | X | X | | | | X | | | X | X | X | X | | | X | X | X |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | | | X | X | X | X | X | X | X | X | X | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X |
| X | | | | X | X | X | X | | X | X | | X | X | X | X | | X | X | | X | | | | | | | | X | | | X | | | | X | X |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | | | X | X | X | X | X | X | X | X | X | X | X | X |
| | | | | | | | | X | | | | X | | X | | X | | X | | X | | | | | | | | X | | | X | | | X | X |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | X | X | X | X | | | | | | | | | | | | | | | | | | | | | | | | | | X | | |
| | | X | | X | X | X | X | | X | X | | X | X | X | X | | X | X | | X | X | | | | X | | X | X | X | X | X | | | X | X |
| X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | | | X | X | | X | X | X | X | X | X | X | X | X |
| X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | | X | X | X | X | X | X | X | X | X |
| X | X | | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | | X | X | X | X | X | X | X | X | X |
| | | | | X | X | X | X | | X | | | X | | X | X | | X | X | | | | | | | | | X | X | | | X | | X | | |
| | | | | | | | | | | | | | | | | | | | | | | | | X | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | | | 554 | 1a | 1b1 | 1b2 | 1b3 | 1b4 | 1b5 | 1b6 | 1c | 1d1 | 1d2 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9a | 9b | 9c | 9d | 9e1 | 9e2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 301 | Access - Spring 1995 issues | | | | | | | | | | | | | | | | | | | | | | | | | |
| 302 | ANSA Project | | | | | | | | | | | | | | | | | | | | | | | | | |
| 303 | Barta, Interface-parasite Gateways | Dec. 14, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 304 | Black, Objects to the rescue! or httpd: the next | 1994 | | | | | | | | | | | | | | | | | | | | | | | | |
| 305 | Boston, Interactive species distribution reporting | Sept. 14, 1994 | | | | | | | | | | | | | | | | | | | | | | | | |
| 306 | Bournellis, Jobs' next object is to tackle web | Aug. 22, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 307 | Brief History of ColdFusion | 1998 | | | | | | | | | | | | | | | | | | | | | | | | |
| 308 | Case Study - Python in a Commercial Environment | October 1997 | | | | | | | | | | | | | | | | | | | | | | | | |
| 309 | CGI Specification | | | | | | | | | | | | | | | | | | | | | | | | | |
| 310 | Choquier et al. 5,774,668 OnLine Service in Which Gateway | June 7, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 311 | ColdFusion/J-Run (1995) | | | | | | | | | | | | | | | | | | | | | | | | | |
| 312 | Comaford, Stick with NeXT for Next Season | Oct. 16, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 313 | Couloris, Distributed Systems, Concepts and Designs | 1994 | | | | | | | | | | | | | | | | | | | | | | | | |
| 314 | DBMS - December 1995 Database and Internet (11/9/95) | Nov. 9, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 315 | Dossick, OzWeb: Interfacing the Oz System to the WWW | Dec. 20, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 316 | Dossick, WWW Access to Legacy Client/Server Apps | 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 317 | Duggan, Steve Jobs on CNN's Moneyline demoing | | | | | | | | | | | | | | | | | | | | | | | | | |
| 318 | Edwards, Object Wrapper | | | | | | | | | | | | | | | | | | | | | | | | | |
| 319 | Edwards, Object Wrapping for the WWW | May 23, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 320 | Email from John Landwehr to Apache Foundation | Sept. 6, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 321 | FASTCGI: A High Performance Gateway Interface | May 2, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 322 | FastCGI: A High Performance Web Server Interface | April 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 323 | FastCGI Developers Kit | June 11, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 324 | FastCGI: Understanding FastCGI Application Performance | June 10, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 325 | FastCGI.com (1995-1996) | | | | | | | | | | | | | | | | | | | | | | | | | |
| 326 | FastCGI source code | | | | | | | | | | | | | | | | | | | | | | | | | |
| 327 | FastCGI collectively (321-325) | | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| 328 | Fifth Int'l World Wide Web Conference (May 6-10, 1996) | | | | | | | | | | | | | | | | | | | | | | | | | |
| 329 | Grady, NeXT Computer joins Internet bandwagon | Aug. 14, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 330 | Goldszmidt, Load Distribution for Scalable Web Servers | October 1997 | | | | | | | | | | | | | | | | | | | | | | | | |
| 331 | Hoffman, Wall Street firms are bullish on NeXT | Oct. 9, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 332 | Hopkins, Steve Jobs Displays Possible Future of WWW | Sept. 7, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 333 | IBM's Web Objects Manager (WOM) (1994-1996) | | | | | | | | | | | | | | | | | | | | | | | | | |
| 334 | Ingham, WebObjects Moving Towards an Object-Oriented | | | | | | | | | | | | | | | | | | | | | | | | | |
| 335 | Internet Systems Enterprise Product Guide | March 29, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 336 | Karpinski, NeXT's WebObjects speeds design and upkeep | | | | | | | | | | | | | | | | | | | | | | | | | |
| 337 | Lewis 5,355,472 Substituting Tags for Non-Editable Data | Nov. 19, 1990 | | | | | | | | | | | | | | | | | | | | | | | | |
| 338 | Louis, NeXT Shows Off Its WebOjects | October 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 339 | Mallery, The Common LISP Hypermedia Server | May 4, 1994 | | | | | | | | | | | | | | | | | | | | | | | | |
| 340 | Mamou, O2 Gateway (Oct. 6, 1994) | | | | | | | | | | | | | | | | | | | | | | | | | |
| 341 | Nash, Next?  Object Tools for Web | August 25, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 342 | NCSA Mosaic Common Client Interface (version 1.1) | March 31, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |

| 9e3 | 9e4 | 9e5 | 9e6 | 9e7 | 9e8 | 9e9 | 9e10 | | | | 11a | 11b1 | 11b2 | 11b3 | 11b4 | 11b5 | 11b6 | 11c | 11d | 335 | 1a | 1b1 | 1b2 | 1b3 | 1c1 | 1c2 | 1d | 1e1 | 1e2 | | | 2a | 2b | 2c | 3 | 4 | 5 | 6 | 7 | 8 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 10a | 10b | 10c | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | 9 | 10 |

| | | | | 15a | 15b1 | 15b2 | 15b3 | 15c | 15d1 | 15d2 | 15e | | | | | | | | | | | | | | | 29a | 29b | 29c | 29d1 | 29d2 | 29e1 | 29e2 | 29f1 | 29f2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12 | 13 | | | | | | | | | | 16a | 16b | 16c | 17 | 18 | 19 | 20 | 21 | 22 | | | | 26 | 27 | | | | | | | | | |
| 11 | | | 14 | | | | | | | | | | | | | | | | | | 23 | 24 | 25 | | | 28 | | | | | | | | |

A grid of empty cells follows, with one row filled with X marks (highlighted in red) spanning all columns.

