# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ORACLE CORPORATION and )
ORACLE U.S.A. INC., )
                              )  C.A. No. 06-414-SLR
    Plaintiffs/Counterclaim Defendants, )
                              )  **JURY TRIAL DEMANDED**
    v. )
                              )
EPICREALM LICENSING, LP, )  **PUBLIC VERSION**
                              )
    Defendant/Counterclaim Plaintiff. )

## EPICREALM'S *DAUBERT* MOTION TO EXCLUDE
## TESTIMONY OF DR. PAUL CLARK

OF COUNSEL:

Harry J. Roper
George S. Bosy
Aaron A. Barlow
Patrick L. Patras
David R. Bennett
Paul D. Margolis
Benjamin J. Bradford
Emily C. Johnson
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel: (312) 923-8305

Dated: July 31, 2008
876771 /31393 / Oracle

Public Version Dated: August 7, 2008

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim*
*Plaintiff epicRealm Licensing, LP*

Defendant epicRealm Licensing LP ("epicRealm") hereby moves to exclude, pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the testimony of plaintiffs' expert witness, Dr. Paul Clark ("Clark"), on indirect infringement.[1]

## I.   NATURE AND STAGE OF THE PROCEEDINGS

This patent infringement action was filed in 2006 and is now scheduled for a two-week jury trial commencing January 12, 2009. EpicRealm accuses the Plaintiffs, Oracle Corp. and Oracle U.S.A. Inc. (collectively, "Oracle") of infringing two patents, U.S. Patent Nos. 5,894,554 and 6,415,335 (collectively, the "patents in suit"). EpicRealm contends that Oracle directly infringes the patents in suit and also contends that Oracle indirectly infringes the patents in suit by making, selling and offering to sell the accused Oracle computer software products for use by Oracle's customers. Specifically, epicRealm contends that Oracle's sale of software to its customers' contributorily infringes and induces infringement of the patent claims at issue. Oracle denies infringement and intends to proffer the testimony of Clark in support of its contention that it does not indirectly infringe the patents in suit. This *Daubert* motion is directed to the issue of indirect infringement and is brought pursuant to the Court's Scheduling Order. (D.I. 29.)

## II.   SUMMARY OF THE ARGUMENT

Oracle intends to proffer the testimony of Clark, who intends to testify that Oracle's customers — in using software provided by Oracle — make little use of the patented technology. This proposed testimony should be excluded for two reasons. First, it is based wholly on the

---

[1] Pursuant to D. Del. LR 7.1.1, the parties met and conferred on this motion. Plaintiffs will oppose this motion.

biased hearsay statements of Oracle's employees, and secondly, because it is not supported by any other data or testimony. For both reasons, Clark's proposed testimony should be excluded.

## III.    STATEMENT OF FACTS

The patents in suit disclose and claim improved technology for the management of dynamic Web page requests. Pursuant to the Court's Scheduling Order, the parties exchanged initial expert reports that were directed to issues bearing on each party's burden of proof. EpicRealm served the expert report of Dr. David Finkel, epicRealm's expert in the pertinent technology. Finkel opined that the accused Oracle products at issue infringe the patent claims at issue, both directly and indirectly. Specifically, Finkel will testify that Oracle's actions indirectly infringe and that Oracle's actions constitute contributory infringement and inducing infringement. Oracle in turn submitted the expert report of Clark, denying that Oracle's acts indirectly infringe. His expert report appears at Exh. 1 hereto. EpicRealm deposed Clark on July 11, 2008 in relation to his expert report. The deposition transcript of Clark appears at Exh. 2 hereto.

## IV.    ARGUMENT

### A.    The Legal Standard

There are two legal standards at issue here. The first is directed to substantive law and the second to the *Daubert* issue presented in this memorandum. The relevant substantive law is as follows. EpicRealm accuses Oracle of indirect infringement, contributory infringement, and inducement of infringement. (D.I. 25 at ¶44; Exh. 3 hereto, Defendant's Supplemental Response to Plaintiffs' Interrogatory Nos. 18-19.) To establish indirect infringement by Oracle, it is epicRealm's burden to prove direct infringement. *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993); *Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1334 (Fed. Cir. 2003). In this

case involving patent claims directed to network systems (*e.g.*, Claim 9 of the '554 patent), and to software capable of performing the patented functions (*e.g.*, Claim 11 of the '554 patent), direct infringement is established upon proof that the software sold by Oracle enables Oracle's customers to practice the functions recited in the claims. *See Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002). In other words, the software sold by Oracle need only be capable of operating in an infringing manner. *Intel Corp. v. ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Elantech Devices Corporation v. Synaptics, Incorporated*, No. C 06-01839-CRB, 2007 WL 3256229, at *6 (N.D. Cal. Nov. 5, 2007) ("Software programs directly infringe a patent if they present users with options to enable infringing functionality, regardless of whether the users ever activate or utilize those functions.").

The legal standard governing the admissibility of expert testimony is well settled. In accordance with Federal Rule of Evidence 702, a court may admit expert testimony in order to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). However, prior to admitting expert testimony, the trial court should perform a "gatekeeping" function and to that end should examine the proposed expert testimony to ensure that it is both relevant and reliable, and that it was arrived at through the use of an appropriate and correct methodology. *Daubert*, 509 U.S. at 597. Rule 702 and the pertinent case law allow for the exclusion of expert testimony where the expert's opinions are based on methodologies that are scientifically unreliable and on data upon which a reasonable expert in the field would not rely. *In re TMI Litig.*, 193 F.3d 613, 627 (3d Cir. 1999). As the proponent of the expert testimony of Clark, Oracle bears the burden of establishing the relevance and reliability of his proposed expert testimony by a preponderance of the evidence. *See Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999).

3

**B.    Clark's Proposed Testimony**
       **Should Be Excluded**

In an attempt to rebut EpicRealm's showing that Oracle's sales to its customers indirectly

infringe the asserted claims of the patents in suit, Oracle intends to proffer Clark's testimony.

Specifically, Clark intends to testify that Oracle's customers make little use of the patented

technology.

Clark's proposed testimony is inadmissible and unreliable because Clark relied on

partisan statements of Oracle *employees* as a basis for his opinion as to what Oracle's *customers*

may or may not do with the software that Oracle provides.  Instead of conducting his own

investigation into how Oracle customers actually use the accused Oracle software products,

Clark blindly relied on the biased statements of Oracle employees who told him that "an

extremely small number" of customers use the patented technology:

> Q.    You make a statement on page 66 that "far less than ten
> percent" -- let me read the whole sentence.  "Of the hundreds of
> Oracle customers running a RAC Database, it is my understanding
> that an extremely small number, far less than ten percent, are
> known to have configured and used run-time load balancing."  Do
> you see that?
>
> A.    That's correct.
>
> Q.    When you say "are known to have configured," known by
> whom?
>
> A.    Known by Mark [sic] Eneman and -- or I'm sorry.  By the
> folks I talked to at Oracle, Mark Nelson I believe and I believe I
> had talked to Steve Harris.  And I may have actually asked that
> question of Mr. Eneman as well.
>
> Q.    Does Oracle track how many RAC database customers
> configure and use run-time load balancing?
>
> A.    No.  That number is anecdotal.
>
> Q.    Did you see any documents to corroborate that statement?
>
> A.    I did not.

(Exh. 2, Clark Dep. Tr. at 280:2-280:23). Thus, Clark chose to blindly rely on hearsay statements of Oracle employees in support of his opinion as to how Oracle's customers use the software provided by Oracle.

While the Federal Rules of Evidence permit an expert to rely upon hearsay to form an opinion if the facts are "the type reasonably relied upon by experts in the particular field," an expert may not rely on "highly partisan" statements made by employees of his client in support of any material fact. *Therasense, Inc. v. Becton, Dickinson and Co.*, No. C 04-02123-WHA, 2008 WL 2323856, at *2 (N.D. Cal. May 22, 2008). An opinion based on such untested and biased hearsay does not constitute the necessary "facts and data" that an expert must rely on to support his opinion. As a consequence, courts routinely exclude such testimony:

> "One of the worst abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion."

*Id.* at *1. The biased statements of employees of an expert's client are simply not the type of hearsay that can be "reasonably relied upon by experts" under Rule 703. "[N]o professional should *reasonably rely on such a rigged and biased source of information for any materially important fact to his or her opinion* ... There is no 'particular field' in which experts go along with this charade ...." *Therasense*, 2008 WL 2323856, at *2. Moreover, the "probative value" of Clark's testimony is far outweighed by the risk of "misleading the jury" under Rule 403. *See id.* For these reasons, Clark's testimony directed to the activities of Oracle's customers is unreliable and should be excluded.

Clark's opinion is flawed for the additional reason that he did "nothing" to verify the biased statements of the Oracle employees. (Exh. 2, Clark Dep. Tr. at 139:20-139:15). Clark did not contact a single customer—nor did he consult with a single person outside of Oracle—to

determine how Oracle's customers were using the accused Oracle software products.

Furthermore, Clark did not consider any corroborating documentation. (Exh. 2, Clark Dep. Tr. at 139:20-139:22). Indeed, Clark admitted that he had "no written evidence" to support the biased hearsay statements of the Oracle employees he spoke to. (Exh. 2, Clark Dep. Tr. at 142:9-142:12). Clark admitted that he asked for such supporting documents -- because he "believe[s] in being thorough" (Exh. 2, Clark Dep. Tr. at 141:19) -- but he was told that no such documents existed:

> Q.    Did you review any documents that support the statements that were given to you by Mr. Nelson and Mr. Harris?
>
> A.    There was no documentation I was told with -- or statistics kept on numbers of customers and their usage of various features.
>
> Q.    Did you ask for such documentation?
>
> A.    I did.

(Exh. 2, Clark Dep. Tr. at 140:1-140:8). Even worse, Clark failed to review an Oracle document referred to as a "bug database" that allegedly tracks how the Oracle customers use Oracle software. (Exh. 2, Clark Dep. Tr. at 140:22-141:2; Exh. 4 hereto, Harris Dep. Tr. at 133:22-134:2; 135:24-137:11, 140:13-140:18). Clark did, however, rely on the biased statement by Oracle employee Harris (Exh. 2, Clark Dep. Tr. at 137:7-139:15), who during his deposition claimed that he relied on the "bug database" to determine that "virtually no one" used the Oracle products in an infringing configuration. (Exh. 4, Harris. Dep. Tr. at 137:5-137:11). And, despite numerous requests by epicRealm, Oracle has failed to provide a copy of the "bug database" to epicRealm. (*See* Exh. 5 hereto, Defendant's First Set of Requests for Production of Documents and Things Nos. 4, 6, 8, 39, 70). Oracle has also failed to produce the "bug database" despite its promise to do so during Dr. Finkel's deposition:

6

MR. PATRAS:  Counsel, has that bug report ever been produced in this litigation?

***

MR. HERHOLD:  If you're entitled to it and we haven't produced it, we're happy to do that.

MR. PATRAS:  Thank you.

MR. HERHOLD:  I would assume that you guys have asked for it.

MR. PATRAS:  I think it's safe to say.

MR. ARTUZ:  Assuming we still have it, we will provide it.

MR. PATRAS:  I'm sure it has not been destroyed during the litigation.

MR. ARTUZ:  Well, that wouldn't happen.

(Exh. 6 hereto, Finkel Dep. Tr. at 110:14-111:6).

In sum, Oracle's failure to provide documentation bearing on customer usage "does not by some unknown alchemy convert unreliable evidence into reliable evidence." *See Robinson v. Sanctuary Record Groups, Ltd.*, 542 F. Supp. 2d 284, 293 (S.D.N.Y. 2008) (rejecting expert testimony for plaintiffs' failure to provide "backup documents" to the expert that he would have ordinarily relied upon to base his opinion).

**CONCLUSION**

Clark's proposed trial testimony as to how Oracle customers use Oracle's software should be excluded.

OF COUNSEL:

Harry J. Roper
George S. Bosy
Aaron A. Barlow
Patrick L. Patras
David R. Bennett
Paul D. Margolis
Benjamin J. Bradford
Emily C. Johnson
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel: (312) 923-8305

Dated: July 31, 2008
876771 /31393 / Oracle

Public Version Dated: August 7, 2008

POTTER ANDERSON & CORROON LLP

By: /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim
Plaintiff epicRealm Licensing, LP*

8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 7, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on August 7, 2008, the attached document was Electronically Mailed

to the following person(s):

Mary B. Graham
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
MGraham@MNAT.com

Theodore T. Herhold
Robert J. Artuz
Eric M. Hutchins
Eric A. Mercer
Joseph A. Greco
Nitin Gupta
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA 94301
OracleEpicrealm@townsend.com

James G. Gilliland
Igor Shoiket
Townsend and Townsend and Crew LLP
Two Embarcadero Center
Eighth Floor
San Francisco, CA 94111-3834
OracleEpicrealm@townsend.com

Chad E. King
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202
OracleEpicrealm@townsend.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

788480 / 31393 / Oracle

# Exhibit 1

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit 3

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit 4

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

Exhibit 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ORACLE CORPORATION and ORACLE U.S.A. INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-414-SLR |
| | ) | |
| EPICREALM LICENSING, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS (1-89)**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant and

Counterclaimant epicRealm Licensing, LP ("epicRealm"), by its attorneys, hereby requests that

Plaintiffs Oracle Corporation and Oracle U.S.A. Inc., serve a written response and produce the

documents and things requested and described herein within thirty days hereof to the office of

Jenner & Block LLP, 330 N. Wabash Avenue, Chicago, IL 60611, or at such other time and

place as may be agreed to between the parties.

**DEFINITIONS**

1.    "The '335 patent" means U.S. Patent No. 6,415,335, entitled "System and Method

for Managing Dynamic Web Page Generation Requests."

2.    "The '554 patent" means U.S. Patent No. 5,894,554, entitled "System for

Managing Dynamic Web Page Generation Requests by Intercepting Request at Web Server and

Routing to Page Server thereby Releasing Web Server to Process Other Requests."

3.    "Oracle," "plaintiffs," "you," and "your" mean Oracle Corporation and Oracle

U.S.A. Inc., plaintiffs and counterdefendants in this action, and all predecessors, successors,

subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present

officers, directors, affiliates, agents, employees, attorneys, consultants, representatives and any other person acting or purporting to act on behalf of Oracle.

4.    "Communication" means any transmission of information from one person to another, including, without limitation, by personal meeting, telephone, facsimile, and electronic mail.

5.    The term "document" or "documents" is to be interpreted in the broadest sense allowed under the Federal Rules of Civil Procedure.

6.    "epicRealm" and "defendant" mean epicRealm, defendant and counterclaimant in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present officers, directors, partners, affiliates, agents, employees, attorneys, consultants, representatives and any other person acting or purporting to act on behalf of epicRealm.

7.    "The epicRealm Patents" means the '554 and '335 patents.

8.    "Oracle Customer" means any entity having a business or transactional relationship with Oracle, including but not limited to any prospective customer and any customer referenced in either generally, by class, category or specifically identified Oracle's Form 10-K filings with the Securities and Exchange Commission including but not limited to Oracle's filing for the fiscal year ended on May 31, 2007.

9.    "Oracle Web Site" means any web site owned, operated, maintained or hosted by Oracle including the web site located at http://www.oracle.com.

10.    "The Texas Actions" means Civil Action No. 2:05-cv-00163-DF-CMC pending in the Eastern District of Texas captioned *epicRealm Licensing, LLC v. Autoflex Leasing, Inc. et al.*

and Civil Action No. 2:05-cv-00356-DF-CMC pending in the Eastern District of Texas captioned *epicRealm Licensing, LLC v. Franklin Covey Co. et al.*

11.    "Person" means any natural person, corporation, proprietorship, partnership, joint venture, association, firm or entity recognized in law, and shall include the owners, officers, directors, agents, trustees, parents, subsidiaries, affiliates, assigns, predecessors and successors of such "person."

12.    "Prior art" means any patent, printed publication, public use, public knowledge, sale, offer for sale, or prior invention pertaining to the subject matter claimed in the epicRealm Patents.

13.    "Third party" means any person or entity other than Oracle.

14.    "And" or "or" shall be construed conjunctively and disjunctively so as to acquire the broadest meaning possible.

15.    "Any" shall be construed to include "any and all."

16.    "Including" shall be construed broadly, to mean "including but not limited to" or "including without limitation."

17.    "Web page" means web content displayable through a web browser regardless of format and not limited to HTML format.

18.    "Oracle's Web Products and Services" means all software, products, activities, consulting services, educational services, and/or other services related to the creation, generation, management or delivery of dynamic web pages including but not limited to:

    a)    Oracle E-Business Suite Release 11i and any earlier or later releases or versions of the Oracle E-Business Suite or any product providing comparable functionality as the

Oracle E-Business Suite with respect to the creation, generation, management or delivery of dynamic web pages;

b)      Oracle Application Server, including but not limited to these versions: Oracle 9iAS R1: 1.0.2.0 – 1.0.2.2.2; Oracle 9iAS R2: 9.0.2.0.0 - 9.0.3.0.0; Oracle 10gAS R1: 9.0.4.0.0 - 9.0.4.3; Oracle 10gAS R2: 10.1.2 - 10.1.2.2.0; and Oracle 10gAS R3: 10.1.3.1 (and for each such version, the Enterprise Edition; Standard Edition; Standard Edition One and Java Edition) and any earlier or later releases or versions of the Oracle Application Server or any product providing comparable functionality as the Oracle Application Server with respect to the creation, generation, management or delivery of dynamic web pages, including but not limited to the following Oracle Application Server components: Oracle Portal; Oracle Identity Management; Oracle Integration; Oracle Business Rules; Oracle BPEL Process Manager; Oracle Business Activity Monitoring; Oracle Business Intelligence; Oracle Forms; Oracle Reports; Oracle TopLink; Oracle JDeveloper; Oracle Application Server Containers for J2EE (OC4J); Oracle Enterprise Manager; Oracle Application Server Web Cache; and Oracle Application Server Wireless;

c)      Oracle HTTP Server or any product providing comparable functionality as the Oracle HTTP Server with respect to the creation, generation, management or delivery of dynamic web pages;

d)      Oracle Fusion Middleware or any product providing comparable functionality as the Oracle Fusion Middleware with respect to the creation, generation, management or delivery of dynamic web pages;

e)      Any Oracle server that incorporates, is based upon, or is used in conjunction with Apache HTTP Server, including but not limited to, Apache 1.3, Apache 2.0

-4-

and/or the Ironflare Orion Application Server or any product providing comparable functionality as any such Oracle server with respect to the creation, generation, management or delivery of dynamic web pages;

   f)  Software products that are used in conjunction with the delivery of dynamic web pages;

   g)  Consulting services, educational services, or other services that relate to the creation, generation, management or delivery of dynamic web pages;

   h)  Any software capable of receiving, routing or processing hypertext transfer protocol requests, including but not limited to, software used to enable, manage and operate internet web sites, including but not limited to, company intranet(s), web browsers, web servers, application servers, load balancers, content switches and packet switches associated with web content;

   i)  Any database software capable of creating, generating, managing or delivering dynamic web pages; and

   j)  Any products for use in conjunction with any product or service within subparts (a) - (i).

## REQUESTS

### REQUEST NO. 1:

All documents identified in Plaintiffs' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1).

### REQUEST NO. 2:

All documents relating to the epicRealm Patents.

### REQUEST NO. 3:

All documents relating to Oracle's Web Products and Services.

**REQUEST NO. 4:**

All documents relating to this civil action.

**REQUEST NO. 5:**

All source code, specifications, manuals, user guides, and documentation concerning or describing Oracle's Web Products and Services.

**REQUEST NO. 6:**

All engineers' notebooks, specifications, project plans, and other documents relating to the research, development, acquisition, selection, and/or testing of Oracle's Web Products and Services.

**REQUEST NO. 7:**

All brochures, articles, advertisements, videos, marketing materials, and publications concerning or describing Oracle's Web Products and Services.

**REQUEST NO. 8:**

All emails, letters, memos, presentations, studies, reports, and communications concerning or describing Oracle's Web Products and Services.

**REQUEST NO. 9:**

All issued domestic and foreign patents relating to Oracle's Web Products and Services, and their corresponding file histories and all issued domestic and foreign patents filed by or on behalf of Oracle or which Oracle is an assignee which reference the epicRealm Patents.

**REQUEST NO. 10:**

All pending or abandoned domestic and foreign patent applications relating to Oracle's Web Products and Services and their corresponding file histories and all pending or abandoned domestic and foreign patent applications filed by or on behalf of Oracle or which Oracle is an assignee which reference the epicRealm Patents.

**REQUEST NO. 11:**

All documents referring or relating to the consideration of requesting reexamination of the epicRealm Patents.

**REQUEST NO. 12:**

All documents referring or relating to the requests for reexamination that have been granted by the United States Patent and Trademark Office including but not limited to any communication between Oracle and any Oracle Customer or third party relating to said requests.

**REQUEST NO. 13:**

One copy of the source code of all software for Oracle's Web Products and Services in text file or other suitable format on a DVD, CD or other readily computer-accessible media.

**REQUEST NO. 14:**

A copy of the executable code for each of Oracle's Web Products and Services, in installable form on a DVD, CD or other readily computer-accessible media, including licenses or other permissions necessary to install and run such executable code.

**REQUEST NO. 15:**

A copy of each of Oracle's Web Products and Services as supplied to any Oracle Customer or third party.

**REQUEST NO. 16:**

All documents sufficient to identify all Oracle Customers or third parties that have purchased, licensed or used Oracle's Web Products and Services.

**REQUEST NO. 17:**

All documents relating to any offers for sale, sales, transfers or other dispositions (both internal and to Oracle Customers), quantities disposed of, revenue generated by such

dispositions, distribution channels (including distributors and Oracle Customers), and the projected sales in the United States or worldwide, for Oracle's Web Products and Services.

**REQUEST NO. 18:**

All contracts between Oracle and any Oracle Customer or third party including but not limited to indemnity agreements.

**REQUEST NO. 19:**

All licensing agreements between Oracle and any Oracle Customer or third party pertaining to Oracle's Web Products and Services, including but not limited to, patent licensing agreements.

**REQUEST NO. 20:**

All sales agreements between Oracle and any Oracle Customer or third party pertaining to Oracle's Web Products and Services.

**REQUEST NO. 21:**

All service agreements between Oracle and any Oracle Customer or third party pertaining to Oracle's Web Products and Services.

**REQUEST NO. 22:**

All documents concerning or describing any services provided by Oracle pertaining to Oracle's Web Products and Services.

**REQUEST NO. 23:**

All documents concerning or describing any updates provided by Oracle pertaining to Oracle's Web Products and Services.

**REQUEST NO. 24:**

All documents concerning or describing any education or training provided by Oracle pertaining to Oracle's Web Products and Services including all Oracle courses, self-paced media

training CD-ROMs, certification programs and Oracle University training services. The requested documents include but are not limited to the educational services or training described in Oracle's 10-K filings with the Securities and Exchange Commission.

**REQUEST NO. 25:**

All documents concerning or describing any "On Demand" services provided by Oracle pertaining to Oracle's Web Products and Services.

**REQUEST NO. 26:**

All documents concerning or describing any training provided by Oracle pertaining to Oracle's Web Products and Services.

**REQUEST NO. 27:**

All documents concerning or describing any consulting provided by Oracle pertaining to Oracle's Web Products and Services.

**REQUEST NO. 28:**

All documents pertaining to the marketing or advertising of Oracle's Web Products and Services.

**REQUEST NO. 29:**

All documents pertaining to Oracle's sales and service organization which markets Oracle's Web Products and Services.

**REQUEST NO. 30:**

All documents concerning or describing the Oracle Partner Network pertaining to Oracle's Web Products and Services.

**REQUEST NO. 31:**

All documents relating to Oracle's sales and licensing of "software products to customers for use in conjunction with the delivery of dynamic web pages." (Oracle's Complaint for Declaratory Judgment at 4.)

**REQUEST NO. 32:**

All "agreements requiring Oracle to indemnify [its] customers in the event a customer is sued for patent infringement for its use of licensed Oracle software." (Oracle's Complaint for Declaratory Judgment at 4.)

**REQUEST NO. 33:**

All documents pertaining to Safelite Group, Inc.'s ("Safelite's") use, purchase, or licensing of Oracle's Web Products and Services including any documents pertaining to Oracle's indemnification of Safelite.

**REQUEST NO. 34:**

All communications between Oracle and Safelite pertaining to Oracle's Web Products and Services, this civil action, or the Texas Actions, including communications between counsel for Oracle and counsel for Safelite.

**REQUEST NO. 35:**

All documents pertaining to Clark Consulting Inc.'s ("Clark's") use, purchase, licensing or indemnification of Oracle's Web Products and Services including any documents pertaining to Oracle's indemnification of Clark.

**REQUEST NO. 36:**

All communications between Oracle and Clark or any other defendant (present or past) or indemnitor in the Texas Actions pertaining to Oracle's Web Products and Services, this

litigation, or the Texas Actions, including communications between counsel for Oracle and

counsel for Clark.

**REQUEST NO. 37:**

All documents pertaining to Quinstreet, Inc.'s ("Quinstreet's") use, purchase, or licensing

of Oracle's Web Products and Services including any documents pertaining to Oracle's

indemnification of Quinstreet.

**REQUEST NO. 38:**

All communications between Oracle and Quinstreet pertaining to Oracle's Web Products

and Services, this civil action, or the Texas Actions, including communications between counsel

for Oracle and counsel for Quinstreet.

**REQUEST NO. 39:**

All documents referring or relating to any analysis of any systems, products, or services

for infringement or noninfringement of any claims of the epicRealm Patents.

**REQUEST NO. 40:**

All documents tending to prove or show infringement or noninfringement of any claims

of the epicRealm Patents by Oracle's Web Products and Services.

**REQUEST NO. 41:**

All documents referring or relating to any analysis of any systems, products, or services

for validity or invalidity of any claims of the epicRealm Patents.

**REQUEST NO. 42:**

All documents tending to prove or show validity or invalidity of any claims of the

epicRealm Patents by Oracle's Web Products and Services.

**REQUEST NO. 43:**

All documents referring or relating to any analyses, attempts, plans, or decisions to replace, design, or re-design any of Oracle's Web products and Services to avoid infringement of any claims of the epicRealm Patents.

**REQUEST NO. 44:**

All documents referring or relating to Oracle's knowledge of the epicRealm Patents, including but not limited to:

     (a)     documents showing when Oracle first became aware of each of the patents; and

     (b)     documents showing when Oracle first became aware of any alleged, potential, or actual infringement of each of the patents.

**REQUEST NO. 45:**

All documents relating to Oracle's allegation that any infringement of any claims of the epicRealm Patents was not willful.

**REQUEST NO. 46:**

All studies, analyses, evaluations, prior art searches, and opinions relating to the patentability, validity, infringement, enforceability, ownership, inventorship, interpretation, or scope of any claims of the epicRealm Patents.

**REQUEST NO. 47:**

With respect to all opinions of counsel or other analyses that Oracle intends to offer as evidence that Oracle's infringement of any claims of the epicRealm Patents was not willful, please produce:

     (a)     the opinion or other analysis;

(b)     all documents relating to the epicRealm Patents, Oracle's Web Products and Services, or any issue in this civil action, provided  to or considered by the person(s) who prepared the opinion or analysis; and

(c)     all documents relating to the epicRealm Patents, Oracle's Web Products and Services, or any issue in this civil action, provided to or considered by the person(s) who relied on the opinion or analysis.

**REQUEST NO. 48:**

All organizational charts for Oracle from 1999 to the present.

**REQUEST NO. 49:**

All document retention policies for Oracle from 1999 to the present.

**REQUEST NO. 50:**

All documents and things that refer or relate to the identity of all individuals who were interviewed or consulted by Oracle in investigating epicRealm's claim for patent infringement of the epicRealm Patents.

**REQUEST NO. 51:**

All dictionaries, treatises, extrinsic evidence, and other documents that tend to support, tend to refute, or otherwise relate to Oracle's proposed construction of any word or phrase in the claims of any epicRealm Patents.

**REQUEST NO. 52:**

All documents shared with Oracle's Customers or third parties that refer or relate to the filing of this civil action or documents that show or describe communications with such third parties, including any public announcements, advertisements, letters to the editor, press releases, or correspondence with customers, prospective customers, distributors, trade journals, open source communities, professional societies, investors, lenders, affiliates, or other persons.

**REQUEST NO. 53:**

All documents relating to any affirmative defense asserted by Oracle, including but not limited to:

(a)    documents that tend to support, tend to refute, or otherwise relate to Oracle's contention that claims of the epicRealm Patents are invalid for failure to comply with one or more of the requirements of 35 U.S.C. §§ 101, 102, 103, and 112;

(b)    documents that tend to support, tend to refute, or otherwise relate to Oracle's contention that that the relief sought by epicRealm in its claim is barred in whole or in part under the doctrine of equitable estoppel, laches, waiver and/or implied license.

**REQUEST NO. 54:**

All documents tending to prove or disprove that the epicRealm Patents are invalid or unenforceable.

**REQUEST NO. 55:**

All documents referring or relating to any alleged prior art to the epicRealm Patents, including but not limited to:

(a)    patents, publications, and other documents that Oracle contends are prior art to the epicRealm Patents; and

(b)    documents describing or concerning any devices, software, or other items that Oracle contends are prior art to the epicRealm Patents.

**REQUEST NO. 56:**

All documents referring or relating to any alleged prior invention by another of any of the inventions claimed in the epicRealm Patents, including but not limited to:

(a)    documents referring or relating to another's conception of any of the inventions claimed in the epicRealm Patents;

(b)     documents referring or relating to another's reduction to practice of any of the inventions claimed in the epicRealm Patents;

(c)     documents referring or relating to the diligence (or lack of diligence) with which another reduced to practice any of the inventions claimed in the epicRealm Patents;

(d)     documents referring or relating to any abandonment, suppression, or concealment of the prior invention; and

(e)     documents corroborating any person's account of prior invention or activities related to that prior invention.

**REQUEST NO. 57:**

All documents referring or relating to any contention that a combination of prior art may render obvious any claims of the epicRealm Patents, including but not limited to:

(a)     documents describing or concerning the education, experience, knowledge, or other characteristics of a person of ordinary skill in the art;

(b)     documents referring or relating to any reasons to combine prior art, including, but not limited to, any documents addressing whether or how the combination of prior art addresses the shortcomings or problems of prior art systems and methods addressed by the epicRealm Patents.

**REQUEST NO. 58:**

All documents referring or relating to any secondary considerations or objective indicia concerning nonobviousness that support or refute a conclusion that the subject matter as a whole of any asserted claim of the epicRealm Patents would or would not have been obvious to a person of skill in the relevant art at the time the inventions described therein were made.

**REQUEST NO. 59:**

All documents that refer or relate to Oracle's policies for the licensing of technology (licensing-in, licensing-out, and cross-licensing).

**REQUEST NO. 60:**

All documents that refer or relate to industry licensing practices.

**REQUEST NO. 61:**

All documents that refer to, relate to, or bear upon what would constitute a reasonable royalty rate for a license to make, use, sell, offer to sell, or import products that embody any of the claims of the epicRealm Patents.

**REQUEST NO. 62:**

All documents referring or relating to any license or patent rights obtained or granted by Oracle, that concern any patent, trade secret or know how relating to creating or managing custom web sites, including licenses or patent rights relating to the software, systems and processes used by Oracle or used to support Oracle's Web Products and Services.

**REQUEST NO. 63:**

All documents referring or relating to any communications or agreements with Oracle Customers or any other third party relating to the software, systems and processes used to support Oracle's Web Products and Services.

**REQUEST NO. 64:**

All documents that tend to support, tend to refute, or otherwise relate to any contention by Oracle that an alternative, noninfringing system or mode of operation was available to Oracle and would act to limit the amount of damages that epicRealm is entitled to recover in this civil action.

**REQUEST NO. 65:**

All documents relating to the systems and processes used to support Oracle's Web Site, and Oracle's Web Site traffic reports or analysis.

**REQUEST NO. 66:**

All documents referring or relating to products or services marketed or sold by Oracle in conjunction with Oracle's Web Site or Oracle's Web Products and Services.

**REQUEST NO. 67:**

All documents referring or relating to the profitability of Oracle's Web Site or Oracle's Web Products and Services.

**REQUEST NO. 68:**

All documents that refer or relate to the attributes, benefits, advantages, disadvantages, properties and/or characteristics of Oracle's Web Products and Services.

**REQUEST NO. 69:**

All documents that refer or relate to any assessment, analysis, study, evaluation or discussion of the actual or projected financial value to Oracle of Oracle's Web Site or Oracle's Web Products and Services.

**REQUEST NO. 70:**

All documents that refer or relate to the amount, frequency, character or quality of web traffic that is serviced through Oracle's web presence.

**REQUEST NO. 71:**

All documents referring or relating to Oracle's annual or quarterly financial statements.

**REQUEST NO. 72:**

All license agreements and purchase agreements that concern the creation or management of Oracle's Web Products and Services, including licensing or purchase agreements related to Oracle's Web Products and Services.

**REQUEST NO. 73:**

All documents referring or relating to domain name server (DNS) configuration files.

**REQUEST NO. 74:**

All documents relating to the design, development, implementation and/or configuration of Oracle's Web Site.

**REQUEST NO. 75:**

All documents referring or relating to Oracle's use of Apache HTTP servers.

**REQUEST NO. 76:**

All documents referring or relating to Oracle's Web Products and Services that use or incorporate Apache HTTP servers.

**REQUEST NO. 77:**

All documents or communications pertaining to Civil Action No. 2:05-cv-00163-DF-CMC pending in the Texas Actions.

**REQUEST NO. 78:**

All documents relating to Oracle's use of grid computing in any product.

**REQUEST NO. 79:**

All documents or communications referring or relating to the architecture of web servers, routers, switches and other hardware used in conjunction with Oracle's Web Products and Services.

**REQUEST NO. 80:**

Any and all documents concerning the sales network of Oracle's Web Products and Services, including, but not limited to, the location of all business offices, manufacturing and/or design facilities, sales agents, and product distribution outlets, whether or not owned by Oracle.

**REQUEST NO. 81:**

All documents concerning the quantity, by month or quarter and in total, of each of the Oracle's Web Products and Services made, sold, offered for sale, licensed or imported by or for Oracle, from the date any such product was first sold to the present.

**REQUEST NO. 82:**

All documents that relate to, report, identify or summarize Oracle's actual sales, profitability and/or returns of Oracle's Web Products and Services, by month, quarter and year, including the volume of sales and/or licenses of Oracle's Web Products and Services in both units and revenues, all fixed and variable costs attributable to or associated with Oracle's Web Products and Services, and gross revenues, net profits and gross profits derived from these sales and/or licenses from the first sale or license of any of Oracle's Web Product and Service to the present.

**REQUEST NO. 83:**

All documents that constitute, report, identify or summarize Oracle's projected sales and profitability of Oracle's Web Products and Services business, by month, quarter and year, including the projected sales in both units and revenues and the projected costs and expenses, both fixed and variable, associated with Oracle's Web Products and Services.

**REQUEST NO. 84:**

All financial and accounting documents concerning Oracle's overhead costs, and overhead costs allocated or attributed to Oracle's Web Products and Services.

**REQUEST NO. 85:**

All documents concerning research and development related to Oracle's Web Products and Services.

**REQUEST NO. 86:**

All financial and accounting documents prepared or organized by product or service referring to Oracle's Web Products and Services, including any documents referring to profit and/or loss, costs, or expenses by product or service.

**REQUEST NO. 87:**

Documents sufficient to provide profit and costs for each year since 1999, separately for each Oracle Customer, including but not limited to gross profit, net profit and fixed and variable costs by product and by category of product.

**REQUEST NO. 88:**

Documents referring or relating to the metrics by which Oracle sets prices for Oracle's Web Products and Services.

**REQUEST NO. 89:**

Documents pertaining to the pricing of Oracle's Web Products and Services.

OF COUNSEL:

Harry J. Roper
George S. Bosy
Aaron A. Barlow
Paul D. Margolis
Benjamin J. Bradford
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel: (312) 923-8305

Dated: July 18, 2007
807485 / 31393

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant*
*epicRealm Licensing, LP*

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 18, 2007, a true and correct copy of

the within document was caused to be served on the attorney of record at the following addresses

as indicated:

### VIA HAND DELIVERY

Mary B. Graham
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

### VIA ELECTRONIC MAIL

James G. Gilliland
Theodore T. Herhold
Eric M. Hutchins
Chad E. King
Robert J. Artuz
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA  94301
OracleEpicrealm@townsend.com

_/s/ David E. Moore_
David E. Moore

797128 / 31393 / Oracle

# Exhibit 6

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY