IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ORACLE CORPORATION and<br>ORACLE U.S.A. INC., | )<br>)<br>) | C.A. No. 06-414-SLR |
| Plaintiffs/Counterclaim Defendants, | )<br>) | **JURY TRIAL DEMANDED** |
| v. | )<br>) | **PUBLIC VERSION** |
| EPICREALM LICENSING, LP, | )<br>) | |
| Defendant/Counterclaim Plaintiff. | ) | |

### EPICREALM'S *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF TERRY MUSIKA

OF COUNSEL:

Harry J. Roper
George S. Bosy
Aaron A. Barlow
Patrick L. Patras
David R. Bennett
Paul D. Margolis
Benjamin J. Bradford
Emily C. Johnson
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel: (312) 923-8305

Dated: July 31, 2008
Public Version Dated: August 7, 2008
877617 /31393 / Oracle

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim
Plaintiff epicRealm Licensing, LP*

Defendant epicRealm Licensing LP ("epicRealm") hereby moves to exclude, pursuant to *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), the testimony of Plaintiffs' economic expert witness, Terry Musika ("Musika"), on the damages issues as identified herein.[1]

## I.  NATURE AND STAGE OF THE PROCEEDINGS

This patent infringement action was filed in 2006 and is now scheduled for a two-week jury trial starting January 12, 2009. EpicRealm accuses the Plaintiffs, Oracle Corp. and Oracle U.S.A. Inc. (collectively, "Oracle") of infringing two patents, U.S. Patent Nos. 5,894,554 and 6,415,335 (collectively, the "patents in suit"). Oracle contends that the claims in issue are invalid under 35 U.S.C. §§ 102, 103 and 112, and denies infringement. This *Daubert* motion is brought pursuant to the Court's Scheduling Order. (D.I. 29.)

## II.  SUMMARY OF THE ARGUMENT

Expert testimony is admissible only where it is relevant, reliable and based on a sound and correct methodology. At trial, Oracle intends to proffer the expert testimony of Musika to support its contention that epicRealm is entitled to only a "lump sum" payment for the life of the patents as compensation for Oracle's infringement of the patents in suit. As shown below, this proffered opinion is unreliable and based on an improper methodology. Accordingly, Musika's "lump sum" damages testimony should be excluded. (Musika also offered an alternative traditional reasonable royalty analysis that is not the subject of this motion.)

## III.  STATEMENT OF FACTS

The patents in suit disclose and claim improved methods and systems for managing the generation of dynamic Web pages. Pursuant to the Court's scheduling order, the parties exchanged expert reports on the issue of damages. EpicRealm submitted the expert report of

---

[1] Pursuant to D. Del. LR 7.1.1, the parties met and conferred on this motion. Plaintiffs will oppose this motion.

Mr. Michael J. Wagner ("Wagner"), who showed that epicRealm is entitled to compensation for Oracle's infringement of the patents in suit under a reasonable royalty theory. In his analysis, the hypothetical negotiation would have occurred in late 2000. Wagner used a long accepted methodology as outlined in the *Georgia-Pacific* case ("*Georgia-Pacific*") to determine what royalty rate would have resulted from the hypothetical negotiation. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir.), *cert. denied*, 404 U.S. 870 (1971); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003). Wagner then applied that royalty rate to Oracle's ***actual*** sales to arrive at a damages figure, using Oracle's actual sales through 2007. This is in accordance with well accepted methodology for calculating patent infringement damages.

Oracle submitted Musika's expert report in response on the damages issue. His expert report appears at Exh. 1 hereto. Musika opined that at the time of Oracle's first infringement, epicRealm would have agreed to a "lump sum" payment for all future infringement by Oracle, not just through 2007, but for long after that, through the expiration of the patents in 2016. (Exh. 1, Musika Rpt. at 19-20, 80.) In arriving at his "lump sum" damages theory, Musika did not rely on any accepted lost profits analysis or reasonable royalty analysis. At his deposition, Musika freely admitted that he did not use a hypothetical negotiation or perform a *Georgia-Pacific* analysis to arrive at his "lump sum" damages theory. (Exh. 2 hereto, Musika Dep. at 161:3-162:15.) Without the constraints of a hypothetical negotiation or the *Georgia-Pacific* factors, Musika constructed a damages theory using an unacceptable and unpublished methodology. For example, rather than applying a royalty rate to Oracle's actual sales to arrive at a "lump sum" amount, Musika relied ***on his own projection of sales*** from 2008 through 2016, the date the patents-in-suit expire. (Exh. 2, Musika Dep. at 148:16-23; Exh. 3 hereto, ORCL1974150-53.)

3

On this issue, there is no dispute that the Musika did not rely on any sales projections by Oracle from the period of 2008 to 2016 and instead he relied on calculating his own projections. Musika then discounted his projected sales back to the year 2000, using for every year a speculative and inappropriate discount rate of 20%. (Exh. 2, Musika Dep. at 156:13-158:5; Exh. 3, ORCL1974150-53.) As a result, Musika's "lump sum" damages theory concluded with a lump sum that is less than the damages that Musika contends would result from a reasonable royalty. (Exh. 1, Musika Rpt. at 80-81.)

EpicRealm shows herein that Musika's "lump sum" damages theory has no basis in any accepted methodology and is not supported by the required facts and data.

## IV. ARGUMENT

### A. The Legal Standard

There are two legal standards at issue here. The first is one of substantive law, and the second is directed to the admissibility of expert testimony under *Daubert*.

On the substantive law, the general rule for determining actual damages requires a calculation based on the profits lost by the patentee as a result of the infringement. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989). In cases where a patentee does not produce a patented product itself, and therefore cannot establish lost profits, the law provides that a patentee is entitled to no less than a reasonable royalty. 35 U.S.C. § 284; *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) ("If actual damages cannot be ascertained, then a reasonable royalty must be determined."). Specifically, the law provides that "upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35

4

U.S.C. § 284. Plainly, 35 U.S.C. § 284 establishes a floor below which damage awards may not fall. *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987).

To determine a reasonable royalty, the Federal Circuit follows the methodology set forth in *Georgia-Pacific*. 318 F. Supp. at 1120; *Micro Chem.*, 317 F.3d at 1393. The hypothetical negotiation requires the envisioning of a licensing agreement reached between the parties at the time the infringement began (here, the end of 2000). *Id.* at 1124. *Georgia-Pacific* lists fifteen objective factors that may be considered relevant in the hypothetical reasonable royalty rate negotiation. *Id.* at 1120.

The legal standard governing the admissibility of expert testimony is well settled. In accordance with Federal Rule of Evidence 702, the court may admit expert testimony in order to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993). However, prior to admitting expert testimony, the trial court should perform a "gatekeeping" function and to that end should examine the proposed expert testimony to ensure that it is both relevant and reliable, and that it was arrived at through the use of an appropriate and correct methodology. *Daubert*, 509 U.S. at 597.

Rule 702 and the pertinent case law allow for the exclusion of expert testimony in the event that it is found to be unreliable or, where the testimony has little or no relevance to the issues in the action, or where it was arrived at through the use of an inappropriate methodology. *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). "*Daubert* suggests several factors that a district court should take into account in evaluating whether a particular scientific methodology is reliable...." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994). These factors include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Elcock v. Kmart Corp.*, 233 F.3d 734, 745-746 (3d Cir. 2000). As the proponent of the expert testimony of Musika, Oracle bears the burden of establishing the relevance and reliability of his proposed expert testimony by a preponderance of the evidence. *See Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999).

### B.  Musika's "Lump Sum" Testimony Should Be Excluded

Musika's "lump sum" opinion on damages is unreliable because he failed to use an accepted methodology for calculating a reasonable royalty and also failed to rely on acceptable facts and data to support his opinion.

Musika's use of his own projected sales from 2008 to 2016 followed by the 20% annual discounting of those sales is not accepted methodology. Musika cites no publication or other evidence that would support the conclusion that the manner in which he arrived at a "lump sum" damage award is an accepted methodology for determining damages in a patent infringement action.

Furthermore, several examples illustrate the flaws in Musika's "lump sum" damages theory. For example, it is well settled that a patent holder is usually entitled to prejudgment interest on past due royalties. Yet, under Musika's methodology, the patentee's royalty income stream is not increased but rather ***reduced*** by a 20% annual discount rate, taken away every year, year after year, which would more than eliminate any prejudgment interest award. Additionally, Musika's use of a 20% discount rate to reduce epicRealm's recovery is not only

6

methodologically flawed but also not supported by facts or data. The 20% figure was arbitrary, unsupported and plucked out of the air. It is undisputed that Musika relied on only one year of epicRealm data to support the 20% figure and extended that figure for the next 16 years of his analysis in the absence of any explanation as to how this could conceivably be anything other than speculative and arbitrary. (Exh. 3, ORCL1974150-53; Exh. 2, Musika Dep. at 156:13-21.)

Another example of the flaw in Musika's methodology is the illogical result that would follow from the use of Musika's methodology. If an alleged infringer projected sales at the time of the hypothetical negotiation but never actually had any, Musika's theory would result in some "lump sum" damages, but how could there be any damages if there were no infringing sales? Similarly, if the infringer projected no infringing sales but actually had infringing sales, the discounted cash flow method would result in a zero "lump sum," leaving the patentee with nothing—no reasonable royalty. This is exactly the sort of methodology that *Daubert* would exclude from presentation to a jury.

An additional methodological flaw is that Musika's "lump sum" calculation was based on applying the royalty rate to Musika's *projected* sales of the infringing products, rather than *actual* sales. (Exh. 3, ORCL1974150-53.) This is not accepted methodology. The problem with the use of projected sales is their inherently speculative nature—a fact borne out here in Musika's attempt to guess what the sales would have been from 2008 to 2016, in the absence of actual sales data, and in the absence of any facts or data to support his projections.

Musika's methodology is not only flawed and speculative, it is also lacking supporting facts and data. Musika admitted that he did not rely on any sales projections prepared by Oracle; Oracle has no such projections. *See Robinson v. Sanctuary Record Groups, Ltd.*, 542 F. Supp. 2d 284, 293 (S.D.N.Y. 2008) (rejecting expert testimony for plaintiff's failure to provide

7

"backup documents" to the expert for use in his damages calculation). Moreover, Musika plucked the 20% discount rate that was central to his analysis out of the air, and, even worse, he applied the 20% rate to each and every year in the complete absence of any supportive facts or data that could support this extreme discount theory. (Exh. 3, ORCL1974150-53; Exh. 2, Musika Dep. at 156:13-21.)

The abundance of flaws in Musika's "lump sum" analysis goes further. In determining a reasonable royalty, Musika erroneously considered subjective factors—instead of the objective *Georgia-Pacific* factors—to determine that the parties were married to a "lump sum" payment. One such subjective factor was Oracle's alleged desire to pay a small "lump sum" payment which is less than the reasonable royalty damages calculated by Musika. (Exh. 2, Musika Rpt. at 19, 33, 76, 80-81.) Of course, Oracle would desire to pay as little as possible, and epicRealm would want as much as possible—but those are not objective *Georgia-Pacific* factors. Even worse, while a hypothetical negotiation presumes that the parties have full knowledge of the facts, *i.e.*, all cards are face up, Musika did not make that assumption as required by the law. *See Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988); *Georgia-Pacific*, 318 F.Supp. at 1122. Rather, he assumed just the opposite, namely, that epicRealm would not have known the magnitude of Oracle's actual sales through 2007 even though they are in fact known. (Exh. 2, Musika Dep. at 161:3-162:5.) This approach is not allowed under the relevant case law. *See Fromson*, 853 F.2d at 1575; *Georgia-Pacific*, 318 F.Supp. at 1122.

The bottom line of Musika's "lump sum" damages theory further illustrates why this testimony should be excluded. As discussed above, Musika offered two damages theories, a "lump sum" theory and an alternative reasonable royalty theory. The flaw that Musika could not explain is that the "lump sum" damages theory for damages results through 2016 results in a far

8

smaller damages amount than the alternative reasonable royalty theory for damages through 2007. (Exh. 2, Musika Rpt. at 19-20, 80.) And so, because the "lump sum" damages theory results in a damage amount that is far less than the amount that resulted from his own *Georgia-Pacific* reasonable royalty theory, the "lump sum" damages theory cannot survive as a matter of law. That is so because the law mandates that a patent holder must receive compensation not "less than a reasonable royalty...." 35 U.S.C. § 284.

## CONCLUSION

For the foregoing reasons, Musika's "lump sum" damages theory should be excluded.

OF COUNSEL:

Harry J. Roper
George S. Bosy
Aaron A. Barlow
Patrick L. Patras
David R. Bennett
Paul D. Margolis
Benjamin J. Bradford
Emily C. Johnson
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel: (312) 923-8305

Dated: July 31, 2008
Public Version Dated: August 7, 2008
877617 /31393 / Oracle

POTTER ANDERSON & CORROON LLP

By: /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim Plaintiff epicRealm Licensing, LP*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 7, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on August 7, 2008, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| Mary B. Graham<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>MGraham@MNAT.com | James G. Gilliland<br>Igor Shoiket<br>Townsend and Townsend and Crew LLP<br>Two Embarcadero Center<br>Eighth Floor<br>San Francisco, CA 94111-3834<br>OracleEpicrealm@townsend.com |
| Theodore T. Herhold<br>Robert J. Artuz<br>Eric M. Hutchins<br>Eric A. Mercer<br>Joseph A. Greco<br>Nitin Gupta<br>Townsend and Townsend and Crew LLP<br>379 Lytton Avenue<br>Palo Alto, CA 94301<br>OracleEpicrealm@townsend.com | Chad E. King<br>Townsend and Townsend and Crew LLP<br>1200 Seventeenth Street<br>Suite 2700<br>Denver, CO 80202<br>OracleEpicrealm@townsend.com |

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

788480 / 31393 / Oracle

# Exhibit 1

**THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY**

# Exhibit 2

**THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY**

# Exhibit 3

**THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY**