IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ORACLE CORPORATION and ORACLE U.S.A., INC., | ) ) ) | |
| Plaintiffs-Counterdefendants, | ) ) | |
| v. | ) ) | C.A. No. 06-414 (SLR) |
| EPICREALM LICENSING, LP, | ) ) | |
| Defendant-Counterclaimant. | ) | |

**ORACLE'S OPPOSITION TO EPICREALM'S DAUBERT MOTION TO EXCLUDE
TESTIMONY OF DR. PAUL CLARK**

OF COUNSEL:

James G. Gilliland
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND
   AND CREW LLP
379 Lytton Avenue
Palo Alto, CA  94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA  94065

Dated:  August 21, 2008

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com
   *Attorneys for Oracle Corporation
   and Oracle U.S.A., Inc.*

## TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF PROCEEDINGS ........................................................................1

II.  SUMMARY OF ARGUMENT ........................................................................................1

III. STATEMENT OF FACTS ..............................................................................................3

IV.  ARGUMENT ..................................................................................................................5

    A.   Dr. Clark's Testimony Is Relevant to the Issue of Whether There
        is Underlying Direct Infringement ....................................................................5

        1.   Dr. Clark's Testimony is Relevant to the Issue of Direct
            Infringement of Method Claims .............................................................6

        2.   Dr. Clark's Testimony is Relevant to the Issue of Direct
            Infringement of System Claims ............................................................12

        3.   Dr. Clark's Testimony Is Relevant to Direct Infringement
            of the Machine Readable Medium Claim .............................................13

    B.   Dr. Clark's Testimony Concerning Lack of Use of the Patented
        Technology by Oracle Customers Is Admissible ...............................................15

        1.   The Federal Rules of Evidence and Third Circuit Law
            Favor the Admissibility of Evidence ....................................................15

        2.   Dr. Clark's Testimony Is Reliable As Required by FRE
            702 and 703 ..........................................................................................17

        3.   The Probative Value of Clark's Testimony Outweighs the
            Potential Prejudice ...............................................................................22

V.   CONCLUSION...............................................................................................................24

# TABLE OF AUTHORITIES

Page

## Cases

*ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*
  501 F.3d 1307 (Fed. Cir. 2007) ...................................................................... 7, 10, 13

*ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*
  No. C 04-03526 SI, 2008 U.S. LEXIS 21725, (N.D. Cal. Mar. 19, 2008) .............................. 11

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*
  418 F. Supp. 2d 1021 (S.D. Ind. 2005) ................................................................ 7

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*
  1 Fed. App'x 879 (Fed. Cir. 2001) ..................................................................... 7

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*
  424 F.3d 1293 (Fed. Cir. 2005) ........................................................................ 9

*Daubert v. Merrell Dow Pharms. Inc.*
  509 U.S. 579 (1993) ................................................................................ 17, 21

*Dynacore Holdings Corp. v. U.S. Philips Corp.*
  363 F.3d 1263 (Fed. Cir. 2004) ..................................................................... 7, 8, 13

*Elantech Devices Corp. v. Synaptics, Inc.*
  No. C. 06-01839-CRB, 2007 WL 3256229 (N.D. Cal. Nov. 5, 2007) ................................ 5, 10

*Embrex, Inc. v. Serv. Eng'g. Corp.*
  216 F.3d 1343 (Fed. Cir. 2000) ........................................................................ 7

*Fantasy Sports Props., Inc. v. Sportsline.com Inc.*
  287 F.3d 1109 (Fed. Cir. 2002) ....................................................................... 5, 9

*Hilgraeve Corp. v. Symantec Corp.*
  265 F.3d 1336 (Fed. Cir. 2001) ...................................................................... 8, 11

*Imagexpo L.L.C. v. Microsoft Corp.*
  284 F. Supp. 2d 365 (E.D. Va. 2003) .................................................................. 7

*In re Bond*
  910 F.2d 831 (Fed. Cir. 1990) ......................................................................... 9

*In re Paoli R.R. Yard PCB Litig.*
  35 F.3d 717 (3d. Cir. 1994) ........................................................................ 16, 22

*Inline Connection Corp. v. AOL Time Warner Inc.*
  470 F. Supp. 2d 435 (D. Del. 2007) .............................................................. 16, 20, 22

# TABLE OF AUTHORITIES (con't)

Page

*Intel Corp. v. ITC*
  946 F.2d 821 (Fed. Cir. 1991) .................................................... 5

*Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*
  851 F.2d 540 (1st Cir. 1988)...................................................... 22

*Kannankeril v. Terminix Int'l, Inc.*
  128 F.3d 802 (3d Cir. 1997) ...................................................... 21

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*
  420 F.3d 1369 (Fed. Cir. 2005) .................................................. 7

*Oak Indus., Inc. v. Zenith Elecs. Corp.*
  726 F. Supp. 1525 (N. D. Ill. 1980) ........................................... 7

*Ormco Corp. v. Align Tech., Inc.*
  463 F.3d 1299 (Fed. Cir. 2006) ............................................... 7, 9

*Padcom, Inc. v. Netmotion Wireless, Inc.*
  No. Civ. 03-983-SLR, 2006 WL 416865 (D. Del. Feb. 22, 2006) .......................................... 14

*Storage Computer Corp. v. Veritas Software Corp.*
  No. 3:01-CV-2078-N, 2004 U.S. Dist. LEXIS 3887 (N.D. Tex. Mar. 12, 2004) .................................................................................... 10

*Therasense, Inc. v. Becton Dickinson and Co.*
  No. C-04-02123-WHA, 2008 WL 2323856, (N.D. Cal. May 22, 2008)............... 15, 17, 18, 20

*United States v. Mitchell*
  365 F.3d 215 (3d Cir. 2004) ...................................................... 17

**Rules**

Fed. R. Civ. P. 30(b)(6)................................................................. 18, 21

Fed. R. Evid.702 ........................................................................... 16

Fed. R. Evid 703 .......................................................................... 21

Plaintiffs Oracle Corporation and Oracle U.S.A., Inc. (jointly "Oracle") submit this brief in opposition to EpicRealm's *Daubert* Motion to Exclude Testimony of Dr. Paul Clark.

## I.  NATURE AND STAGE OF PROCEEDINGS

Oracle incorporates by reference its summary of the Nature and Stage of Proceedings set forth in its Opening Claim Construction Brief (D.I. 203), filed on July 31, 2008.

## II.  SUMMARY OF ARGUMENT

1.  EpicRealm seeks to exclude the testimony of Oracle's technical expert, Dr. Clark, solely with respect to his reliance on information provided by Oracle engineers that customers make little use of the alleged patented technology.  EpicRealm does not challenge the remainder of Dr. Clark's opinions or proposed testimony.  EpicRealm asserts that Dr. Clark's testimony regarding customer usage of the alleged patented technology should be excluded because: (a) it is based on biased hearsay statements of Oracle's employees; and (b) it is not supported by any other data or testimony.  EpicRealm's argument fails for several reasons.

2.  First, Dr. Clark's testimony is relevant to rebut epicRealm's infringement allegations.  Nine of the 12 patent claims epicRealm alleges that Oracle infringes in this case are method claims.  Without mentioning those claims, epicRealm attempts to create a false impression that Dr. Clark's testimony concerning whether Oracle customers practice the method claims of the patents-in-suit is irrelevant.  To prove that Oracle contributorily infringes or induces infringement of the method claims, however, EpicRealm bears the burden of proving that customers directly infringe the claims by actually using Oracle's accused products to practice the claimed methods.  It is insufficient for epicRealm to show that the accused products are "capable of" such use.  Regardless of whether Dr. Clark's testimony were relevant to the three other asserted claims, Dr. Clark's testimony is relevant to whether customers directly infringe the

method claims. Dr. Clark's testimony also is relevant to whether customers directly infringe the two asserted "system" claims. Like the method claims, these claims require that customers create the claimed systems, not that Oracle products are merely "capable of" creating such systems. Finally, Dr. Clark's testimony is relevant to whether customers directly infringe the one asserted "machine readable medium" claim. The software Oracle supplies is incapable of performing all the steps of this claim.

3.    Second, Dr. Clark's testimony is based on the type of information on which an expert may rely in rendering his opinions, and is therefore admissible. Federal Rule of Evidence 703 makes clear that "the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted," as long as they are of the type reasonably relied upon by experts in the field. EpicRealm makes no showing that speaking with Oracle engineers regarding the extent to which customers make use of various features in Oracle's products is in any way improper or not the type of information an expert would reasonably rely upon. Moreover, EpicRealm deposed three witnesses whom Dr. Clark has relied on regarding customers' use of the accused products in this case and had the opportunity to depose the others. Contrary to epicRealm's arguments, Dr. Clark did rely on corroborating Oracle documentation concerning the technical capabilities of the accused products. This documentation has allowed Dr. Clark to form opinions on why few, if any, customers would want to use the minor "metrics-based load balancing" option which epicRealm contends is a key feature of the alleged patented invention and is necessary to come within the scope of the patent claims.

4.    Finally, other than lawyer argument, epicRealm makes no showing that it will be prejudiced by Dr. Clark's testimony, which can be and likely will be subject to cross-examination at trial. EpicRealm has had ample opportunity during discovery to determine whether and to

what extent customers actually use the "metrics-based load balancing" option that epicRealm has made the center of its case. It is epicRealm's burden to prove that for purposes of its method claims, as well as the system claims and machine readable medium claim, Oracle's customers actually use the patented technology in order to show that Oracle contributed to or induced infringement of the patents-in-suit. Despite bearing the burden of proof on this issue, neither epicRealm nor its expert witnesses have found any evidence that this option is anything but a minor, seldom-used feature. Despite its failure to find the evidence it seeks, epicRealm is now trying paint a false picture that this rarely used option is driving the success of the accused Oracle products. Dr. Clark will explain to the jury that Oracle witnesses knowledgeable about how customers use the accused products confirm that this is not so and that customers are not, therefore, directly infringing the patents. He will corroborate the reasonableness of this evidence with his own technical understanding, based on a review of Oracle documentation, of why most customers would not want to use this option. Any questions regarding Dr. Clark's conversations with Oracle engineers or the other work he did to corroborate the information he received go to the weight, not the admissibility, of his testimony.

## III.    STATEMENT OF FACTS

EpicRealm alleges that Oracle both directly and indirectly infringes claims 1-5 and 7-11 of the '554 patent and claims 2 and 16 of the '335 patent. A1; A2.[1] Oracle sells three software products—Web Cache, Internet Application Server ("IAS"), and Database—which epicRealm

---

[1] References to evidence are to the Appendix of Exhibits in Support of Oracle's Claim Construction Brief and Motions Filed on July 31, 2008 (D.I. 214 and 215), and to the Supplemental Appendix of Oracle Exhibits Filed on August 21, 2008. The Appendix contains Exhibits A1-A71; the Supplemental Appendix begins with Exhibit A72. A1 and A2 are the '554 and '335 patents, respectively.

mixes and matches to create three different infringement theories. Claims 1-5 and 7-8 of the '554 patent and claims 2 and 16 of the '335 patent are method claims. Claims 9 and 10 of the '554 patent are "system" claims. Claim 11 of the '554 patent is a "machine readable medium" claim.

EpicRealm asserts that an option in Oracle's software called "metrics-based load balancing" is necessary for the product and the use of the product to come within the scope of the asserted claims. Discovery has shown that the "metrics-based load balancing" option is seldom, if ever, used by customers. Neither epicRealm's technical expert witness, Dr. Finkel, nor epicRealm's damages expert witness, Mr. Wagner, did any investigation of how often Oracle customers actually use the "metrics-based load balancing" option in the accused products.

Dr. Paul Clark is Oracle's technical expert witness. Dr. Clark submitted his report, rebutting Dr. Finkel's report on infringement, on June 6, 2008. *See* epicRealm Exh. 1 to Clark Daubert Motion (Dr. Clark's entire report). Dr. Clark noted that Dr. Finkel had not identified evidence that Oracle customers have actually used the accused products in an infringing manner. *Id.* at 61-63. Dr. Clark did not rest on Dr. Finkel's failure to identify such evidence, however. Dr. Clark interviewed Oracle employees who were knowledgeable about how Oracle customers use the accused products. They informed him that few, if any, customers use the "metrics-based load balancing" option. *Id.* at 61- 65 (*see* footnotes 89-95). Dr. Clark corroborated what these Oracle employees, whom epicRealm has deposed in this case, told him by reference to Oracle documentation which shows why most customers would not want to use "metrics-based load balancing." *Id.* Having found no evidence whatsoever that "metrics-based load balancing" is anything but a minor, seldom-used option, epicRealm nevertheless moves to exclude Dr. Clark's testimony on this issue as "unreliable."

IV.    **ARGUMENT**

A.    **Dr. Clark's Testimony Is Relevant to the Issue of Whether There is Underlying Direct Infringement**

In its motion to exclude Dr. Clark's testimony, EpicRealm argues that two legal standards are at issue, the first directed to substantive law and the second to the *Daubert* issue.  ER Br. at 2. With respect to substantive law, epicRealm contends that Oracle indirectly infringes the patents by its sale of software to its customers.  EpicRealm concedes, as it must, that to establish indirect infringement by Oracle, it must prove direct infringement.  *Id.*  EpicRealm contends, however, that it can establish underlying direct infringement with respect to the two asserted patent claims directed to network systems (Claims 9 and 10 of the '554 patent), and with respect to the one asserted "machine readable medium claim" (Claim 11 of the '554 patent) with proof that the software sold by Oracle enables Oracle's customers to practice the functions recited in the claims.  ER Br. at 3.  EpicRealm relies on *Fantasy Sports Props., Inc. v. Sportsline.com Inc.*, 287 F.3d 1109, 1118 (Fed. Cir. 2002), for this proposition.  EpicRealm argues that to show direct infringement of these system and machine readable medium claims, the software sold by Oracle need only be "*capable of* operating in an infringing manner."  ER Br. at 3 (*citing Intel Corp. v. ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991), and *Elantech Devices Corp. v. Synaptics, Inc.,* No. C. 06-01839-CRB, 2007 WL 3256229, at *6 (N.D. Cal. Nov. 5, 2007)).

EpicRealm's motion ignores the fact that all the other claims it asserts in this case are method claims (*i.e.*, claims 1-5 and 7-8 of the '554 patent and claims 2 and 16 of the '335 patent). EpicRealm does not argue, nor can it argue, that direct infringement of method claims can be proven merely with evidence that the accused products "enable" customers to practice the claimed functions or that the accused products are "capable" of being used to practice the claimed methods.  Federal Circuit law requires that, to prove direct infringement of a method

claim, a patent owner must prove that someone actually has practiced all the steps of the claimed method. *See* Section IV.A.1, *infra*.

EpicRealm does not explain how or why *Fantasy Sports,* or the other cases it cites, apply to its motion to preclude Dr. Clark's testimony concerning lack of direct infringement for purposes of the asserted method claims.[2]  Apparently, epicRealm is suggesting that Dr. Clark's testimony is irrelevant to the issue of underlying direct infringement by implying that a showing of mere capability is sufficient to establish direct infringement, and that whether customers use the software in an infringing manner does not matter.  Tellingly, epicRealm does not clearly articulate this argument in a separate section, but rather seeks to cast doubt on the relevancy of Dr. Clark's testimony and to leave to the Court's imagination how this case law might apply to different types of claims.  In light of the fact that epicRealm is asserting method claims, however, epicRealm's vague suggestions that Dr. Clark's testimony is not relevant amount to nothing more than a distraction.  Moreover, as discussed below, Dr. Clark's testimony is relevant to *all* asserted claims and is admissible to show that Oracle customers do not use the accused software in an infringing manner.

> ### 1.    Dr. Clark's Testimony is Relevant to the Issue of Direct Infringement of Method Claims

Neither *Fantasy Sports* nor *Intel*, the Federal Circuit cases on which epicRealm relies,

---

[2] Neither Oracle nor Dr. Clark bear the burden of "disproving" direct infringement; the burden of proof is epicRealm's.  *DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1306 (Fed. Cir. 2006). Neither epicRealm's technical expert, Dr. Finkel, nor its damages expert, Mr. Wagner, made any attempt to determine how often Oracle customers actually used the accused products in the allegedly infringing manner.  Because the deposition testimony of knowledgeable Oracle witnesses, on whom Dr. Clark has relied, shows that the alleged infringing configurations are rarely, if ever, used, epicRealm is casting about for ways to keep this evidence out and to pretend that it is irrelevant.

applies to method claims; epicRealm does not even suggest that they do.  To prove indirect infringement of a method claim, epicRealm must establish direct infringement.  *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (to succeed on a claim of indirect infringement, "the patentee must show, first that there has been direct infringement").  "Method claims are infringed only when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco Corp. v. Align Tech., Inc.,* 463 F.3d 1299, 1310-11 (Fed. Cir. 2006); *Embrex, Inc. v. Serv. Eng'g. Corp.*, 216 F.3d 1343, 1352 (Fed. Cir. 2000) ("[A]s a matter of law, an offer to sell a device cannot infringe a method patent without evidence of the device's actual use to carry out the method.") *See also Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 418 F. Supp. 2d 1021, 1042 (S.D. Ind. 2005) (defendant liability limited to only those devices "that can be shown to have executed the claimed method");  *Imagexpo L.L.C. v. Microsoft Corp.*, 284 F. Supp. 2d 365, 369 (E.D. Va. 2003) (citing *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 Fed. App'x 879, 882-85 (Fed. Cir. 2001), in holding that a "patentee must establish the connection between sales and direct infringement"); *Oak Indus., Inc. v. Zenith Elecs. Corp*., 726 F. Supp. 1525, 1543-44 (N. D. Ill. 1980) (plaintiff cannot recover a reasonable royalty based on all units "capable of infringing" but must be limited to the instances of "infringing converters").

A hypothetical act of direct infringement is insufficient to prove indirect infringement. *ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d  1307, 1312 (Fed. Cir. 2007)  (A claimant seeking damages for inducement must point to "specific instance[s] of direct infringement and restrict its suit to liability stemming from [those] specific instance[s].") (*quoting Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275-76 (Fed. Cir. 2004)).  In *ACCO Brands*, the plaintiff, ACCO, asserted induced infringement of method and

system claims. ACCO argued that underlying direct infringement was established by evidence showing that the accused device, a key lock for a computer, was *capable of* being used in an infringing manner. *ACCO Brands*, 501 F.3d at 1312. The evidence included expert testimony, a set of instructions provided in defendant's key lock product that described the infringing method, and the jury's observations of the lock itself. *Id*. The jury found inducement and awarded damages.

On appeal, ACCO argued that the jury was entitled to accept expert testimony and find that, at least some of the time, all users of the key lock would use it in an infringing manner. The Federal Circuit disagreed. First, the court found that because the accused device can be used at any given time in a non-infringing manner, the accused device does not *necessarily* infringe the patent. *Id.* at 1313 (emphasis added). Second, the court found that ACCO failed to point to specific instances of direct infringement—the record contained no evidence of actual users having operated the lock in an infringing manner. *Id.* ACCO relied on *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336 (Fed. Cir. 2001), for the proposition that an accused device may be found to infringe a product claim "if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation." *ACCO Brands*, 501 F.3d at 1313. The court disagreed, stating "[t]hat broad legal statement does not alter the requirement that the patentee must prove specific instances of direct infringement or that the accused device necessarily infringes the patent in suit, in order to sustain a jury verdict of induced infringement." *Id.* at 1313. "Hypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement." *Id.* (*citing Dynacore*, 363 F.3d at 1274).

Because the Oracle products have substantial non-infringing uses, epicRealm cannot

show that the use of the product necessarily infringes the claimed methods. It is undisputed, for example, that the accused Oracle products can be, and are, used without using the type of "metrics-based load balancing" that epicRealm contends is necessary to come within the scope of the asserted method claims. *See* Oracle's Motion for Summary Judgment of Noninfringement (D.I. 205) at 35-37. Thus, epicRealm must point to specific instances of direct infringement in order to prove inducement of infringement or contributory infringement. Mere sale of the Oracle products is insufficient to establish direct infringement. *See Ormco Corp*., 463 F.3d at 1310-11. Because use of the Oracle products does not necessarily infringe the method claims, mere use of the accused products by Oracle's customers is likewise insufficient to prove underlying direct infringement. EpicRealm must show that a customer used the accused product in a way that infringes one of the method claims.

Although epicRealm has not articulated its argument, epicRealm presumably relies on *Fantasy Sports* for the proposition that the sale of a software product infringes a patent so long as it contains a "means" capable of being used in an infringing manner. *Fantasy Sports*, however, is limited to "means-plus-function" claims. *Fantasy Sports* involved a single independent claim written in "means-plus-function" format pursuant to 35 U.S.C. §112, ¶6. A means-plus-function claim is written such that a structure is claimed as a "means" for performing such function. Infringement of a means-plus-function claim limitation typically only requires that the relevant device has some means (*i.e.,* structure) capable of performing the recited function. *See, e.g., In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990). Accordingly, the Federal Circuit has limited the "capable of" rule of *Fantasy Sports* to means-plus-function claims. *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1311 (Fed. Cir. 2005) (holding that means-plus-function claims require only that an accused device be "*capable of operating* in the

enumerated mode," and citing *Fantasy Sports*, 287 F.3d at 1117-18) (emphasis added)).  One

district court has also limited the application of *Fantasy Sports* on the basis that it applies only to

means-plus-function claims:

> A key part of *Fantasy Sports'* analysis is that the limitation in the "means plus
> function" claim that must be embodied in the accused product in order to find
> infringement is only the means for performing the claimed function; the means
> may be present in the accused device regardless whether that means is activated
> or utilized.  Moreover, *Fantasy Sports* repeatedly emphasized that it is the
> language of the claim that is dispositive, not merely whether a device is capable
> of being modified to infringe.  Unlike a "means plus function" claim, *the
> language of a standard apparatus claim, as here, does not fall within the
> "capability" analysis of Fantasy Sports.*

*Storage Computer Corp. v. Veritas Software Corp.*, No. 3:01-CV-2078-N, 2004 U.S. Dist.

LEXIS 3887, at *12-13 (N.D. Tex. Mar. 12, 2004) (citations and quotations omitted) (emphasis

added).

　　　　The other Federal Circuit case on which epicRealm relies, *Intel*, is likewise

distinguishable from the asserted method claims.  In *Intel*, the Federal Circuit interpreted the

specific claim language to require only "capability."  The court stated:

> Because the language of claim 1 refers to "program*able* selection means" and
> states "whereby *when* said alternate addressing mode is selected" (emphasis
> added), the accused device, to be infringing, need only be capable of operating in
> the page mode.  Contrary to GI/M's argument, actual page mode operation in the
> accused device is not required.

946 F.2d at 832 (emphasis in original).  Here, there is no language in the method claims that

would allow for such an interpretation.

　　　　EpicRealm also cites *Elantech Device Corp. v. Synaptics, Inc.*, No. C 06-01839-CRB,

2007 WL 3256229 (N.D. Cal. Nov. 5, 2007).  In *Elantech*, the court relied on the generalized

language in *Hilgraeve* ("The Federal Circuit has held that 'an accused device may be found to

infringe if it is reasonably capable of satisfying the claim limitations, even thought it may also be

capable of non-infringing modes of operation.'").  *Elantech*, 2007 WL 3256229, at *6.  As

discussed above, in *ACCO Brands*, the Federal Circuit clarified that the "broad legal statement" in *Hilgraeve* "does not alter the requirement that [plaintiff] must prove specific instances of direct infringement or that the accused device necessarily infringes the patent in suit" to prove direct infringement underlying a claim of indirect infringement. *ACCO Brands*, 501 F.3d at 1313. Thus to the extent that the conclusion of infringement in *Elantech* relies on *Hilgraeve*, *Elantech* is superseded by the Federal Circuit's decision in *ACCO Brands*.[3] Subsequent decisions from the Northern District of California have cited *ACCO Brands*. For example, in *ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, No. C 04-03526 SI, 2008 U.S. LEXIS 21725, at *21 (N.D. Cal. Mar. 19, 2008), the court denied plaintiff's motion for summary judgment of inducement of infringement, holding that plaintiff had not proven direct infringement under the *ACCO Brands* standard: "In order to prove direct infringement, the patent holder 'must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit.'" *Id.* (*quoting ACCO Brands*, 501 F.3d at 1313).

Regardless of whether epicRealm could prove direct infringement of the "system" and "machine readable medium" claims with evidence of mere "capability," Dr. Clark's testimony is relevant to rebut epicRealm's attempt to prove that the method claims have been directly infringed, a necessary predicate to epicRealm's allegations that Oracle induced infringement of or contributorily infringes those claims.

---

[3] The *Elantech* decision was decided on October 27, 2007, shortly after the *ACCO Brands* decision issued from the Federal Circuit on September 12, 2007. The *Elantech* decision does not cite *ACCO Brands*, although it is clearly relevant to the decision.

**2.     Dr. Clark's Testimony is Relevant to the Issue of Direct Infringement of System Claims**

EpicRealm is wrong that direct infringement of the asserted system claims can be proven merely by showing that the accused products are "capable of" being used to create an infringing system.  As the court in *Storage Computer* held, "*Fantasy Sports* repeatedly emphasized that it is the language of the claim that is dispositive, not merely whether a device is capable of being modified to infringe."  *Storage Computer*, 2004 U.S. Dist. LEXIS 3887, at *10-13.  Here, while system claims 9 and 10 contain means-plus-function limitations, they also contain limitations that are not written in means-plus-function format and that neither party has contended should be construed as means-plus-function claims.  Claim 9 provides:

> A networked system for managing a dynamic Web page generation request, said system comprising:
>
> one or more data sources;
>
> a page server having a processing means;
>
> a first computer system including means for generating said request; and
>
> a second computer system including means for receiving said request from said first computer, *said second computer system also including a router, said router routing said request from said second computer system to said page server, wherein said routing further includes intercepting said request at said second computer, routing said request from said second computer to a dispatcher, and dispatching said request to said page server said page server receiving said request and releasing said second computer system to process other requests,* said page server processing means processing said request and dynamically generating a Web page in response to said request, said Web page including data dynamically retrieved from said one or more data source*s.*

A1 (emphasis added).  None of the highlighted limitations is written in means-plus-function format.  Nor do these limitations provide that the claimed "second computer system," "router," "dispatcher," "page server," or "data sources" be merely "capable of" performing the claimed system functions.  *Cf. Intel*, 946 F.2d at 832.  Rather the claim language requires these functions

to be performed by these specified structural limitations of the claim. These limitations thus require more than the claimed structure's "capability" of performing the claimed functions.[4] Claim 10 is dependent on claim 9 and adds additional functions that the claimed system must perform:

> The networked system in claim 9 wherein said router in said second computer system includes:
>
> an interceptor *intercepting said request at said second computer system and routing said request*; and
>
> a dispatcher *receiving said routed request from said interceptor and dispatching said request to said page server.*

A1 (emphasis added). EpicRealm's attempt to bring these non-means-plus-function claims within the ambit of *Fantasy Sports* is meritless. Dr. Clark's testimony is relevant to rebut any allegation or inference that customers have directly infringed these system claims by creating systems that actually perform these functions. As the Federal Circuit stated in *ACCO Brands*, "[h]ypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement." 501 F.3d at 1313 (*citing Dynacore*, 363 F.3d at 1274).

### 3.    Dr. Clark's Testimony Is Relevant to Direct Infringement of the Machine Readable Medium Claim

Claim 11 of the '554 patent is directed to a "machine readable medium having stored thereon data representing sequences of instructions, which when executed by a computer system, cause said computer system to perform the steps of . . . ." A1. The claimed steps are similar to those recited in the system claims, discussed above. The instructions on the medium must,

---

[4] Even the "processing means" is not written as a "means for processing" but rather requires the actual processing of the request and the actual dynamic generation of the Web page in response to the request.

therefore, be sufficient to cause a computer to perform those steps.  As discussed in Oracle's opposition to epicRealm's motion for partial summary judgment of literal infringement of claim 11, filed concurrently herewith, Oracle's software is not sufficient to perform the claimed steps under epicRealm's infringement theories.

Oracle's software does not send or receive ACK messages, which are the basis of epicRealm's theory that a "page server" "releases" a "Web Server."  It is undisputed that only operating systems, which Oracle does not supply, send or receive ACK messages.  *See* concurrently filed Declaration of Dr. Paul C. Clark in Opposition to EpicRealm's Motion for Partial Summary Judgment of Literal Infringement ("Clark Opp. Decl.") ¶ 59-69.  In *Padcom, Inc. v. Netmotion Wireless, Inc.*, No. Civ. 03-983-SLR, 2006 WL 416865, at *5 (D. Del. Feb. 22, 2006), this Court held that "a software product can infringe when it interacts with an operating system on a computer, so long as the software, without the operating system, contains all the limitations set out in the claim."  Here, the Oracle software is incapable of sending the ACK message required by epicRealm's "releasing" theory.  In *Padcom*, the Court found that the accused software infringed a "computer readable medium claim" because "even if the operating system supplies the information to the software, the software, if it ascertains the availability of the networks, directly infringes."  *Id.* at *6.  Here, Oracle software does not send or receive the ACK messages and therefore does not directly infringe the claim.  Clark Opp. Decl., ¶ 69. Indeed, to prove direct infringement under its theories, epicRealm would have to prove specific instances of customers setting up "Web servers" and "page servers" on separate operating systems.  *See* A88  [8/7/08 Order] at 5-7.  Hence, evidence regarding actual customer use of the alleged patented technology is relevant to the machine readable medium claim.

Even if claim 11 were interpreted to require "mere capability" of performing the claimed

steps, epicRealm cannot prove direct infringement of claim 11 because Oracle's software is not capable of performing all the required steps. Moreover, Dr. Clark does not rely on the statements of others for this testimony. *See* epicRealm's Clark Daubert Motion Exh. 1 [Clark Report] at 58-59.

### B. Dr. Clark's Testimony Concerning Lack of Use of the Patented Technology by Oracle Customers Is Admissible

#### 1. The Federal Rules of Evidence and Third Circuit Law Favor the Admissibility of Evidence

EpicRealm argues that Dr. Clark's proposed testimony that Oracle's customers make little use of the patented technology is inadmissible and unreliable. Specifically EpicRealm argues that Dr. Clark "blindly" relied on biased hearsay statements of Oracle employees as a basis for his opinion as to how Oracle customers use the software supplied by Oracle. EpicRealm argues that courts routinely exclude such testimony because it does not constitute the necessary "facts and data" that an expert must rely on to support its opinion. To support the proposition that an "expert may not rely on 'highly partisan' statements made by employees of his client in support of any material fact," EpicRealm relies on a single district court case from the Ninth Circuit, *Therasense, Inc. v. Becton Dickinson and Co.*, No. C-04-02123-WHA, 2008 WL 2323856, at *2 (N.D. Cal. May 22, 2008).

*Therasense* does not establish the broad exclusionary rule that epicRealm alleges, and also is readily distinguishable from this case on its facts. *See* Section IV.B.2, *infra*. As a preliminary matter, however, *Therasense* was not decided under Third Circuit law, which is controlling here. *DSU,* 471 F.3d at 1308 (whether expert testimony should be admitted at trial in a patent infringement action is a procedural issue not unique to patent law, and is decided under the law of the regional circuit). Third Circuit precedent does not support exclusion of Dr. Clark's testimony.

In determining whether expert evidence is reliable under Federal Rules of Evidence 702 and 703, the Third Circuit favors admissibility of evidence. In fact, the Court has cautioned that district court judges should not set the reliability threshold too high. *Inline Connection Corp. v. AOL Time Warner Inc*., 470 F. Supp. 2d 435, 438 (D. Del. 2007) (*citing In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749-50 (3d. Cir. 1994)).[5]  In *Inline*, the Court stated:

> While evidentiary rulings are generally subject to a particularly high level of deference because the trial court has a superior vantage point to assess the evidence . . . evaluating the reliability of scientific methodologies and data does not generally involve assessing the truthfulness of the expert witnesses and thus is often not significantly more difficult on a cold record. Moreover, here there are factors that counsel in favor of a hard look at (more stringent review of) the district court's exercise of discretion. For example, because the reliability standard of Rules 702 and 703 is somewhat amorphous, there is a significant risk that district judges will set the threshold too high and will in fact force plaintiffs to prove their case twice. Reducing this risk is particularly important because *the Federal Rules of Evidence display a preference for admissibility.*

*Inline*, 470 F. Supp. 2d at 438 (*quoting Paoli R.R.*, 35 F.3d at 749-50) (emphasis added).

In the Third Circuit, "'the exclusion of critical evidence is an "extreme" sanction, not normally to be imposed absent of a showing of willful deception or "flagrant" disregard of a court order by the proponent of the evidence.'"  *Inline*, 470 F. Supp. 2d at 438 (*quoting Paoli R.R.*, 35 F.3d at 791-92).  The Third Circuit has identified several factors for the court to consider in deciding whether to exclude important testimony:

> "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order."

*Inline*, 470 F. Supp. 2d at 438 (*quoting Paoli R.R.*, 35 F.3d at 791-92).

---

[5] To avoid confusion, we note that there is another opinion in the same *Inline* case immediately preceding the opinion cited. *See Inline Connection Corp. v. AOL Time Warner Inc*., 470 F. Supp. 2d 424 (D. Del. 2007).

Parties who proffer expert testimony do not have to demonstrate that their experts' opinions are correct, but only that they are reliable. *Inline*, 470 F. Supp. 2d at 439 (*citing Paoli R.R.*, 35 F.3d at 744). As the Third Circuit has explained, "The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. Mitchell*, 365 F.3d 215, 245 (3d Cir. 2004) (*citing* Fed. R. Evid. 702 Advisory Committee's note explaining the December 2001 amendment to Rule 702). Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579, 596 (1993). "These trial practices and procedural devices … rather than wholesale exclusion under an uncompromising … test, are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." *Mitchell*, 365 F.3d at 245. "Rule 702 mandates a policy of liberal admissibility." *Paoli R.R.*, 35 F.3d at 741.

EpicRealm's attempt to seek a higher threshold of admissibility under Rule 702 is simply unsupported by Third Circuit precedent.

### 2.     Dr. Clark's Testimony Is Reliable As Required by FRE 702 and 703

EpicRealm admits that Dr. Clark, as an expert witness, may rely upon hearsay under Rule 703. ER Br. at 5. EpicRealm relies on *Therasense*, however, for that proposition that "the biased statements of employees of an expert's clients are simply not the type of hearsay that can be 'reasonably relied upon by experts' under Rule 703." ER Br. at 5. EpicRealm argues that Dr. Clark instead should have conducted his own investigation into how Oracle customers use the accused Oracle software products. *Id.* at 5-6. EpicRealm neglects to point out, however, that Dr. Clark relied on Oracle product literature, as well as on interviews of Oracle employees, to determine how customers use the products and why they would have reasons not to use the minor option in the software for "metrics-based load balancing" which epicRealm contends is

necessary for infringement.  *See* epicRealm's Clark Daubert Motion Exhibit 1 [Clark Report] at

61-65 and n.89-95 (*i.e.,* the footnotes to this text all reference interviews of Oracle employees

*and* Dr. Clark's review of supporting "Oracle product literature").  Dr. Clark's technical analysis

of the product literature, informed by his extensive review of the source code, is the core of Dr.

Clark's expertise and it corroborates the employees' testimony that customers seldom, if ever, use

the specific type of "load balancing" on which epicRealm relies to argue infringement.  Nor does

epicRealm disclose that epicRealm deposed three of the Oracle employees whom Dr. Clark

interviewed concerning each of the accused Oracle products—Web Cache, Internet Application

Server, and Database.

　　　　*Therasense* neither supports epicRealm's broadly stated proposition that an expert cannot

rely on allegedly "biased" hearsay, nor applies to the facts of this case.  In *Therasense*, one of the

plaintiffs, Abbott Laboratories, offered the opinion of an expert that the accused products did not

meet the requirements of an asserted patent claim.  The expert relied on experiments on the

accused product performed by Abbott employees.  The expert "did not participate in, observe, or

supervise any of the experiments."  *Therasense*, 2008 WL 2323856, at *3.  More important,

however, was the district court's finding that Abbott had concealed the experiments, by shielding

the employees who had performed them from being deposed, until fact discovery had closed:

> *Nor did Abbott permit defendants to question one Abbott-employee witness who*
> *did conduct and participate in the experiments, concealing all of the tests from*
> *discovery during all phases of discovery under a claim of privilege.*  The same
> instruction not to answer would plainly have been given as to all other fact
> deponents involved in the tests (even if their identities had been known). *The*
> *entire foundational project was a secret clearly intended to thwart discovery into*
> *the foundation. It was sprung on all opponents only after the close of fact*
> *discovery.* Without any foundation, Dr. Johnson's testimony would be improper.
> All testimony and opinions about the tests are hereby excluded.

*Id.* (emphasis added).  The court did not, therefore, establish any "general rule" that an expert

cannot rely on hearsay if it is from "highly partisan" sources.  Rather, the court was concerned

that the employees who had done the actual testing had not been produced for questioning in

discovery. Indeed, the court left open the possibility that Abbott could cure this problem by

producing the appropriate witnesses for deposition:

> Whether or not curative discovery could now, at this late hour, be undertaken was discussed at the hearing but it is unclear whether it would be fair and would be practical at this stage. *Plaintiffs are invited to seasonably submit a cure proposal for depositions and documents and to be specific as to what relevant documents, including emails and correspondences with counsel and other forensic consultants, plaintiffs would produce versus try to withhold-and on what timetable*. The burden is on plaintiffs to cure this foundational issue. Before any such proposal is made, all counsel concerned must meet and confer over the proposal and any objections thereto. *Meanwhile,* the testimony in question is excluded.

*Id.* (emphasis added).

This case presents a completely different scenario than *Therasense*. Here, epicRealm

took numerous Rule 30(b)(6) depositions and individual depositions of Oracle witnesses

concerning the accused products and their use. One of the employees whom Dr. Clark

interviewed for his report, Mark Nelson, testified concerning Web Cache and Internet

Application Server ("IAS"), including the "load balancing" performed by those products. A80

[Nelson Dep.] at 5:7-11:14. Another employee whom Dr. Clark interviewed, Harvey Eneman,

testified on Rule 30(b)(6) deposition topics and also was disclosed prior to his deposition as a

witness on "[d]esign, development, operation and use of Oracle's accused software products,"

including Database. A90 [Oracle's Fifth Supplemental Initial Disclosures Pursuant to Fed. R.

Civ. P. 26(a)(1), dated May 2, 2008] at 6; A82 [Eneman Dep.] at 5:1-9:9. Steve Harris, another

witness whom Dr. Clark interviewed, testified on Rule 30(b)(6) deposition topics concerning,

among other things, "'Marketing of IAS," and "Competitive products in the 'market' for

middleware and 'value of components' of IAS to Oracle's customers." A73 [Harris Dep.] at 5:1-

7:2. Moreover, these witnesses named numerous other Oracle employees in their deposition who

may have knowledge relating to these products or customers' usage of these products.

Dr. Clark relied on Messrs. Nelson, Eneman and Harris for information concerning customers' use of Web Cache, IAS, and Database. *See* epicRealm Exh.1 to Clark Daubert Motion [Clark Report] at 61- 65 (*see* footnotes 89-95). Moreover, Dr. Clark relied on Oracle product literature to confirm his understanding as to why customers would have reasons not to use the minor option in the software for "metrics-based load balancing," which epicRealm contends is necessary for infringement. *Id.* None of the *Therasense* court's concerns about this information being "hidden" in discovery, then sprung on an opponent in an expert report after the close of discovery, are present here. Moreover, as discussed above, the *Therasense* court left open the possibility that, even under those circumstances, discovery might "cure" the problem and make the expert's testimony admissible. EpicRealm had ample discovery on the uses of Oracle products.

The facts of this case are closer to this District's *Inline* case, where the Court denied plaintiff's motion to exclude testimony of defendants' damages experts (except concerning reference to settlement offers). There, the Court held that Rule 703 allows experts to use evidence that would not usually be admissible, such as hearsay, as long as it is reasonably applied or relied upon, by experts in the field for their conclusions. *Inline*, 470 F. Supp. 2d at 442-43. Even if the information upon which experts rely is inadmissible, their opinions and inferences are admissible. *Id.*

In *Inline*, plaintiff argued that expert testimony should be excluded because defendants' damages experts merely interviewed employees and failed to obtain business records supporting the orally acquired data. 470 F. Supp. 2d at 441-43. Defendants responded that the verbal information obtained was reliable because it was the type of data reasonably relied upon by damage experts, and that the experts did not have a duty to independently investigate and verify

the data reported to them.  *Id.*  The Court, adhering to the standards of the Third Circuit

concluded that the factual evidence and opinions in question were highly probative of the

damages issue, and that the reports contained sufficient data to support the experts' conclusions.

*Id.*  The Court further concluded that the foundation for the experts' opinions was sufficient and

that plaintiff's complaint about the experts' inability to provide a larger sample of data goes to

weight, not reliability.  *Id.* at 441-42.  Moreover, in *Inline*, the employees from whom

defendants' experts gathered data were not identified and not deposed.  *Id.* at 442.  Here, Dr.

Clark identified the Oracle employees he interviewed and epicRealm deposed three of them.

     EpicRealm's argument that Dr. Clark's opinion is flawed because he did not

independently contact customers to verify Oracle's employees statements is thus insufficient to

bar his testimony.  First, Dr. Clark's technical analysis—based on Oracle product literature and

the products' source code—of the relative unimportance of "metrics-based load balancing" *does*,

in fact, corroborate the Oracle's employees statements that few, if any, customers use it.  Second,

that Dr. Clark did not directly contact customers is not grounds for excluding the testimony.

"*Daubert* does not set up a test of which opinion has the best foundation, but rather whether any

particular opinion is based on valid reasoning and reliable methodology."  *Kannankeril v.*

*Terminix Int'l, Inc.*, 128 F.3d 802, 806-07 (3d Cir. 1997) (expert testimony admissible even

though expert himself did not perform diagnostic tests).  Moreover, contacting selected

customers, short of conducting a scientific survey, would prove little.  It bears repeating that

epicRealm has the burden of proving customer usage to prove infringement and damages, but

epicRealm's expert witnesses on infringement and damages did not contact customers or perform

any type of a survey.

     Finally, epicRealm faults Dr. Clark for not reviewing a "bug database" that Mr. Harris

reviewed, but that Dr. Clark does not rely on. ER Br. at 6. This argument makes no sense for multiple reasons. First, Mr. Harris testified that he reviewed the bug database as part of his duty to prepare for his Rule 30(b)(6) deposition. A73 [Harris Dep.] at 133:13-134:7. Second, Mr. Harris testified that the bug database indicated that few customers used "metrics-based load balancing." Thus, this reference to the bug database is in accord with Dr. Clark's testimony, not contrary to it. *Id.* at 135:13-137:11. Third, Mr. Harris's knowledge that few, if any, customers use "metrics-based load balancing" was not merely based on the bug database. *Id.* at 133:13-134:7. Again, that Dr. Clark chose not to review the bug database goes to the weight of his opinion, not its admissibility.

### 3.    The Probative Value of Dr. Clark's Testimony Outweighs the Potential Prejudice

In determining whether to exclude expert evidence, the district court "must balance the need for the challenged evidence against the risk that it will confuse the jury and delay the trial." *Inline*, 470 F. Supp. 2d at 439 (*citing Paoli R.R.*, 35 F.3d at 746). Under Rule 703, the probative value of the underlying facts is balanced against the prejudicial effect, and the court evaluates the information's probative value in assisting the jury to weigh the expert's opinion against the risk of prejudice from the jury's potential misuse of the information for substantive purposes. *Inline*, 470 F. Supp. 2d at 443 (*citing* Advisory Committee Notes, 2000 Amendments). Cross-examination is used to expose any weaknesses in the factual basis of the expert's opinion. *Id.* (*citing Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 544 (1st Cir. 1988). Although epicRealm claims that it would be prejudiced, it does not explain how the jury could potentially misuse the information for substantive purposes. EpicRealm has its depositions of Nelson, Eneman and Harris, on whom Dr. Clark relied. Oracle presently intends to call all three of them as trial witnesses and epicRealm can cross-examine both them and Dr. Clark.

There is no prejudice to epicRealm.

It would be highly prejudicial to Oracle, however, to exclude Dr. Clark's testimony. EpicRealm intends to try to paint a false picture at trial that "metrics-based load balancing" is driving the success of Oracle products. This is apparent from epicRealm's motion for partial summary judgment of literal infringement of claim 11 of the '554 patent. Oracle's opposition to that motion, filed concurrently herewith, demonstrates why epicRealm's allegations are specious. It is important that Dr. Clark be allowed to explain to the jury why most customers would not have a good reason to use "metrics-based load balancing" (it is difficult to implement and provides no advantage to users over the other load balancing options for most applications) and to explain that knowledgeable employees at Oracle have confirmed that few, if any, customers do so. EpicRealm has had ample opportunity to find evidence to the contrary and has come up with none. EpicRealm should not be allowed to exclude Dr. Clark's testimony and to thereby attempt to create *innuendo* that it knows very well to be false.

## V.    CONCLUSION

For all the foregoing reasons, epicRealm's motion to exclude the testimony of Dr. Paul

Clark should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ James W. Parrett, Jr.

OF COUNSEL:

James G. Gilliland
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND
  AND CREW LLP
379 Lytton Avenue
Palo Alto, CA  94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA  94065

Dated: August 21, 2008

2457316

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com
  *Attorneys for Oracle Corporation*
  *and Oracle U.S.A., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

Richard L. Horwitz
David Ellis Moore
POTTER ANDERSON & CORROON, LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on August 21, 2008 upon the following individuals in the manner indicated:

| BY E-MAIL | BY E-MAIL |
|---|---|
| Richard L. Horwitz | George S. Bosy |
| David Ellis Moore | JENNER & BLOCK |
| POTTER ANDERSON & CORROON, LLP | 330 N. Wabash Avenue |
| 1313 N. Market St., Hercules Plaza, 6th Floor | Chicago, IL 60611-7603 |
| P.O. Box 951 | |
| Wilmington, DE 19899-0951 | **gbosy@jenner.com** |
| | |
| **rhorwitz@potteranderson.com** | |
| **dmoore@potteranderson.com** | |

_/s/ James W. Parrett, Jr._
James W. Parrett, Jr. (#4292)

61461758 v2