IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORACLE CORPORATION and
ORACLE U.S.A. INC.,

Plaintiffs/Counterclaim Defendants,

v.

EPICREALM LICENSING, LP,

Defendant/Counterclaim Plaintiff.

C.A. No. 06-414-SLR

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

**EPICREALM'S BRIEF IN OPPOSITION TO ORACLE'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF EPICREALM'S DAMAGES EXPERT, MICHAEL J. WAGNER**

OF COUNSEL:

Harry J. Roper
George S. Bosy
Aaron A. Barlow
Patrick L. Patras
David R. Bennett
Paul D. Margolis
Benjamin J. Bradford
Emily C. Johnson
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel: (312) 923-8305

Dated: August 21, 2008
Public Version Dated: August 28, 2008
880356 / 31393 / Oracle

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim Plaintiff epicRealm Licensing, LP*

# TABLE OF CONTENTS

I. NATURE AND STAGE OF THE PROCEEDINGS ....................1

II. SUMMARY OF ARGUMENT ....................1

III. COUNTERSTATEMENT OF THE FACTS ....................2

A. Overview of Wagner's Methodology ....................2

B. The Facts That are Pertinent To Wagner's Use of the IBM License ....................3

1. Wagner Correctly Selected the IBM License As a Starting Point ....................3

2. Wagner Correctly Evaluated Whether Any Adjustment To the IBM License Was Necessary ....................8

3. Oracle's Damages Expert Relies On The IBM License As A Benchmark ....................10

C. The Patent Inventions Are Not Limited To "Intelligent Dispatching" ....................10

IV. LEGAL STANDARD ....................12

V. ARGUMENT ....................13

A. Wagner Correctly Relied on the IBM License In His Reasonable Royalty Analysis ....................13

1. Oracle Does Not Challenge Wagner's Methodology Used To Determine A Reasonable Royalty ....................14

2. Wagner's Selection Of The IBM License As A Baseline Royalty Rate Is Properly Supported And Reliable ....................15

3. Wagner Did Not Rely Solely On the IBM License ....................16

B. Oracle Misapplies The Entire Market Value Rule To Wagner's Damages Analysis ....................17

1. There Is No Dispute Over The Appropriate Royalty Base ....................17

2. Wagner's Correctly Considered Customer Demand For The Patented Invention ....................18

3. Wagner's Reasonable Royalty Analysis Considered The Value Of The Patented Features To The "Entire Market Value" Of The Accused Products ....................21

CONCLUSION ....................23

# TABLE OF AUTHORITIES

**Cases**

*Am. Sterilizer Co. v. Sybron Corp.*,
526 F.2d 542 (3d Cir. 1975) ........ 20

*Beatrice Foods, Inc. v. New England Printing & Lithographing Co.*,
923 F.2d 1576 (Fed. Cir. 1991) ........ 20

*Comair Rotron, Inc. v. Matsushita Elec. Corp. of Am.*,
31 F.3d 1177, 1994 WL 381809 (Fed. Cir. July 19, 1994) (unpublished table decision) ........ 18

*Cornell Univ. v. Hewlett-Packard Co.*,
No. 01-CV-1974, 2008 U.S. Dist. LEXIS 41848 (N.D.N.Y. May 27, 2008) ........ 22

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........ 12, 13, 14

*DSU Med. Corp. v. JMS Co., Ltd.*,
296 F. Supp. 2d 1140 (N.D. Cal. 2003) ........ 12, 13, 15

*Fonar Corp. v. Gen. Elec. Co.*,
107 F.3d 1543 (Fed. Cir. 1997) ........ 18, 19, 20

*Georgia Pacific Corp. v. United States Plywood Corp.*,
243 F. Supp. 500 (S.D.N.Y. 1965) ........ 22, 24

*Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH*,
408 F.3d 1374 (Fed. Cir. 2005) ........ 22

*Inline Connection Corp. v. AOL Time Warner Inc.*,
472 F. Supp. 2d 604 (D. Del. 2007) ........ 13, 14

*Kori Corp. v. Wilco Marsh*,
761 F.2d 649 (Fed. Cir. 1985) ........ 21

*L.P. Matthews LLC v. Bath & Body Works, Inc.*,
458 F. Supp. 2d 198 (D. Del. 2006) ........ 13, 14

*Micro Chem., Inc. v. Lextron, Inc.*,
317 F.3d 1387 (Fed. Cir. 2003) ........ 12, 13, 14, 20

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
345 F. Supp. 2d 431 (D. Del. 2004) ........ 14

*In re Paoli R.R. PCB Litig., In re*,
35 F.3d 717 (3d Cir. 1994) ........ 12, 13, 15, 20

*Rite-Hite Corp. v. Kelley Co., Inc.*,
56 F.3d 1538 (Fed. Cir. 1995) (*en banc*) ........ 17, 18, 22

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.*,
932 F.2d 1453 (Fed. Cir. 1991) ........ 22, 23

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*,
C.A. No. 03-241-JJF, 2004 WL 2213562 (D. Del. Sept. 28, 2004) ........ 14

*Tec Air, Inc. v. Denso Mfg. Michigan, Inc.*,
192 F.3d 1353 (Fed. Cir. 1999) .......... 18, 19, 20

*Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co.*,
225 U.S. 604 (1912).......... 20

**Rules**

Fed. R. Evid. 702 .......... 12, 13

Defendant epicRealm Licensing, L.P. ("epicRealm"), submits this brief in opposition to Oracle's Motion to Exclude Expert Report and Testimony of epicRealm's Damages Expert, Michael J. Wagner ("Oracle's motion"). The plaintiffs will be referred to collectively as "Oracle." As shown herein, Oracle's motion has no merit and should be denied.

## I. NATURE AND STAGE OF THE PROCEEDINGS

EpicRealm incorporates by reference its response to Oracle's summary of the Nature and Stage of the Proceedings as set forth in EpicRealm's Brief in Opposition to Oracle's Motion for Partial Summary Judgment Excluding Damages Based on Oracle's Foreign Sales.

## II. SUMMARY OF ARGUMENT

In this action, epicRealm seeks damages based upon a reasonable royalty damages theory and to that end intends to proffer the expert testimony of Wagner. Oracle's *Daubert* motion is directed to two issues. First, Oracle seeks to exclude Wagner's testimony on the ground that Wagner allegedly improperly used the IBM/InfoSpinner license agreement ("the IBM license") in his reasonable royalty analysis. Secondly, Oracle argues that Wagner's testimony should be excluded for the additional reason that it allegedly contravenes the entire market value rule. Oracle's motion is wrong on the facts and on the law and should be denied.

**1. *Summary with respect to the issues raised in connection with the IBM license.*** First, Oracle asks to exclude Wagner's testimony because of his use of the IBM license as a benchmark for his reasonable royalty analysis. This is nothing more than a disagreement with Wagner's conclusions and does not form the proper basis for a *Daubert* motion. What is important in Oracle's *Daubert* motion is that Oracle does not dispute the methodology used by Wagner (a *Georgia Pacific* analysis) nor does it contend that Wagner relies on insufficient facts or data. The mere disagreement with an expert's conclusion is not a basis for a *Daubert* motion seeking the exclusion of expert testimony.

2. ***Summary with respect to the issues raised in connection with the "entire market value rule."*** Oracle's contention that Wagner's testimony should be excluded because he purportedly misapplied the "entire market value rule" has no merit. In the context of a reasonable royalty analysis (the only damages sought here), the "entire market value rule" is only used to determine the correct royalty base. The flaw in Oracle's motion is that Oracle does not challenge Wagner's royalty base. Instead, both Wagner and Oracle's damages expert use the same royalty base. For that reason, Oracle's motion to exclude Wagner's testimony based on his purported misapplication of the "entire market value rule" should be denied.

## III. COUNTERSTATEMENT OF THE FACTS

Oracle's statement of facts is incomplete and inaccurate. For that reason, epicRealm provides a complete and accurate counterstatement of facts that are pertinent to Oracle's motion. EpicRealm will first address as an overview the general methodology used by Wagner in his damages analysis, followed by the facts relating to the IBM license, and then by the facts related to Oracle's "entire market value rule" argument.

### A. Overview of Wagner's Methodology

An overview of Wagner's damages analysis and methodology can be summarized as follows. Wagner's damages analysis is based on a reasonable royalty theory, the long accepted methodology that considers the amount a willing licensor and willing licensee would have agreed to in an arm's length hypothetical negotiation that occurred on or about the date of first infringement. (Ex. 1, Wagner at ¶27.)[1] [redacted] In his analysis, Wagner also correctly assumed (as the law requires) that the asserted patent claims at issue are

[1] Exhibits cited herein refer to the Appendix filed contemporaneously herewith.

unquestionably valid, enforceable and infringed. (Ex. 1, Wagner at ¶27.) Wagner also followed the well settled law in assuming that the parties to the hypothetical negotiation would have been aware of all of the pertinent facts, *i.e.*, the cards are all face up for both parties to see. Specifically, Wagner also relied on the "book of wisdom," a concept that allows for the consideration of facts after the date of the hypothetical negotiation. (*Id.* at ¶28.) Wagner also performed an analysis of the *Georgia Pacific* factors. (*Id.* at ¶28.) None of this methodology is disputed by Oracle. Rather, Oracle's motion as discussed below is based on Wagner's allegedly incorrect use of the IBM license as a starting benchmark for his analysis, and on his allegedly incorrect use of the "entire market value rule."

**B. The Facts That are Pertinent To Wagner's Use of the IBM License**

As shown below, Wagner's use of the IBM license as a starting benchmark was correct and appropriate, as were the adjustments that he made to that benchmark. Indeed, it is telling that Oracle's own damages expert used the IBM license as a starting point, thus entirely undercutting Oracle's argument.

**1. Wagner Correctly Selected the IBM License As a Starting Point**

Wagner's reasonable royalty analysis began by his determining whether there was a "Baseline Royalty Rate" that would be an appropriate starting point for a reasonable royalty analysis. Like Wagner, Oracle's own damages expert Musika used the same methodology by first determining whether there was "a reference point that provides an appropriate starting point from which to conduct a Georgia-Pacific analysis." (Ex. 5, Musika at ¶73.) Indeed, Musika arrived at the same conclusion that Wagner did, namely, that the IBM license is an appropriate starting point for a reasonable royalty analysis.

In his analysis, Wagner set forth the many reasons why the IBM license agreement is an appropriate starting point for his reasonable royalty analysis. As an initial matter, there are two

striking similarities between the IBM license and the facts surrounding the hypothetical negotiation.









### 2. Wagner Correctly Evaluated Whether Any Adjustment To the IBM License Was Necessary

Wagner's analysis did not end with the selection of the IBM license for the baseline royalty. Recognizing that some differences existed between the IBM license and the facts surrounding the hypothetical negotiation, Wagner then analyzed those differences in light of the *Georgia-Pacific* factors. (*Id.* at ¶¶46, 48.) Specifically, Wagner analyzed the *Georgia-Pacific* factors and used them as "qualitative factors to determine what adjustments, if any to the Baseline Royalty Rate are necessary in order for the resulting royalty rate to adequately compensate epicRealm for Oracle's actual use of the epicRealm Patents." (*Id.* at ¶48.) This analysis is extensive. (*Id.* at ¶¶50-279.) In that analysis, it is clear that Wagner did not, as Oracle contends, rely "on a single software and technology license agreement" as the complete

basis for his reasonable royalty analysis.  (*Id.* at ¶¶52-98.)  Wagner took over 60 pages to analyze

the *Georgia Pacific* factors, which included an analysis of numerous other epicRealm licenses,

Oracle licenses, and licensing survey data.  (*Id.* at ¶¶52-98, 101-148, 253-257.)



(*Id.* at pp. 80-81.) After careful consideration of the *Georgia-Pacific* factors, Wagner concluded that a reasonable royalty would be different than the Baseline Royalty Rate in the IBM license due to the differences between the IBM license and the facts surrounding the hypothetical negotiation. (*Id.* at ¶¶278-79.)

**3. Oracle's Damages Expert Relies On The IBM License As A Benchmark**

Oracle's own damages expert Musika also relies on the IBM license as a starting point for the hypothetical negotiation. Musika stated that the "only license that offers a direct consideration of the Patents-in-Suit is the aforementioned IBM license…." (Ex. 5, Musika at ¶59.) The fact that both parties' experts begin their reasonable royalty analysis with the IBM license is further evidence supporting the conclusion that the IBM license is indeed a reasonable starting point.

**C. The Patent Inventions Are Not Limited To "Intelligent Dispatching"**

Oracle's "entire market value rule" argument is fundamentally flawed in that it assumes that the claimed invention is of "minor importance" to Oracle, an assumption that is contrary to the facts and to Oracle's own admissions. (Oracle Brief at 7-8.) Those admissions are discussed below and establish that the invention of the patents in suit was and still is of tremendous value to Oracle and its customers.



[redacted]

## IV.    LEGAL STANDARD

The fundamental issue under *Daubert* is the methodology employed by an expert witness and the facts and data relied on, as distinguished from the expert's bottom line conclusions.  In *Daubert v. Merrell Dow Pharms., Inc.*, the Supreme Court stated that in a Fed. R. Evid. 702 inquiry "[t]he focus, of course, must be solely on the principles and methodology, not on the conclusions that they generate."  509 U.S. 579, 595 (1993); *In re Paoli R.R. PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) (quoting *Daubert*).  The avenue open to a party that disagrees with an expert's conclusions is not through a *Daubert* motion but rather through vigorous cross-examination and through the presentation of contrary evidence.  *Daubert*, 509 U.S. at 596.

Stated another way, the role of the trial court is not to "evaluate the correctness of facts underlying one expert's testimony." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003).  Nor is the trial court's role to determine whether the expert's conclusions are correct. *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1147 (N.D. Cal. 2003).  Taking on such a role would turn the Court's gatekeeper role into a replacement for the

---

[redacted]

adversary system. *Micro Chem.*, 317 F.3d at 1392 (*citing* Fed. R. Evid. 702, Advisory Committee Notes 2000 Amendments); *Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 612 (D. Del. 2007) (*quoting Micro Chem.*, 317 F.3d at 1392); *L.P. Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d 198, 210 (D. Del. 2006) ("This gate-keeping function of the court was never meant to supplant the adversarial trial process."). This point is best summarized by the Advisory Committee Notes to the 2000 Amendments to Fed. R. Evid. 702:

> When facts are in dispute, experts sometimes reach difference conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

In sum, this Court's gatekeeping role is properly directed to considering the methodologies and facts and data relied upon by an expert. *Daubert*, 509 U.S. at 595; *In re Paoli Railroad*, 35 F.3d at 744; *DSU Medical.*, 296 F. Supp. 2d at 1147.

## V. ARGUMENT

### A. Wagner Correctly Relied on the IBM License In His Reasonable Royalty Analysis

Oracle's entire argument challenging Wagner's use of the IBM license is little more than a disagreement with Wagner's conclusions and is not the proper subject of a *Daubert* motion. First, Oracle never challenges the methodology used by Wagner to determine a reasonable royalty, namely, identifying an appropriate benchmark and then analyzing the *Georgia Pacific* factors to determine how the benchmark should be adjusted. This failure reduces Oracle's argument to a simple disagreement as to whether Wagner's conclusion is correct or whether the conclusion of Oracle's expert is correct—not the proper basis for a *Daubert* motion. Secondly, Oracle is simply wrong in asserting that Wagner predicated "his entire damages analysis" on the

IBM license. Wagner did no such thing. He merely used the IBM license as a starting point and then performed an extensive *Georgia Pacific* analysis to determine the royalty rate that would have been agreed to in the hypothetical negotiation.

**1. Oracle Does Not Challenge Wagner's Methodology Used To Determine A Reasonable Royalty**

Oracle's motion to exclude Wagner's testimony never challenges the well-accepted methodology that Wagner used for determining a reasonable royalty. As is explicitly clear from his expert report and his testimony, Wagner began his reasonable royalty analysis by determining an appropriate starting point, a Baseline Royalty Rate, for the hypothetical negotiation and then analyzed the *Georgia Pacific* factors to determine "what adjustments, if any, to the Baseline Royalty Rate are necessary in order for the resulting royalty rate to adequately compensate epicRealm for Oracle's actual use of the epicRealm Patents." (Ex. 1, Wagner at ¶48.) This same methodology for determining a reasonable royalty is used by Oracle's damages expert, Musika, who like Wagner selected "a reference point that provides an appropriate starting point from which to conduct a Georgia-Pacific analysis." (Ex. 5, Musika at ¶73.) This methodology has been previously accepted by this Court as admissible expert testimony that is a "product of reliable principles and methods." *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, C.A. No. 03-241-JJF, 2004 WL 2213562, at *3 (D. Del. Sept. 28, 2004).

Oracle's disagreement with Wagner's conclusion goes to the weight of Wagner's testimony, not to its admissibility. *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 442 (D. Del. 2004). Oracle improperly asks this Court to derail the adversarial trial process and decide now which competing expert position is the correct one. This does not form a proper basis for a *Daubert* motion. *Micro Chem*, 317 F.3d at 1392; *Inline Connection*, 472 F. Supp. 2d at 612; *L.P. Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d at 210. *Daubert*, 509

U.S. at 595; *In re Paoli Railroad*, 35 F.3d at 744; *DSU Medical.*, 296 F. Supp. 2d at 1147. For the foregoing reasons, Oracle's motion should be denied.

**2. Wagner's Selection Of The IBM License As A Baseline Royalty Rate Is Properly Supported And Reliable**

Wagner's choice of the IBM license as a starting point for the hypothetical negotiation is thoroughly supported by facts, data and analysis. Wagner's report explains the basis for using the IBM license as the Baseline Royalty Rate. (Ex. 1, Wagner at ¶¶35-47.)



3. **Wagner Did Not Rely Solely On the IBM License**

Oracle's motion should be rejected for an additional reason: Oracle misrepresents the use Wagner made of the IBM license in his analysis. Contrary to Oracle's argument, Wagner did not predicate his entire damages analysis on the IBM license. (*See* Oracle Brief at 10.) Instead, Wagner used the IBM license as a starting point for the hypothetical negotiation and then performed an extensive *Georgia Pacific* analysis. (Ex. 1, Wagner at ¶¶46-47.) Wagner's analysis of the *Georgia Pacific* factors, which considered numerous facts and 60 pages of

detailed analysis, irrefutably rebuts Oracle's contention that Wagner "predicates his entire damages analysis" on the IBM license. (*See* Ex. 1, Wagner at pp. 17-81; Oracle Brief at 10.)

### B. Oracle Misapplies The Entire Market Value Rule To Wagner's Damages Analysis

Oracle's attempt to exclude Wagner's testimony based on its "entire market value rule" argument makes no sense and should be rejected. The "entire market value rule" applies in a patent infringement action in two circumstances: first, when lost profits are sought and, second, when there is a dispute over the royalty base (in a reasonable royalty analysis). *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 n.9, 1550 (Fed. Cir. 1995) (*en banc*). Here, epicRealm is not seeking damages based on a lost profits theory. On the second issue, there is no dispute over the correct royalty base.[3] As a consequence, because the "entire market value rule" has no applicability here, Oracle's motion should be rejected.

#### 1. There Is No Dispute Over The Appropriate Royalty Base

The "entire market value rule" is only used in the context of a reasonable royalty when there is a dispute over the appropriate royalty base. *Id.* at 1549 n.9. [redacted]

---

[3] Oracle does dispute whether foreign sales should be included in the royalty base in Oracle's Motion for Partial Summary Judgment Excluding Damages Based on Oracle's Foreign Sales; however, that issue is not raised in Oracle's present motion to exclude Wagner's testimony. [redacted]

[redacted]

### 2. Wagner's Correctly Considered Customer Demand For The Patented Invention

Oracle also wrongly uses the "entire market value rule" to attack Wagner's royalty ***rate***. Oracle asserts that Wagner did not consider whether metric-based load balancing formed the basis for customer demand for the accused products. (Oracle Brief at 15 (emphasis added), at 18 ("Wagner made no effort to adjust the royalty rates one way or the other based on whether the patented feature formed the basis of customer demand.").) This argument has no merit: the "entire market value rule" applies to the royalty ***base***, not to the royalty ***rate***. *Rite-Hite Corp.*, 56 F.3d at 1549 n.9, 1550; *Comair Rotron, Inc. v. Matsushita Elec. Corp. of Am.*, 31 F.3d 1177, 1994 WL 381809, at *6 (Fed. Cir. July 19, 1994) (unpublished table decision). As Oracle admits, Wagner did fully consider evidence of whether the patented invention gave rise to customer demand for the infringing products. (Oracle Brief at 18 n.6 (citing Ex. 1, Wagner at pp. 59-71)); *Tec Air, Inc. v. Denso Mfg. Michigan, Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552 (Fed. Cir. 1997).

A wide variety of evidence can be considered to evaluate customer demand for a patented invention. *Tec Air, Inc.*, 192 F.3d at 1362 (evidence of infringer's internal documents sufficient to support jury finding and, separately, evidence from one customer also sufficient to establish customer demand); *Fonar*, 107 F.3d at 1552 (infringer's "own technical literature of record emphasized" the patented feature and was sufficient evidence of customer demand). In this case,

Wagner relied on evidence including both customer demand for the patented invention and Oracle's own documents that tout those advantages of the features.



[REDACTED] Therefore there is no real dispute that there is abundant evidence in the record establishing customer demand for the patented invention. Again, Oracle raises nothing but a simple dispute over Wagner's conclusions—a dispute that cannot form the basis for a *Daubert* motion. *Micro Chem.*, 317 F.3d at 1392; *In re Paoli Railroad*, 35 F.3d at 744.

Oracle erroneously attacks Wagner's testimony by contending that Wagner should have considered additional evidence such as "quantifying" the benefits of the patented features and "how often" customers used the accused products. (*See* Oracle Brief at 15-17.) First, as explained above, such evidence is not necessary to establish customer demand; Wagner relied on evidence of Oracle's touting of the patented features and Oracle's admission that customers demanded the feature. *Tec Air*, 192 F.3d at 1362; *Fonar Corp.*, 107 F.3d at 1552. Second, as is clear from Wagner's testimony, Oracle did not produce any such information so there was nothing additional to consider. (*E.g.*, Ex. 2, Wagner Dep. at 130:1-6 ("there's no information in the record...."), 109:9-16 ("I didn't find any evidence of that...."), 153:20-24 ("I haven't seen any evidence presented by either side on that subject.").) Oracle, not Wagner, must be blamed for such lack of evidence. *Am. Sterilizer Co. v. Sybron Corp.*, 526 F.2d 542, 548-49 (3d Cir. 1975) ("In *Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co.*, 225 U.S. 604, 618-19... (1912), the Supreme Court held in a patent infringement action that where the profits of the infringer attributable to infringement and noninfringement cannot be separated, 'the law places the loss on the wrongdoer.' This same result follows where the infringer fails to keep proper records. The burden of proof in such a case is shifted to the infringer or poor record keeper." (internal citations omitted)); *Beatrice Foods, Inc. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1579 (Fed. Cir. 1991) ("Where the infringer's own conduct

prevented the patentee from accurately determining the damages, or made it more difficult for the patentee to do so, the district court may resolve all doubts against the infringer and determine damages on the best available evidence."); *see also Kori Corp. v. Wilco Marsh*, 761 F.2d 649, 655 (Fed. Cir. 1985) ("Fundamental principles of justice require us to throw any risk of uncertainty upon the wrongdoer rather than upon the injured party."); *Georgia Pacific Corp. v. United States Plywood Corp.*, 243 F. Supp. 500, 509 (S.D.N.Y. 1965) ("An infringer who deliberately risks infringement is required, at his peril, to maintain the records necessary to measure the liability which may ultimately be imposed, and on his failure to do so, all doubts are to be resolved against him.").

**3. Wagner's Reasonable Royalty Analysis Considered The Value Of The Patented Features To The "Entire Market Value" Of The Accused Products**

Oracle's contention that Wagner misapplied and misunderstood the "entire market value rule" is baseless. (*See* Oracle Brief at 21-22.)

[redacted]

Finally, the two cases cited by Oracle applying the "entire market value rule," *Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374 (Fed. Cir. 2005)[5] and *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 U.S. Dist. LEXIS 41848 (N.D.N.Y. May 27, 2008)[6] are inapplicable to this case. First, both cases addressed the admissibility of an expert's testimony on the "entire market value rule." *Imonex Servs.*, 408 F.3d at 1379-80; *Cornell Univ.*, 2008 U.S. Dist. LEXIS 41848, at *5-9. Here, Oracle did not challenge Wagner's only application of the "entire market value rule" in *Georgia Pacific* factor 6, therefore, these cases are inapplicable. Second, in *Imonex Services*, the Court found that another royalty base was appropriate, and in *Cornell*, the Court found that there was no evidence of the proper royalty base. *Imonex Servs.*, 408 F.3d at 1379-80; *Cornell Univ.*, 2008 U.S. Dist. LEXIS 41848, at *4-6. In this case, Wagner and Oracle's damages expert, Musika, used the

---

[5] In *Imonex Servs.*, 408 F.3d 1374, there was a dispute over the royalty base. The patentee was granted a royalty on the accused product (coin selector) sold by the original manufacture or an OEM but the court precluded the patentee from getting a royalty on a laundry machine incorporating the accused product. *Id.* at 1379-80.

[6] In *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 U.S. Dist. LEXIS 41848 (N.D.N.Y. May 27, 2008), again there was a dispute over the royalty base. The patentee sought a royalty on entire servers and workstations when the patented invention was a component of a processor, which was "but one aspect of the massive and complex servers and workstations" and price breakdowns were available for independent processor modules independent of the server system. *Id.* at *7.

same royalty base, Oracle does not propose any other royalty base, and there is no narrower royalty base. *See Slimfold Mfg.*, 932 F.2d at 1458-59 ("It is most likely that the district court used the entire door as the basis for the royalty award simply because the claims of the Ford patent are themselves directed to the entire door.").

In the end, Oracle's motion to exclude Wagner's entire testimony based on the "entire market value rule" is entirely without merit as Wagner's opinion is based on uncontested hypothetical negotiation analyzing the *Georgia Pacific* factors. Wagner only applied the "entire market value rule" on two pages of his 85 page expert report and Oracle does not challenge this application of the "entire market value rule." Furthermore, Wagner did consider evidence of customer demand, which is extensive in this case. Consequently, Oracle's motion provides no basis for excluding Wagner's entire opinions or even his only analysis of the "entire market value rule."

**CONCLUSION**

For the foregoing reasons, Oracle's motion to exclude Wagner's testimony should be denied.

same royalty base, Oracle does not propose any other royalty base, and there is no narrower royalty base. *See Slimfold Mfg.*, 932 F.2d at 1458-59 ("It is most likely that the district court used the entire door as the basis for the royalty award simply because the claims of the Ford patent are themselves directed to the entire door.").

In the end, Oracle's motion to exclude Wagner's entire testimony based on the "entire market value rule" is entirely without merit as Wagner's opinion is based on uncontested hypothetical negotiation analyzing the *Georgia Pacific* factors. Wagner only applied the "entire market value rule" on two pages of his 85 page expert report and Oracle does not challenge this application of the "entire market value rule." Furthermore, Wagner did consider evidence of customer demand, which is extensive in this case. Consequently, Oracle's motion provides no basis for excluding Wagner's entire opinions or even his only analysis of the "entire market value rule."

**CONCLUSION**

For the foregoing reasons, Oracle's motion to exclude Wagner's testimony should be denied.

OF COUNSEL:

Harry J. Roper
George S. Bosy
Aaron A. Barlow
Patrick L. Patras
David R. Bennett
Paul D. Margolis
Benjamin J. Bradford
Emily C. Johnson
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel: (312) 923-8305

POTTER ANDERSON & CORROON LLP

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim Plaintiff epicRealm Licensing, LP*

Dated: August 21, 2008
Public Version Dated: August 28, 2008
880356 / 31393 / Oracle

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on August 28, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on August 28, 2008, the attached document was Electronically Mailed to the following person(s):

Mary B. Graham
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
MGraham@MNAT.com

Theodore T. Herhold
Robert J. Artuz
Eric M. Hutchins
Eric A. Mercer
Joseph A. Greco
Nitin Gupta
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA 94301
OracleEpicrealm@townsend.com

James G. Gilliland
Igor Shoiket
Townsend and Townsend and Crew LLP
Two Embarcadero Center
Eighth Floor
San Francisco, CA 94111-3834
OracleEpicrealm@townsend.com

Chad E. King
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202
OracleEpicrealm@townsend.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com