**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ORACLE CORPORATION and )
ORACLE U.S.A. INC., )
           )   C.A. No. 06-414-SLR
      Plaintiffs/Counterclaim Defendants, )
           )   **JURY TRIAL DEMANDED**
      v. )
           )   **PUBLIC VERSION**
EPICREALM LICENSING, LP, )
           )
      Defendant/Counterclaim Plaintiff. )

---

**EPICREALM'S MEMORANDUM IN OPPOSITION TO ORACLE'S MOTION
FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

OF COUNSEL:

Harry J. Roper
George S. Bosy
Aaron A. Barlow
Patrick L. Patras
David R. Bennett
Paul D. Margolis
Benjamin J. Bradford
Emily C. Johnson
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel: (312) 923-8305

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim
Plaintiff epicRealm Licensing, LP*

Dated: August 21, 2008
Public Version Dated: August 28, 2008
880361 / 31393 / Oracle

# TABLE OF CONTENTS

I.   NATURE AND STAGE OF THE PROCEEDINGS ................................................................1

II.  SUMMARY OF ARGUMENT ...........................................................................................1

III. CONCISE STATEMENT OF FACTS ................................................................................2

IV. ARGUMENT .......................................................................................................................4

    A.  The Court Should Deny Oracle's Motion For Summary Judgment Of No
        Infringement Because Each Of The Accused Oracle Products Literally Infringes
        All Of The Asserted Claims...............................................................................................4

        1.  The Accused Oracle Products Literally Infringe Claim 1 Of The '554 Patent..............5

            a.  The Accused Oracle Application Server Products Literally Infringe Claim
               1 Of The '554 Patent.................................................................................................5

                (1) The Accused Oracle Application Server Products Literally Meet The
                      "Intercepting" Limitation...................................................................................6

                (2) The Accused Oracle Application Server Products Literally Meet The
                      "Releasing" Limitation. ...................................................................................10

                (3) The Accused Oracle Application Server Products Literally Meet The
                      "Dispatcher" Limitation...................................................................................14

             b.  The Accused Oracle Database Products Literally Infringe Claim 1 Of The
               '554 Patent. ...............................................................................................................16

                  (1) The Accused Oracle Database Products Literally Meet The
                      "Intercepting" Limitation.................................................................................17

                (2) The Accused Oracle Database Products Literally Meet The
                      "Releasing" Limitation Under Both Parties' Constructions. ...........................17

                (3) The Accused Oracle Database Products Literally "Dispatch" A
                    Request From A "Dispatcher" To A "Page Server." .......................................17

             c.  The Accused Oracle Web Cache Products Literally Infringe Claim 1 Of
               The '554 Patent. ......................................................................................................20

                  (1) The Accused Oracle Web Cache Products Literally Meet The
                      "Intercepting" Limitation.................................................................................20

                (2) The Accused Oracle Web Cache Products Literally Meet The
                      "Releasing" Limitation. ...................................................................................22

(3) The Accused Oracle Web Cache Products Literally Meet The
"Dispatcher" Limitation...................................................................24

2. The Accused Oracle Products Literally Infringe The Asserted Claims That
Depend From Claim 1 Of The '554 Patent.................................................24

3. The Accused Oracle Products Literally Infringe Claims 9-11 Of The '554
Patent And Claims 2 And 16 Of The '335 Patent........................................25

B. Oracle's Operation of Oracle.com Directly Infringes.........................................25

C. Oracle Indirectly Infringes With Respect To All Of The Accused Oracle Products.........26

1. The Accused Oracle Products Directly Infringe When Used By Customers. .............26

   a. The Circumstantial Evidence Shows That Oracle's Customers Directly
   Infringe..............................................................................................28

   b. Although Unnecessary, EpicRealm Even Has Direct Evidence That
   Oracle's Customers Directly Infringe. .................................................32

2. The Accused Oracle Products Are Not Staple Articles of Commerce ........................33

   a. Using The Accused Oracle Products Without Using Metric-Based Load
   Balancing Is Not A Substantial Noninfringing Use................................33

      (1) Any Use Infringes Claim 11 Of The '554 Patent. ...........................33

      (2) Including An Allegedly Noninfringing Method Of Load Balancing In
      The Accused Oracle Products Does Not Give Those Products A
      Substantial Noninfringing Use.........................................................34

      (3) Oracle Has No Proof That Any Of Its Allegedly Noninfringing Use Is
      "Substantial." ....................................................................................35

      (4) Any Alleged Substantial Noninfringing Use Must Be Of An Accused
      Product In The Infringing Configuration............................................36

3. Oracle Had Notice Of The Patents In 2000. .................................................37

D. Oracle Also Infringes Under The Doctrine Of Equivalents.................................37

1. EpicRealm Is Not Precluded From Raising The Doctrine Of Equivalents.................38

2. EpicRealm's Proof Of Infringement Under The Doctrine Of Equivalents
Overcomes Oracle's Motion. ....................................................................38

   E.  Oracle's Remaining Points Have No Merit. ........................................................................39

CONCLUSION.............................................................................................................................40

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ............................................................................. 15

*ABB Automation Inc. v. Schlumberger Res. Mgmt. Servs., Inc.*,
  254 F. Supp. 2d 479 (D. Del. 2002)..................................................................... 7, 14

*Applera Corp. v. MJ Research, Inc.*,
  2004 WL 367615 (D. Conn. Feb. 24, 2004) ............................................................ 36

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
  406 F.3d 1365 (Fed. Cir. 2005) ............................................................................. 29

*Bell Comm. Research, Inc. v. Vitalink Commc'ns Corp.*,
  55 F.3d 615 (Fed. Cir. 1995 .................................................................................. 28

*Bliss & Laughlin Indus., Inc. v. Bil-Jax, Inc.*,
  356 F. Supp. 577 (D. Ohio 1972) .......................................................................... 33

*Dennison Mfg. Co. v. Ben Clements & Sons, Inc.*,
  467 F. Supp. 391 (S.D.N.Y. 1979) ........................................................................ 36

*Fantasy Sports Properties v. SportsLine.com*,
  287 F.3d 1108 (Fed. Cir. 2002) ......................................................................... 26, 27

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
  438 F.3d 1354 (Fed. Cir. 2006) ............................................................................. 29

*Haworth Inc. v. Herman Miller Inc.*,
  1994 WL 875931 (W.D. Mich. Oct. 24, 1994)......................................................... 36

*Hoffmann-LaRoche, Inc. v. Promega Corp.*,
  33 U.S.P.Q.2d 1641 (N.D. Cal. 1994) ................................................................... 36

*Intel Corp. v. ITC*,
  946 F.2d 821 (Fed. Cir. 1991) .............................................................................. 27

*Johnson & Johnson v. W.L. Gore & Associates, Inc.*,
  436 F. Supp. 704 (D. Del. 1977)............................................................................ 36

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005) ............................................................................. 26

*Moleculon Research Corp. v. CBS, Inc.*,
  793 F.2d 1261 (1986)...................................................................................... 28, 29

*Oak Indus., Inc. v. Zenith Elec. Corp.*,
  697 F. Supp. 988 (N.D. Ill. 1988)........................................................................... 35

*Oak Indus., Inc. v. Zenith Elecs. Corp.*,
  726 F. Supp. 1525 (N.D. Ill. 1989) ........................................................................ 35

*Optical Disc Corp. v. Del Mar Avionics,*
  208 F.3d 1324 (Fed. Cir. 2000) .................................................................... 39

*Philips Elecs. N. Am. Corp. v. Contec Corp.,*
  411 F. Supp. 2d 470 (D. Del. 2006) ....................................... 27, 28, 34, 35

*Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.,*
  803 F.2d 1170 (Fed. Cir. 1986) .................................................................... 33

*Regents of University of California v. Hansen,*
  54 U.S.P.Q.2d 1473 (E.D. Cal. Nov. 9, 1999) ............................................ 35

*Ricoh Co. v. Quanta Computer Inc.,*
  2007 WL 4203422 (Fed. Cir. Nov. 5, 2007) .......................................... 34, 37

*Rohm & Haas Co. v. Dawson Chem. Co., Inc.,*
  557 F. Supp. 739 (S.D. Tex. 1983) .............................................................. 35

*Royal Typewriter Co. v. Remington Rand, Inc.,*
  168 F.2d 691 (2d Cir. 1948) ......................................................................... 16

*Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*
  872 F.2d 978 (Fed. Cir. 1989) ..................................................................... 15

*Symantec Corp. v. Computer Assocs. Int'l, Inc.,*
  522 F.3d 1279 (Fed. Cir. 2008) .................................................................... 29

*W.L. Gore & Associates, Inc. v. Garlock, Inc.,*
  721 F.2d 1540 (Fed. Cir. 1983) .................................................................... 25

**Statutes**

35 U.S.C. § 271(c). .......................................................................................... 33

**Other Authorities**

Webster's Third New International Dictionary (1965) ...................................... 33

## **EXHIBITS**

Exhibits cited herein refer to the Appendix filed contemporaneously herewith.

Defendant epicRealm Licensing, LP ("epicRealm") submits this brief in opposition to Oracle's Motion for Summary Judgment of Noninfringement. Oracle's motion suffers from numerous flaws—it ignores the law, it contradicts Oracle's fact witnesses, it contradicts Oracle's expert witnesses, it even contradicts Oracle's proposed claim constructions and Oracle's contemporaneously filed brief for summary judgment of invalidity. And all that is before epicRealm presents its abundant evidence proving infringement. Oracle's shotgun approach can only result in the conclusion that Oracle has no reason to argue that this issue should not go to the jury. Oracle's motion for summary judgment of noninfringement should therefore be denied in its entirety.

## I.      NATURE AND STAGE OF THE PROCEEDINGS

This patent action was filed in 2006 and is now scheduled for a two-week jury trial commencing January 12, 2009. Pursuant to the Stipulated Amendment to Joint Discovery Plan and Scheduling Order (D.I. 191) entered by the Court on July 18, 2008, the deadline for filing oppositions to summary judgment motions is August 21, 2008.

## II.     SUMMARY OF ARGUMENT

1.      The Court should deny Oracle's motion in its entirety.

2.      The Accused Oracle Products literally infringe all of the asserted claims. Oracle's attempt to argue differently relies on Oracle trying to impose new, additional requirements that are not part of either party's claim construction. Oracle relies extensively on these new, additional requirements in its noninfringement motion, while completely ignoring them in its contemporaneously filed invalidity motion.

3.      In particular, Oracle argues here that the Accused Oracle Products do not infringe based on Oracle's new requirements for the "intercepting," "releasing" and "dispatcher"

limitations.  In addition to contradicting its invalidity brief, Oracle's arguments contradict its own expert witnesses.

   4.  Oracle's operation of Oracle.com directly infringes.

   5.  Oracle's arguments on indirect infringement fail to acknowledge the relevant law. EpicRealm's evidence requires denial of Oracle's motion with respect to indirect infringement.

   6.  The Accused Oracle Products also infringe under the doctrine of equivalents. EpicRealm is entitled to raise the doctrine of equivalents in response to Oracle's ever-changing positions on what is required to show literal infringement.

## III. CONCISE STATEMENT OF FACTS

   EpicRealm accuses Oracle of infringing the patents in suit as follows:

| Accused Oracle Products | Releases at Issue | '554 Patent Claims Infringed | '335 Patent Claims Infringed |
|---|---|---|---|
| Accused Oracle Web Cache Products | Release 1.0.2 (November 2000) and all subsequent releases | 1-5, 7-11 | 2 and 16 |
| Accused Oracle Application Server Products | 10gR1 (9.0.4) (April 2003) and all subsequent releases | 1-5, 7-11 | 2 and 16 |
| Accused Oracle Database Products | for RAC and JDBC: 10gR2 (10.2.0.1.0) (May 2005) and all subsequent releases; for RAC and OCI: 11g (11.1) (October 2007) and all subsequent releases | 1-3, 7-11 | 2 and 16 |

   The Accused Oracle Web Cache Products, the Accused Oracle Application Server Products and the Accused Oracle Database Products are referred to collectively herein as the "Accused Oracle Products."  The background of the technology, the patents in suit and the

2

Accused Oracle Products are described in more detail in the "Concise Statement of Facts" in

EpicRealm's Memorandum In Support Of Its Motion For Partial Summary Judgment Of Literal

Infringement. (D.I. 224.)

Pursuant to the Joint Discovery Plan and Scheduling Order, the parties exchanged lists of

claim elements to be construed and proposed constructions on December 14, 2007. Of note here,

Oracle asked for the following terms to be construed and to be given the following constructions:

| Claim Term | Oracle's First Proposed Construction |
|---|---|
| "*intercepting* said request at [said Web server/second computer system/HTTP-compliant device]" | "receiving a request at the [Web server machine/second computer system/HTTP-compliant device] and diverting the request before the [Web server/second computer system/HTTP-compliant device] executable can process the request" |
| "said page server receiving said request and *releasing* said Web server [second computer system or HTTP-compliant device] to process other requests" | "said page server receiving said request and said page server performing an act (separate from merely receiving the request) that expressly communicates to said [Web server/second computer system/HTTP-compliant device] that it may now resume processing other requests" |
| "dispatcher" | "a software program for determining which page server should be used to process a dynamic web page generation request" |
| "page server" | "a server machine, distinct from the [Web server machine/second computer system/HTTP-compliant device], which generates dynamic Web pages" |
| "Web server" | "a computer running HTTP-compliant server software which receives Web page requests and returns Web pages in response to the requests" |
| "other requests" | "requests other than said request" |

(Ex. 3, Oracle's Prop. Claim Const. Chart Dec. 14, 2007.) On June 30, 2008, the parties filed

their Joint Claim Construction Statement. (D.I. 187.) There, Oracle asked for the following

terms to be given the following constructions:

| Claim Term | Oracle's Second Proposed Construction |
|---|---|
| "*intercepting* said request at said Web server" | "receiving a request at the Web server machine and diverting the request before the Web server executable can process the request" |
| "said page server receiving said request and *releasing* said Web server [or second | "said page server receiving said request and said page server performing an act (separate from merely receiving the request) to free the Web server to process other requests" |

| computer system or HTTP-compliant device] to process other requests" | |
|---|---|
| "dispatcher" | "a software program for determining which page server should be used to process a dynamic web page generation request" |
| "page server" | "page generating software, running on a processor separate from that of the Web server, that generates dynamic Web pages" |
| "Web server" | "HTTP-compliant server software, or a machine running such software, that receives Web page requests and returns Web pages in response to the requests" |
| "other requests" | Oracle no longer wants the Court to construe "other requests." |

In sum, after the close of discovery, Oracle changed its constructions for the "page server," "Web server" and "releasing" limitations. Oracle maintained its constructions for the "intercepting" and "dispatcher" limitations. Oracle withdrew its proposed construction for "other requests" because Oracle wants to try to give "other requests" a different meaning now, at least when Oracle is arguing noninfringement. Similarly, despite previously maintaining its position, Oracle now argues that the "intercepting" and "dispatcher" limitations have additional requirements for epicRealm to prove infringement, but not for Oracle to prove invalidity.

## IV.    ARGUMENT

Oracle's motion should be denied in its entirety.

### A.    The Court Should Deny Oracle's Motion For Summary Judgment Of No Infringement Because Each Of The Accused Oracle Products Literally Infringes All Of The Asserted Claims.

Although epicRealm contends that five independent claims of two patents are infringed by three different Oracle Products, Oracle contends that summary judgment of noninfringement is proper for every claim and every product because the Accused Oracle Products fail to meet three limitations in the same manner regardless of the claim. Specifically, for each of the Accused Oracle Products and for each of the asserted claims, Oracle argues: (1) the Accused Oracle Products do not "intercept" a request for a dynamic web page at a "Web server;" (2) the "Web server" in the Accused Oracle Products is not "released" by a "page server;" and (3) the

4

Accused Oracle Products do not "dispatch" a request from a "dispatcher" to a "page server." Each of Oracle's arguments not only ignores the parties' claim constructions, but also contradicts Oracle's own expert witnesses and Oracle's own invalidity positions, including those set forth in Oracle's contemporaneously filed motion for summary judgment of invalidity. Of course, epicRealm also provides affirmative evidence that the three Accused Oracle Products literally infringe all of the asserted claims. Therefore, this Court should deny Oracle's motion for summary judgment.

As set forth below, the Accused Oracle Products literally infringe Claims 1-5 and 7-11 of the '554 Patent[1] and Claims 2 and 16 of the '335 Patent.[2] Each of the Accused Oracle Products literally meets every limitation of the asserted claims including those disputed by Oracle.

### 1. The Accused Oracle Products Literally Infringe Claim 1 Of The '554 Patent.

Oracle does not dispute that each of the three Accused Oracle Products literally meets nearly all of the limitations of Claim 1 of the '554 Patent. Oracle only argues that the Accused Oracle Products do not literally meet the "intercepting," "releasing" and "dispatcher" limitations. Oracle is wrong on all three counts.

### a. The Accused Oracle Application Server Products Literally Infringe Claim 1 Of The '554 Patent.

The Accused Oracle Application Server Products literally infringe Claim 1 of the '554 Patent under both parties' constructions. (2d Finkel Decl. Ex. 1 at 1-20.) Oracle only argues that: (1) the Accused Oracle Application Server Products do not "intercept" a request for a

---

[1] EpicRealm does not assert that the Accused Oracle Database Products infringe Claims 4 and 5 of the '554 Patent.

[2] A detailed description of the three Accused Oracle Products is provided in EpicRealm's Memorandum in Support of Its Motion for Partial Summary Judgment of Literal Infringement. (D.I. 224.)

dynamic web page at a "Web server;" (2) the "Web server" in the Accused Oracle Application

Server Products is not "released" by a "page server;" and (3) the Accused Oracle Application

Server Products do not "dispatch" a request from a "dispatcher" to a "page server." As set forth

below, each of Oracle's noninfringement arguments fails.

**(1)    The Accused Oracle Application Server Products
Literally Meet The "Intercepting" Limitation.**

Oracle argues that the Accused Oracle Application Server Products do not meet the

"intercepting" limitation. (D.I. 205 at 30-31.) EpicRealm proposed that "intercepting said

request at said Web server" means "intercepting the handling of a request at a Web server,"

while Oracle proposed "receiving a request at the Web server machine and diverting the request

before the Web server executable can process the request." The Accused Oracle Application

Server Products literally meet the "intercepting" limitation under either party's construction. (2d

Finkel Decl. Exs. 1, 2.)

Oracle's infringement expert, Dr. Clark, opined that the Accused Oracle Products do not

infringe because they do not meet the "intercepting" limitation. Oracle's validity expert, Dr.

Shamos, however, effectively conceded that the Accused Oracle Products meet the

"intercepting" limitation:

> Intercepting is inherent in any system in which the Web server
> processes some but not all, requests. Some mechanism must be
> used to discriminate between the requests the Web server will
> handle and which it will not. That mechanism which prevents the
> Web server from handling certain requests "intercepts" their
> handling within the Texas Court's construction.[3]

(Ex. 13, Shamos Rpt. ¶ 94.) Dr. Shamos later elaborated: "In the case where the web server is

processing some requests and not others, then a determination is being made as to which ones it

will process and which ones it isn't. That's what I have taken to be intercepting." (Ex. 9,

---

[3] The Texas Court's construction is the same as epicRealm's construction here.

6

Shamos Dep. 207:14-18.)



_____

[4] Oracle's noninfringement arguments for the "releasing" and "dispatcher" limitations suffer from the same malady, showing further that Oracle's motion should be denied.





For all these reasons, the Accused Oracle Application Server Products literally meet the "intercepting limitation."

> **(2)    The Accused Oracle Application Server Products
> Literally Meet The "Releasing" Limitation.**

Oracle next argues that the Accused Oracle Application Server Products do not meet the "releasing" limitation. EpicRealm proposed that the term "releasing" should be construed as "freeing," while Oracle proposed that the "releasing" limitation should be construed as "said page server receiving said request and said page server performing an act (separate from merely receiving the request) to free the Web server to process other requests."







████████████████████████████████████████████████████████████████████

████████████████████████████████████

### (3)    The Accused Oracle Application Server Products Literally Meet The "Dispatcher" Limitation.

Oracle argues that the Accused Oracle Application Server Products do not meet the "dispatcher" limitation. Oracle offer no argument with respect to the "dispatching" limitation. Oracle contends that "dispatcher" requires construction and should be construed as "a software program for determining which page server should process a dynamic Web page generation request." EpicRealm contends that the term "dispatcher" does not need construction and should be given its ordinary meaning. The Accused Oracle Application Server Products literally meet the "dispatcher" limitation under both its ordinary meaning and Oracle's construction. (2d Finkel Decl. ¶ 12.)

Oracle does not dispute that mod_oc4j meets the ordinary meaning and Oracle's construction of "dispatcher." It is undisputed that mod_oc4j using the metric-based load balancing algorithms performs "dispatching" under either party's construction. Thus, mod_oc4j is a "dispatcher" under the ordinary meaning. In addition, mod_oc4j meets Oracle's construction of "dispatcher" because it is a software program that determines which page server should process a dynamic Web page generation request. (*Id.* ¶ 13.)

Oracle nonetheless argues that the Accused Oracle Application Server Products do not meet the "dispatcher" limitation because Oracle tries to impose a new requirement (for infringement, but not invalidity) that the "dispatcher" must be a separate executable process from the "Web server." Neither party's construction, however, requires that the "dispatcher" be a separate executable process from the "Web server." Therefore, Oracle's motion should be denied. *ABB Automation,* 254 F. Supp. 2d at 481.

Oracle has two bases for now arguing that the "dispatcher" has to be a separate executable process from the "Web server." Oracle argues that if the same executable was both the "Web server" and the "dispatcher" it would contradict (1) the "plain language of the patent claims (which require routing a request *from the Web server to the dispatcher*)" and (2) "common sense (if the Web server *is* the dispatcher, there would be no routing *to* the dispatcher)." (Oracle Br. 32 (emphasis original).) Oracle's argument fails for three reasons.

*Second,* Oracle misunderstands the law. "An apparatus claim describing a combination of components does not require that the function of each be performed by a separate structure in the apparatus. The claimed and accused devices must be viewed and evaluated as a whole." *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.* 872 F.2d 978, 989 (Fed. Cir. 1989), *overruled in part on other grounds by A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992). "[C]ourts have with...unanimity held that it does not avoid infringement to combine into one member that which the patent discloses as two, if the single member performs the duties of both in the same way." *Royal Typewriter Co. v. Remington Rand, Inc.*, 168 F.2d 691, 693 (2d

Cir. 1948). Thus, the Accused Oracle Application Server Products infringe even if the "Web Server" and "dispatcher" are combined into a single component.

*Third*, Oracle's argument contradicts its own expert. For example, in Dr. Shamos's invalidity analysis of two references based on Microsoft Internet Information Server Version 1.0 ("IIS 1.0"), Dr. Shamos contends that the "dispatcher is that component of the Database Connector which reads the WDG file." (Ex. 14, Shamos Rpt. Ex. 3 at 110.) The "Database Connector" is a Dynamically Linked Library (".dll") that runs in the same executable as the IIS 1.0 "Web server." (2d Finkel Decl. ¶ 15.) Thus, Oracle's new requirement for the "dispatcher" contradict Oracle's own expert, who opined that the "dispatcher" of IIS 1.0 is a component of the "Web server," not a separate executable process. Of course, once again Oracle only argues for this new requirement for the "dispatcher" in its noninfringement brief, not in its invalidity brief. For all these reasons, the Accused Oracle Application Server Products include a "dispatcher."

     **b.**  **The Accused Oracle Database Products Literally Infringe Claim 1 Of The '554 Patent.**

The Accused Oracle Database Products literally infringe claim 1 of the '554 Patent under both parties' constructions. (*Id.* ¶ 16.) Indeed, Oracle only disputes that: (1) a request is not intercepted at the "Web server" (OHS); (2) the "Web server" (OHS) is not released by a "page server;" and (3) the Accused Oracle Database Products do not "dispatch" a request from a "dispatcher" to a "page server." Because both the Accused Oracle Application Server Products and the Accused Oracle Database Products rely on OHS as the "Web server," Oracle's first two noninfringement arguments (intercepting and releasing) are identical to Oracle's arguments for the Accused Oracle Application Server Products and fail for the same reasons. All of Oracle's noninfringement arguments for the Accused Oracle Database Products are fatally flawed.

16

**(1)    The Accused Oracle Database Products Literally Meet The "Intercepting" Limitation.**

As explained above, a request is intercepted at the "Web server" (OHS) when the determination is made that a "page server" not the "Web server" will process a request. (*Id.* ¶ 17.) Two examples of intercepting a request at OHS related to the Accused Oracle Database Products are: (1) when a request is routed from OHS to OC4J; and (2) when a request is routed from OHS to mod_plsql. (*Id.*) Oracle's arguments must be rejected as already explained above with respect to the Accused Oracle Application Server Products.

**(2)    The Accused Oracle Database Products Literally Meet The "Releasing" Limitation Under Both Parties' Constructions.**

As also explained above, the "Web server" (OHS) is "released" to process "other requests" when it routes a request to a "page server" (*e.g.*, a RAC instance) under both parties' constructions in the same two ways. *First*, OHS is "released" by sending the request to the "page server," which allows OHS to be released to have additional resources to process "other requests." *Second*, OHS is released when a RAC instance sends a Reliable Network Protocol Acknowledgement upon receipt of a request. (*Id.* ¶ 18.) That acknowledgement also frees "Web server" resources used to process "other requests." (*Id.*) Therefore, the Accused Oracle Database Products meet the "releasing" limitation under both parties' constructions.

**(3)    The Accused Oracle Database Products Literally "Dispatch" A Request From A "Dispatcher" To A "Page Server."**

With respect to the "dispatcher," Oracle only argues that the Accused Oracle Database Products: (1) do not include a "dispatcher" that is a separate executable process from the "Web server" (OHS); and (2) do not perform "dispatching" because JDBC and OCI do not "examine" a request for runtime load balancing. (Oracle Br. 33-35.) Both arguments fail.







For all these reasons, the Accused Oracle Database Products include a "dispatcher" that "dispatches" a request to a "page server."

### c.    The Accused Oracle Web Cache Products Literally Infringe Claim 1 Of The '554 Patent.

The Accused Oracle Web Cache Products literally infringe Claim 1 of the '554 Patent under both parties' constructions. (2d Finkel Decl. ¶ 23.) Indeed, Oracle only disputes that: (1) a request is intercepted at the "Web server" (Web Cache); (2) the "Web server" (Web Cache) is not released by a "page server;" and (3) the Accused Oracle Web Cache Products do not include a "dispatcher." As set forth below, each of Oracle's noninfringement arguments fails.

### (1)    The Accused Oracle Web Cache Products Literally Meet The "Intercepting" Limitation.

The "Web server" (Web Cache) processes some but not all requests. (*Id.* ¶ 24.) Thus, as Oracle's expert concedes, the Accused Oracle Web Cache Products meet the "intercepting" limitation under both parties' constructions. Nevertheless, Oracle again argues that the Accused Oracle Web Cache Products do not perform "intercepting" based on new requirements not present in either party's construction and not used in Oracle's contemporaneously filed invalidity

summary judgment brief. As already explained above, these new requirements should be rejected.

Oracle emphasizes portions of Dr. Finkel's report in an effort to twist it into a requirement that the "processing of dynamic requests must be treated differently than other requests if 'intercepting' is to make any sense at all." (Oracle Br. 29.) Fairly read, however, Dr. Finkel's report is absolutely consistent with epicRealm's infringement argument: the fact that the "Web server" will process some, but not all requests, proves "intercepting" under either party's construction.





In addition, Oracle now contends that under either party's construction, "intercepting" requires that a request is "diverted" before the "Web Cache executable" can process the request. Even if Oracle were correct that a request has to be "diverted" before the "Web server" processes the request, the Accused Oracle Web Cache Products still infringe. The key to Oracle's

argument is that it presumes that doing a cache look up is processing a request. Nevertheless, as

Oracle concedes, processing a request requires generating a response to the request. (*Id.* at 10.)

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████

For all these reasons, the Accused Oracle Web Cache Products literally meet the

"intercepting" limitation under either party's construction.

### (2)    The Accused Oracle Web Cache Products Literally Meet The "Releasing" Limitation.

Oracle also argues that the Accused Oracle Web Cache Products do not meet the

"releasing" limitation because the "Web server" (Web Cache) is not released when it routes a

request to a "page server" (*e.g.*, Oracle Application Server). Web Cache is released to process

other requests under either party's construction of "releasing." (2d Finkel Decl. ¶ 25.) When

Web Cache routes a request to a "page server," it is released to process other requests under both

parties' constructions in the same two ways—the same two ways that the "Web server" of the

Accused Oracle Application Server Products are released. (*Id.* ¶ 26.)

*First*, Web Cache is released to process other requests, *e.g.*, the other requests it currently

is processing, when it routes a request to a "page server." Under epicRealm's construction, Web

Cache is "freed" when it routes a request to a "page server" because it can now use additional

resources to process "other requests." (*Id.*) Similarly, Oracle's construction is also met because

the "act (separate from merely receiving the request) to free the Web server to process other

requests" required by Oracle's construction is the "page server" processing the request. (*Id.*) Because the "page server" is processing the request, Web Cache is released and not required to also expend the resources necessary to process the request. Thus, as described above, Web Cache is freed to process *other* requests.

*Second*, Web Cache is released to process other requests by the reliable network protocol acknowledgement sent from the "page server." (*Id.* ¶ 27.) ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████ Thus, the acknowledgement frees resources on the "Web server" and, therefore, releases Web Cache to process "other requests." (2d Finkel Decl. ¶ 27.) EpicRealm's construction is met because the "Web server" is freed to process "other requests." (*Id.*) Oracle's construction is met because sending the acknowledgement is the act, separate from the "page server" receiving a request, that frees Web Cache to process other requests. (*Id.*) Therefore, Web Cache is released to process other requests under either party's construction in both of those ways. Thus, the Accused Oracle Web Cache Products literally meet the "releasing" limitation.

Oracle argues that epicRealm is reading the "releasing" limitation out of the claims. (Oracle Br. 16.) This is not true. Merely having a "page server" process the request does not necessarily mean that the "releasing" limitation is met. For example, a system could be designed to have the "Web server" process a request in parallel with a "page server," *e.g.*, to help ensure a prompt response to a Web client even if the "page server" subsequently became slow or had a problem. (2d Finkel Decl. ¶ 28.) ████████████████████████████████████

████████████████████████████████████████████████████████████████████

23



### (3) The Accused Oracle Web Cache Products Literally Meet The "Dispatcher" Limitation.

The "dispatcher" in the Accused Oracle Web Cache Products is the portion of the Web Cache code that dispatches cache misses to a "page server" (*e.g.*, Oracle Application Server) and the "Web server" is the portion of the Web Cache code that receives Web page requests and can return responses, *e.g.*, out of cache. (2d Finkel Decl. ¶ 30.) Oracle's new requirements for the "dispatcher" for infringement (but not invalidity) purposes should be rejected as described above. Thus, in the Accused Oracle Web Cache Products, a request is routed from the "Web server" to the "dispatcher."

### 2. The Accused Oracle Products Literally Infringe The Asserted Claims That Depend From Claim 1 Of The '554 Patent.

The Accused Oracle Products also literally infringe the asserted claims that depend from Claim 1 of the '554 Patent. (*Id.* ¶ 31.) Oracle does not dispute that all of the limitations added by these dependent claims are met by the Accused Oracle Products. Thus, because the Accused Oracle Products literally infringe Claim 1, they also literally infringe the asserted claims that depend from Claim 1. Oracle does not make any separate argument for any of the other asserted

claims, even though infringement must be determined on a claim-by-claim basis. *W.L. Gore &*

*Associates, Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1559 (Fed. Cir. 1983).

### 3. The Accused Oracle Products Literally Infringe Claims 9-11 Of The '554 Patent And Claims 2 And 16 Of The '335 Patent.

The Accused Oracle Products also literally infringe Claims 9-11 of the '554 Patent and

Claims 2 and 16 of the '335 Patent. (2d Finkel Decl. ¶ 32-34.) Oracle makes no separate

argument for these claims.

### B. Oracle's Operation of Oracle.com Directly Infringes.



C.    **Oracle Indirectly Infringes With Respect To All Of The Accused Oracle Products.**

Oracle argues that it is entitled to summary judgment that it does not indirectly infringe because: (1) the Accused Oracle Products do not directly infringe when used by Oracle customers; (2) the Accused Oracle Products have substantial noninfringing uses; and (3) Oracle did not have notice of the patents in suit prior to 2006. (Oracle Br. 35-37.) Oracle's motion should be denied because Oracle is demonstrably wrong on all three counts.

1.    **The Accused Oracle Products Directly Infringe When Used By Customers.**

Oracle makes two arguments: (1) the Accused Oracle Products are "incapable" of direct infringement because they allegedly lack certain claim elements; and (2) epicRealm has not provided any evidence that Oracle's customers actually use the infringing metric-based load balancing feature of the Accused Oracle Products. Oracle's first argument is answered above. Oracle's second argument has no merit as explained below.

Both types of indirect infringement require a patentee to show that there has been a direct infringement of the patents in suit. *MEMC Elecs. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). Oracle contends that it is entitled to summary judgment on the indirect infringement claims because epicRealm cannot show that any Oracle customer has actually used metric-based load balancing, and that instead, Oracle's customers only use the allegedly noninfringing methods contained in the software.

The claims in issue are directly infringed by Oracle's customers because as discussed above the software supplied by Oracle enables Oracle's customers to practice all of the limitations recited in the claims. *Fantasy Sports Properties v. SportsLine.com*, 287 F.3d 1108, 1118 (Fed. Cir. 2002). In *Fantasy Sports*, the claim in issue was directed to a computer having software that allowed the user to play "fantasy football." There, the Court held that the claim

26

was infringed where the software was written to "enable" the user to perform the limitations

recited in the claim. *Id.* For that reason, the *Fantasy Sports* Court found infringement without

regard to whether the claimed features are actually "activated or utilized in any way" by the user.

To the same effect is *Intel Corp. v. ITC*, 946 F.2d 821, 832 (Fed. Cir. 1991) (the accused device

"to be infringing, need only be capable of operating in the page mode. Contrary to [defendant's]

argument, actual page mode operation in the accused device is not required.").

A case that is remarkably similar to the case at bar is *Philips Elecs. North American*

*Corp. v. Contec Corp.*, 411 F. Supp. 2d 470 (D. Del. 2006). There, Philips sued defendants for

patent infringement relating to a method for programming universal remote control units

("URCs") known as the "autoscan" method. *Id.* at 472. In addition to including the patented

"autoscan" method, defendants' URCs also included an additional, noninfringing way of

programming their URCs called "direct entry." *Id.* at 473. Philips and Defendants cross-moved

for summary judgment on both contributory and inducing infringement. *Id.* at 474, 478.

Defendants argued that "Philips is not entitled to summary judgment of infringement

because (1) there is no specific evidence of direct infringement by anyone using Defendants'

URCs; (2) there is no contributory infringement because Defendants' URCs have a substantial

noninfringing use; and (3) Philips cannot prove inducement to infringe." *Id.* at 474.

With respect to the direct infringement requirement of indirect infringement,

> Defendants contend that, because their URCs embody both the
> patented "autoscan" method, as well as a non-infringing method of
> programming, Philips cannot show that any customer actually used
> the patented method. . . . However, it is a well-settled principle
> that "an accused product that sometimes, but not always, embodies
> a claimed method nonetheless infringes." *Bell Communications
> Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 623
> (Fed. Cir. 1995). Here, there is no dispute that Defendants' URCs
> contain the patented method for programming the URC, as well as
> a non-infringing method. Thus, [Defendants'] URCs infringe the

> patent, and ***more specific evidence of direct infringement is not necessary***.

*Id.* (emphasis added).  In addition,

> Defendants provided instructions on how to use the patented method.  Therefore, even though Defendants' URCs "sometimes, but not always" embody the claimed method, they infringe the [] patent . . . Thus, there are no disputes of material fact, and there is sufficient proof of direct infringement of the [] patent, based on the fact that the URCs manufactured by Defendants embody the patented method.

*Id.* at 475 (internal citation omitted).  Here, the Accused Oracle Products contain the patented method when they reach Oracle's customers.  Furthermore, Oracle provides instructions to its customers on how to use the patented method.  *Id.* at 475.  Therefore, even though Oracle's software "sometimes, but not always" uses the claimed method, the customers infringe the patents in suit.  *Id.*  (citing *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 623 (Fed. Cir. 1995)).  Thus, epicRealm has provided sufficient proof of direct infringement by Oracle's customers based on these facts alone.

<blockquote>a.    <strong>The Circumstantial Evidence Shows That Oracle's Customers Directly Infringe.</strong></blockquote>

In addition, epicRealm has provided circumstantial evidence of direct infringement.  A patentee may prove direct infringement using circumstantial evidence alone.  It has long been settled that circumstantial evidence is highly probative on the issue of direct and indirect infringement.  As held in *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (1986):

> If CBS is arguing that proof of inducing infringement or direct infringement requires *direct*, as opposed to *circumstantial evidence*, we must disagree.  It is hornbook law that direct evidence of a fact is not necessary.  "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."

*Moleculon*, 793 F.2d at 1272 (emphasis in original, citation omitted) (affirming infringement using circumstantial evidence of extensive sales and instructions distributed with the infringing product).  Many authorities support this proposition.  *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1293 (Fed. Cir. 2008) ("even though [the patentee] has not produced evidence that any particular customer has directly infringed the patent...[it] has produced sufficient circumstantial evidence of direct infringement").  The law is clear that "[d]irect evidence of infringement, as opposed to circumstantial evidence, is not necessary."  *Id.*; *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006) (patentee can rely on circumstantial evidence, including instruction sheets provided with infringing product, to prove direct infringement); *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1375-77 (Fed. Cir. 2005) (affirming denial of judgment as a matter of law of no indirect infringement based on circumstantial evidence of direct infringement, including literature accompanying the infringing product).  Here, the circumstantial evidence of direct infringement easily is sufficient to deny Oracle's motion.









### 2. The Accused Oracle Products Are Not Staple Articles of Commerce

Oracle is liable as a contributory infringer under 35 U.S.C. § 271(c). Oracle attempts to escape liability from this provision by relying on the exception for staple articles or commodities of commerce suitable for substantial noninfringing use. Certainly, the Accused Oracle Products are not staple articles of commerce. In its dictionary meaning, the word "staple" means "a commodity that is produced regularly or in large quantities esp. for a wholesale market." *Bliss & Laughlin Indus., Inc. v. Bil-Jax, Inc.*, 356 F. Supp. 577, 580 (D. Ohio 1972) (citing Webster's Third New International Dictionary, 2225 (1965)).

The Accused Oracle Products, specialized computer software, are not the type of staple articles of commerce intended to fit this narrow exception. The Accused Oracle Products are not produced regularly for another "practical use" in the market. *See Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 803 F.2d 1170, 1173-74 (Fed. Cir. 1986). Indeed, their only "practical use" is in conjunction with computers and computer networks, and for the management of dynamic Web page requests using the patented invention. Thus, the Accused Oracle Products are not staple articles of commerce suitable for substantial noninfringing use, as discussed in more detail below. Certainly, a reasonable jury could conclude that the Accused Oracle Products are not staple articles of commerce.

### a. Using The Accused Oracle Products Without Using Metric-Based Load Balancing Is Not A Substantial Noninfringing Use.

Oracle incorrectly argues that using the Accused Oracle Products without using metric-based load balancing is a substantial noninfringing use.

### (1) Any Use Infringes Claim 11 Of The '554 Patent.

The simplest refutation of Oracle's argument is that customers infringe Claim 11 of the '554 Patent by using the Accused Oracle Products regardless of whether they use the metric-

33

based load balancing feature. Therefore, Oracle gains nothing from its argument that the Accused Oracle Products can be used without metric-based load balancing because the code for performing metric-based load balancing is in the Accused Oracle Products that is used by Oracle's customers. Thus, the customers are using the invention of at least Claim 11 of the '554 Patent. As such, there is *no* noninfringing use of the Accused Oracle Products under 35 U.S.C. § 271(c), much less any *substantial* noninfringing uses.

> (2)    **Including An Allegedly Noninfringing Method Of Load Balancing In The Accused Oracle Products Does Not Give Those Products A Substantial Noninfringing Use.**

Oracle cannot avoid contributory infringement simply by including separable, non-infringing features in its infringing device. *Ricoh Co. v. Quanta Computer Inc.*, 2007 WL 4203422, at *31-32 (Fed. Cir. Nov. 5, 2007); *Philips*, 411 F. Supp. 2d at 476. Oracle argues that including noninfringing methods is enough to give a product a substantial noninfringing use, even though it includes the patented invention. (Oracle Br. 36.) This argument is legally flawed, "for it would indeed violate the 'logic of the patent laws' to allow a potential infringer to avoid liability for contributory infringement by simply adding a noninfringing function to a device that practices a patented method." *Philips*, 411 F. Supp. 2d at 476. Furthermore, the fact that metric-based load balancing is practiced separately from other unpatented methods in the Accused Oracle Products shows that the two are not "incidental and necessary to each other" and supports a finding that the Accused Oracle Products are not staple articles suitable for substantial noninfringing use. *Id.* at 477 n.5. This is a well settled principle of contributory infringement:

> If the practice of the patented method is incidental and necessary to the practice of the unpatented methods, the device is a staple and there can be no contributory infringement. If, on the other hand, the practice of the patented method is not necessary or incidental to the practice of the unpatented methods, a jury could find that the device *as a whole* is not [a] staple and the seller could be liable for contributory infringement.

34

*Oak Indus., Inc. v. Zenith Elecs. Corp.*, 726 F. Supp. 1525, 1538-39 (N.D. Ill. 1989) (emphasis in original). Here, the evidence is more than sufficient for a reasonable jury to find that the Accused Oracle Products are not staple articles of commerce.

The practice of the metric-based load balancing method is not incidental to the other noninfringing algorithms included in the accused software. Instead, they are two separate methods for managing dynamic Web page requests. Thus, under the standard set forth in *Ricoh*, *Philips* and *Oak Industries*, the Accused Oracle Products are not staple articles of commerce suitable for substantial noninfringing use. As a result, Oracle's motion for summary judgment of no contributory infringement should be denied. *Philips*, 411 F. Supp. 2d at 476-77; *Oak Indus., Inc. v. Zenith Elecs. Corp.*, 697 F. Supp. 988, 995 (N.D. Ill. 1988).

### (3)    Oracle Has No Proof That Any Of Its Allegedly Noninfringing Use Is "Substantial."

Moreover, even if it were possible for there to be noninfringing uses of the Accused Oracle Products (there is not), Oracle's motion would still have to be denied because any such alleged noninfringing use is not "substantial." Oracle misstates the correct legal standard for determining whether a product is a staple article of commerce suitable for substantial noninfringing use. Oracle argues that where a customer "can use" a product in an allegedly noninfringing way, that is sufficient to show a "substantial" noninfringing use. (*See* Oracle Br. 37.) It is not. *Regents of University of California v. Hansen*, 54 U.S.P.Q.2d 1473, 1480 (E.D. Cal. Nov. 9, 1999). The fact that a product "*can*" be used in noninfringing ways in the absence of evidence showing that customers actually "*do*" use the accused products in any manner other than the infringing manner is insufficient to escape liability for contributory infringement. *Id.* Certainly, the unsupported theoretical possible use of a product is not a "substantial" use under 271(c). *Rohm & Haas Co. v. Dawson Chem. Co., Inc.*, 557 F. Supp. 739, 814 (S.D. Tex. 1983).

Furthermore, in order to establish that the Accused Oracle Products are staple articles of commerce, the language of Section 271(c) requires the application of a *"quantitative element"* to the staple article of commerce analysis to determine whether a noninfringing use is "substantial." *Hoffmann-LaRoche, Inc. v. Promega Corp.*, 33 U.S.P.Q.2d 1641, 1648 (N.D. Cal. 1994) (emphasis in original); *Applera Corp. v. MJ Research, Inc.*, 2004 WL 367615, at *2 (D. Conn. Feb. 24, 2004); *Haworth Inc. v. Herman Miller Inc.*, 1994 WL 875931, at *10 (W.D. Mich. Oct. 24, 1994). Whether a use is "substantial" or not depends on how likely and often the use will occur. *Hoffmann-La Roche*, 33 U.S.P.Q.2d at 1648. Thus, "occasional aberrant use of a product" does not make that use "substantial." *Dennison Mfg. Co. v. Ben Clements & Sons, Inc.*, 467 F. Supp. 391, 428 (S.D.N.Y. 1979) (emphasis in original). Similarly, inefficient and uneconomical uses are less likely to be deemed "substantial." *Johnson & Johnson v. W.L. Gore & Associates, Inc.*, 436 F. Supp. 704, 727 n.41 (D. Del. 1977). Here, Oracle has made no showing of how likely or often that any of its customers use the Accused Oracle Products in an allegedly noninfringing manner. Furthermore, it has introduced no evidence that the supposed noninfringing uses are not uneconomical or inefficient. Rather, the evidence overwhelmingly supports the customers' use of the Accused Oracle Products in an infringing manner because this is how Oracle advertises and instructs its customers to use its products. For all these reasons, the Accused Oracle Products are not staple articles of commerce suitable for substantial noninfringing uses. Thus, Oracle's motion for summary judgment of no contributory infringement should be denied.

### (4)    Any Alleged Substantial Noninfringing Use Must Be Of An Accused Product In The Infringing Configuration.

Oracle erroneously relies on supposed noninfringing uses for the Accused Oracle Database "without RAC." (D.I. 217 at ¶ 172.) Oracle's argument misses the mark. EpicRealm

has not accused the Oracle Database without RAC. The substantial noninfringing use inquiry under Section 271(c) focuses on the *accused* products only. *Ricoh*, 2007 WL 4203422, at *32. Oracle's attempt to sweep into the inquiry products that are not accused is no different than saying that that the entire Oracle product line has some noninfringing uses—*e.g.*, Oracle t-shirts can be worn without infringing the patents in suit. Thus, Oracle's argument that "Oracle Database can be used without RAC" is wholly insufficient to escape liability for contributory infringement of the *Accused* Oracle Products.

### 3. Oracle Had Notice Of The Patents In 2000.

Oracle argues that it did not have notice of the patents in suit prior to 2006. (Oracle Br. 37.) This is not true. Oracle had notice of epicRealm's '554 Patent since at least 2000. For example, on August 23, 2000, the '554 Patent was cited during the prosecution of what became Oracle's U.S. Patent No. 6,845,505. (Ex. 27, ORCL01623276.) In fact, the PTO cited the '554 Patent to Oracle during prosecution of Oracle patents at least twice before 2006. Three months after the '554 Patent was first cited to Oracle, Oracle introduced metric-based load balancing in the Accused Oracle Products for the first time. (Ex. 29, ORCL00107987.) On November 24, 2000, Oracle cited the '554 Patent during prosecution of what became Oracle's U.S. Patent No. 6,334,114. (Ex. 30, ORCL01622919.) In fact, Oracle cited the '554 Patent in an Information Disclosure Statement to the Patent Office at least four times before 2006. (*Id.*; Ex. 27, ORCL0163276; Ex. 28, Inform. Disc. Statement App. No. 09/615,383, Dec. 12, 2005.)

### D. Oracle Also Infringes Under The Doctrine Of Equivalents.

Oracle makes a conclusory argument that it is entitled to summary judgment that it does not infringe under the doctrine of equivalents because epicRealm "waived" its right to raise the argument and because epicRealm's proof is "conclusory." (Oracle Br. 37-38.) Oracle is wrong on both counts.

1.    **EpicRealm Is Not Precluded From Raising The Doctrine Of Equivalents.**

EpicRealm is not precluded from raising infringement under the doctrine of equivalents because it is entitled to respond to Oracle's ever-changing positions. *First*, epicRealm's expert, Dr. Finkel, was entitled to respond to Oracle's expert testimony in his Rebuttal Expert Report. (Ex. 12, Finkel Reb. Rpt. at ¶ 233.) This is the point of rebuttal reports. Dr. Finkel was entitled to advance an opinion using a doctrine of equivalents infringement analysis in his Rebuttal Expert Report because this theory arose from Dr. Shamos's analysis of the patents in suit. *Second*, Oracle has presented new positions regarding the patents in suit in its motion. Again, epicRealm is permitted to respond to these new positions. In this case, epicRealm responds to these new positions with evidence that the Accused Oracle Products also infringe the asserted claims under the doctrine of equivalents.

Moreover, even if epicRealm's doctrine of equivalents proof was not provoked by Oracle's new positions, Oracle's conclusory contention that it is "unduly prejudice[d]" is baseless. (Oracle Br. 38.) Oracle is entitled to file a reply brief by September 4, 2008. (D.I. 191.) In addition, nearly five months remain before trial begins on January 12, 2009. (D.I. 29.) This is hardly the case of a party proffering new evidence on the eve of trial.

2.    **EpicRealm's Proof Of Infringement Under The Doctrine Of Equivalents Overcomes Oracle's Motion.**

The Accused Oracle Products infringe the asserted claims under the doctrine of equivalents as explained by Dr. Finkel. (2d Finkel Decl. ¶ 36.) Dr. Finkel's opinions regarding the doctrine of equivalents are not conclusory, contrary to Oracle's argument. (Oracle Br. 38.) Dr. Finkel's evidence-filled opinions explain that the Accused Oracle Products infringe because the differences between the Accused Oracle Products and the asserted claims are insubstantial from the perspective of a person of ordinary skill in the art. (*Id.*) At a minimum, his opinions

show genuine issues of material fact regarding Oracle's infringement under the doctrine of

equivalents. *Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1336 (Fed. Cir. 2000)

(vacating summary judgment of noninfringement of claims under the doctrine of equivalents

because genuine issues of material fact existed as to whether claim limitations in plaintiff's

patent were met in defendant's system by an equivalent). Therefore, epicRealm's evidence of

infringement under the doctrine of equivalents at least creates a genuine issue of material fact

regarding infringement such that Oracle is not entitled to summary judgment.

###### E.    Oracle's Remaining Points Have No Merit.

Oracle tries to make an issue about the alleged fact that its expert, Dr. Clark, reviewed the

source code. Oracle's own expert, Dr. Shamos, indicated, however, that this is not necessary for

determining whether something meets the asserted claims. (Ex. 9, Shamos Dep. 277:16-279:21.)

Oracle also

purports not to understand how epicRealm can state that a part of the Accused Oracle Products

can be said to satisfy one limitation (*e.g.*, "Web server") in one infringement proof and a

different limitation (*e.g.*, "page server") in a second infringement proof. (Oracle Br. 1.) The

concept is actually quite simple. Imagine proving that a three-generation family meets a claim

requiring a "parent" and a "child."



The claim can be "infringed" two ways. In Infringement Proof 1, "Mother" meets the "parent" limitation and "Daughter" meets the "child" limitation. In Infringement Proof 2, "Grandfather" meets the "parent" limitation and "Mother" meets the "child" limitation. Thus, "Mother" can be considered both a "parent" and a "child" depending on which infringement proof is under consideration. The same is true for the parts of the Accused Oracle Products. Oracle's infringement is not somehow excused because Oracle infringes more than one way.

## CONCLUSION

For the foregoing reasons, the Court should deny Oracle's noninfringement summary judgment motion in its entirety.

OF COUNSEL:                                    POTTER ANDERSON & CORROON LLP
Harry J. Roper
George S. Bosy
Aaron A. Barlow                                By: /s/ David E. Moore
Patrick L. Patras                                   Richard L. Horwitz (#2246)
David R. Bennett                                    David E. Moore (#3983)
Paul D. Margolis                                    Hercules Plaza, 6th Floor
Benjamin J. Bradford                                1313 N. Market Street
Emily C. Johnson                                    Wilmington, DE  19899
JENNER & BLOCK                                      Tel:  (302) 984-6000
330 N. Wabash Avenue                                rhorwitz@potteranderson.com
Chicago, IL  60611-7603                             dmoore@potteranderson.com
Tel:  (312) 923-8305

                                               *Attorneys for Defendant/Counterclaim*
Dated:  August 21, 2008                        *Plaintiff epicRealm Licensing, LP*
Public Version Dated:  August 28, 2008
880361 / 31393 / Oracle

40

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 28, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on August 28, 2008, the attached document was Electronically Mailed to the following person(s):

Mary B. Graham
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
MGraham@MNAT.com

James G. Gilliland
Igor Shoiket
Townsend and Townsend and Crew LLP
Two Embarcadero Center
Eighth Floor
San Francisco, CA 94111-3834
OracleEpicrealm@townsend.com

Theodore T. Herhold
Robert J. Artuz
Eric M. Hutchins
Eric A. Mercer
Joseph A. Greco
Nitin Gupta
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA 94301
OracleEpicrealm@townsend.com

Chad E. King
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202
OracleEpicrealm@townsend.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

788480 / 31393 / Oracle