**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ORACLE CORPORATION and )
ORACLE U.S.A. INC., )
 )  C.A. No. 06-414-SLR
   Plaintiffs/Counterclaim Defendants, )
 )  **JURY TRIAL DEMANDED**
   v. )
 )  **PUBLIC VERSION**
EPICREALM LICENSING, LP, )
 )
   Defendant/Counterclaim Plaintiff. )


**EPICREALM'S MEMORANDUM IN OPPOSITION TO ORACLE'S MOTION
FOR SUMMARY JUDGMENT OF INVALIDITY**


OF COUNSEL:

Harry J. Roper
George S. Bosy
Aaron A. Barlow
Patrick L. Patras
David R. Bennett
Paul D. Margolis
Benjamin J. Bradford
Emily C. Johnson
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel: (312) 923-8305

Dated: August 21, 2008
Public Version Dated: August 28, 2008
879528 / 31393 / Oracle

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim
Plaintiff epicRealm Licensing, LP*

## TABLE OF CONTENTS

I.   NATURE AND STAGE OF THE PROCEEDINGS ................................................2

II.  SUMMARY OF ARGUMENT ...........................................................................2

III. CONCISE STATEMENT OF FACTS ...................................................................4

IV. ARGUMENT ....................................................................................................9

    A. Oracle Cannot As A Matter of Law Assert Invalidity in This Action .................9

    B. Legal Principles Of Anticipation ...................................................................13

    C. Oracle 1.0 Does Not Anticipate Any Of The Asserted Claims. .........................14

        1.  Oracle 1.0 Does Not Disclose The "Dispatching" Limitation. .....................15

            a.  Oracle 1.0 Does Not Disclose "Dispatching" Under EpicRealm's
               Construction. ................................................................................15

            b.  Oracle 1.0 Does Not Disclose "Dispatching" Under Oracle's Proposed
               Construction. ................................................................................17

        2.  SQL*NET Does Not Disclose The "Dispatching" Limitation. .....................18

        3.  Oracle 1.0 Does Not Anticipate Claims 4 And 5 Of The '554 Patent. .........21

        4.  Oracle Failed To Prove That A Combination Using Oracle 1.0 Is Prior Art. ..............22

        5.  Oracle 1.0 Is Not Prior Art. ..................................................................23

        6.  Oracle's Anticipation Arguments For Oracle 1.0 Are Inconsistent With Its
           Noninfringement Positions. ...................................................................25

    D. Oracle 2.0 Does Not Anticipate The Asserted Claims. ...................................25

        1.  Oracle 2.0 Does Not Disclose the "Dispatching" Limitation. .....................25

            a.  Oracle 2.0 Does Not Perform "Dispatching" Under EpicRealm's
               Construction. ................................................................................26

            b.  Oracle 2.0 Does Not Perform "Dispatching" Under Oracle's Construction. ........27

        2.  Oracle 2.0 Does Not Disclose The "Intercepting" Limitation. .....................28

        3.  Oracle 2.0 Does Not Meet Oracle's Construction Of A "Page Server." .....................29

        4.  Oracle 2.0 Does Not Anticipate Claim 4 Of The '554 Patent. .....................30

5.  Oracle 2.0 Is Not Prior Art...................................................................30

E.  Popp Does Not Anticipate The Asserted Claims................................................31

1.  Popp Does Not Disclose The "Dispatching" Limitation. .............................31

a.  Popp Does Not Disclose "Dispatching" Under EpicRealm's Construction. .........31

b.  Popp Does Not Disclose "Dispatching" Under Oracle's Construction. ...............33

2.  Popp Is Not Prior Art. ......................................................................33

F.  Dienst Does Not Anticipate The Asserted Claims.............................................33

1.  Dienst Does Not Disclose The "Dispatching" Limitation. ...........................34

a.  Dienst Does Not Disclose "Dispatching" Under EpicRealm's Construction......................................................................34

b.  Dienst Does Not Disclose "Dispatching" Under Oracle's Construction. .............35

G.  Obviousness .....................................................................................36

1.  Garland Does Not Disclose "Dispatching" Under Either Party's Construction. .........37

2.  Oracle's Argument That Dienst In Combination With Oracle 1.0 Or Oracle 2.0 Renders Obvious Claims 4, 5, 7 And 8 Should Be Rejected. ...............................37

3.  Oracle Failed To Consider The Overwhelming Evidence Of Secondary Considerations Of Nonobviousness. ...........................................................37

CONCLUSION............................................................................................40

# TABLE OF AUTHORITIES

**Cases**

*Advanced Display Sys. Inc. v. Kent State Univ.*,
  212 F.3d 1272 (Fed. Cir. 2000) ........................................................................... 13, 22

*Am. Hoist & Derrick Co. v. Sowa & Sons*,
  725 F.2d 1350 (Fed. Cir. 1984) ........................................................................... 15

*Apotex USA, Inc. v. Merck & Co.*,
  254 F.3d 1031 (Fed. Cir. 2001) ........................................................................... 14

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
  2003 WL 1856436 (D. Del. April 9, 2003) .......................................................... 40

*Board of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*,
  983 F.2d 495 (3d Cir. 1992) ................................................................................ 10

*Boston Scientific Corp. v. Cordis Corp.*,
  2008 WL 171049 (N.D. Cal. Jan. 18, 2008) ......................................................... 24

*Brown v. Barbacid*,
  436 F.3d 1376 (Fed. Cir. 2006) ........................................................................... 14

*Connell v. Sears, Roebuck & Co.*,
  722 F.2d 1542 (Fed. Cir. 1983) ........................................................................... 13

*Cont'l Can Co. USA v. Monsanto Co.*,
  948 F.2d 1264 (Fed. Cir. 1991) ........................................................................... 27

*E.I. DuPont de Nemours & Co. v. Berkley & Co.*,
  620 F.2d 1247 (8th Cir. 1980) ............................................................................. 24

*Frandsen v. Westinghouse Corp.*,
  46 F.3d 975 (10th Cir. 1995) ............................................................................... 9

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966) ................................................................................................ 38

*Hallco Mfg. Co. v. Foster*,
  256 F.3d 1290 (Fed. Cir. 2001) ........................................................................... 11

*Hybritech, Inc. v. Monoclonal Antibodies*,
  802 F.2d 1367 (Fed. Cir. 1986) ........................................................................... 13

*Johnson & Johnson v. Coopervision, Inc.,*
  720 F. Supp. 1116 (D. Del. 1989)...................................................................................... 10

*Klingman v. Levinson,*
  831 F.2d 1292 (7th Cir. 1987) .......................................................................................... 11

*Lintz v. Credit Adjustments, Inc.,*
  2008 WL 880516 (E.D. Mich. March 31, 2008) ....................................................... 12

*Mahurkar v. C.R. Bard, Inc.,*
  79 F.3d 1572 (Fed. Cir. 1996) ......................................................................................... 14

*Matsushita Elec. Indus. Co. v. Cinram Int'l, Inc.,*
  299 F. Supp. 2d 348 (D. Del. 2004)............................................................................... 40

*Matsushita Elec. Indus. Co., Ltd. v. Samsung Elecs. Co.,*
  2006 WL 2096373 (D.N.J. July 27, 2006)..................................................................... 24

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.,*
  303 F.3d 1294 (Fed. Cir. 2002) ...................................................................................... 22

*Pfaff v. Wells Elecs., Inc.,*
  525 U.S. 55 (1998)............................................................................................................ 22

*Philips Elecs. N. Am. Corp. v. Contec Corp.,*
  312 F. Supp. 2d 632 (D. Del. 2004)............................................................................... 17

*Price v. Symsek,*
  988 F.2d 1187 (Fed. Cir. 1993) ................................................................................ 24, 30

*Reuter, In re,*
  670 F.2d 1015 (C.C.P.A. 1981) ...................................................................................... 24

*Rockwell Int'l Corp. v. U.S.,*
  147 F.3d 1358 (Fed. Cir. 1998) ...................................................................................... 38

*Ruiz v. A.B. Chance Co.,*
  234 F.3d 654 (Fed. Cir. 2000) ........................................................................................ 39

*Sightsound.com, Inc. v. N2K, Inc.,*
  391 F. Supp. 2d 312 (W.D. Pa. 2003)............................................................................ 40

*Simmons Fastener Corp. v. Ill. Tool Works, Inc.,*
  739 F.2d 1573 (Fed. Cir. 1984) ................................................................................ 38, 39

*Studiengesellschaft Kohle, m.b.H v. Dart Indus., Inc.,*
  726 F.2d 724 (Fed. Cir. 1984) ........................................................................................ 22

*Telcordia Techs. v. Lucent Techs.*,
    514 F. Supp. 2d 598 (D. Del. 2007).......................................................................... 17

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ............................................................................... 22

*Vulcan, Inc. v. Fordees Corp.*,
    658 F.2d 1106 (6th Cir. 1981) ................................................................................ 12

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
    721 F.2d 1540 (Fed. Cir. 1983) ............................................................................... 13

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986) ................................................................................. 38

*WMS Gaming, Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999) ............................................................................... 38

*Woodland Trust v. Flowertree Nursery, Inc.*,
    148 F.3d 1368 (Fed. Cir. 1998) .......................................................................... 13, 14

*Yachts America, Inc. v. U.S.*,
    673 F.2d 356 (Ct. Cl. 1982).................................................................................... 11

*Zenith Elecs., Inc. v. PDI Commc'n Sys., Inc.*,
    522 F.3d 1348 (Fed. Cir. 2008) ............................................................................... 22

*Zoll v. Ruder Finn, Inc.*,
    2003 WL 22283830 (S.D.N.Y. Oct. 2, 2003)........................................................ 12

**Statutes**

35 U.S.C. § 102......................................................................................................... 13, 14

**Other Authorities**

8 MOORE'S FEDERAL PRACTICE §132 ............................................................................ 11

8 MOORE'S FEDERAL PRACTICE §41 .............................................................................. 11

Restatement 2d of Judgments (2008).............................................................................. 12

Restatement 2d of Judgments (March 2008) ................................................................... 12

# **EXHIBITS**

Exhibits cited herein refer to the Appendix filed contemporaneously herewith.

Oracle's motion for summary judgment of invalidity should be denied in the first instance because Oracle is collaterally estopped from raising invalidity as a defense in this action. There is no dispute of the facts on the issue of collateral estoppel. Those facts prove that Oracle previously—as a privy to its customer Safelite—disputed the validity of the patents in suit and agreed to a stipulated dismissal with prejudice that includes all contentions that the patents in suit are invalid. EpicRealm's showing on the issue of collateral estoppel is a complete defense to Oracle's motion, and to all contentions by Oracle in this action that the patents in suit are invalid. Oracle has already had one bite at the apple, and it is entitled to no more. Even if this Court denies epicRealm's showing that Oracle is barred under the doctrine of collateral estoppel from asserting invalidity, Oracle's summary judgment motion of invalidity has no merit and should be denied. Oracle's motion does nothing more than present its erroneous gloss on the facts, an approach that is entirely baseless on a motion for summary judgment.

Oracle's motion here is grounded primarily in its assertion that the patents in suit are anticipated by four references. In order to prove anticipation, Oracle must show by clear and convincing evidence that each and every element of each asserted claim is identically disclosed in each individual prior art reference. Oracle's anticipation argument—and its halfhearted obviousness argument—are contradicted by Oracle's own admissions, by the admissions of its own experts and by the expert testimony adduced by epicRealm. Plainly, Oracle's motion for summary judgment should never have been brought: there are genuine issues of material fact and given that all inferences must be construed in epicRealm's favor, a reasonable jury could conclude that Oracle has not met its burden of proof by clear and convincing evidence that the patents in suit are invalid. For these reasons, Oracle's motion must be denied in its entirety.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This patent action was filed in 2006 and is now scheduled for a two-week jury trial commencing January 12, 2009. Pursuant to the Stipulated Amendment to Joint Discovery Plan and Scheduling Order (D.I. 191) entered by the Court on July 18, 2008, the deadline for filing oppositions to summary judgment motions is August 21, 2008.

## II.    SUMMARY OF ARGUMENT

Oracle's summary judgment motion should be denied for the following reasons:

1.    Oracle's summary judgment motion asking for a finding that the asserted claims of the patents in suit are invalid should be denied in the first instance on the ground of collateral estoppel. The reason for this is straightforward and undisputed: Oracle cannot relitigate the issue of the validity of the patents in suit, an issue that was the subject of litigation in the Texas District Court. (Case No. 2:05-CV-356.) The facts here are undisputed and for the most part are admitted in Oracle's declaratory judgment complaint. (D.I. 1, ¶¶15 *et seq.*) The Safelite products at issue in the Texas litigation were supplied by Oracle. Accordingly, Safelite sought indemnification from Oracle pursuant to an indemnification agreement between Safelite and Oracle. (*Id.* at ¶¶16, 21.) Oracle agreed to pay Safelite under the indemnification agreement, Safelite in turn settled the action with epicRealm, and the action was dismissed with prejudice. The settlement documents manifest a clear intent on the part of Safelite and epicRealm that Safelite would never again challenge the validity of the epicRealm patents in suit. Safelite is thus bound under well settled principles of collateral estoppel. Oracle is similarly bound given the undisputed fact that Oracle acted as Safelite's privy by giving it a patent infringement indemnity.

2.    On the merits of Oracle's "anticipation" defense, Oracle fails to show by clear and convincing evidence that it is entitled to summary judgment that any of the four "prior art"

2

references that it relies on anticipate each and every claim and each and every claim element at issue here. *First*, Oracle fails to establish that the purported references that it relies on meet the legal requirement that an anticipatory reference disclose each and every element of the claimed invention. That flaw defeats Oracle's summary judgment motion. As but one example, there is no genuine dispute that every reference relied on by Oracle fails to disclose the "dispatching" limitation recited in all of the asserted claims. *Secondly*, with respect to the Oracle "prior art" references relied on by Oracle (Oracle 1.0 and 2.0), Oracle does not even identify a document or product that purportedly anticipates, in direct contravention of the rule that proof of anticipation must be made by clear and convincing evidence. In an attempt to shore up its baseless anticipation defense, Oracle resorts to reliance on some undefined combination of products and publications that purportedly anticipates, but that argument is directly contrary to the law that requires that all claim elements be identically disclosed in one single prior art reference. Finally, Oracle fails to establish that most of its alleged "prior art" references are even prior art at all— indeed they are not prior art. For all of these reasons, Oracle's motion on the issue of anticipation should be denied.

3.    Oracle's halfhearted contention that the asserted claims are invalid as obvious is so entirely devoid of merit as to deserve no attention of this Court. It is Oracle's burden to prove here that given all reasonable inferences in favor of epicRealm that the invention of the patents in suit would have been obvious and therefore invalid. The first flaw is that Oracle attempts to establish obviousness through an entirely improper combination of references. The second flaw is that as is the case with Oracle's anticipation argument, Oracle's combination does not disclose each and every element of the claimed invention. Finally, Oracle's giving lip service to the compelling secondary considerations of non-obviousness further dooms its motion. The

unrebutted evidence establishes that in 1996, IBM used its vast resources to attempt to solve the problems addressed by the invention of the patents in suit by creating a Web site, and that in the absence of the patented invention, IBM's attempt was an utter failure. Given no other option, IBM licensed the patented technology from epicRealm. Oracle itself floundered in its attempt to solve the problems addressed by the patents in suit until it learned of epicRealm's patents and promptly adopted the patented technology. In addition to the evidence of IBM's failure and Oracle's copying, there is irrefutable evidence of a long felt need for the patented invention and that the patented invention has been an overwhelming commercial success. For all of these reasons, Oracle's summary judgment motion on the obviousness issue should be denied.

## III.    CONCISE STATEMENT OF FACTS

The primary focus of Oracle's invalidity argument is two aborted Oracle products: Oracle 1.0 and Oracle 2.0.[1] Those products represent old technology, since abandoned by Oracle in favor of newer technology adopted by Oracle after epicRealm's '554 Patent issued in 1999. Shortly after the '554 Patent issued, Oracle began introducing metric-based load balancing into the Accused Oracle Products. This metric-based load balancing was used to manage dynamic Web page generation requests. This technology was new for Oracle and unlike anything Oracle had included in its earlier, aborted Oracle 1.0 and Oracle 2.0 products. It is undisputed that the Accused Oracle Products work differently than Oracle 1.0 and Oracle 2.0. Even though Oracle has touted the advantages of metric-based load balancing to its customers for years, it now tells this Court that this technology in the Accused Oracle Products is really nothing new and that Oracle and others were doing the same thing in the mid-1990s. This is not true.

---

[1] Descriptions of Oracle 1.0 and Oracle 2.0 were provided in EpicRealm's Memorandum in Support of its Motion for Partial Summary Judgment That the Oracle References Do Not Anticipate. (D.I. 218.)

4

**Redacted**

Oracle itself struggled with this technology as well. Oracle made two aborted attempts at systems for managing dynamic Web page generation requests: Oracle 1.0 and Oracle 2.0. These were each abandoned. At the time that epicRealm's '554 Patent issued on April 13, 1999, Oracle did not use metric-based load balancing in the Accused Oracle Products. In August 2000, the PTO cited the '554 Patent to Oracle during prosecution of an Oracle patent application. (Ex. 15, ORCL01623276.) Three months later, in November 2000, Oracle had metric-based load balancing in the Accused Oracle Web Cache Products.

**Redacted**

**Redacted**

In 2005, Oracle began adding metric-based load balancing to the Accused Oracle Database products as well. Oracle even sought patent protection for its addition of metric-based load balancing to the Accused Oracle Database Products.

**Redacted**

# Redacted

# Redacted

# Redacted

Notwithstanding the foregoing, apparently believing that the best defense is a good offense, Oracle moves for summary judgment of invalidity arguing that the patented technology was well known since the mid-1990s. Oracle bases its invalidity motion primarily on its own aborted Oracle 1.0 and Oracle 2.0 products. Oracle's motion contradicts its own witnesses' testimony, its own experts' testimony and its own contemporaneous motion for summary judgment of noninfringement. Oracle cannot even tell its own story without material fact issues, even before epicRealm's side is heard. Oracle's motion should be denied.

## IV.    ARGUMENT

Oracle's motion for summary judgment of invalidity should be denied in its entirety.

### A.    Oracle Cannot As A Matter of Law
### Assert Invalidity in This Action

Oracle's summary judgment motion asking for a finding that the asserted claims of the patents in suit are invalid should be denied in the first instance on the ground of collateral estoppel. The pertinent law on collateral estoppel is straightforward. Collateral estoppel forecloses relitigation of an issue that has been once litigated and decided. Collateral estoppel may be invoked when (i) the identical issue was decided in a prior adjudication; (ii) there was a final judgment on the merits; (iii) the party against whom the bar is asserted was a party or his privy to the prior litigation; and (iv) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question. *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 979 (10th Cir. 1995); *Board of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*,

# Redacted

9

983 F.2d 495, 505 (3d Cir. 1992); *Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116,

1122 n.10 (D. Del. 1989).

Here, the pertinent facts are not in dispute and are as follows. In 2005, epicRealm filed a

patent infringement action in the Texas District Court accusing Safelite of infringement of the

patents in suit. (Case No. 2:05-CV-356.) Safelite is a customer of Oracle. (D.I. 1 ¶17.) Safelite

answered and counterclaimed, and after several amended complaints and answers, asserted that

the epicRealm patents are invalid. (Exs. 20-21, Case No. 2:05-CV-356, D.I. 111 and D.I. 119.)

Pursuant to an indemnification agreement between Safelite and Oracle, Safelite filed a third party

complaint against Oracle, demanding that Oracle defend and indemnify it from "any and all

epicRealm claims that any Oracle product infringes the epicRealm patents." (D.I. 1 ¶21.)

Safelite dismissed with prejudice its third party complaint against Oracle (after Oracle agreed to

reimburse Safelite for Safelite's settlement with epicRealm). (*Id.* ¶27.) In June 2006, epicRealm

settled its claim with Safelite, and pursuant to that settlement, Safelite stipulated to a dismissal

with prejudice:

> Plaintiff epicRealm Licensing, LP ("epicRealm") and defendant
> Safelite Group, Inc. ("Safelite") have agreed to a settlement of all
> claims asserted between them in this case, and, pursuant to that
> agreement, have agreed to dismiss all such claims with prejudice.
> Accordingly, pursuant to Federal Rule of Civil Procedure 41(a)(1),
> epicRealm stipulates to the dismissal with prejudice of all its
> claims asserted in this case against Safelite, and Safelite stipulates
> to the dismissal with prejudice of all its claims asserted in this case
> against epicRealm.

(Ex. 22, Case No. 2:05-CV-356, D.I. 197.) The Texas Court judge approved of the stipulated

dismissal with prejudice of Safelite's invalidity counterclaim:

> ORDERED that the claims asserted herein by counter-plaintiff
> Safelite Group, Inc. against counter-defendant epicRealm
> Licensing, LP be, and hereby are, dismissed with prejudice

10

(Ex. 23, *id.* at D.I. 200.)

# Redacted

All of the elements of collateral estoppel on the issue of validity are met here. *First*, the issue here is identical to the issue in *Safelite*, namely, whether the patents in suit are invalid. There can be no dispute that the epicRealm patents in the *Safelite* litigation are the same patents that are at issue here. *Second*, the *Safelite* case was disposed of as a final judgment on the merits: Safelite's counterclaim asserting invalidity was dismissed with prejudice. It is well settled that a dismissal with prejudice operates as an adjudication on the merits. *See, e.g., Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1297 (Fed. Cir. 2001) (A "dismissal with prejudice ... is a judgment on the merits."); 8 MOORE'S FEDERAL PRACTICE §41.33[6][b], at 41-84. Many authorities hold where the parties intended to preclude relitigation of an issue they are forever bound to that agreement. *See, e.g., Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987) (stipulation held to be binding for purposes of collateral estoppel); *Yachts Am., Inc. v. U.S.*, 673 F.2d 356, 361-62 (Ct. Cl. 1982) (same); 8 MOORE'S FEDERAL PRACTICE §132.03[2][i], at 132-87. There is no doubt here that epicRealm and Safelite intended for Safelite to be foreclosed from

11

relitigating the issue of the validity of the patents in suit, as shown by Safelite's entry into the

stipulated dismissal that extinguished its counterclaims, counterclaims that asserted the invalidity

of the epicRealm patents.

# Redacted

The third collateral estoppel requirement is also satisfied here. That is so because a party

not named in an action that indemnifies a party named in the action is a privy to the named party

for the purposes of the application of collateral estoppel. *Restatement 2d of Judgments* § 40

(2008). The Restatement illustrates the general rule:

> A brings an action against B. B, by separate action or by
> impleader, asserts a claim against C for indemnity for any liability
> B may incur to A.

*Id.* As the Restatement goes on to state, under well settled principles of collateral estoppel, C by

virtue of the indemnity that it gave B is in privity with B for purposes of the application of

collateral estoppel. The general rule that an indemnitor is in privity with the party receiving the

indemnity is well settled. *Lintz v. Credit Adjustments, Inc.*, 2008 WL 880516, at *1 (E.D. Mich.

March 31, 2008) (a party is in privity with another where that party has indemnified a named

party in the litigation); *Zoll v. Ruder Finn, Inc.*, 2003 WL 22283830, at *8-9 (S.D.N.Y. Oct. 2,

2003); *see Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109-11 (6th Cir. 1981) (parties to an

indemnification agreement were held to be in privity; a consent decree entered into by the parties that stated that the patent in issue was valid barred the other party from challenging that patent's validity). Plainly, the third element of collateral estoppel here is met. Finally, Oracle had more than ample opportunity to step forward and litigate the validity issues in the Texas action. For all of these reasons, Oracle is precluded from relitigating the validity issues that it raises herein this litigation.

**B.     Legal Principles Of Anticipation**

Anticipation under 35 U.S.C. § 102 requires that each and every element of the claimed invention be identically disclosed in a single prior art reference. *Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (anticipation can only be found where "the four corners of a single, prior art document describe every element of the claimed invention."); *Hybritech Inc. v. Monoclonal Antibodies*, 802 F.2d 1367, 1379 (Fed. Cir. 1986); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1554 (Fed. Cir. 1983); Anticipation also requires that the elements in the prior art reference be arranged in the same manner as in the claim. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983).

Under Section 102(a), a person is entitled to a patent unless "the invention was known or used by others in this country … before the invention thereof by the applicant for patent."[4] Although the case law has not assigned a precise meaning to "known or used by others," it is

---

[4] Oracle never defines what it alleges is the Section 102(a) prior art for Oracle 1.0 and Oracle 2.0. Because Oracle references multiple documents for each anticipation argument, Oracle cannot be relying on the "printed publication" provision in Section 102(a). Presumably, Oracle intended to rely on the "known or used by others in this country" provision in Section 102(a). In order to prove the invention was anticipated because it was known or used by others, Oracle must prove by clear and convincing evidence that the *complete* invention was publicly used before epicRealm's date of invention. *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998).

clear that the knowledge or use must be "available to the public" and proven by clear and convincing evidence. *Woodland*, 148 F.3d at 1370.

To prevail on a Section 102(g) defense, Oracle must prove by clear and convincing evidence that another conceived of the invention in this country before the invention by epicRealm and diligently reduced it to practice. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996); *see Brown v. Barbacid*, 436 F.3d 1376, 1379 (Fed. Cir. 2006). Oracle must also prove by clear and convincing evidence that the alleged prior invention was not abandoned, suppressed or concealed. *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1036 (Fed. Cir. 2001). The party asserting anticipation must prove it by clear and convincing evidence, and every reasonable doubt should be resolved against him. *Woodland*, 148 F.3d at 1371. Oral testimony is generally not sufficient to establish anticipation by clear and convincing evidence—it should be accompanied by corroborating evidence. *Id.*

### C.    Oracle 1.0 Does Not Anticipate Any Of The Asserted Claims.

Oracle's argument that Oracle 1.0 anticipates the asserted claims should be rejected. Recognizing that there is not a single reference on Oracle 1.0 that discloses every element of the asserted claims, Oracle attempts to cobble together an anticipation argument based on a combination of up to three different products. Oracle apparently argues that Oracle 1.0 combined with Oracle7 Server anticipates the asserted claims. Oracle also seems to argue that Oracle 1.0, Oracle7 Server, and SQL*Net, when combined, anticipate the asserted claims. Nevertheless, these combinations do not anticipate any of the asserted claims.

In fact, the United States Patent and Trademark Office ("PTO") granted the patents in suit over U.S. Patent No. 5,761,673 (the "Oracle Bookman Patent"), which disclosed the same features relied on by Oracle for its anticipation argument for Oracle 1.0. Although the Oracle Bookman Patent does not disclose using SQL*Net, it discloses every feature that Oracle relies

14

upon for anticipation without SQL*Net. Because Oracle 1.0 is merely cumulative of the Oracle

Bookman Patent considered by the PTO, Oracle has the added burden to demonstrate that the

PTO was wrong in its decision to grant the asserted claims over the Oracle Bookman Patent.

*Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1360 (Fed. Cir. 1984). In addition, in

the reexamination of the patents in suit, the examiner considered Oracle 1.0 (Ex. 26, List of Refs.

cited to Applicant and considered by examiner, p. 1 June 30, 2008, Information Disc. Citation p.

1, ref. u; Ex. 27, Reexam of '554 patent, office action 90/008,342 pp. 12-16), but did not reject

any of the claims over Oracle 1.0. (Ex. 27 at 30-73.) This makes Oracle's argument even more

tenuous. The Court should reject Oracle's anticipation argument based on Oracle 1.0.

### 1.    Oracle 1.0 Does Not Disclose The "Dispatching" Limitation.

Oracle contends that Oracle 1.0 discloses the "dispatching" limitation of the asserted

claims because the Oracle Web Agent uses information inside a request and information

maintained in a static configuration file to determine to which Oracle7 Server to connect.

(Oracle Br. 12.) Despite the fact that Oracle considered Oracle 1.0 to be state of the art, Oracle

concedes that Oracle 1.0 did not perform *any* type of load balancing of dynamic Web page

requests, much less the "dispatching" of the asserted claims. (Ex. 28, Shamos Rpt. ¶221; Ex. 9,

Montinola Dep. 221:7-14, 250:1-10.) The Oracle Web Agent did not perform "dispatching"

under either party's construction.

### a.    Oracle 1.0 Does Not Disclose "Dispatching" Under EpicRealm's Construction.

EpicRealm's construction for "dispatching" is "examining a request to make an informed

selection of which page server should process the request based on dynamic information

maintained about page servers, the dynamic information indicating which page server can more

efficiently process the request, and sending the request to the selected page server." Oracle's

15

argument that the Oracle Web Agent "dispatches" a request under epicRealm's construction fails for at least three reasons.

*First*, the Oracle Web Agent does not make an informed selection of which page server should process the request. When the Oracle Web Agent determines which "page server" (Oracle7 Server) should process a request, it does not make a selection between Oracle7 Servers that are capable of processing the request. Rather, only one Oracle7 server could process the request. (Ex. 29, ORCL00941822; 2d Finkel Decl. ¶41.) Oracle concedes that making an "informed *selection*" requires, at least, choosing from more than one page server that is capable of processing the request. (Ex. 12, Shamos Dep. 122:18-128:3.)

*Second*, the Oracle Web Agent also does not make a selection based on information indicating which page server can more efficiently process a request. Because only one Oracle7 server can process a given request, the information used by the Oracle Web Agent does not indicate the relative efficiencies of the Oracle7 servers. Instead, the information only indicates which Oracle7 server to connect to and how to connect to that server. (Ex. 28, Shamos Rpt. ¶ 548; 2d Finkel Decl. ¶42; Ex. 29, ORCL00941822-26.) Thus, the Oracle Web Agent does not use information indicating which page server can more efficiently process a request in deciding which page sever should process a request.

*Third*, the information used by the Oracle Web Agent is not "dynamic" information. Dynamic information is information that can only be determined during the execution of a program. (2d Finkel Decl. ¶43.)

# Redacted

16

# Redacted

At a minimum, these three arguments each create a genuine issue of material fact as to what Oracle 1.0 discloses. Thus, Oracle's motion must be denied. *Telcordia Techs. v. Lucent Techs.*, 514 F. Supp. 2d 598, 616 (D. Del. 2007) (summary judgment of anticipation denied because the experts disagreed over disclosures in the prior art references); *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 632, 636 (D. Del. 2004) (same).

        b.      **Oracle 1.0 Does Not Disclose "Dispatching" Under Oracle's Proposed Construction.**

Oracle's construction for "dispatching" is "analyzing a request to make an informed selection of which page server should process the request, and sending the request to that page server." Oracle 1.0 does not disclose "dispatching" under Oracle's construction for three reasons. *First*, as discussed above, the Oracle Web Agent does not make an *"informed selection"* as required by Oracle's construction because there is only one Oracle7 Server that can process a given request and Oracle conceded that making an *"informed selection"* requires, at least, choosing from more than one page server. (Ex. 12, Shamos Dep. 122:18-128:3.)

# Redacted

Thus, the Oracle Web Agent did not make an "informed selection," because, it did not use "dynamic information about the page servers." *Third*, the Oracle Web Agent also does not make an "informed selection" because it does not use any information "to make a reasonable or accurate determination as to which [page server] could more efficiently process the request." *Id.*

For these reasons, Oracle 1.0 cannot anticipate any of the asserted claims because, at a minimum, it fails to disclose the "dispatching" limitation recited in all of the asserted claims under either party's construction.

## 2.    SQL*NET Does Not Disclose The "Dispatching" Limitation.

Given the problems described above, Oracle also argues that the combination of Oracle 1.0, Oracle7 Server and SQL*Net[5] anticipates the asserted claims. Nevertheless, even with the addition of SQL*Net, the combination does not disclose "dispatching." SQL*Net is remote data access software. (Ex. 30, ORCL01806638.) Its purpose is to allow clients and servers to access Oracle databases from remote locations. (*Id.*) SQL*Net is not concerned with the management of dynamic Web page requests. (2d Finkel Decl. ¶44.) The term "Web page" is never used in the "Understanding SQL*Net 2.2" reference. Thus, Oracle's reliance on SQL*Net for anticipation is baseless. Indeed, Oracle relies on SQL*Net's routing of "Multi-Threaded Server" *Connection* Requests as its basis for "dispatching." Load balancing of connection requests has little to do with metric-based load balancing of dynamic Web page requests. (*Id.*)

# Redacted

---

[5] Oracle claims that "SQL*Net v. 2.2 is also prior art to the patents-in-suit under 35 U.S.C. § 102(a) because it was on sale to the public no later than early August 1995." (Oracle Br. 13, n.11.) This is legally insufficient. Section 102(a) does not include an "on sale" provision. Although Section 102(b) does include an "on sale" provision, the activity must have occurred more than one year prior to the filing date of the patent (here, April 23, 1996) to qualify as prior art. Therefore, SQL*Net is not prior art.

# Redacted

Now, in litigation, however, Oracle claims that load balancing of connection requests is exactly the same thing as metric-based load balancing of dynamic Web page requests. It plainly is not, as Oracle's own document shows. In any event, establishing a connection to a multi-threaded server in SQL*Net does not meet the "dispatching" limitation of any of the asserted claims for at least four reasons.

*First*, SQL*Net routes requests for database connections which are not the same as dynamic Web page requests as recited in all of the asserted claims, which are a type of "work requests." A request for a database connection attempts to establish a connection between a client and a server; under no circumstances is the response to a request for a database connection going to be a dynamic Web page. (2d Finkel Decl. ¶45.) By comparison, a dynamic Web page request typically results in a dynamic Web page in response and cannot establish a connection between a client and a database. (*Id.*)

*Second*, SQL*Net does not perform "dispatching" because SQL*Net uses a "redirect message" and, thus, does not dispatch a request. Both parties' constructions for "dispatching"

19

require sending the request to the selected page server.[6] Thus, even assuming that: (1) a request for a database connection is the same as a dynamic Web page request (it is not); and (2) SQL*Net makes an informed selection of a database (it does not), SQL*Net still does not perform "dispatching." SQL*Net does not send the request to the database, instead it sends a redirect message back to the client which then, in turn, sends a request for a connection to the database to establish a connection. (Ex. 30, ORCL01806668-69.) Hence, SQL*Net is not performing "dispatching" because the client, not SQL*Net, sends the request for a connection to the database. In addition, the request for a connection sent from the client to the database is a wholly different request for a connection than the request originally received by SQL*Net. (2d Finkel Decl. ¶46.) After the client receives the redirect message, it closes the connection with the "listener" and issues a new request over the Web to establish a connection with the database. (Ex. 30, ORCL01806668.) Because the request sent from the client to the database is completely different than the request received by SQL*Net, the use of a "redirect message" by SQL*Net prevents it from "dispatching" under either party's construction.

*Third*, SQL*Net does not perform "dispatching" under either party's construction because it does not disclose making an "informed selection." SQL*Net only redirects a client to connect to the address of the "least-called" database. Oracle, in a conclusory fashion, without explanation, states that SQL*Net "selects the Dispatcher that can more efficiently process the request." (Oracle Br. 13.) Determining the "least called" database, however, can be accomplished, for example, via a round-robin algorithm (2d Finkel Decl. ¶40), which Oracle contends does not meet either party's construction of "dispatching." (Ex. 1, Clark Dep. 127:11-16.)

---

[6] EpicRealm's construction includes: "...and sending the request to the selected page server." Oracle's construction includes: "... and sending the request to that page server."

*Fourth*, information to determine the "least-called" database does not indicate which database can "more efficiently process a request." An open connection could be unused or could be used for a resource intensive operation.

# Redacted

Therefore, for all four reasons, the combination of SQL*Net with Oracle 1.0 does not disclose the "dispatching" limitation. [7]

### 3.  Oracle 1.0 Does Not Anticipate Claims 4 And 5 Of The '554 Patent.

Oracle 1.0 cannot anticipate Claim 4 for the additional reason that the "page server" does not even establish a connection, let alone maintain a connection cache. (2d Finkel Decl. ¶49.) Similarly, Oracle 1.0 cannot anticipate Claim 5 for the additional reason that the Oracle7 server is not required to log into the Oracle7 database in order to extract data. (*Id.*)

---

[7] Oracle argues that "epicRealm has admitted in discovery that a Listeners' [sic] routing of requests to a selected 'Dispatcher' is 'dispatching'" based on epicRealm's initial infringement contentions. EpicRealm made those infringement contentions at the beginning of discovery without full knowledge of the operation of Oracle's Database Products. After learning that a Listener routes database *connection* requests, not "dynamic Web page generation requests" as set forth in its initial infringement contention, as required by Federal Rule of Civil Procedure 26(e), epicRealm corrected this infringement allegation.

4.    **Oracle Failed To Prove That A Combination Using Oracle 1.0 Is Prior Art.**

In order to establish anticipation based on prior use, Oracle has the burden of proving by clear and convincing evidence that the products were publicly available, that they were combined and used together, and that their combination used the complete claimed invention. *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002); *see also Zenith Elecs., Inc. v. PDI Commc'ns Sys., Inc.*, 522 F.3d 1348, 1356-57 (Fed. Cir. 2008); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998). It is not sufficient to demonstrate that two products on the market *could* be combined. *Minnesota*, 303 F.3d at 1307 (rejecting 102(a) anticipation argument since the validity challenger "presented no evidence that any third party or the inventors ever mixed the two parts of Ricoseal or that the mixture was applied to a signal transmission device"). Oracle does not meet its burden of proof because it failed to demonstrate that anyone used either the combination of Oracle 1.0 and Oracle7 Server or the combination of Oracle 1.0, Oracle7 Server, and SQL*Net in an anticipatory manner at all, let alone before the invention of the patents in suit. It is not sufficient for Oracle to rely on its documents to argue the combination of Oracle 1.0, Oracle7 Server, and SQL*Net because anticipation by a printed publication must be demonstrated within the four corners of a single reference. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1335 (Fed. Cir. 2002); *Studiengesellschaft Kohle, m.b.H v. Dart Indus., Inc.*, 726 F.2d 724, 726-27 (Fed. Cir. 1984); *Advanced Display*, 212 F.3d at 1282. And, as set forth in EpicRealm's Memorandum In Support Of Its Motion for Partial Summary Judgment That The Oracle References Do Not Anticipate (D.I. 218), Oracle cannot show anticipation by a single reference. Thus, Oracle's motion for summary judgment on Oracle 1.0 should be denied for this reason as well.

### 5.    Oracle 1.0 Is Not Prior Art.

Oracle 1.0 is not prior art. Oracle claims that Oracle 1.0 was publicly accessible as of September 25, 1995. (Oracle Br. 9.) Oracle 1.0 and Oracle7 Server are separate products and both relied upon by Oracle as components to its anticipation argument. As set forth below, Oracle 1.0 including Oracle7 Server is not prior art.

# Redacted

# Redacted

The testimony of an alleged earlier inventor is insufficient to prove anticipation by clear and convincing evidence. *Price v. Symsek*, 988 F.2d 1187, 1193-94 (Fed. Cir. 1993) ("testimony by an alleged inventor asserting priority over a patentee's rights is regarded with skepticism...and as a result, such inventor testimony must be supported by some type of corroborating evidence"); *In re Reuter*, 670 F.2d 1015, 1021-22 (C.C.P.A. 1981). Here, Oracle relies on a declaration from an inventor of Oracle 1.0, Katrina Montinola, to argue that Oracle 1.0 is prior art. Ms. Montinola's declaration to establish prior inventorship is inherently untrustworthy in view of the eight factors enumerated in *E.I. DuPont de Nemours & Co. v. Berkley & Co.*, 620 F.2d 1247, 1261 n. 20 (8th Cir. 1980). Moreover, Ms. Montinola's declaration is additionally untrustworthy because it contradicts her previous sworn testimony. *Boston Scientific Corp. v. Cordis Corp.*, 2008 WL 171049, at *15 (N.D. Cal. Jan. 18, 2008) (contradictory declaration to previous testimony of a 30(b)(6) witness created an issue of fact making summary judgment inappropriate); *Matsushita Elec. Indus. Co., Ltd. v. Samsung Elecs. Co.*, 2006 WL 2096373, at *6 (D.N.J. July 27, 2006). For example, Ms. Montinola states in her current declaration that a

24

technical paper, titled "The Oracle WebServer: A Technical Discussion" was presented and
distributed at a conference on September 25, 1995.

# Redacted

Thus,

summary judgment should be denied because Oracle has not shown by clear and convincing
evidence that Oracle 1.0 is even prior art.

###    6.    Oracle's Anticipation Arguments For Oracle 1.0 Are Inconsistent
With Its Noninfringement Positions.

As explained in epicRealm's Memorandum in Opposition to Oracle's Motion for
Summary Judgment of Noninfringement filed contemporaneously herewith, Oracle has added
new requirements (not in its proposed constructions) to several claim limitations in order to
argue that the Accused Oracle Products do not infringe. In particular, Oracle adds new
requirements with respect to the "releasing said Web server to process other requests,"
"intercepting" and "dispatcher" limitations. Oracle ignores those new requirements in arguing
for invalidity, not only with respect to Oracle 1.0, but also with respect to all the allegedly
invalidating references.

### D.    Oracle 2.0 Does Not Anticipate The Asserted Claims.

Oracle also argues that Oracle 2.0 anticipates the asserted claims, but Oracle's argument
for Oracle 2.0 is even more problematic than for Oracle 1.0.

###    1.    Oracle 2.0 Does Not Disclose the "Dispatching" Limitation.

Oracle 2.0 does not disclose the "dispatching" limitation under either party's
construction. According to Oracle, the "dispatching" limitation is met in Oracle 2.0 when the
WRB Dispatcher determines which "page server" (WRBX) should process the request. (Oracle
Br. 22.) According to Oracle, the WRB Dispatcher uses information about which WRBX is

25

available to process a request and which one is configured to run the desired service. (*Id.*)
Oracle does not indicate how the WRB Dispatcher selects a WRBX when there is more than one
WRBX that is available to process a request and configured to run the desired service. As
explained below, the routing of requests by the WRB Dispatcher to a WRBX does not meet the
"dispatching" limitation under either party's construction.

a.    **Oracle 2.0 Does Not Perform "Dispatching" Under
EpicRealm's Construction.**

Oracle 2.0, like Oracle 1.0, was primarily concerned with finding a "page server" that
was capable of processing a request, *i.e.*, properly configured and not processing another request.
Oracle 2.0 did not even contemplate locating a "page server" that can *more efficiently* process a
request. Thus, Oracle 2.0 does not perform "dispatching" under epicRealm's construction for
two reasons.

*First*, Oracle 2.0 does not maintain dynamic information about page servers that indicates
which page server can more efficiently process the request. The WRB "Dispatcher" uses two
pieces of information to determine which WRBX will process a request: (1) information in the
configuration file (*i.e.*, which WRBX is configured to service a particular type of request) which
is not "dynamic" information as already explained with respect to Oracle 1.0;[8] and (2) whether
properly configured WRBXs are busy because they are already processing a single request or are
idle and therefore available to process a request. These two pieces of information do not indicate
which WRBX *can more efficiently process* a request. Instead, that information merely indicates
which WRBXs can process a request. Oracle provided no evidence that the WRB Dispatcher

_____

# Redacted

selects which WRBX should process the request based on dynamic information indicating which page server *can **more efficiently*** process the request. Oracle could not provide such evidence because Oracle 2.0 did not even maintain dynamic information that would make such a selection possible. Thus, Oracle 2.0 fails to perform "dispatching" under epicRealm's construction because it does not maintain dynamic information about page servers that indicates which page server can more efficiently process the request.

*Second*, Oracle 2.0 does not make an "informed selection" of which page server should process a request. The WRB Dispatcher narrows the universe of WRBXs capable of processing a request based upon: (1) the request; (2) a configuration file; and (3) whether a WRBX is already processing another request. Oracle failed to offer any proof as to how the WRB Dispatcher chooses between the WRBXs capable of processing the request and that are not already processing another request. Thus, Oracle 2.0 could choose which "page server" (WRBX) would process a request using, *e.g.*, a first available, round-robin, or random algorithm.

# Redacted

This means Oracle cannot argue that "dispatching" is inherently disclosed. Inherent anticipation cannot be shown by mere "probabilities or possibilities," nor is it sufficient that a certain thing "*may* result from a given set of circumstances." *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991) (emphasis in original). Thus, Oracle 2.0 does not perform "dispatching" under epicRealm's construction because it does not make an "informed selection" of a "page server."

### b.    Oracle 2.0 Does Not Perform "Dispatching" Under Oracle's Construction.

Oracle 2.0 also does not make an "informed selection" as required by Oracle's construction because Oracle failed to demonstrate how the WRB Dispatcher chooses between the

idle WRBXs capable of processing a request and Oracle concedes that, *e.g.*, a random selection would not be an "informed selection." (Ex. 27, Shamos Dep. 171:19-172:17.)

# Redacted

Therefore, under either party's construction, Oracle 2.0 does not perform "dispatching." Thus, Oracle 2.0 does not anticipate any of the asserted claims.

### 2.    Oracle 2.0 Does Not Disclose The "Intercepting" Limitation.

Oracle 2.0 also does not perform the "intercepting" limitation of the asserted claims under either party's construction because the "Web server" of Oracle 2.0 merely routed a request to a "page server" without examining it and without making a determination of whether the "Web server" or a "page server" should process the request. In fact, as shown below, Oracle 2.0 actually intentionally did not "intercept" a request.

Under either party's construction, "intercepting" requires, at a minimum, that the "Web server" process a request long enough to determine that a "page server," not the "Web server," should process the request. (*Id. at* 159:15-161:14; Shamos Dep. 213:6-23.) Indeed, the file history for the '335 Patent shows that "merely routing a request from a web server to the [page server] does not involve interception." (Ex. 38, EPIC000498.) In Oracle 2.0, "[t]he HTTP engine does not make any attempt at interpreting the [request], instead it is immediately handed off to the Web Request Broker [the alleged 'dispatcher'] for further processing." (Ex. 39,

28

ORCL000766.) Thus, Oracle 2.0 does not disclose the "intercepting" limitation of the asserted claims.

Furthermore, Oracle 2.0 actually teaches away from "intercepting." Specifically, an Oracle 2.0 document states that: "[t]he typical HTTP API enables a custom extension to be linked into the HTTP server process and allows it to *intercept* and fulfill a client request." (Ex. 39, ORCL000764 (emphasis added).) Oracle 2.0, however, intentionally does not implement the "typical HTTP API" which intercepts a request because:

> the problem with the HTTP API approach is that all extensions are linked into the same executable and thus share the same memory, process, and signal handling space. … Oracle's answer to these issues is a new and improved architecture for the server, which effectively layers Oracle Web Server 2.0 into two fundamental components: a HTTP engine (the Oracle Web Listener) and a high-speed dispatch mechanism (the Web Request Broker) which routes requests to server extensions running in separate processes.

(Ex. 39 at ORCL000764-65.) Thus, instead of implementing the "typical API," in Oracle 2.0, the "Web server" immediately forwarded a request to the alleged "dispatcher" without determining if a "page server" or the "Web server" should process the request. Hence, Oracle 2.0 not only does not include "intercepting," it actually teaches away from "intercepting." Therefore, Oracle 2.0 does not anticipate any of the asserted claims.

### 3. Oracle 2.0 Does Not Meet Oracle's Construction Of A "Page Server."

Oracle's construction for page server is "page generating software, running on a processor separate from that of the Web server, that generates dynamic Web pages." However, the alleged "page server" in Oracle 2.0 is a WRBX that runs on the same machine (and therefore the same processor) as the Oracle 2.0 "Web server." (2d Finkel Decl. ¶52.)

In an attempt to overcome this problem, Oracle argues that a WRBX can connect to a database that can process the request as it did in Oracle 1.0. However, if a database, not the

WRBX is the "page server," then Oracle 2.0 does not disclose the WRB Dispatcher selecting a "page server" because it selects a WRBX, not a database, to process a request. Therefore, Oracle's attempt to switch to a database as a substitute "page server" to meet Oracle's construction fails. Thus, under Oracle's construction for "page server," Oracle 2.0 does not anticipate any of the asserted claims, each of which recites a "page server."

### 4.    Oracle 2.0 Does Not Anticipate Claim 4 Of The '554 Patent.

Oracle 2.0 does not anticipate Claim 4 for the additional reason that it does not disclose the "page server maintaining a connection cache to said one or more data sources." (*Id.* ¶ 53.)

### 5.    Oracle 2.0 Is Not Prior Art.

Oracle 2.0 is not prior art under § 102(a) because at best it was first publicly available on February 21, 1996. (Oracle Br. 18.) As explained above, epicRealm is entitled to an invention date as early as August 1995, but certainly at least November 1995. Thus, because epicRealm is entitled to an invention date prior to February 21, 1996, Oracle 2.0 is not prior art under §102(a). Oracle 2.0 also is not prior art under §102(g). Oracle claims that Oracle 2.0 was conceived no later than July 1995 and reduced to practice by October 1995, however, Oracle fails to provide legally sufficient evidence to support those claims. The only evidence of conception that Oracle can muster is the Montinola declaration, which is insufficient as a matter of law for proving invalidity. *Price*, 988 F.2d at 1195.

# Redacted

Thus, Oracle 2.0 is not prior art.

E.    **Popp Does Not Anticipate The Asserted Claims.**

Popp's approach to Web site architecture is very similar to Oracle 1.0. In both cases, the primary concern was routing Web page requests to an application that could process the request. Neither Popp, nor Oracle 1.0, gave any consideration to determining which instance of an application "can *more efficiently* process the request." In fact, Oracle 1.0 and Popp are nearly identical to the prior art described in the '554 Patent specification. (2d Finkel Decl. ¶57). By comparison, as shown in the embodiment illustrated in Figure 5 of the '554 Patent, the "page server" is selected using steps 508 ("dispatcher determines which page servers can handle request") and 510 ("dispatcher determines which page server is processing fewest requests") -- *i.e.*, which "page server" can more efficiently process the request. (2d Finkel Decl. ¶58.)

1.    **Popp Does Not Disclose The "Dispatching" Limitation.**

Popp does not disclose the "dispatching" limitation under either party's construction.

a.    **Popp Does Not Disclose "Dispatching" Under EpicRealm's Construction.**

Popp does not disclose "dispatching" under epicRealm's construction for many of the same reasons that Oracle 1.0 does not disclose "dispatching." Both merely rely on information stored in a configuration file to determine which "page server" will process a request. As shown below, Oracle's argument that Popp discloses "dispatching" fails for at least three reasons.

*First*, the CGI interface program in Popp (the alleged "dispatcher") does not make an "*informed selection*" of which page server should process a request. When the CGI interface program selects an application to process a request, it only determines which application can process a request because there is only one application that can process each request. (2d Finkel Decl. ¶59.) The CGI interface program does not make a selection between multiple "page servers" that are capable of processing the request. As explained above, Oracle concedes that an

"***informed selection***" requires a choice between more than one "page server" that can process a request. Therefore, the CGI interface program does not make an "***informed selection***" because it does not make a choice between more than one application that can process a request.

*Second*, the CGI interface also does not make a selection based on information indicating which "page server" can more efficiently process a request. Because only one application can process a given request, the information used by the CGI interface does not indicate the relative efficiencies of the applications. (*Id.* ¶60.) Instead, as conceded by Oracle, the CGI interface program only uses information relating to which application can process a request and on which server the application is executing. Thus, the CGI interface program does not use information indicating which page server can more efficiently process a request in deciding which "page server" should process a request.

*Third*, the information used by the CGI interface program in Popp is not "dynamic information maintained about page servers." The information relating to which application can process a request and on which server the application is executing is static information because it can be determined before runtime execution. (*Id.* ¶61.)

# Redacted

### b.    Popp Does Not Disclose "Dispatching" Under Oracle's Construction.

Popp also does not disclose "dispatching" under Oracle's construction for three reasons.

*First,* as discussed above, Popp does not disclose making an "***informed selection***" as required by

Oracle's construction because there is only one application that can process a given request and

Oracle conceded that making an "***informed selection***" requires, at least, choosing from more

than one page server.  (Ex. 12, Shamos Dep. 122:18-128:3.)

# Redacted

Thus, the CGI interface does

not make an "informed selection," because, as also explained above, the CGI interface did not

use "dynamic information about the page servers." *Third,* the CGI interface also does not make

an "informed selection" because it does not use any information "to make a reasonable or

accurate determination as to which [page server] could more efficiently process the request." (2d

Finkel Decl. ¶62.)  For these reasons, Popp cannot anticipate any of the asserted claims because,

at a minimum, it fails to disclose the "dispatching" limitation recited in all of the asserted claims

under either party's construction.

### 2.    Popp Is Not Prior Art.

As discussed above, epicRealm is entitled to an invention date as early as August, 1995.

Therefore, Popp is not prior art under 35 U.S.C. § 102(e) because Popp's filing date is September

22, 1995.  Therefore, summary judgment of anticipation by Popp should be denied.

### F.    Dienst Does Not Anticipate The Asserted Claims.

Oracle also fails in its fourth and final argument that the asserted claims are anticipated,

this time based on Dienst.  Once again, Oracle argues anticipation based on a reference that fails

33

to disclose "dispatching." Dienst, like Oracle 1.0 and Popp, only has one "page server" that can process a given request. Thus, there is no "dispatching" under either party's proposed construction because the job of the alleged "dispatcher" is limited to locating the one "page server" that can process the given request. (2d Finkel Decl. ¶67.)

Specifically, Dienst provides access to a distributed digital library over the Web. (Ex. 40, MAC000270.) The digital works contained in the Dienst library are distributed over numerous servers. Thus, a user seeking to access a copy of *The Cat in the Hat* needs to determine which Dienst Server houses the work. Dienst automates the process of locating the desired work by allowing a user to search for that work. Each Dienst Server has a listing of the works. When a user requests a work, the Dienst Server retrieves the desired work from the server that houses the work and returns it to the user. Thus, by analogy, the Dienst system is the equivalent of someone asking her librarian to locate and obtain a book for her, from the *only* library that has a copy of the book. As set forth below, Dienst does not anticipate the asserted claims.

### 1. Dienst Does Not Disclose The "Dispatching" Limitation.

As described above, Dienst is not concerned with determining which "page server" can more efficiently process a request. Instead, it is concerned with locating the only "page server" that can process a request. (2d Finkel Decl. ¶66.) Thus, as set forth below, Dienst does not disclose the "dispatching" limitation under either party's construction.

#### a. Dienst Does Not Disclose "Dispatching" Under EpicRealm's Construction.

Dienst does not disclose "dispatching" for many of the same reasons that Oracle 1.0 and Popp do not disclose "dispatching." All these references are focused on locating the one and only "page server" that can process a given request. (*Id.* ¶67.) As shown below, Oracle's argument that Dienst discloses "dispatching" fails for at least three reasons. *First*, the alleged

34

"dispatcher" in Dienst does not make an *"informed selection"* of which page server should process a request. In Dienst, only one "page server" (Dienst Server) contains all the works for a specific publisher. (Ex. 40, MAC000281.) Thus, when the alleged "dispatcher" selects a Dienst Server to process a request, it does not make a selection, but rather locates the only Dienst Server that contains that publisher's works. (2d Finkel Decl. ¶68.) Because Oracle concedes that an *"informed selection"* requires a choice between more than one "page server" that can process a request, Dienst fails to disclose making an informed selection. (Ex. 12, Shamos Dep. 122:18-128:3.) *Second*, the alleged "dispatcher" in Dienst also does not make a selection based on information indicating which "page server" can more efficiently process a request. The alleged "dispatcher" only uses information on which Dienst Server is capable of responding to a given request. Because there is only one Dienst Server that can process a request, there is no information on which Dienst Server can more efficiently process that request. (2d Finkel Decl. ¶69.) *Third*, the information used by the CGI interface program is not dynamic information maintained about "page servers" indicating which "page server" can more efficiently process a request. Each Dienst Server downloads a listing of the locations of the other Dienst Servers so that it can search the other servers for works. This information is not dynamic information maintained about "page servers" indicating which "page server" can more efficiently process a request. (2d Finkel Decl. ¶70.) Thus, Dienst does not disclose maintaining dynamic information about which "page server" can more efficiently process a request.

### b. Dienst Does Not Disclose "Dispatching" Under Oracle's Construction.

Dienst also does not disclose "dispatching" under Oracle's construction for three reasons. *First*, as discussed above, Dienst does not disclose making an *"informed selection"* as required by Oracle's construction because there is only one Dienst Server that can process a given request

and Oracle conceded that making an "***informed selection***" requires, at least, choosing from more than one page server. (Ex. 12, Shamos Dep. 122:18-128:3.)

# Redacted

Thus, the alleged

"dispatcher" in Dienst does not make an "informed selection," because it does not use "dynamic information about the page servers."

# Redacted

For

these reasons, Dienst cannot anticipate any of the asserted claims because, at a minimum, it fails to disclose "dispatching" under either party's construction. In addition, Oracle concedes that Dienst does not anticipate dependent Claims 4, 5, 7, and 8 of the '554 Patent.

### G.    Obviousness

Oracle makes an afterthought, conclusory two-page argument that all twelve asserted claims would have been obvious over the combination of yet another reference, Garland, with any of the four allegedly anticipatory references: Oracle 1.0, Oracle 2.0, Popp and Dienst. (Oracle Br. 38-40.) Oracle's argument appears to be that Garland discloses "dispatching," which Oracle here tacitly admits was not disclosed by the other four references. Oracle's argument based on four different combinations does not begin to carry Oracle's burden of proving by clear and convincing evidence that all twelve asserted claims would have been obvious to one of ordinary skill in the art at the time of the invention. Oracle's motion for summary judgment of obviousness should be denied.

### 1.    Garland Does Not Disclose "Dispatching" Under Either Party's Construction.

Garland does not cure the "dispatching" deficiency in Oracle's arguments. The "Dispatcher Server" in Garland does not "examine" the request, as required by both parties' "dispatching" constructions. (2d Finkel Decl. ¶73.) The "Dispatcher Server" also does not send the request to the selected server as required by both parties' "dispatching" constructions. (*Id.*) Thus, combining Garland with Oracle's other references, even if Oracle proved it were proper to do so, would not provide "dispatching" under either party's construction.

Furthermore, Oracle fails to explain how Garland and Oracle's other references could even be combined. Oracle concedes Garland does not disclose using its system for dynamic Web page requests. (Ex. 12, Shamos Dep. 174:19-175:3.) In addition, Garland concedes it did not even improve response time. (Ex. 42, ORCL01818183.) Moreover, Garland discloses using redirection. (*Id.*, Fig. 5.) Oracle has not proved by clear and convincing evidence that Garland in combination with any of Oracle's four other references would have rendered obvious to one of ordinary skill in the art any of the twelve asserted claims at the time of the respective inventions. (2d Finkel Decl. ¶75.) In addition, the overwhelming weight of the evidence of secondary considerations further shows that Oracle's motion must be denied with respect to obviousness.

### 2.    Oracle's Argument That Dienst In Combination With Oracle 1.0 Or Oracle 2.0 Renders Obvious Claims 4, 5, 7 And 8 Should Be Rejected.

Dienst in combination with other references does not render obvious Claims 4, 5, 7 and 8 of the '554 Patent. (*Id.* ¶¶75-77.)

### 3.    Oracle Failed To Consider The Overwhelming Evidence Of Secondary Considerations Of Nonobviousness.

Oracle's motion should be denied because Oracle has entirely failed to consider the objective evidence of nonobviousness, an indispensable consideration of the obviousness

37

analysis under *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). The ultimate conclusion of obviousness is a matter of law which depends on four factual inquiries, all of which must be considered by the trier of fact: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicia of nonobviousness. *Id.* The "objective indicia" of nonobviousness, *i.e.,* secondary considerations, include commercial success, a long-felt but unresolved need for the invention, the failure of others to achieve the claimed invention, and copying. *Id.*; *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986).

Here, the parties dispute the content of the references that Oracle relies on and the differences between these references and the asserted claims. Moreover, Oracle fails to identify in its brief the level of ordinary skill in the art. Oracle's expert, Dr. Shamos, includes a description of the level of ordinary skill in the art in his 190-paragraph declaration, but even if Oracle intended to rely on this, it contradicts the opinion of epicRealm's expert, Dr. Finkel. (2d Finkel Decl. ¶71.) If the infringer satisfies the *prima facie* showing of obviousness (Oracle has not), the burden shifts to the patent owner to come forward with objective evidence demonstrating secondary considerations of nonobviousness. *Winner*, 202 F.3d at 1350. The totality of the evidence then must be weighed to determine whether the invention would have been obvious at the time of the invention. *Rockwell Int'l Corp. v. U.S.*, 147 F.3d 1358,1366 (Fed. Cir. 1998); *Simmons Fastener Corp. v. Ill. Tool Works, Inc.*, 739 F.2d 1573, 1575 (Fed. Cir. 1984). Oracle has completely failed to analyze obviousness under the framework required by *Graham*. There is not a single sentence in Oracle's brief that sets forth the standard enunciated in *Graham*. Nor is there any consideration of the objective evidence of

38

nonobviousness in the record. Indeed, there are numerous examples of secondary considerations including: commercial success, long-felt but unmet needs, unsuccessful attempts by others to solve the problem underlying the invention, copying, industry acclaim, successful licensing of the invention, and skepticism of those skilled in the art. (*See* Section III, *supra*; Ex. 41, epicRealm's Interog. Response No. 12; Ex. 4, Finkel Dep. 300:7-10, 301:7-302:2; Ex. 12, Shamos Dep. 311:18-312:16.)

Because the objective evidence of nonobviousness is discussed in epicRealm's Interrogatory Response No. 12 and above, and because Oracle's obviousness argument fails to raise even a *prima facie* case of obviousness, only select objective evidence of nonobviousness and its nexus to the merits of the claimed invention will be highlighted again. There is no question that a "nexus" exists between the merits of the invention and evidence of nonobviousness such that the evidence should be given substantial weight. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 668 (Fed. Cir. 2000) (citing *Simmons*, 739 F.2d at 1575).

# Redacted

# **Redacted**

There is also evidence that Oracle, and others, copied the claimed invention. (*See* Ex. 41, epicRealm's Interog. Response No. 12; epicRealm's Memorandum in Opposition to Oracle's Motion for Partial Summary Judgment of No Willful Infringement at Sections III.B. and IV.C.3.) Oracle's copying is illustrated by evidence that at the time epicRealm's '554 Patent issued, Oracle did not use metric-based load balancing in the Accused Oracle Products. Then, in August 2000, the PTO cited the '554 Patent during prosecution of an Oracle patent application. (Ex. 15, ORCL01623276.) Three months later, Oracle had metric-based load balancing in the Accused Oracle Web Cache Products. Additionally, a nexus exists between evidence of failure of others and the merits of the patents in suit. IBM set out to build the world's busiest Web site in 1996 for the Atlanta Olympics, devoting substantial time, money, and expertise to the project. IBM, however, did not employ the patented technology and failed. Subsequently, IBM licensed a product from epicRealm that embodied the invention of the patents in suit. (*See* Section III, *supra*.) Oracle has wholly ignored this objective evidence in the record demonstrating nonobviousness. (*See* Oracle Br. 8.) Consequently, Oracle's obviousness analysis is legally deficient for failure to consider the fourth *Graham* factor. Summary judgment is not appropriate in this situation. *Philips*, 312 F. Supp. 2d at 635; *Matsushita Elec. Indus. Co. v. Cinram Int'l, Inc.*, 299 F. Supp. 2d 348, 363-64 (D. Del. 2004); *Arthrocare Corp. v. Smith & Nephew, Inc.,* 2003 WL 1856436 (D. Del April 9, 2003), at *4; and *Sightsound.com, Inc. v. N2K, Inc.*, 391 F. Supp. 2d 312, 352-53 (W.D. Pa. 2003).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Oracle's summary judgment motion for invalidity in its entirety.

OF COUNSEL:                                POTTER ANDERSON & CORROON LLP

Harry J. Roper
George S. Bosy                             By: /s/ David E. Moore
Aaron A. Barlow                                 Richard L. Horwitz (#2246)
Patrick L. Patras                               David E. Moore (#3983)
David R. Bennett                                Hercules Plaza, 6th Floor
Paul D. Margolis                                1313 N. Market Street
Benjamin J. Bradford                            Wilmington, DE  19899
Emily C. Johnson                                Tel:  (302) 984-6000
JENNER & BLOCK                                  rhorwitz@potteranderson.com
330 N. Wabash Avenue                            dmoore@potteranderson.com
Chicago, IL  60611-7603
Tel:  (312) 923-8305                       *Attorneys for Defendant/Counterclaim
                                           Plaintiff epicRealm Licensing, LP*

Dated:  August 21, 2008
Public Version Dated:  August 28, 2008
879528 / 31393 / Oracle

41

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on August 28, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on August 28, 2008, the attached document was Electronically Mailed to the following person(s):

Mary B. Graham
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
MGraham@MNAT.com

James G. Gilliland
Igor Shoiket
Townsend and Townsend and Crew LLP
Two Embarcadero Center
Eighth Floor
San Francisco, CA 94111-3834
OracleEpicrealm@townsend.com

Theodore T. Herhold
Robert J. Artuz
Eric M. Hutchins
Eric A. Mercer
Joseph A. Greco
Nitin Gupta
Townsend and Townsend and Crew LLP
379 Lytton Avenue
Palo Alto, CA 94301
OracleEpicrealm@townsend.com

Chad E. King
Townsend and Townsend and Crew LLP
1200 Seventeenth Street
Suite 2700
Denver, CO 80202
OracleEpicrealm@townsend.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com