IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORACLE CORPORATION and ORACLE )
U.S.A., INC., )
)
Plaintiffs-Counterdefendants, )    C.A. No. 06-414 (SLR)
)
v. )    **REDACTED PUBLIC**
)    **VERSION**
EPICREALM LICENSING, LP, )
)
Defendant-Counterclaimant. )

## ORACLE'S OPPOSITION TO EPICREALM'S *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF TERRY MUSIKA

<div style="display:flex">

OF COUNSEL:

James G. Gilliland
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND
  AND CREW LLP
379 Lytton Avenue
Palo Alto, CA 94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA 94065

</div>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com
  *Attorneys for Oracle Corporation*
  *and Oracle U.S.A., Inc.*

DATED: August 21, 2008
Redacted Filing Date: August 28, 2008

## TABLE OF CONTENTS

Page

I.     SUMMARY OF ARGUMENT ..................................................................................1

II.    STATEMENT OF FACTS .....................................................................................2

III.   LEGAL STANDARDS ..........................................................................................7

IV.    ARGUMENT ..........................................................................................................8

     A.     Mr. Musika's Opinion And Testimony Regarding A Lump Sum
           Damages Award Is Based On A Careful Analysis And
           Application Of The *Georgia-Pacific* Factors ....................................................8

     B.     Mr. Musika's Reliance On His Own Sales Projections To
           Calculate The Royalty Base Was Proper ..........................................................12

     C.     Mr. Musika Used The Appropriate Discount Rate To Calculate
           The Value Of The Lump Sum Payment At The Time Of The
           Hypothetical Negotiation. ..................................................................................14

V.     CONCLUSION......................................................................................................17

## TABLE OF AUTHORITIES

Page

**Cases**

*Avocent Huntsville Corp. v. ClearCube Tech., Inc.*,
   2006 U.S. Dist. LEXIS 55307 (N.D. Ala. July 28, 2006) ...................................................... 12

*Century Wrecker Corp. v. E. R. Buske Mfg. Co., Inc.*,
   898 F.Supp. 1334 (N.D. Iowa 1995)................................................................................ 12

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993).................................................................................... 7, 8, 12, 15

*Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs.*,
   546 F. Supp. 2d 155 (D. N.J. 2008) .................................................................................. 8

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F.Supp. 1116 (S.D.N.Y. 1970)............................................................................. passim

*Hill v. Reederei F. Laeisz G.M.B.H. Rostock*,
   435 F.3d 404 (3d Cir. 2006) ............................................................................................ 7

*Honeywell International, Inc. v. Hamilton Sundstrand Corp.*,
   378 F.Supp.2d 459 (D. Del. 2005) ................................................................................ 13

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir.1994) ............................................................................................... 7

*Inline Connection Corp. v. AOL Time Warner Inc.*,
   470 F.Supp.2d 424 (D. Del. 2007)............................................................................. 4, 7

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
   274 F.3d 1371 (Fed. Cir. 2001) .................................................................................. 9, 13

*Izumi Products Co. v. Koninklijke Philips Electronics N.V.*,
   315 F. Supp 2d 589 (D. Del. 2004).................................................................................. 7

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999).......................................................................................................... 7

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003) ..................................................................................... 12

*Snellman v. Ricoh Co., Ltd.*,
   862 F.2d 283 (Fed. Cir. 1988) ............................................................................... 8, 9, 13

*Syntex (U.S.A.) Inc. v. Paragon Optical Inc.*,
   7 USPQ 2d 1001 (D. Ariz. 1987).................................................................................. 12

**TABLE OF AUTHORITIES (con't)**

<u>Page</u>

*United States v. Mitchell,*
   365 F.3d 215 (3d Cir. 2004) ................................................................................................ 8

**Other Authorities**

*"Valuing Intellectual Property and Calculating Infringement Damages,"*
   Consulting Services Practice Aid 99-2 ......................................................................... 4

**Rules**

Rule 702 of the Federal Rules of Evidence ........................................................ passim

## I.    SUMMARY OF ARGUMENT

EpicRealm moves to exclude the expert testimony of Oracle's damages expert, Terry Musika, with respect to his opinion that one appropriate measure of damages (among others) would be a reasonable royalty in the form of a lump sum payment to epicRealm at the time of the hypothetical negotiation in 2000.  EpicRealm claims that Mr. Musika's opinion should be excluded because: 1) it is based on an "unacceptable and unpublished methodology;" 2) he improperly relied on a combination of Oracle's actual sales of the accused products from 2000-2007 and projections of Oracle's future sales from 2008-2016 (when the patents-in-suit are set to expire); 3) he applied a "speculative and inappropriate" discount rate of ▮ and 4) the lump sum amount is less than the alternative running royalty amount calculated by Mr. Musika.

As demonstrated below, none of epicRealm's assertions hold water.  In conducting his damages analysis, Mr. Musika opined that one of three different measures of damages would be appropriate in this case: 1) a lump sum payment made at the time of the hypothetical negotiation between Oracle and epicRealm; 2) a running reasonable royalty amount calculated using the *Georgia-Pacific* factors; and 3) a damages award based on the recent sales price of the assets of epicRealm to Parallel Networks, which included the patents-in-suit.  EpicRealm does not challenge the latter two damage theories.

With regard to the lump sum payment, this approach is an appropriate and well-recognized measure of damages under 35 U.S.C. §284.  EpicRealm cites no authority, legal or otherwise, to the contrary.  In calculating the lump sum payment, Mr. Musika used the reasonable royalty rate he derived under the *Georgia-Pacific* factors and then multiplied that rate by Oracle's actual sales of the accused products through 2007.  Because there were no actual sales projections for 2008-2016, he projected sales for this time period based on Oracle's

historical sales data.  Again, epicRealm cites to no authority, legal or otherwise, to support its

argument that this methodology is in any way flawed or improper.  With regard to the discount

rate applied by Mr. Musika, far from being "arbitrary, unsupported and plucked out of the air," it

was derived directly from epicRealm's *own* weighted cost of capital at the time of the

hypothetical negotiation in 2000.  EpicRealm omits this important fact in its motion.  Finally, in

asserting that Mr. Musika's opinion should somehow be excluded because the lump sum is less

than the running royalty amount, epicRealm fails to take into account that the amount is

exclusive of pre-judgment interest and miscomprehends the "time value of money."

For these reasons, Mr. Musika's opinion and testimony regarding a lump sum as an

alternative measure of damages is both probative and reliable and is therefore admissible under

Rule 702 of the Federal Rules of Evidence.

## II.    STATEMENT OF FACTS

EpicRealm contends in this litigation that Oracle infringes the patents-in-suit by making,

using and selling Oracle's Internet Application Server, Web Cache and Database products.  To

support its damages claim, epicRealm submitted the expert report of Michael J. Wagner, in

which Mr. Wagner opines that epicRealm's alleged reasonably royalty damages exceed█

█) exclusive of pre-judgment interest.  Oracle has challenged Mr. Wagner's opinion as

fundamentally flawed and inherently unreliable under Rule 702 because he improperly relied on

a single software and technology license agreement between epicRealm's purported predecessor-

in-interest, InfoSpinner, Inc., and IBM as the basis for his determination of a reasonable royalty.

Wagner also misconstrued and misapplied the entire market value rule in assessing epicRealm's

alleged damages.  *See* Oracle's Motion to Exclude Expert Report and Testimony of EpicRealm's

Damages Expert, Michael J. Wagner, D.I. 210.

In response to Wagner's expert report, Oracle submitted a rebuttal damages report by Mr.

Musika.  A87. [1]  EpicRealm thereafter deposed Mr. Musika on July 1, 2008.  Mr. Musika's report

and deposition testimony set forth his opinions and conclusions regarding the appropriate amount

of damages due to epicRealm in the event the patents-in-suit are found to be valid, enforceable

and infringed.  *Id.*

Mr. Musika is a Managing Director with Invotex Group and a CPA with more than thirty-

four years of business experience.  Mr. Musika has provided expert testimony in over 190

proceedings before 47 different Federal District Courts throughout the U.S., eight state courts,

the U.S. Court of Federal Claims, four U.S. Bankruptcy Courts, the American Arbitration

Association, and the U.S. International Trade Commission.  Mr. Musika was accepted as a

designated expert in all cases in which he testified.  *Id.*  at ¶¶ 1, 3, p. 4.

After conducting a detailed review and analysis of the record in this case, Mr. Musika

concluded that a reasonable royalty was the appropriate measure of damages to compensate

epicRealm for the alleged infringement.  *Id.* at ¶39, pp.18-19.  Mr. Musika opined that a

reasonable royalty rate of ███ would be appropriate in this case.  *Id.* at ¶188, p. 75.  Applying

that rate to Oracle's actual and projected sales, Mr. Musika concluded that the maximum

damages adequate to compensate epicRealm for the alleged infringement is ████████ if the

royalty is expressed as a paid-up, lump sum royalty, and ████████ in the form of a running

royalty, exclusive of pre-judgment interest, depending on which Oracle products were found to

---

[1] References to evidence are to the Appendix of Exhibits in Support of Oracle's Claim
Construction Brief and Motions Filed on July 31, 2008 (D.I. 214 and 215), and to the
Supplemental Appendix of Oracle Exhibits Filed on August 21, 2008.  The Appendix contains
Exhibits A1-A71.  The Supplemental Appendix begins with Exhibit A72.

infringe the patents-in-suit. *Id.* at ¶199-201, pp. 80-81.

Mr. Musika analyzed the reasonable royalty rate based on a hypothetical negotiation between epicRealm and Oracle at the time of the first alleged infringement in November, 2000, pursuant to *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), mod. and aff'd, 446 F.2d 295 (2d Cir. 1971), cert. denied, 404 U.S. 870 (1971). A87 at ¶73, pp. 32-33. At that time, epicRealm had ceased selling its ForeSite product, which it claims is the embodiment of the patents-in-suit, because of its failure in the marketplace. The company instead moved into a completely new line of business as a "content delivery network" (CDN) provider. *Id.* at ¶12-16, pp. 7-9.

As the first step of his damages analysis, Mr. Musika developed an initial range of royalty rates based on the minimum rate a licensor would be willing to receive and the maximum rate a licensee would be willing to pay for use of the patented technology. *Id.* at ¶44, p. 20-21.

Mr. Musika employed three different approaches to calculate the initial range of reasonable royalty rates: the market approach, the income approach, and the cost approach. *Id.* at ¶¶ 44-72, pp. 20-32. This methodology has been commonly used by experts in the field to evaluate the value of intangible assets and was cited with approval in the American Institute of Certified Public Accountants' patent damage consulting guide, "*Valuing Intellectual Property and Calculating Infringement Damages,*" Consulting Services Practice Aid 99-2. *Id.* at ¶44, pp. 20-21; A99 at pp. 32-43. *See also Inline Connection Corp. v. AOL Time Warner Inc.,* 470 F. Supp. 2d 424, 431-32 (D. Del. 2007). Mr. Musika considered the results of all three valuation methods in identifying the beginning conceptual ranges for each party. A87 at ¶73, pp. 32-33.

After determining the initial range of reasonable royalty rates, Mr. Musika considered the 15 *Georgia-Pacific* factors to determine the final reasonable royalty rate and the amount of

damages that would be adequate to compensate epicRealm for Oracle's alleged infringement.  *Id.*

Mr. Musika noted that the initial negotiating range was a reference point that provided an

appropriate starting point from which to conduct a *Georgia-Pacific* analysis and did not place a

limit on his damages conclusion.  *Id.*  He concluded that the appropriate reasonable royalty rate

to compensate epicRealm for the alleged infringement was ███.  *Id.* at ¶188, p. 75.

      After determining the reasonable royalty rate, Mr. Musika undertook a review of Oracle's

sales and product distribution methods to calculate the royalty base, to which he applied the

royalty rate in order to calculate damages.  *Id.* at ¶190, pp. 76-77.  Having determined the

appropriate royalty rate and royalty base,  Mr. Musika calculated two different amounts of

reasonable royalty damages due epicRealm for the alleged infringement – one as running royalty

through 2007,[2] and the other as a paid-up, lump sum payment for the life of the patents-in-suit.

*Id.* at ¶196-201, pp. 79-81.  It is only the latter calculation that epicRealm challenges here.[3]

      Mr. Musika found that at least two of the *Georgia-Pacific* Factors, Factors 2 and 5,

provided support for a paid-up, lump sum royalty payment as an appropriate measure of

damages.  *Id.* at ¶189, pp. 75-76.  Under the *Georgia-Pacific* Factor 2,[4] Mr. Musika reviewed

Oracle's past patent licensing practices and determined that Oracle's custom and practice with

respect to licensing patents was to do so on the basis of a paid-up license.  *Id.* at ¶¶105-108, pp.

---

[2] Actual sales figures for 2008 were not yet available at the time the expert reports were due.

[3] As a third alternative measurement of damages, Mr. Musika opined that the sales price for the recent sale of all of epicRealm's assets, which included the patents-in-suit, to Parallel Networks would be an appropriate measure of damages adequate to compensate epicRealm.  A87 at ¶200, p. 80.

[4] Factor 2: "The rates paid by the licensee for the use of other patents comparable to the patent in suit."  *Georgia-Pacific Corp.,* 318 F. Supp. at 1120.

45-46.  Under the *Georgia-Pacific* Factor 5,[5] Mr. Musika determined that the absence of a direct competitive relationship between Oracle and epicRealm and epicRealm's lack of a product in the marketplace (because of ForeSite's failure) at the time of the hypothetical negotiation, as well as the lack of viable options for epicRealm as a going concern, provided additional support for a paid-up, lump sum royalty.  *Id.* at ¶¶116-117, pp. 48-49.  In response, epicRealm did not submit any evidence or argument that it would not have agreed to a lump sum payment in November, 2000 following its decision to jettison the ForeSite product.

Mr. Musika concluded that "if the court finds that a paid-up, lump sum royalty is an acceptable form of damage," the amount would be ███████  *Id.* at ¶¶199-200, p. 80.  The lump sum amount was determined by taking the ███ royalty rate derived from Mr. Musika's *Georgia-Pacific* analysis and multiplying that by Oracle's actual sales of the accused products through 2007 and projected sales (based on historical data) from 2008-2016.  *Id.* at ¶189, pp. 75-76.  Mr. Musika then discounted these amounts back to the date of the hypothetical negotiation at a ███ discount rate, based on epicRealm's own weighted cost of capital in 2000, as set forth in epicRealm's Private Placement Memorandum dated December 2000.  *Id.*; A106 at EPIC019978.  Discounting the expected cash flow from a patent licensing agreement into present value using a discount rate calculated on the basis of weighted cost of capital is a well known and accepted method of calculating patent infringement damages.  *See* A100 at p. 60; A102 at pp. A102-08.

Alternatively, in the event that a running royalty is found to be the appropriate measure of

---

[5] Factor 5: "The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter."  *Id.*  at 1120.

damages, Mr. Musika determined that total damages due epicRealm would be ███████ if

Web Cache was found to infringe, and ███████ if not. A87 at ¶201, pp. 80-81.

## III.    LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert testimony, and provides

that:

> If scientific, technical or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or otherwise, if (1)
> the testimony is based upon sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the witness has applied
> the principles and methods reliably to the facts of the case.

Rule 702 requires judges to ensure that expert testimony is relevant, reliable and will

assist the trier of fact to understand the evidence or determine a fact at issue. *Daubert v. Merrell*

*Dow Pharms.*, 509 U.S. 579, 589-91 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147

(1999); *Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.,* 315 F. Supp. 2d 589, 600 (D. Del.

2004). The proponent of the purported expert testimony bears the burden of showing, by a

preponderance of the evidence, that these requirements are satisfied. *Izumi Prods.*, 315 F. Supp.

2d at 601.

The determination of whether to exclude expert evidence is committed to the court's

discretion. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir.1994); *Inline Connection*

*Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 424, 429-30 (D. Del. 2007). "The permissible

scope of expert testimony is quite broad, and district courts are vested broad discretion in making

admissibility determinations." *Hill v. Reederei F. Laeisz G.M.B.H. Rostock*, 435 F.3d 404, 423

(3d Cir. 2006). *Daubert* emphasized that the trial court must focus solely on principles and

methodology of the expert, and not on the conclusions they generate. 509 U.S. at 580; *Inline*

*Connection Corp.,* 472 F. Supp. 2d at 429-30. *Daubert's* reliability requirement does not set a high bar for the admissibility of expert testimony. *In re Paoli,* 35 F.3d at 744-45. The proponent of the evidence must only show that the expert's conclusion has been arrived at in a sound and methodologically reliable fashion. *United States v. Mitchell,* 365 F.3d 215, 244 (3d Cir. 2004).

The rejection of expert testimony is the exception rather than the rule. *Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs.,* 546 F. Supp. 2d 155, 165-66 (D.N.J. 2008), *citing* Fed. R. Evid. 702, 2000 Amendments.

As demonstrated below, the analysis and methodology employed by Mr. Musika in assessing reasonable royalty damages due epicRealm was sound. His expert opinion and testimony regarding the lump sum royalty measure of damages meets all the requirements of reliability under *Daubert* and should therefore not be excluded under Rule 702.

## IV.    ARGUMENT

### A.    Mr. Musika's Opinion And Testimony Regarding A Lump Sum Damages Award Is Based On A Careful Analysis And Application Of The *Georgia-Pacific* Factors

Each of EpicRealm's arguments regarding exclusion of Mr. Musika's lump sum damages analysis fails upon an examination of the facts and law.

First, contrary to epicRealm's unsupported claim, it is well settled that a damages award in a patent case may take form of a lump sum, paid-up royalty. *See, e.g., Snellman v. Ricoh Co.,* 862 F.2d 283, 289 (Fed. Cir. 1988). In *Snellman,* the district court initially excluded a lump sum damages theory based on projected sales of the accused devices, and set aside the jury award of $12 million. *Id.* at 289. The Federal Circuit reversed, holding that "the jury justifiably could have calculated a lump sum royalty based on Ricoh's expected sales, even though the evidence relating to such sales was not limited to 'the date of first infringement.'" *Id.* The Federal Circuit

held that it was proper to determine lump sum damages based on sales projections and supporting expert testimony. *Id.*; *see also Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384-85 (Fed. Cir. 2001) ("We have previously upheld awards of damages premised on a lump sum royalty payment based on an infringer's expected sales.") EpicRealm cites to no authority to the contrary. In fact, its own damages expert testified that a lump sum award may be an acceptable measure of damages to compensate for infringement under certain circumstances. A109 at pp. 25:23-27:22.

Second, Mr. Musika properly determined that a ███████ lump sum payment, representing a fully paid-up royalty for the full term of the patents-in-suit would be an adequate measure of damages to compensate epicRealm for the alleged infringement. A87 at ¶¶196-201, pp. 79-81. The lump sum was determined by combining the actual sales of Oracle's accused products through 2007 with the projected sales of the accused products up to the expiration of the patents-in-suit in 2016, and then multiplying the resulting sales base by the royalty rate of ██ (derived by Mr. Musika pursuant to a *Georgia-Pacific* analysis), and then discounting the resulting sum back to the date of the hypothetical negotiation using a properly calculated discount rate. *Id.* at ¶189, pp. 75-76. This method of calculating a lump sum award is widely used by experts in the field of patent damages and has been approved by the courts. *See Snellman,* 862 F.2d at 289; *Interactive Pictures Corp.*, 274 F.3d at 1384-85. *See also* A102 at p. A102-08 ("a popular choice for calculating future economic benefits is the Discounted Cash Flow ('DCF') method. The objective of the DCF method is to discount, into present value, the expected cash flow from a [patent] licensing agreement...."); A101 at p. 9 ("If a lump sum arrangement is used, either instead of or in addition to a royalty rate, the amount of the payment is usually based on the present value of a stream of royalty payments.")

Tellingly, epicRealm provides no evidence or argument rebutting Mr. Musika's assertion that the parties would have considered a lump sum payment at the time of the hypothetical negotiation or that an up-front payment by Oracle of ██████████ at a time when epicRealm ████████████████████████████████████████████ would not have been acceptable to epicRealm. The ultimate determination as to whether this is an appropriate measure of damages to compensate epicRealm for the alleged infringement of its patents is not for epicRealm to make. That is uniquely the province of the jury.

Contrary to epicRealm's argument, Mr. Musika did not rely on any improper "subjective" factors to reach his conclusion regarding a lump sum payment. Mr. Musika's assumption that a willing licensee in a hypothetical negotiation would desire to pay the lowest possible rate, and that a willing licensor would desire to receive the highest possible rate, is based on sound economic principles. It is one of the key underlying assumptions for the conduct of a *Georgia-Pacific* hypothetical negotiation. *Georgia-Pacific Corp.,* 318 F. Supp. at 1121-22. Oracle's desire to pay a lump sum based on its established licensing practices, coupled with the evidence that at the time of the hypothetical negotiation ForeSite proved to be an epic-flop in the marketplace and growing concerns regarding the company's continued viability, were all proper factors to consider in the *Georgia-Pacific* analysis. A87 at ¶¶105-108, pp. 45-46; ¶¶116-117, pp. 48-49.

EpicRealm's assertion that Mr. Musika "did not use a hypothetical negotiation or perform a *Georgia-Pacific* analysis to arrive at his 'lump sum' damages theory" misrepresents the record. As Mr. Musika explained in his deposition, the lump sum award was determined by applying the *Georgia-Pacific* methodology to the facts of this case:

Q. 

. . . .

A.

A78 at p. 132:7-24 (emphasis added).

\* \* \*

Q. 

A.

Q.

A.

A78 at pp. 133:17-135:4 (emphasis added).

As stated in his report and confirmed in his deposition, Mr. Musika first established a

reasonable royalty rate of ▮▮▮ based on the *Georgia-Pacific* analysis.  A87 at ¶73, pp. 32-33.

He then applied that rate to calculate ***both*** the lump sum and the running royalty amounts:

Q. 

A.    

A78 at pp. 162:17-163:6 (emphasis added).

A true examination of the record makes clear that Mr. Musika's opinion regarding a lump

sum damages award is based on a careful analysis and application of the *Georgia-Pacific* factors

to the facts of this case.  As such, it is admissible opinion testimony under Rule 702.  Contrary to

epicRealm's assertion, this is precisely the type of opinion testimony that the trier of fact should

consider and weigh in assessing damages.  *Daubert*, 509 U.S. at 596.[6]

**B.    Mr. Musika's Reliance On His Own Sales Projections To Calculate
The Royalty Base Was Proper**

EpicRealm's contention that Mr. Musika improperly relied on projected sales of the

accused products from 2008-2016 in determining the lump sum amount is entirely baseless.  Not

_____

[6] EpicRealm's position is meritless for the additional reason that the *Georgia-Pacific* factors are
not the exclusive means to calculate damages under 35 U.S.C. §284.  Other factors may also be
relevant to determine the reasonable royalty in a particular case.  *See Century Wrecker Corp. v.
E. R. Buske Mfg. Co.,* 898 F. Supp. 1334, 1337 (N.D. Iowa 1995) ("[T]he court has found no
decision describing the Georgia-Pacific factors as the exclusive, permissible factors for
determining a reasonable royalty."); *Syntex (U.S.A.) Inc. v. Paragon Optical Inc.*, 7 U.S.P.Q. 2d
1001, 1040 (D. Ariz. 1987) ("While these factors may act as guideposts, §284 does not mandate
how the district court must compute a reasonable royalty, only that the figure compensate for the
infringement."); *Avocent Huntsville Corp. v. ClearCube Tech., Inc.,* 2006 U.S. Dist. LEXIS
55307, at *37 (N.D. Ala. July 28, 2006); *see also Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d
1387, 1393 (Fed. Cir. 2003). ("Factors relevant in a reasonable royalty determination using this
method <u>include</u> those set out in *Georgia-Pacific*.") (emphasis added).

only were these numbers derived from Oracle's actual historic sales figures, such a methodology is fully recognized and supported by case law. For example, in *Honeywell International, Inc. v. Hamilton Sundstrand Corp.,* 378 F. Supp. 2d 459, 466 (D. Del. 2005), the Court held that sales projections created *after* the time of the hypothetical negotiation could be used as a royalty base to calculate damages. The Court found that "using the 2004-05 projections as a royalty base would be an economically and factually sound basis on which to adequately 'compensate for the infringement' without acting punitively." *Id.; see also Snellman,* 862 F.2d at 289; *Interactive Pictures Corp.*, 274 F.3d at 1384-85; A102.

Further, as epicRealm admits, there was no better evidence of Oracle's future sales in this case. Oracle did not perform any sales projections for the accused products because it does not forecast sales on the individual product level in the ordinary course of business. A79 at pp. 192:1-193:3; 197:4-12. Thus, Mr. Musika's reliance on historical sales information as the best evidence of future sales is entirely proper. EpicRealm provides no evidence or argument that Mr. Musika's estimates are in any way incorrect. If anything, Mr. Musika's estimates erred on the side of giving epicRealm the benefit of the doubt. For example, because there was a downturn in sales of the Oracle Database product in 2007 as compared to the previous two years, Mr. Musika used the 2005-2006 sales of the Database to project sale out to year 2016, so as "not to unfairly punish epicRealm for a decline" in the Database sales in 2007. As he made clear at his deposition:



Q.

A.

Q. ████████████████████████████████
   █████████████████

A. █████████████████████████████

A78 at pp. 149:18-150:5 (emphasis added).

    **C.    Mr. Musika Used The Appropriate Discount Rate To Calculate The Value Of The Lump Sum Payment At The Time Of The Hypothetical Negotiation.**

EpicRealm's objections to the discount rate used by Mr. Musika to calculate the lump sum award fall flat. The ██ discount rate used by Mr. Musika in calculating the lump sum amount is anything but "speculative and inappropriate," as claimed by epicRealm. First, use of a weighted average cost of capital to discount royalty payments back to the time of the hypothetical negotiation is well known and widely used by experts in the field. *See* A100 at p. 60 ("cost of capital with which to discount to a present value" is one of the main components of evaluating a value of an asset); A99 at p. 53 ("the appropriate rate of return in valuing the subject business is the cost of equity capital. This rate is referred to as the discount rate....")

Moreover, Mr. Musika used the same methodology to calculate the discount rate that epicRealm itself used to determine its cost of capital. The ██ discount rate was based on epicRealm's *own* ████ weighted average cost of capital as shown in epicRealm's Confidential Private Placement Memorandum dated December 2000. A87 at ¶189, pp. 75-76; A106 at EPIC019978. As Mr. Musika testified at his deposition, epicRealm itself applied this discount rate to cash flows from 2000 through 2007 to determine and report the company's value:

Q. █████████████████████████████████
   ████████████████████

A.    ████████████████████████████
      ████████████████████████

A78 at pp. 153:12-18. (emphasis added).  Mr. Musika then adjusted the ████████ figure to ████ in

determining the final discount rate in order to account for the inherent uncertainty regarding the

future economic life of the patents due to technological obsolescence, uncertainties regarding

other future market circumstances, and the discount associated with the present value of current

dollars versus future dollars.  A87 at ¶189, pp. 75-76; *see also* A99 at p. 53 (the appropriate

discount rate is based in part on a determination of the perceived financial and business risk of

the investment).  All of this, of course, is completely ignored by epicRealm in its rush to

judgment.

        Finally, epicRealm's claim that the lump sum amount is somehow improper because it is

less than the alternative running royalty amount calculated by Mr. Musika is both factually

incorrect and legally irrelevant.  As demonstrated above, a lump sum measure of damages and

the methodology employed by Mr. Musika to calculate it are fully supported by the courts and

experts in the field.  The fact that the lump sum damages calculation might yield a smaller

damages amount than a running royalty is irrelevant.  Under *Daubert,* the Court's gate-keeping

function regarding admissibility of evidence focuses not on the conclusions reached but on the

"principles and methodology" employed by the expert.  509 U.S. at 594-95.  Here, Mr. Musika's

calculation of a lump sum amount is based on a sound, reliable, and accepted methodology and

should therefore be admitted under Rule 702.  Any argument epicRealm has regarding the

specific damage amounts calculated by Mr. Musika goes to the weight, not the admissibility, of

his opinions.

        In making the argument that the lump sum amount is smaller that the alternative running

royalty amount, epicRealm also conveniently overlooks the fact that the entire lump sum payment would be immediately available to it at the time of the hypothetical negotiation to invest or earn interest, whereas a running royalty would become available and earn interest only gradually over the years. EpicRealm completely ignores the core principal of finance known as the "time value of money" and asserts an untenable proposition that money paid today is no more valuable than the same amount of money paid over the course of the next eight years. The truth is exactly the opposite. Under the fundamental concept of "time value of money," "the certainty of having a given sum of money today is worth more than a certainty of having an equal sum at a later date because money can be put to a profitable use during the intervening time." A103 at p. 907. Having the entire lump sum amount available to epicRealm in 2000, would, assuming prudent investment, result in a greater damages award to epicRealm by 2016 than the sum of the running royalty payments from 2000 to 2007.

Finally, epicRealm's argument fails to take into consideration the fact that the lump sum amount calculated by Mr. Musika is exclusive of pre-judgment interest. A87 at ¶41, p.19. When pre-judgment interest is applied, the lump sum amount may actually result in a larger award than a running royalty.

## V.    CONCLUSION

For the foregoing reasons, it is respectfully requested that epicRealm's motion be denied and Mr. Musika's expert report and testimony regarding the lump sum measure of damages be admitted into evidence.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com
  *Attorneys for Oracle Corporation*
  *and Oracle U.S.A., Inc.*

OF COUNSEL:

James G. Gilliland
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND
  AND CREW LLP
379 Lytton Avenue
Palo Alto, CA 94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA 94065

61457699 v4

- 17 -

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

Richard L. Horwitz
David Ellis Moore
POTTER ANDERSON & CORROON, LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on August 28, 2008 upon the following individuals in the manner indicated:

**BY E-MAIL**

Richard L. Horwitz
David Ellis Moore
POTTER ANDERSON & CORROON, LLP
1313 N. Market St., Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899-0951

**rhorwitz@potteranderson.com**
**dmoore@potteranderson.com**

**BY E-MAIL**

George S. Bosy, Esquire
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL 60611-7603

**gbosy@jenner.com**

*/s/ James W. Parrett, Jr.*
_____
James W. Parrett, Jr. (#4292)