IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ORACLE CORPORATION and ORACLE U.S.A., INC., | ) ) ) | |
| Plaintiffs-Counterdefendants, | ) ) | |
| v. | ) ) | C.A. No. 06-414 (SLR) |
| EPICREALM LICENSING, LP, | ) ) | |
| Defendant-Counterclaimant. | ) | |

**ORACLE'S REPLY TO EPICREALM'S OPPOSITION
TO ORACLE'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com

*Attorneys for Oracle Corporation
and Oracle U.S.A. Inc.*

OF COUNSEL:

James G. Gilliland, Jr.
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, CA 94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA 94065

DATED: September 4, 2008

# TABLE OF CONTENTS

Page

I.  SUMMARY OF ARGUMENT ............................................................................................1

II.  ARGUMENT ...............................................................................................................................2

    A.  Oracle's Motion Should Be Granted Because The Only Disputes
    Involve Claim Construction ..............................................................................................2

        1.  EpicRealm mischaracterizes Oracle's attempt to narrow
        claim construction disputes in the Court-ordered meet
        and confer........................................................................................................2

        2.  The disputes over infringement involve only disputes
        over the scope of the asserted claims, which the Court,
        not the jury, must resolve as a matter of law ...........................................5

    B.  Dynamic Web Page Requests Are Not "Intercepted" Or Diverted
    At Either Of The Alleged Web Servers (OHS Or Web Cache)...........................7

        1.  EpicRealm's theories against IAS and Database fail
        because requests are never intercepted or diverted from
        OHS, the alleged Web server ........................................................................7

        2.  EpicRealm's theory against Web Cache fails because
        requests are never intercepted or diverted from Web
        Cache, the alleged Web server ....................................................................11

    C.  The Accused Oracle Products Do Not Have A Dispatcher That
    Performs Dispatching........................................................................................................12

        1.  EpicRealm's unsupported assertion that mod_oc4j is the
        "dispatcher" of IAS fails because mod_oc4j is merely a
        function of the Web server, OHS ............................................................12

        2.  EpicRealm's Database theory fails because Oracle
        Database lacks a dispatcher and does not perform
        dispatching ....................................................................................................14

            a)  EpicRealm's theory that mod_plsql, using OCI, is
            the "dispatcher" fails because mod_plsql and OCI
            are part of the Web server, OHS ..............................................14

            b)  EpicRealm's new theory that OC4J, using JDBC,
            is the "dispatcher" fails because OC4J is a "page
            server" ............................................................................................14

            c)  Oracle Database does not perform dispatching
            because neither alleged dispatcher analyzes or
            examines a Web page request to make an

## TABLE OF CONTENTS(con't)

Page

informed selection of a page server ...........................................................15

3.    EpicRealm's theory that Web Cache is both the "Web server" and the "dispatcher" fails..............................................................16

D.    The Accused Oracle Products Cannot Perform The Releasing Limitation.............................................................................................16

1.    EpicRealm's "implicit" processing-as-releasing theory fails..........................................................................................16

2.    EpicRealm's "explicit" TCP ACK theory fails .......................................16

E.    EpicRealm Has No Argument Under The Doctrine Of Equivalents..........................................................................................19

F.    Oracle Does Not Indirectly Infringe The Asserted Claims...............................19

III.    CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

Page

**Cases**

*ABB Automation Inc. v. Schlumberger Res. Mgmt. Servs., Inc.*
254 F. Supp. 2d 479 (D. Del. 2003)...................................................................... 5, 7

*ACCO Brands, Inc. v. ABA Locks Manufacturer Co., Ltd.*
501 F.3d 1307 (Fed. Cir. 2007) ......................................................................... 20

*Dynacore Holdings Corp. v. U.S. Philips Corp.*
363 F.3d 1263 (Fed. Cir. 2004) ......................................................................... 18

*General Mills, Inc. v. Hunt-Wesson, Inc.*
103 F.3d 978 (Fed. Cir. 1997) ................................................................... 6, 12, 16

*Golden Blount v. Robert H. Peterson Co.*
365 F.3d 1054 (Fed. Cir. 2004) ......................................................................... 19

*Hale Propeller, L.L.C. v. Ryan Marine Prods. Pty., Ltd.*
151 F. Supp. 2d 183 (D. Conn. 2001)................................................................... 7

*Koito Mfg Co. v. Turn-Key-Tech, LLC*
381 F.3d 1142 (Fed. Cir. 2004) ........................................................................... 7

*Network Commerce, Inc. v. Microsoft Corp.*
422 F.3d 1353 (Fed. Cir. 2005) ......................................................................... 19

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*
521 F.3d 1351 (Fed. Cir. 2008) ........................................................................... 6

*Royal Typewriter Co. v. Remington Rand, Inc.*
168 F.2d 691 (2d Cir. 1948) .............................................................................. 14

*Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*
872 F.2d 978 (Fed. Cir. 1989) ........................................................................... 14

*TIP Systems, LLC v. Phillips & Brooks/Gladwin, Inc.*
529 F.3d 1364 (Fed. Cir. 2008) ................................................................... 10, 16

**Rules**

Federal Rule of Civil Procedure 8(e)(2) ............................................................... 7

Plaintiffs Oracle Corporation and Oracle USA, Inc. (jointly "Oracle") submit this reply brief in response to Defendant epicRealm's opposition brief (D.I. 275) to Oracle's Motion for Summary Judgment of Noninfringement (D.I. 204 and D.I. 205 ["Oracle Br."]).

## I.    SUMMARY OF ARGUMENT

1.    The Court should grant Oracle summary judgment of noninfringement on all the asserted claims of both patents-in-suit. There is no genuine issue as to any material fact. EpicRealm's opposition rests on claim construction arguments. Literal infringement collapses, therefore, into claim construction and should be decided on summary judgment.

2.    Oracle's accused products do not meet the "intercepting" limitation under either parties' proposed construction because they handle all requests in the same way. EpicRealm attempts to broaden the parties' constructions to mean that "intercepting" occurs whenever the Web server handles some requests but not others. Such a construction is wrong and was disclaimed during prosecution. A step-by-step analysis of the undisputed facts of how Oracle's products function demonstrates that no "intercepting" of dynamic Web page requests occurs.

3.    Oracle's accused products also lack the "dispatcher" required by the claims. EpicRealm's assertion that anything which performs "dispatching," including the Web server, is the "dispatcher" conflicts with the specification and improperly reads the "dispatcher" and "dispatching" limitations out of the claims. There is no factual dispute that Oracle's products lack the necessary dispatcher software program to which a Web server must route requests.

4.    Oracle's products lack the "releasing" limitation of the claims. The Texas court rejected epicRealm's theory that processing by the page server implicitly releases the Web server, because it collapses the separate "releasing" and "processing" claim limitations. EpicRealm's TCP ACK or "freeing resources" theory fails because it lacks support in the claims, it relies on

an improper construction of "page server," it conflicts with the patent's preferred embodiment, and it merely advances allegations of hypothetical infringement which fail as a matter of law.

5.       EpicRealm's doctrine of equivalents theory is untimely and should not be considered.  In any event, epicRealm's conclusory equivalents allegations fail as a matter of law.

6.       Oracle does not indirectly infringe the patents-in-suit.  EpicRealm's purported evidence that Oracle had knowledge of the patents prior to January 2006 fails as a matter of law. EpicRealm completely ignores its burden of showing that Oracle's products do not have substantial noninfringing uses.  EpicRealm offers no evidence of how many Oracle customers use the products in an allegedly infringing manner and cannot support its claim for damages based on allegations that 100% of Oracle's customers infringe.

## II.     ARGUMENT

### A.     Oracle's Motion Should Be Granted Because The Only Disputes Involve Claim Construction

#### 1.       EpicRealm mischaracterizes Oracle's attempt to narrow claim construction disputes in the Court-ordered meet and confer

EpicRealm's opposition does not argue that there are genuine issue of fact as to literal infringement.  EpicRealm does not, and cannot, dispute the structures and functions of Oracle's accused products as explained in Oracle's opening brief or the Declaration of Dr. Paul C. Clark (D.I. 217).  Rather, epicRealm concedes that the only remaining issues are those of claim construction.  In a disingenuous attempt to avoid summary judgment, however, epicRealm argues the Court should not consider Oracle's claim constructions because Oracle has "changed" its constructions of certain claim terms.  ER Opp. at 3-4.  But the few changes Oracle made in its proposed constructions were the proper result of the claim construction process set forth by this Court's Scheduling Order of May 16, 2007 (and later amendments), which required the parties to

meet and confer and attempt to agree on disputed claim constructions.  D.I. 29 ¶ 7.  Oracle

conferred with epicRealm in good faith and offered constructions of "page server," "Web

server," "releasing," and "other requests" that were *closer* to epicRealm's proposed constructions

of these terms than Oracle's initial constructions.  In fact, Oracle's compromise construction on

"releasing" is *identical* to the Texas Court's construction of that term, which epicRealm fully

litigated in that case.  A33 at 29.[1]

EpicRealm is thus playing fast and loose with the facts when it represents to the Court

that Oracle has somehow acted improperly in the claim construction process.  The following

chart illustrates that Oracle's alleged "changes"—*i.e.*, compromise constructions—narrowed the

gap in the prior claim constructions.

| Claim Term | epicRealm's Proposed Construction | Oracle's Current Proposed Construction | Oracle's Original Proposed Construction |
|---|---|---|---|
| "page server" | page-generating software that generates a dynamic Web page | page generating software, running on a processor separate from that of the Web server, that generates dynamic Web pages | a server machine, distinct from the [Web server machine/second computer system/HTTP-compliant device], which generates dynamic Web pages |

---

[1] Evidentiary and other factual citations are to the Appendix of Exhibits in Support of Oracle's Claim Construction Brief and Motions ("Appendix"), filed on July 31, 2008 (D.I. 214 and 215); the Supplemental Appendix of Oracle Exhibits ("Suppl. Appendix"), filed on August 21, 2008 (D.I. 272); and the Second Supplemental Appendix of Oracle Exhibits ("Second Suppl. Appendix"), filed herewith.  The Appendix contains Exhibits A1-A71; the Suppl. Appendix contains Exhibits A72-A110; and the Second Suppl. Appendix begins at Exhibit A111.

| Claim Term | epicRealm's Proposed Construction | Oracle's Current Proposed Construction | Oracle's Original Proposed Construction |
|---|---|---|---|
| "Web server" | software, or a machine having software, that receives Web page requests and returns Web pages in response to the requests | HTTP-compliant server software, or a machine running such software, that receives Web page requests and returns Web pages in response to the requests | a computer running HTTP-compliant server software which receives Web page requests and returns Web pages in response to the requests |
| "releasing" / "said page server receiving said request and releasing said Web server [or second computer system or HTTP-compliant device] to process other requests" | freeing | said page server receiving said request and said page server performing an act (separate from merely receiving the request) to free the Web server to process other requests. | said page server receiving said request and said page server performing an act (separate from merely receiving the request) that expressly communicates to said [Web server/second computer system/HTTP-compliant device] that it may now resume processing other requests. |

EpicRealm stubbornly refused to compromise in any way and left its proposed constructions unchanged, but epicRealm does not, and cannot, argue that it was prejudiced by Oracle's offering of compromise constructions that are closer to epicRealm's own constructions.

EpicRealm also falsely accuses Oracle of "adding limitations" to the parties constructions of "intercepting" and "dispatcher." Oracle's constructions mean what Oracle argues in its claim construction and summary judgment briefs. "Intercepting *said request*" must mean "intercepting" or "diverting" of a *dynamic* Web page request. *See* Oracle's Answering Claim Construction Brief ("Oracle Ans. CC. Br."), filed concurrently herewith, Section I.B. "Dispatcher" must mean "*a software program* for determining which page server should be used to process a dynamic Web page generation request." That software program cannot be the same

program as the Web server program because a program cannot route to itself—such an interpretation would conflict with the specification. *Id.*, Section I.C.1. Oracle's constructions do not add new limitations; they reflect the same limitations Oracle has proposed throughout its claim construction and summary judgment briefing.

Ironically, *epicRealm* seeks to *broaden* the constructions it has offered. For example, the parties' proposed constructions of "page server" say nothing about the computer operating system being part of the page generating software, yet epicRealm's infringement theory is predicated on a construction of "page server" that includes the operating system. *See* Section II.D.2, *infra*. In addition, the parties' proposed constructions of "intercepting" do not state that intercepting is achieved merely by the Web server processing some requests and not others, yet that is now what epicRealm contends both parties' constructions mean. *See* Section II.B, *infra*.

Presumably, the Court's procedure of hearing claim construction disputes together with summary judgment motions is intended to prevent the situation where the Court issues claim constructions, and then the parties file summary judgment motions with different "interpretations" of what the constructions mean. The Court will decide the parties' claim construction disputes, which will inform the Court's decision on the summary judgment motions. This is what happened, for example, in *ABB Automation Inc. v. Schlumberger Resource Management Services, Inc.*, 254 F. Supp. 2d 479, 481 (D. Del. 2003). EpicRealm's reliance on *ABB* to argue that Oracle's noninfringement defenses somehow should be precluded prior to the Court's claim construction decisions makes no sense.

> **2.    The disputes over infringement involve only disputes over the scope of the asserted claims, which the Court, not the jury, must resolve as a matter of law**

There are no material disputes of fact as to the structures or functions of Oracle's accused

products.  The only infringement disputes are whether the properly construed claims cover the accused products.  When the parties dispute the proper scope of the claims, "the court, not the jury, must resolve that dispute."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1360 (Fed. Cir. 2008).  Because there is no material dispute over the products' structures and functions, the literal infringement question collapses into claim construction, and should be decided on summary judgment. *Gen.  Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997).

In another misguided attempt to deflect attention from Oracle's meritorious noninfringement defenses, epicRealm argues that Oracle's expert on invalidity issues, Dr. Shamos, has espoused a claim construction that "conflicts" with that of Dr. Clark, Oracle's noninfringement expert.  ER Opp. at 6.  First, epicRealm attempts to create "conflicts" where none exist.  For example, epicRealm asserts that Dr. Shamos undermines Oracle's noninfringement defense on "intercepting" by espousing a construction that would cover Oracle's accused products.  *Id.*  EpicRealm is wrong.  Dr. Shamos's testimony on "intercepting" is not inconsistent with Dr. Clark's.  In the subject passage from his report,  Dr. Shamos was attempting to apply the Texas court's construction of "intercepting," which is the same as epicRealm's and which is hopelessly circular:  "intercepting the handling of a request at a Web server." Nevertheless, Dr. Shamos states that even under this cryptic construction, intercepting requires that "[s]ome mechanism must be used to discriminate between the requests the Web server will handle and which it will not.  That mechanism which prevents the Web server from handling certain requests 'intercepts' their handling within the Texas Court's construction."  *Id.*  This does *not* describe how Oracle's products work, because Oracle's products treat all requests the same. Oracle's products have no "mechanism" that "discriminates" between categories of requests,

- 6 -

dynamic or static, that the alleged Oracle Web servers may or may not "handle." Thus, "certain requests" are never "intercepted" or "diverted" from the Web server. This is in accord with Dr. Clark's testimony. *See*, *e.g.*, Declaration of Dr. Paul C. Clark in Opposition to EpicRealm's Motion for Partial Summary Judgment of Literal Infringement (D.I. 270), ¶¶ 38-45.

More important, however, Oracle's noninfringement and invalidity defenses do not have to be "consistent," especially at this stage of the proceedings when the Court has not yet decided the claim construction disputes. A party's right to present alternative defenses, even if they are inconsistent, is established by Fed. R. Civ. P. 8(e)(2), which provides that "[a] party may also state as many separate claims or defenses as the party has *regardless of consistency* . . . ." (emphasis added); *Hale Propeller, L.L.C. v. Ryan Marine Prods. Pty., Ltd.,* 151 F. Supp. 2d 183, 190 (D. Conn. 2001) (party may argue alternative claim constructions with summary judgment motions on patent infringement and invalidity); *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1153 (Fed. Cir. 2004) (alternative noninfringement and invalidity defenses presented at trial). Whether or not Dr. Shamos's and Dr. Clark's claim constructions differ in some respect is thus irrelevant to whether Oracle's motion should be granted. The Court will judge both parties' motions based on how the Court construes the claims. *See ABB*, 254 F. Supp. 2d at 481.

**B.    Dynamic Web Page Requests Are Not "Intercepted" Or Diverted At Either Of The Alleged Web Servers (OHS Or Web Cache)**

**1.    EpicRealm's theories against IAS and Database fail because requests are never intercepted or diverted from OHS, the alleged Web server**

EpicRealm argues that the "asserted claims only require that a single dynamic Web page generation request *is intercepted* at the 'Web server.'" ER Opp. at 8. This begs the claim construction question: What does it mean to be "intercepted"? In the Texas trial, Dr. Finkel testified that a system that treated static and dynamic requests the same would not perform the

claimed "intercepting":

> Q.    Now, I want you to assume with me for a moment that these requests, they're going to be a number of them one after another, that are coming in, some of them are static pages, some of them are for dynamic pages, okay?
>
> A.    Okay.
>
> Q.    So we have both static and dynamic, okay?
>
> Now, in this particular scenario, I'm not talking about the patent right now, okay, you tell me if I am.  In this particular scenario, the web server doesn't distinguish between these two types in the way it treats them, the way it handles them, it handles them all the same way.  And the way it handles them is it passes them all through.  Might look at them, might do something.  But the treatment on this is all the same, okay?
>
> A.    So this is all requests it gets.
>
> Q.    All requests.  Static and dynamic, all right?
>
> A.    Yes.
>
> Q.    All right.  Now, in your view, in this scenario, treating them all the same, there's no intercepting, isn't that true?
>
> A.    That's correct.
>
> Q.    So the interceptance required by the claims in this scenario is not met; is that correct?
>
> A.    That's correct.

A121 [8/19/08 Trial Tr.] at 62:7-63:8.  It is undisputed that Oracle's products do not distinguish between static and dynamic requests.  EpicRealm attempts to assume this problem away by arguing that intercepting automatically takes place in any system where some requests are handled by the Web server and some are sent to a page server, regardless of whether the system has any mechanism for distinguishing dynamic requests from other requests.  ER Opp. at 8.  But this end-run fails for two reasons.

First, the only way that the term "intercepting," and the parties' proposed constructions of the term, make sense is in reference to the claim language:  "intercepting *said* request," where "said request" is a "*dynamic* Web page generation request."  Intercepting a dynamic Web page request thus requires that dynamic requests are identified and treated differently from static

requests. This is why Oracle's construction explicitly requires "diverting" such requests "before the Web server executable can process the request."

Second, in order to overcome a rejection of its claims as anticipated by U.S. Patent No. 5,754,722 ("Leaf"), epicRealm represented to the Patent Office that Leaf "does not involve intercepting." As discussed in Oracle's Answering Claim Construction Brief, the Web server in Leaf processed some requests while routing others to its page server—and epicRealm disavowed this as "intercepting" in order to secure its patent claims. EpicRealm's "intercepting" must do something that Leaf did not—it must distinguish dynamic requests from static requests, and divert dynamic requests from the Web server.

OHS, the alleged Web server under epicRealm's theories for the IAS and Database products, treats all requests the same; it does not "divert" dynamic requests. Oracle Br. at 8-11 (including illustration at p. 9); Clark Opp. Decl. ¶¶ 75-97. A step-by-step review of how the OHS process functions, which epicRealm does not dispute, demonstrates that there is no "intercepting" or "diverting" of dynamic Web page requests from the OHS program.

Step 1. OHS receives a Web page request from a Web client. This cannot be intercepting because the request, whether dynamic or static, is still at the Web server.

Step 2. OHS delegates the request to an OHS "process," which is an "instance" or copy of the OHS program. This OHS process then calls each of its modules, one at a time, and compares the Web page request against a list of Web page types that module is designed to accept. This cannot be intercepting because all requests, static and dynamic, are compared to the list. Further, the modules are part of the Web server program, so at this point there is no interception or diversion from the Web server of *any* request. In addition, OHS's step of determining that its mod_oc4j function (the alleged "dispatcher" under epicRealm's IAS theory)

will handle the request cannot be "intercepting" because that step is what epicRealm has

identified as "routing to a dispatcher" and this would improperly collapse these two claim

limitations, effectively reading "intercepting" out of the claims. *See TIP Sys., LLC v. Phillips &*

*Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1370 (Fed. Cir. 2008) (A claim construction that

"conflates construction . . . of separate elements of the claimed invention" is improper.).

Step 3.  OHS identifies the correct module to use and uses that module to satisfy all

requests, dynamic and static; none is "intercepted."  In addition, when mod_oc4j is used and the

static or dynamic request is sent to OC4J, this cannot be intercepting because this is what

epicRealm has identified as "dispatching" under its IAS theory and would thus collapse the

"intercepting" and "dispatching" limitations.  *TIP Sys.*, 529 F.3d at 1370.

Step 4.  If OHS calls all of the modules and no appropriate module is identified, it

attempts to satisfy the request, static or dynamic, from data available on the local computer.  This

cannot be intercepting because the request remains within the OHS program; there still has been

no interception or diversion of the request from the Web server.  Thus, OHS does not perform

"intercepting" under epicRealm's theory against IAS.

The two examples of "intercepting" epicRealm provides in its theory against Database

fail for similar reasons.  EpicRealm states that requests are intercepted at OHS "(1) when a

request is routed from OHS to OC4J; and (2) when a request is routed from OHS to mod_plsql."

ER Opp. at 17.  Both examples are wrong because the software does not distinguish dynamic

requests from other requests.  The first example also fails because if routing a request from OHS

(the alleged "Web server") to OC4J (the alleged "dispatcher" with JDBC) is "intercepting" then

the "routing to a dispatcher" limitation is improperly conflated with the "intercepting" limitation.

*TIP Sys.*, 529 F.3d at 1370.  The second example also fails because routing a request from OHS

to mod_plsql is, again, what epicRealm identifies as "routing to a dispatcher" under its theory. ER Opp. at 18.  Neither of epicRealm's examples of "intercepting" under its Database theory respect the separate limitations set forth in the claims.

The OHS software simply is not designed to practice the "intercepting" of the asserted claims.  EpicRealm's infringement theories against IAS and Database fail for this reason alone.

> **2.     EpicRealm's theory against Web Cache fails because requests are never intercepted or diverted from Web Cache, the alleged Web server**

Web Cache, which also treats all requests the same, lacks "intercepting" under epicRealm's infringement theory for similar reasons discussed above for IAS and Database.  As with OHS, a step-by-step review of the Web Cache process, which epicRealm does not dispute, demonstrates that there can be no "intercepting" of dynamic Web page requests.

<u>Step 1</u>.  Web Cache receives a Web page request from a Web client.  This cannot be intercepting because the request, whether static or dynamic, is still at the Web Cache, the alleged "Web server."

<u>Step 2</u>.  Web Cache checks its cache to see if the requested Web page, whether for static or dynamic content, is present.  If the requested Web page is found within the cache, Web Cache returns the Web page to the client.  This cannot be intercepting because all of this functionality is contained within the Web Cache program, so there is no intercepting or diverting of *any* request, let alone a dynamic request, away from the Web server (Web Cache) in any sense.

<u>Step 3</u>.  If the Web page is not found, then Web Cache sends the request to an OHS for further processing.  This cannot be intercepting because Web Cache routes *all cache misses,* whether static or dynamic requests, to an OHS; there is no diversion of dynamic requests.  In addition, Web Cache's sending of a request to an OHS is what epicRealm has identified as

"dispatching," which would improperly conflate the "intercepting" limitation with the "dispatching" limitation.  Also, as discussed in Section II.C.3, *infra*, epicRealm fails to identify any "dispatcher" apart from Web Cache itself, the alleged Web server.  In any event, whatever epicRealm considers the required "routing" of the request from Web Cache as "Web server" to Web Cache as "dispatcher" cannot also be "intercepting," because again, this would improperly conflate the "intercepting" and "routing to a dispatcher" limitation.

As with OHS, there is no factual dispute as to how Web Cache functions and EpicRealm's infringement theories fail as a matter of law.  *Gen. Mills*, 103 F.3d at 983.

### C.    The Accused Oracle Products Do Not Have A Dispatcher That Performs Dispatching

#### 1.    EpicRealm's unsupported assertion that mod_oc4j is the "dispatcher" of IAS fails because mod_oc4j is merely a function of the Web server, OHS

Under epicRealm's theory against IAS, OHS is the alleged Web server and mod_oc4j is the alleged dispatcher.  It is undisputed that mod_oc4j is not a software program, but rather is merely a function of OHS, contained within the same Web server software program.  *See* Clark Opp. Decl. ¶ 100.

Oracle's proposed construction is that the dispatcher must be a *software program*, not code within the Web server program, for determining which page server should process a dynamic request.  *See* Joint Claim Construction Chart at A37-03.  EpicRealm proposes no construction for "dispatcher."  *Id.*  Instead, epicRealm argues that any code in the Web server that performs "dispatching" (a verb) is automatically a "dispatcher" (a noun).  ER Opp. at 14.  This contradicts the explicit language of the claims because it would render meaningless the requirement in all claims of "routing said request from said Web server to a dispatcher."  Under

epicRealm's theories, the "dispatcher" limitation both is superfluous and makes no sense because the "Web server" would effectively be "routing" a request "from itself to itself."

The specification and the Texas court's claim construction also both contradict EpicRealm's nonsensical interpretation of "dispatcher."  The "partitioned architecture" described in the specification requires that the dispatcher either be running on a machine separate from the Web server (the preferred embodiment) or be capable of running on a separate machine from the Web server.  Col. 5:8-36.  *See* Oracle Ans. CC. Br., Section I.C.1.  If the Web server and dispatcher are contained within the same software program as epicRealm asserts, then it would be impossible to run them on two separate machines as the specification requires.  The Texas court recognized the specific "routing" limitations in the claims must be construed in light of the specification's description of the invention as based on the "partitioned architecture."  The court rejected epicRealm's theory that the Web server and page server could reside on the same machine using the same operating system, because such a configuration would be "incapable of meeting the 'routing' limitation."  A88 [TX 8/07/08 Order] at 6-7.  The court's reasoning was simple:  if the Web server and page server were parts of the same program running on the same operating system, "in such a situation 'the Web server would effectively be 'routing' requests from itself to itself.'"  *Id.* at 7 n.3.  For the same reason, "dispatcher" must be construed to require a *separate* software program that can be "routed to" from the Web server.  Therefore, the mod_oc4j function of OHS cannot be epicRealm's "dispatcher" and epicRealm's infringement theory fails for this reason alone.

Realizing that it can find no "dispatcher" in Oracle's products, epicRealm disingenuously represents that the law on literal infringement allows the *same* structure to fulfill two *separate* structural claim limitations, as long as that structure performs the required functions of the

claims.  EpicRealm fails to disclose that the two cases on which it relies deal with the *doctrine of equivalents*, in a situation where claim limitations were *not* literally met.  ER Opp. at 15 (*citing Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978, 986-89 (Fed. Cir. 1989); *Royal Typewriter Co. v. Remington Rand, Inc.*, 168 F.2d 691, 692-93 (2d Cir. 1948)).  These cases provide no support for epicRealm's improper attempt to read the "dispatcher" limitation out of the claims for purposes of literal infringement.  Moreover, epicRealm has no viable doctrine of equivalents theory in this case.  *See* Section II.E, *infra*.

**2.    EpicRealm's Database theory fails because Oracle Database lacks a dispatcher and does not perform dispatching**

**a)    EpicRealm's theory that mod_plsql, using OCI, is the "dispatcher" fails because mod_plsql and OCI are part of the Web server, OHS**

As discussed in Section II.C.1 above, the "dispatcher" must be a software program separate from the Web server software program.  There is no dispute that, like mod_oc4j, mod_plsql is part of the OHS program.  OCI is not a separate program either—it is a software library linked into, and part of, the OHS program.  Clark Opp. Decl. ¶ 137.  EpicRealm's infringement theory against Database with mod_plsql/OCI as a "dispatcher" thus also fails.

**b)    EpicRealm's new theory that OC4J, using JDBC, is the "dispatcher" fails because OC4J is a "page server"**

EpicRealm's new theory against Database asserts that OC4J, using JDBC, is the "dispatcher."  As discussed in Oracle's Brief in Opposition to EpicRealm's Motion for Partial Summary Judgment of Literal Infringement (D.I. 269), this new theory against Database is untimely and should be stricken; nevertheless, even if considered on the merits, it fails.  *See id.* at 27-28.  EpicRealm originally identified only JDBC as a "dispatcher" but changed its theory to include OC4J precisely because it knows that JDBC is not a separate software program from

OHS.  While OC4J is a separate software program from OHS, epicRealm's new theory still fails due to a lack of a "page server."  Dr. Clark's analysis establishes, and epicRealm does not dispute, that whenever OC4J receives a request—necessarily a request for Java-based content—generation of the Java Web page occurs at OC4J (hence the name "Oracle Containers 4 Java").  Since page generation is taking place at OC4J, it—not the Database—is the "page server."  When executing a Java application, OC4J may query a Database for data to use in the generation of the Web page, but the page generation always takes place at OC4J.  Thus, epicRealm's new theory of OC4J, using JDBC, as a "dispatcher" still fails because OC4J cannot be both a "dispatcher" that must "dispatch" to a page server and the page server which must receive the "dispatched" request.  *See id.*

### c)    Oracle Database does not perform dispatching because neither alleged dispatcher analyzes or examines a Web page request to make an informed selection of a page server

EpicRealm's "dispatching" theory against Database relies on Dr. Finkel's assertion that certain information, such as session selection information and security attributes, "can come from examining a [Web page] request."  ER Opp. at 18-19; 2d Finkel Decl. ¶¶ 21-22.  As previously explained in Oracle's briefing, this is wrong.  Oracle Opp. at 28-30.  According to the specification, the "request" is specified by a URL.  *See* Oracle Ans. CC Br. at I.D.4.  Dr. Clark has established, and epicRealm cannot dispute, that the session selection information, security attributes, and other information to which epicRealm refers are not part of the URL, and thus are not part of the "request."  EpicRealm provides no evidence to support its theory that the alleged dispatchers "analyze" or "examine" the URL to obtain this information.  Thus, epicRealm's theories fail as a matter of claim construction.

**3.    EpicRealm's theory that Web Cache is both the "Web server" and the "dispatcher" fails**

As discussed in Section II.C.1 above, the "dispatcher" must be a software program separate from the Web server software program.  EpicRealm does not even attempt to identify a separate dispatcher for its theory against Web Cache; it merely labels unidentified "portions of code" within the Web Cache program as the "Web server" and "dispatcher."  There is no factual dispute that no separate "dispatcher" program exists.  EpicRealm's theory against Web Cache therefore fails for lack of a "dispatcher" as a matter of law.  *Gen. Mills*, 103 F.3d at 983.

**D.    The Accused Oracle Products Cannot Perform The Releasing Limitation**

**1.    EpicRealm's "implicit" processing-as-releasing theory fails**

EpicRealm asserts that "because the 'page server' is processing the request, OHS [or Web Cache] does not have to also expend the resources necessary to process the request.  Thus, OHS is freed to process 'other requests.'"  ER Opp. at 12, 22.  This theory improperly conflates the "releasing" and "processing" limitations, which are separate required acts of the "page server."  *See* Oracle Opp. at 31-34; Oracle Ans. CC Br., Section I.A.  The Texas court expressly rejected epicRealm's "implicit releasing theory" for this reason.  A89 [TX 8/17/08 Order] at 10.  This Court should reject epicRealm's "implicit" theory for the same reason.  *TIP Sys.*, 529 F.3d at 1370.

**2.    EpicRealm's "explicit" TCP ACK theory fails**

EpicRealm also incorrectly argues, for all three accused products, that a TCP acknowledgement (ACK) message sent from the "page server" to the "Web server" satisfies the "releasing" limitation.  *See*, *e.g.*, ER Opp. at 12.  As explained in other Oracle briefs, the '554 patent could not possibly contemplate ACK messages sent by the operating system of a "page server" to constitute "releasing" of the "Web server."  Oracle Opp. at 34-38; Oracle Ans. CC Br.,

Section I.A.  Those ACK messages are being sent because the *dispatcher* software program, not the Web server software program, dispatches a request to the page server.  The dispatcher's receipt of the Web page request from the Web server would cause the *operating system on which the dispatcher* is running to send an ACK message to the Web server, regardless of whether the request is ever successfully dispatched to the "page server."  Thus, if the sending of an ACK message could be considered "releasing" of the Web server, it would be the operating system of the dispatcher, not the operating system of the page server, that would be performing the "releasing."  This is *not* what the claims require.

Even ignoring, for sake of argument, that the ACK messages received by the Web server operating system would not be coming from the the alleged "page server" operating system, no ACKs, regardless of where they come from, "release" or "free" *the Web server to process other requests* as required by the claims.  EpicRealm argues that Oracle only analyzed the "releasing" of individual OHS processes rather than the OHS Web server as a whole.  ER Opp. at 13.  EpicRealm is wrong.  Oracle explained in its opening brief how OHS—both the software program and its individual processes—are never released.  Oracle Br. at 24-27.  Indeed, OHS is nothing more than the sum of its processes.  The OHS processes process requests.  None is ever released to process *other requests* by the operating system's receipt of a TCP ACK message.  Rather, each OHS process waits until it receives the requested content (Web page) back from OC4J.  *Id.*  The ACK therefore does not "release" or "free" any process.  Furthermore, all Oracle's arguments as to why neither OHS nor OHS processes are "released" are equally applicable to why neither Web Cache nor Web Cache "fibers" are "released."  *See* Oracle Br. at 15-24; Oracle Opp. at 38-39.

EpicRealm tries to hedge its bet by arguing that, even if *processes* are not "released,"

"*resources*" on the Web server machine are released by the receipt of the ACK message.  This argument fails for two reasons.  First, the terms "resources," "memory," "processor," or any similar terms appear nowhere in the claims.  Nor does either party's proffered claim construction speak of "freeing resources" or "releasing resources."  The claim language requires "releasing the *Web server* to process other requests."  Moreover, the "releasing resources" construction is contrary to the specification, which states that the releasing employed by the invention's partitioned architecture "*allows* both Page server 404(2) and Web server executable 201(E) to simultaneously process different requests."  Col. 6:25-27.  The term "allows" in the specification shows that in the absence of the "releasing" act by the Page server, the Web server would be unable to process a different request *at all*.  Neither OHS nor Web Cache, the alleged Web servers, are unable to process other requests before their operating system receives an ACK.

Second, even if "releasing" is construed to include "releasing resources," epicRealm has presented *no evidence* that the bytes of memory or cycles of processor time that allegedly are "freed" by the Web server operating system's receipt of an ACK *are allocated to the Web server's processing of other requests*.  EpicRealm argues hypothetically that the mere freeing of "resources" may permit *faster* processing of other requests.  But these "freed resources" can be allocated anywhere by the operating system to any other software programs running on the machine—or not allocated at all—and epicRealm has no evidence showing that the resources are necessarily allocated to the Web server's processing of other requests, or that any allegedly "freed" resources ever have been so allocated.  Oracle Opp. at 39.  Such hypothetical theories of infringement fail as a matter of law.  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277 (Fed. Cir. 2004) (a "theoretical possibility" or "metaphysical doubt" is insufficient to create a genuine issue of material fact of infringement).  EpicRealm's infringement theory

therefore fails for this reason alone.

### E.    EpicRealm Has No Argument Under The Doctrine Of Equivalents

As Oracle argued in its opening brief, epicRealm should be barred from asserting any

doctrine of equivalents claim for failure to properly disclose it in discovery.  Oracle Br. at 37-38.

Moreover, the totality of Dr. Finkel's doctrine of equivalents analysis is in one conclusory

paragraph of his declaration, which merely states that "[t]he Accused Oracle Products infringe

because the differences between the Accused Oracle Products and the asserted claims are

insubstantial from the perspective of a person of ordinary skill in the relevant art."  2d Finkel

Decl. ¶ 36; ER Opp. at 38-39.  This conclusory opinion is insufficient to create a material factual

dispute.  *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005).

### F.    Oracle Does Not Indirectly Infringe The Asserted Claims

Because Oracle's products cannot be used to directly infringe the asserted claims, Oracle

cannot have induced infringement or contributorily infringed those claims.  Oracle Br. at 37-38.

In addition, epicRealm has failed to identify evidence that Oracle had knowledge of the

patents-in-suit prior to January 2006, a necessary predicate for Oracle's indirect infringement

liability prior to that date.  *See* Oracle's Reply to EpicRealm's Opposition to Oracle's Motion for

Partial Summary Judgment of No Willful Infringement, filed concurrently herewith, Section

II.B.1.

EpicRealm has failed to raise a genuine issue of fact as to alleged contributory

infringement because epicRealm, not Oracle, bears the burden of proof to show why Oracle's

products do not have substantial noninfringing uses.  *Golden Blount v. Robert H. Peterson Co.*,

365 F.3d 1054, 1061 (Fed. Cir. 2004).  For example, Oracle pointed out that its software, even

when used in the alleged infringing mode with "metrics-based load balancing," could be used to

process numerous types of requests other than dynamic Web page requests.  Oracle Br. at 36-37; Clark Decl. ¶ 173.  EpicRealm has come forward with no evidence to show why these many uses of the product are not substantial non-infringing uses.

EpicRealm argues that it can defeat Oracle's motion on inducement of infringement because it has pointed to circumstantial evidence of "a little bit" of direct infringement.  ER Opp. at 31.  The problem with epicRealm's argument is that it seeks damages based on an argument that *100%* of Oracle's customers directly infringe the claims.  At the very least, epicRealm's inducement claims should be limited accordingly.  *See*, *e.g.*, *ACCO Brands, Inc. v. ABA Locks Mfr. Co.,* 501 F.3d 1307, 1312 (Fed. Cir. 2007).

## III.    CONCLUSION

For the all the foregoing reasons, the Court should grant Oracle's motion for summary judgment of noninfringement of all the asserted claims of the patents-in-suit.

OF COUNSEL:

James G. Gilliland
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND
   AND CREW LLP
379 Lytton Avenue
Palo Alto, CA  94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA  94065

Dated: September 4, 2008

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*

_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com
   *Attorneys for Oracle Corporation*
   *and Oracle U.S.A., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

Richard L. Horwitz
David Ellis Moore
POTTER ANDERSON & CORROON, LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on September 4, 2008 upon the following individuals in the manner indicated:

| BY E-MAIL | BY E-MAIL |
|---|---|
| Richard L. Horwitz | George S. Bosy |
| David Ellis Moore | JENNER & BLOCK |
| POTTER ANDERSON & CORROON, LLP | 330 N. Wabash Avenue |
| 1313 N. Market St., Hercules Plaza, 6th Floor | Chicago, IL  60611-7603 |
| P.O. Box 951 | |
| Wilmington, DE  19899-0951 | **gbosy@jenner.com** |
| | |
| **rhorwitz@potteranderson.com** | |
| **dmoore@potteranderson.com** | |

_/s/ James W. Parrett, Jr._
James W. Parrett, Jr. (#4292)