IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ORACLE CORPORATION and ORACLE U.S.A., INC., | ) ) ) | |
| Plaintiffs-Counterdefendants, | ) ) | C.A. No. 06-414 (SLR) |
| v. | ) ) | |
| EPICREALM LICENSING, LP, | ) ) | |
| Defendant-Counterclaimant. | ) | |

**ORACLE'S REPLY TO EPICREALM'S OPPOSITION TO ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT EXCLUDING DAMAGES BASED ON ORACLE'S FOREIGN SALES**

OF COUNSEL:

James G. Gilliland, Jr.
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND
  AND CREW LLP
379 Lytton Avenue
Palo Alto, CA  94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA  94065

September 4, 2008

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com

*Attorneys for Oracle Corporation
and Oracle U.S.A., Inc.*

**TABLE OF CONTENTS**

Page

I.      SUMMARY OF ARGUMENT ................................................................................1

II.      ARGUMENT ......................................................................................................2

     A.      Oracle's Sending Of Software Outside the United States By Way Of A Master Disk Or Electronic Transmission Cannot Constitute Infringement Under 35 U.S.C. §271(f) ..............................................................2

         1.      The United States Supreme Court's *Microsoft* decision controls the §271(f) analysis ......................................................2

         2.      Oracle's golden master is not a combinable component of any of the alleged patented inventions because it is not supplied to foreign customers ......................................................4

         3.      Software in the abstract is not a component for purposes of the alleged patented inventions at issue here, including the method claims ......................................................7

         4.      *Union Carbide* and *Eolas* are limited by *Microsoft* and do not provide a basis for denial of Oracle's motion ......................................................8

     B.      EpicRealm Cannot Obtain Reasonable Royalty Damages Under 35 U.S.C. §271(a) For Copies Of Oracle Software Made Outside The United States ......................................................12

         1.      EpicRealm's reliance on cases where products were made within the United States and then sold outside the United States is misplaced ......................................................12

         2.      EpicRealm's attempt to create a new rule of damages recovery by relying on dicta in selected cases is meritless ......................................................14

         3.      EpicRealm misunderstands Oracle's argument that making of an allegedly infringing golden master disk in the United States is, at most, *de minimis* infringement ......................................................17

III.      CONCLUSION ......................................................................................................19

# TABLE OF AUTHORITIES

Page

**Cases**

*Datascope Corp. v. SMEC, Inc.*
   879 F.2d 820 (Fed. Cir. 1978) ...................................................................................... 13, 14

*Del Mar Avionics, Inc. v. Quinton Instruments Co.*
   836 F.2d 1320 (Fed. Cir. 1987) ........................................................................................ 15

*Embrex v. Service Eng'g Corp.*
   216 F.3d 1323 (Fed. Cir. 2000) ........................................................................................ 18

*Eolas Tech. Inc. v. Microsoft Corp.*
   399 F.3d 1325 (Fed. Cir. 2005) ................................................................................... passim

*Informatica Corp. v. Bus. Objects Data Integration, Inc.*
   489 F. Supp. 2d 1075 (N.D. Cal. 2007) ........................................................................ 11, 12

*Integra Life Sciences I, Ltd., v. Merck KGaA,*
   No. 02-1052, 2003 U.S. App. LEXIS 27796 (Fed. Cir. June 6, 2003) .............................. 18

*Integra Lifesciences I, Ltd. v. Merck KGaA*
   331 F.3d 860 (Fed. Cir. 2003) ......................................................................................... 18

*Johns Hopkins Univ. v. CellPro, Inc.*
   152 F.3d 1342 (Fed. Cir. 1998) .................................................................................... 13, 17

*Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*
   561 F. Supp. 512 (E.D. La. 1981), *aff'd*, 761 F.2d 649 (Fed. Cir. 1985) ......................... 14

*Microsoft Corp. v. AT&T Corp.*
   127 S. Ct. 1746 (2007) ............................................................................................... passim

*NTP, Inc. v. Research In Motion, Ltd.*
   418 F.3d 1282 (Fed. Cir. 2005) .......................................................................................... 9

*Railroad Dynamics, Inc. v. A. Stucki Co.*
   727 F.2d 1506 (Fed. Cir. 1984) ........................................................................................ 13

*Schneider AG  v. SciMed Life Sys.*
   852 F. Supp. 813 (D. Minn. 1994) .................................................................................... 14

*Schneider AG v. SciMed Life Sys.,*
   No. 94-137, 1995 U.S. App. LEXIS 9754, 39 USPQ 2d 1596
   (Fed. Cir. Apr. 26, 1995) ................................................................................................... 14

## TABLE OF AUTHORITIES (con't)

Page

*Union Carbide v. Shell Oil Co.*
   425 F.3d 1366 (Fed. Cir. 2005) ................................................................................. 4, 8, 9, 11

*z4 Techs. Inc. v. Microsoft Corp.*
   507 F.3d 1340 (Fed. Cir. 2007) ....................................................................................... 15, 17

**Statutes**

35 U.S.C. §271(a) ................................................................................................................ passim

35 U.S.C. §271(f) ................................................................................................................ passim

Plaintiffs and Counterdefendants Oracle Corporation and Oracle USA, Inc. (jointly

"Oracle") submit this brief in reply to defendant epicRealm's opposition (D.I. 258) to Oracle's

Motion For Partial Summary Judgment Excluding Damages Based on Oracle's Foreign Sales

(D.I. 212 [Motion] and D.I. 213 ("Oracle Br.")).

## I.    SUMMARY OF ARGUMENT

1.    Oracle is not liable for damages under either §271(f) or §271(a) for accused

Oracle products made and sold outside the United States.  The issues presented are purely legal.

The only material facts are undisputed:  The foreign sales of Oracle software identified in the

opening brief are made only when "abstract code" supplied by Oracle is copied outside the

United States.  The "golden master disks" containing the "abstract code," which Oracle sends

abroad, are never used by Oracle customers to practice any of the asserted claims.  The Court

should, therefore, grant Oracle's motion as a matter of law.

2.    EpicRealm's opposition is based on a faulty interpretation of the controlling

authority, the United States Supreme Court's decision in *Microsoft Corp. v. AT&T Corp.*, 127 S.

Ct. 1746 (2007), and reliance on Federal Circuit authority which is either irrelevant or in conflict

with *Microsoft*.

3.    Under *Microsoft*, Oracle is not liable for damages for infringement under §271(f)

because (1) the abstract software code is not a "component" within the meaning of the statute,

and (2) the golden master disk from which the alleged infringing *copies* of Oracle products are

made is not itself a "combinable component" of any of the patented inventions at issue because

the golden master disk itself is never used by customers to practice any of the asserted claims.  In

other words, copies of Oracle software made abroad do not infringe under §271(f) because they

contain no "component" that is "supplied" from the United States.

4.      EpicRealm's attempt to obtain damages under §271(a) for products made *outside* the United States is directly contrary to the plain language of that statute and, not surprisingly, is not supported by any of the cases on which epicRealm relies.  EpicRealm simply ignores Oracle's Federal Circuit authority that making *copies* of a product—even a patented product—outside the United States does not constitute infringement of a United States patent.  The cases on which epicRealm relies expressly state, as does §271(a) itself, that liability for foreign sales under §271(a) must be predicated on sales of products *made within the United States.*  None of Oracle's accused products sold to foreign customers was made within the United States and, therefore, Oracle is not liable under §271(a) as a matter of law.

5.      EpicRealm's remaining attempts to read unstated exceptions into the territorial limits of §271(a) are based on general statements from cases that do not hold that sales of software products created abroad by copying a golden master disk infringe a United States patent or can be included in the royalty base.  As with all of epicRealm's tenuous legal arguments in its brief, once the actual holdings of the cases are examined, epicRealm's legal position falls apart.  The Court should grant Oracle's motion.

## II.    ARGUMENT

### A.    Oracle's Sending Of Software Outside the United States By Way Of A Master Disk Or Electronic Transmission Cannot Constitute Infringement Under 35 U.S.C. §271(f)

#### 1.    The United States Supreme Court's *Microsoft* decision controls the §271(f) analysis

The facts relevant to this motion are undisputed.  The foreign sales of Oracle software identified in the opening brief are made only when "abstract code" supplied by Oracle is copied outside the United States.  *See* Oracle Br. at 4-5.  Under these circumstances Oracle can have no

liability under 35 U.S.C. §271(f) based on sales of those copies outside the United States. The United States Supreme Court's decision in *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746 (2007), precludes liability under §271(f) for alleged infringement of the type of patent claims at issue in this case, all of which require "abstract code" to be embodied onto a tangible medium before anyone can infringe.

EpicRealm makes two arguments that, despite *Microsoft*'s holding, Oracle infringes under §271(f). First, epicRealm argues that, under *Microsoft*, a computer disk containing abstract software (*i.e.*, the "golden master disk") is a "component" that is "supplied from the United States" under §271(f). ER Opp. at 2, 6. This argument misses the point. The issue is not whether Oracle could be liable for making a disk in the United States and sending it abroad; rather, the issue is whether Oracle can be liable for *copies* made from that disk—*i.e.* copies of the "abstract code" on the disk—when those copies are made outside the United States. Under *Microsoft*, the answer is "No," because the "abstract code" on the golden master disk is not a "component" within the meaning of §217(f). Thus, while epicRealm may argue that the "golden master" made in the United States infringes, the copies made from the golden master do not infringe under §271(f) because they contain no "component" that is "supplied" from the United States. *See* Section II.A.2, *infra*.

Second, epicRealm argues that under *Microsoft,* the "abstract code" itself *can* be a component under §271(f), relying on footnote 13 of the Supreme Court's opinion. But that footnote merely addresses the theoretical possibility of whether an *intangible* method claim could be subject to §271(f), and if so, whether "abstract code" could be a "component" of such an intangible method claim. *Microsoft*, 127 S. Ct. at 1756 n. 13. Again, epicRealm misses the point. None of the claims epicRealm asserts in this action are "intangible." Rather, they either

require a "machine readable medium" (a tangible thing) or require the use of computer hardware and copies of computer software installed on a machine readable medium (again, tangible things). Oracle Br. at 12-14; *see* Section II.A.3, *infra*.

The pre-*Microsoft* Federal Circuit cases on which EpicRealm also relies cannot supersede the Supreme Court's holding and analysis in *Microsoft*. EpicRealm cites *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325 (Fed. Cir. 2005), which held, contrary to *Microsoft*, that a component under §271(f) includes "software code on the golden master disk." *Id.* at 1339. *Microsoft* questioned *Eolas*'s reasoning, and *Eolas* is not, in fact, good law after *Microsoft* on the issue of whether abstract code is a "component" under §271(f). EpicRealm also cites *Union Carbide v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005), a case that did not deal with computer software, and is thus inapposite to the issues presented here. The Supreme Court's decision in *Microsoft* controls the issues presented in this motion and, under *Microsoft*, Oracle cannot be held liable for infringement under §271(f). *See* Section II.A.4, *infra*.

> **2.    Oracle's golden master is not a combinable component of any of the alleged patented inventions because it is not supplied to foreign customers**

EpicRealm does not, and cannot, claim that customers ever use the "golden master disks"[1] that Oracle supplies from the United States; they do not. Oracle Br. at 5; Mayerson Decl. ¶¶7-8. Whether the golden master itself could be considered a "component" under §271(f)—for example, if hypothetically someone put the golden master into a computer and performed the alleged infringing method or created an alleged infringing system—is thus irrelevant. Because

---

[1] The same holds true for the servers located outside the United States to which Oracle electronically transmits abstract master code. Oracle Br. at 5; Mayerson Decl. ¶¶13-15.

Oracle's golden master is *not* supplied to customers, it never is used by customers as a "combinable component" to perform an allegedly infringing method or as a "combinable component" in an allegedly infringing system; nor does the golden master itself ever become a "combinable component" of a "machine readable medium" sold to a customer, as required by '554 claim 11.[2]   Therefore, Oracle's sending the golden master abroad is neither (1) supplying a component, nor (2) supplying a component from the United States under §271(f).  The totality of the golden master's role in sales made outside the United States is that the "abstract code" embodied on it is copied onto the tangible products, *e.g.*, CD-ROMs or computer hard drives, necessary to infringe the asserted claims under epicRealm's infringement theories.

    This issue presented here is thus precisely the same issue, on essentially the same facts, which the Supreme Court decided in *Microsoft*:

> This case concerns the applicability of *§ 271(f)* to computer software first sent from the United States to a foreign manufacturer on a master disk, or by electronic transmission, then copied by the foreign recipient for installation on computers made and sold abroad.

127 S. Ct. at 1750.  The Court addressed two inquiries to determine whether Microsoft infringed:

> This case poses two questions: First, when, or in what form, does software qualify as a "component" under *§ 271(f)*? Second, were "components" of the foreign-made computers involved in this case "supplie[d]" by Microsoft "from the United States"?

127 S. Ct. at 1753-54.

    With respect to the first question, the Court held that abstract software is *not* a

---

[2] The asserted method claims in this action are '554 patent claims 1-5 and 7-8, and '335 patent claims 2 and 16.  The asserted system claims are '554 patent claims 9 and 10.  The asserted "machine readable medium" claim is '554 patent claim 11.  Oracle Br. at 4.

combinable component of the patented invention.  *Id.* at 1755. The Court stated that "section 271(f) applies to the supply abroad of the 'components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components.'"  127 S. Ct. at 1755.  The Court reasoned that "[t]he provision thus applies only to 'such components' as are combined to form the 'patented invention' at issue." *Id.*  The patented invention at issue was a speech-processing computer.  AT&T argued that Microsoft infringed because the Windows code that was used on computers was a "component" of the invention.  The Court held that "a copy of Windows, not Windows in the abstract, qualifies as a 'component' under § 271(f)."  127 S. Ct. at 1756.  The Court's rationale was explicit and directly on point to the issues presented here:

> Until it is expressed as a computer-readable "copy," *e.g.*, on a CD-ROM, Windows software—indeed any software detached from an activating medium—remains uncombinable.  It cannot be inserted into a CD-ROM drive or downloaded from the Internet; it cannot be installed or executed on a computer. Abstract software code is an idea without physical embodiment, and as such, it does not match *§ 271(f)*'s categorization: "components" amenable to "combination." Windows abstracted from a tangible copy no doubt is information—a detailed set of instructions—and thus might be compared to a blueprint (or anything containing design information, *e.g.*, a schematic, template, or prototype).  A blueprint may contain precise instructions for the construction and combination of the components of a patented device, but it is not itself a combinable component of that device.

*Id.* at 1755.  The "abstract code" on Oracle's golden master disks is thus not a "combinable component" under §271(f).

Addressing the second question concerning supply from the United States, the Court held that Microsoft did not infringe under §271(f) because it did not supply from the United States the necessary "components," *i.e.*, the actual *copies* of Windows installed on foreign-made computers.  *Id.* at 1757.  The Court stated that §271(f) "prohibits the supply of components 'from

the United States . . . in such a manner as to actively induce the combination of *such components*." *Id.* (emphasis added). "The very components supplied from the United States, *and not copies thereof,* trigger § 271(f) liability when combined abroad to form the patented invention at issue." *Id.* (emphasis added). Because Microsoft did not supply the copies used in the computers at issue, but rather the golden master from which such copies were made abroad, it did not infringe under §271(f). *Id.* The same is true for Oracle's software products copied abroad from golden master disks.

The issue decided in *Microsoft* is thus precisely the issue before the Court in this case. Although epicRealm may be technically correct that a golden master itself could theoretically be a component of a patented invention under *Microsoft* because it is software on a physical medium, it is not a combinable component of any of the patented inventions at issue here because (1) Oracle does not supply the golden master disk to foreign customers, and (2) the golden master itself is neither used by Oracle's foreign customers to practice allegedly infringing methods or to create allegedly infringing systems, nor does the golden master itself become part of any allegedly infringing "machine readable medium," as required by '554 claim 11.

### 3.    Software in the abstract is not a component for purposes of the alleged patented inventions at issue here, including the method claims

EpicRealm also argues that the *Microsoft* opinion did not rule out the possibility that "abstract code" *may* be a "component" under §271(f). ER Opp. at 2, 6. EpicRealm relies on footnote 13 of the opinion, which states:

> We need not address whether software in the abstract, or any other intangible, can *ever* be a component under *§ 271(f)*. If an intangible method or process, for instance, qualifies as a "patented invention" under *§ 271(f)* (a question as to which we express no opinion), the combinable components of that invention might be intangible as well. The invention before us, however, AT&T's speech-processing computer, is a tangible thing.

*Microsoft*, 127 S. Ct. at 1756 n. 13.  Thus, the Court refused to address two hypothetical questions:  (1) Can an "*intangible* method" claim qualify as a "patented invention" under §271(f), and, if so, (2) could the "combinable components" of that invention also be "intangible"? Notably, the Court limited its qualification to *intangible* method claims, not *all* method claims.

The Court did not address the questions posed in footnote 13 because the patented invention in *Microsoft* was a "tangible thing."  *Id.*  The same is true here: the asserted method and system claims are not "intangible," but instead require the use of tangible things—computer hardware and copies of computer software installed on that hardware to practice the claimed method or to create the claimed system.  Oracle Br. at 12-14.  Likewise, the "machine readable medium" of '554 claim 11 is a "tangible thing."  *Id.* at 14.  As in *Microsoft*, the abstract software, detached from an activating medium, is uncombinable and cannot be used in the claimed methods or systems or machine readable medium.  Footnote 13 of *Microsoft* does not apply.

4.     ***Union Carbide*** **and** ***Eolas*** **are limited by** ***Microsoft*** **and do not provide a basis for denial of Oracle's motion**

EpicRealm's reliance on *Union Carbide* and *Eolas*, two pre-*Microsoft* Federal Circuit cases, is misplaced.  EpicRealm relies on these cases to argue that, despite *Microsoft*,  the "abstract code" on Oracle's golden master disks can be considered a component that Oracle supplies from the United States.  EpicRealm is wrong.

*Union Carbide* did not deal with computer software, and is thus inapplicable on its facts to the issues presented here.  EpicRealm argues, however, that *Union Carbide* stands for the proposition that §271(f) should be broadly construed to cover all inventions, including all method and process inventions, which necessarily would include the asserted method claims in this case.  ER Opp. at 7.  EpicRealm's conclusion is based on nothing more than broadly stated

language in *Union Carbide* that "[e]very component of every form of invention deserves the protection of § 271(f); *i.e.*, that 'components' and 'patented inventions' under § 271(f) are not limited to physical machines . . . ."  425 F.3d at 1379.  EpicRealm neglects to mention that this language actually originated in *Eolas*, which as discussed below, is in conflict with *Microsoft*.

EpicRealm's reliance on *Union Carbide* fails for several reasons.  First, the Supreme Court in *Microsoft* cut back on this broad language as it relates to the subject matter of this motion, holding that "abstract software code" is not, in fact, a component under §271(f), at least for "tangible" claims.  Second, despite its broadly stated dicta, *Union Carbide* does not *hold* that a component under §271(f) can be intangible.  Rather, *Union Carbide* held that supplying a *physical* component, a catalyst, to be used in the patented process to produce ethylene oxide, is an infringement under §271(f).  425 F.3d at 1379-80.

Third, *Union Carbide* mistakenly relied on *Eolas* to reach its conclusion.  The court mischaracterized the "component" in *Eolas*, stating that the component was a physical thing, a "computer disc with program code."  *Union Carbide*, 425 F.3d at 1379.  As discussed further below, *Eolas* did not hold that the component was the computer disk, because the master disk that was shipped abroad was never made a part of any allegedly infringing device.  *Eolas*, 399 F.3d at 1331, 1339.  *Eolas* treated the abstract code, not the disk, as the component.  *Id.* at 1339.

Finally, *Union Carbide* distinguished *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), in a way that makes *Union Carbide's* holding inapplicable here.  In *Union Carbide*, the court distinguished *NTP* on the basis that the defendant "did not supply any component to a foreign affiliate," whereas Shell, the defendant in *Union Carbide*, "directly" supplied the U.S.-made catalyst to foreign customers.  *Union Carbide*, 425 F.3d at 1379-80.  Here, Oracle does not supply the golden master to foreign customers, and customers do not use

the golden master.  Therefore, the golden master is not a "component" under *Union Carbide*'s analysis.  The intangible software code on the golden master, which *Microsoft* holds is not a "component," is copied outside the United States, and then the copies are sold to foreign customers.

EpicRealm's reliance on *Eolas* is nothing more than an improper attempt to avoid *Microsoft*, the controlling authority.  In *Eolas*, there were both a method claim and a product claim at issue.  399 F.3d at 1330.  The Federal Circuit focused on the product claim which included, among other requirements, "[a] *computer readable medium* having computer readable program code physically embodied therein . . . ."  *Id.* (emphasis added).  This "computer readable medium" was as much a "tangible thing" as AT&T's speech-processing computer in *Microsoft*. *See Microsoft*, 127 S. Ct. at 1756 n.3.  Nevertheless, Microsoft, the defendant in *Eolas*, did *not* supply this tangible computer readable medium to customers abroad, but instead supplied only a golden master disk whose "abstract code" was copied onto such a medium:

> Microsoft exports a limited number of golden master disks containing the software code for the Windows operating system to Original Equipment Manufacturers (OEMs) abroad who use that disk to replicate the code onto computer hard drives for sale outside the United States.  The golden master disk itself does not end up as a physical part of an infringing product.

*Eolas*, 399 F.3d at 1331.  *Eolas* went on to hold that:

> [T]he *software code on the golden master disk* is not only a *component,* it is probably the key part of this patented invention.  Therefore, the language of section 271(f) in the context of Title 35 shows that *this part* of the claimed computer product is a "component of a patented invention."

*Id.* at 1339 (emphasis added).  *Eolas* thus held that "this part," *i.e.*, the abstract "software code" on the golden master, was a "component" under §271(f), even though the golden master itself *never* became part of the claimed "tangible thing," the "computer readable medium" (*i.e.,*

computer hard drive) onto which the abstract software code was copied. This holding is directly in conflict with *Microsoft*'s holding that "abstract code" is not a component, at least where "tangible" inventions are involved. Therefore, this aspect of *Eolas* is no longer good law.

Indeed, as *Microsoft* pointed out, if *Eolas* meant that "abstract software," rather than a "copy" of software, was a "component," then *Eolas*'s holding would be based on the position that *Microsoft* rejected. In framing the issues the Supreme Court stated that:

> If . . .Windows in the abstract qualifies as a component within *§ 271(f)*'s compass, it would not matter that the master copies of Windows software dispatched from the United States were not themselves installed abroad as working parts of the foreign computers.

127 S. Ct. at 1754. The footnote at the end of this statement provides:

> The Federal Circuit panel in this case, relying on that court's prior decision in *Eolas Technologies Inc. v. Microsoft Corp., 399 F.3d 1325 (2005)*, held that software qualifies as a component under *§ 271(f)*. We are unable to determine, however, whether the Federal Circuit panels regarded as a component software in the abstract, or a copy of software.

*Id.* at 1754 n.10. As one district court has pointed out, "*Microsoft* calls into question the reasoning of *Eolas* to the extent that the Federal Circuit may have been referring to software in the abstract, rather than captured in a medium." *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 489 F. Supp. 2d 1075, 1083 (N.D. Cal. 2007).

EpicRealm's attempts to distinguish *Informatica* are unavailing. ER Opp. at 9. First, while the case is on appeal, counsel for Oracle (Townsend firm) also is appellate counsel for Business Objects Data Integration in that case and represents that the foreign sales issue is not on appeal because Informatica accepted a remittitur, which excluded damages based on foreign sales. Second, *Informatica*'s "approval" of *Union Carbide*, which epicRealm touts, was merely that §271(f) could apply to method claims, not that it applied to the software method claims at issue in that case. The *Informatica* court explicitly stated that:

> Although *Union Carbide* stands for the general principle that Section 271(f) can apply to method claims as well as apparatus claims when the components are supplied to foreign users in a particular manner, *it is distinguishable from Microsoft, as well as the present case, where the infringer supplied software on a master disk to a foreign, third-party contractor who then duplicated the disk to distribute copies.*

*Informatica*, 489 F. Supp. 2d at 1082 (emphasis added).  *Informatica* thus treats both *Eolas* and *Union Carbide* precisely how Oracle contends they should be treated by this Court, and it is misleading for epicRealm to represent to the contrary.

Finally, any doubt over whether §271(f) applies to foreign sales should be resolved by the strong presumption against the extraterritorial reach of United States patent laws.  *See* Oracle Br. at 6; *Microsoft*, 127 S. Ct. at 1758.  Oracle can have no liability under §271(f) and the Court should grant Oracle's motion on that basis.

## B.     EpicRealm Cannot Obtain Reasonable Royalty Damages Under 35 U.S.C. §271(a) For Copies Of Oracle Software Made Outside The United States

### 1.     EpicRealm's reliance on cases where products were made within the United States and then sold outside the United States is misplaced

EpicRealm argues that it is entitled to damages under 35 U.S.C. §271(a) for Oracle's sales outside the United States because Oracle makes "golden master" disks in the United States which epicRealm alleges to infringe the patents-in-suit.  ER Opp. at 13.  The flaw in epicRealm's argument is that it seeks damages for products—the *copies* made from the golden master—that are made *outside* the United States and that are thus *outside* the reach of §271(a).  Section §271(a) provides in pertinent part that "whoever without authority makes, uses, offers to sell, or sells any patented invention, *within the United States* . . . during the term of the patent therefor, infringes the patent."  (Emphasis added.)  The export of the golden master, or its use overseas to make copies, is *not infringement.  Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1366

(Fed. Cir. 1998) ("[N]either export from the United States nor use in a foreign country of a product covered by a United States patent constitutes infringement [under §271(a)]").  Tellingly, epicRealm ignores *Johns Hopkins*, on which Oracle relied in its opening brief.  Oracle Br. at 16.  Instead, epicRealm relies on a number of irrelevant cases in which the infringing products were, in fact, made within the United States and then sold outside the United States.

EpicRealm relies, for example, on *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820 (Fed. Cir. 1978).  ER. Opp. at 14.  In *Datascope*, the court considered whether a plaintiff could recover lost profits for the infringer's foreign sales of infringing goods *manufactured within the United States*.  *Datascope*, 879 F.2d at 824-27.  The court ultimately concluded that plaintiff did not meet the test for lost profits, and instead awarded a reasonable royalty.  *Id.* at 827.  Because the reasonable royalty was for sales of infringing goods manufactured within the United States, *Datascope* is irrelevant to the issues presented here.

EpicRealm also cites *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1519 (Fed. Cir. 1984), as holding that whether the accused infringing carsets were sold in the United States or elsewhere was "irrelevant" given the domestic infringement.  ER Opp. at 14.  EpicRealm neglects, however, to disclose that the damage award included royalties for 1,671 carsets sold to foreign customers because those carsets *were made within the United States*.  *Railroad Dynamics*, 727 F.2d at 1519.  As the Federal Circuit stated, "When it *made the 1,671 carsets in this country*, it infringed claim 10.  Whether *those carsets* were sold in the U.S. or elsewhere is therefore irrelevant, and no error occurred in including those carsets among the infringing products."  *Id.* (emphasis added).  Here, the dispute is whether epicRealm may claim damages for Oracle products that were made *outside* the United States.  *Railroad Dynamics* is irrelevant.

The same is true for *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 561 F. Supp. 512 (E.D. La. 1981), *aff'd*, 761 F.2d 649 (Fed. Cir. 1985), another case in which the court awarded damages under §271(a). ER Opp. at 14. Again, in *Kori* the infringing vehicles were made within the United States, and the damages were based on a lost profits analysis. *Kori*, 561 F. Supp. at 526.

Finally, epicRealm cites *Schneider AG  v. SciMed Life Sys.*, 852 F. Supp. 813, 847 (D. Minn. 1994), for the proposition that damages may be awarded for foreign sales. In *Schneider*, the district court specifically awarded lost profit damages to Scheider AG (Europe) for lost sales in foreign countries and lost profit damages to Schneider USA for lost sales in the United States. Its damage awards were based on the fact that *all SciMed infringing catheters were made within the United States. Id.* EpicRealm selectively and disingenuously quotes from the unpublished Federal Circuit decision in *Schneider*: "'we are aware of no rule' in a § 271(a) case that would bar a patentee from recovery on 'foreign sales.'" ER Opp. at 15. The entire sentence, which gives an entirely different meaning, reads, "We are aware of no rule that a plaintiff cannot recover *lost profits* for foreign sales of *infringing products manufactured in the United States*." No. 94-137, 1995 U.S. App. LEXIS 9754, at *9, 39 USPQ 2d 1596, 1598 (Fed. Cir. Apr. 26, 1995) (*citing Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820 (Fed. Cir. 1978)) (emphasis added).

## 2.    EpicRealm's attempt to create a new rule of damages recovery by relying on dicta in selected cases is meritless

EpicRealm cites no case law holding that a patent owner may obtain reasonable royalty damages under §271(a) for sales of products made outside the United States. Rather, EpicRealm relies on dicta in two Federal Circuit cases in an attempt to conjure up such a "rule," which would be in direct conflict with the plain language of the statute. Of course, epicRealm fails.

EpicRealm cites *Del Mar Avionics, Inc. v. Quinton Instruments Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987), for the proposition that it is entitled to include foreign sales in the reasonable royalty base because Oracle's foreign sales "are a natural consequence of Oracle's domestic infringement." ER Opp. at 13. *Del Mar*, however, provides no guidance whatsoever on how to determine a royalty base. In *Del Mar*, the issue was whether damages should be based on lost profits or a reasonable royalty. The district court awarded damages based on a reasonable royalty. On appeal, the patentee argued that the district court erred in not awarding damages measured by its lost profits. The Federal Circuit merely set forth the general rule for determining damages, and indicated that "to recover *lost profits*, a patentee must show a reasonable probability that, but for the infringement, it would have made the sales that were made by the infringer." 836 F.2d at 1326.[3] The court concluded that there was no basis for the royalty rate of 5%, vacated the damages award and remanded for a determination of damages based on the patentee's lost profits. *Id.* at 1328. But the court said *nothing* about whether foreign sales should be included in the royalty base. Even *Del Mar*'s dicta is not relevant to the issues presented here.

EpicRealm also argues that "it is correct to include 'worldwide sales of the accused products' in the royalty base in a § 271(a) analysis." ER Opp. at 13 (citing *z4 Techs. Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1355-56 (Fed. Cir. 2007)). EpicRealm argues that *z4* holds that damages based on worldwide sales are recoverable under §271(a). But *z4*'s holding is actually much narrower and is based solely on the procedural issue of the defendant's failure to preserve a defense at trial that damages based on its foreign sales were not recoverable and failure to

---

[3] EpicRealm is not seeking lost profits here because it does not sell any products.

- 15 -

present evidence segregating domestic and foreign sales.

In *z4*, §271(f) issues were not presented to the jury, the jury instructions referred only to §271(a), and no other arguments were presented at trial as to why foreign sales should be excluded. 507 F.3d at 1356. Defendant Microsoft requested a new trial on damages in light of the *Microsoft* case, because the jury made its damages determination based on worldwide sales of the accused products. Microsoft argued that the *Microsoft* case was relevant because it involved the same accused products distributed using the same golden master distribution system. *Id.* Microsoft also argued that it preserved its right to argue that worldwide damages could not be awarded by moving *in limine* to exclude evidence of foreign sales of the accused products. *Id.* at 1355-56.

The Federal Circuit rejected Microsoft's request for a retrial on damages, finding that Microsoft had failed to properly preserve the issues for appeal. The court noted that the claims were different from those in *Microsoft* and raised different infringement issues.

> Because no § 271(f) issues were presented to the jury, and because the jury instructions communicated the requirements for finding infringement only under § 271(a), we must assume that the jury confined its analysis and ultimate finding of liability to the instructions given under § 271(a). . . . *Without more*, a damages award based in part on global sales does not necessarily implicate § 271(f).

*Id.* at 1356 (emphasis added). Most important, the Federal Circuit made clear that Microsoft may have had *legitimate* arguments against inclusion of foreign sales in the damages award under §271(a) if Microsoft had properly raised those arguments on appeal and had made a proper record at trial:

> Microsoft may or may not have *legitimate arguments* regarding the propriety of considering specific foreign sales in a damages calculation for infringement *under § 271(a), but it raised no such arguments here.* Additionally, we find *no evidence* in the record that Microsoft presented any evidence to the district court *segregating domestic and foreign sales.* Therefore, we find no merit in

Microsoft's request for a remand on these grounds.

*z4*, 507 F.3d at 1356 (emphasis added). The Federal Circuit in *z4* thus explicitly did *not* rule on whether damages could be awarded under §271(a) for Microsoft's sales outside the United States because Microsoft did not properly raise the issue on appeal. The *z4* case does not, therefore, stand for the proposition that epicRealm is entitled to damages for sales of Oracle software made outside the United States. Unlike Microsoft in *z4*, Oracle has timely and properly raised the issue, and the Court should grant Oracle's motion for partial summary judgment on that issue.

### 3. EpicRealm misunderstands Oracle's argument that making of an allegedly infringing golden master disk in the United States is, at most, *de minimis* infringement

Oracle pointed out in its opening brief that, if the golden master disk itself were deemed to infringe claim 11 of the '554 patent, the infringement would be *de minimis*. Oracle Br. at 18-19. While epicRealm brands this argument "frivolous," epicRealm does not appear to understand it, perhaps because epicRealm ignores cases on which Oracle relies, such as *Johns Hopkins*. Oracle's argument is actually quite simple: if one were to consider a reasonable royalty to be awarded for making an infringing "golden master disk" in the United States, one would have to focus only on *that one disk*, and could not consider sales of *copies* made from the disk abroad. Again, this is because neither "exporting" the golden master from the United States nor "using" it abroad to make copies is an act of infringement. *Johns Hopkins,* 152 F.3d at 1366. Therefore, as much as it would like to, epicRealm cannot use the single allegedly infringing act of making the golden master in the United States as a "springboard" to claim damages for noninfringing copies made and sold outside the United States. As the Supreme Court stated in *Microsoft*, such a theory:

"converts a single act of supply from the United States into a springboard for

> liability each time a copy of the software is subsequently made [abroad] and combined with computer hardware [abroad] for sale [abroad.]" (citation omitted) *In short, foreign law alone, not United States law, currently governs the manufacture and sale of components of patented inventions in foreign countries. If AT&T desires to prevent copying in foreign countries, its remedy today lies in obtaining and enforcing foreign patents.*

*Microsoft*, 127 S. Ct. at 1758-59 (emphasis added).

Again, the case law epicRealm cites fails to support its theory.  EpicRealm cites *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 863-64 n.2 (Fed. Cir. 2003), for the proposition that "a patentee is entitled to recover no less than a reasonable royalty for all infringing activities whether *de minimis* or not."[4]  But, as the *Integra* court further explains, *de minimis* infringement may also be addressed by limiting damages.  No. 02-1052, 2003 U.S. App. Lexis 27796, at *7 n.2 (Fed. Cir. June 6, 2003)*, citing Embrex v. Service Eng'g Corp.*, 216 F.3d 1323 (Fed. Cir. 2000) (Rader, J. concurring); *see also Deuterium Corp v. United States*, 14 U.S.P.Q. 2d 1636, 1642 (Cl. Ct. 1990) (damages for an extremely small infringement may be *de minimis*).  This is precisely the point Oracle made in its opening brief:  any royalty for making the golden master disk in the United States would be the royalty on that one disk, a truly *de minimis* award.  Again, epicRealm appears to be confused, arguing that Oracle's *domestic* sales, allegedly amounting to about $2.8 billion, are not *de minimis*.  ER Opp. at  16.  It is true that these *domestic* sales are not *de minimis*, and this motion does not claim otherwise.  But these are not sales of golden master disks; these are sales of *copies* made from a golden master, which *copies* were made *within the United States*.  Therein lies the difference—whether the *copies* were

---

[4] The amended opinion appears at No. 02-1052, 2003 U.S. App. LEXIS 27796 (Fed. Cir. June 6, 2003).

made inside or outside the United States—which epicRealm fails to, or refuses to, comprehend. The Court should grant Oracle partial summary judgment that foreign sales of these foreign-made copies cannot be included in the royalty base under §271(a) or §271(f) or any other provision of the Patent Law.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant Oracle's Motion for Partial Summary Judgment Excluding Damages Based on Oracle's Foreign Sales and hold that Oracle cannot be held liable for copies of its software made and sold outside the United States.  Any doubt regarding whether epicRealm is entitled to damages based on Oracle's foreign sales of the accused products—and Oracle maintains there is none—should be "resolved by the presumption against extraterritoriality." *Microsoft,* 127 S. Ct. at 1758.  As the Supreme Court held in *Microsoft,* if a patent owner such as epicRealm "desires to prevent copying in foreign countries, its remedy today lies in obtaining and enforcing foreign patents."  *Id.* at 1759.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*

_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com
*Attorneys for Oracle Corporation*
*and Oracle U.S.A., Inc.*

OF COUNSEL:

James G. Gilliland, Jr.

Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND
  AND CREW LLP
379 Lytton Avenue
Palo Alto, CA  94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA  94065

September 4, 2008
2475923
61491683 v1

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2008, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF which will send electronic notification of such

filing to the following:

> Richard L. Horwitz
> David Ellis Moore
> POTTER ANDERSON & CORROON, LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to

be served on September 4, 2008 upon the following individuals in the manner indicated:

| **BY E-MAIL** | **BY E-MAIL** |
| --- | --- |
| Richard L. Horwitz | George S. Bosy |
| David Ellis Moore | JENNER & BLOCK |
| POTTER ANDERSON & CORROON, LLP | 330 N. Wabash Avenue |
| 1313 N. Market St., Hercules Plaza, 6th Floor | Chicago, IL  60611-7603 |
| P.O. Box 951 | |
| Wilmington, DE  19899-0951 | **gbosy@jenner.com** |
| | |
| **rhorwitz@potteranderson.com** | |
| **dmoore@potteranderson.com** | |

> /s/ James W. Parrett, Jr.
> James W. Parrett, Jr. (#4292)

61491683 v1