IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORACLE CORPORATION and ORACLE )
U.S.A., INC., )
)
Plaintiffs-Counterdefendants, ) C.A. No. 06-414 (SLR)
)
v. ) **REDACTED PUBLIC**
) **VERSION**
EPICREALM LICENSING, LP, )
)
Defendant-Counterclaimant. )

## ORACLE'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF EPICREALM'S DAMAGES EXPERT, MICHAEL J. WAGNER

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com

*Attorneys for Oracle Corporation
and Oracle U.S.A. Inc.*

OF COUNSEL:

James G. Gilliland, Jr.
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, CA 94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA 94065

DATED: September 4, 2008

Redacted Filing Date: September 11, 2008

## TABLE OF CONTENTS

Page

I.   SUMMARY OF ARGUMENT ..........................................................................1

II.  ARGUMENT.............................................................................................1

A.   Wagner's Failure To Properly Consider Customer Demand for
     the Patented Feature Contravenes the Entire Market Value Rule
     and Undermines His Entire Damage Calculation ....................................1

     1.   The Patented Feature At Issue Is Metrics-Based Load
          Balancing ...............................................................................4

     2.   Wagner's Failure To Consider Customer Demand For
          Metrics-Based Load Balancing Renders His Opinion and
          Testimony Inadmissible.............................................................7

     3.   Wagner's Damages Analysis Contradicts The *Georgia-
          Pacific* Principles And The Entire Market Value Rule
          And Therefore Fails As A Matter Of Law ..................................12

B.   Wagner's Testimony Should Be Excluded as Inherently
     Unreliable Based on His Improper Reliance on the
     IBM/InfoSpinner Software Agreement to Determine a
     Reasonable Royalty for the Patents-In-Suit ........................................15

III. CONCLUSION...........................................................................................19

# TABLE OF AUTHORITIES

Page

## Cases

Cornell Univ. v. Hewlett-Packard Co.,
    No. 01-CV-1974, 2008 U.S. Dist. LEXIS 41848 (N.D.N.Y. May 27, 2008) ........................ 12

Dowagiac Mfg. Co. v. Minn. Moline Plow Co.,
    235 U.S. 641 (1915) ................................................................................................................ 2

Elec. Pipe Line, Inc. v. Fluid Sys., Inc.,
    146 F. Supp. 262 (D. Conn. 1956) .......................................................................................... 2

Garretson v. Clark,
    111 U.S. 120  (1884) ............................................................................................................... 2

Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH,
    408 F.3d 1374 (Fed Cir. 2005) ...................................................................................... 1, 8, 12

Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.,
    315 F. Supp. 2d 589 (D. Del. 2004) .............................................................................. 2, 8, 10

Oiness v. Walgreen Co.,
    88 F.3d 1025 (Fed. Cir. 1996) ............................................................................................... 11

Rite-Hite Corp. v. Kelley Co., Inc.,
    56 F.3d 1538 (Fed. Cir. 1995) ....................................................................................... 1, 8, 12

State Indus., Inc. v. Mor-Flo Indus., Inc.,
    883 F.2d 1573 (Fed. Cir. 1989) ............................................................................................... 1

Stickle v. Heublein,
    716 F.2d 1550 (Fed. Cir. 1983) ........................................................................................... 2, 8

Trell v. Marlee Elecs. Corp.,
    912 F.2d 1443 (Fed. Cir. 1990) ............................................................................................. 11

Utah Med. Prods., Inc. v. Graphic Controls Corp., 350 F.3d 1376 (Fed. Cir.
    2003) ...................................................................................................................................... 16

## Rules

Federal Rules of Evidence Rule 702 ............................................................................... 1, 12, 20

## I.   SUMMARY OF ARGUMENT

As demonstrated in Oracle's motion, Wagner's expert report and testimony should be excluded under Rule 702 of the Federal Rules of Evidence as fundamentally unsound and inherently unreliable because his analysis contravenes the entire market value rule and because of his improper reliance on the IBM/InfoSpinner software agreement as a benchmark in determining a reasonable royalty rate.  In its opposition, epicRealm argues that Wagner properly applied the entire market value rule in assessing damages and that the IBM/InfoSpinner software agreement was used as an appropriate starting place in determining a reasonable royalty rate under *Georgia-Pacific*.  As demonstrated below, epicRealm's arguments are contrary to the facts and the law.  Wagner's failure to conduct a proper damages analysis has resulted in an exorbitant royalty rate and damages in excess of ▇▇▇▇▇▇▇  This fundamentally flawed damages analysis cannot be allowed to go to a jury.

## II.   ARGUMENT

### A.   Wagner's Failure To Properly Consider Customer Demand for the Patented Feature Contravenes the Entire Market Value Rule and Undermines His Entire Damage Calculation

As demonstrated in Oracle's opening brief, Wagner's complete failure to properly assess, or even consider, customer demand for the patented feature – metrics-based load balancing or what Wagner refers to as "Intelligent Dispatching" – renders his damages report and expert testimony inherently unreliable and therefore inadmissible under Rule 702.

The law is clear that damages may be based on the value of an entire apparatus containing several features "where the patented related feature is the basis for customer demand." *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1550 (Fed. Cir. 1995); *Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH,* 408 F.3d 1374 (Fed. Cir. 2005).  In awarding royalty damages for the

use made of the invention, the amount of royalty should be that which compensates for the infringement and no more. *See, e.g., Stickle v. Heublein,* 716 F.2d 1550, 1557 (Fed. Cir. 1983). A patentee must apportion the damages so that the damages are based on the value of the improvement claimed by the patented invention. *See Elec. Pipe Line, Inc. v. Fluid Sys., Inc.,* 146 F. Supp. 262, 263 (D. Conn. 1956), *citing Dowagiac Mfg. Co. v. Minn. Moline Plow Co.,* 235 U.S. 641 (1915) and *Garretson v. Clark,* 111 U.S. 120, 121 (1884) (where an infringer manufactures and sells a device containing a patented component, the patentee has the initial burden of apportioning the value of the product to the patented component); *see also Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.,* 315 F. Supp. 2d 589 (D. Del. 2004).

Here, Wagner conceded that he failed to consider actual customer demand for metrics-based load balancing or to otherwise account for the value of the patented feature to the accused Oracle products as a whole:



[1] A36 at pp. 36-37; A27 at pp. 13-14.



A. ████████████████████████████████████

A113 at pp. 130:1-6; 109:9-111:17; 156:14-157:6 (emphasis added).[2]

The fact of the matter is that there *is* evidence in the record regarding actual customer usage of metrics-based load balancing and, not coincidentally, it demonstrates that it is of minor importance and rarely used. *See* citations at p. 8 of Oracle's opening brief (D.I. 211). Had Wagner bothered to consider this evidence, by his own admission it would have affected his entire damages analysis. Of course, it is epicRealm's burden to prove its damages with reasonable certainty. That it completely failed to meet this burden is evident.

### 1.   The Patented Feature At Issue Is Metrics-Based Load Balancing

To deflect attention from Wagner's glaring failure to consider customer demand for the patented feature or otherwise properly apportion damages based on that feature, epicRealm attempts to argue that the patented invention is not limited to metrics-based load balancing. This argument is meritless and is directly contradicted by epicRealm's own contentions in this case.

The system disclosed and claimed in the patents-in-suit comprise many different elements undeniably known in the prior art, such as client computers, web browsers, web servers, data sources, and other well-known components necessary to practice the claimed invention. *See* epicRealm's Memorandum in Support of its Motion For Partial Summary Judgment of Literal Infringement (D.I.224), pp. 2-4 ("this prior art included the then existing

---

[2]   Evidentiary and other factual citations are to the Appendix of Exhibits in Support of Oracle's Claim Construction Brief and Motions ("Appendix"), filed on July 31, 2008 (D.I. 214 and 215); the Supplemental Appendix of Oracle Exhibits ("Suppl. Appendix"), filed on August 21, 2008 (D.I. 272); and the Second Supplemental Appendix of Oracle Exhibits ("Second Suppl. Appendix"), filed herewith. The Appendix contains Exhibits A1-A71; the Suppl. Appendix contains Exhibits A72-A110; and the Second Suppl. Appendix begins at Exhibit A111.

World Wide Web (the 'Web') that was used by a 'Web client' (e.g., a computer running a Web browser) desiring to access information on a Web site through the retrieval of Web pages…. The web server operating the Web site received the request [from the client computer] and generated a response which was returned to the Web browser").  As Wagner stated in his report, it was the addition of "Intelligent Dispatching" that supposedly set epicRealm's invention apart from the prior art:



A30 at p. 5, ¶12 (emphasis added).

Indeed, according to epicRealm and Wagner, the accused Oracle products did not begin to infringe until the metrics-based load balancing option was added.  *See* A30 at pp. 58-59, ¶205



Confirming the fact that metrics-based load balancing is the key patented feature,

epicRealm's technical expert, Dr. Finkel, recently testified at trial in Texas that "Intelligent Dispatching" is the *only* feature disclosed in the patents-in-suit that distinguishes the patents over prior art.[3] In attempting to distinguish the patents-in-suit over two prior art references – Popp and Garland – which defendants there asserted invalidated the patents, Dr. Finkel testified that the "Intelligent Dispatching" feature of the patented invention was the only element of the claims not taught by the prior art:

> Q.   While we're waiting, during your deposition, you testified that the only element from Claim 1 of the '554 patent that is missing from the Popp reference is dispatching, correct?
>
> A.   Yes.
>
> Q.   And that's consistent with your testimony today. You say the dispatcher is missing?
>
> A.   Yes.
>
> Q.   And you say the dispatcher is not provided by the Garland reference, correct?
>
> A.   That's correct.
>
> Q.   *That's the only thing that is missing from this whole thing. Everything else is there from both of those references, correct?*
>
> A.   *Yes. That's enough.*

A123 [TX Trial Trans.] at pp. 33:11-34:4. (emphasis added).

As this undisputed evidence makes clear, "Intelligent Dispatching" is the heart of the claimed invention. Indeed, Wagner conceded as much in his expert report. A30 at p. 5, ¶10 ████████████████████████████████████████████████████████ ████████████████████████████ As set forth below, he also conceded he

---

[3]   Oracle does not concede that "Intelligent Dispatching" or any other element of the asserted claims of the patents-in-suit are in fact novel, as set forth in Oracle's Brief in Support of its Motion For Summary Judgment of Invalidity of the Asserted Claims (D.I. 207).

made no attempt to assess actual customer demand for this key feature of the patented invention.

No amount of argument or misdirection by epicRealm can change these fundamental facts.

Nevertheless, Wagner used the entire sales price of the accused Oracle products in determining

the royalty base, without making any effort to assess or apportion the value of metrics-based load

balancing to the overall product offering. The result is a flawed damages analysis leading to a

wildly excessive damages figure.

### 2.   Wagner's Failure To Consider Customer Demand For Metrics-Based Load Balancing Renders His Opinion and Testimony Inadmissible

EpicRealm argues that Wagner properly considered customer demand for the accused

products. This argument is without merit. EpicRealm's contention – belied by Wagner's own

admissions at his deposition – relies on a few selected Oracle documents and snippets from

depositions of Oracle employees which simply tout the hoped-for benefits of metrics-based load

balancing. Nowhere, however, does any of this supposed evidence show ***actual customer***

***demand*** for metrics-based load balancing. In fact, the only evidence on this issue is that the

feature is of minor importance and is rarely used by customers. Wagner conceded he failed to

take this key evidence into account:



A113 at p. 153:20-24 (emphasis added).

Rather than take on these telling admissions by its own expert, epicRealm instead simply

ignores them. Wagner's complete failure to properly weigh, or even consider, actual customer

demand for the patented feature or otherwise value the alleged improvement claimed by the

patented invention renders his entire damages analysis fundamentally flawed. *Rite-Hite*, 56 F.3d at 1550; *Stickle,* 716 F.2d at 1557; *Izumi Prods. Co*, 315 F. Supp. 2d at 589.[4]

    As discussed above, it is undisputed that a vast majority of the features of the accused Oracle products pre-date the patents-in-suit and have nothing to do with metrics-based load balancing.  Oracle began development of its Database product in ███ and its IAS product in ███████ long before the filing or issuance of the patents-in-suit.  A130 [*Profit*, May 2007]; A111 [Deposition of Katrina Montinola, February 19, 2008, p. 15:2-8].  As Wagner admits in his expert report, ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

A30, p. 77, ¶267 ("Oracle itself markets its products by touting a range of features that will appeal to its broad range of users.").  ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *Id*. at p. 78, ¶271.

████████████████████████████████

████████████████████████ *See* epicRealm's Memorandum in Support of its Motion For Partial Summary Judgment of Literal Infringement (D.I.224), pp. 9-13.  IAS comprises many different modules performing a multitude of functionalities, most of which are completely unrelated to metrics-based load balancing; in fact, metrics-based load balancing feature is

---

[4]  Wagner's consideration of selected Oracle documents and employee testimony on the benefits of metrics-based load balancing as part of his *Georgia-Pacific* analysis in determining a proper royalty rate cannot cure this fundamental flaw in his analysis. *See Imonex*, 408 F.3d at 1380 ("Any reliance on the so-called *Georgia-Pacific* factors, actually a *Georgia-Pacific* listing, had little or no relation to Imonex's entire-value calculation in different clothing.").

implemented by only one of these modules, ██████████ *Id.* pp. 9-13: A30 at p. 77, ¶¶264-266.

███████ can implement eight different load balancing algorithms, but epicRealm claims that

only two of the eight load balancing algorithms actually infringe the patents-in-suit.  A21 at pp.

105:21-106:19; 109:6-112:3; 137:5-11; A27 at pp. 13-14.  IAS's "default" load balancing

algorithm is "Round Robin," which Wagner and epicRealm concede cannot be used to practice

the claimed inventions.  A27 at p. 13-14; A30 at p. 53, ¶¶184-185: A21 at pp. 105:21-106:9.

Similarly, Oracle Database is ████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████ *See* epicRealm's Memorandum in Support of its Motion

For Partial Summary Judgment of Literal Infringement (D.I.224), p. 11.  Oracle customers can,

and do, use IAS with Web Cache and Database with a RAC configuration without ever

implementing the metrics-based load balancing feature.  A21 at pp. 105:21-106:19; 109:6-112:3;

137:5-11; Clark Decl. (D.I.217) ¶¶169-174.

    None of this evidence has ever been disputed by epicRealm.  Wagner admitted that

Oracle bundles many features into its products to provide a whole-system solution to its

customers, and that ████████████████████████████████████████████

███████████ A30 at p. 77, ¶266.  Nevertheless, Wagner failed to analyze or even consider

whether the metrics-based load balancing feature contained "within the large bundle of features"

in the accused Oracle products actually drives customer demand.  He did not attempt to quantify

in any way how much the allegedly infringing metrics-based load balancing feature contributed

to the success of Oracle products.  As he admitted at his deposition:

Q.   █████████████████████████████████████████
     ████████████

A.   ██████████████████████████

Q. 

A.

Q.

A.

A113 at pp. 132:13-133:4 (emphasis added).  Instead of conducting any sort of analysis

regarding customer demand for the patented feature, he was simply told by epicRealm to

"*assume*" such demand existed:

Q. 

A.

*Id*. at pp. 156:20-157:6.  This glaring omission on Wagner's part is a sufficient basis for

exclusion of his entire report and testimony.  *Izumi*, 315 F. Supp. 2d at 589 (an expert opinion is

reliable if it is "based on the 'methods and procedures of science' rather than on 'subjective belief

or unsupported speculation'").  Speculation and assumption cannot replace evidence. [5]

Equally damaging is the fact that Wagner admitted that he did not see any evidence

regarding whether or not Oracle's customers actually used metrics-based load balancing, nor did

he try to obtain any such information.  A113 at pp. 109:9-111:17.  Wagner admitted that the

---

[5]  EpicRealm argues that Oracle's share of the application server market purportedly went up
after Oracle added the metrics-based load balancing feature to its products, asking the Court to
infer that this increase in sales was due to metrics-based load balancing.  However, epicRealm
cites *no* evidence whatsoever to support this speculation, and Wagner did no analysis to test
this bold assumption.  The law requires more of an expert than blind faith in assumptions
based on speculation.  *See Izumi*, 315 F. Supp. 2d at 589.

████████████to determine the importance of metrics-based load balancing on

customer demand would be█████████████████████████████████████

█████████████████████████████████████████

████████████████████████ *Id.* at p. 130:9-14.   However, Wagner

conducted no such analysis of Oracle's sales information.  *Id.* at pp. 130:24-131:3.  Nor did

Wagner ask epicRealm's counsel to obtain any additional sales information to verify his

assumptions.  *Id.* at pp. 131:14-18.  Wagner conceded that he could have conducted a survey in

order to determine whether Oracle customers would still buy the accused products if the metrics-

based load balancing feature was not offered.  Of course, no such survey was conducted.  *Id.* at

p. 172:6-18.  As Wagner admitted, evidence showing that metrics-based load balancing was

infrequently used by Oracle's customers would have forced him to lower the reasonable royalty

rate.  *Id.* at p. 111:13-17; pp. 172:19-173:13.  What that rate would have been had he conducted a

proper analysis is anyone's guess.  It should not, however, be left to a jury to decide.

    EpicRealm attempts to shift the blame to Oracle for Wagner's failure to conduct any sort

of analysis of customer demand for metrics-based load balancing, claiming that it is somehow

Oracle's fault that such information was not properly adduced.  Apart from epicRealm's

transparent attempt to cover up its own failures by pointing the finger at Oracle, the law is clear

that *epicRealm*, not Oracle, bears the burden of proving damages and presenting legally

sufficient evidence to establish the amount to be paid as a reasonable royalty.  *Oiness v.

Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443,

1447 (Fed. Cir. 1990).

    Wagner's complete failure to assess whether the patented feature constitutes the basis for

customer demand for the accused products as a whole contravenes the entire market value rule.

*See Rite-Hite*, 56 F.3d at 1549; *Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408

F.3d 1374, 1380 (Fed Cir. 2005); *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008

U.S. Dist. LEXIS 41848, at *6-8 (N.D.N.Y. May 27, 2008). His expert report and testimony

should therefore be excluded under Rule 702.

> **3.   Wagner's Damages Analysis Contradicts The *Georgia-Pacific*
> Principles And The Entire Market Value Rule And Therefore Fails As
> A Matter Of Law**

EpicRealm mischaracterizes Oracle's arguments as only disputing Wagner's reasonable

royalty rate calculation, which epicRealm claims is not proper under the entire market value rule.

EpicRealm is wrong on the facts and the law. Wagner's entire reasonable royalty analysis,

including his determination of both the royalty base and the royalty rate, is inadmissible because

it violates the entire market value rule and *Georgia-Pacific*.

As shown above, epicRealm has failed to carry its burden of proof to show that inclusion

of all the sales of the accused products in the royalty base is proper under the entire market value

rule. Contrary to epicRealm's assertion, Oracle argued this precise point in its opening brief: "By

failing to meet the requirements of the entire market value rule, Wagner has failed to satisfy a

necessary predicate for using all sales of Database as the ***royalty base***, and his opinion based on

that ***royalty base*** should be excluded." D.I. 211, at p. 23 (emphasis added); *see also* discussion

*infra* on p. 23 re IAS. Wagner's calculation of the royalty base (determined by multiplying the

sales price of the entire product offerings by the number of products sold) is clearly erroneous

due to his complete failure to consider whether metrics-based load balancing forms the basis of

consumer demand for Oracle's IAS and Database products. He provides no damages calculation

that attempts to quantify or apportion the value of metrics-based load balancing to the overall

product offerings. Instead, he simply assumes that which the law requires epicRealm to prove.

Nor does Wagner make any effort to eliminate from the damage calculation the value of the

numerous non-infringing features in the accused products.  He simply assumes, without any

knowledge or investigation, that all sales of the accused products should be included in the

royalty base because he was told that customers cannot use them without the allegedly infringing

feature.  For example, Wagner testified:

Q. 

A.

Q.

A.

A113 at pp. 141:21-142:4. (emphasis added).  That assumption has been proven to be wrong and

epicRealm submits no evidence to rebut it.  Simply stated, Wagner's claimed damages base

drastically exceeds the alleged infringement.  EpicRealm's argument that Oracle's expert, Mr.

Musika "used the same royalty base," is a red herring.  It is *epicRealm's* burden, not Oracle's, to

establish a proper royalty base and calculate damages accordingly.  As a rebuttal expert, Mr.

Musika simply used Wagner's proposed royalty base in his report to calculate damages should

the royalty base be accepted by the court.  He also states, however, that Wagner's failure to

properly analyze ████████████████████████████████████

████████████████ is a flaw in Wagner's analysis.  A87 at p. 74, ¶184.  In addition, Musika

proposed an alternate measure of damages since Wagner's determination of the royalty base was

improper:





*Id.* at p. 80, ¶200.  In contrast, Wagner offers no alternative damages theory or calculations.

In addition to an inflated royalty base, Wagner's calculation of the royalty rate is also tainted.  Wagner admitted that his determination of the reasonable royalty rate applicable to the IAS product was driven by his (mis)application of the entire market value rule and was premised on a faulty assumption that the entire IAS is an infringing product:



A113 at p. 82:4-9; 160:17-24. (emphasis added).[6]

Wagner's ▮ royalty rate for IAS products is unsupportable because it is based on a demonstrably incorrect assumption that the patented feature drives the consumer demand for the

---

[6]  As stated in Oracle's opening brief, (D.I. 211), pp. 21-22, Wagner's analysis also turns the entire market value rule on its head.  If, as Wagner assumes, the *entire* IAS product is a commercial embodiment of the patents-in-suit, then there is *no* need to apply the entire market value rule.  Likewise, if Oracle Database contains many different features, only one of which is covered by the patents-in-suit, then the rule *would* apply.  Not only did Wagner fail to consider customer demand for the patented feature as required by the entire market value rule, he applied the rule to the *wrong* product.  This is further reason to exclude his damages analysis.

Oracle products, and ignores all the evidence to the contrary. This exorbitant royalty rate cannot be allowed to stand based on such a flawed and unsupportable analysis.

Finally, not only does Wagner's analysis violate the entire market value rule, it conflicts with *Georgia-Pacific*. Wagner's failure to consider the true source of consumer demand for Oracle's products and how much usage is made of the patented feature in his determination of a reasonable royalty rate is in direct violation of at least *Georgia-Pacific* factors 11 and. 13.[7] Wagner's discussion of *Georgia-Pacific* Factor Nos. 11 and 13 presupposes, contrary to the evidence in the record, that metrics-based load balancing (as opposed to the myriad of non-patented features included in the accused products) is responsible for improved website performance, scalability and reliability, touted by Wagner as driving the consumer demand and the success of Oracle's products. A30 at pp. 58-71, ¶¶205-245; pp. 76-79, ¶¶263-273. This additional flaw in Wagner's analysis requires exclusion of his report and testimony.

**B.   Wagner's Testimony Should Be Excluded as Inherently Unreliable Based on His Improper Reliance on the IBM/InfoSpinner Software Agreement to Determine a Reasonable Royalty for the Patents-In-Suit**

Wagner's opinion and testimony also should be excluded because he improperly used the IBM/InfoSpinner software agreement to determine a reasonable royalty rate. In response, epicRealm argues that Wagner correctly used the IBM/InfoSpinner software agreement as a "starting point" to determine a reasonable royalty rate and correctly adjusted the rate for any differences between the agreement and a hypothetical patent license between Oracle and epicRealm. But it is this deeply flawed starting point – which results in a wildly excessive

---

[7]   Factor 11 is "[t]he extent to which the infringer has made use of the invention and any evidence probative of the value of that use." Factor 13 is "[t]he proportion of the realizable profit that should be credited to the invention as distinguished from non-patented elements...." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

royalty rate – that undermines Wagner's entire approach.

As set forth in Oracle's opening brief, the IBM/InfoSpinner software agreement is so fundamentally different from a naked patent license that it should not and cannot be an appropriate staring point for a reasonable royalty analysis. *See Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1385-86 (Fed. Cir. 2003) (affirming the lower court's exclusion of expert testimony regarding the reasonableness of the royalty rate based on other license agreements because those agreements were not comparable to the present situation). The evidence is undisputed that the IBM/InfoSpinner software agreement was an agreement for the sale of software and services, not a patent license. EpicRealm's argument that the IBM/InfoSpinner software agreement is an appropriate starting point for Wagner's analysis because it covered "the very same patented technology at issue here in this action" misses the point. Although the subject matter of the agreement was InfoSpinner's software product ForeSite, it was fundamentally a technology and services agreement and placed *no* value on the licensing of the actual patents-in-suit. A22 at p. 162:12-22; *see also* A22, Exh. 27. As Wagner conceded in his deposition, IBM was ███████████████████████████████ ████████████████ A113 at pp. 75:16-76:1. In fact, the patents-in-suit had not even issued at the time the IBM/InfoSpinner Agreement was executed. As Wagner testified:



*Id.* at pp. 74:24-75:8; 76:20-24 (emphasis added). Under the terms of the IBM/InfoSpinner software agreement, no additional consideration was agreed upon, or ever paid by IBM, for the eventual issuance of the patents-in-suit. Thus, IBM would have paid the exact same amount of royalties for the licensed software products and the other rights it received under the license, regardless of whether or not the patents-in-suit ever issued. Without any valuation of the patents-in-suit – which is the ***only*** thing in which Oracle would be interested in a hypothetical negotiation with epicRealm – the IBM/InfoSpinner software agreement cannot be used as a starting point in determining a reasonable royalty rate.

Unlike a hypothetical patent license agreement with Oracle, the IBM/InfoSpinner software agreement granted IBM a ███████████████████████ and allowed IBM ██████████████████████████████ ███████████████████████████ A61 at p. 4, at ¶3.1. IBM's purpose for entering into the IBM/InfoSpinner software Agreement was ██████ ████████████████████████████████████ A22 at p. 162:12-22 and Exh.11. Wagner entirely overlooks the numerous terms and conditions in the IBM/InfoSpinner software agreement that would have been completely absent from the hypothetical license with Oracle. For example, Wagner ignores that:





By contrast, Oracle had already developed and begun selling its accused IAS and Database products well before the time of the hypothetical negotiation (November 2000) and would not have been wanted, needed, or paid for a software license to the ForeSite product or related services.  Moreover, the evidence shows that ███████████████████████ ███████████████████████ A22 at p. 105:5-22.  For epicRealm to now base its hugely inflated damages calculation on rates *never actually paid in the real world* would be fundamentally unfair and improper.  If, as Wagner asserts, Oracle would have been in a similar situation to IBM, then, by parity of reasoning, Oracle should only be charged the *actual* rates charged to IBM.  Wagner's failure to take this key evidence into consideration is grounds for excluding his opinion.

EpicRealm's attempt to brush away these fundamental differences as "minor obligations"

is unconvincing.  As Wagner admitted, while IBM was only interested in the InfoSpinner

software and related services, ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ A113 at

pp. 73:5-74:3 (emphasis added).  IBM purchased exactly what Oracle did not want or need.

These fundamental differences between the IBM/InfoSpinner software agreement and the

hypothetical patent license between epicRealm and Oracle, and the disparate nature of the needs

and positions of IBM and Oracle at the time of their respective negotiations, renders the

agreement completely improper as a starting point for assessing a reasonable royalty in this case.

As such, Wagner's expert report and testimony regarding damages should be excluded under

Rule 702 as not properly supported and inherently unreliable.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully requested that Oracle's motion be granted and

that Wagner's expert report and testimony be excluded for failure to satisfy the requirements for

admissibility under Rule 702 of the Federal Rules of Evidence.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
jparrett@mnat.com
   *Attorneys for Oracle Corporation
   and Oracle U.S.A., Inc.*

OF COUNSEL:

James G. Gilliland
Theodore T. Herhold
Joseph A. Greco
Robert J. Artuz
Eric M. Hutchins
TOWNSEND AND TOWNSEND
   AND CREW LLP
379 Lytton Avenue
Palo Alto, CA  94301
(650) 326-2400

Dorian Daley
Peggy E. Bruggman
Matthew M. Sarboraria
ORACLE CORPORATION
ORACLE U.S.A., INC.
500 Oracle Parkway
Redwood Shores, CA  94065

Dated: September 4, 2008
2475730
61490089 v2

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Richard L. Horwitz
> David Ellis Moore
> POTTER ANDERSON & CORROON, LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on September 11, 2008 upon the following individuals in the manner indicated:

**BY E-MAIL**

Richard L. Horwitz
David Ellis Moore
POTTER ANDERSON & CORROON, LLP
1313 N. Market St., Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899-0951

**rhorwitz@potteranderson.com**
**dmoore@potteranderson.com**

**BY E-MAIL**

George S. Bosy, Esquire
JENNER & BLOCK
330 N. Wabash Avenue
Chicago, IL  60611-7603

**gbosy@jenner.com**

*/s/ James W. Parrett, Jr.*
_____
James W. Parrett, Jr. (#4292)