IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORACLE CORPORATION and ORACLE U.S.A., INC., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civ. No. 06-414-SLR |
| PARALLEL NETWORKS, LLP, ) ) ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

At Wilmington this 4th day of December, 2008, having heard oral argument on, and having reviewed the papers submitted in connection with, the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language of the patents in suit,[1] as identified by the above referenced parties, shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), as follows:

1. "[S]aid page server receiving said request and **releasing said Web server to process other requests**:" "Freeing the Web server to process other requests." Although the parties asked the court to construe only the word "releasing," great mischief comes of construing words in a vacuum, as opposed to construing words

---

[1] The patents in suit are U.S. Patent Nos. 5,894,554 ("the '554 patent") and 6,415,335 ("the '335 patent").

within the context of the surrounding language.  The word "releasing" in the above phrase has a specific purpose, that is, to allow the Web server to process other requests.  Consequently, the page server does not "release" the Web server unless the Web server is free to process other requests.  This construction is consistent with the specification: col. 2, ll. 20-32; col. 4, ll. 48-60; col. 5, ll. 9-19.[2]

    2. "**[I]ntercepting** said request at said [Web server] [HTTP-cornplaint device] [second computer system]:"  "Diverting the handling of said request before the request is processed by the [Web server] [HTTP-compliant device] [second computer system]."  This construction is supported by the specification: col. 4, ll. 55-60; col. 8, ll. 26-34.  The idea of "receiving" contained in other limitations need not be included within the scope of the intercepting limitation.

    3. "**[R]outing** said request form said Web server to a **dispatcher**:"  "Software for determining which page server should be used to process a dynamic web page generation request."  Although the specification arguably describes the preferred embodiment as being a separate, executable software program (see, e.g., figure 4; col. 5, ll. 8-36), the preferred embodiment of the invention "is implemented as a software module, which may be executed on a computer system . . . ."  Col. 3, ll. 55-57.

    4. "**[D]ispatching** said request to said page server:"  "Analyzing a request to

---

[2]Plaintiffs' competing construction (adopted by the Texas court) adds a limitation that plaintiffs cannot even describe:  "[S]aid page server receiving said request and said page server **performing an act (separate from merely receiving the request)** to free the Web server to process other requests."  Without an explanation of what the page server has to do to release (other than to receive), Oracle's proposed construction is simply confusing and adds unnecessary complexity to the phrase, which is self-evident when read in context.

make an informed selection of which page server should process the request based on a variety of information (both static and dynamic), and sending the request to the selected page server." This construction is supported by the specification (col. 5, ll. 51-59; col. 6, ll. 1-19; col. 8, ll. 10-25, 32-39; fig. 5), as well as by the prosecution history (D.I. 201, ex. 6 at EPIC000266).

     5. **HTTP-compliant device:** "A device running software that implements the communication protocol known as HyperText Transport Protocol (HTTP)." See col. 1, ll. 14-38.

     6. **Web server:** "Software, or a machine having software, that receives Web page requests and returns Web pages in response to the requests." The only disagreement among the parties is whether this limitation is limited to "HTTP-compliant server software." Defendant argues that the claim language is not so limited; plaintiffs argue that, because the only software identified is the "HTTP-compliant" software, the construction should be so limited. Because this is a software patent, the court concludes that the broader interpretation is the more appropriate. To put the point differently, if this were a mechanical device patent and there truly was only one embodiment of the device described in the specification of said patent, arguably the broader language of the claims should be limited to that one device. Given the mutable nature of the technology underlying the instant patent, however, the court declines to impose the restriction requested by plaintiffs.

     7. **Page server:** "Page-generating software that generates a dynamic Web page." Consistent with the "dispatcher" limitation, this software is not limited to running

on a processor separate from that of the Web server, as plaintiffs argue.

8. **Web page:** "Web content displayable through a Web browser."

9. **Request:** "A message that asks for a Web page." Consistent with the "Web server" limitation, this software is not limited to Web pages specified by a "URL."

10. **Means for generating [said request]:** § 112 ¶ 6 corresponding function: generating said request. Structure: a processor of a computer that is, or has, a Web client running a Web browser, or equivalents thereof.

11. **Means for receiving [said request from said first computer]:** § 112 ¶ 6 function: receiving said request from said first computer. Structure: a processor of a computer that is, or has, a Web server running Web server executables, or equivalents thereof.

12. **Page server processing means:** § 112 ¶ 6 function: processing dynamic Web page generation requests. Structure: a processor of a computer that runs software for generating dynamic Web pages, or equivalents thereof.

                                                _____
                                                United States District Judge