| | | | 554 | 1a | 1b1 | 1b2 | 1b3 | 1b4 | 1b5 | 1b6 | 1c | 1d1 | 1d2 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9a | 9b | 9c | 9d | 9e1 | 9e2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 343 | Netscape LiveWire Press Release 9/19/95 | Sept. 19, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 344 | Netscape Server Technology (1995) | | | | | | | | | | | | | | | | | | | | | | | | | |
| 345 | NeXT Computer, Inc. - Questions and Answers | Aug. 14, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 346 | NeXT Computer, Inc., Test Drive NeXT WebObjects | Dec. 7, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 347 | NeXT Demonstrates Real Solutions for the Web | Jan. 30, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 348 | NeXT Software, Inc., NeXT announces WebObjects | Feb. 7, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 349 | NeXT Software, Inc., NeXT Software, Inc. invites you | March 2, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 350 | NeXT Software, Inc., WebObjects Enterprise Web | January 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 351 | NeXT's $8 Million Order (Oct. 9, 1995) | Oct. 9, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 352 | NeXT's WebMania Event Available Live Via RealAudio | Jan. 30, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 353 | NeXT's WebObjects Delivers the Power of Objects | Aug, 14, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 354 | NeXT Documents collectively (345-353) | | | | | | | | | | | | | | | | | | | | | | | | | |
| 355 | OpenMarket FastCGI 1.0 Programmer's Guide 4/15/96 | April 15, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 356 | Osterhaug (ed.) Guide to Parallel Programming | 1989 | | | | | | | | | | | | | | | | | | | | | | | | |
| 357 | Parks et al, 5,093,911 Storage and Retrieval System | Sept. 14, 1989 | | | | | | | | | | | | | | | | | | | | | | | | |
| 358 | Parsons, Interview: Next Computer's Landwehr Talks | Aug. 15, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 359 | Patrizio, NeXT tunes D'OLE Technology | Aug. 21, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 360 | Perrochon, IDLE: Unified W3-Access to Interactive | April 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 361 | Perrochon, On the Integration of Legacy Information Sys | September 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 362 | Perrochon, Table from On the Integration of Legacy | September 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 363 | Pitkin 5,341,477 Broker for Computer Network Server | February 24, 1989 | | | | | | | | | | | | | | | | | | | | | | | | |
| 364 | Rosenberg et al. 5,740,430 Server-Independent Caching | Nov. 6, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 364a | Rowe, Building Internet Database Servers with CGI | Jan. 15, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 365 | Speech and Demonstration of WebObjects by NeXT | | | | | | | | | | | | | | | | | | | | | | | | | |
| 366 | Spinning Objects for the Web; From Desktop to WWW | Aug. 14, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 367 | Stanford-Clark, Atlanta Olympics WOMplex | March 1997 | | | | | | | | | | | | | | | | | | | | | | | | |
| 368 | Sun Microsystems, The Solaris Network Cache | | | | | | | | | | | | | | | | | | | | | | | | | |
| 369 | Taft, Object technology hits mainstream markets | Sept. 4, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 370 | Think Research: Managing the Web | | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 371 | Trevor, Exorcising daemons: A modular and lightweight | March 8, 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 372 | Usenix improving Web Server performance | | | | | | | | | | | | | | | | | | | | | | | | | |
| 373 | Web + DBMS Integration | 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 374 | WebObjects software | | | | | | | | | | | | | | | | | | | | | | | | | |
| 375 | Wingfield, NeXT plans object-oriented app development | Aug. 21, 1995 | | | | | | | | | | | | | | | | | | | | | | | | |
| 376 | WWW-DBMS Gateways (Feb. 1996) | February 1996 | | | | | | | | | | | | | | | | | | | | | | | | |
| 377 | Yang, An Architecture for Integrating OODBs with WWW | | | | | | | | | | | | | | | | | | | | | | | | | |
| 378 | Yao, FORMANAGER: An Office Forms Management | | SAME REFERENCE AS 00F | | | | | | | | | | | | | | | | | | | | | | | |

| 9e3 | 9e4 | 9e5 | 9e6 | 9e7 | 9e8 | 9e9 | 9e10 | 10a | 10b | 10c | 11a | 11b1 | 11b2 | 11b3 | 11b4 | 11b5 | 11b6 | 11c | 11d | 335 | 1a | 1b1 | 1b2 | 1b3 | 1c1 | 1c2 | 1d | 1e1 | 1e2 | 2a | 2b | 2c | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X | X | X | X | X | X | X | X | | | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | | | | | | | | | |

| | | | 15a | 15b1 | 15b2 | 15b3 | 15c | 15d1 | 15d2 | 15e | | 16a | 16b | 16c | 17 | 18 | 19 | 20 | 21 | 22 | | | | 26 | 27 | | 29a | 29b | 29c | 29d1 | 29d2 | 29e1 | 29e2 | 29f1 | 29f2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12 | 13 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 11 | | | 14 | | | | | | | | | | | | | | | | | 23 | 24 | 25 | | | 28 | | | | | | | | | | |

| | | | 554 | 1a | 1b1 | 1b2 | 1b3 | 1b4 | 1b5 | 1b6 | 1c | 1d1 | 1d2 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9a | 9b | 9c | 9d | 9e1 | 9e2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 400 | Amstein et al 5,793,966 Creation and Maint (dyn content) | | | | | | | | | | | | | | | | | | | | | | | | |
| 401 | Anand et al. 5,692,181 Generating rpts (SQL, ODBC, OLE) | | | X | X | X | X | X | X | X | X | X | X | | | | | | | | X | X | X | X | X | X |
| 402 | Blumer 5,732,219 Remote Editing of Computer Files | | | | | | | | | | | | | | | | | | | | | | | | | |
| 403 | Civanlar 5,581,552 Multimedia Server (server farms) | | | | | | | | | | | | | | | | | | | | | | | | | |
| 404 | Doyle et al. Distributed hypermedia | | | | | | | | | | | | | | | | | | | | | | | | | |
| 405 | Eilert et al. 5,537,542 Server Workload (load balancing) | | | | | | | | | | | | | | | | | | | | | | | | | |
| 406 | Erkes, Architecture for passing off content creation | | | | | | | | | | | | | | | | | | | | | | | | | |
| 407 | Gaines, Dynamic HTML, dynamic document generation | | | | | | | | | | | | | | | | | | | | | | | | | |
| 408 | Graber et al. 5,812,769 Redirecting a user to a new location | | | | | | | | | | | | | | | | | | | | | | | | | |
| 409 | Judson 5,572,643 Web Browser With Dynamic Display | | | | | | | | | | | | | | | | | | | | | | | | | |
| 410 | Judson 5,737,619 World Wide Web Browsing | | | | | | | | | | | | | | | | | | | | | | | | | |
| 411 | Kirsch 5,870,546 Redirection of Server External Hyper-link | | | | | | | | | | | | | | | | | | | | | | | | | |
| 412 | Levergood et al. 5,708,780 Internet server access (redirec | | | | | | | | | | | | | | | | | | | | | | | | | |
| 413 | Logan 5,781,909 Kiosk Management (interception) | | | | | | | | | | | | | | | | | | | | | | | | | |
| 414 | Nguyen et al. 5,737,592 Relational DB (tiered architecture) | | | | | | | | | | | | | | | | | | | | | | | | | |
| 415 | Smyk 5,751,961 Translating logical addresses (server +DB) | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | **References Listed in '335 and '554 Reexamination Requests Not Listed Above** | | | | | | | | | | | | | | | | | | | | | | | | | |
| 501 | Installation and Planning Guide for Microsoft IIS | | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| 502 | ODBC Web Database Add-on for Microsoft IIS Beta | | | | | | | | | | | | | | | | | | | | | | | | | |
| 503 | Montinola, The Oracle WebServer: A Technical Discussion | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | **Oracle References** | | | | | | | | | | | | | | | | | | | | | | | | | |
| 601 | What Is Horizon? | 1996 | | X | X | X | X | X | X | X | X | X | X | X | | | | | | | X | X | X | X | X | X |
| 602 | Andresen et al. SWEB | April 15, 1996 | | X | X | X | X | X | X | X | X | X | X | X | | | | | | | X | X | X | X | X | X |
| 603 | Vega, et al., Collecting and Serving Information | April 22, 1996 | | X | X | X | X | X | X | X | X | X | X | X | | | X | X | | | | X | X | X | X | X | X |
| 604 | Oracle Web Server User's Guide (Release 2.0.2) | March 1996 | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | | X | X | X | X | X | X |
| 605 | Oracle Web Server 2.0 Technical Note | March 1996 | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X |
| 606 | Mosedale et al, "Administering Very High Volume …" | | | | | | | | | | | | | | | | | | | | | | | | | |
| 607 | Introduction to Cold Fusion | May 23, 1995 | | X | X | X | X | X | X | X | X | X | X | X | | | X | | | | | X | X | X | X | X | X |

| 9e3 | 9e4 | 9e5 | 9e6 | 9e7 | 9e8 | 9e9 | 9e10 | 10a | 10b | 10c | 11a | 11b1 | 11b2 | 11b3 | 11b4 | 11b5 | 11b6 | 11c | 11d | 335 | 1a | 1b1 | 1b2 | 1b3 | 1c1 | 1c2 | 1d | 1e1 | 1e2 | 2a | 2b | 2c | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | | | | | X | X | X |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| 9e3 | 9e4 | 9e5 | 9e6 | 9e7 | 9e8 | 9e9 | 9e10 | 10a | 10b | 10c | 11a | 11b1 | 11b2 | 11b3 | 11b4 | 11b5 | 11b6 | 11c | 11d | 335 | 1a | 1b1 | 1b2 | 1b3 | 1c1 | 1c2 | 1d | 1e1 | 1e2 | 2a | 2b | 2c | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | | | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | | | X | X | | | |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | X | X | X | X | X | X | X | X | X | X | X | X | | X | | | X | X | X |

| | | | | 15a | 15b1 | 15b2 | 15b3 | 15c | 15d1 | 15d2 | 15e | | | | | | | | | | | | | | | | | 29a | 29b | 29c | 29d1 | 29d2 | 29e1 | 29e2 | 29f1 | 29f2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12 | 13 | | | | | | | | | | 16a | 16b | 16c | 17 | 18 | 19 | 20 | 21 | 22 | | | | 26 | 27 | | | | | | | | | | | |
| 11 | | | 14 | | | | | | | | | | | | | | | | | | 23 | 24 | 25 | | | 28 | | | | | | | | | | |

# Exhibit 5

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

Exhibit 6

# IN THE UNITED STATES DISTRICT COURT
## OF THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **EPICREALM, LICENSING, LLC** | § | |
| | § | |
| v | § | **No. 2:05CV163** |
| | § | |
| **AUTOFLEX LEASING, INC., et al.** | § | |

| | | |
|---|---|---|
| **EPICREALM, LICENSING, LLC** | § | |
| | § | |
| v | § | **No. 2:05CV356** |
| | § | |
| **FRANKLIN COVEY CO., et al.** | § | |

## REPORT AND RECOMMENDATION
## REGARDING CLAIM CONSTRUCTION

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, the above-entitled and numbered cause of action was referred to the undersigned for pretrial purposes. Claim construction arguments in cause numbers 2:05-CV-163 and 2:05-CV-356 were combined, and Defendants submitted joint briefing. The Court conducted a claim construction hearing on July 13, 2006. This Report and Recommendation construes certain terms in United States Patent Nos. 5,894,554 ("the '554 Patent) and 6,415,335 (the '335 Patent).

1

EPIC392643

# I. BACKGROUND

The '554 Patent issued on April 13, 1999. The '335 Patent issued on July 2, 2002 and is a divisional application of the '554 Patent. The '554 Patent and the '335 Patent share a common specification.[1] The patents generally relate to managing Web sites. More particularly, the patents relate to managing dynamic Web page generation. Col. 2:15-23. The patents distinguish some Web pages as having a static nature that remains static until manually modified and other Web pages as being dynamic Web pages which contain content that is generated dynamically by retrieving the necessary requested data and generating the requested Web page dynamically. Col. 1:38-55. The patents describe prior art Web servers as handling both static and dynamic Web page requests. Col. 3:64 - Col. 4:37; Figures 2-3. The techniques described in the patents include routing a Web request from the Web server to a Page server. The Page server may than process the request, and the Web server is released to process other requests. Col. 2:20-35; Col. 4:54 - Col. 6:32. In this manner, dynamic Web pages may be generated by the Page servers.

Some of the claim construction disagreements involve common themes. For example, in general the Plaintiff construes various terms so that Web servers and Page servers do not have to be separate machines while the Defendants seek constructions that would include a separate machine concept. The Plaintiff also seeks constructions that do not include the concept of Uniform Resource Locators (URLs) while the Defendants add the term URL to some of the constructions they seek. Other conflicting claim construction positions are more specific to individual terms that are in dispute.

---

[1] References to the specification will refer to the column and line numbers of the '554 Patent.

2

EPIC392644

## II.  APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (*quoting Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope.  *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  This intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.  *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms.  *Phillips*, 415 F.3d at 1314.  First, a term's context in the asserted claim can be very instructive.  *Id*.  Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent.  *Id*.  Differences among the claim terms can also assist in understanding a term's meaning.  *Id*.  For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation.  *Id*. at 1314–15.

Claims "must be read in view of the specification, of which they are a part."  *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single

3

EPIC392645

best guide to the meaning of a disputed term.'" *Id.* (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (*quoting C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term

4

EPIC392646

in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

The patents in suit also contain means-plus-function limitations that require construction. Where a claim limitation is expressed in "means plus function" language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112, ¶ 6. *Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, 35 U.S.C. § 112, ¶ 6 mandates that "such a claim limitation 'be construed to cover the corresponding structure . . . described in the specification and equivalents thereof.'" *Id.* (citing 35 U.S.C. § 112, ¶ 6). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id.*

Construing a means-plus-function limitation involves multiple inquiries. "The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.* A "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* Moreover, the focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id.*

EPIC392647

## III. DISCUSSION

**A.    Disputed Claim Terms**

1.    "Web Page"

"Web page" is utilized in asserted claims 1, 3, 6, 7, 9, and 11 of the '554 Patent and 1, 4, 7, and 8 of the '335 Patent.    The Plaintiff asserts that "Web page" does not need construction. Alternatively, if construed, the Plaintiff asserts that the proper construction of the term is "content displayable through a Web browser."  The Defendants assert that the terms should be construed as "an HTML document accessible through a URL."

The Court first notes that the Plaintiff's original briefing expressed concern that the Defendants construction implies that dynamically generated Web pages are not included within the term "Web page."  The Court finds this concern somewhat unfounded, and it is noted that the Defendants clearly referred to "Web page" in their briefing and oral argument as encompassing both static and dynamic Web pages.

The other assertions by the parties primarily revolve around two issues, the inclusion of terms "HTML" and "URL" in the construction.  The Plaintiff argues that the term "content" is utilized in the specification at least twice to describe what is displayed on a Web page. Col. 1:47-51; Col. 7:23-26.  Further, the Plaintiff points out that in the Defendants' own briefing Web pages are referred to as containing content. Defendants' Brief at 11-12.  The Plaintiff further asserts that the Defendants are also attempting to read in limitations from the specification and that such a construction would exclude documents formatted in other formats such as SGML, XHTML, XML, and JPG.

The Defendants state that HTML is a software language and argue that as described within the specification HTML documents are what are sent back as Web pages.  Col. 1:18-22; Figures 3

6

EPIC392648

and 5.  The Defendants also cite a Microsoft Press Computer Dictionary definition which states that "A Web page consists of an HTML file…"  Defendants' Brief at 9.  The Defendants further assert that "content" in the specification refers to information included in a Web page and that such content itself does not form a Web page.

The Court notes that the specification does appear to consistently refer to the HTML language and does not mention other software languages.  However, the Defendant does not identify persuasive support within the specification that the invention must be limited to only one type of software language.  Moreover, Defendants have not persuaded the Court that in light of the specification one skilled in the art would assume a Web page as referred to in the patents could only be generated with the HTML language.  Further, upon review of the whole specification and claims, with respect to Web pages the described concepts are not related to the intricacies of what particular programming languages are used to display a Web page but rather merely the higher level differentiation of static pre-existing Web pages verse dynamically generated Web pages.  In these circumstances, the Court finds it improper to incorporate the limitation of HTML within the more general term Web page that is utilized in the claims themselves.

With regard to the URL concept, the Plaintiff asserts that the Defendants' definition adds additional complexity to the claim construction as the meaning and scope of "accessible through a URL" could itself require construction.  Further, citing the extrinsic evidence that the Defendants themselves put before the Court, the Plaintiff argues that it is known that when a Web browser sends a request what is actually sent does not match what is commonly known as a full URL.  In oral argument the Plaintiff asserted that the Defendants' extrinsic evidence shows a URL as "http_URL ="http:" "//" host [ ":" port ] [ abs_path] thus requiring four components: a protocol (HTTP), a host,

EPIC392649

a port and an absolute path.  Further the Plaintiffs argue that this same extrinsic evidence shows that a request most commonly is structured for example "GET / pub / WWW / TheProject.html HTTP / 1.0"  The Plaintiff asserts that this also emphasizes the concern over the ambiguity of the meaning of "accessible through a URL."

The Defendants turn to the specification, which includes the statement "[a] URL is a Web address that identifies the Web page and its location on the Web."  Col. 1:30-33.  The Defendants also note the language that states "[w]hen the appropriate Web site receives the URL, the Web page corresponding to the requested URL is located…."  Col. 1:33-34.  Further, the Defendants point to other examples in the specification, such as Figure 3, which refer to the Web browser sending the URL request.  At oral argument, the Defendants also stated that what is sent by a Web browser does include the URL information.

The arguments of the parties highlight some of the concerns the Court has with the inclusion of the term URL.  A definition of the meaning of URL within the usage of the patent would further be necessitated as URL is alternatively referred to as "what is examined by the Web browser," a URL request is received by the Web server, and a URL request can be sent to a page server.  Col. 4:13-14; Col. 8:28-32; Col. 8:38-39.  The specification does not make clear what is the particular structure and content that is meant by the use of the term "URL" at each of these stages of the process.  Again, as with the HTML term, this is not surprising as the specification and claims as a whole do not focus on the particular type of request that is made or the particular structure/content of a request as it processed through the system beyond the static and dynamic distinction discussed above.  Further, to add the term "accessible" to the construction would necessitate further claim construction as to what "accessible" means.  As described within the specification, a Web page is

8

EPIC392650

a mechanism through which static and dynamic content may be displayed.    The particular addressing mechanism at each step of the processing of a dynamic Web page is not noted in the specification to be a requirement or of particular importance to the claimed invention.  An inclusion of the term URL would improperly incorporate limitations from the specification for the term Web page which has a meaning that is adequately described within the full context of the specification.[2]

**Thus, the Court construes "Web page" to mean "Web content displayable through a Web browser."**

2.    _Request_

"Request" is utilized in asserted claims 1, 9, 11 of the '554 Patent and 1, 15, and 29 of the '335 Patent.   The Plaintiff asserts that the proper construction of "request" is "a message that asks for content."   The Defendants assert that the term should be construed as "a message containing a URL that asks for a Web page specified by the URL."

The Court first notes that the term "request" generally appears in the claims in different circumstances.  In some claims (for example claim 1 of the '554 Patent), request is first utilized with relation to "a dynamic Web page generation request" and multiple references are then made to "said request."  Such claims also use the term "other requests" which imply a request different from "said request."   Other claims (for example claim 15 of the '335 Patent) begin with the general use of "a request" but later refer to "dynamically generating a page in response to said request."    These claims also refer to "other requests."   As noted in the specification, a request can refer to static Web

---

[2] Additional discussion regarding the inclusion of URL limitations is also provided below with regard to the term "request."

EPIC392651

pages (such as a static document) or dynamic Web pages (such as a Web page dynamically generated by an application).  Col. 1:38-56, Col. 4:16-32   Thus, in its general use, request is not limited to dynamic or static requests.  It is also noted that both types of claims consistently refer to either "Web page" generation or "page" generation.  The specification uniformly refers to pages in the context of Web pages.   Thus, it is not unreasonable that in light of the consistent specification one would interpret "requests" as relating to requests for Web pages.

The primary point of distinction between the proposed constructions relates to inclusion of "URL" in the construction of request.  The specification notes that "a Web browser allows a Web client to request a particular Web page from a Web site by specifying a Uniform Resource Locator (URL).  A URL is a Web address that identifies the Web page and its location on the Web."  Col. 1:29-32

The Defendants cites numerous places in the specification text in which "URL request" is utilized to refer to what is requested.  The Plaintiff asserts that a request may be made at multiple points, such as shown in Figure 4 between the Web client and Web server, between the Web server and the Dispatcher and between the Dispatcher and the Page servers.   The Plaintiff further argues that once a message is received by a Web server a full URL is not utilized subsequently, such as by Page servers.

The Defendants counter by noting numerous specification citations to the term "URL request" including "route the URL request to a Page server" and "the dispatcher sends the URL request to an appropriate Page server."  Col. 6:9-10, Col. 8:38-39, *See* Defendants' Brief at 13-14. The Plaintiff responds that there is no teaching in the specification that a page server utilizes a URL.

10

EPIC392652

Moreover, the Plaintiffs assert that it would be illogical for a request provided to the page server to utilize a URL as such address would refer to the Web server.

The Court notes that within the claims "request" is used in context of multiple steps of the page generation process.  For example, within claim 1 a request may be provided to a Web server while "said request" is also received by a Page server.  The specification provides varied and not always consistent uses of the terms "request" and "URL request."  As noted above, URL request is often utilized.  However, the more general term "request" is also often utilized. Col. 2:1-12; Col. 2:18-35; Col. 4:33-53; Col. 5:8-59; Col. 6:20-32; Col. 7:5-6.  In at least two of these instances, language stating "requests or 'hits'" is utilized.  Col. 4:38-39; Col. 7:5-6. Further, the Defendants have not shown within the specification that a Page server utilizes a URL.  Thus, even when "URL request" is provided in the specification it is not clear that such request is required to contain a URL or is merely a request generated from an initial URL provided at a Web client.  To require "request" to include a URL would thus include limitations that the specification does not clearly support and clearly require.

The remaining dispute between the parties relates to the use of "content" verse "Web page." This dispute relates to the underlying meaning of the term Web page as discussed above and thus does not need to be re-addressed.  As the Court has noted, the context of the patent is uniformly directed towards Web page requests.  Under the guidance provided in *Phillips,* it is appropriate when viewing the specification and the language of the claims themselves to limit "request" to Web page applications.  **Thus, the Court construes "request" to mean "a message that asks for a Web page" (with the term Web page having the construction provided herein)**

11

EPIC392653

3.     "Page Server"

"Page server" is utilized in asserted claims 1, 4, 7, and 9-11 of the '554 Patent and 1, 2, 5, 8, 15-16, 19, 22 and 29 of the '335 Patent. The Plaintiff asserts that the proper construction of "page server" is "a processing system operable to receive a request and dynamically generate content in response to the request." The Defendants assert that the term should be construed as "page-generating software that generates a dynamic Web page on a machine separate from the Web server machine." In the claim construction Oral Argument, the Plaintiff agreed to the use of "page-generating software" in place of the term "a processing system" as previous proposed by the Plaintiff. The differences between the parties with regard to the use of "content" verse "Web page" are rooted in the basic dispute over the meaning of Web page as discussed above. Both parties include the concept of dynamic generation in their proposed constructions.

In the post oral hearing briefing, the parties each acknowledged that the primary dispute regarding the construction of "page server" is whether the Page server has to be on a machine separate from the Web server. As discussed below, the Court agrees with the Plaintiff with regard to this point of dispute.

Each party points to the specification to support their asserted position. The Plaintiff asserts that the specification includes statements that indicate that the Page server could operate on the same machine as the Web server. In particular, the Plaintiffs have pointed to passages which state:

FIG. 1 illustrates a typical computer system 100 in which the present invention operates. Col. 2:66-67.

The preferred embodiment of the present invention is implemented as a software module, which may be executed on a computer system such as computer system 100 in a conventional manner. Col. 3:55-58.

12

EPIC392654

Figure 1 illustrates a computer system having a processor, bus, memory and mass storage. Further, it is stated that "the preferred embodiment of the present invention" may be implemented on a personal computer or alternatively a workstation. Col. 2:67-Col. 3:5. The Plaintiff asserts that this language is consistent with the specification as a whole by asserting that the specification describes a partitioned software architecture in which in some embodiments the software modules may all reside on the same machine and in other embodiments the software modules may reside on different computers.

The Plaintiff also points to a passage that describes an embodiment that does not have the advantage of "off-loading the processing of Web requests from the Web server machine" to a separate machine. Col. 5:26-36. However, the Court notes that this passage makes specific reference to the division between a Web server and a Dispatcher, and it is not clear in this passage alone that the Page server is also included in this use of a single machine.

The Defendants argue that the specification describes a distinction over the prior art that amounts to an explicit characterization of the invention that disclaims the prior art. *See SciMed Life Sys. V. Advanced Cardiovascular Sys.*, 242 F.2d 1337, 1343 (Fed. Cir. 2001). In particular, the Defendants point to a passage of the specification that describes the multi-threading techniques of prior art Web servers. Col. 4:32-53. This passage concludes with "[t]he claimed invention addresses this need by utilizing a partitioned architecture to facilitate the creation and management of custom Web sites and servers." The Defendants assert that this clearly demonstrates that the purpose of the invention was to partition the various modules on separate machines. As to the passages cited by the Plaintiff, the Defendants assert those passages do not describe the entirety of the claimed invention. The Plaintiff asserts that the passage cited by the Defendants is directed toward the Web

13

EPIC392655

site management "need" recited in the passage, and this need is addressed by a partitioned architecture.

The parties have thus each pointed to somewhat conflicting passages of the specification to support their positions.  The passages cited by the Plaintiff establish that there is not a clear disavowal within the specification of the use of a partitioned software architecture on a single machine.  The Defendants do correctly point to cases which stand for the proposition that when the specification makes clear that the invention does not include a particular feature than that feature is deemed to be outside of the reach of the claims of the patent.  Defendants' Joint Sur-Reply, p. 8.  However, in the specification before this Court, the specification does not make clear that the invention must only be operated on separate machines.

**The Court construes "page server" to be "page-generating software that generates a dynamic Web page."**

4.    <u>Web Server</u>

"Web Server" is utilized in asserted claims 1 and 11 of the '554 Patent and 1-2 of the '335 Patent.  The Plaintiff asserts that the proper construction of "Web server" is "a processing system capable of processing an HTTP request and producing a response to such a request."  The Defendants assert that the terms should be construed as "a machine running a Web server executable capable of storing, locating, and returning Web pages in response to Web client requests."  In the claim construction Oral Argument, the Plaintiff stated that it would agree to language including "software" in place of the Plaintiff's originally proposed "system" language similar to the Plaintiff's agreement with regard to "page server."

14

EPIC392656

The focus point of the dispute between the parties is whether the term "Web server" requires a machine or whether the term may merely represent software or a combination of the two. Both the Plaintiff and Defendants cite conflicting extrinsic evidence to support their positions in the form of dictionaries, industry guides, and protocols. Some of the Plaintiff's extrinsic evidence includes citations to extrinsic evidence first brought before the Court by the Defendants. The conflicting extrinsic evidence presented by the parties fits the rationale presented in *Phillips* regarding the cautions that should be considered relating to such evidence.

Looking to the specification, the Plaintiff points to passages in which "Web server" is not used to describe a machine. In particular, the Plaintiff points to the statement in the specification that:

> The preferred embodiment of the present invention is implemented as a software module, which may be executed on a computer system such as computer system 100 in a conventional manner. Col. 3:55-58.

The Plaintiff also highlights the following passage:

> This embodiment is appropriate for Web servers such as Netsite™ from Netscape, that support such extensions. A number of public domain Web servers, such as NCSA™ from the National Center for Supercomputing Applications at the University of Illinois, Urbana-Champaign, however, do not provide support for this type of extension. Thus, in an alternate embodiment, Interceptor 400 is an independent module, connected via an 'intermediate program' to Web server 201. This intermediate program can be a simple CGI application program that connects Interceptor 400 to Web server 201. Alternate intermediate programs the perform the same functionality can also be implemented. Col. 4:63-Col. 5:7.

The Defendants counter that the specification uses the terms "Web server," "Web server executable" and "Web server machine" and that the proper interpretation is that the machine is referred to as a Web server machine, the software is referred to as the "Web server executable" and

15

EPIC392657

the combination is referred to as a "Web server."    To support this argument, the Defendants cite to various passages and figures in the specification.  Figures 2-4; Col. 4:39-41; Col. 4:59-62; Col. 5:7-36.

  While the Defendants may be correct that "Web server" may be utilized at times as indicating a combination of a machine and software, the specification clearly does not require the term "Web server" to include a machine.  The passages of the specification noted above by the Plaintiff make clear that the Web server is contemplated to be at least in one embodiment, software.  It is also noted that in general in other passages of the specification the term "Web server machine" is more often used when describing the machine component and "Web server" to describe merely the software component.  Thus, for example, it is noted that the "Web servers process each of these requests on a single machine, namely the Web server machine," "Interceptor 400 resides on the Web server machine as an extension to Web server 201," and the Dispatcher "can, however, also reside on the same machine as the Web server."  Col. 4:39-42; Col. 4:61-62; Col. 5:20-21.  Passages such as these imply a utilization of the term "Web server" as the software module as opposed to the combination of both the machine and software.  Thus, some usage of "Web server" implies just software and at other times implies a combination of software and hardware.

  **The Court construes "Web server" to be "software, or a machine having software, that receives Web page requests and returns Web pages in response to the requests.**

5. "HTTP-complaint device"

  "HTTP-complaint device" is utilized in asserted claims 15-16 and 19 of the '335 Patent.  The Plaintiff asserts that "HTTP-complaint device" does not need construction.  Alternatively, if

16

EPIC392658

construed, the Plaintiff asserts that the proper construction is "a device that understands HTTP and whose behavior is affected by an HTTP request." The Defendants assert that the terms should be construed as "a machine running an executable capable of storing, locating and returning Web pages in response to Web client requests."

The Defendants assert the same construction for the terms "Web server" and "HTTP-complaint device." The Defendants' construction is based upon their assertion that the term does not appear in the specification and that the specification only discloses a Web server for performing the function described in the language surrounding the use of "HTTP-compliant device." As such, the Defendants assert that "HTTP-compliant device" should be construed the same as "Web server" as that is the only corresponding device described and enabled in the specification. To hold otherwise, assert the Defendants, would result in a claim that is overbroad and invalid for not being described and enabled.

Regarding the maxim that claims should be construed to be valid, in *Phillips* the Federal Circuit guidance states that this maxim is limited "to cases in which 'the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.'" *Phillips,* 415 F.3d at 1327. The Court does not find that in light of the specification the term in question is ambiguous to one skilled in the art. Thus, the Defendants' validity concerns should be more properly addressed with regard to validity motions.

The Defendants also assert that the more general construction proposed by the Plaintiff would be so broad as to even encompass a Web client. However, the claim language itself makes clear that this concern is not valid as there is substantial functional language regarding what happens at the HTTP-compliant device including the transferring of a request from the HTTP-compliant device to

17

EPIC392659

a page server, intercepting the request at the HTTP-compliant device, and concurrently processing other requests at the HTTP-compliant device.

The Defendants do however raise valid concerns over the Plaintiff's definition raising additional interpretation questions with regard to the meaning of "understands HTTP" and "behavior affected by an HTTP request." The Court agrees with the Defendants in this regard. The specification defines HTTP as "a communications protocol known as HyperText Transport Protocol (HTTP)." Col. 1:25-26. Mindful that not all terms in a claim need construction, **the Court adopts a construction of "HTTP-compliant device" to mean "a device that is compliant with the communication protocol known as HyperText Transport Protocol (HTTP)."**

6.   "Said processing being performed by said page server while said Web server concurrently processes said other requests"

"Said processing being performed by said page server while said Web server concurrently processes said other requests" is utilized in asserted claims 1 and 11 of the '554 Patent and 1, 15 and 29 of the '335 Patent. The Plaintiff asserts that the "said processing…" phrase does not need construction. Alternatively, if construed, the Plaintiff asserts that the proper construction is "said processing being performed by said page server while said Web server processes said other requests at the same time." The Defendants assert that the phrase should be construed as "said processing being performed by said page server while said Web server executable processes other requests literally at the same time on a different machine."

Three main points of distinction exist between the parties: the inclusion of "executable" with regard to the use of Web server, the inclusion of "literally" with regard to the "same time" language,

18

EPIC392660

and the inclusion of the concept of the Page server and Web servers being on different machines. With regard to the term "Web server" as utilized within the "said processing…" phrase, the Court finds that the construction the Court provided above for "Web server" is applicable, and thus the inclusion of the term executable does not need to be re-addressed with relation to the "said processing…" phrase. Similarly, with regard to the concept of different machines, the Court has addressed that concept above and does not need to re-address that concept here.

With regard to "concurrently," both parties agree that this term includes the concept of something occurring "at the same time;" however, there is still a dispute as to whether it must be "literally at the same time." The Defendants argue that "concurrently" should be analyzed in the context of the discussion in the patents of the prior art time-interleaved multi-threading techniques. Accordingly, the Defendants argue that if concurrently is not read to be "literally at the same time" the claims would read on time-interleaved multi-threading techniques. Once again, such arguments are more suited for invalidity assertions. Moreover, it is noted that in the passage in which the patents utilize the term "concurrently" to describe the Web server and the Page server operations, the patents also describe this concept as "to simultaneously process." Col. 6:21-27. With regard to the prior art time-interleaved multi-threading discussion (which the Defendants assert is not literally at the same time) the patent also uses the term "simultaneously." Col. 4:48-51. The patents do not distinguish one use of the term simultaneously from the other by the inclusion of the literal concept. The Court does not find support in the intrinsic evidence to support a requirement that "at the same time" must be "literally at the same time." **Thus, the court construes "said processing being performed by said page server while said Web server concurrently processes said other**

19

requests" to mean "said processing being performed by said page server while said Web server processes said other requests at the same time."

7.     "Intercepting"

"Intercepting" is utilized in asserted claims 1, 9, 10 and 11 of the '554 Patent and 1 and 15 of the '335 Patent.  The Plaintiff asserts that the proper construction of "intercepting" is "stopping, deflecting, or interrupting the processing of a request."  The Defendants assert that the term should be construed as "diverting a request received at the Web server machine instead of the Web server executable processing it."   Both parties argue that the other party's interpretations carry implicit meanings beyond the mere constructions asserted above.  The Plaintiff asserts that the Defendants' construction implicitly requires a request to go around or bypass a Web server without any processing by the Web server.  The Defendants assert that the Plaintiff's construction allows for the Web server executable to begin processing a request, even if only to recognize that is should not complete the processing.  The parties also disagree as to whether the terms "stopping, deflecting, or interrupting" verses "diverting" are more appropriate.  A portion of the disagreement between the parties is based upon the fundamental dispute as to whether a Web server is a machine, software, or combination thereof.  As noted above, the Court construes a Web server as software, or a machine having software.

The Defendants assert that the prosecution histories of the '554 Patent and of the '335 Patent add clarity to the meaning of the term "intercepting."  The Defendants are correct that prosecution history may be used to limit the claims so as to exclude interpretations that may have been disclaimed or disavowed.  However as discussed below, the cited portions of the prosecution

20

EPIC392662

histories of the '554 Patent and the '335 Patent do not amount to a clear disclaimer as suggested by the Defendants. *See Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002).

With regard to the '554 Patent file history, the Defendants point to language added via an Examiner's Amendment and to the Bookman reference for support of a disclaimer of claim scope. The amendment in question was made in a Notice of Allowability that was issued along with an Interview Summary of a December 17, 1998 examiner interview and a form PTO-892 Notice of References Cited. The PTO-892 Notice of References Cited listed the Bookman reference and an additional reference. At that time, other art was also included in the prosecution history including, for example, references that were the basis of previous rejections. The Interview Summary merely states that the prior art discussed was the "prior art of record." The description and other comments of the interview do not provide any other details as to why the Examiner Amendment was made. The Amendment in question added, to claim 1 for example, the language "wherein said routing step further includes the steps of intercepting said request at said Web server, routing said request from said Web server to a dispatcher, and dispatching said request to said page server." As the Plaintiff points out, the record does not show that Bookman was even particularly discussed in the interview let alone the art requiring the amendment to be made. On this basis alone, the Court may reject the Defendants' assertion that because of Bookman the claim language must be interpreted in the manner that the Defendants allege. Further, even if Bookman had been the art requiring such amendment, the record still does not provide any insight into the meaning of "intercepting" as the record is silent as to any further meaning of "intercepting" or the other additional terms recited in the amendment (routing from a Web server to a dispatcher and dispatching said request to a page server).

EPIC392663

With regard to the '335 Patent prosecution history, the Defendants assert that statements made by the Applicants regarding the Leaf reference support the Defendants' proposition that partial processing does not equate to intercepting.   In particular, the Defendants cite to a quote on pages 9-10 of a Response To Office Action dated May 23, 2001.  The Defendants focus on a statement that Leaf did not suggest intercepting because "merely routing a request from a web server to the transaction gateway does not involve interception."  The Defendants state that Leaf has Web server executable that partially processes a request before routing it on to the dispatcher.  From this, the Defendants argue that the Applicants disclaimed partially processing a request and then routing it to the dispatcher.   It is noted that the Applicants' Response in question, however, does not characterize Leaf in the manner suggested by the Defendants or make any references to partially processing.  Further, the distinction between a Web server and Web server executable made by the Defendants is not clear in Leaf.   In addition, it is noted that the full context of the Applicants' remarks regarding Leaf includes the statement that "Leaf does not teach or suggest 'intercepting said request.'  Instead, Leaf teaches that the web server routes the request directly to the transaction gateway client."  '335 Patent File History, Response to Office Action Dated May 23, 2001, p. 9-10.  This statement merely suggests that directly routing a request from a web server to a transaction gateway is not intercepting and does not provide clear guidance as to the question of partial processing or the difference between a Web server and Web server executable.   Thus, the prosecution history cited by the Defendants does not provide the clear guidance asserted by the Defendants.

It is noted that the Defendants' proposed construction adds Web server machine to the term of "intercepting."   This language is somewhat redundant with the language surrounding the term

22

EPIC392664

"intercepting" in most claims and does not conform to claim 15 of the '335 Patent which uses the term HTTP-complaint device. The context of the term as used in the claims themselves provides some guidance as to the proper construction. The claims themselves note that the intercepting of the request is at the Web server or the HTTP-compliant device.[3] For example, Claim 1 uses language such as "routing said request from said Web server to a page server," and "wherein said routing step further includes the steps of intercepting said request at said Web server, routing said request from said Web server to a dispatcher, and dispatching said request to said page server." This conforms with the specification, which states that the request is initially routed from the Web Client 200 to the Web Server 201. Col. 4:54-60. Also, Figure 4 appears to show the request going to the Web server executable 201(E). A construction that has the request bypassing the Web server is therefore not appropriate.

As to whether the beginning phrase of the construction should include "stopping, deflecting, or interrupting" as proposed by the Plaintiff, the Plaintiff provides little support for such language other than a general purpose dictionary. Although the Plaintiff asserts that the Defendants' construction requires bypassing the Web server, the Court does not interpret the phrase "diverting" to require such bypassing. However, the term "diverting" seems to carry an additional connotation that the request is sent somewhere else. When looking at the claims, however, the concept of the request being sent elsewhere is included in the "routing said request" (claims 1, 9, and 11 of the '554 Patent) or "transferring said request" (claim 15 of the '335 Patent) limitation that immediately follows the intercepting phrase. Thus, the Court does not feel that either construction adds clarity

---

[3] Claim 15 of the '335 Patent uses the term HTTP-compliant device while the other claims recite a Web server.

EPIC392665

to the meaning of the concept of "intercepting" as used in the claims. Moreover, the parties have not pointed to anything in the intrinsic record that suggests which is more accurate: "diverting" or "stopping, deflecting or interrupting." These terms are not used in the specification and each in turn may need their own construction. The Court is not convinced that the term "intercepting" needs construction itself or that the constructions proposed by the parties add any needed clarity.

More helpful would be to construe the entire intercepting phrase: "intercepting said request at said Web server" (claims 1, 9, and 11 of the '554 Patent) and "intercepting said request at said HTTP-compliant device" (claim 15 of the '554 Patent). The specification describes the Interceptor as intercepting "the handling of a request." Col. 8:31-32. To conform with the description provided within the specification, the phrase "intercepting said request at said Web server" (claims 1, 9, and 11 of the '554 Patent) means at least "intercepting the handling of a request at a Web server" and the phrase "intercepting said request at said HTTP-compliant device" means at least "intercepting the handling of a request at a said HTTP-compliant device."

What is left for the Court to determine is whether the phrase "instead of the Web Server executable processing it" should be added to the end of the definition as proposed by the Defendants. The Defendants' primary support for their position is the language of the specification that states "instead of Web server executable 201(E) processing the URL request, however, interceptor 400 intercepts the request and routes it to Dispatcher 402." Col. 4:58-60. The Defendants argue that this language provides no room for partial processing of a request by Web server executable. The Court, however, finds such language ambiguous. The Defendants would like to interpret this cited quote ("instead of the Web server executable 201(E) processing the URL request") to mean "instead of the Web server executable 201(E) processing **any of** the URL request" wherein the Plaintiff would like

24

EPIC392666

to interpret this citation to mean "instead of the Web server executable 201(E) **completely** processing the URL request" The specification, however, provides little guidance.

As discussed above, however, the specification does establish that a Web server may be software. Further, the specification establishes that the Web server does perform at least some action with relation to a request, namely receiving a request. Col. 4:55-58; Col. 8:28-31; Figure 4; Figure 5. Further, it is noted that in at least one embodiment the interceptor 400 is "an extension of the Web server 201" and the interceptor 400 also performs actions on a request. Col. 4:59-62. As Defendants have asserted that their proposed claim langue would exclude the Web server from any processing of the request, their proposed claim language would impermissibly exclude the embodiments disclosed within the specification. Thus, the Court declines to add the additional limitation sought by the Defendants.

For these reasons, **the Court finds that "intercepting said request at said Web server" means "intercepting the handling of a request at a Web server" and the phrase "intercepting said request at said HTTP-compliant device" means at least "intercepting the handling of a request at a said HTTP-compliant device."**

8. "Transferring"

"Transferring" is utilized in asserted claims 15-16 and 29 of the '335 Patent. The Plaintiff asserts that the "transferring" does not need construction. Alternatively, if construed, the Plaintiff asserts that the proper construction is "sending." The Defendants assert that the term should be construed as "sending toward a destination and relinquishing control of."

The parties agree to the use of the term of "sending" but disagree as to whether any additional

EPIC392667

language is necessary. With regard to the Defendants' use of "toward a destination," it is noted that the surrounding claim language of each claim already includes this concept. For example, claim 15 states that the transferring is of "a request from an HTTP-complaint device to a page server." Similarly, claim 29 states that the transferring is of "a request from an HTTP-complaint device to a dispatcher." The inclusion of "toward a destination" within the term "transferring" itself is therefore unnecessary based upon the context of the claims themselves.

With regard to the "relinquishing control of" language sought by the Defendants, the Defendants point to a Microsoft Press Computer Dictionary definition that includes in transferring the concept of passing program control. Further, the Defendants assert that the purpose of the patent is to reduce processing burden. The Plaintiff argues that two other dictionary definitions noted by the Defendants do not include the relinquishing concept.

Once again, it is more instructive to look to the claims themselves. More particularly, in claim 15 of the '335 Patent immediately after the "transferring…to a page server" the claim continues with "said page server receiving said request and releasing said HTTP-compliant device to process other requests…." Likewise, claim 29 of the '335 Patent includes later in the claim "said page server receiving said request and releasing said HTTP-compliant device to process other requests…" To include relinquishing within the definition of transferring would possibly conflict with the latter claim language or alternatively be redundant. Further, to the extent that the Defendants assert that the purpose of the patent is to reduce processing burden, the recited releasing language is more related to that concept then the transferring.

As both parties have proposed definitions using the term "sending," the Court includes that term in its construction. **The Court construes "transferring" to mean "sending."**

26

EPIC392668

9. "Dispatching"

The parties originally proposed different constructions for the term "dispatching." As the parties have subsequently submitted an agreed construction, a Court construction is no longer required.

10. "Releasing"

"Releasing" is utilized in asserted claims 1, 9 and 11 of the '554 Patent and 1, 15, and 29 of the '335 Patent. The Plaintiff asserts that the "releasing" does not need construction. Alternatively, if construed, the Plaintiff asserts that the proper construction is "freeing." The Defendants assert that the term should be construed as "communicating to said Web server that it may now process other requests."[4] A central point in the dispute between the parties is the Plaintiff's arguments that releasing can implicitly occur as a result of routing without communication to the Web server. The Defendants assert that there must be communication to the Web server.

The Plaintiff asserts that the term "freeing" is supported by the specification and notes that the specification states that the result of routing is that the Web server is free to continue servicing client requests. In particular, the Plaintiff points out that the specification states "Web server executable 201(E) is thus free to continue servicing client requests on Web serer 201 while the request is processed 'off-line.'" Col. 5:16-18. Thus, the Plaintiff asserts that the specification implies that releasing is an automatic consequence of routing the request to another processing element and that nothing in the specification requires communication to the Web server to effectuate

---

[4]For claim 9 of the '554 Patent, the Defendants substitute "second computer system" in place of "Web server" and similarly in claims 15 and 29 of '335 Patent the Defendants substitute "HTTP-compliant device" in place of "Web server."

27

EPIC392669

the release.

The Defendants assert that the '335 Patent prosecution history shows that merely routing a request from a Web server to a Page server and thereby implicitly releasing the Web server was disclaimed by the Applicants during the prosecution history as being different from releasing. The Plaintiff counters by asserting that the full context of the prosecution history quote in question does not stand for the proposition asserted by the Defendants. The portion of the prosecution history in question includes:

> At no time does Rogers teach or suggest 'concurrently' processing other requests or 'releasing said Web server to process other requests' because merely retrieving data from multiple sources does not teach or suggest these elements. Response to Office Action, Nov. 27, 2001 at 9.

The Court is persuaded that by reviewing the full context of the portion of the prosecution history in question a clear disavowal was not made by the Applicants. Thus, the prosecution history does not mandate that releasing cannot implicitly occur due to routing from a web server to a page server.

However, the Defendants raise a more relevant argument with regard to the claim language itself. "Releasing" is used in each claim as part of the phrase "said page server receiving said request and releasing said Web server to process other requests."[5] It is therefore the Page server that does the releasing. The larger context of the use of releasing in the claims themselves indicates that the Page server has a role in the releasing as in the claims themselves it is the Page server that releases the Web server. This language also conforms to the Summary of Invention and Abstract. Col. 2:25-26; Abstract, line 8.

---

[5] "Second computer system" is used rather than "Web server" in claim 9 of the '554 Patent. "HTTP-compliant device" is used rather than "Web server" in claims 15 and 29 of '335 Patent.

EPIC392670

The Court is thus persuaded that the Defendants are partly correct that as required by the claim language itself the Page server takes some action to releasing the Web server. However, the Defendants do not provide adequate support in the specification or elsewhere to mandate that such action is limited to communication from the Page server to the Web server. As there could be other actions that the Page server may take to affirmatively release the Web server, it would be inappropriate to limit the claim to one type of action, particularly when support is lacking in the record for that particular type of action. The specification does not necessarily limit the claims to a particular technique by the Page server as to how the claimed release by the Page server is accomplished. For example, the limitations proposed by Defendants could be argued to not include Page server actions that are communications from the Page server to other intermediate elements (such as the Dispatcher) or Page server actions that involve affirmatively not sending some expected regular communication. **The Court therefore interprets "said page server receiving said request and releasing said Web server to process other requests" to mean "said page server receiving said request and said page server performing an act (separate from merely receiving the request) to free the Web server to process other requests." Claims 9 of the '554 Patent and claims 15 and 29 of the '335 Patent are likewise construed with the substitution of "second computer system" and "HTTP-compliant device" respectively for "Web server."**

**B.      Means Plus Function Elements**

The parties propose different constructions of three means plus function elements. In each case, the parties agree to the function but disagree as to what is the corresponding structure that is

EPIC392671

disclosed in the specification pursuant to 35 U.S.C. §112, ¶6.  The following means plus function

elements contained in claim 9 of the '554 Patent are disputed:

> (a) "means for generating said request,"
> (b) "means for receiving said request from said first computer" and
> (c)"page server processing means processing said requests and dynamically generating a web page in response to said request."

Throughout the pre-hearing and post-hearing briefing, the parties have substantially changed their

positions as to the appropriate legal standards and the appropriate structure that should be applied

to each element.

As to the function, the parties have agreed to functions that match the claimed language

recited above:  "generating said request," "receiving said request from said first computer," and

"processing said requests and dynamically generating a web page in response to said request"

respectively.

The Plaintiffs propose that the corresponding structure for each means plus function element

is "any software, processor or equivalent therefore that performs the function of _____ " (where

the blank is the agreed function for that means plus function element).  The Defendants in contrast

point to particular structure disclosed within the specification.  For the "means for generating," the

Defendants propose "a processor, such as Box 102 of Figure 1, on a Web client 200 of Figure 4,

running a Web browser."  For the "means for receiving," the Defendants propose "Web server 201

of Figure 4 running a web server executable."   For the "page server processing means," the

Defendants propose "a processor, such as Box 102 of Figure 1, on a page server machine, such as

Box 404(1)-(n) of Figure 4, running undisclosed page-generating software."

EPIC392672

First, the Court notes that means plus function elements shall be construed to cover the corresponding structure described in the specification and equivalents thereof. 35 U.S.C. §112, ¶6. To avoid confusion, the Plaintiff indicated that it did not object to removing the word "equivalents" internal to its proposed construction. Plaintiff's Reply Brief at 58. The Court agrees that it would be clearer for "equivalents" to modify the entire construed structure.

As proposed by the Plaintiff, the corresponding structure could be any software or could be any processor that performs the agreed function. As proposed by the Plaintiff, software would not even be required as the Plaintiff uses the "or" conjunction. Plaintiff's construction of any software or processor is essentially unbounded and contradicts the guidance that has been established for interpreting means plus function elements. *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d, 1205, 1211 (Fed. Cir. 2003)("We cannot allow a patentee to claim in function terms essentially unbounded by any reference to what one skilled in the art would understand from the public record.") Having chosen to utilize the means plus function claiming structure, the Plaintiff cannot now avoid its implications. Moreover, for computer implemented implementations the corresponding structure for means elements is limited to the specific structure and specific algorithms disclosed in the specification as opposed to the generic "software" or "processor" as asserted by the Plaintiff. *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253-54 (Fed. Cir. 2005); *WMS Gaming Inc. v. International Game Technology*, 184 F.3d 1339, 1348-49 (Fed. Cir. 1999). Thus, the court must look to the specific structures and algorithms disclosed with the specification.

As noted above, the specification states:

31

EPIC392673

FIG. 1 illustrates a typical computer system 100 in which the present invention operates. Col. 2:66-67.

The preferred embodiment of the present invention is implemented as a software module, which may be executed on a computer system such as computer system 100 in a conventional manner. Col. 3:55-58.

As described within the specification, the various software components operate on computer systems such as computer system 100 of Figure 1 that includes a processor 102.[6] Col. 2:66-67; Col. 3:8-11; Col. 3:55-63.

1.    "means for generating said requests,"

   For example, the "means for generating a request" is described as a Web client machine running a Web browser. Col. 1:24-26; Col. 2 :4-7; Col. 4:12-15; Col. 4:55-57; Col. 6:27-31; *See* Col. 8:25-29. This particular structure is noted in the specification for accomplishing the claimed function. One skilled in the art would understand from the specification that a Web client computer having a processor which operates a Web browser is the corresponding structure that accomplishes the function of generating a request.

   **The Court construes the corresponding structure of the "means for generating" to be "a processor of a computer that is, or has, a Web client running a Web browser" or equivalents thereof.**

---

[6] It is noted that as to the component of the computer system, both parties agree that reference to the processor is appropriate.

32

EPIC392674

2.   "means for receiving said request from said first computer"

With regard to the "means for receiving said request from said first computer" element, the specification shows the Web server 201 receiving requests from the Web client 200.  Figure 4; Figure 5;  Col. 4:54-59; *See* Figure 2; Col. 3:64-Col. 4:10.  The Web server 201 is also repeatedly described as including Web server executable.  *Id.*  As described above, the specification also establishes that that even if a Web server is software, the software module operates on a computer as described within the specification.

**The Court construes the corresponding structure of the "means for receiving" to be "a processor of a computer that is, or has, a Web server running Web server executable" or equivalents thereof.**

3.   "page server processing means processing said requests and dynamically generating a web page in response to said request."

With regard to the function of the "page server processing means processing said requests and dynamically generating a web page in response to said request" element, the specification shows that such function is accomplished by Page server 404(1)-(n).   Figure 4; Figure 5; Col. 5:37-Col. 6:31; Col. 8:39-43.  As noted above, the parties agree that a Page server is page generation software.  Further, as also noted above with the other means plus function elements, the specification establishes that software is operated on a computer system as described with the specification.  Moreover, with regard to Page servers, it is noted that in one embodiment Page servers reside on a separate machine to accomplish the claimed function.  Col. 5 line 49-50.  Thus, the Court finds that

33

EPIC392675

the Page server processing means is Page server software (as construed above) operating on a computer processor.

The Court construes the corresponding structure of the "page server processing means" to be "a processor of a computer that runs Page server software (wherein Page server software is page-generating software that generates a dynamic Web page)."

**IT IS SO RECOMMENDED**.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 15th day of August, 2006.**

*Caroline M. Craven*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

34

EPIC392676

# Exhibit 7

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit 8

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY